Docket No. 4:16-cv-469-K

# UNITED STATES DISTRICT COURT
*for the*
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

EXXON MOBIL CORPORATION,

Plaintiff,

v.

MAURA TRACY HEALEY,
Attorney General of Massachusetts, in her official capacity,

Defendant.

**MEMORANDUM OF LAW FOR AMICI CURIAE STATES OF
MARYLAND, NEW YORK, ALASKA, CONNECTICUT, HAWAIʻI, ILLINOIS,
IOWA, KENTUCKY, MAINE, MINNESOTA, MISSISSIPPI, NEW JERSEY,
NEW MEXICO, OREGON, RHODE ISLAND, VERMONT, VIRGINIA, WASHINGTON,
AND THE DISTRICT OF COLUMBIA AND U.S. VIRGIN ISLANDS
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

ERIC T. SCHNEIDERMAN
  *Attorney General*
  *State of New York*

Barbara D. Underwood
  *Solicitor General*

Anisha S. Dasgupta
  *Deputy Solicitor General*

Judith N. Vale
  *Assistant Solicitor General*

120 Broadway
New York, NY 10271
Tel:  (212) 416-8020

*(Additional counsel listed on signature page)*

BRIAN E. FROSH
  *Attorney General*
  *State of Maryland*

Thiruvendran Vignarajah
  *Deputy Attorney General*
  Maryland Bar # 0812180249

200 St. Paul Place
Baltimore, MD 21202
Tel: (410) 576-6300
Fax: (410) 576-7036
tvignarajah@oag.state.md.us

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTEREST OF *AMICI CURIAE* ............................................................ 1

STATEMENT OF THE CASE .............................................................. 2

      A.    The Fundamental Investigatory Powers That State Attorneys General
            Exercise under State Law, Subject to Oversight by State Courts .......................... 2

            1.    The broad authority of state Attorneys General to investigate
                 fraud and wrongdoing that harms their States' citizens .............................. 2

            2.    The state court oversight ensuring that state Attorneys General
                 exercise their investigatory authority properly and within
                 proscribed limits .......................................................... 7

      B.    The Massachusetts Attorney General's Investigation
            into Potentially Unfair or Deceptive Practices by Exxon ....................... 9

      C.    Exxon's Pending Proceeding in Massachusetts State Court .................... 9

      D.    This Federal Lawsuit ..................................................... 10

ARGUMENT ............................................................................ 10

POINT I    -    UNDER BASIC PRINCIPLES OF FEDERALISM,
                 FEDERAL COURTS CANNOT AND SHOULD NOT
                 ENTERTAIN CHALLENGES TO SUBPOENAS
                 ISSUED BY STATE ATTORNEYS GENERAL .......................... 10

            A.  The Ripeness Doctrine Bars Federal Suits Challenging a
               State Attorney General's CID When a Comprehensive
               Process Exists for State Court Review of the CID. .................. 11

            B.  Related Considerations of Abstention and Personal
                Jurisdiction Also Warrant Dismissal of Such a Lawsuit. .......... 16

               1.  Abstention is triggered by a pending state proceeding
                  to review a CID issued by a state Attorney General,
                  such as Exxon's ongoing Massachusetts proceeding ........... 16

**TABLE OF CONTENTS (cont'd)**

**Page**

      2.   Federal courts lack personal jurisdiction over the Attorney General of another State whose only action consists of exercising her traditional state law investigatory authority. ...............18

   C.  The Discretion Conferred on Federal Courts by the Declaratory Judgment Act Is an Additional Reason for Declining to Interfere with a Pending State Court Proceeding Reviewing a State-Issued Subpoena. ..........................................................20

POINT II   -   THE PUBLIC INTEREST AND BALANCE OF THE EQUITIES SUPPORT DENIAL OF A PRELIMINARY INJUNCTION .......................22

   A.  The Public Interest and Balance of the Equities Weigh Heavily Against a Preliminary Injunction.....................................23

   B.  Exxon Will Not Suffer Any Irreparable Injury from Litigating Its Objections to the CID in the Massachusetts Courts............................24

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Agey v. Am. Liberty Pipe Line Co.*,
   141 Tex. 379 (1943) ................................................................................2

*Atl. Richfield Co. v. Fed. Trade Comm'n*,
   546 F.2d 646 (5th Cir. 1977) ...................................................12, 13, 24

*Attorney General v. Allstate Ins. Co.*,
   687 S.W.2d 803 (Tex. App. 1985) ...........................................................8

*Attorney General v. Bodimetric Profiles*,
   404 Mass. 152 (1989) ..................................................................13, 14, 17

*Canal Auth. of the State of Fla. v. Callaway*,
   489 F.2d 567 (5th Cir. 1974) ................................................................22

*Charles Scribner's Sons v. Marrs*,
   114 Tex. 11 (1924)...................................................................................3

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) ..............................................................................17

*Craig v. Barney*,
   678 F.2d 1200 (4th Cir. 1982) .............................................................17

*CUNA Mut. Ins. Soc'y v. Att'y Gen.*,
   380 Mass. 539 (1980) ..............................................................................8

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
   710 F.3d 579 (5th Cir. 2013) ................................................................24

*Employers' Liab. Assurance Corp. v. Mitchell*,
   211 F.2d 441 (5th Cir. 1954) ................................................................21

*Florida ex rel. Shevin v. Exxon Corp.*,
   526 F.2d 266 (5th Cir. 1976) ..................................................................2

*Google, Inc. v. Hood*,
   822 F.3d 212 (5th Cir. 2016) .................................11, 12, 13, 15, 16, 24

*Idaho ex rel. Lance v. Hobby Horse Ranch Tractor & Equip. Co.*,
   129 Idaho 565 (1996)...........................................................................14

*In re Criminal Investigation No. 1*,
   75 Md. App. 589 (1988) .........................................................................4

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                       **Page(s)**

*In re Ramirez,*
   905 F.2d 97 (5th Cir. 1990) ............................................................12

*In re Yankee Milk, Inc.,*
   372 Mass. 353 (1977) ...................................................................13

*Juidice v. Vail,*
   430 U.S. 327 (1977)................................................................15, 17

*Lubin v. Agora, Inc.,*
   389 Md. 1 (2005) ...........................................................................8

*Lynch v. Conley,*
   853 A.2d 1212 (R.I. 2004) ..............................................................8

*Matter of A'Hearn v. Comm. on Unlawful Practice of the Law*
   *of the N.Y. Cty. Lawyers' Ass'n,*
   23 N.Y.2d 916 (1969) .....................................................................8

*Matter of Abrams v. Thruway Food Mkt. & Shopping Ctr., Inc.,*
   147 A.D.2d 143 (2d Dep't 1989) ......................................................9

*Matter of Cuomo v. Dreamland Amusements Inc.,*
   2009 N.Y. Slip Op. 50062 (Sup. Ct. N.Y. County 2009) .....................14

*Matter of Hirschorn v. Attorney-General of the State of N.Y.,*
   93 Misc. 2d 275 (Sup. Ct. N.Y. County),
   *aff'd,* 63 A.D.2d 865 (N.Y. App. Div. 1978) .....................................8

*McKinley v. Abbot,*
   643 F.3d 403 (5th Cir. 2011) ........................................................18

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,*
   457 U.S. 423 (1982).............................................................14, 16, 17

*Minuteman Research, Inc. v. Lefkowitz,*
   69 Misc. 2d 330 (N.Y. Sup. Ct. 1972) ..............................................4

*Mission Ins. Co. v. Puritan Fashions Corp.,*
   706 F.2d 599 (5th Cir. 1983) ........................................................21

*Missouri ex rel. Ashcroft v. Goldberg,*
   608 S.W.2d 385 (Mo. 1980) ..........................................................14

# TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                          **Page(s)**

*O'Keefe v. Chisholm,*
769 F.3d 936 (7th Cir. 2014) ............................................................................12

*Pennzoil Co. v. Texaco Inc.,*
481 U.S. 1 (1987) ..............................................................................................14

*People ex rel. DuFauchard v. U.S. Fin. Mgmt.,*
169 Cal. App. 4th 1502 (2009) ..........................................................................8

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235 (1981) ..........................................................................................22

