IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:16-CV-469-K |
| | § | |
| MAURA TRACY HEALEY, Attorney | § | |
| General of Massachusetts, in her | § | |
| official capacity, | § | |
| | § | |
| Defendant. | § | |
| | § | **ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF EXXON MOBIL CORPORATION'S
MOTION FOR A PRELIMINARY INJUNCTION**

Patrick J. Conlon (*pro hac vice*)
Daniel E. Bolia
EXXON MOBIL CORPORATION
1301 Fannin Street
Houston, TX 77002
(832) 624-6336


Theodore V. Wells, Jr. (*pro hac vice*)
Michele Hirshman (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Justin Anderson (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
(212) 757-3990 – Fax

Ralph H. Duggins
Philip A. Vickers
Alix D. Allison
CANTEY HANGER LLP
600 W. 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800
(817) 877-2807 – Fax

Nina Cortell
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
(214) 651-5579
(214) 200-0411 – Fax

*Counsel for Exxon Mobil Corporation*

Exxon Mobil Corporation ("ExxonMobil" or the "Company") respectfully submits this reply in support of its motion for a preliminary injunction.[1]

## PRELIMINARY STATEMENT

ExxonMobil's opening brief demonstrated how Attorney General Healey's official actions and statements violated ExxonMobil's constitutional rights.  The Attorney General offers no real defense of her statements supporting her use of law-enforcement tools to change climate policy or her decision to focus those tools exclusively on entities she views as opposing her policy preferences.  Rather than address those revealing statements and actions, the Attorney General instead falls back upon platitudes about the scope of her power to investigate and prosecute fraud.  But this case is not about the legitimate exercise of state law-enforcement power.  It is about the misuse of government power and the vital role federal courts play in restraining such abuses.  While the Attorney General might have the power to issue civil investigative demands ("CIDs"), she does not have the power to use them to restrict speech on matters of public concern.  The Attorney General has not defended her actions and statements because they are indefensible, partisan, and unconstitutional.  It is the proper role of this Court to put a stop to this misuse of state power.

## ARGUMENT

### I.   ExxonMobil Is Likely to Prevail on the Merits.

#### A.   The Attorney General's Viewpoint Discrimination Violates the First Amendment.

The record demonstrates that the Attorney General issued the CID to silence ExxonMobil and others who she believes disagree with her on climate change policy.  That is textbook

---

[1]   "Opp." refers to the memorandum filed by the Attorney General in opposition to ExxonMobil's motion for a preliminary injunction; "Mot." refers to the brief filed by ExxonMobil in support of its motion for a preliminary injunction; and "Compl." refers to the Complaint.

viewpoint discrimination, and the First Amendment prohibits it.

Attorney General Healey admittedly joined certain partisan state attorneys general and private citizen Al Gore to promote the use of state law-enforcement powers to take "progressive action to address climate change" as a remedy for Congress's failure to enact policies favored by the so-called Green 20.[2]  Declaring that she had a "moral obligation" to move the country toward a "clean energy future," the Attorney General vowed to take "quick aggressive action" to alleviate a threat to "the very existence of our planet," and she then issued a CID to ExxonMobil demanding, among other things, all communications between ExxonMobil and 12 organizations, each of which has been derided as a so-called climate change "denier."[3]  Attorney General Healey's improper motive has been revealed further through her participation in a common interest agreement that was recently obtained by a third party through a public records request.[4] That agreement, which is designed to shield the participants' communications from the public, shows that the purpose of the Attorney General's investigation is entirely political: "limiting climate change and ensuring the dissemination of accurate information about climate change."[5]

 The Attorney General makes no attempt to defend her statements at the press conference, the CID's exclusive focus on groups that disagree with her politics, or the execution of a common interest agreement memorializing her intent to regulate speech on a matter of public policy.  Instead, she pivots to propositions over which the parties do not disagree and which do not contradict the record of viewpoint discrimination established by ExxonMobil.

First, the Attorney General submits that the First Amendment does not protect "false,

---

[2]  Supp. App. 78, 81–82, 84–85, 88–89, 272.

[3]  *See* Supp. App. 84–85, 106.

[4]  A number of public records requests were issued to various Attorneys Generals' offices.  A production by the Attorney General of Rhode Island revealed the existence of this common interest agreement.  To date, we understand that Attorney General Healey and other members of the Green 20 have refused to produce any documents in response to the public records requests to their respective offices.

