IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:16-CV-469-K |
| | § | |
| MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity, | § | |
| | § | |
| | § | **ORAL ARGUMENT REQUESTED** |
| Defendant. | § | |
| | § | |

# EXXON MOBIL CORPORATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Patrick J. Conlon (*pro hac vice*)
Daniel E. Bolia
EXXON MOBIL CORPORATION
1301 Fannin Street
Houston, TX 77002
(832) 624-6336

Theodore V. Wells, Jr. (*pro hac vice*)
Michele Hirshman (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Justin Anderson (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

Ralph H. Duggins
Philip A. Vickers
Alix D. Allison
CANTEY HANGER LLP
600 W. 6th St. #300
Fort Worth, TX 76102
Tel: (817) 877-2800
Fax: (817) 877-2807

Nina Cortell
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
Tel: (214) 651-5579
Fax: (214) 200-0411

*Counsel for Exxon Mobil Corporation*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

    A.    The Attorney General's Public Statements Demonstrate Viewpoint Bias. ............ 2

    B.    The CID Is a Fishing Expedition that Expressly Targets One Side of a Political Debate. ........................................................................................... 2

    C.    Recently Obtained Documents Further Demonstrate the Political Nature of the Green 20 Investigations. ............................................................... 3

    D.    The Attorney General Directed the CID and Constitutional Torts at Texas. .......... 4

PROCEDURAL HISTORY ...................................................................................... 5

ARGUMENT ...................................................................................................... 6

I.    This Court Has Personal Jurisdiction over the Attorney General. ...................... 6

    A.    The Texas Long-Arm Statute Reaches the Attorney General. .......................... 6

    B.    Exercising Personal Jurisdiction over the Attorney General Comports with Due Process. ................................................................................. 9

        1.    Applicable Law ..................................................................... 9

        2.    Discussion ......................................................................... 10

II.    This Court Should Reject the Attorney General's Request for Abstention. ...................... 17

    A.    Applicable Law ......................................................................... 17

    B.    Discussion .............................................................................. 18

        1.    The Attorney General's Bad Faith Precludes Abstention. ........................ 18

        2.    Even Absent Bad Faith, *Younger* Abstention Is Inappropriate. ................ 20

III.    ExxonMobil's Constitutional Claims Are Ripe for Adjudication. ...................... 22

IV.    Venue Is Proper in this District. .......................................................... 24

CONCLUSION ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

### CASES

*21 Turtle Creek Square, Ltd.* v. *N.Y. State Teachers' Ret. Sys.*,
    425 F.2d 1366 (5th Cir. 1970) ..............................................7

*Asgeirsson* v. *Abbott*,
    773 F. Supp. 2d 684 (W.D. Tex. 2011), *aff'd*, 696 F.3d 454 (5th Cir. 2012) .........................24

*Atwood Hatcheries* v. *Heisdorf & Nelson Farms*,
    357 F.2d 847 (5th Cir. 1966) ..............................................6

*Bd. of Cty. Comm'rs of Beaver Cty., Okla.* v. *Amarillo Hosp. Dist.*,
    835 S.W.2d 115 (Tex. App.—Amarillo 1992, no writ) ..............................................7

*Bear Stearns Cos.* v. *Lavalle*,
    No. 3:00 Civ. 1900-D, 2001 WL 406217 (N.D. Tex. Apr. 18, 2001) .....................................12

*Bice* v. *La. Pub. Defender Bd.*,
    677 F.3d 712 (5th Cir. 2012) ..............................................18, 21

*Bishop* v. *State Bar of Tex.*,
    736 F.2d 292 (5th Cir. 1984) ..............................................18, 19

*Clark Advert. Agency, Inc.* v. *Tice*,
    331 F. Supp. 1058 (N.D. Tex. 1971), *aff'd*, 490 F.2d 834 (5th Cir. 1974) .............................7

*Cohens* v. *Virginia*,
    19 U.S. 264 (1821) ..............................................17

*Colorado River Water Conservation Dist.* v. *United States*,
    424 U.S. 800 (1976) ..............................................17, 22

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
    Nos. 3:11-CV-03590-K, 3:12-CV-4975-K, 2014 WL 3557392 (N.D. Tex. July
    18, 2014) ..............................................15

*Eyerly Aircraft Co.* v. *Killian*,
    414 F.2d 591 (5th Cir. 1969) ..............................................7

*Fitzgerald* v. *Peek*,
    636 F.2d 943 (5th Cir. 1981) ..............................................19

*Fund for La.'s Future* v. *La. Bd. of Ethics*,
    No. 14-0368, 2014 WL 1514234 (E.D. La. Apr. 16, 2014) ..............................................24

*Google* v. *Hood*,
    822 F.3d 212 (5th Cir. 2016) ..........................................................................22, 23

*Gruber Hurst Johansen & Hail, LLP* v. *Hackard & Holt*,
    No. 3:07-CV-1410-G, 2008 WL 137970 (N.D. Tex. Jan. 15, 2008)........................24

*Guidry* v. *U.S. Tobacco*,
    188 F.3d 619 (5th Cir. 1999) ......................................................................9, 10, 15

*Gulf Coast Int'l* v. *The Research Corp. of the Univ. of Haw.*,
    490 S.W.3d 577 (Tex. App.—Houston [1st Dist.] 2016, pet. filed) .........................7

*Nevada* v. *Hall*,
    440 U.S. 410 (1979).................................................................................................6

*Int'l Energy Ventures Mgmt., L.L.C.* v. *United Energy Grp., Ltd.*,
    818 F.3d 193 (5th Cir. 2016) ..................................................................................9

*Int'l Shoe Co.* v. *Washington*,
    326 U.S. 310 (1945).................................................................................................9

*Jordan* v. *Reis*,
    169 F. Supp. 2d 664 (S.D. Tex. 2001) ...................................................................21

*Kalman* v. *Cortes*,
    646 F. Supp. 2d 738 (E.D. Pa. 2009) .....................................................................11

*Kern* v. *Clark*,
    331 F.3d 9 (2d Cir. 2003).......................................................................................20

*LaSalle Bank, N.A.* v. *City of Oakbrook Terrace*,
    No. 05 C 3191, 2006 WL 59497 (N.D. Ill. Jan. 9, 2006) .......................................21

*Lewis* v. *Fresne*,
    252 F.3d 352 (5th Cir. 2001) ..........................................................................10, 12

*Lone Star Coll. Sys.* v. *EEOC*,
    No. H-14-529, 2015 WL 1120272 (S.D. Tex. Mar. 12, 2015) ...............................23

*Markland* v. *Bay Cty. Sheriff's Office*,
    No. 1:14-CV-572, 2015 WL 3430120 (E.D. Tex. May 28, 2015) ...........................8

*McFadin* v. *Gerber*,
    587 F.3d 753 (5th Cir. 2009) ..........................................................................14, 15, 16

*Mitchum* v. *Foster*,
    407 U.S. 225 (1972)...............................................................................................24

*Monkton Ins. Servs., Ltd.* v. *Ritter*,
   768 F.3d 429 (5th Cir. 2014) .......................................................................10

*Nationwide Mut. Ins. Co.* v. *Unauthorized Practice of Law Comm.*,
   283 F.3d 650 (5th Cir. 2002) .......................................................................22

*New Orleans Pub. Serv., Inc.* v. *Council of City of New Orleans*,
   491 U.S. 350 (1989).....................................................................................18

