IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:16-CV-469-K |
| MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity, | ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendant. | ) ) ) | |

**ATTORNEY GENERAL HEALEY'S REPLY
TO EXXON MOBIL CORPORATION'S OPPOSITION TO
<u>ATTORNEY GENERAL HEALEY'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ..................................................................................................................... 1

    A. The Attorney General Does Not Concede the Sufficiency of Exxon's Claims. ..........................................................................................................................1

    B. Exxon Misapplies Personal Jurisdiction Precedents From the Fifth Circuit and the Supreme Court..........................................................................................3

        1. The Long-Arm Statute Does Not Reach the Attorney General. ...................3

        2. Even If the Long-Arm Statute Reached Defendant Attorney General Healey, Her Contacts With Texas—Not Plaintiff Exxon's—Are the Focus of This Court's Jurisdictional Analysis and Supreme Court Precedent Confirms Exercising Personal Jurisdiction Over Her Would Violate Due Process. ....................................5

    C. The Court Should Abstain Because No Exceptions to the Younger Doctrine Apply..........................................................................................................8

    D. The Northern District of Texas Is An Improper Venue. .........................................10

III. CONCLUSION................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Asgeirsson v. Abbott*, 773 F. Supp. 2d 684 (W.D. Tex. 2011) ...................................................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 1, 2, 3

*B & G Prod. Co. v. Vacco*, No. CIV.98-2436 ADM/RLE, 1999 WL 33592887 (D. Minn. Feb. 19, 1999) .............................................................................................................................. 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 2

*Bishop v. State Bar of Tex.*, 736 F.2d 292 (5th Cir. 1984) ............................................................... 9

*Brooks v. N.H. Supreme Ct.*, 80 F.3d 633 (1st Cir. 1996) ............................................................... 9

*Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................................. 5

*Cutting Edge Enterprises, Inc. v. Nat'l Ass'n of Attorneys Gen.*, 481 F. Supp. 2d 241 (S.D.N.Y. 2007) ............................................................................................................................. 7

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) ................................................................ 2, 10

*Kenneally v. Lungren*, 967 F.2d 329 (9th Cir. 1992) ...................................................................... 9

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) ....................................... 6

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) ................. 6

*Payne v. Cty. of Kershaw*, No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008) .............................................................................................................................................. 4

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) ............................................................................. 8

*Peralta v. Caldwell*, No. 15-1385, 2015 WL 7451206 (E.D. La. Nov. 23, 2015) .......................... 8

*Perez Bustillo v. State*, 718 S.W.2d 844 (Tex. App. 1986) ............................................................ 5

*Phelps v. Hamilton*, 122 F.3d 885 (10th Cir. 1997) ....................................................................... 9

*Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010) .... 1, 4, 5, 7

*Startzell v. City of Philadelphia*, No. Civ. A. 04–5547, 2004 WL 2884210 (E.D. Pa. Dec. 10, 2004) .............................................................................................................................................. 9

*Stewart v. Dameron*, 460 F.2d 278 (5th Cir. 1972) ........................................................................ 9

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) ...................................... 3, 4, 6, 7

*Turner v. Abbott*, 53 F. Supp. 3d 61 (D.D.C. 2014) ................................................................... 7

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ................................................................................ 5, 6

*Wightman v. Tex. Supreme Ct.*, 84 F.3d 188 (5th Cir 1996) ........................................................ 9

*Younger v. Harris*, 401 U.S. 37 (1971) ....................................................................................... 8

**Statutes**

28 U.S.C. § 1391 ......................................................................................................................... 10

Mass. Gen. Laws ch. 93A, § 6 .................................................................................................... 10

Mass. Gen. Laws ch. 93A, § 7 ................................................................................................ 8, 10

Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.* ............................................................................. 3

**Rules**

Fed. R. Civ. P. 12 .......................................................................................................................... 1

Fed. R. Civ. P. 8 ............................................................................................................................ 1

Mass. R. Civ. P. 26 ...................................................................................................................... 10

## I. INTRODUCTION

The controlling precedents of the United States Supreme Court and the Fifth Circuit, as recently applied by this Court in *Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010), require this case to be dismissed for lack of personal jurisdiction. Federal courts have consistently dismissed cases against out-of-state government officials whose sole connection to a forum was an alleged harm to a plaintiff residing there. Exxon's repeated incantation of bad faith on the part of Attorney General Healey does not change this analysis. Exxon fails to cite any law that would support an exception to the established precedents requiring this Court to decline jurisdiction. Even if there were jurisdiction, this Court should abstain because Exxon has a fully adequate remedy for adjudicating the challenges it has raised to Attorney General Healey's civil investigative demand ("CID") in an almost identical action in the Massachusetts state courts.

