IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-469-K |
| | ) | |
| MAURA TRACY HEALEY, Attorney | ) | |
| General of Massachusetts, in her official | ) | |
| capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ATTORNEY GENERAL HEALEY'S
<u>MOTION TO RECONSIDER JURISDICTIONAL DISCOVERY ORDER</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................... 1

II.     STATEMENT OF FACTS.................................................................................... 1

III.    ARGUMENT........................................................................................................ 3

       A.      This Court Lacks Personal Jurisdiction Over Attorney General
               Healey and Should Dismiss Exxon's Complaint Now on That Basis. ...............3

       B.      The Facts Informing the Decision to Issue the CID Are Already in the
               Record Before This Court, Rendering Further Inquiry Into the Basis
               for a State Attorney General's Investigation Unwarranted and
               Improper.........................................................................................................7

       C.      Venue Is Improper in This Court....................................................................11

IV.    CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

## Cases

*Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000) .................................... 5, 8

*Att'y Gen. v. Bodimetric Profiles*, 533 N.E.2d 1364 (Mass. 1989) ................................. 5

*Beres v. Village of Huntley, Ill.*, 824 F. Supp. 763 (N.D. Ill. 1992) ............................... 7

*Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046 (S.D. Tex. 2000) ............................ 11

*Branch v. Phillips Petrol. Co.*, 638 F.2d 873 (5th Cir. 1981) ........................................ 10

*Buono v. City of Newark*, 249 F.R.D. 469 (D.N.J. 2008) ............................................ 10

*Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318 (D.D.C 1966), *aff'd sub
   nom. V.E.B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C. Cir. 1967) ................................... 10

*Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209 (4th Cir. 1991) .......................................... 10

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) ................................................. 4, 10

*Harmon Law Offices, P.C. v. Att'y Gen.*, 991 N.E.2d 1098 (Mass. App. Ct. 2013) ...................... 5

*In re F.D.I.C.,* 58 F.3d 1055 (5th Cir. 1995) ............................................... 10

*In re McCarthy*, 636 Fed. Appx. 142 (D.C. Cir. 2015) ............................................. 10

*In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006) ............................... 10

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) .............. 6

*Kroger Texas Ltd. P'ship v. Suberu,* 216 S.W.3d 788 (Tex. 2006) ................................ 6

*O'Keefe v. Chisholm*, 769 F.3d 936 (7th Cir. 2014) .................................... 11

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986) ........................ 7

*Rocky Mountain Gun Owners v. Williams*, 119 F. Supp. 3d 1308 (D. Colo. 2015) ...................... 9

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ......................................... 4, 5, 6

*Sabre Oxidation Technologies, Inc. v. Ondeo Nalco Energy Services LP*, No. Civ. A. H-
   04-3115, 2005 WL 2171897 (S.D. Tex. Sept. 6, 2005) ............................................. 7

*Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010).. 1, 4, 7, 11

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) .......................... 5

*Stockman v. Fed. Election Comm'n*, 138 F.3d 144 (5th Cir. 1998) ............................... 8

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008).................................................. 4, 5

*United States v. Armstrong*, 517 U.S. 456 (1996) ........................................................................ 9

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ...................................................................................... 5

*Washington v. Norton Mfg., Inc.*, 588 F.2d 441 (5th Cir. 1979)...................................................... 8

*Younger v. Harris*, 401 U.S. 37 (1971) ........................................................................................ 3

**Statutes**

28 U.S.C. § 1391 ................................................................................................................ 11

28 U.S.C. § 1406 ................................................................................................................ 11

Mass. Gen. Laws ch. 93A, § 6 ............................................................................................ 5

**Other Authorities**

Press Release, "Attorney General Paxton Announces Investigation of Volkswagen,"
    dated September 24, 2015, *available at*
    https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-
    announces-investigation-of-volkswagen (last accessed Oct. 18, 2016) .................................... 9

*SEC Probes Exxon Over Accounting for Climate Change*, THE WALL STREET JOURNAL,
    Sept. 20, 2016, *available at* http://www.wsj.com/articles/sec-investigating-exxon-on-
    valuing-of-assets-accounting-practices-1474393593 (last accessed Oct. 19, 2016) .................. 2

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................ 7

## I.      INTRODUCTION

This Court should rule on Attorney General Healey's pending motion to dismiss on personal jurisdiction grounds before requiring the parties to engage in expensive and potentially protracted discovery related to the application of *Younger* abstention. The Court not only has authority to decide the motion to dismiss, but must do so here where binding Supreme Court and Fifth Circuit precedent, as recently applied by this Court in *Saxton v. Faust*,[1] precludes this Court from exercising personal jurisdiction over Attorney General Healey.

