IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-469-K |
| | ) | |
| MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity, | ) ) ) | |
| | ) | |
| Defendant. | ) ) ) | |

**DEFENDANT ATTORNEY GENERAL MAURA HEALEY'S REPLY TO PLAINTIFF EXXON MOBIL CORPORATION'S OPPOSITION TO HER MOTION TO RECONSIDER JURISDICTIONAL DISCOVERY ORDER**

Defendant Massachusetts Attorney General Maura Healey submits this reply to Plaintiff Exxon Mobil Corporation's ("Exxon") Opposition (Doc. No. 90, "Reconsider Opp.") to her Motion to Reconsider Jurisdictional Discovery Order (Doc. No. 78, "Motion to Reconsider"). Nothing Exxon has argued warrants departure from the directive of *Ruhrgas* and *Alpine View Co. Ltd.* that the Court should immediately address Attorney General Healey's clear, dispositive argument that the Court lacks personal jurisdiction. *See Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 578 (1999); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000). Moreover, the existing record as well as facts that arose after this Court's October 13 jurisdictional discovery order (Doc. No. 73, the "Order") and Attorney General Healey's Motion to Reconsider, demonstrate the good faith basis for Attorney General Healey's civil investigative demand ("CID"). Finally, Exxon's recent actions confirm that it intends to use the Order to attempt to obtain improper and unprecedented discovery from Attorney General Healey, New

1

York Attorney General Schneiderman, several other sitting state attorneys general, and staff members reporting to nearly half of the states' attorneys general, in an effort to evade legitimate inquiries into whether Exxon broke laws protecting consumers and investors by making misleading statements regarding climate change and failing to disclose the effects of efforts to address climate change on Exxon's businesses and assets.

## I.     RECONSIDERATION OF THE ORDER IS WARRANTED UNDER THE APPLICABLE STANDARD.

Attorney General Healey's Motion satisfies the applicable standard for reconsideration of interlocutory orders. Fed. R. Civ. P. 54(b) (interlocutory orders may be "revised at any time before the entry of a judgment"); *Judicial Watch v. Dep't of the Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (reconsideration appropriate "as justice requires"). The Order did not account for the Supreme Court's directive, articulated in *Ruhrgas,* that a district court properly should decide first the issue of personal jurisdiction where no complex question of state law is presented and other jurisdictional inquiries raise "difficult" questions. *Ruhrgas*, 526 U.S. at 588; *see also Alpine View Co.*, 205 F.3d at 213. Because the *Ruhrgas* directive is dispositive in this case, reconsideration of the Order is warranted.

Exxon's complaint and supporting papers repeatedly refer to statements made by Attorney General Healey at a March press conference, which Exxon alleges demonstrate that Attorney General Healey has prejudged the outcome of her investigation. *See, e.g.*, Compl. ¶¶ 8, 32-34, 75, 94. Those statements, however, merely show that Attorney General Healey holds a belief that Exxon has or is engaged in conduct prohibited by the Massachusetts consumer protection statute ("Chapter 93A"). This is not an "unconstitutional prejudg[ment]," as Exxon suggests. Reconsider Opp. at 11. Rather, it is a state law directive. Specifically, Massachusetts law *requires* the Attorney General to believe there has been a violation of Massachusetts law

prior to issuing a CID.[1] *See* Mass. Gen. Laws. c. 93A § 6(1); *Harmon Law Offices, P.C. v. Att'y Gen.*, 991 N.E.2d 1098, 1103 (Mass. App. Ct. 2013). As *Ruhrgas* teaches, given the requirements of Massachusetts consumer protection law that would be at issue in any *Younger* subject matter jurisdiction analysis, principles of comity and federalism strongly weigh in favor of this Court first resolving Attorney General Healey's Motion to Dismiss on the "surer" personal jurisdiction grounds.

