IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:16-CV-469-K |
| | § | |
| MAURA TRACY HEALEY, Attorney | § | |
| General of Massachusetts, in her | § | |
| official capacity, | § | |
| | § | |
| Defendant. | § | |

# EXXON MOBIL CORPORATION'S REPLY
# IN FURTHER SUPPORT OF ITS MOTION FOR
# LEAVE TO FILE A FIRST AMENDED COMPLAINT

Patrick J. Conlon (*pro hac vice*)
Daniel E. Bolia
EXXON MOBIL CORPORATION
1301 Fannin Street
Houston, TX 77002
(832) 624-6336

Theodore V. Wells, Jr. (*pro hac vice*)
Michele Hirshman (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Justin Anderson (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

Ralph H. Duggins
Philip A. Vickers
Alix D. Allison
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
Tel: (817) 877-2800
Fax: (817) 877-2807

Nina Cortell
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
Tel: (214) 651-5579
Fax: (214) 200-0411

*Counsel for Exxon Mobil Corporation*

Exxon Mobil Corporation ("ExxonMobil") respectfully submits this reply in further support of its motion for leave to file a First Amended Complaint (Dkt. 74).

## PRELIMINARY STATEMENT

Without identifying any flaw in the legal sufficiency of the proposed amendments to the Complaint, much less any unfair prejudice from them, Attorney General Healey asks this Court to deny ExxonMobil's motion for leave to amend. Her reasons for opposing the motion have nothing to do with the content of the amendments, which seek to (i) join Attorney General Schneiderman, (ii) allege that Attorneys General Healey and Schneiderman conspired together and with others to violate ExxonMobil's constitutional rights, and (iii) bar the Attorneys General's pretextual investigation of matters preempted by federal law. Effectively conceding that these amendments are properly made and would result in no unfair prejudice, Attorney General Healey rehashes her objection to this Court's personal jurisdiction and presents a poorly conceived critique of ExxonMobil's reasons for seeking redress for the violation of its constitutional rights. Even if these arguments had any relevance to the question of whether leave to amend should be granted—which they do not—their lack of merit fails to displace the directive that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). That directive should apply here.

## ARGUMENT

The Attorney General does not dispute that the Fifth Circuit applies a "strong presumption in favor of granting leave to amend." *Fin. Acquisition Partners, LP* v. *Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). Nor can she contest that, "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Electrostim Med. Servs., Inc.* v. *Health Care Serv. Corp.*, 614 F. App'x 731, 736 (5th Cir. 2015) (citation omitted). The reasons the Attorney General offers in opposition to ExxonMobil's

proposed amendment cannot overcome the strong presumption in favor of granting leave to amend.

I. **Attorney General Healey's Challenge to Personal Jurisdiction Provides No Basis to Deny Leave to Amend.**

Raising once again her objection to this Court's exercise of personal jurisdiction, the Attorney General submits that amendment should be disallowed because it does not "cure" what she perceives to be a "flaw" in the Complaint. (Opp. 8).[1] The Attorney General has now litigated her position on personal jurisdiction through her motion to dismiss and her motion for reconsideration of the discovery order. A motion to amend seeking to join a party and add two claims does not present yet another opportunity to litigate a fully briefed argument. Even if it did, the Attorney General's arguments are no more persuasive now than they were in her previous submissions and oral argument, and they fail to demonstrate that leave to amend should be denied. The Texas long-arm statute extends to the boundaries of due process and comfortably encompasses an out-of-state party who reached into Texas with a specific and publicly disclosed intent to violate constitutional rights and suppress speech in Texas.

A. **A Motion to Amend Does Not Provide Another Occasion for the Attorney General to Contest Personal Jurisdiction.**

Rather than address the content of the proposed amendments, as the relevant standard requires, the Attorney General attempts to raise once again her belief that the entire action should be dismissed for lack of jurisdiction. This attempt to have the amended complaint dismissed before it is even filed should be rejected. Courts "look[] warily at efforts to preempt an analysis of a new cause of action in the context of a dispositive motion by denying leave in the Rule 15(a) context on the basis of futility." *Barbour* v. *City of Forney*, No. 3:15-cv-90-B, 2015 WL 4094005, at *4 (N.D. Tex. June 17, 2015); *see also Reneker* v. *Offill*, No. 3:08–cv–1394–D, 2011

---

[1] "Opp." refers to Attorney General Healey's brief in opposition to ExxonMobil's motion for leave to amend.