*Reisman v. Caplin,*
375 U.S. 440 (1964) .............................................................................11, 13, 24

*Scott v. Ass'n for Childbirth at Home,*
88 Ill. 2d 279 (1981) ..........................................................................................8

*Shepard v. Attorney General,*
409 Mass. 398 (1991) ........................................................................................3

*Sherwin-Williams Co. v. Holmes Cty.,*
343 F.3d 383 (5th Cir. 2003) ..............................................................20, 21, 22

*Sprint Commc'ns, Inc. v. Jacobs,*
134 S. Ct. 584 (2013) ........................................................................................17

*Stroman Realty, Inc. v. Wercinski,*
513 F.3d 476 (5th Cir. 2008) ....................................................11, 18, 19, 20

*Tex. Ass'n of Bus. v. Earle,*
388 F.3d 515 (5th Cir. 2004) ......................................................................17, 18

*United States v. Ferrara,*
54 F.3d 825 (D.C. Cir. 1995) ............................................................................18

*Wilton v. Seven Falls Co.,*
515 U.S. 277 (1995) ..........................................................................................20

*Winter v. NRDC, Inc.,*
555 U.S. 7 (2008) ..............................................................................................22

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ....................................................................................18, 19

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                Page(s)

*Younger v. Harris*,
    401 U.S. 37 (1971) ...........................................................................16

**State Statutes**

Idaho Code § 48-611 .............................................................................8

Ky. Rev. Stat. Ann. § 367.240 ...............................................................8

Me. Rev. Stat. Ann. tit. 5
    § 194 .................................................................................................3
    § 207 .................................................................................................3
    § 209 .................................................................................................4
    § 211 ..............................................................................................4, 7
    § 221 .................................................................................................8

Me. Rev. Stat. Ann. tit. 10, §§ 1101-1110 .............................................3

Md. Code Ann. Corps. & Ass'ns
    § 11-301 ............................................................................................3
    § 11-303 ............................................................................................3
    §§ 11-701 to 11-705 .........................................................................3

Mass. Gen. Laws ch. 93A
    § 1 ..................................................................................................3, 9
    § 2 ..................................................................................................3, 9
    § 4 ..................................................................................................3, 4
    § 6 ..................................................................................3, 4, 7, 8, 9, 12
    § 7 ..............................................................................................8, 12, 13

Miss. Code Ann.
    § 75-21-1 ...........................................................................................3
    § 75-21-7 ...........................................................................................3
    § 75-24-17 .........................................................................................8

N.M. Stat. Ann.
    § 57-12-3 ...........................................................................................3
    § 57-12-8 ...........................................................................................4
    § 57-12-11 .........................................................................................4
    § 57-12-12 .................................................................................4, 7, 8
    § 57-22-6.3 ........................................................................................3
    § 57-22-9.1 ........................................................................................4

N.Y. Exec. Law § 63 ........................................................................3, 4, 9

## TABLE OF AUTHORITIES (cont'd)

**State Statutes (cont'd)**                                                                **Page(s)**

N.Y. Gen. Bus. Law

§ 342 .......................................................................................................................3

§ 343 .......................................................................................................................3

§ 349 ..............................................................................................................3, 4, 9

§ 352 ..............................................................................................................3, 4, 9

§ 353 ..................................................................................................................3, 4

N.Y. Not-for-Profit Corp. Law

§ 112 .......................................................................................................................3

§ 115 .......................................................................................................................3

§ 1101 .....................................................................................................................3

Or. Rev. Stat. § 180.070 ...............................................................................................4

Tex. Bus. & Com. Code Ann.

§ 15.10 ....................................................................................................................8

§ 17.47 ....................................................................................................................3

§ 17.58 ....................................................................................................................3

§ 17.60 ....................................................................................................................3

§ 17.61 ....................................................................................................3, 4, 7, 8, 12

Tex. Rev. Civ. Stat. Ann. art. 581-32 .........................................................................3

Wash. Rev. Code

§ 19.86.020 .............................................................................................................3

§ 19.86.040 .............................................................................................................3

§ 19.86.080 .....................................................................................................4, 7, 8

§ 19.86.100 ........................................................................................................4, 7

§ 19.86.110 ........................................................................................................4, 8

§ 21.20.010 .............................................................................................................3

**Rules**

Mass. R. Civ. P. 26(c) ..................................................................................................8

N.Y. C.P.L.R. 2304 .......................................................................................................8

N.Y. C.P.L.R. 2308 .......................................................................................................8

## TABLE OF AUTHORITIES (cont'd)

**Miscellaneous Authorities**                                    **Page(s)**

Cal. Att'y Gen., Press Release, Attorney General Kamala D. Harris Announces
   That Volkswagen Will Pay Additional $86 Million to California over
   Emissions "Defeat Devices" (July 6, 2016), at https://oag.ca.gov/news/press-
   releases/attorney-general-kamala-d-harris-announces-volkswagen-will-pay-
   additional-86 .................................................................................................................7

Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,
   13B *Federal Practice & Procedure - Jurisdiction*
   § 3532.1 (3d ed. 2008) .............................................................................................11

Civil Investigative Demand to Wells Fargo Financial Inc. (Oct. 1, 2004),
   at https://texasattorneygeneral.gov/files/cpd/cid_wellsfargo.pdf ...............................5

Default Judgment, *Texas v. Norvergence, Inc.*, No. 2004-65357
   (Dist. Ct. Harris County Apr. 29, 2005), at
   https://texasattorneygeneral.gov/files/cpd/norvergence_judgment.pdf .....................5

Md. Att'y Gen., Press Release, AG Frosh, Secretary of State Wobensmith
   Announce Dissolution of Scam Cancer Charities: Cancer Fund of America,
   Related Charities Dissolved After Bilking Donors of $75 Million (Mar. 30,
   2016), at https://www.oag.state.md.us/Press/2016/033016.htm................................7

Mich. Att'y Gen., Press Release, Cox Demands Vehicle Data from Toyota (Mar.
   24, 2010), at http://www.michigan.gov/ag/0,1607,7-164--234101--,00.html .........5

Miss. Att'y Gen., Press Release, AG Jim Hood Announces Settlement
   with Volkswagen Over Emissions Fraud (June 28, 2016),
   at http://www.ago.state.ms.us/releases/ag-jim-hood-announces-
   settlement-with-volkswagen-over-emissions-fraud-mississippi-to-
   receive-2-5-million-in-compensation .........................................................................7

Nat'l Ass'n of Att'ys Gen., Press Release, 50 States Sign Mortgage Foreclosure
   Joint Statement (Oct. 13, 2010), at http://www.naag.org/naag/media/naag-
   news/joint-statement-of-the-mortgage-foreclosure-multistate-group.php.................6

Nat'l Ass'n of Att'ys Gen., *State Attorneys General:
   Powers and Responsibilities* (2d ed. 2007)..............................................2, 3, 4, 5

Philip A. Lehman, *Executive Summary of Multistate/Federal
   Settlement of Foreclosure Misconduct Claims* (2012), at
   https://d9klfgibkcquc.cloudfront.net/NMS_Executive_Summary-
   7-23-2012.pdf.............................................................................................................6

## TABLE OF AUTHORITIES (cont'd)

**Miscellaneous Authorities (cont'd)**                                                              **Page(s)**

Tex. Att'y Gen., *Consumer Protection Major Lawsuits & Settlements:*
    NorVergence, at https://texasattorneygeneral.gov/cpd/norvergence. .......................................5

Tucker S. Player, *After the Fall: The Cigarette Papers, the Global Settlement,*
    *& the Future of Tobacco Litigation*, 49 S.C. L. Rev. 311, 339–40 (1998)...............................6

Wash. Att'y Gen., Press Release, Multistate Settlement Puts the Brakes on
    Toyota (Feb. 14, 2013), at http://www.atg.wa.gov/news/news-
    releases/multistate-settlement-puts-brakes-toyota ...................................................................5

## INTEREST OF *AMICI CURIAE*

In this lawsuit, Exxon Mobil Corporation (Exxon) asks the U.S. District Court for the Northern District of Texas to issue a sweeping and unprecedented injunction prohibiting the Attorney General of Massachusetts from seeking to enforce in the Massachusetts state courts a civil administrative subpoena issued under Massachusetts law to investigate potential violations of Massachusetts statutes. The States of Maryland, New York, Alaska, Connecticut, Hawai'i, Illinois, Iowa, Kentucky, Maine, Minnesota, Mississippi, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, Virginia, Washington, and the District of Columbia and Virgin Islands submit this brief to explain that governing precedents—and the federalism principles underpinning those cases—bar the recipient of a state Attorney General's subpoena from bringing a federal lawsuit to stymie an Attorney General's investigation, where the recipient already has a comprehensive process for challenging the subpoena in the courts of the Attorney General's State.