[5]  Supp. App. 124.

deceptive, or misleading statements in the marketplace." Opp. 2, 17-18. ExxonMobil does not quarrel with the proposition that fraud finds no refuge in the First Amendment. ExxonMobil does, however, contest the Attorney General's belief that the mere invocation of the word "fraud" dispels all First Amendment concerns raised by the CID. Were that so, the State of Alabama could have circumvented the holding of *NAACP* v. *Patterson*, 357 U.S. 449 (1958), simply by claiming it sought the NAACP's membership list in connection with a "fraud" investigation. The Supreme Court has rejected any such sleight of hand, recognizing that "[s]imply labeling an action one for 'fraud,' of course, will not carry the day." *Illinois ex rel. Madigan* v. *Telemarketing Assocs.*, 538 U.S. 600, 617 (2003). The Attorney General must offer more than her say-so that her investigation pertains to fraud and not the suppression of disfavored speech. But what she has presented amounts to little more than pretext based on (i) selective excerpts from documents that create a misimpression about ExxonMobil's climate research, and (ii) a theory of financial fraud that is half-baked and easily debunked. Behind this pretext lies nothing more than the Attorney General's unconstitutional viewpoint discrimination.

Second, the Attorney General contends that mere "routine corporate business records" are not protected by the First Amendment. Opp. 16-17. The problem here is that the CID is hardly limited to conventional business records like shipping invoices, accounting records, or business plans. Among other things, the CID seeks ExxonMobil's communications with third parties on matters of public policy, as well as ExxonMobil's underlying climate research.[6] Such communications and research are hardly outside the First Amendment's concern. *See, e.g.*, *First Nat. Bank of Boston* v. *Bellotti*, 435 U.S. 765, 776-86 (1978).

Even if the Attorney General sought nothing more than routine business records, and those records in fact were not protected by the First Amendment, her argument would still be

---

[6]   Supp. App. 105–113.

incorrect as a matter of law.  That is because even if the speech at issue has no "claim upon the First Amendment," a state "may not regulate [its] use based on hostility—or favoritism—towards the underlying message expressed."  *R.A.V.* v. *City of Saint Paul*, 505 U.S. 377, 386 (1992).  For example, "fighting words" are not protected by the First Amendment, but the state may not ban them based on its disagreement with a speaker's political views.  *See id.* at 384-86. Accordingly, it does not matter whether the underlying records are protected by the First Amendment.  Where, as here, the demand for records is motivated by viewpoint bias, the First Amendment prohibits the state action the Attorney General has undertaken.

**B.      The Attorney General's Baseless Fishing Expedition Violates the Fourth Amendment.**

Striving to justify her investigation, Attorney General Healey identifies two grounds for investigating ExxonMobil.  Both are mere pretexts, which is why she must defend fishing expeditions, like the one she is conducting here, and insist that the Constitution presents no barrier to them.  None of this withstands close scrutiny.

Relying on carefully selected excerpts of certain ExxonMobil documents, the Attorney General alleges that ExxonMobil knew about the risks of climate change decades ago and fraudulently concealed that knowledge from the public.  Opp. 19.  A review of these documents demonstrates that ExxonMobil's internal knowledge was well within the mainstream of thought on the issue—the contours of which remain unsettled even today—and fully consistent with its public statements.[7]

Consider, for example, Attorney General Healey's reference to a 1984 presentation delivered by an ExxonMobil scientist at an environmental conference.[8]  The Attorney General claims that the scientist "predict[ed] significant increases in global temperature as a result of the

---

[7]    Supp. App. v to xiii (declaration of J. Anderson, dated Aug. 23, 2016).
[8]    Supp. App. 58–71.

combustion of fossil fuels." Opp. 7. Hardly. What the scientist actually said was, if "a number of assumptions" were valid, there could be a three-degree rise in global temperatures "by 2090."[9] And that statement was entirely consistent with the views expressed at the time by the EPA, the National Academy of Sciences ("NAS"), and MIT.[10] ExxonMobil did not have access to special insight on the risks of climate change, nor did it conceal that knowledge from the public. ExxonMobil, like the EPA, NAS, and MIT, was evaluating data and testing theories in an area of science that was evolving. That—and not a scheme to defraud—is why it took another 25 years before the EPA issued an endangerment finding for greenhouse gas emissions.[11] The other documents excerpted by the Attorney General are equally innocuous, as shown in the Anderson Declaration, revealing this theory of fraud as nothing more than a smokescreen for a constitutional tort.