*Payne* v. *Cty. of Kershaw, S.C.*,
   No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008)..................8

*Perez Bustillo* v. *State of Louisiana*,
   718 S.W.2d 844 (Tex. App.—Corpus Christi 1986, no writ)................................8

*Perez* v. *Ledesma*,
   401 U.S. 82 (1971).......................................................................................20

*Railroad Commission of Texas* v. *Pullman Co.*,
   312 U.S. 496 (1941).....................................................................................22

*Ruston Gas Turbines Inc.* v. *Donaldson Co.*,
   9 F.3d 415 (5th Cir. 1993) ...........................................................................10

*Saxton* v. *Faust*,
   No. 3:09 CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010).........8, 13, 14

*Schlagler* v. *Phillips*,
   166 F.3d 439 (2d Cir. 1999).........................................................................19

*Spir Star AG* v. *Kimich*,
   310 S.W.3d 868 (Tex. 2010).........................................................................7

*Sprint Commc'ns, Inc.* v. *Jacobs*,
   134 S. Ct. 584 (2013)...................................................................................17

*Stripling* v. *Jordan Prod.*,
   234 F.3d 863 (5th Cir. 2000) .......................................................................10

*Stroman Realty, Inc.* v. *Antt*,
   528 F.3d 382 (5th Cir. 2008) ...................................................................12, 13

*Stroman Realty, Inc.* v. *Wercinski*,
   513 F.3d 476 (5th Cir. 2008) .............................................................8, 12, 13

*Turner* v. *Pavlicek*,
   No. H-10-00749, 2011 WL 4458757 (S.D. Tex. Sept. 22, 2011)....................22

*Valtech Solutions Inc.* v. *Davenport*,
   No. 3:15-CV-3361-D, 2016 WL 2958927 (N.D. Tex. May 23, 2016) ...................................17

*Vanderbilt Mortg. & Fin., Inc.* v. *Flores*,
   692 F.3d 358 (5th Cir. 2012) ..........................................................................................9, 11

*Walden* v. *Fiore*,
   134 S. Ct. 1115 (2014) ..........................................................................................................12

*Wichert* v. *Walter*,
   606 F. Supp. 1516 (D.N.J. 1985) .........................................................................................21

*Wien Air Alaska, Inc.* v. *Brandt*,
   195 F.3d 208 (5th Cir. 1999) ...............................................................................10, 12, 15

*Wilson* v. *Thompson*,
   593 F.2d 1375 (5th Cir. 1979) .........................................................................................20, 21

*Wudtke* v. *Davel*,
   128 F.3d 1057 (7th Cir. 1997) ..............................................................................................24

*Younger* v. *Harris*,
   401 U.S. 37 (1971) ...........................................................................................................17, 18

## STATUTES

Mass. Gen. Laws ch. 93A, § 7 .........................................................................................22, 23

Mass. Gen. Laws ch. 260, § 5A ...............................................................................................3

Tex. Civ. Prac. & Rem. Code Ann. § 17.041 ..........................................................................7

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 .......................................................................8, 9

1985 Tex. Gen. Laws, ch. 959 (S.B. No. 797) .........................................................................7

Tex. Rev. Civ. Stat. art. 2031b ................................................................................................7

## OTHER AUTHORITIES

Tex. Const. art. I, §§ 8, 9, 19 ..................................................................................................1

U.S. Const. amend. IV .............................................................................................................12

U.S. Const. amends. I, IV, XIV ................................................................................................1

Exxon Mobil Corporation ("ExxonMobil") respectfully submits this memorandum of law in opposition to Defendant Maura Tracy Healey's motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

ExxonMobil brought this action to protect its constitutional rights from Attorney General Healey's misuse of government power to restrict speech she disfavors. The Attorney General has moved to dismiss ExxonMobil's Complaint, but she does not contest the adequacy of the Complaint's allegations. Her motion does not challenge ExxonMobil's claim that Attorney General Healey's politically motivated investigation with preordained results is an unlawful and pretextual device to violate ExxonMobil's rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution as well as Sections Eight, Nine, and Nineteen of Article One of the Texas Constitution. Even though she does not dispute that ExxonMobil has pleaded an adequate case against her, the Attorney General nevertheless requests the dismissal of this lawsuit.

Seeking to avoid scrutiny in this Court, Attorney General Healey maintains that no court in Texas may exercise jurisdiction over her. She is wrong. The moment she elected to use the levers of government to cause constitutional torts in Texas, she subjected herself to the jurisdiction of courts in this state. Her arguments about justiciability are equally flawed. The Attorney General's bad faith precludes abstention, and this lawsuit's ripeness has been fully established by the penalties ExxonMobil faces for non-compliance with the Civil Investigative Demand ("CID") and by the Attorney General's motion to compel in Massachusetts state court. Finally, no recognized principle pertaining to venue precludes the adjudication of this lawsuit here, in the district where ExxonMobil's rights have been violated. The Attorney General's motion to dismiss this action should be denied.

## STATEMENT OF FACTS

Attorney General Healey has violated ExxonMobil's constitutional rights by misusing the powers of her office.  She is engaging in unapologetic viewpoint discrimination, conducting an unlawful fishing expedition, directing a biased investigation with preordained results, and she is seeking to regulate speech and conduct occurring well beyond the borders of the Commonwealth of Massachusetts.  Each of these constitutional violations is fully supported by the allegations contained in the Complaint, the adequacy of which the Attorney General has not contested.

### A.      The Attorney General's Public Statements Demonstrate Viewpoint Bias.

Joining other members of the so-called "Green 20" group of attorneys general at a March 29, 2016 press conference, Attorney General Healey declared that "certain companies" needed to be "held accountable" for expressing a viewpoint on climate change that she disfavored.[1]  After acknowledging that "public perception" was her principal concern, she condemned her targets for not sharing her beliefs on "the catastrophic nature of" climate change.[2]  Attorney General Healey then pledged to take "quick, aggressive action" to "address climate change" by investigating ExxonMobil.[3]  Prejudging the investigation's results, she told the public she had already found a "troubling disconnect between what Exxon knew, what industry folks knew, and what the company and industry chose to share with investors and with the American public."[4]

### B.      The CID Is a Fishing Expedition that Expressly Targets One Side of a Political Debate.

Three weeks later, the Attorney General issued the CID to ExxonMobil demanding, among other things, all communications between ExxonMobil and 12 organizations,[5] each of

---

[1]      MTD App. at 13.
[2]      *Id.*
[3]      MTD App. at 14.
[4]      MTD App. at 13.
[5]      MTD App. at 35.

which has been derided as a so-called climate change "denier."  The focus of the CID on entities the Attorney General perceives to be antagonistic to her policy preferences underscores the improper motivation for issuing the CID in the first place—namely, to silence perceived political opponents.

The sheer breadth of the CID also reflects its impropriety, demonstrating that it is nothing more than a transparent fishing expedition forbidden by the Constitution.  The CID seeks 38 categories of documents (more than 60 when including sub-categories) on a worldwide basis for a period of 40 years.[6]  That burdensome request is allegedly justified by reference to a Massachusetts consumer protection law[7] with a four-year statute of limitations.  Mass. Gen. Laws ch. 260, § 5A.  But, as set forth in the Complaint, ExxonMobil has not engaged in conduct in the Commonwealth of Massachusetts during the relevant limitations period that could give rise to liability under that statute.[8]  The absence of any possible violation of the statute that allegedly forms the basis of the Attorney General's investigation unmasks its pretextual nature and demonstrates that it serves no legitimate law enforcement purpose.