## II. ARGUMENT

### A. THE ATTORNEY GENERAL DOES NOT CONCEDE THE SUFFICIENCY OF EXXON'S CLAIMS.

Despite Exxon's repeated assertions to the contrary, Opp. at 1, 2, 25,[1] the Attorney General does not concede the adequacy of Exxon's claims and reserves her right to challenge their sufficiency.[2] The bald, baseless allegations in Exxon's complaint (and other filings) that the Attorney General has, out of personal animus and in bad faith, undertaken an investigation to chill Exxon's purportedly constitutionally protected speech plainly fails to meet the pleading standards of Rule 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of

---

[1] "Opp." refers to Exxon's Opposition to the Attorney General's Motion to Dismiss. "Mem." refers to the Attorney General's Memorandum in Support of the Motion to Dismiss. "PI Opp." refers to the Attorney General's Opposition to Exxon's Motion for Preliminary Injunction. "Compl." refers to the Complaint.
[2] The Attorney General has the right to, and will if needed, challenge the sufficiency of Exxon's pleadings in a future filing. Fed. R. Civ. P. 12(h)(2).

1

the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Exxon's textbook "conclusory statements" are insufficient to support its claims. *See* Mem. at 3-4.

Exxon's pleadings are similar to those the Supreme Court dismissed in *Iqbal*. There, the plaintiff claimed that Attorney General John Ashcroft and FBI Director Robert Mueller "'each knew of, condoned, and willfully and maliciously agreed to subject' [him] to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" naming "Ashcroft as the 'principal architect' of the policy" and "Mueller as 'instrumental in [its] adoption, promulgation, and implementation.'" *Id.* at 669. The *Iqbal* Court disregarded the plaintiff's conclusory statements as not entitled to a presumption of truth and held that the plaintiff's complaint lacked the "factual content to 'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible'" required to survive a motion to dismiss. *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570).

Similarly here, removing the conclusory statements referenced above, Exxon offers little more than the fact of the CID, the New York press conference,[3] and now a routine common interest agreement to support its claim that the Attorney General issued the CID as part of an intentional, malicious effort to violate Exxon's constitutional rights.[4] Those facts are insufficient. Contrary to Exxon's narrative (but supported by documents included with its complaint), Attorney General Healey has a clear, supported basis for believing investigation of Exxon is

---

[3] A transcript of the Attorney General's remarks, excerpted from the attachments to Exxon's papers, is appended as Supplemental Appendix Exhibit ("Supp. App. Ex.") A.

[4] Exxon's allegations are not dissimilar to the allegations against Attorney General Hood in *Google v. Hood*, which the Fifth Circuit did not even entertain in its decision vacating the injunction against him. 822 F.3d 212, 228 (5th Cir. 2016) ("invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury").

warranted based on her Office's review of public disclosures regarding Exxon's scientific knowledge of the risks posed by fossil fuel use to the climate and potential failure to disclose those risks to investors and consumers. See Compl., Ex. G, App. 065; Ex. CC, App. 249, 250-51. That belief is further supported by the fact that the FBI is investigating the matter, as confirmed by the U.S. Attorney General, *id.*, Ex. BB, App. 243-45; several lawmakers have called for the Department of Justice to investigate, *id.*, Ex. F, App. 061; and at least two other jurisdictions are also investigating, *id.*, including the New York Attorney General, who has issued a subpoena to Exxon. *Id.*, Ex. A, App. 004; Ex. O, App. 153; Ex. CC, App. 247. As in *Iqbal*, "[a]s between that 'obvious alternative explanation'" for the CID "and the purposeful, invidious discrimination [Exxon] asks us to infer, discrimination is not a plausible conclusion." 556 U.S. at 682.