## II.     STATEMENT OF FACTS

On September 19, 2016, this Court heard argument on Exxon Mobil Corporation's ("Exxon") motion for a preliminary injunction, and the Court permitted counsel for Attorney General Healey to address the arguments set forth in her fully briefed motion to dismiss, inasmuch as it was relevant to Exxon's need to show a likelihood of success on the merits in order to obtain injunctive relief. Attorney General Healey also argued, in part, that Exxon could not establish that it would suffer irreparable harm as a result of her civil investigative demand ("CID"), since Exxon had already produced over 700,000 pages of documents to the New York Attorney General in response to his similar subpoena, issued under New York's Martin Act. Tr. 55:3-8. (Doc. No. 68). Exxon confirmed that it had produced those documents and was, at the time of the September 19 hearing, still cooperating with the New York subpoena. Tr. at 88:1-90:21. Near the close of argument, the Court had this exchange with counsel for Exxon:

> THE COURT: . . . Is it true what [counsel for Attorney General Healey] said about y'all cooperating in New York and not cooperating with them?
>
> MR. ANDERSON: Your Honor, we were served with a subpoena before the press conference, and we are cooperating with it.

---

[1] No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010).

THE COURT: Yes? No? Or whatever?

MR. ANDERSON: Yes.

THE COURT: So why the heck are we having this big fight? . . . Why are y'all poking this bear? If you are agreeing to cooperate there, why aren't you cooperating with them?

Tr. 88:1-13. After argument, the Court instructed the parties to confer and attempt to work out a resolution. The Court gave the parties one week, until September 26, to report back, and made clear that if the parties could not resolve the matter, the Court would appoint a mediator.

On September 20, the day after the hearing, the AGO learned from public news reports that, in August of 2016, the United States Securities and Exchange Commission ("SEC") had opened an investigation into "how Exxon Mobil Corp. values its assets in a world of increasing climate change regulations."[2] Exxon has confirmed that it is cooperating with the SEC investigation.[3] Exxon made no mention of the SEC investigation at the September 19 hearing before this Court.

On September 28, Exxon and representatives from the Attorney General's Office ("AGO") met in Boston but were unable to reach a resolution, and so informed the Court by letter.[4] The Court appointed the Honorable James Stanton as mediator (Docket No. 69), and the parties met with Judge Stanton in Dallas on October 6, where again no resolution was reached. On October 13, this Court ordered (Doc. No. 73, the "Order") that "jurisdictional discovery by both parties" be permitted "to aid the Court in deciding whether this law suit should be dismissed on jurisdictional grounds." Order at 6. Specifically, this Court sought additional facts to assist its

---

[2] *SEC Probes Exxon Over Accounting for Climate Change*, THE WALL STREET JOURNAL, Sept. 20, 2016, *available at* http://www.wsj.com/articles/sec-investigating-exxon-on-valuing-of-assets-accounting-practices-1474393593 (last accessed Oct. 19, 2016).

[3] *Id.*

[4] The letter confirmed that Attorney General Healey's involvement in the mediation did not constitute a waiver of her arguments with respect to the Court's jurisdiction, including her argument that the Court lacks personal jurisdiction over her.

determination whether to abstain from hearing this suit under *Younger v. Harris*, 401 U.S. 37

(1971). Order at 3.

On October 17, Exxon moved to amend its complaint to add the New York Attorney

General as a defendant, and to "add new claims for federal preemption and for conspiracy to

deprive [Exxon] of its constitutional rights." Exxon Mobil Corp.'s Memorandum of Law in

Support of Its Motion for Leave to File a First Amended Complaint (Doc. No. 75) at 1.

## III.   ARGUMENT

### A.   THIS COURT LACKS PERSONAL JURISDICTION OVER ATTORNEY GENERAL HEALEY AND SHOULD DISMISS EXXON'S COMPLAINT NOW ON THAT BASIS.

As set forth in detail in Attorney General Healey's opening brief in support of her motion

to dismiss and reply to Exxon's opposition to that motion, both of which she incorporates by

reference in full here, Exxon has failed to establish that the Texas long-arm statute and federal

due process permit this Court's exercise of personal jurisdiction over Attorney General Healey.