Contrary to Exxon's argument, no additional discovery is necessary to decide Attorney General Healey's Motion to Dismiss. Exxon has made no prima facie showing supporting a need for discovery on personal jurisdiction because such discovery would be entirely futile: Exxon's argument that Attorney General Healey's actions outside Texas justify personal jurisdiction ignores the bar of the Texas long-arm statute and is, on its merits, wrong as a matter of law. *See Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("Such reasoning improperly attributes a plaintiff's forum connections to the defendant. . . ."); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482-83 (5th Cir. 2008) (finding Texas long-arm statute not to reach "nonresident individuals sued solely in their official capacity under *Ex Parte Young*"); *id.* at 486 ("We have declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident."); *Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921, *3 (N.D. Tex. Aug. 31, 2010). Moreover, Exxon does not cite a single case authorizing jurisdictional discovery against a nonresident state official in comparable circumstances. Instead, in several

---

[1] Exxon fails to acknowledge that having a "suspicion," Reconsider Opp. at 11, and holding a belief are not synonymous. Merriam-Webster's dictionary defines a belief as "a conviction of the truth of some statement or the reality of some being or phenomenon especially when based on an examination of evidence." *See* http://www.merriam-webster.com/dictionary/belief. Attorney General Healey properly held, and continues to hold, a belief, based on her Office's review of Exxon's documents and statements, that Exxon has or is engaged in conduct prohibited by Chapter 93A.

cases in which federal courts considered but denied personal jurisdiction over foreign state

attorneys general, none entertained discovery. *See, e.g., Turner v. Abbott*, 53 F. Supp. 3d 61, 68

(D.D.C. 2014); *Cutting Edge Enter., Inc. v. Nat'l Ass'n of Att'ys Gen.*, 481 F. Supp. 2d 241, 246-

49 (S.D.N.Y. 2007); *B & G Prod. Co. v. Vacco*, No. CIV.98-2436 ADM/RLE, 1999 WL

33592887, at *5 (D. Minn. Feb. 19, 1999).

## II.   THE COURT SHOULD NOT IGNORE THE AMPLE RECORD FACTS SUPPORTING THE GOOD FAITH BASIS FOR ATTORNEY GENERAL HEALEY'S CID, NOR THE SERIES OF NEW FACTS CONFIRMING THAT GOOD FAITH BASIS.

In issuing its Order, it appears that the Court relied solely on Exxon's allegations of bad

faith, and may not have considered the substantial record facts supporting Attorney General

Healey's good faith basis for issuing the CID. Contrary to Exxon's assertions, Reconsider Opp.

at 13, Attorney General Healey submitted substantial evidence, in the form of Exxon's own

documents, which credibly illustrates that Exxon's top-tier scientists, reporting to Exxon

management, had advanced knowledge of climate change decades ago. The documents show

Exxon's knowledge that fossil fuel combustion was contributing to increased concentrations of

atmospheric carbon dioxide, which in turn would be expected to cause increased global average

temperatures, with an array of potential significant risks, and that likely policy responses would

include efforts to shift away from reliance on fossil fuels. *See* Compl., Ex. G, App. 065; Ex. CC,

App. 249, 250-51; *see also* Opposition of Attorney General Healey to Plaintiff Exxon Mobil

Corporation's Motion for a Preliminary Injunction (Doc. 43) at 6-10 & cited documents.

In addition to the record facts already before the Court, a series of more recent

developments further confirms the good faith basis for Attorney General Healey's investigation.

First, as discussed in Attorney General's opening brief in support of her Motion to Reconsider

(Doc. No. 79, "Motion to Reconsider Mem."), it came to light the day after the Court's

4

September 19 hearing that the United States Securities and Exchange Commission has opened an investigation into "how Exxon Mobil Corp. values its assets in a world of increasing climate change regulations," with which Exxon is cooperating. *See* Motion to Reconsider Mem. at 2. Attorney General Healey's CID seeks to investigate similar issues and related questions.