WL 1427661, at *1 (N.D. Tex. Apr. 13, 2011). Instead, this "court's almost unvarying practice when futility is raised is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion . . . where the procedural safeguards are surer." *Reneker*, 2011 WL 1427661, at *1 (quotation marks omitted); *see also Banks* v. *Desoto Indep. Sch. Dist.*, No. 3:14-cv-2729-N-BN, 2015 WL 7294897, at *1 (N.D. Tex. Nov. 19, 2015). The Attorney General presents no compelling basis to deviate from that course. Just as numerous other courts in this district have done in indistinguishable cases, this Court should decline the invitation to expand a simple motion to amend into a short-form motion to dismiss.

That conclusion is reinforced by the standard of review applicable to motions to amend, which is less demanding than even the lenient standard applicable to motions to dismiss. Rather than being measured against the yardstick of Rule 12(b)(6), amendments are denied as futile only if (i) the amended complaint simply repeats prior, insufficient allegations, or (ii) the new claims so obviously fail as a matter of law that they are not merely insufficiently pleaded but in fact "cannot be stated." *Barbour*, 2015 WL 4094005, at *4. ExxonMobil's First Amended Complaint comfortably meets this forgiving standard. There has been no determination that ExxonMobil's allegations are insufficient and, indeed, in neither her original motion to dismiss nor in the context of this motion has the Attorney General actually challenged the sufficiency of ExxonMobil's claims. Likewise, the Attorney General has raised no challenge to the joinder of Attorney General Schneiderman or the proposed conspiracy and preemption claims, much less demonstrated that the proposed amendments fail as a matter of law. The Court need look no further to dispose of the Attorney General's contention that amendment would be futile.

**B.     The Court Has Personal Jurisdiction over the Attorney General.**

Even if considered, the Attorney General's challenge to this Court's personal jurisdiction is as unpersuasive now as it was when first made three months ago. Notwithstanding the

3

Attorney General's repeated assertions of priority, this Court need not indulge the Attorney General's preferences regarding which of her arguments should be considered first. In support of her motion to reconsider the Court's discovery order, the Attorney General argued, as she does here, that the Supreme Court's decision in *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574 (1999), constituted a "directive" to consider personal jurisdiction before any other threshold issue. (Dkt. 91 at 2.) The Attorney General misunderstands the teaching of *Ruhrgas*, which rejected an "unyielding jurisdictional hierarchy" and observed that "[c]ustomarily, a federal court first resolves doubts about its jurisdiction over the subject matter" before proceeding to other grounds. *Ruhrgas*, 526 U.S. at 578. It was therefore well within this Court's discretion to order discovery on the Attorney General's *Younger* abstention argument before considering her personal jurisdiction argument. This Court is on equally solid ground to permit the filing of the proposed amended complaint without conducting an exhaustive analysis as to each alleged jurisdictional defect raised by the Attorney General, much less in the sequence she prefers.

Were the Court to reach the Attorney General's challenge to personal jurisdiction in connection with this motion to amend, that challenge should be rejected on the merits. The Attorney General urges this Court to follow the acknowledged dicta of *Stroman Realty, Inc.* v. *Wercinski*, 513 F.3d 476 (5th Cir. 2008), regarding the reach of the Texas long-arm statute (Opp. 9), but that dicta is contrary to binding decisions of the Texas Supreme Court. Under well-settled precedent, Texas's long-arm statute reaches out-of-state actors to the fullest extent permitted by the Due Process Clause of the United States Constitution. *See, e.g.*, *Spir Star AG* v. *Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). An out-of-state actor, like the Attorney General, who intentionally directs tortious conduct to Texas and intends to inflict harms in Texas, can, consistent with due process, reasonably expect to be brought before a court in Texas to answer

for her actions. *See, e.g.*, *Wien Air Alaska, Inc.* v. *Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *Lewis* v. *Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001); *Ruston Gas Turbines Inc.* v. *Donaldson Co.*, 9 F.3d 415, 420 (5th Cir. 1993); *Bear Stearns Cos.* v. *Lavalle*, No. 3:00 Civ. 1900-D, 2001 WL 406217, at *3–4 (N.D. Tex. Apr. 18, 2001).