The *amici* States have a compelling interest in the traditional authority of their Attorneys General to investigate and combat violations of state law. As the chief legal officers of their respective States, Attorneys General have long used their state law powers—including the issuance of civil subpoenas, which are often called civil investigative demands (CIDs)—to gather information necessary to determine whether a company has engaged in fraudulent or misleading conduct harmful to the people of the Attorney General's State. Proper respect for the States' sovereign interests has long dictated that the federal courts should not needlessly impede this core duty of state Attorneys General to detect and halt misconduct.

The *amici* States also have a keen interest in safeguarding the roles of their state courts in this nation's system of dual sovereignty. Fundamental principles of comity forbid using a federal

court injunction to bypass available and adequate state court review of a state law subpoena issued pursuant to a state Attorney General's state-law investigatory responsibilities. The States have established specific procedures to ensure that subpoena recipients have a full and fair opportunity to challenge state subpoenas in state court. Under Our Federalism, these state court processes for enforcing state law and protecting state citizens are the proper forums for adjudicating disputes about a state Attorney General's subpoena.

## STATEMENT OF THE CASE

**A.   The Fundamental Investigatory Powers That State Attorneys General Exercise under State Law, Subject to Oversight by State Courts**

**1.   The broad authority of state Attorneys General to investigate fraud and wrongdoing that harms their States' citizens**

A fundamental responsibility of state Attorneys General is investigating and remediating matters of public concern affecting their States. Carried over from English common law, the office of Attorney General has existed since this country's founding. *See* Nat'l Ass'n of Att'ys Gen., *State Attorneys General: Powers and Responsibilities* ("*Attorneys General*") 1, 4–7 (2d ed. 2007). Today, every State in the nation as well as the District of Columbia, Puerto Rico, and the Virgin Islands has an Attorney General. *See id.* at 8. The specific contours of each state Attorney General's authority are a core matter of state concern dictated by each State's own common law, constitution, and statutes. *See e.g.*, *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 268–74 (5th Cir. 1976). Although their powers vary, state Attorneys General traditionally serve as their State's "chief law officer" responsible for safeguarding the public interest through, among other things, investigations and enforcement proceedings to halt violations of state law. *See Agey v. Am. Liberty Pipe Line Co.*, 141 Tex. 379, 382 (1943).

2

Protecting the State's citizens and economy from fraud, deception, and other improper

conduct is a principal and critical state law responsibility of state Attorneys General. For

example, most States empower their Attorney General to enforce state consumer protection laws

prohibiting various forms of false, misleading, or unfair business practices. *See Attorneys*

*General*, *supra,* at 234.[1] Many state Attorneys General—including the Attorneys General of

Maryland, Massachusetts, New York, and Texas—are also authorized by state statutes to protect

investors from fraudulent or misleading schemes in the offering or sale of securities. *See*

*Attorneys General*, *supra* at 249–50, 265–68.[2] And state laws charge Attorneys General with

guarding against many other dishonest or inequitable activities, such as anticompetitive conduct[3]

or improper practices by charitable organizations.[4]

To ensure that Attorneys General can fulfill these important state law duties, States have

long vested their Attorneys General with broad discretion to use a wide array of investigatory

and enforcement tools. *See, e.g.*, *Shepard v. Attorney General*, 409 Mass. 398, 401–03 (1991);

*Charles Scribner's Sons v. Marrs*, 114 Tex. 11, 27 (1924). For example, many States authorize

their Attorneys General to investigate alleged criminal wrongdoing—including by issuing

subpoenas through grand juries or other legal processes to gather documentary or testamentary

---

[1] *See, e.g.*, Me. Rev. Stat. Ann. tit. 5, § 207; Mass. Gen. Laws ch. 93A, §§ 2, 4, 6; N.Y. Exec. Law § 63(12); N.M. Stat. Ann. § 57-12-3; N.Y. Gen. Bus. Law § 349; Tex. Bus. & Com. Code Ann. §§ 17.47, 17.58, 17.60, 17.61; Wash. Rev. Code § 19.86.020.

[2] *See, e.g.*, Md. Code Ann. Corps. & Ass'ns §§ 11-301, 11-303, 11-701 to 11-705; Mass. Gen. Laws ch. 93A, §§ 1(b), 2, 4, 6; N.Y. Gen. Bus. Law §§ 352, 353; Tex. Rev. Civ. Stat. Ann. art. 581-32(A); Wash. Rev. Code § 21.20.010.

[3] *See, e.g.*, Me. Rev. Stat. Ann. tit. 10, §§ 1101-1110; Miss. Code Ann. §§ 75-21-1, 75-21-7; N.Y. Gen. Bus. Law §§ 342-43; Wash. Rev. Code § 19.86.040.

[4] *See, e.g.*, N.M. Stat. Ann. § 57-22-6.3; Me. Rev. Stat. Ann. tit. 5, §§ 194-194K; N.Y. Not-for-Profit Corp. Law §§ 112, 115(b), 1101.

evidence.[5] And state Attorneys General are also often empowered to conduct civil investigations into potential state law violations using CIDs or other investigatory means.[6] *See Attorneys General, supra*, at 234–35. CIDs are a vital means for Attorneys General to obtain the information necessary to "determine whether a violation has occurred and evaluate the strengths of the case, before taking any formal court action." *Id.* at 235; *see also Minuteman Research, Inc. v. Lefkowitz*, 69 Misc. 2d 330, 330 (N.Y. Sup. Ct. 1972). When civil investigations reveal improper conduct, Attorneys General possess considerable discretion to pursue a variety of enforcement remedies through judicial or administrative proceedings, including victim restitution, civil fines, or injunctions to prevent further wrongdoing.[7]

Using CIDs and other investigatory tools, state Attorneys General throughout the country have uncovered many types of fraudulent, misleading, or deceptive practices and successfully pursued enforcement actions against perpetrators to protect the public. Because businesses in our global economy often operate across state lines, these investigations and enforcement proceedings commonly involve entities that operate in multiple States or that are incorporated or headquartered in a State other than the State of the investigating Attorney General.

For example, the Texas Attorney General issued CIDs to numerous financial firms headquartered outside of Texas as part of an investigation into whether NorVergence, a New

---

[5] *See, e.g.*, Or. Rev. Stat. § 180.070; *In re Criminal Investigation No. 1*, 75 Md. App. 589, 594–95 (1988).

[6] *See, e.g.*, Me. Rev. Stat. Ann. tit. 5, § 211; Mass. Gen. Laws ch. 93A, § 6; N.Y. Exec. Law § 63(12); N.M. Stat. Ann. §§ 57-12-12, 57-22-9.1; N.Y. Gen. Bus. Law § 352(2); Tex. Bus. & Com. Code Ann. § 17.61; Wash. Rev. Code § 19.86.110.

[7] *See, e.g.*, Me. Rev. Stat. Ann. tit. 5, § 209; Mass. Gen. Laws ch. 93A, § 4; N.M. Stat. Ann. §§ 57-12-8, 57-12-11; N.Y. Exec. Law § 63(12); N.Y. Gen. Bus. Law §§ 349(b), 353; Wash. Rev. Code §§ 19.86.080, 19.86.100.