Even more fanciful is the Attorney General's claim that ExxonMobil failed to "disclose" to the public that future climate change regulations are likely to bar further development of its "vast fossil fuel reserves." Opp. 7-9. "Proved reserves," under SEC regulations, encompass only energy sources that ExxonMobil estimates with "reasonable certainty" to be economically producible "under existing economic conditions, operating methods, and government regulations."[12] By definition, therefore, future government regulations, which may or may not be enacted, are not to be considered when measuring and disclosing proved reserves. Even if they were, however, at current production rates, ExxonMobil's proved reserves are expected to

---

[9]   Supp. App. 70.
[10]   *See* Supp. App. 64 (noting that the EPA, NAS, and MIT predicted temperature increases of 3°C, 2°C, and 1.5-4.5°C, respectively); *see also* Supp. App. 150 (EPA report from 1983 noting the possibility of a 5°C increase by 2100); Supp. App. 178 (NAS report from 1983 stating that "temperature increases of a couple of degrees or so" were projected for the next century).
[11]   Supp. App. 184–85.
[12]   *Modernization of Oil & Gas Reporting*, SEC Release No. 78, File No. S7-15-08, 2008 WL 5423153, at *66 (Dec. 31, 2008).

be produced, on average, within 16 years.[13]   Attorney General Healey has identified no regulation—federal, state, or international—within that timeframe that is reasonably likely to prevent ExxonMobil from developing its proved reserves.[14]  Instead, the Attorney General points to the advocacy of certain entities calling for such regulations.  Opp. 8.  It is far from clear, however, that anything will come from that advocacy.  Attorney General Healey is well aware of this state of affairs; she and her colleagues identified Congressional inaction as the catalyst for their climate change "investigations."[15]  That acknowledgment eviscerates her new claim that the urged laws or regulations will cause ExxonMobil's proved reserves to be "stranded."[16]

The ease with which these two pretexts are rebutted requires the Attorney General to default to a fallback position—namely, that the Constitution permits her to engage in a fishing expedition.  Opp. 18 & n.49.  But even her lead precedent recognizes that "the disclosure sought shall not be unreasonable," the touchstone of the Fourth Amendment.  Opp. 18 (quoting *United States* v. *Morton Salt Co.*, 338 U.S. 632, 652–53 (1950)).  And none of her out-of-circuit, lower court decisions can abrogate the Supreme Court's determination that the Fourth Amendment applies with "scrupulous exactitude" when the government demands materials protected by the First Amendment.  *Zurcher* v. *Stanford Daily*, 436 U.S. 547, 564 (1978).  Where, as here, a subpoena fails to identify any plausibly illegal activity, the Fourth Amendment guarantees corporations and individuals alike the "right to be free from baseless investigations (commonly

---

[13]   Supp. App. 200.

[14]   ExxonMobil is not alone in its conclusion that near-term regulations are unlikely to strand proved reserves. Other energy companies have reached the same conclusion.  *Compare* Supp. App. 205 (explaining that producing reserves "is essential to meeting growing energy demand worldwide"), *with* Supp. App. 243-44 (noting that projections of stranded assets "do[] not take into account the fact that the demand for oil and gas would be much higher than what can possibly be produced from existing, producing oil and gas fields"), *and* Supp. App. 255 ("Shell does not believe that any of its proven reserves will become 'stranded' as a result of current or reasonably foreseeable future legislation concerning carbon.").

[15]   Supp. App. 78, 81–82, 88–89, 272.

[16]   Indeed, the Attorney General's investigation apparently has more to do with picking winners and losers in the marketplace for energy than enforcing the law.  The Attorney General expressed interest in working with other members of the so-called Green 20 to clear "Roadblocks To Renewables," and her office was eager to share its plans to "[a]dvanc[e] clean energy."  Supp. App. 277, 284.

referred to as 'fishing expeditions')." *Major League Baseball* v. *Crist*, 331 F.3d 1177, 1187 (11th Cir. 2003).[17]  Attorney General Healey's fishing expedition runs afoul of settled precedent and should be enjoined.

### C.    The Attorney General's Bias Violates the Fourteenth Amendment.

Assiduously avoiding any discussion of the actual content of her public statements, Attorney General Healey strains to defend her actions by pointing to her "unremarkable authority, as an elected official and a prosecutor," to inform the public and the press of her investigation.  Opp. 22.  ExxonMobil does not object to the Attorney General's authority to hold press conferences; it objects to, and is aggrieved by, the improper and unconstitutional bias she exhibited during the extraordinary press conference announcing this investigation.