### C.    Recently Obtained Documents Further Demonstrate the Political Nature of the Green 20 Investigations.

If Attorney General Healey's biased public statements and the CID's express viewpoint discrimination left any room for doubt about the impropriety of her investigation, documents recently obtained through public records requests by third parties put any potential concern to rest.[9]  The first set of documents shows the origins of the "Green 20" and that group's focus on politics.  A draft set of "Principles" guiding the group's actions included a "Pledge" to "work

---

[6]        MTD App. at 34–42.
[7]        MTD App. at 23.
[8]        ExxonMobil's Complaint for Declaratory and Injunctive Relief ("Compl.") (Dkt. No. 1) ¶¶ 55–58.
[9]        The production of these records pursuant to public records requests demonstrates that ExxonMobil's claims of constitutional torts are likely to be further supported by discovery.

together" to enforce laws "that require progressive action on climate change."[10]  Recognizing the overtly political nature of that objective, an employee of the Vermont Attorney General's Office wrote:  "We are thinking that use of the term 'progressive' in the pledge might alienate some. How about 'affirmative,' 'aggressive,' 'forceful' or something similar?"[11]  Such window dressing does not mitigate the fundamental problem with the Green 20's endeavor:  It seeks to use the coercive tools of law enforcement to twist a public debate over policy in the Green 20's favor.

The second set of documents obtained through public record requests exposes the Green 20's efforts to shield its improper activities from public scrutiny.  In April and May 2016, seventeen attorneys general, including Attorney General Healey, executed a "Common Interest Agreement" seeking to conceal their own communications about climate change.[12]  That agreement, which describes their common interest as "limiting climate change and ensuring the dissemination of accurate information about climate change," shows that the purpose of the Attorney General's investigation is entirely political, pertaining to the promotion of preferred climate change policies.[13]  It also shows Attorney General Healey's intent to trample First Amendment rights by restricting speech to what the Green 20 believes is "accurate information" about the risks and policy trade-offs inherent in the climate change debate.

### D.    The Attorney General Directed the CID and Constitutional Torts at Texas.

The constitutional violations that form the basis of ExxonMobil's Complaint occurred in Texas.  ExxonMobil is a Texas-based company with no significant contacts in Massachusetts.

---

[10]      MTD App. at 54.
[11]      MTD App. at 53.
[12]      MTD App. at 57–75.  The signatories included representatives of the Attorneys General for California, Connecticut, the District of Columbia, Illinois, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New Mexico, New York, Oregon, Rhode Island, Vermont, the U.S. Virgin Islands, Virginia, and Washington.
[13]      MTD App. at 57.  This document was publicly released last month, demonstrating how discovery is likely to reveal further evidence of the Attorney General's improper motive.

Although ExxonMobil designates a Massachusetts-based agent in its registration filing with the Massachusetts Secretary of State, that filing also states that ExxonMobil's "Principal Office" is located in Irving, Texas, and that ExxonMobil has no office in Massachusetts.[14] Nor, as set forth above, has ExxonMobil had any presence in Massachusetts that could give rise to a violation of the Massachusetts consumer protection law the Attorney General purports to be enforcing.[15]

The CID seeks records that are located in Texas and, in turn, is directed at ExxonMobil's speech that originated in Texas. Many of the CID's requests expressly acknowledge those facts. For example, Request 10 asks for documents concerning a speech given by an ExxonMobil executive "in Dallas, Texas."[16] Likewise, Request 16 seeks a broad array of documents concerning a press release that, on its face, was issued from ExxonMobil's headquarters in Irving, Texas.[17] Other requests pertain to matters that are routinely handled at the corporate headquarters of a company, such as the securities filings sought by Requests 19 and 31.[18]

## PROCEDURAL HISTORY

ExxonMobil commenced this action in June 2016, with the filing of the Complaint and a motion for a preliminary injunction that has been fully briefed since August 24, 2016. The Attorney General's motion to dismiss the Complaint is scheduled to be fully briefed on October 11, 2016.

Solely to preserve its objections from forfeiture, ExxonMobil filed a petition in Massachusetts state court to set aside the CID. That petition was filed after commencing this action. ExxonMobil contests personal jurisdiction in Massachusetts state court and has requested

---

[14]     MTD App. at 77.
[15]     Compl. ¶¶ 57–58.
[16]     MTD App. at 37.
[17]     MTD App. at 38–39.
[18]     MTD App. at 39, 41. The CID also seeks documents even further afield from Massachusetts. Request 8 seeks documents concerning a presentation made in Beijing, China, and Request 11 asks for records concerning a speech given by an ExxonMobil executive in London, England. MTD App. at 36–37.

that the state court stay that second-filed action pending resolution of this lawsuit.  The Attorney General has since cross-moved to compel compliance with the CID.  Briefing on ExxonMobil's petition and the Attorney General's cross-motion will not conclude until October 10, 2016—more than a month-and-a-half after ExxonMobil's preliminary injunction was fully briefed in this Court.

## ARGUMENT

Attorney General Healey does not claim that ExxonMobil has failed to adequately plead a violation of its constitutional rights, yet she nevertheless asks the Court to dismiss this lawsuit because she believes the Court cannot and should not hear ExxonMobil's case.  Her motion should be denied.  Each objection the Attorney General raises to the jurisdiction of this Court or the justiciability of this matter is easily set aside when measured against the applicable legal standard.  This Court is fully empowered to decide ExxonMobil's claims.

**I.      This Court Has Personal Jurisdiction over the Attorney General.**

The Attorney General purposefully and intentionally used the CID to violate ExxonMobil's constitutional rights in Texas, not in Massachusetts.  Having purposefully elected to cause an injury in Texas with an intent to restrict speech formulated in and emanating from Texas, the Attorney General cannot now legitimately claim to be beyond the reach of Texas courts.

**A.      The Texas Long-Arm Statute Reaches the Attorney General.**

The exercise of jurisdiction over the Attorney General in this case is fully consistent with the purpose of Texas's long-arm statute, which courts have recognized is "to exploit to the maximum the fullest permissible reach under federal constitutional restraints."[19]      *Atwood*

---

[19]      There is no "federal constitutional restraint" on state laws imposing liability on other states or their officials.  *See Nevada* v. *Hall*, 440 U.S. 410, 420–21 (1979).

*Hatcheries* v. *Heisdorf & Nelson Farms*, 357 F.2d 847, 852 (5th Cir. 1966) (internal quotation marks and citation omitted).   That is why the statute has been "given the broadest possible construction, subject only to basic constitutional requirements." *Clark Advert. Agency, Inc.* v. *Tice*, 331 F. Supp. 1058, 1059 (N.D. Tex. 1971), *aff'd*, 490 F.2d 834 (5th Cir. 1974); *see also Eyerly Aircraft Co.* v. *Killian*, 414 F.2d 591, 599 (5th Cir. 1969) (noting that the Texas long-arm statute "should be given as broad a reach as due process will permit any 'Long Arm' statute to be given").   Texas courts have thus held that the long-arm statute "reaches 'as far as the federal constitutional requirements for due process will allow.'" *Spir Star AG* v. *Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) (citation omitted).