B. **EXXON MISAPPLIES PERSONAL JURISDICTION PRECEDENTS FROM THE FIFTH CIRCUIT AND THE SUPREME COURT.**

At each stage of the personal jurisdiction inquiry—whether the Texas long-arm statute reaches the Attorney General and whether the exercise of personal jurisdiction would be consistent with due process—Exxon relies on a misapplication of the law and unsubstantiated allegations of conspiracy and bias. As such, Exxon's theory of personal jurisdiction must fail.

1. **The Long-Arm Statute Does Not Reach the Attorney General.**

Texas's long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.*, does not reach an individual, out-of-state official, sued in her official capacity, as the Attorney General is here. *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482-83 (5th Cir. 2008) ("[T]he Texas statute offers no obvious rationale for including nonresident individuals sued solely in their official capacity under *Ex Parte Young*.").

Exxon dismisses the Fifth Circuit's reading as mere "dicta."[5] Opp. at 8. That the Fifth

---

[5] The defendant in *Stroman* "conced[ed] the application of the 'tort' provision of the long-arm statute,"

Circuit explicitly opined on the absence of an "obvious rationale" for including within the long-arm's reach a nonresident individual sued solely in her official capacity strongly suggests that it would find long-arm jurisdiction over Attorney General Healey unlawful.[6] Tellingly, none of the cases on which Exxon relies contradicts the Fifth Circuit's reading.

Exxon offers four cases for the general proposition that the long-arm statute reaches as far as due process will allow.[7] As the Fifth Circuit noted in *Stroman*, however, "while the long-arm statute is coextensive with the limits of procedural due process for those people and entities and activities *that it describes*, the legislature may not have opened the courthouse doors to include this case." *Id.* at 483 (emphasis added). Moreover, *none* of Exxon's four cases involves an individual, out-of-state official, sued in his or her official capacity, and three of them were decided roughly forty years before the Fifth Circuit's opinion in *Stroman*.

Exxon then offers seven more cases purporting to illustrate that the long-arm statute reaches individual, out-of-state officials, sued in their official capacities.[8] Only three of those cases, however, actually involve such officials, and *none* of them addresses or contradicts the *Stroman* Court's reading of the statute. In fact, two of them—*Payne v. Cty. of Kershaw*, No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008), and this Court's decision in *Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010)—follow the *Stroman* Court's "reject[ion of] the idea that a nonresident government official may be haled into a Texas court simply because the effects of a ruling are felt in Texas," even with allegations

---

thereby "reliev[ing] th[e] court of an obligation to pursue these interpretive questions." *Id.* at 483. Attorney General Healey does not so concede.

[6] Exxon also argues that issuing the CID qualifies as "doing business" in Texas under the long-arm statute, claiming that doing so was "commit[ting] a tort" in Texas. Opp. at 8. The *Stroman* Court disagreed, noting that "only by twisting the ordinary meaning of the terms covered by the long-arm statute is Arizona's regulatory activity intended to be encompassed and adjudicated in Texas courts." *Id.*
[7] Opp. at 6-7.
[8] Opp. at 7-8.

4

of unconstitutional conduct, as in *Saxton*. 2010 WL 3446921, at *3.[9]

There is no jurisdiction over Attorney General Healey under the Texas long-arm statute.

### 2. Even If the Long-Arm Statute Reached Defendant Attorney General Healey, Her Contacts With Texas—Not Plaintiff Exxon's—Are the Focus of This Court's Jurisdictional Analysis and Supreme Court Precedent Confirms Exercising Personal Jurisdiction Over Her Would Violate Due Process.

Exxon wrongly argues that personal jurisdiction over Attorney General Healey in Texas would be consistent with due process because she allegedly acted intentionally to harm Exxon in Texas.[10] Even if Exxon pleaded sufficient facts to support its allegations—and it cannot and does not—those allegations would be insufficient under controlling precedent for the exercise of personal jurisdiction consistent with due process.

As the Supreme Court recently underscored in its unanimous opinion in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), even under the *Calder* "effects" test for personal jurisdiction that Exxon invokes, the core analysis is still of "the defendant's contacts *with the forum State itself, not the defendant's contacts with persons who reside there*." *Id.* at 1122 (emphasis added). "The crux of *Calder*," the Court wrote, was that "the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens," thereby "connect[ing] the defendants' conduct to *California*, not just to a plaintiff who lived there." *Id.* at 1123-24.