*See* Memorandum of Law in Support of Defendant Attorney General Healey's Motion to

Dismiss (Doc. No. 42, "Mem.") at 4-13; Attorney General Healey's Reply to Exxon Mobil

Corporation's Opposition to Attorney General Healey's Motion to Dismiss (Doc. No. 65,

"Reply") at 3-8. As construed by the Fifth Circuit, the Texas long-arm statute does not reach a

foreign state official sued in her official capacity, as the Attorney General was here. Mem. at 4-6;

Reply at 3-5. And, this Court's exercise of personal jurisdiction over Attorney General Healey

would violate due process because (1) she lacks the minimum contacts with Texas necessary to

establish personal jurisdiction; and (2) the Court's exercise of jurisdiction would be

unreasonable. As to the latter issue, litigating in this Court would place a heavy burden on

Attorney General Healey, Texas has little stake in the litigation, Exxon has an adequate remedy

in the Massachusetts courts to pursue its claims, duplicative litigation of Exxon's nearly identical

Massachusetts claims undermines the judicial interest in efficient resolution of controversies, and, finally, this Court's exercise of personal jurisdiction here would set a dangerous precedent of requiring public officials to defend their attempts to investigate potential violations of their own state laws in courts throughout the country. Mem. at 6-13; Reply at 5-8; Memorandum of Law for Amici Curiae States of Maryland et al. in Support of Defendant's Motion to Dismiss and in Opposition to Plaintiff's Motion for a Preliminary Injunction (Doc. No. 54, "Amici States Br.") at 18-20; *see generally Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008); *Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010).[5] Nothing in Exxon's motion for leave to amend its complaint and supporting papers changes the fact that this Court lacks personal jurisdiction over Attorney General Healey, or otherwise provides any basis for this Court not to decide Attorney General Healey's pending motion to dismiss.[6]

It is firmly established that this Court can decide the essential question of personal jurisdiction over the defendant before considering whether it would have subject matter jurisdiction over the claims asserted. In *Ruhrgas AG v. Marathon Oil*, 526 U.S. 574 (1999), the Supreme Court explained "there is no unyielding jurisdictional hierarchy. Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry." *Id.* at 578. The Fifth Circuit has read *Ruhrgas* "to direct lower courts facing multiple grounds for dismissal to consider the complexity of subject-matter jurisdiction issues raised by the case, *as well as concerns of federalism*, and of judicial economy and restraint in determining

---

[5] As discussed in the Attorney General's principal brief, Mem. at 18-19, and the Amici States' brief, Amici States Br. at 10-16, under the reasoning of the recent Fifth Circuit decision in *Google, Inc. v. Hood*, Massachusetts courts' competence to hear Exxon's claims provides another dispositive basis for dismissal. 822 F.3d 212, 224-26 (5th Cir. 2016).

[6] If the Court grants the motion to dismiss, it need not resolve Exxon's motion to amend.

whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000) (emphasis added). *Cf. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) (holding that court may dismiss suit on grounds of *forum non conveniens* without first establishing its own jurisdiction).

In *Ruhrgas,* the Supreme Court found that it was appropriate to resolve first the question of personal jurisdiction where, as here, "the absence of personal jurisdiction is the surer ground[.]"[7] 526 U.S. at 578. In order to assess the Attorney General's alternative ground for dismissal—*Younger* abstention—the Court has ordered discovery into the basis for Attorney General Healey's issuance of the CID, specifically whether she was biased or pre-judged the outcome of the investigation. Order at 4. However, under Massachusetts law, the Attorney General may *only* issue a CID *if she believes that the target is violating Chapter 93A. See* Mass. Gen. Laws ch. 93A, § 6(1); *Harmon Law Offices, P.C. v. Att'y Gen.*, 991 N.E.2d 1098, 1103 (Mass. App. Ct. 2013); Attorney General Healey's Opposition to Exxon's Motion for Preliminary Injunction (Doc. No. 43, "PI Opp.") at 3, 21-22. In other words, the Attorney General's belief that Exxon has violated Chapter 93A does not, under Massachusetts law, constitute bias; rather, it is a legally *required* predicate to issuance of a CID. *Att'y Gen. v. Bodimetric Profiles*, 533 N.E.2d 1364, 1367 (Mass. 1989); *Harmon Law Offices*, 991 N.E.2d at

---

[7] Indeed, the "effects" on Exxon in Texas of Attorney General Healey's actions outside Texas cannot support personal jurisdiction under binding precedents of the Supreme Court and the Fifth Circuit. *See* Reply at 5-8; *Walden v. Fiore*, 134 S. Ct. 1115, 1124-25 (2014); *Stroman*, 513 F.3d at 486 ("We have declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident.").