Second, the New York Supreme Court has now compelled Exxon to comply with a subpoena to Exxon's auditor as part of the New York Attorney General's investigation of Exxon, providing further evidence that Attorney General Healey's investigation is well founded and has a good faith basis. As set forth in her Opposition to Plaintiff's Motion to Expedite Briefing and Consideration of Plaintiff's Motion for Leave to Amend (Doc. No. 85, "Mot. to Exp. Opp. Mem."), on Friday, October 14, 2016, in conjunction with his investigation of Exxon, Attorney General Schneiderman filed with the New York Supreme Court an application, brought by order to show cause, to compel compliance with a subpoena he issued on August 19, 2016, to Exxon's auditor, PricewaterhouseCoopers ("PWC"). Mot. Exp. Opp. Mem. at 4.[2] On October 18, the New York Supreme Court issued a show cause order to PWC and Exxon, and a hearing was held on October 24. On October 26, the New York Supreme Court granted the New York Attorney General's application to compel full production of Exxon-related documents from PWC, ruling that Exxon's claims of privilege were erroneous. Decision and Order, *In the Matter of the Application of the People of the State of New York*, No. 451962/16, slip op. at 5 (N.Y. Sup. Ct. Oct. 26, 2016), *available at* https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=ESmDXs9FdUeDz6lZw6v74w==&system=prod (accessed Oct. 31, 2016).

---

[2] On Monday, October 17, Exxon filed its Motion to Amend in this Court, which failed to mention the New York proceeding. Later that same day, Exxon filed its opposition to the application in the New York proceeding—which similarly made no mention of the fact that Exxon had just filed its Motion to Amend with this Court, seeking to enjoin the New York investigation. Mot. Exp. Opp. Mem. at 4.

Finally, on Friday, October 28, two days after the New York Supreme Court ordered Exxon and PWC to comply with the New York Attorney General's August subpoena, Exxon announced a thirty-eight percent drop in earnings as a result of low energy prices, and "acknowledged that it faced what could be the biggest accounting revision of its reserves in its history."[3] Exxon's profits in the last twelve months are the lowest since 1999.[4] The Wall Street Journal reported that Exxon, under investigation by the U.S. Securities and Exchange Commission and New York State, disclosed that about 4.6 billion barrels of oil in its reserves, primarily in Canada, may be too expensive to tap, noting that "[t]hough Exxon didn't mention climate change or regulators in its disclosure, most of the assets it said may not be economic are among the most scrutinized by climate change activists: Canada's tar sands."[5] The Journal reported that Canada's government has proposed to charge a price for carbon emissions, and observed that "[l]onger term, Exxon faces headwinds from regulators aimed at reducing carbon dioxide and other greenhouse gas emissions, measures that are widely expected to fall most heavily on its industry."[6] As set forth in the record before the Court, Exxon was aware nearly forty years ago that efforts to address climate change presented a risk to its assets; Exxon's October 28 disclosure confirms the obvious—that any factor that reduces demand for its fossil fuel products, including efforts to shift away from using such fuels to avoid climate change, will adversely affect Exxon earnings.

---

[3] Clifford Krauss, *Exxon Concedes It May Need to Declare Lower Value for Oil in Ground*, N.Y. TIMES, Oct. 28, 2016, http://www.nytimes.com/2016/10/29/business/energy-environment/exxon-concedes-it-may-need-to-declare-lower-value-for-oil-in-ground.html.

[4] Bradley Olson & Lynn Cook, *Exxon Warns on Reserves As It Posts Lower Profit: Oil producer to examine whether assets in an area devastated by low price and environmental concerns should be written down*, WALL ST. J., Oct. 28, 2016, http://www.wsj.com/articles/exxon-mobil-profit-revenue-slide-again-1477657202.

[5] *Id.*

[6] *Id.*

### III.   EXXON REVEALED ITS INTENT TO SEEK ABUSIVE AND VEXATIOUS DISCOVERY FROM ATTORNEY GENERAL HEALEY AND MANY OTHER STATE LAW ENFORCEMENT OFFICIALS.

As a result of the New York state court proceeding discussed above, Attorney General Healey has learned of new facts regarding Exxon's discovery strategy. At the October 24 hearing on the New York Attorney General's application to compel compliance with his subpoena of PWC, Exxon's counsel Theodore Wells stated:

> . . . Judge Kinkeade on Thursday [October 13] issued an opinion, and his opinion said that *we were going to get discovery against the Mass. AG, as we read it, the other attorney generals*, because we had made a sufficient showing of bad faith under the *Younger* doctrine, and that's when we decide to join them on Monday, but it's because of what happened in that opinion. . . . *[R]ight now we have the right, as we read the order, to take the deposition of both the Mass. AG people and really everybody, as we read it, that was at that March 29th conference. And we would like to get the New York AG in the case as we work out these discovery issues. . . . We are going to try to take depositions of the state AG's.*