The Attorney General claims that other courts in "similar circumstances" have concluded they lack personal jurisdiction over out-of-state attorneys general. (Opp. 10.) That is not so, and none of the cases cited by the Attorney General bears any resemblance to this case. In *Turner* v. *Abbott*, 53 F. Supp. 3d 61, 66 (D.D.C. 2014), a plaintiff sought to exercise personal jurisdiction over the Texas Attorney General in the District of Columbia because the Texas Attorney General was a mere *party* to a wholly *unrelated* lawsuit pending in the District of Columbia. In *Cutting Edge Enters.* v. *Nat'l Ass'n of Attorneys Gen.*, 481 F. Supp. 2d 241 (S.D.N.Y. 2007), the plaintiff sought jurisdiction in New York over forty out-of-state attorneys general who had negotiated a tobacco settlement agreement in New York, because the plaintiff claimed to have been injured by subsequent developments in the tobacco market following the settlement. The court declined jurisdiction in that case because the plaintiff's "claim arises from [an] alleged agreement and conspiracy amongst Defendants [post-dating the settlement] . . . not from the [settlement] negotiations that occurred in New York." 481 F. Supp. 2d at 247. And in *B&G Products Co.* v. *Vacco*, No. 98 Civ. 2436, 1999 WL 33592887 (D. Minn. Feb. 19, 1999), the court declined jurisdiction over New York officials who neutrally applied mundane pesticide licensing regulations to a Minnesota company's sales in New York. *Id.* at *2–5. Unlike here, in *Vacco* there was no allegation of intentional misconduct or any specific intent to harm the Minnesota company, and the New York officials did not seek to regulate speech or conduct wholly outside of New York. None of the cases cited by the Attorney General involve the intentional and bad

faith violation of a citizen's constitutional rights, and thus not one of these cases presents the "similar circumstances" claimed by the Attorney General.

Nor should the Court credit the Attorney General's alarmist suggestion that an exercise of jurisdiction in this case would render attorneys general across the country susceptible to suit in faraway courts. (Opp. 11.) "The 'minimum contacts' inquiry is fact intensive," and the extraordinary record present in this case—where the Attorney General has publicly declared an intent to suppress ExxonMobil's speech emanating from Texas—merits the exercise of jurisdiction over an out-of-state official. *See McFadin* v. *Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quotation marks and citation omitted). The exercise of personal jurisdiction over the Attorney General in this case would be fully consistent with both the Texas long-arm statute and due process, and the Attorney General has cited no authority mandating any other conclusion.[2]

## II. ExxonMobil Moved for Leave to Amend to Vindicate Its Constitutional Rights.

Having no persuasive legal argument to oppose the proposed amendments, the Attorney General resorts to accusing ExxonMobil of bringing the motion in bad faith. This desperate ploy should be rejected. Under any fair reading of the record, ExxonMobil has acted appropriately to protect its rights from the overreach of government at all times, including by asserting a privilege in New York State Court over materials in the possession of its auditors. The proposed joinder of Attorney General Schneiderman in this action follows naturally from his recent announcement that he would shift the pretextual grounds for his investigation from a purely historical review of climate change research to an analysis of ExxonMobil's current reporting of its reserves and

---

[2] At a minimum, the ongoing discovery into the Attorney General's bad faith should continue, because it bears directly on whether she intended to direct constitutional torts at ExxonMobil in Texas and intended for ExxonMobil to suffer the injuries caused by those torts in Texas. *See, e.g.*, *Valtech Solutions Inc.* v. *Davenport*, No. 3:15-CV-3361-D, 2016 WL 2958927, at *2 (N.D. Tex. May 23, 2016) ("[I]f [a] plaintiff[] present[s] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff['s] right to conduct jurisdictional discovery should be sustained." (internal citation and quotation marks omitted)).

impairment analysis. As set forth below, that shift laid bare the thinly veiled political motivation behind the Attorney General's actions and provided a fully sufficient reason to amend the Complaint. Any suggestion to the contrary should be rejected as entirely unfounded.

### A. The Amendments Relate to Attorney General Schneiderman's Recent Shift in Pretext from Historical Research to "Stranded Assets."

Attorney General Healey would have this Court believe that ExxonMobil prepared its proposed amended complaint "one business day" after Attorney General Schneiderman moved to enforce a third-party subpoena served on ExxonMobil's auditors and did so as part of a campaign to "frustrate" the proceedings in New York State Court. (Opp. 15.) The record contradicts each component of that assertion. First, the proposed amendments correspond directly to the recent shift in pretextual justification for the investigations. Second, ExxonMobil has never questioned the authority of the New York State Court to rule on the privilege claim placed before it, just as it submits to the jurisdiction of this Court to rule on the constitutional claims before it.