Jersey-based telecommunications company, defrauded Texas consumers by misleading them about the services it had promised to provide.[8] This investigation eventually led the Texas Attorney General to obtain a default judgment against NorVergence for violating Texas's consumer protection laws, which voided NorVergence's fraudulent contracts and provided for the recovery of monetary damages and penalties, including from financial companies that had sought to collect money from consumers based on NorVergence's fraudulent agreements.[9]

Similarly, the Michigan Attorney General subpoenaed information from Toyota Motor Sales USA, a California company, to investigate whether the company had misled consumers about vehicle safety issues from unintended acceleration.[10] That investigation, along with similar investigations conducted by other state Attorneys General, resulted in a settlement under which Toyota agreed to pay $29 million plus restitution, and agreed to provide incentives to vehicle owners to promote compliance with vehicle recalls.[11]

The increasingly interstate nature of commerce has also led state Attorneys General to cooperate frequently in investigating and combatting unlawful activity occurring in many States. Multistate collaboration can take many forms, such as staff from different Attorney General's offices sharing information, forming working groups, or coordinating investigation and litigation strategies. *See Attorneys General*, *supra*, at 244–45. Such coordination not only allows States to

---

[8] *See, e.g.*, Civil Investigative Demand to Wells Fargo Financial Inc. (Oct. 1, 2004); *see generally* Tex. Att'y Gen., *Consumer Protection Major Lawsuits & Settlements:* NorVergence.

[9] *See* Default Judgment, *Texas v. NorVergence, Inc.*, No. 2004-65357 (Dist. Ct. Harris County Apr. 29, 2005).

[10] Mich. Att'y Gen., Press Release, Cox Demands Vehicle Data from Toyota (Mar. 24, 2010).

[11] *See* Wash. Att'y Gen., Press Release, Multistate Settlement Puts the Brakes on Toyota (Feb. 14, 2013).

pool scarce resources and save taxpayer monies, but also facilitates coordinated negotiations and global settlements with wrongdoers that can more effectively protect the public.

These joint efforts have greatly enhanced the ability of state Attorneys General to uncover and halt widespread practices that harm individuals and businesses across the nation. For example, state Attorneys General worked together to investigate and bring enforcement actions against several tobacco companies for engaging in fraudulent or deceptive practices that concealed the harmful effects of tobacco use. Those efforts culminated in a settlement among forty-six state Attorneys General and the tobacco companies, under which the companies agreed to pay billions of dollars to reimburse the States for tobacco-related healthcare costs and to implement major changes to their marketing practices.[12]

More recently, in 2010, Attorneys General from all fifty States worked together in a bipartisan group to investigate nationwide mortgage-foreclosure abuses against homeowners.[13] This cooperative effort resulted in, among other things, an approximately $25 billion settlement among Attorneys General, federal agencies, and five mortgage-servicing companies to repay victims of unfair foreclosure practices and fund foreclosure-prevention programs.[14] In 2015, the Attorneys General of every State and the District of Columbia joined together with the Federal Trade Commission to file an enforcement action against four nationwide sham cancer charities that had bilked donors of more than $75 million, leading to a settlement involving a damages

---

[12] *See* Tucker S. Player, *After the Fall: The Cigarette Papers, the Global Settlement, & the Future of Tobacco Litigation*, 49 S.C. L. Rev. 311, 339–40 (1998).

[13] *See* Nat'l Ass'n of Att'ys Gen., Press Release, 50 States Sign Mortgage Foreclosure Joint Statement (Oct. 13, 2010).

[14] *See* Philip A. Lehman, *Executive Summary of Multistate/Federal Settlement of Foreclosure Misconduct Claims* (2012).

award, liquidation of the fraudulent entities, and a ban against the companies' president

managing charitable assets.[15] And a coalition of more than forty state Attorneys General recently

cooperated to investigate Volkswagen's nationwide deception of consumers about vehicle

emission standards. Volkswagen, many States, the federal government, and private plaintiffs

have reached partial settlements under which Volkswagen will pay more than $10 billion for

consumer reimbursements and mitigation projects.[16]

> **2.   The state court oversight ensuring that state Attorneys
> General exercise their investigatory authority properly
> and within proscribed limits**

The same sources of state law that empower state Attorneys General to investigate and

combat misconduct also delimit their authority to use CIDs and other investigatory tools. For

example, many state statutes provide that an Attorney General issuing a CID must seek

documents that are relevant to the inquiry, protect the confidentiality of subpoenaed information,

and follow notice procedures.[17] And state laws also often require that Attorneys General have

"some basis" for requesting information, even though Attorneys General need not establish in

advance that unlawful conduct has occurred in order to investigate.[18]

---

[15] *See* Md. Att'y Gen., Press Release, AG Frosh, Secretary of State Wobensmith Announce Dissolution of Scam Cancer Charities: Cancer Fund of America, Related Charities Dissolved After Bilking Donors of $75 Million (Mar. 30, 2016).

[16] *See, e.g.*, Miss. Att'y Gen., Press Release, AG Jim Hood Announces Settlement with Volkswagen Over Emissions Fraud (June 28, 2016); Cal. Att'y Gen., Press Release, Attorney General Kamala D. Harris Announces That Volkswagen Will Pay Additional $86 Million to California over Emissions "Defeat Devices" (July 6, 2016).

[17] *See, e.g.*, Me. Rev. Stat. Ann. tit. 5, § 211; Mass. Gen. Laws ch. 93A, § 6; N.M. Stat. Ann. § 57-12-12; Tex. Bus. & Comm. Code § 17.61; Wash. Rev. Code §§ 19.86.080, 19.86.100.

[18] *See, e.g.*, *Matter of A'Hearn v. Comm. on Unlawful Practice of the Law of the N.Y. Cty. Lawyers' Ass'n*, 23 N.Y.2d 916, 918 (1969); *see also CUNA Mut. Ins. Soc'y v. Att'y Gen.*, 380

(*continued on the next page*)

The courts of an Attorney General's State have long been the authority entrusted with ensuring that the Attorney General complies with all legal requirements when issuing CIDs. State laws generally authorize a CID recipient to challenge the CID in state court; for example, by showing "good cause" for quashing, modifying, or imposing conditions on a CID.[19] And in most States—including Massachusetts, Mississippi, and New York—the Attorney General cannot obtain penalties or sanctions from a recipient for noncompliance absent a court order.[20]

CID recipients routinely use these state court processes to raise objections to a subpoena, and the state courts have proven amply capable of protecting such objectors' federal and state rights. State courts have ably resolved objections to CIDs based on federal constitutional grounds, including assertions that a subpoena infringed on protected speech in violation of the First Amendment, constituted an unreasonable search under the Fourth Amendment, or violated the Commerce Clause.[21] And state courts frequently and searchingly review whether a CID is authorized by state law, directed at relevant information, and proper in scope and burden.[22]

---

Mass. 539, 542 n.5 (1980) (Attorney General "must not act arbitrarily" in issuing CID but "need only have a belief" that unlawful conduct has or is occurring).

[19] *See* Idaho Code § 48-611(2); Ky. Rev. Stat. Ann. § 367.240(2); Mass. Gen. Laws ch. 93A, § 6(7); Mass. R. Civ. P. 26(c); N.M. Stat. Ann. § 57-12-12(G); Tex. Bus. & Com. Code Ann. §§ 15.10, 17.61; Wash. Rev. Code §§ 19.86.080, 19.86.110; *see also* N.Y. C.P.L.R. 2304.

[20] *See, e.g.*, Me. Rev. Stat. Ann. tit. 5, § 221; Mass. Gen. Laws ch. 93A, § 7; Miss. Code Ann. § 75-24-17; N.Y. C.P.L.R. 2308; Wash. Rev. Code §§ 19.86.080, 19.86.110.

[21] *See, e.g.*, *Lubin v. Agora, Inc.*, 389 Md. 1, 15–27 (2005) (First Amendment); *Scott v. Ass'n for Childbirth at Home*, 88 Ill. 2d 279, 292–300 (1981) (First and Fourth Amendments); *People ex rel. DuFauchard v. U.S. Fin. Mgmt.*, 169 Cal. App. 4th 1502, 1521–22 (2009) (Commerce Clause); *Matter of Hirschorn v. Attorney-General of the State of N.Y.*, 93 Misc. 2d 275, 277 (Sup. Ct. N.Y. County), *aff'd*, 63 A.D.2d 865 (2d Dep't 1978) (First Amendment).