At the March 29 press conference, Attorney General Healey described her investigation of ExxonMobil as "quick, aggressive action" to "address climate change and to work for a better future."[18]  She targeted ExxonMobil to score political points on a matter of public policy. Prejudging the results of the investigation, she informed the public that her office had already found a "troubling disconnect between what Exxon knew, what industry folks knew, and what the company and industry chose to share with investors and with the American public."[19]  Those statements reflect unconstitutional bias.

Attorney General Healey argues there has been no violation of the Constitution and, for support, points to decisions addressing alleged strong-arm tactics and bias claims that do not

---

[17]   The Attorney General's alternative defenses of the CID are weaker still.  The CID is legitimate, she says, because it may turn up some thus far unidentified "bases for continuing liability" and "equitable tolling."  Opp. 20.  But that description is nearly a canonical articulation of what the Fourth Amendment was designed to forbid.  General warrants, which broadly authorized searches for proof of wrongdoing, were reviled by the founding generation and prohibited by the Fourth Amendment.  *Riley* v. *California*, 134 S. Ct. 2473, 2494 (2014).  Where law enforcement seeks ill-defined categories of materials like "evidence of a crime," courts reject the attempted search as a general warrant in disguise.  *United States* v. *Stefonek*, 179 F.3d 1030, 1032-33 (7th Cir. 1999).

[18]   Supp. App. 85.

[19]   Supp. App. 84.

involve any public statements.[20]   Irrelevant precedent does not obscure the record of her expressed "improper motives" in pursuing this investigation.  *Young* v. *U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987).  Where, as here, an investigation has been initiated due to the alleged "inaction" of a Republican Congress and is undertaken out of bias against a perceived opponent in an ongoing debate over public policy, the due process of law is offended and an injunction is warranted.

### D.   The Attorney General's Attempted Extraterritorial Regulation Violates the Dormant Commerce Clause.

The CID regulates interstate commerce because it is a state action that has the practical effect of limiting ExxonMobil's speech outside the Commonwealth of Massachusetts.  Mot. 22–24.  The Attorney General disputes that proposition because she can find no precedent where a CID was held to have violated the Dormant Commerce Clause.  Opp. 23-24.  But novelty in the means by which the Constitution is violated does not make the injury any less concrete.  The Dormant Commerce Clause forbids a state from taking actions that have the "practical effect of controlling conduct outside of the state."  *Pharm. Research Mfrs. of Am.* v. *Concannon*, 249 F.3d 66, 79 (1st Cir. 2001).  The CID does exactly that:  It targets and demands the disclosure of communications about climate change that took place outside of Massachusetts, and it does so because the Attorney General wants to silence views that ExxonMobil expressed outside of Massachusetts.  ExxonMobil's opening brief challenged the Attorney General to identify a "relevant connection" between Massachusetts and the materials the CID demands.  Mot. 24.  That challenge has gone unanswered, demonstrating the absence of any link to Massachusetts and the impropriety of this "progressive action" to regulate out-of-state communications.

---

[20]   *See All Am. Check Cashing, Inc.* v. *Corley*, No. 3:16CV55TSL-RHW, 2016 WL 1173120, at *9 (S.D. Miss. Mar. 22, 2016) (alleged strong-arm tactics and press leaks); *Empower Texans, Inc.* v. *Tex. Ethics Comm'n*, No. A-14-CA-172-SS, 2014 WL 1666389, at *1, *5 (W.D. Tex. Apr. 25, 2014) (alleged prejudgment of the case).

## II.     ExxonMobil Faces an Irreparable Injury.

A violation of constitutional rights constitutes an irreparable harm, "justifying the grant of a preliminary injunction." *Palmer ex rel. Palmer* v. *Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (First Amendment); *Bonnell* v. *Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001).  Attorney General Healey disputes this settled proposition by claiming that *Google, Inc.* v. *Hood*, 822 F.3d 212 (5th Cir. 2016), held that the availability of state court proceedings renders a constitutional injury no longer irreparable.  Opp. 13-14.  *Google* stands for no such thing.  There, the Fifth Circuit vacated an injunction because the case was unripe, not in deference to a state proceeding.  *See* 822 F.3d at 226.  *Google* did nothing to alter the well-settled rule that a party whose First Amendment rights are threatened faces an irreparable injury.  *Elrod* v. *Burns*, 427 U.S. 347, 373 (1976).