Applying this reasoning, federal and state precedent establishes that the Texas long-arm statute confers jurisdiction over sister states, their instrumentalities, and their officers.   Some courts have expressly confirmed that the Texas long-arm statute reaches sister states.   *See, e.g.*, *21 Turtle Creek Square, Ltd.* v. *N.Y. State Teachers' Ret. Sys.*, 425 F.2d 1366, 1368 (5th Cir. 1970) (personal jurisdiction over New York state agency under Texas long-arm statute); *Bd. of Cty. Comm'rs of Beaver Cty., Okla.* v. *Amarillo Hosp. Dist.*, 835 S.W.2d 115, 119 (Tex. App.—Amarillo 1992, no writ) (finding that Texas long-arm statute applied to subdivision of Oklahoma state government).[20]   Other courts have implicitly recognized that reach by considering the sufficiency of an out-of-state official's contacts with Texas, which could occur only if the Texas long-arm statute permitted such an inquiry in the first instance.   *See, e.g.*, *Gulf Coast Int'l* v. *The Research Corp. of the Univ. of Haw.*, 490 S.W.3d 577, 583–84 (Tex. App.—Houston [1st Dist.]

---

[20]      *21 Turtle Creek Square* relies on Tex. Rev. Civ. Stat. art. 2031b, the predecessor to the current long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq.*   The current statute was a nonsubstantive codification of the prior statute.   *See* 1985 Tex. Gen. Laws, ch. 959 (S.B. No. 797).   As such, cases interpreting the scope and effect of Article 2031b apply equally to the current long-arm statute.

2016, pet. filed);[21] *Markland* v. *Bay Cty.* [Florida] *Sheriff's Office*, No. 1:14-CV-572, 2015 WL 3430120, at *2–3 (E.D. Tex. May 28, 2015) (adopting report and recommendation); *Payne* v. *Cty. of Kershaw, S.C.*, No. 3:08-CV-0792-G, 2008 WL 2876592, at *2–5 (N.D. Tex. July 25, 2008); *Perez Bustillo* v. *State of Louisiana*, 718 S.W.2d 844, 846 (Tex. App.—Corpus Christi 1986, no writ).  Indeed, this very Court did so on different facts in *Saxton* v. *Faust*, No. 3:09 CV-2458-K, 2010 WL 3446921, at *3 (N.D. Tex. Aug. 31, 2010), a case the Attorney General herself cites.

Notwithstanding this precedent, Attorney General Healey claims that out-of-state public officers, like her, are exempt from personal jurisdiction under the Texas long-arm statute.  Mem. 4–6.[22]  Her argument relies primarily on one decision, *Stroman Realty, Inc.* v. *Wercinski*, 513 F.3d 476 (5th Cir. 2008), which contains language questioning the scope of the long-arm statute in the context of suits against out-of-state public officials.  Mem. 4–5.  But the Fifth Circuit did not resolve that question in *Stroman* because the out-of-state official "conced[ed] the application . . . of the long-arm statute" and "relieve[d] th[e] court of an obligation to pursue" the matter.  513 F.3d at 483.  The Attorney General's argument is therefore premised entirely on dicta.  Indeed, a concurring judge joined the *Stroman* opinion except for its "*extensive dicta . . . about . . . whether the Texas long-arm statute applies.*"  *Id.* at 489 (emphasis added).  The discussion in *Stroman* is woefully inadequate to support Attorney General Healey's challenge to settled precedent.

The Attorney General also questions whether her conduct amounts to "doing business" in Texas as illustrated by three examples of such conduct provided in Section 17.042 of the Texas Civil Practice and Remedies Code.  Mem. 5.  That question is easily answered in the affirmative.

---

[21]    The Research Corporation of the University of Hawaii is a state agency.

[22]    "Mem." refers to the Attorney General's Memorandum of Law in Support of her Motion to Dismiss (Dkt. No. 42).

Among the non-exhaustive illustrations set forth in the statute is "commit[ting] a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2). That is precisely what the Attorney General did when she used her official power to intentionally violate ExxonMobil's constitutional rights which, as described below, are exercised in Texas.

## B. Exercising Personal Jurisdiction over the Attorney General Comports with Due Process.

Where, as here, (i) a defendant directed its activities at the forum state, (ii) those activities give rise to legal claims, and (iii) it is fair and reasonable to have the defendant answer those claims in the forum state, due process does not present a barrier to the exercise of jurisdiction.

### 1. Applicable Law

A defendant is subject to personal jurisdiction where it "has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Int'l Energy Ventures Mgmt., L.L.C.* v. *United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945)). In considering whether a defendant is subject to jurisdiction, courts consider: (1) whether the defendant "directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there"; (2) whether the plaintiff's cause of action arose from "the defendant's forum-related contacts"; and (3) "whether the exercise of personal jurisdiction is fair and reasonable." *Vanderbilt Mortg. & Fin., Inc.* v. *Flores*, 692 F.3d 358, 375 (5th Cir. 2012) (citation and internal quotation marks omitted).

A single out-of-state act can support jurisdiction in Texas, so long as the defendant knew or intended that the effects of the action would be felt in Texas. Indeed, "[w]hen a nonresident defendant commits . . . an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to

constitutionally permit courts . . . to exercise personal adjudicative jurisdiction over the tortfeasor." *Guidry* v. *U.S. Tobacco*, 188 F.3d 619, 628 (5th Cir. 1999). Put differently, when a defendant intentionally directs a harm at Texas, it has "purposefully avail[ed] [it]self of the privilege of causing a consequence in Texas," thereby subjecting itself to jurisdiction in Texas courts. *Wien Air Alaska, Inc.* v. *Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (internal quotation marks and citation omitted); *see also Lewis* v. *Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001); *Ruston Gas Turbines Inc.* v. *Donaldson Co.*, 9 F.3d 415, 420 (5th Cir. 1993).

To satisfy its burden, a "plaintiff need only present a prima facie case of personal jurisdiction" in the absence of an evidentiary hearing. *Stripling* v. *Jordan Prod.*, 234 F.3d 863, 869 (5th Cir. 2000) (citation omitted). In undertaking its analysis, the Court "must accept the plaintiff's uncontroverted allegations, and resolve in [its] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Monkton Ins. Servs., Ltd.* v. *Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (internal quotation marks and citation omitted).

## 2. Discussion

### (a) The Attorney General Directed Her Unlawful Conduct at Texas with an Intent to Cause Injury in Texas.

Attorney General Healey issued the CID to "h[o]ld" ExxonMobil "accountable" for exercising its First Amendment rights.[23] ExxonMobil exercises its First Amendment rights in Texas, where it considers, develops, and releases corporate statements on matters of public concern. The CID, while issued in Massachusetts, is meant to have an impact in Texas, where ExxonMobil speaks and where it stores the communications and other records demanded by the CID. The Attorney General's issuance of the CID is intended to silence a viewpoint emanating from Texas and to unlawfully fish through records stored in Texas, all under the supervision of a

---

[23]     MTD App. at 13.

biased prosecutor.