Here, there is no such connection between the Attorney General and the State of Texas. The only connection Exxon alleges between the Attorney General and Texas is that the Attorney General intentionally issued the CID in order to harm Exxon, which resides in Texas. The Supreme Court specifically rejected finding personal jurisdiction on such a basis in *Walden*:

---

[9] The remaining case, *Perez Bustillo v. Louisiana*, 718 S.W.2d 844 (Tex. App. 1986), did not inquire into whether the long-arm statute applied, instead finding a lack of jurisdiction on minimum contacts grounds.
[10] Exxon's theory apparently derives from the personal jurisdiction "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984), though Exxon does not cite *Calder* by name.

5

> Petitioner's actions in [Massachusetts] did not create sufficient contacts with [Texas] simply because [s]he allegedly directed h[er] conduct at plaintiffs whom [s]he knew had [Texas] connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. It also obscures the reality that none of petitioner's challenged conduct had anything to do with [Texas] itself.

*Id.* at 1125. Moreover, "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum" and "is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum *in a meaningful way*." *Id.* (emphasis added); *see also Stroman*, 513 F.3d at 486 ("We have declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident.") (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) and *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001)). "[V]iewed through the proper lens" of *Calder*—"whether the defendant's actions connect him to the *forum*"—it is clear that the Attorney General's issuance of the CID to Exxon's registered agent in Massachusetts does not connect her to Texas in any meaningful way and, as such, personal jurisdiction is lacking. *Walden*, 134 S. Ct. at 1124.

Importantly, under Exxon's expansive theory, personal jurisdiction over a defendant would obtain so long as the plaintiff claimed some intentional harmful effect in its favored forum, notwithstanding the complete absence of any facts establishing a meaningful connection between the defendant and the forum. Such a rule would eviscerate jurisdictional due process limits that are intended to "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* at 1122.

In any case, as set forth above, Exxon has not made—and cannot make—a prima facie showing of intentional harm. As discussed in Part II.A, *supra*, Exxon offers only conclusory

6

statements about the Attorney General's supposedly unconstitutional motives and a handful of facts to support its allegations that the Attorney General maliciously intends to trample Exxon's constitutional rights in Texas. It is not enough for Exxon merely to assert that Attorney General Healey, in bad faith, willfully and improperly targeted Exxon; to find personal jurisdiction over the Attorney General on that basis, without more, would defeat core constitutionally-guaranteed due process limits on the exercise of jurisdiction.

Further, for several of the same reasons that it cannot establish irreparable harm for purposes of its motion for a preliminary injunction, Exxon has not and cannot establish that it has suffered any injury, constitutional or otherwise, by virtue of receiving the CID, given that the New York Attorney General has issued a substantially similar subpoena to Exxon, *see* Compl. Ex. CC, App. 247, which Exxon has not challenged and with which it is complying. *See* PI Opp. at 1-2; 10. There is no logic to Exxon's claim that the mere issuance of Attorney General Healey's CID constitutes a grievous, tortious harm, while Exxon cooperates, without challenge, with essentially the same request, issued by the New York Attorney General. Likewise, Exxon has vowed that it will continue undaunted in its speech regarding climate change, *see* Compl. at ¶ 79, PI Opp. at 14, evidencing no suppression or chilling or harm to any speech rights whatsoever.

In the absence of any facts to support its allegations of intentional harm—and under the correct interpretation of relevant precedent—Exxon's attempts to distinguish this case from the governing *Stroman* cases and *Saxton* are unavailing.[11] The result here should be the same as in

---

[11] Indeed, the Attorney General is not aware of any case in which a federal court exercised personal jurisdiction over an out-of-state attorney general who challenged jurisdiction. In fact, several federal courts have held that they lacked jurisdiction over an out-of-state attorney general. *See, e.g.*, *Turner v. Abbott*, 53 F. Supp. 3d 61, 68 (D.D.C. 2014) (holding court lacked jurisdiction over Texas Attorney General); *Cutting Edge Enterprises, Inc. v. Nat'l Ass'n of Attorneys Gen.*, 481 F. Supp. 2d 241, 246 (S.D.N.Y. 2007) (holding court lacked personal jurisdiction over forty state attorneys general); *B & G Prod. Co. v. Vacco*, No. CIV.98-2436 ADM/RLE, 1999 WL 33592887, at *5 (D. Minn. Feb. 19, 1999) (holding court lacked personal jurisdiction over New York attorney general in suit to enjoin enforcement

those cases: this Court should find a lack of personal jurisdiction and dismiss Exxon's case.