1103.[8] An inquiry into the basis for the Attorney General's CID therefore necessarily implicates a substantial question of Massachusetts state law.

Deciding the case on the fully briefed issue of personal jurisdiction now pending before this Court, rather than ordering discovery on Attorney General Healey's alternative abstention argument, will limit the potential for federal intrusion into the Massachusetts state court's authority to determine the lawfulness of a CID issued by the Massachusetts Attorney General pursuant to Massachusetts law. "Where, as here, [the] district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law," and other jurisdictional inquiries raise "difficult" questions, it is proper to first decide the issue of personal jurisdiction. *Ruhrgas*, 526 U.S. at 588. Indeed, on these facts, a reviewing court could well find that the Court has committed reversible error by declining to resolve first Attorney General Healey's well-supported motion to dismiss Exxon's complaint for lack of personal jurisdiction—a decision that effectively requires her office to litigate and expend significant resources in Texas, to her detriment, despite her consistent objection to personal jurisdiction.

If the Court lacks personal jurisdiction over the Attorney General, it cannot order discovery on one of the Attorney General's three other arguments for dismissal. "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). *See also Ruhrgas*, 526 U.S. at 577 ("Jurisdiction is power to declare the law, and *[w]ithout jurisdiction the court cannot proceed at all in any cause*.") (emphasis added).

---

[8] Accordingly, bias or bad faith would be far more likely where a prosecutor or regulator begins an investigation *without* a belief that the target has violated the law, where the statute authorizing the investigation requires such a belief, as it does here. *Cf. Kroger Texas Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 792 (Tex. 2006) (element of malicious prosecution claim is that prosecutor lacked probable cause).

Considering personal jurisdiction before *Younger* abstention is all the more appropriate here because, contrary to the Order's characterization, *Younger* abstention is more prudential than jurisdictional. That is, *Younger* limits the circumstances in which a federal court can properly *exercise* its jurisdiction. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986) ("*Younger* abstention . . . does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced.").[9] Accordingly, this Court need not—and indeed should not—conduct jurisdictional discovery on *Younger* abstention and instead should dismiss the case for lack of personal jurisdiction.

**B.    THE FACTS INFORMING THE DECISION TO ISSUE THE CID ARE ALREADY IN THE RECORD BEFORE THIS COURT, RENDERING FURTHER INQUIRY INTO THE BASIS FOR A STATE ATTORNEY GENERAL'S INVESTIGATION UNWARRANTED AND IMPROPER.**

The Court has before it now evidence on which AGO relied in reaching a decision to issue the CID. *See* PI Opp. at 6-11; *see, e.g.*, App. Exhibits 15, 16 (journalistic accounts of Exxon misconduct), 19, 20, 24, 28 (internal Exxon documents), 25, 26, 27, 29, 38 (recent Exxon statements). The Court in its Order, *see* Order at 4-5, cites to several of Exxon's allegations, yet does not appear to have considered the ample substantive evidence in the record on which AGO relied in determining to issue the CID—materials that show the good faith basis for Attorney General Healey's investigation of Exxon. In fact, the Attorney General had an exceptionally strong basis for issuing a CID in this instance, since the AGO had the opportunity to review a

---

[9] Because the abstention doctrine relates to subject matter jurisdiction, courts have approved of raising abstention, as the Attorney General did here, under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See, e.g.*, *Saxton*, 2010 WL 3446921, at *1; *Sabre Oxidation Technologies, Inc. v. Ondeo Nalco Energy Services LP*, No. Civ. A. H-04-3115, 2005 WL 2171897, *2 (S.D. Tex. Sept. 6, 2005) (abstention "raises the question of whether a court should exercise subject matter jurisdiction" and "is properly considered under Fed. R. Civ. P. 12(b)(1)"); *Beres v. Village of Huntley, Ill.*, 824 F. Supp. 763, 766 (N.D. Ill. 1992) (same).