Tr. of Show Cause Hearing at 54-55 (emphasis added).[7]

Mr. Wells's representations to the New York Supreme Court confirm that Exxon intends to use this Court's Order as a blank check to depose both the New York and Massachusetts Attorneys General, "the Mass. AG people," and "really everybody" at the March 29 press conference, Tr. of Show Cause Hearing at 54-55, which would include several other sitting attorneys general and staff from the offices of nearly half of the country's state attorneys general. *See* Compl. App. Exh. A, at App. 002.[8]

---

[7] *Available at* https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=rybBsd0eV_PLUS_x7P/dCFLc97g==&system=prod (accessed Oct. 31, 2016).

[8] As further evidence of Exxon's intent, on October 24, without any offer to meet and confer on parameters for discovery, Exxon served her with over one hundred discovery requests, despite her pending Motion, among them a number of interrogatories and requests for admission improperly seeking information related to the *Massachusetts* court's jurisdiction over Exxon in the separate, pending *Massachusetts* litigation that Exxon filed.

7

The good faith factual basis for Attorney General Healey's investigation is in the record currently before this Court. By allowing Exxon to engage in such discovery, the Order would, however, constitute an unprecedented federal judicial intervention into state law enforcement investigations, setting a dangerous precedent that threatens to erode states' traditional investigatory authority. Exxon's proposal would also ignite months, if not years, of litigation over discovery—while the question whether Exxon broke the law goes unexamined.[9]

## **CONCLUSION**

The Court should DISMISS Exxon's complaint with prejudice. In the alternative, the Court should reconsider and vacate its Order of October 13, 2016, pending further consideration of the Motion to Dismiss. In the event that the Court neither dismisses the complaint nor reconsiders its Order, the Attorney General respectfully requests that the Court transfer the action to the District of Massachusetts[10] or stay its order to allow the Attorney General to seek immediate review by the United States Court of Appeals for the Fifth Circuit.

---

[9] As well, the continuation of this lawsuit before this Court has already opened the door to a request for intervention (Doc. No. 87) inspired by Exxon's conspiracy theory-fueled efforts to avoid legitimate inquiries by the New York and Massachusetts Attorneys General, and now the United States Securities and Exchange Commission, into its potential unlawful conduct in failing to disclose to consumers and investors its knowledge of climate change and climate-driven risks to its business and assets. Responding to such requests will further burden Attorney General Healey's and the Court's resources.

[10] Exxon's request for additional briefing on transfer is superfluous, as transfer for improper venue under 28 U.S.C. § 1406(a) raises the same analysis raised by Attorney General Healey's fully briefed argument that venue is improper in this Court and, in any event, the Court could transfer the case *sua sponte*. *See, e.g.*, *Duru v. Georgia*, No. 3:15–cv–1884–B–BN, 2015 WL 4742517, *3 (N.D. Tex. Aug. 10, 2015); *Glazier Group, Inc. v. Mandalay Corp.*, Civ. A. No. H-06-2752, 2007 WL 2021762, at *13 (S.D. Tex. July 11, 2007).

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS

By her attorneys:


s/ *Douglas A. Cawley*

Richard Johnston (*pro hac vice*)          Douglas A. Cawley
Chief Legal Counsel                         Lead Attorney
richard.johnston@state.ma.us                Texas State Bar No. 04035500
Melissa A. Hoffer (*pro hac vice*)          dcawley@mckoolsmith.com
Chief, Energy and Environment Bureau        Richard A. Kamprath
melissa.hoffer@state.ma.us                  Texas State Bar No. 24078767
Christophe G. Courchesne (*pro hac vice*)   rkamprath@mckoolsmith.com
Chief, Environmental Protection Division    MCKOOL SMITH, P.C.
christophe.courchesne@state.ma.us           300 Crescent Court, Suite 1500
I. Andrew Goldberg (*pro hac vice*)         Dallas, Texas 75201
andy.goldberg@state.ma.us                   (214) 978-4000
Peter C. Mulcahy (*pro hac vice*)           Fax (214) 978-4044
peter.mulcahy@state.ma.us
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200

Dated: October 31, 2016

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 31, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

s/ *Douglas A. Cawley*
Douglas A. Cawley