As set forth in paragraphs 74 through 76 of the proposed amended complaint, Attorney General Schneiderman announced in August and September 2016 that his investigation, which had been previously justified as necessary to probe ExxonMobil's "historic climate change research," would no longer "focus" on that inquiry.[3] Instead, the focus would shift to an entirely unrelated topic: the reporting of proved oil reserves and the impairment of assets. Inspired by the easily debunked "stranded assets theory," Attorney General Schneiderman claimed to foresee "massive securities fraud" there.[4] This shift in justification removed any doubt that Attorney General Schneiderman's investigation of ExxonMobil was motivated by bad faith and not by an earnest and even-handed search for the truth. With that improper motivation exposed,

---

[3] App. at 2–4.
[4] App. at 6–8.

ExxonMobil was well within its rights to seek permission to join Attorney General Schneiderman to this action. It was also appropriate at that time to seek to amend the Complaint to include a federal preemption claim in connection with the improper second-guessing of SEC regulations on reserves entailed by Attorney General Schneiderman's investigation. (First Amend. Compl. ¶¶ 77–81.) These facts provide the real context for the proposed amendment, which ExxonMobil has advanced in good faith.

It is equally inaccurate for the Attorney General to claim that ExxonMobil filed its motion to amend—or has taken any other action—to "frustrate" the New York State Court's ability to resolve the privilege dispute surrounding the third-party subpoena served on ExxonMobil's auditors. (Opp. 15.) To the contrary, ExxonMobil has consistently recognized the jurisdiction of that court to resolve the dispute over whether the accountant-client privilege shielded certain documents from disclosure. It has also recognized that the privilege dispute in state court in New York has nothing to do with the federal litigation before this Court. As memorialized in an October 18, 2016, letter to the judge presiding over the state court action, ExxonMobil acknowledged the propriety of each action proceeding in its separate forum:

> The [New York] Attorney General is attempting to conflate two entirely separate proceedings. The Texas action concerns the propriety of the Attorney General's investigation and whether the Attorney General has violated ExxonMobil's rights under the United States Constitution. The Attorney General's Application is narrowly focused on the applicability of the accountant-client privilege to documents sought by the Attorney General pursuant to a subpoena issued to ExxonMobil's auditor . . . .[5]

ExxonMobil has never objected to the New York Court's authority to resolve the privilege dispute before it, much less attempted to use the proceedings in this Court to do so.[6]

---

[5] App. at 10–11.
[6] The Attorney General further errs by alleging that ExxonMobil "failed to notify Attorney General Schneiderman or the New York court of its Motion to Amend." (Opp. 15.) Within three hours of filing the motion to amend, ExxonMobil provided a courtesy copy to the New York Attorney General. App. at 13.

### B.  The Attorney General Still Has Not Adequately Justified Her Investigation.

Nor can the Attorney General latch onto recent events to craft a post-hoc rationalization for her fishing expedition.  Presenting yet another readily debunked pretext, the Attorney General suggests that her investigation is justified by ExxonMobil's recent disclosure about the effect of low energy prices on its reserves. (Opp. 6, 14 n.12.)  She is mistaken.  SEC regulations require ExxonMobil to estimate its proved reserves under existing economic conditions, operating methods, and government regulations.  For this purpose, the price used is required to be the average price during the 12 month period prior to the end of the reporting period (in ExxonMobil's case, each calendar year) determined as an unweighted arithmetic average of the first-day-of-the-month price for each month in the period.   17 C.F.R. § 210.4-10(22)(v).  Applying those regulations, ExxonMobil announced that, if the low prices seen during the first nine months of the year continued, 4.6 billion barrels of its proved reserves might not qualify as proved reserves under SEC definitions at year-end 2016.  This announcement was entirely consistent with the disclosure made in ExxonMobil's 2015 annual report, filed nearly nine months ago on February 24, 2016, that "[w]hen crude oil and natural gas prices are in the range seen in late 2015 and early 2016 for an extended period of time, under the SEC definition of proved reserves, certain quantities of oil and natural gas, such as oil sands operations in Canada and natural gas operations in North America could temporarily not qualify as proved reserves."[7]

This so-called "de-booking" of proved reserves is the product of a specific SEC-required methodology.  The use of historical prices mandated by SEC regulations may cause certain reserves reported at year-end 2015 to cease to qualify as proved reserves at year-end 2016, under the relevant SEC rules.  Climate change and the possibility of future regulations addressing climate change—the purported focus of the Attorney General's investigation—are beside the

---

[7]   App. at 17.