[22] *See, e.g.*, *Attorney General v. Allstate Ins. Co.*, 687 S.W.2d 803, 805 (Tex. App. 1985) (authority); *Lynch v. Conley*, 853 A.2d 1212, 1214–16 (R.I. 2004) (authority); *Matter of Abrams*

(continued on the next page)

**B.    The Massachusetts Attorney General's Investigation into Potentially Unfair or Deceptive Practices by Exxon**

In April 2016, the Massachusetts Attorney General issued a CID to Exxon under her state law authority to investigate unfair or deceptive practices in the conduct of trade or commerce in Massachusetts, including the offer or sale of securities. (Decl. of J. Anderson, Ex. B ("App."), at 23.) *See* Mass. Gen. Laws ch. 93A, §§ 1(b), 2(a), 6. The CID seeks documents and testimony relevant to determining whether Exxon violated Massachusetts' consumer protection laws by misleading consumers or investors regarding the risks of climate change and their impact on Exxon's business. (App. 23, 34–42.) The CID also notified Exxon of its rights under Massachusetts law to challenge the CID in a Massachusetts court. (App. 24.)

Prior to this CID's issuance, the New York Attorney General had also exercised his traditional state law powers to investigate whether Exxon had violated New York's securities, business, and consumer fraud laws by making false or misleading statements to investors and consumers concerning climate change related risks and their effects on Exxon's business. *See* N.Y. Exec. Law § 63(12), N.Y. Gen. Bus. Law § 349; *id.* § 352 et seq. As part of this investigation, the New York Attorney General issued a subpoena to Exxon requesting documents relevant to his inquiry. Exxon began producing documents responsive to this subpoena in January 2016, and continues to produce documents on a rolling basis.

**C.    Exxon's Pending Proceeding in Massachusetts State Court**

In June 2016, Exxon used the procedures available under Massachusetts law to file a state court petition objecting to the Massachusetts Attorney General's CID. *See* Pet. of Exxon Mobil

---

*v. Thruway Food Mkt. & Shopping Ctr., Inc.*, 147 A.D.2d 143, 144–45, 147 (2d Dep't 1989) (authority, factual basis, relevancy).

9

Corp., *In re Civil Investigative Demand No. 2016-EPD-36*, No. 16-1888F (Mass. Super. Ct., Suffolk County) (June 16, 2016) ("Pet."). Exxon claims, among other things, that the CID infringes on its protected speech, constitutes an unreasonable search, and is overly burdensome in violation of the Constitution, statutes, and common law of Massachusetts. *Id.* ¶¶ 60–67.

### D.   This Federal Lawsuit

One day before it filed its petition in Massachusetts state court, Exxon filed this federal lawsuit pursuant to 42 U.S.C. § 1983 seeking a declaratory judgment and permanent injunction prohibiting the Massachusetts Attorney General from enforcing the CID. (*See* Compl. ¶ 17; *id.* at 31–32.) Exxon asserts, among other things, that the CID infringes on its protected speech, constitutes an unreasonable search, and is overly burdensome in violation of the First, Fourth, and Fourteenth Amendments of the federal Constitution. (*Id.* ¶¶ 86–94; *see also id.* ¶¶ 76, 95–98 (asserting claims under Dormant Commerce Clause).) Exxon also filed a motion for a preliminary injunction seeking to enjoin the Massachusetts Attorney General from enforcing the CID. (*See* Pl.'s Mot. for a Prelim. Inj. at 2.)


### ARGUMENT

### POINT I

### UNDER BASIC PRINCIPLES OF FEDERALISM, FEDERAL COURTS CANNOT AND SHOULD NOT ENTERTAIN CHALLENGES TO SUBPOENAS ISSUED BY STATE ATTORNEYS GENERAL

In this suit, Exxon seeks a federal declaratory judgment and injunction prohibiting the potential future enforcement of a CID issued by the Massachusetts Attorney General, even though Exxon can seek—and indeed is seeking—review of the CID in the Massachusetts courts. The relief Exxon seeks from this Court thus would interfere with a State's established and

ongoing process for adjudicating objections to a CID issued by that State's Attorney General under that State's laws. Fundamental principles of comity and state sovereignty require the federal courts to avoid such interference.

Core values of federalism give rise to multiple, overlapping reasons why this Court should deny Exxon's extraordinary requests and dismiss its complaint. Doctrines of ripeness, abstention, and personal jurisdiction—and the considerations of comity triggered when a federal court is asked to enjoin a state Attorney General's investigation—work in tandem to safeguard the authority that a State's courts possess to oversee state law CIDs issued by that State's Attorney General.[23] And the federal courts retain broad discretion under the Declaratory Judgment Act to refrain from entertaining a federal lawsuit that would improperly invade a State's sovereign interests. Together, these legal and equitable principles ensure that federal courts do not intrude needlessly on States' compelling interests in investigating fraudulent or misleading practices that harm the consumers and investors of their State.

### A.   The Ripeness Doctrine Bars Federal Suits Challenging a State Attorney General's CID When a Comprehensive Process Exists for State Court Review of the CID.

It is well settled that a preenforcement federal court challenge to a CID is unripe where the recipient has an adequate legal forum for review of the subpoena before any sanctions can be imposed for noncompliance. *Reisman v. Caplin*, 375 U.S. 440, 445–49 (1964); *Google, Inc. v. Hood*, 822 F.3d 212, 224–26 (5th Cir. 2016). Under such circumstances, the CID recipient suffers

---

[23] *See* Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, 13B *Federal Practice & Procedure - Jurisdiction* § 3532.1, at 402–08 (3d ed. 2008) (explaining interrelatedness of ripeness and abstention); *see also Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 488–89 (5th Cir. 2008) (explaining federalism concerns underlying personal jurisdiction).

"no undue hardship in being remitted" to the comprehensive legal remedy that is already available to him. *Atl. Richfield Co. v. Fed. Trade Comm'n*, 546 F.2d 646, 649 (5th Cir. 1977); *see In re Ramirez*, 905 F.2d 97, 98–99 (5th Cir. 1990).

This is true irrespective of whether the CID was issued under federal or state law. For a state-issued CID, the recipient does not suffer harm sufficient to create a ripe federal controversy where he has a full and fair opportunity to assert in state court the "same challenges raised in the federal suit" prior to facing "consequence[s] for resisting the subpoena." *Google*, 822 F.3d at 226*; see O'Keefe v. Chisholm*, 769 F.3d 936, 939–40 (7th Cir. 2014) (reversing injunction against Wisconsin investigation supervised by Wisconsin courts because objectors obtained "effective relief" from state courts). Moreover, where a CID has been issued under state law by a state Attorney General exercising traditional state law investigatory powers, the availability of a comprehensive state court process for contesting the CID counsels especially strongly against federal court review of unripe challenges to the CID. As the Fifth Circuit has observed, comity and federalism concerns render the federal courts even "less willing to intervene" in anticipatory disputes about state-issued rather than federally-issued CIDs. *Google*, 822 F.3d at 226.

These principles require dismissal of Exxon's federal lawsuit. *See Google*, 822 F.3d at 225. Like many States—including Texas—Massachusetts has a specific statutory process for a CID recipient to petition the state courts to quash or modify a CID issued by its Attorney General under its consumer protection laws. *See, e.g.*, Mass. Gen. Laws ch. 93A, § 6(7); Tex. Bus. & Com. Code Ann. § 17.61. See also *supra* at 8. And the recipient of a CID by the Massachusetts Attorney General can utilize that state law review process prior to receiving sanctions for any refusal to comply. *See* Mass. Gen. Laws ch. 93A, §§ 6(7), 7 (recipient must comply with CID unless "otherwise provided by" Massachusetts court). See *supra* at 8. In addition, as in many

States, the Massachusetts Attorney General needs a court order to effect statutory sanctions for noncompliance with a CID. Mass. Gen. Laws ch. 93A, § 7; *see Google*, 822 F.3d at 224–26.

Exxon thus has a full and fair opportunity to raise all of its federal and state law claims through Massachusetts's available state court processes, including its claims under the Dormant Commerce Clause and the First, Fourth, and Fourteenth Amendments.[24] Indeed, Exxon has already invoked Massachusetts's procedures for challenging a CID by filing a petition in Massachusetts state court objecting to the CID. And the Massachusetts state court is currently considering that petition. See *supra* at 9–10. Accordingly, Exxon's federal lawsuit is unripe because Massachusetts has provided an "adequate remedy at law" for challenging a CID, and Exxon has not availed itself of that remedy. *See Google*, 822 F.3d at 225.