Falling equally wide of the mark is the Attorney General's assertion that ExxonMobil "can readily comply with Massachusetts's investigation" because it has produced certain records to the New York Attorney General.  Opp. 14.  That argument misconceives the relevant injury. ExxonMobil has been injured, not because complying with the CID would be impossible, but because its constitutional rights have been violated by the demand that it produce documents in an unconstitutionally conceived and executed investigation.  Nothing about ExxonMobil's response to a different demand issued by a different state agency under a different statute excuses Attorney General Healey's violation of ExxonMobil's rights.

Finally, the Attorney General suggests that ExxonMobil's injury turns on whether the "CID curtails its speech."  Opp. 14–15.  Not so.  A First Amendment violation premised on viewpoint discrimination does not require proof that any speech has been curtailed, and the Attorney General has identified no authority holding otherwise.  In fact, none of the precedents she cites even addresses viewpoint discrimination.  They pertain to other First Amendment

claims that, at times, can require that a curtailment of speech be established.  Opp. 15.  Those precedents have no relevance here.

### III.  The Public Interest Favors Granting the Injunction.

The public interest is "always" best served by a preliminary injunction that protects First Amendment freedoms.  *Opulent Life Church* v. *City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012).  The public also has an interest in ensuring that state law-enforcement officers exercise their powers constitutionally.  Attorney General Healey believes that interest weighs in her favor, pointing to a bipartisan amicus brief filed last year by 40 attorneys general opposing a challenge to a state subpoena.  Opp. 24.  Here, however, only half as many attorneys general have joined an amicus brief in support of the Attorney General's position.  Moreover, numerous attorneys general have publicly criticized Attorney General Healey's investigation.  Compl. ¶¶ 36–37.[21]  The public interest fully supports a preliminary injunction.

### CONCLUSION

Attorney General Healey issued the CID to pressure a perceived political opponent into silence.  She announced that intent at the press conference, along with her prejudgment of the results of her investigation.  She gave it the force of law in the CID, which targets a single entity that she believes disagrees with her policy perspective.  And she memorialized it in a common interest agreement with the express objective of "ensuring the dissemination of accurate information about climate change."  These facts are damning, and that is why the Attorney General refuses to engage with them.  Notwithstanding any dissatisfaction the Attorney General might have with Congress, our Constitution requires that policy disagreements be resolved at the ballot box.  Because a bad-faith investigation is not a constitutionally permissible substitute for the rigors of the democratic process, ExxonMobil's motion should be granted.

---

[21]   Supp. App. 258–69.

Dated:  August 24, 2016


EXXON MOBIL CORPORATION

By:  /s/ Patrick J. Conlon

Patrick J. Conlon
*pro hac vice*
State Bar No. 24054300
Daniel E. Bolia
State Bar No. 24064919
daniel.e.bolia@exxonmobil.com
1301 Fannin Street
Houston, TX 77002
(832) 624-6336



/s/ Theodore V. Wells, Jr.

Theodore V. Wells, Jr.
*pro hac vice*
twells@paulweiss.com
Michele Hirshman
*pro hac vice*
Daniel J. Toal
*pro hac vice*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
(212) 757-3990 – Fax

Justin Anderson
*pro hac vice*
janderson@paulweiss.com
2001 K Street, NW
Washington, D.C. 20006-1047
(202) 223-7300
(202) 223-7420 – Fax


*Counsel for Exxon Mobil Corporation*

/s/ Ralph H. Duggins

Ralph H. Duggins
State Bar No. 06183700
rduggins@canteyhanger.com
Philip A. Vickers
State Bar No. 24051699
pvickers@canteyhanger.com
Alix D. Allison
State Bar. No. 24086261
aallison@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800
(817) 877-2807 – Fax


/s/ Nina Cortell

Nina Cortell
State Bar No. 04844500
nina.cortell@haynesboone.com
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
(214) 651-5579
(214) 200-0411 – Fax

11

## **CERTIFICATE OF SERVICE**

This is to certify that on this 24th day of August 2016, a true and correct copy of the foregoing document was filed electronically via the CM/ECF system, which gave notice to all counsel of record pursuant to Local Rule 5.1(d).

/s/ Ralph H. Duggins
Ralph H. Duggins