The Attorney General contends that she cannot be held responsible for directing a constitutional tort at the State of Texas because she issued the CID in Massachusetts and served it on ExxonMobil's registered agent in Massachusetts.  Mem. 7.  But Attorney General Healey knows that her CID would be a dead letter if its force were limited to Massachusetts.  As stated plainly in its registration with the Massachusetts Secretary of State, ExxonMobil's "Principal Office" is located in Irving, Texas, and it has no office in Massachusetts.[24]

The Attorney General knew, when she issued the CID to ExxonMobil's registered agent in Massachusetts, that it would be transmitted to Texas, where ExxonMobil's relevant speech is made and its records are stored.  Only by reaching into Texas could the CID accomplish its purpose of restricting a viewpoint the Attorney General disfavors, while facilitating a fishing expedition in ExxonMobil's records.  Even though the CID was, as a matter of legal fiction, served through a designated Massachusetts agent, it was, as a matter of fact, "directed [] toward the forum state" of Texas.  *Vanderbilt Mortg. & Fin.*, 692 F.3d at 375 (internal quotation marks and citation omitted).  The Attorney General cannot avoid jurisdiction in a forum where she has intentionally violated a resident's constitutional rights by laundering the means of that violation through an intermediary.

Because the CID was intentionally directed at Texas, the injuries caused by the Attorney General's violation of ExxonMobil's constitutional rights occurred, as she knew and expected, in Texas.  "A plaintiff suing because his freedom of expression has been unjustifiably restricted . . . suffers harm only where the speech would have taken place, as opposed to the district in which . . . the decision to restrict this plaintiff's speech was made."  *Kalman* v. *Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009).  The speech that Attorney General Healey seeks to restrain

---

[24]     MTD App. at 77.

through the CID emanates from Texas, and ExxonMobil's First Amendment injury has thus occurred in Texas.  Similarly, ExxonMobil has no office in Massachusetts, and none of the papers the Attorney General hopes to fish through can be found in Massachusetts.  The injury caused by the violation of ExxonMobil's right "to be secure in . . . [its] papers, and effects," U.S. Const. amend. IV, is therefore not suffered in Massachusetts either, but rather where those "papers, and effects" are kept—here, in Texas.  *Cf. Walden* v. *Fiore*, 134 S. Ct. 1115, 1124 (2014) (finding jurisdiction lacking in a *Bivens* action for violation of Fourth Amendment rights because the seizure did not take place in the forum).

The Attorney General's direction of constitutional torts at Texas, together with her intentional infliction of injuries on a Texas domiciliary, provide an ample basis for personal jurisdiction.  *See, e.g.*, *Lewis*, 252 F.3d at 359 (finding purposeful availment by out-of-state defendants where they sent communications into Texas in furtherance of an intentional tort); *Wien Air*, 195 F.3d at 213 ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *see also Bear Stearns Cos.* v. *Lavalle*, No. 3:00 Civ. 1900-D, 2001 WL 406217, at *3–4 (N.D. Tex. Apr. 18, 2001)  (jurisdiction existed where "harassing" communications were directed to Texas "because the defendant has knowingly aimed his intentional actions at Texas and knows that the plaintiff will feel the brunt of the injury in Texas").

The precedents that the Attorney General cites in arguing for dismissal are not to the contrary.  The Attorney General relies heavily on the *Stroman* cases[25] and suggests they are similar to this matter.  In both *Stroman* cases, plaintiff Stroman Realty, based in Texas, sued out-of-state officials who sought to restrict Stroman's agents from engaging in unlicensed real estate

---

[25]     *Stroman Realty, Inc.* v. *Wercinski*, 513 F.3d 476 (5th Cir. 2008) ("*Stroman I*") and *Stroman Realty, Inc.* v. *Antt*, 528 F.3d 382 (5th Cir. 2008) ("*Stroman II*").

sales in the officials' home states.   In *Stroman I*, the only contacts between the out-of-state officials and Texas were "a cease-and-desist order [sent into Texas relating to business activities *outside* Texas] and correspondence with Stroman's attorneys."   *Stroman I*, 513 F.3d at 484.   In *Stroman II*, the Texas contacts consisted of cease-and-desist orders sent to Texas relating to business activities *outside* Texas, letters disclosing the existence of the orders, and a Texas state information request by Florida regulators that was unrelated to Stroman's claims.   *Stroman II*, 528 F.3d at 386–87.

The out-of-state officials' contacts with Texas in the *Stroman* cases are fundamentally different from the contacts the Attorney General has made with Texas here.   In *Stroman*, there was no allegation that out-of-state officials intended to cause constitutional torts within Texas, or that they harbored an ulterior motive to harm a company they knew to be based in Texas.   In short, there was no allegation of intentional misconduct aimed at Texas.   Here, by contrast, ExxonMobil alleges that the Attorney General issued the CID to cause constitutional torts in Texas where ExxonMobil exercises its First, Fourth, and Fourteenth Amendment rights.   It is in Texas that ExxonMobil issues statements on matters of public concern.   It is in Texas that ExxonMobil enjoys the right "to be secure in . . . [its] papers, and effects," and rightfully expects not to be investigated by a biased prosecutor.   It is immaterial whether the Attorney General issued the CID through ExxonMobil's registered agent in Massachusetts or through a process server sent directly to ExxonMobil's headquarters in Irving, Texas.   The result is the same.   The Attorney General has knowingly reached into Texas with the intent to inhibit a Texas resident's participation in the public discourse about climate change.   The *Stroman* cases do not excuse this conduct from scrutiny in Texas courts.

Nor does *Saxton* v. *Faust*, No. 3:09 CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31,

2010).   In *Saxton*, this Court determined it lacked personal jurisdiction over a Utah judge where the basis for jurisdiction was nothing more than the fact that "the effects of a [Utah] ruling [were] felt in Texas."   *Id.* at *3.   In so ruling, this Court pointedly noted that "the Saxtons have alleged no other contacts with Texas."   *Id.*   Once again, the differences between this case and *Saxton* are not of degree, but of kind.   *Saxton* involved an out-of-state court ruling that had consequences felt in Texas but was not itself directed at Texas in a tortious manner.   In stark contrast, ExxonMobil's uncontroverted allegations include that the Attorney General deliberately directed constitutional torts at Texas and intentionally caused ExxonMobil injuries in this State. The Attorney General's intentional contact with Texas thus made it entirely foreseeable that she would be haled into court in this State.

For these same reasons, there is no relevance to the cases cited by the Attorney General observing that jurisdiction cannot be premised on the mere happenstance of plaintiff's presence in a forum or the unintentional but foreseeable manifestation of effects in a forum.   Mem. 9–10 & nn. 9–10.   Here, there is much more than ExxonMobil's coincidental presence in Texas, or merely foreseeable effects in Texas.   The Attorney General knew she could inhibit ExxonMobil's speech and fish through its corporate records only by reaching into Texas, and by issuing the CID she did exactly that, purposefully and with a specific intent to deprive ExxonMobil of freedoms guaranteed by the Constitution that it enjoys here, in Texas.[26]   The Attorney General's incursion into Texas as part of a purposeful violation of ExxonMobil's constitutional rights is not the sort of "random, fortuitous, or attenuated contact[]" that courts have found insufficient to confer jurisdiction.   *McFadin* v. *Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (internal quotation marks and citation omitted).

---

[26]     *See, e.g.*, Compl. ¶¶ 10, 13, 70, 73, 80, 86–88, 100.

**(b)    ExxonMobil's Claims Arise from the Attorney General's Suit-Related Contacts.**

The Attorney General does not address the issue of whether ExxonMobil's claims arise out of her issuance of the CID to a company she knew to be based in Texas seeking documents she could expect to be in Texas.  But she cannot contest these facts.  This is a clear instance in which the Attorney General has "directed [her] activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," making jurisdiction "appropriate."  *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, Nos. 3:11-CV-03590-K, 3:12-CV-4975-K, 2014 WL 3557392, at *2 (N.D. Tex. July 18, 2014) (Kinkeade, J.).