## C.  THE COURT SHOULD ABSTAIN BECAUSE NO EXCEPTIONS TO THE YOUNGER DOCTRINE APPLY.

*Younger* abstention warrants dismissal of this action.[12] Exxon readily acknowledges that it has initiated a lawsuit, pending before the Massachusetts Superior Court, where it has filed hundreds of pages of briefing, affidavits, and supporting materials, many the same as filed here, seeking the same relief it seeks here. *See* Supp. App. Ex. B. Exxon will therefore have a full and fair opportunity to raise its constitutional and other objections to the CID. *See* Mem. at 13-18. Indeed, the statute authorizing the CID states that those receiving a CID must comply, "unless otherwise provided by the order of a court of the commonwealth" of Massachusetts. Mass. Gen. Laws ch. 93A, § 7. Exxon has not alleged that the statutorily prescribed method of challenging CIDs is inadequate. Exxon's failure to allege that Massachusetts courts cannot adequately safeguard its rights should be fatal to its argument. *See Peralta v. Caldwell*, No. 15-1385, 2015 WL 7451206, *4 (E.D. La. Nov. 23, 2015) (dismissing case against Louisiana officials because "the bad-faith prosecution exception does not apply unless the complaining party can show that the state judicial proceedings as a whole are unfair").[13]

Relying on the same unsupported allegations discussed above, Exxon claims that the exception for "bad faith" or harassing state proceedings should apply to bar *Younger* abstention

---

of New York environmental laws against plaintiff in New York).

[12] Exxon's only new argument addressed to the core *Younger* factors—that Exxon has no remedy in Massachusetts courts because they have no personal jurisdiction over Exxon, Opp. at 21—actually supports *Younger* abstention here. Exxon has briefed lack of jurisdiction extensively in the Massachusetts case. If the Massachusetts courts agree that they lack personal jurisdiction over Exxon, despite the unassailable evidence of Exxon's wide-ranging commercial contacts with Massachusetts, see PI Opp. at 5-6, the Attorney General would be left with no recourse to enforce her CID, and all of the claims Exxon raises here would be moot.

[13] Nor would such an allegation be cognizable here. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987) ("[W]e cannot say that [the state] courts, when this suit was filed, would have been any less inclined than a federal court to address and decide the federal constitutional claims.").

8

in this case. Opp. at 18-20 (citing *Bishop v. State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984)). It does not. "The bad faith exception is narrow and is to be granted parsimoniously." *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 190 (5th Cir 1996). Accordingly, Exxon bears a "heavy burden" in proving bad faith. *Stewart v. Dameron*, 460 F.2d 278, 279 (5th Cir. 1972).

"Bad faith" cannot be established with conclusory allegations of improper prosecutorial motives and prejudgment. *Wightman,* 84 F.3d at 190-91 (rejecting application of bad faith exception in bar discipline case where plaintiff alleged First Amendment violations because "more than . . . allegation is required," plaintiff failed to "offer some *proof*" of bad faith, and "extensive and lengthy" state procedures "protect [plaintiff] against bad faith behavior").[14]

Exxon's allegations fail to show improper bias or prejudgment. PI Opp. at 21-23. Indeed, in all of its voluminous filings, Exxon provides nothing more than supposition and innuendo and fails even to allege any concrete facts warranting further investigation.[15] Contrary to Exxon's conjured conspiracy, the Attorney General's investigation is grounded in a reasonable belief that Exxon has misled Massachusetts investors and consumers. *See supra* Part II.A.

The Massachusetts courts are fully authorized to adjudicate Exxon's arguments that the Attorney General's investigation is improper in motive or scope. *See* Mass. Gen. Laws ch. 93A, § 6(5) (forbidding CIDs that would not be proper in judicial subpoenas); *id.* § 6(7) (providing for

---

[14] *See also Phelps v. Hamilton*, 122 F.3d 885, 889-91 (10th Cir. 1997) (affirming abstention despite claims of personal animus, biased political statements, and twenty prosecutions of anti-homosexual church members); *Brooks v. N.H. Supreme Ct.*, 80 F.3d 633, 639 (1st Cir. 1996) (bias claim to defeat abstention insufficient where "pasted together from various bits and pieces of marginally relevant information"); *Startzell v. City of Philadelphia*, No. Civ. A. 04–5547, 2004 WL 2884210, *2-*4 (E.D. Pa. Dec. 10, 2004) (noting that bad faith exception is "*very* narrow" and collecting examples of bad faith prosecution that "expose the weakness" of plaintiffs' allegation of retaliation for protected speech).