significant number of internal Exxon documents illustrating Exxon's advanced knowledge of climate change and the likely impacts of efforts to address climate change on Exxon's business. This is not a case where jurisdictional discovery will yield significant additional facts—indeed, in cases where jurisdictional discovery is unlikely to lead to relevant facts, courts routinely deny requests for such discovery, and appellate courts typically uphold such denials. *See, e.g.*, *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (affirming denial of discovery that "could not have added any significant facts"); *Washington v. Norton Mfg., Inc.*, 588 F.2d 441, 447 (5th Cir. 1979) ("Further discovery could not have added any significant facts and would only have been expensive and burdensome for the nonresident [party].").

The Court should not open the door to an inquiry into the motivations of the Attorney General or her staff. The AGO regularly issues CIDs to investigate violations of Massachusetts law, often as part of joint investigations with other federal and state law enforcement agencies. *See* PI Opp. at 4-5. The extraordinary step ordered here—permitting investigation of the investigators—would turn a state law enforcement proceeding on its head by allowing Exxon to conduct an investigation into Attorney General Healey's motives for issuing the CID before she is even able to receive a single document from Exxon or depose a single Exxon witness. *Cf. Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 154 (5th Cir. 1998) ("[A]llowing the person under investigation to bring suit in district court any time he felt aggrieved by the investigation could compromise the ability of the agency to investigate and enforce the Act."). And, as the actions of the U.S. Attorney General, *see* Reply at 3, and now the SEC confirm, Attorney General Healey's investigation is not, as Exxon would have the Court believe, a baseless fishing expedition designed to serve a political agenda. Rather, it is a very serious investigation into the central question whether Exxon misled and deceived investors and consumers regarding the

impacts of climate change, and the effects on Exxon's business of efforts to address those impacts.

"[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996) (describing showing necessary to authorize discovery by defendants raising claims of selective criminal prosecution). Nothing Exxon has presented to the Court—a brief statement at a press conference announcing an investigation, a CID issued to further that investigation, and a set of irrelevant allegations involving other officials and organizations—supports the factual inquiry the Court has authorized. *Cf. Rocky Mountain Gun Owners v. Williams*, 119 F. Supp. 3d 1308, 1315 (D. Colo. 2015) (finding jurisdictional discovery on *Younger* "bad faith" exception unwarranted because "the evidence cited by the plaintiffs is not sufficient to justify further discovery on the issue of bad faith or harassment of the plaintiffs by [the defendant]," plaintiffs' evidence failed to demonstrate that defendant targeted conservative groups such as plaintiffs, and "there is no basis to conclude that the complaint brought by [the defendant] was frivolous or was undertaken without a reasonably objective hope of success").[10]

The only likely outcome of the discovery that the Court has ordered is an improper and vexatious investigation into privileged or protected information and contentious discovery disputes that this Court would be obliged to supervise. The Attorney General is a high-level governmental official and expects to object strenuously to any effort to depose her. *See In re McCarthy*, 636 Fed. Appx. 142, 143 (4th Cir. 2015) ("It is well established that high-ranking

---

[10] Moreover, it is common practice for state attorneys general to make public announcements of civil investigations. *See, e.g.*, Press Release, "Attorney General Paxton Announces Investigation of Volkswagen," dated September 24, 2015, *available at* https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-announces-investigation-of-volkswagen (last accessed Oct. 18, 2016) (noting Texas attorney general's role on executive committee of multi-state environmental and consumer fraud investigation).

government officials may not be deposed or called to testify about their reasons for taking official actions absent 'extraordinary circumstances.'"); *In re F.D.I.C.,* 58 F.3d 1055, 1062 (5th Cir. 1995) (granting petition for mandamus to prevent deposition of members of FDIC board of governors; that officials "considered the preferences (even political ones) of other government officials concerning how [official] discretion should be exercised does not establish the required degree of bad faith or improper behavior").[11] Moreover, the remaining information about the Attorney General's investigation not currently in the public domain consists largely of attorney work product and other privileged materials, and the Attorney General expects to oppose any effort by Exxon to obtain those materials.[12]

In any event, as the Fifth Circuit recently held in *Google, Inc. v. Hood,* objections such as Exxon's to the investigation are properly resolved by the relevant state court. *See* 822 F.3d 212, 224-26 (5th Cir. 2016) ("[C]omity should make us less willing to intervene when there is no current consequence for resisting the subpoena and the same challenges raised in the federal suit could be litigated in state court.") (citing *O'Keefe v. Chisholm*, 769 F.3d 936, 939-42 (7th Cir. 2014), where "federal plaintiff's ability to litigate subpoena in state court counseled against

---

[11] *See also Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991) ("Only where there is a clear showing of misconduct or wrongdoing is any departure from th[e] rule [that the judiciary may not probe the mental processes of an executive or administrative officer] permitted."); *Buono v. City of Newark*, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008) (refusing deposition of Mayor of Newark using same analysis).