9

point. As ExxonMobil further explained in its disclosure, reserves that may not qualify as proved reserves at year-end 2016 could again be "re-booked" as proved reserves in the future if prices recover, costs decline, or operating efficiencies occur. And, as ExxonMobil disclosed, it does not expect changes in reported SEC proved reserves to affect the underlying projects or to alter its outlook for future production volumes. Any change in the amount of ExxonMobil's reported proved reserves thus has nothing to do with future climate change regulations, and everything to do with low oil prices experienced in 2016. Far from justifying the Attorney General's fishing expedition, reliance on this disclosure provides further proof that her justifications for investigating ExxonMobil are pretextual.

### III.     The Attorney General Has Identified No Unfair Prejudice from the Amendments.

As the Fifth Circuit has recognized, "[t]he touchstone for denial of leave to amend under Rule 15(a) is prejudice." *Dueling* v. *Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015) (citation omitted). The Attorney General has identified no unfair prejudice that would result from ExxonMobil's addition of two claims in the early stages of this litigation, claims which would necessitate no more discovery than the claims ExxonMobil has already asserted. Under such circumstances, the Attorney General has not overcome the strong presumption in favor of granting leave to amend.

### CONCLUSION

The Attorney General has presented this Court with no sound reason to deviate from the strong presumption that a motion to amend should be freely granted. All the Attorney General has offered are repetitive legal arguments and unsupported aspersions cast upon ExxonMobil's attempts to vindicate its constitutional rights. Neither provides a basis to deny leave to amend. Accordingly, ExxonMobil respectfully requests that its motion for leave to file a First Amended Complaint be granted.

Dated: November 9, 2016

EXXON MOBIL CORPORATION

| | |
|---|---|
| By: /s/ Patrick J. Conlon<br>Patrick J. Conlon<br>*pro hac vice*<br>State Bar No. 24054300<br>Daniel E. Bolia<br>State Bar No. 24064919<br>daniel.e.bolia@exxonmobil.com<br>1301 Fannin Street<br>Houston, TX 77002<br>(832) 624-6336 | /s/ Nina Cortell<br>Nina Cortell<br>State Bar No. 04844500<br>nina.cortell@haynesboone.com<br>HAYNES & BOONE, LLP<br>2323 Victory Avenue<br>Suite 700<br>Dallas, TX 75219<br>(214) 651-5579<br>Fax: (214) 200-0411 |
| /s/ Theodore V. Wells, Jr.<br>Theodore V. Wells, Jr.<br>*pro hac vice*<br>twells@paulweiss.com<br>Michele Hirshman<br>*pro hac vice*<br>mhirshman@paulweiss.com<br>Daniel J. Toal<br>*pro hac vice*<br>dtoal@paulweiss.com<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>(212) 373-3000<br>Fax: (212) 757-3990 | /s/ Ralph H. Duggins<br>Ralph H. Duggins<br>State Bar No. 06183700<br>rduggins@canteyhanger.com<br>Philip A. Vickers<br>State Bar No. 24051699<br>pvickers@canteyhanger.com<br>Alix D. Allison<br>State Bar. No. 24086261<br>aallison@canteyhanger.com<br>CANTEY HANGER LLP<br>600 West 6th Street, Suite 300<br>Fort Worth, TX 76102<br>(817) 877-2800<br>Fax: (817) 877-2807 |
| Justin Anderson<br>*pro hac vice*<br>janderson@paulweiss.com<br>2001 K Street, NW<br>Washington, D.C. 20006-1047<br>(202) 223-7300<br>Fax: (202) 223-7420 | |

*Counsel for Exxon Mobil Corporation*

## CERTIFICATE OF SERVICE

This is to certify that on this 9th day of November 2016, a true and correct copy of the foregoing document was filed electronically via the CM/ECF system, which gave notice to all counsel of record pursuant to Local Rule 5.1(d).

/s/Ralph H. Duggins
RALPH H. DUGGINS