Exxon is mistaken in contending (Compl. ¶ 67) that this controversy is somehow rendered ripe by Massachusetts's requirement that a CID recipient either file a timely state court petition or risk waiving its objections in a future proceeding brought by the Attorney General to enforce a CID. *See Attorney General v. Bodimetric Profiles*, 404 Mass. 152, 155 (1989). The mere existence of state procedural rules for raising objections to a CID does not impose any injury on a CID recipient that could create a ripe federal controversy so long as those rules "work[] no injustice and suffer[] no constitutional invalidity." *See Reisman*, 375 U.S. at 450. And here, there is no evidence to suggest that Massachusetts' system raises any such concerns, particularly where state law allows "prompt review of" a CID for the specific purpose of protecting "against invasion of the rights of the person to whom the demand is addressed,"

---

[24] *See, e.g.*, *In re Yankee Milk, Inc.*, 372 Mass. 353, 356–63 (1977) (reviewing scope of CID issued by Massachusetts Attorney General to company operating in many States); *see also Atl. Richfield*, 546 F.2d at 649.

*Bodimetric*, 404 Mass. at 154. That the recipient of a state Attorney General's CID must follow normal state procedures for adjudicating its objections in no way justifies the recipient's skipping over an established state law CID-review process to instead obtain a preenforcement injunction from a federal court.[25]

This analysis is not altered by Exxon's failure to assert its federal claims in its Massachusetts petition, which raises nearly indistinguishable claims "under the Massachusetts Constitution, Massachusetts statutes, and Massachusetts common law." (*Compare* Pet. ¶¶ 60–67; *with* Compl. ¶¶ 86–94.) Absent compelling evidence to the contrary, federal courts must "assume that state procedures will afford an adequate remedy" for reviewing federal claims. *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 14 (1987). Respect for state sovereignty and state processes "precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). And if the CID recipient is ultimately dissatisfied with the state courts' resolution of his federal claims, he can seek review in the United States Supreme Court.

Artful pleading cannot so easily undermine this basic respect for the States' court systems. Recipients cannot manufacture federal subject matter jurisdiction through the simple expedient of refusing to participate fully in a State's available and comprehensive state court

---

[25] There is nothing novel about a State having procedural rules for preserving objections to state-issued CIDs. Idaho law, for example, also provides that a recipient of a CID issued by the Idaho Attorney General will waive challenges to the CID if it fails to raise them through Idaho's specified statutory procedure. *Idaho ex rel. Lance v. Hobby Horse Ranch Tractor & Equip. Co.*, 129 Idaho 565, 567–68 (1996); *see also Missouri ex rel. Ashcroft v. Goldberg*, 608 S.W.2d 385, 387–88 (Mo. 1980) (recipient of CID from Missouri Attorney General waived objection by failing to seek "to modify or set aside the demand" (quotation marks omitted)). And in other States, such as New York, failure to raise a timely objection to a CID can also waive the recipient's ability to seek to quash the subpoena in a later proceeding. *See Matter of Cuomo v. Dreamland Amusements Inc.*, 2009 N.Y. Slip Op. 50062, at *5 (Sup. Ct. N.Y. County 2009).

remedy for challenging a CID. *See Google*, 822 F.3d at 226 (dismissing complaint where "same challenges raised in the federal suit *could* be litigated in state court (emphasis added)); *cf. Juidice v. Vail*, 430 U.S. 327, 335 (1977) (abstention appropriate where litigants had "opportunity to fairly pursue their constitutional claims in" state proceeding). Otherwise, CID litigants could side-step the ripeness doctrine, burdening the federal courts with anticipatory challenges to CIDs issued by state Attorneys General or other state officials and agencies. Nearly any recipient of a state-issued subpoena could claim that the CID violates the First, Fourth, or Fourteenth Amendments or the Dormant Commerce Clause. (*See* Compl. ¶¶ 86–94.) *See, e.g.*, *Google*, 822 F.3d at 219. And if merely asserting these federal claims could automatically preempt state court review, the state courts' traditional supervisory authority over state-issued subpoenas would be severely impinged. The race to the federal courthouse would also undermine the States' compelling interest in protecting their citizens from fraudulent or deceptive practices, by forcing state Attorneys General to defend themselves against federal lawsuits filed all across the country. The federal courts should not facilitate such friction between the state and federal governments when recipients of state law CIDs have an adequate state court remedy available.

Exxon asserts (Compl. ¶¶ 17–18) that this Court should entertain its objections to the CID because Exxon is headquartered in Texas and stores documents there. But state Attorneys General routinely investigate companies that are based in another State or that operate and keep documents in many different States. See *supra* at 4–7. Under Exxon's theory, every CID recipient in any of those investigations could challenge the subpoena in the federal courts of the State where the company is headquartered, incorporated, or happens to store the requested information. For example, a Manhattan-based mortgage-servicing firm that receives a CID from the Texas Attorney General investigating fraudulent or deceptive mortgage practices could haul

15

the Texas Attorney General into the U.S. District Court for the Southern District of New York, rather than the Texas courts, to defend the investigation. And if the CID required the firm to "collect and review a substantial number of records stored" in Connecticut (*see* Compl. ¶ 18), the firm could elect to sue the Texas Attorney General in the federal courts of Connecticut instead. The widespread and disruptive consequences of such tactics explains why courts have already rejected the theories Exxon expounds here. *See Google*, 822 F.3d at 225–26.

**B.      Related Considerations of Abstention and Personal Jurisdiction Also Warrant Dismissal of Such a Lawsuit.**

**1.      Abstention is triggered by a pending state proceeding to review a CID issued by a state Attorney General, such as Exxon's ongoing Massachusetts proceeding.**

Like the ripeness doctrine, the doctrine of *Younger* abstention instructs federal courts to avoid unnecessary intervention in state proceedings where that would "unduly interfere" with the judicial systems and paramount sovereign interests of the States. *Younger v. Harris*, 401 U.S. 37, 44 (1971); *see Middlesex*, 457 U.S. at 431. The Fifth Circuit has concluded that the principal difference between ripeness and abstention is a matter of timing: whereas a federal challenge to a CID is unripe when the recipient has the *opportunity* to raise objections in state court irrespective of whether any state court proceeding has begun, *Younger* abstention will apply only when a state court proceeding for reviewing the CID is underway. *See Google*, 822 F.3d at 223–26. Both doctrines work together to channel challenges to state court processes into the state courts.

In this case, a proceeding in Massachusetts state court to review Exxon's objections to the CID is already pending. Such an ongoing state action to determine the propriety and ultimate enforceability of a state Attorney General's CID falls squarely within the type of pending state court proceedings that are entitled to *Younger* abstention, in that such an action implicates the

state courts' unique and traditional judicial functions. *See Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013). Reviewing and enforcing state law CIDs issued by a State's Attorney General has long been "the traditional and primary responsibility of" state courts. *Middlesex*, 457 U.S. at 438 (Brennan, J., concurring). See *supra* at 7–8. And a State's sovereign interests in preserving the paramount role of its courts in overseeing state investigations is particularly acute where the State has crafted a specific judicial process to address objections to a CID efficiently and fairly—as Massachusetts has done here.[26] A federal court ruling shutting down this critical state judicial function would improperly intrude on "the rights of a state to enforce its own laws in its own courts." *See Craig v. Barney*, 678 F.2d 1200, 1201 (4th Cir. 1982).

The States' comprehensive processes for reviewing state-issued CIDs also satisfy the two additional factors required for *Younger* abstention: a state proceeding that (i) vindicates strong state interests and (ii) provides litigants with an opportunity to object. *See Earle*, 388 F.3d at 519. States have a compelling interest in enforcing their consumer and investor protection laws through state Attorney General investigations and enforcement proceedings. And state court processes such as those in Massachusetts afford CID recipients with "an adequate opportunity to raise constitutional challenges."[27] *Earle*, 388 F.3d at 521. See *supra* at 8, 12–16.