**(c)    It Is Fair and Reasonable to Exercise Personal Jurisdiction over the Attorney General.**

After establishing that a defendant has contacts with Texas sufficient to support jurisdiction, "'it is rare to say the assertion [of jurisdiction] is unfair.'"  *McFadin*, 587 F.3d at 759–60 (quoting *Wien Air*, 195 F.3d at 215).  When challenging personal jurisdiction as unfair, the burden rests with the defendant.  *Id.* at 759.  The Attorney General's arguments fall short of establishing anything unreasonable or unfair about litigating this matter in the state where she directed her tortious conduct.

The Attorney General contends that litigating in Texas would unfairly burden her,  Mem. 11–13, but the Fifth Circuit recognizes that "'once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant.'"  *McFadin*, 587 F.3d at 764 (quoting *Guidry*, 188 F.3d at 628).  Also unavailing is the Attorney General's argument that Texas has little interest in this dispute.  Mem. 12.  As the Fifth Circuit has recognized, "Texas has an interest in protecting its residents' . . . rights and providing a

convenient forum for its residents to resolve their disputes." *McFadin*, 587 F.3d at 763.[27]   In addition, the Texas Attorney General intervened in a state court action brought by ExxonMobil challenging similar constitutional torts wrought by another attorney general member of the Green 20.   In his plea in intervention, the Texas Attorney General announced the State's interest in "protect[ing] the due process rights of [its] residents" and "protect[ing] the fundamental right of impartiality in criminal and quasi-criminal investigations."[28]

Attorney General Healey is also wrong to assert that the deprivation of this forum would cause ExxonMobil no hardship because it can seek relief in a Massachusetts state court.   Mem. 12.   ExxonMobil has already contested the personal jurisdiction of a court in Massachusetts, and it should not be forced to litigate in that forum simply because the Attorney General would prefer to have a matter concerning the intentional violation, in Texas, of constitutional rights of a Texas domiciliary heard by a Massachusetts state court.   Nor will litigating in this Court harm the interests of "the interstate judicial system" or subvert "fundamental, substantive social policies." Mem. 11–12.   To the contrary, the interests of the interstate judicial system would be harmed by *preventing* a Texas domiciliary from vindicating its rights in Texas against a defendant who intentionally harmed it in Texas.   Far from subverting substantive social policies, ExxonMobil seeks only to *promote* the most fundamental of social policies—the right to free speech and the right not to be harassed by an openly biased prosecutor from another state.

Finally, the Attorney General engages in needless alarmism with her claim that this Court's assertion of jurisdiction over her in this case would enable attorneys general to be haled into out-of-state courts across the country.   Evaluating personal jurisdiction requires a fact-intensive inquiry, and ExxonMobil's claim of jurisdiction here is based on the specific facts of

---

[27]     *McFadin* dealt with Texas residents' property rights.   Texas's interest in protecting fundamental constitutional rights can only be stronger.
[28]     MTD App. at 81–82.

this case—the Attorney General's transparent political targeting of ExxonMobil and her specific intent to violate its constitutional rights. On these particular facts, the Court can, and should, permit ExxonMobil to press its claims here.[29]

## II.   This Court Should Reject the Attorney General's Request for Abstention.

Abstention is a narrow exception to the rule that a federal court with jurisdiction over a matter should hear and decide the case. The Attorney General has invoked that doctrine as further grounds for this Court to leave adjudication of ExxonMobil's claims in the hands of a Massachusetts court. Doing so would be inconsistent with the mandates of *Younger* v. *Harris*, 401 U.S. 37 (1971), in light of the Attorney General's pattern of bad faith and the state forum's inadequacy. This Court should not abstain from reaching the merits of ExxonMobil's claims.

### A.   Applicable Law

Federal courts "have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Sprint Commc'ns, Inc.* v. *Jacobs*, 134 S. Ct. 584, 590 (2013) (quoting *Cohens* v. *Virginia*, 19 U.S. 264 (1821)). Accordingly, where a federal court has jurisdiction, its "'obligation to 'hear and decide a case is virtually unflagging.'" *Id.* at 591 (quoting *Colo. River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976)). "Parallel state-court proceedings do not detract from that obligation." *Id.* (citation omitted).

Beginning with *Younger* v. *Harris*, however, the Supreme Court recognized that "exceptional circumstances" may justify abstention "within narrow limits" in cases seeking injunctive relief against certain categories of state proceedings. *Sprint*, 134 S. Ct. at 591

---

[29] If the Court is uncertain that the Attorney General has sufficient contacts with Texas for the exercise of personal jurisdiction, ExxonMobil respectfully requests jurisdictional discovery and an evidentiary hearing to establish that the Attorney General intended to restrict speech and cause other constitutional torts in the State of Texas. *See Valtech Solutions Inc.* v. *Davenport*, No. 3:15-CV-3361-D, 2016 WL 2958927, at *2 (N.D. Tex. May 23, 2016) ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." (citation omitted)). ExxonMobil is prepared to conduct such discovery expeditiously if it is authorized by and helpful to the Court.

(quoting *Younger*, 401 U.S. at 44, and *New Orleans Pub. Serv., Inc.* v. *Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).  Thus, in certain state proceedings, *Younger* abstention may be appropriate when each of the following conditions is satisfied: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges.  *See Bice* v. *La. Pub. Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012).

Even if each of these conditions is satisfied, however, abstention is unwarranted where "the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff."  *Id.* at 716 n.3.  The Fifth Circuit recognizes two circumstances where bad faith bars abstention: "first, when a state commences a prosecution or proceeding to retaliate for or to deter constitutionally protected conduct, [] and second, when the prosecution or proceeding is taken in bad faith or for the purpose to harass."  *Bishop* v. *State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984) (citations omitted).  In light of the obligation of federal courts to hear cases within their jurisdiction, "[a] court necessarily abuses its discretion when it abstains outside of the [*Younger*] doctrine's strictures."  *Bice*, 677 F.3d at 716 (quotation marks and citation omitted).

### B.    Discussion

### 1.    The Attorney General's Bad Faith Precludes Abstention.

The Attorney General's bad faith in issuing the CID makes abstention under *Younger* inappropriate.  The Attorney General's "investigation" was initiated "to retaliate for or to deter constitutionally protected conduct"—in this case, ExxonMobil's participation in scientific and policy discussions about climate change.[30]  *Bishop*, 736 F.2d at 294.  The Attorney General's

---

[30]    Notably, the Attorney General's motion to dismiss does not suggest that ExxonMobil's participation in climate research and policy advocacy is anything but protected speech.

public statements, the viewpoint bias memorialized in the CID, and the objective set forth in the common interest agreement fully support that conclusion.