[15] The Court should not indulge Exxon's desire to conduct further factual investigation of the Attorney General's investigation, especially where Exxon has already submitted to the Court several affidavits and dozens of irrelevant documents that fail to even hint at bad faith. *See, e.g.*, *Kenneally v. Lungren*, 967 F.2d 329, 334-35 (9th Cir. 1992) (affirming decision not to take proffered testimony on applicability of bad faith exception).

protective orders in same circumstances as Mass. R. Civ. P. 26(c)). No exception to *Younger* abstention applies, and the Court should dismiss the complaint.[16]

**D. THE NORTHERN DISTRICT OF TEXAS IS AN IMPROPER VENUE.**

Exxon's only argument for this Court being the proper venue for its claims is identical to its "effects" argument for personal jurisdiction in Texas, *see supra* Part II.B.2, and is therefore equally specious. The "events" from which Exxon's claims arise—the Attorney General's issuance of the CID in Massachusetts and the press conference in New York—did not occur in Texas. 28 U.S.C. § 1391(b)(2) (venue lies in district where "a substantial part of the events or omissions giving rise to the claim occurred").[17] In this context, and for the reasons discussed in the Attorney General's initial brief, this case should be dismissed for improper venue. *See* Memo. at 19-20.

**III. CONCLUSION**

For the foregoing reasons, the Attorney General respectfully requests that the Court dismiss Exxon's case with prejudice.

---

[16] Should the Court decline to abstain, the case is unripe under *Google, Inc. v. Hood*, because, as *Google* holds, premature federal court intervention in the early stages of state investigations is improper, especially given the need for comity with state courts. 822 F.3d 212, 226 (5th Cir. 2016); Memo. at 15. The Attorney General's enforcement of the CID is not imminent, since the AGO is not in a position to oblige compliance until Exxon's pending objections are fully adjudicated in Massachusetts courts, including any appeals. Nor is Exxon's invocation of the Attorney General's authority to seek the assessment of a civil penalty germane: the Attorney General has not sought to have penalties imposed for noncompliance with the CID, and, in any case, any such penalties can only be imposed by order of the Massachusetts courts. *See* Mass. Gen. Laws. c. 93A, § 7 ("The attorney general may file in the superior court . . . a petition for an order of such court for the enforcement of this section . . . .").

[17] In neither case cited by Exxon for its "effects"-based venue argument did the defendant reside or engage in challenged conduct outside the district's state. Indeed, in one of the cases, venue was not contested at all. *Asgeirsson v. Abbott*, 773 F. Supp. 2d 684, 693 (W.D. Tex. 2011).

Dated: September 16, 2016                              Respectfully submitted,

                                                       MAURA HEALEY
                                                       ATTORNEY GENERAL OF
                                                       MASSACHUSETTS

                                                       By her attorneys:


                                                       s/ *Douglas A. Cawley*
Richard Johnston (*pro hac vice*)                      Douglas A. Cawley
Chief Legal Counsel                                    Lead Attorney
richard.johnston@state.ma.us                           Texas State Bar No. 04035500
Melissa A. Hoffer (*pro hac vice)*                     dcawley@mckoolsmith.com
Chief, Energy and Environment Bureau                   Richard A. Kamprath
melissa.hoffer@state.ma.us                             Texas State Bar No. 24078767
Christophe G. Courchesne (*pro hac vice*)              rkamprath@mckoolsmith.com
Chief, Environmental Protection Division               MCKOOL SMITH, P.C.
christophe.courchesne@state.ma.us                      300 Crescent Court, Suite 1500
I. Andrew Goldberg (*pro hac vice*)                    Dallas, Texas 75201
andy.goldberg@state.ma.us                              (214) 978-4000
Peter C. Mulcahy (*pro hac vice*)                      Fax (214) 978-4044
peter.mulcahy@state.ma.us
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on September 16, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

                                                  s/ *Douglas A. Cawley*
                                                  Douglas A. Cawley