[12] *See, e.g*., *In re U.S. Dep't of Homeland Sec*., 459 F.3d 565, 569-71 (5th Cir. 2006) (recognizing "existence of a law enforcement privilege" relating to ongoing investigations); *Branch v. Phillips Petrol. Co*., 638 F.2d 873, 880-82 (5th Cir. 1981) (applying executive privilege in declining to enforce subpoena seeking intra-agency memoranda and advisory recommendations from government "[t]o the extent that the documents withheld . . . are internal working papers in which opinions are expressed, policies are formulated, and actions are recommended"); *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324-33 (D.D.C 1966), *aff'd sub nom. V.E.B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C. Cir. 1967) (applying executive privilege in declining to order discovery or in camera review of Department of Justice "documents integral to an appropriate exercise of the executive's decisional and policy-making functions").

injunctive relief even though the district court reasoned that the defendants' 'bad faith' conduct justified an injunction").

## C.     VENUE IS IMPROPER IN THIS COURT.

Venue remains improper in this Court. *See* Mem. at 19-20; Reply at 10. All of the "events" that Exxon describes in its complaint and that the Court discusses in its Order occurred *outside Texas*. These facts do not support venue in this Court. *See* 28 U.S.C. § 1391(b)(2) (venue lies in district where "a substantial part of the events or omissions giving rise to the claim occurred"); *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) ("the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district"). Under these circumstances, the Court should dismiss the lawsuit. *See Saxton*, 2010 WL 3446921, at *4 (dismissing lawsuit because, *inter alia*, venue was improper where "all of the events the Saxtons complain of occurred in Utah"). Alternatively, the lack of proper venue in this district warrants transfer to the District of Massachusetts, where Attorney General Healey resides and the pending motions clearly could be adjudicated. *See* 28 U.S.C. § 1406(a).

## IV.     CONCLUSION

The Attorney General renews her Motion to Dismiss, and the Court should DISMISS Exxon's complaint with prejudice. In the alternative, the Court should reconsider and vacate its Order of October 13, 2016, pending further consideration of the Motion to Dismiss. In the event that the Court neither dismisses the complaint nor reconsiders its Order, the Attorney General respectfully requests that the Court transfer the action to the District of Massachusetts or stay its order to allow the Attorney General to seek immediate review by the United States Court of Appeals for the Fifth Circuit.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS

By her attorneys:

| | |
|---|---|
| | *s/ Douglas A. Cawley* |
| Richard Johnston (*pro hac vice*) | Douglas A. Cawley |
| Chief Legal Counsel | Lead Attorney |
| richard.johnston@state.ma.us | Texas State Bar No. 04035500 |
| Melissa A. Hoffer (*pro hac vice)* | dcawley@mckoolsmith.com |
| Chief, Energy and Environment Bureau | Richard A. Kamprath |
| melissa.hoffer@state.ma.us | Texas State Bar No. 24078767 |
| Christophe G. Courchesne (*pro hac vice*) | rkamprath@mckoolsmith.com |
| Chief, Environmental Protection Division | MCKOOL SMITH, P.C. |
| christophe.courchesne@state.ma.us | 300 Crescent Court, Suite 1500 |
| I. Andrew Goldberg (*pro hac vice*) | Dallas, Texas 75201 |
| andy.goldberg@state.ma.us | (214) 978-4000 |
| Peter C. Mulcahy (*pro hac vice*) | Fax (214) 978-4044 |
| peter.mulcahy@state.ma.us | |
| Assistant Attorneys General | |
| OFFICE OF THE ATTORNEY GENERAL | |
| One Ashburton Place, 18th Floor | |
| Boston, MA 02108 | |
| (617) 727-2200 | |

Dated: October 20, 2016

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 20, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Douglas A. Cawley*
Douglas A. Cawley