---

[26] *See, e.g.*, *Bodimetric*, 404 Mass. at 154; *see also Juidice*, 430 U.S. at 336 (contempt proceedings warrant abstention because they are "core" piece "of a State's judicial system"); *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 520 (5th Cir. 2004) (abstention applies to a State's grand jury proceedings where grand jury acts as arm of a state court in issuing subpoenas).

[27] Abstention is also warranted under *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), which permits federal courts to abstain from adjudicating matters pending in a parallel state-court proceeding after considering such factors as the avoidance of piecemeal litigation, the inconvenience of the federal forum, and the adequacy of the state proceedings. *Id.* at 818–19. Here, abstention would avoid the piecemeal litigation that will otherwise result from parallel lawsuits proceeding in the Massachusetts and federal courts to address the same CID. Indeed, because sovereign immunity bars this Court from determining

(continued on the next page)

**2.**     **Federal courts lack personal jurisdiction over the Attorney General of another State whose only action consists of exercising her traditional state law investigatory authority.**

Our Federalism requires respect not only for the role of States in relation to the federal government but also for the coequal status of each State in relation to each of its sister States. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293–94 (1980). This principle of "interstate federalism" divests a federal court located in one State of personal jurisdiction over a different State's Attorney General conducting an investigation pursuant to her own State's laws. *See Stroman Realty, Inc. v. Wecinski*, 513 F.3d 476, 484–89 (5th Cir. 2008). Under those circumstances, the Due Process Clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction because (1) the state Attorney General does not have the requisite "minimum contacts" with the federal court's home State, and (2) exerting personal jurisdiction would "'offend traditional notions of fair play and substantial justice.'" *Id.* at 484 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

As the Fifth Circuit held in *Stroman*, a state Attorney General does not create the requisite "minimum contacts" with Texas simply by asserting her own regulatory authority over a Texas-based entity based on that entity's potential misconduct within the Attorney General's State. *Id.* at 484–86; *accord United States v. Ferrara*, 54 F.3d 825, 830–31 (D.C. Cir. 1995). A state Attorney General that exercises her traditional state law power to issue a CID does not avail herself of "the privilege of conducting activities" in the State where the CID recipient happens to

whether the Massachusetts Attorney General has complied with Massachusetts law, *see McKinley v. Abbot*, 643 F.3d 403, 406 (5th Cir. 2011), Exxon's state law challenges to the CID must proceed in Massachusetts court. The Massachusetts court, which obtained jurisdiction one day after Exxon filed its federal lawsuit, is also the more convenient forum to adjudicate a CID issued by the Massachusetts Attorney General to investigate violations of Massachusetts law. And that state forum will adequately protect Exxon's rights. See *supra* at 8, 12–14.

be located. *Stroman*, 513 F.3d at 484 (quotation marks omitted). Rather, the Attorney General has fulfilled her state law duty to "uphold and enforce the laws of" her own State. *Id.* at 486. Holding otherwise would put state Attorneys General in the untenable position of having to predict which of many federal courts located in different States might assert personal jurisdiction depending on where a CID recipient operates or stores subpoenaed information. *See World-Wide Volkswagen*, 444 U.S. at 297 (due process requires that defendant can "reasonably anticipate being haled into court").

Moreover, the policy considerations that dictate whether an exercise of jurisdiction would be reasonable and fair preclude a Texas federal court from exerting personal jurisdiction over a different State's Attorney General based merely on her issuing a CID to a Texas-based company. *See generally id.* at 292–93. In assessing the reasonableness of jurisdiction, the "most significant" consideration is preserving the dignity of each State's sovereign interests. *Stroman*, 513 F.3d at 488. But allowing a federal court to exercise "personal jurisdiction over a nonresident state official" conducting a state law investigation would diminish each State's independence by creating "an avenue for challenging the validity of one state's laws in courts located in another state." *Id.* The "principles of interstate federalism embodied in the Constitution" counsel strongly against such a result. *Id.* (quotation marks omitted).

Reasonableness considerations also weigh against the exercise of personal jurisdiction over a nonresident Attorney General. First, exercising jurisdiction would burden not only the Attorney General, who would be required to litigate in a faraway forum, but also the public interest of the Attorney General's State. The State's strong interest in combatting misconduct efficiently and effectively would be diminished because its Attorney General would "have to defend her attempt to enforce" her State's laws "in courts throughout the nation"—hampering

19

investigations before they truly begin. *Id.* at 487. And the Attorney General's State would lose "the benefit of having" its own state law investigations examined by its own courts, which have a "special expertise" in interpreting that State's laws. *Id.* Second, unlike the investigating Attorney General's State, the forum State of the federal court has "little interest in adjudicating disputes" over the validity of a CID issued under a different State's consumer and investor protection laws. *Id.* Finally, judicial efficiency further counsels against the exercise of personal jurisdiction to avoid the "multiplicity of inconsistent verdicts" that would result from having different federal courts situated in different States adjudicate similar disputes over CIDs—a significant risk for state investigations into complex financial frauds that often involve CIDs issued to many companies operating in many States. *See id.* at 488.

### C.   The Discretion Conferred on Federal Courts by the Declaratory Judgment Act Is an Additional Reason for Declining to Interfere with a Pending State Court Proceeding Reviewing a State-Issued Subpoena.

Even if this Court were to determine that ripeness or other doctrines do not mandate dismissal of Exxon's federal complaint, it should still exercise its broad discretion to decline to hear this case. The Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Courts consider multiple, nonexclusive factors in evaluating whether to entertain a declaratory judgment action, including: (i) federalism principles that inform the "proper allocation of decision-making between state and federal courts"; (ii) considerations of fairness, such as whether the federal lawsuit is being used for improper forum shopping; and (iii) issues of efficiency and judicial economy. *See Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390–92 (5th Cir. 2003). These factors, and basic "considerations of practicality and wise judicial administration," *Wilton*, 515 U.S. at 288, call for dismissal of a declaratory judgment

action where, as here, a pending state court proceeding will properly adjudicate all federal and state law issues concerning a state Attorney General's CID issued pursuant to state law.

When an established and adequate state court process for reviewing a state Attorney General's CID is underway, "federalism and comity concerns" weigh strongly against a federal court entertaining a declaratory judgment action involving the same issues that are raised in the state litigation. *See Sherwin-Williams*, 343 F.3d at 392. Issues of state law—such as whether a state statute authorizes the investigation—often predominate in CID challenges. Indeed, here, Exxon raises a host of issues based on Massachusetts law. (*See* Compl. ¶¶ 10, 56–62, 72.) Under these circumstances, a federal declaratory judgment action "serve[s] no useful purpose" and only creates "needless conflict" with the state courts. *See Employers' Liab. Assurance Corp. v. Mitchell*, 211 F.2d 441, 443 (5th Cir. 1954).

Fairness-related factors also counsel for dismissal of declaratory judgment actions like the action Exxon brings here. Allowing the recipient of a state-issued CID to circumvent the state court system designated to review the CID would permit unfair and abusive forum shopping that denigrates the rightful role of the States. A CID recipient could use the federal courts to attempt to select the state law applicable to its challenge by invoking the law of the State in which the federal court sits rather than the law of the State governing the Attorney General's subpoena powers—as Exxon seeks to do here (*see* Compl. ¶¶ 81, 87, 93). *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 at 602 n.3 (5th Cir. 1983) (upholding dismissal of declaratory judgment action where choice of forum could affect burden of proof or applicable law). And an objector could further seek to game choice-of-law rules by selecting among federal courts sitting in different States, such as the State in which the CID recipient is headquartered, incorporated, or stores documents. See *supra* at 15–16. Such procedural fencing would improperly strip

Attorneys General of their traditional state law authority and permit the CID recipient "to gain precedence in time and forum by its conduct." *See Sherwin-Williams*, 343 F.3d at 397 (quotation marks omitted).

Efficiency and judicial economy further warrant dismissal of a federal challenge to a state Attorney General's CID. Proceeding in federal court would create wasteful, duplicative litigation when the designated state court experienced in adjudicating the CID is already reviewing the recipient's objections. *See id.* at 391. Such unnecessary federal proceedings would also risk inconsistent judgments on issues of state law that necessarily govern a state-issued CID. *See id.* And hauling a state Attorney General into a federal court located in a different State would be inconvenient and impede on the State's compelling interest in having a localized controversy involving the Attorney General's state law authority resolved by the state courts. *See id.* at 392; *cf. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981).