At the press conference preceding issuance of the CID, Attorney General Healey stated that she intended to "hold[] accountable" those who "have needed to be held accountable for far too long" for, in her view, having "misled the public" about what she considered "the catastrophic nature" of climate change.[31]   The CID reflected this priority, as it targeted ExxonMobil's communications with supposed "climate deniers."[32]   Viewpoint discrimination is also amply documented in the common interest agreement, in which the Attorney General claimed to share an interest with other law enforcement officers in "ensuring the dissemination of accurate information about climate change"—that is, information *she* believes to be "accurate" based on her viewpoint.[33]   All of this evidence demonstrates that the Attorney General issued the CID to "deter constitutionally protected conduct."  *Bishop*, 736 F.2d at 294. She used her investigative powers to target ExxonMobil based on what she believes to be its incorrect viewpoint on climate change and to advance her own policy goals by silencing perceived opponents.  Abstention is unwarranted on this record.  *See Schlagler* v. *Phillips*, 166 F.3d 439, 443 (2d Cir. 1999) (*Younger* bad faith "exception should apply" where "the prosecution is in retaliation for past speech or shows a pattern of prosecution to inhibit speech beyond the acts being prosecuted").[34]

It is equally clear that the motion to compel compliance with the CID was filed to harass ExxonMobil, which is an independent ground for finding bad faith.  The pretextual nature of the

---

[31]      MTD App. at 13–14.
[32]      MTD App. at 35.
[33]      MTD App. at 57.
[34]      The fact that the Attorney General could theoretically impose liability for ExxonMobil's speech does not immunize an investigation that was undertaken for ulterior motives.  A showing that a prosecution was brought to constrain the exercise of constitutional rights "will justify an injunction regardless of whether valid convictions conceivably could be obtained."  *Fitzgerald* v. *Peek*, 636 F.2d 943, 945 (5th Cir. 1981).

Attorney General's investigation has been laid bare in ExxonMobil's reply memorandum in support of its motion for a preliminary injunction.[35]  That memorandum debunked the theories presented by Attorney General Healey to defend her actions and unmasked them as mere pretexts for an investigation designed to harass a perceived political opponent.[36]  ExxonMobil cannot have violated the statute invoked by the Attorney General to justify her investigation because it engaged in no covered conduct during the limitations period.[37]  This is a textbook example of state officials investigating "in bad faith without hope of obtaining a valid conviction," *Perez* v. *Ledesma*, 401 U.S. 82, 85 (1971), and "using or threatening to use prosecutions, *regardless of their outcome*, as instrumentalities for the suppression of speech,"  *Wilson* v. *Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979) (citation omitted, emphasis in original).[38]

### 2.        Even Absent Bad Faith, *Younger* Abstention Is Inappropriate.

Even if the evidence of Attorney General Healey's bad faith is set aside, *Younger* abstention would still be unwarranted.

*First*, the Commonwealth of Massachusetts has no "important interest" in aiding the Attorney General's violation of ExxonMobil's constitutional rights.   To be sure, the Commonwealth of Massachusetts has an interest in the "protection of Massachusetts consumers and investors," upholding "the integrity of the Attorney General's investigatory tools," and retaining "state judicial oversight" over legitimate law enforcement actions brought by the Attorney General.   Mem. 16.  But this case does not involve the protection of consumers, the

---

[35]        Reply in Supp. of Exxon Mobil Corporation's Mot. for a Prelim. Inj. (Dkt. No. 57).

[36]        *Id.* at 4–7.

[37]        MTD App. at 100–01; Compl. ¶¶ 55–58.

[38]        Insofar as any doubt might remain about the existence of bad faith here, an evidentiary hearing is appropriate before the Court rules on the Attorney General's motion to dismiss.  *See Kern* v. *Clark*, 331 F.3d 9, 11–12 (2d Cir. 2003).  If the Court concludes that further development of the record is helpful, ExxonMobil stands ready to conduct discovery and present evidence at a hearing to probe the bad faith motivations underpinning the Attorney General's politically motivated investigation.

proper use of investigative tools, or a legitimate law enforcement action.  This case is about the misuse of law enforcement power, under the pretext of protecting consumers, to commit constitutional torts.

The Commonwealth of Massachusetts has no legitimate interest in enabling state officials to commit constitutional torts against citizens of other states.  The Fifth Circuit has recognized as much, holding that "[w]ith respect to the interests of the State, it by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights."  *Wilson*, 593 F.2d at 1383; *see also LaSalle Bank, N.A.* v. *City of Oakbrook Terrace*, No. 05 C 3191, 2006 WL 59497, at *6 (N.D. Ill. Jan. 9, 2006) (rejecting abstention based on government's "campaign of vindictiveness" in retaliation for exercise of First Amendment rights); *Jordan* v. *Reis*, 169 F. Supp. 2d 664, 668–69 (S.D. Tex. 2001) (declining to abstain where prosecution was brought in retaliation for exercise of First Amendment rights); *Wichert* v. *Walter*, 606 F. Supp. 1516, 1526 (D.N.J. 1985) (refusing abstention where the only interest was "the Board's interest in retaliating against plaintiff and chilling his further speech").  Under this precedent, Massachusetts has no legitimate interest in promoting the Attorney General's misuse of law enforcement tools to cause constitutional torts.

*Second*, abstention is inappropriate because ExxonMobil does not have "an adequate opportunity in the state proceedings to raise constitutional challenges."  *Bice*, 677 F.3d at 716 (internal quotation marks and citation omitted).  While the Attorney General submits that ExxonMobil should litigate its constitutional claims in Massachusetts state court, Mem. 16–17, she has failed to establish that her preferred forum has personal jurisdiction over ExxonMobil. ExxonMobil has expressly contested jurisdiction in its filings with the Massachusetts state court,

which were made solely to avoid a claim by her of forfeiture.[39]  The absence of personal

jurisdiction in Massachusetts makes that forum inadequate to vindicate ExxonMobil's

constitutional rights.  Compelling ExxonMobil to proceed in a forum where it has no relevant

ties would only compound the injury caused by Attorney General Healey's constitutional

violations.[40]

## III.   ExxonMobil's Constitutional Claims Are Ripe for Adjudication.

The Attorney General's challenge to the ripeness of ExxonMobil's claims cannot be

taken seriously.  At least two independent grounds establish ripeness here: (i) the self-executing

nature of the CID and (ii) the state court proceedings to compel compliance with the CID.  The

Attorney General's belief that a plaintiff's theoretical ability to press claims in a state court

makes a case unripe in federal court is as novel as it is wrongheaded.

Challenges to subpoenas and other instruments demanding the production of records are

unripe only if "the issuing agency could not itself sanction non-compliance."  *Google* v. *Hood*,

822 F.3d 212, 224 (5th Cir. 2016).  The CID is not such an instrument.  To the contrary, it is a

self-executing demand for records, which permits the imposition of sanctions for non-

compliance without a need for prior court intervention.  Under Massachusetts law, the failure to

comply with a CID can result in the imposition of a $5,000 civil penalty.  *See* Mass. Gen. Laws

ch. 93A, § 7.  Unlike other provisions of the relevant statute that require the involvement of a

---

[39]    MTD App. at 96, 117–18.

[40]    The Attorney General half-heartedly invokes the abstention doctrines of *Colorado River Water Conservation District* v. *United States*, 424 U.S. 800 (1976) and *Railroad Commission of Texas* v. *Pullman Co.*, 312 U.S. 496 (1941).  Mem. 18 n.14.  Neither doctrine merits abstention in this case.  *Pullman* abstention requires "an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question"—which is not present here.  *Nationwide Mut. Ins. Co.* v. *Unauthorized Practice of Law Comm.*, 283 F.3d 650, 653 (5th Cir. 2002).  And *Colorado River* abstention requires consideration of six factors, none of which the Attorney General addresses despite the fact that it is her burden to do so.  *See Turner* v. *Pavlicek*, No. H-10-00749, 2011 WL 4458757, at *4–5 (S.D. Tex. Sept. 22, 2011).  If the Attorney General's reply memorandum of law addresses these factors for the first time, either the argument should not be entertained, or ExxonMobil should be given an opportunity to respond.

court, the provision permitting the imposition of civil money penalties for failure to appear does not, by its terms, require court intervention.[41]  This penalty is imposed administratively.[42]  The fact that ExxonMobil may face a "current consequence for resisting" the CID makes a challenge to the CID ripe.  *Google*, 822 F.3d at 226.