## POINT II

### THE PUBLIC INTEREST AND BALANCE OF THE EQUITIES SUPPORT DENIAL OF A PRELIMINARY INJUNCTION

To obtain the extraordinary remedy of a preliminary injunction, Exxon must demonstrate not only that it is likely to succeed on the merits, but also that it will "suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *see Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974) ("[A] preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion."). Exxon cannot meet this high bar for two reasons. First, the public interest and balance of the equities strongly favor States' compelling interests in

protecting their citizens from harmful practices and ensuring that their state courts maintain authority to review state-issued CIDs. Second, CID objectors do not suffer irreparable harm from being remitted to an available and adequate state court remedy.

### A. The Public Interest and Balance of the Equities Weigh Heavily Against a Preliminary Injunction.

The public interest in all States would suffer significant injury if CID recipients could obtain a federal injunction to thwart a state Attorney General's investigation into potential misconduct. State Attorneys General are responsible under state law for serving the public interest by investigating and combatting false, misleading, and deceptive practices that harm state consumers and investors. See *supra* at 2–5. The Massachusetts Attorney General seeks to fulfill this fundamental state law responsibility by gathering the information necessary to discern whether a company's practices have defrauded or misled Massachusetts citizens. Her CID is not materially different from countless subpoenas that Attorneys General have issued to businesses headquartered or operating in other States. See *supra* at 4–5. And contrary to Exxon's suggestion (*see* Compl. ¶¶ 19–35), there is nothing alarming about the Massachusetts Attorney General working with other state Attorneys General—a common cooperative practice that has long aided Attorneys General in combatting widespread wrongdoing. See *supra* at 5–7.

A preliminary injunction barring the Massachusetts Attorney General from even asking the Massachusetts courts to enforce the CID would thus hurt the public not only in Massachusetts but also in States across the country. Such an injunction would undermine the fundamental authority of state Attorneys General to investigate and prevent consumer and investor harms in their States. Without the ability to obtain the basic facts necessary to determine whether a business has violated state laws, state Attorneys General would be hamstrung in uncovering violations of state law and bringing enforcement actions to aid victims and remediate unlawful

23

practices. Stymying investigations at their earliest stages, before Attorneys General can determine whether any misconduct has occurred, defeats the public interest that the States' consumer and investor protection laws are designed to protect.

On the other side of the balance, denying a preliminary injunction would not injure CID recipients or the public. Denying the preliminary relief that Exxon seeks here would simply remit the CID recipient to the existing and adequate state law remedy for challenging subpoenas—a result that does not cause any "undue hardship." *Atl. Richfield*, 546 F.2d at 649; *see Reisman*, 375 U.S. at 445–49. That state law process fully protects the interests of CID recipients and the public in ensuring that state Attorneys General exercise their subpoena powers properly and within constitutional and statutory limits. And allowing the state courts to review state-issued CIDs further promotes public goals by preserving federalism values.

**B.     Exxon Will Not Suffer Any Irreparable Injury from Litigating Its Objections to the CID in the Massachusetts Courts.**

Exxon has also failed to establish that it will suffer any irreparable harm if a preliminary injunction is denied. A CID recipient such as Exxon does not experience irreparable injury from having to challenge the CID through an established and comprehensive state court process rather than a preemptive federal lawsuit. To show irreparable harm warranting a preliminary injunction, a CID recipient must demonstrate "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). But the availability of an "adequate remedy at law" in state court to challenge a state Attorney General's CID, *see Google*, 822 F.3d at 225, necessarily supplies the type of adequate legal remedy that renders a preliminary injunction unnecessary and inappropriate.

Accordingly, contrary to Exxon's assertion (Compl. ¶¶ 78–80), the mere existence of a CID does not cause irreparable injury. If there is anything to Exxon's arguments about the First,

Fourth, and Fourteenth Amendments or the Dormant Commerce Clause, it can raise its objections to the Massachusetts courts. And Exxon does not face immediate sanctions for noncompliance while its state court challenge is pending, and would not suffer penalties in any event unless the Massachusetts Attorney General petitions the state court for such relief. See *supra* at 8, 12–13. Any possible harm from the Attorney General's future enforcement of the CID is thus fully reparable in state court. And if the Massachusetts courts were to reject Exxon's federal challenges, Exxon can seek review in the Supreme Court. Invoking the First Amendment and other provisions of the federal Constitution does not change the fact that Exxon already has a full and adequate legal remedy available to it to challenge the CID.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Exxon's complaint and deny Exxon's motion for a preliminary injunction.

Dated:  Baltimore, Maryland
August 17, 2016

Respectfully submitted,

ERIC T. SCHNEIDERMAN
 *Attorney General*
 *State of New York*
BARBARA D. UNDERWOOD
 *Solicitor General*
ANISHA S. DASGUPTA
 *Deputy Solicitor General*
JUDITH N. VALE
 *Assistant Solicitor General*
 (Pro Hac Vice pending)

120 Broadway
New York, NY 10271
Tel: (212) 416-8020
Fax: (212) 416-8962

BRIAN E. FROSH
 *Attorney General*
 *State of Maryland*

*/s/ Thiruvendran Vignarajah*
THIRUVENDRAN VIGNARAJAH
 *Deputy Attorney General*
 (Pro Hac Vice pending)
 Maryland Bar # 0812180249

200 St. Paul Place,
Baltimore, MD 21202
Tel: (410) 576-6300
Fax: (410) 576-7036
tvignarajah@oag.state.md.us

(*Counsel listing continues on next page*)

25

JAHNA LINDEMUTH
  *Attorney General*
  *State of Alaska*
P.O. Box 110300
Juneau, AK 99811

GEORGE JEPSEN
  *Attorney General*
  *State of Connecticut*
55 Elm St.
Hartford, CT 06106

DOUGLAS S. CHIN
  *Attorney General*
  *State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

LISA MADIGAN
  *Attorney General*
  *State of Illinois*
100 W. Randolph St., 12th Fl.
Chicago, IL 60601

THOMAS J. MILLER
  *Attorney General*
  *State of Iowa*
1305 E. Walnut Street
Des Moines IA 50319

ANDY BESHEAR
  *Attorney General*
  *Commonwealth of Kentucky*
Capitol Building, Suite 118
700 Capitol Avenue
Frankfort, KY 40601

JANET T. MILLS
  *Attorney General*
  *State of Maine*
6 State House Station
Augusta, ME 04333

LORI SWANSON
  *Attorney General*
  *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

JIM HOOD
  *Attorney General*
  *State of Mississippi*
P.O. Box 220
Jackson, MS 30205

CHRISTOPHER S. PORRINO
  *Attorney General*
  *State of New Jersey*
25 Market Street
P.O. Box 080
Trenton, New Jersey 08625

HECTOR H. BALDERAS
  *Attorney General*
  *State of New Mexico*
408 Galisteo St.
Santa Fe, NM 87501

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court St. N.E.
Salem, OR 97301

PETER F. KILMARTIN
  *Attorney General*
  *State of Rhode Island*
150 S. Main St.
Providence, RI 02903

WILLIAM H. SORRELL
  *Attorney General*
  *State of Vermont*
109 State Street
Montpelier, VT 05609

*(Counsel listing continues on next page)*

MARK R. HERRING
  *Attorney General*
  *Commonwealth of Virginia*
202 North Ninth St.
Richmond, VA 23219

ROBERT W. FERGUSON
  *Attorney General*
  *State of Washington*
1125 Washington Street SE
P.O. Box 40100
Olympia, WA 98504

KARL A. RACINE
  *Attorney General*
  *District of Columbia*
441 4th Street, NW
Washington, DC 20001

CLAUDE EARL WALKER
  *Attorney General*
  *U.S. Virgin Islands*
3438 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, VI 00802

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2016, I caused the foregoing *Amici* States' Memorandum of Law in Support of Defendant's Motion to Dismiss and in Opposition to Plaintiff's Motion for a Preliminary Injunction to be served on all parties via the Court's CM/ECF system.

<u>*/s/ Thiruvendran Vignarajah*</u>
Thiruvendran Vignarajah