Even if the CID were not self-executing, however, the Attorney General's motion to enforce the CID makes ExxonMobil's claims ripe.  While the Attorney General states that she "has taken only the initial steps of opening an investigation and issuing a CID to Exxon," Mem. 19, she has in fact done more.  On the same day she filed this motion to dismiss, the Attorney General also moved to compel ExxonMobil's compliance with the CID in Massachusetts state court.[43]  This action eliminates any doubt about the ripeness of ExxonMobil's claims in this Court.  *Cf. Google*, 822 F.3d at 225 (holding that review of a non-self-executing subpoena was unripe so long as the state official "ha[d] not brought an enforcement action"); *Lone Star Coll. Sys.* v. *EEOC*, No. H-14-529, 2015 WL 1120272, at *7 (S.D. Tex. Mar. 12, 2015) ("These claims are not ripe for review because there is no final agency action or a move to enforce a subpoena.").  By seeking to enforce the CID, the Attorney General has presented ExxonMobil with further immediate consequences for non-compliance, which makes the claim ripe.

Finally, the Attorney General contends that availability of a state forum for a claim causes a federal action based on that claim to be unripe.  Mem. 18–19.  This is not the law.

---

[41]    *Compare* Chapter 93A § 7 ¶ 1 ("Any person who fails to appear … shall be assessed a civil penalty of not more than five thousand dollars") *with id.* ¶ 2 ("The attorney general may file in the superior court of the county in which such person resides … or of Suffolk county if such person is a nonresident or has no principal place of business in the commonwealth … a petition for an order of such court for the enforcement of this section and section six.").

[42]    Further confirming that civil money penalties can be imposed administratively, Chapter 93A § 7 contemplates the filing of an action in court to "enforce this section," *i.e.*, the provision providing for imposition of civil money penalties.  This would make no sense if the court itself were imposing the penalties in the first place, underscoring the fact that it is the Attorney General who assesses such penalties administratively, and, if they remain unpaid, may seek a court order enforcing them.

[43]    MTD App. at 120–23.

Accepting this proposition would shut the doors of federal courthouses by imposing a state court exhaustion requirement for § 1983 plaintiffs—like ExxonMobil here—claiming the violation of federal constitutional rights.  But the "very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights," *Mitchum* v. *Foster*, 407 U.S. 225, 242 (1972), and, as a result, "there is no general exhaustion requirement for § 1983 plaintiffs," *Wudtke* v. *Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997).  No such requirement should be judicially created here.

## IV.    Venue Is Proper in this District.

As the Attorney General recognizes, venue is proper in any district in which "a substantial part of the events or omissions giving rise to a claim occurred."  Mem. 19 (citing 28 U.S.C. § 1391(b)(2)).  And when evaluating a claim of improper venue, a court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."  *Gruber Hurst Johansen & Hail, LLP* v. *Hackard & Holt*, No. 3:07-CV-1410-G, 2008 WL 137970, at *5 (N.D. Tex. Jan. 15, 2008).  The Complaint alleges the Attorney General violated ExxonMobil's rights in this district by discriminating against a viewpoint emanating from Irving, Texas.

The location of ExxonMobil's injury provides a sound basis for venue.  In First Amendment cases, the location of a plaintiff's injury is sufficient to establish venue in that district.  *See Asgeirsson* v. *Abbott*, 773 F. Supp. 2d 684, 693 (W.D. Tex. 2011) (holding that "[v]enue is proper in this Court because 'a substantial part of the events . . . giving rise to the claim'—the alleged suppression of First Amendment rights of Plaintiffs"—occurred in that district), *aff'd*, 696 F.3d 454 (5th Cir. 2012).  And a First Amendment injury has been held to be located at the plaintiff's principal place of business, because that is where its "First Amendment rights have been denied."  *Fund for La.'s Future* v. *La. Bd. of Ethics*, No. 14-0368, 2014 WL

1514234, at *12 (E.D. La. Apr. 16, 2014).

Here, the CID has caused ExxonMobil to suffer violations of its First Amendment rights (among others) in the Northern District of Texas.[44]   Indeed, the Texas Attorney General recognized that these injuries were being suffered in Texas when, signifying the State's interest in protecting the rights of its citizens, he intervened in a related action seeking to stop an improper investigation "driven by ideology, and not law."[45]   In addition, many of the millions of documents sought by the Attorney General's unconstitutional fishing expedition are located in the Northern District of Texas.[46]   They pertain to activities ExxonMobil has undertaken in this district, including, among others, statements made at a shareholder meeting in Dallas and documents concerning a 2016 press release issued in Irving, Texas.[47]   Venue is therefore proper.

## CONCLUSION

The Attorney General does not contest the adequacy of ExxonMobil's constitutional claims but nevertheless seeks to avoid scrutiny in this Court.  There is no valid basis to grant that relief.  This Court has jurisdiction over the Attorney General, abstention is unwarranted, ExxonMobil's claims are ripe, and venue is proper.  The Court should deny the Attorney General's motion to dismiss and allow this action to proceed.

---

[44]   Compl. ¶¶ 15, 70–81.
[45]   MTD App. at 82.
[46]   Compl. ¶¶ 18, 55; Anderson Decl. (Dkt. No. 1, Ex. 1) ¶ 3.
[47]   *See, e.g.*, MTD App. at 37–39.

Dated:  September 8, 2016

EXXON MOBIL CORPORATION

By:  /s/ Patrick J. Conlon _____
Patrick J. Conlon
*pro hac vice*
State Bar No. 24054300
Daniel E. Bolia
State Bar No. 24064919
daniel.e.bolia@exxonmobil.com
1301 Fannin Street
Houston, TX 77002
(832) 624-6336


/s/ Theodore V. Wells, Jr. _____
Theodore V. Wells, Jr.
*pro hac vice*
twells@paulweiss.com
Michele Hirshman
*pro hac vice*
Daniel J. Toal
*pro hac vice*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000
Fax: (212) 757-3990

Justin Anderson
*pro hac vice*
janderson@paulweiss.com
2001 K Street, NW
Washington, D.C.  20006-1047
(202) 223-7300
Fax: (202) 223-7420


*Counsel for Exxon Mobil Corporation*

/s/ Ralph H. Duggins _____
Ralph H. Duggins
State Bar No. 06183700
rduggins@canteyhanger.com
Philip A. Vickers
State Bar No. 24051699
pvickers@canteyhanger.com
Alix D. Allison
State Bar. No. 24086261
aallison@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800
Fax: (817) 877-2807


/s/ Nina Cortell _____
Nina Cortell
State Bar No. 04844500
nina.cortell@haynesboone.com
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
(214) 651-5579
Fax: (214) 200-0411

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 8th day of September 2016, a true and correct copy of the foregoing document was filed electronically via the CM/ECF system, which gave notice to all counsel of record pursuant to Local Rule 5.1(d).

/s/ Ralph H. Duggins           
Ralph H. Duggins
