IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-469-K |
| | ) | |
| ERIC TRADD SCHNEIDERMAN, Attorney General of New York, in his official capacity, and MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO VACATE ORDER FOR DEPOSITION OF ATTORNEY GENERAL HEALEY AND STAY DISCOVERY, AND FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

I.  Introduction ........................................................................................................................... 1

II.  Background ............................................................................................................................ 3

III.  Prior Proceedings ................................................................................................................. 4

IV.  ARGUMENT ........................................................................................................................ 6

    A.  The Court Abused Its Discretion in Ordering Discovery Where It Is Evident that It Lacks Personal Jurisdiction and the Case is Unripe, and Venue is Improper........................... 6

    B.  The Court Was Not Empowered to Order a Deposition of Attorney General Healey, and Compounded its Error by Purporting to Order that She Travel to Texas to be Deposed. ........ 8

    C.  There is No Justification for Authorizing Any Discovery By Exxon in This Collateral Action Resisting the Attorney General's Lawful Massachusetts CID.................................... 12

    D.  No Discovery Is Necessary or Appropriate to Explore Whether "Bad Faith" Precludes *Younger* Abstention. ...................................................................................................... 13

    E.  Discovery Should be Stayed Until After the Court Rules on Motions to Dismiss the Amended Complaint. .......................................................................................................... 16

V.  CONCLUSION .................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine View Co. Ltd. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) .........................................................................................8

*In the Matter of the Application of the People of the State of New York*,
  No. 451963/2016 (N.Y. S. Ct.), App. ...............................................................................4

*Att'y Gen. v. Bodimetric Profiles*,
  533 N.E.2d 1364 (Mass. 1989) ......................................................................................14

*Bogan* v. *City of Boston*,
  489 F.3d 417 (1st Cir. 2007) ..........................................................................................10

*Bunch v. City of Wichita Falls*,
  No. Civ.A.7:05 CV 97, 2005 WL 1766363 (N.D. Tex. Jul. 26, 2005)....................................15

*Burlington N. R.R. Co. v. Office of Inspector Gen.*,
  983 F.2d 631 (5th Cir.1993) ..........................................................................................12

*In re Cheney*,
  544 F.3d 311 (D.C. Cir. 2008) .........................................................................................9

*Davila v. United States*,
  713 F.3d 248 (5th Cir. 2013) .....................................................................................2, 12

*In re EEOC*,
  709 F. 2d 392 (5th Cir. 1983) ........................................................................................11

*EEOC v. Exxon Corp.*,
  No. 3:95-cv-1311, 1998 WL 50464 (N.D. Tex. 1998) .........................................................10

*EEOC v. Shell Oil Co.*,
  466 U.S. 54 (1984)........................................................................................................11

*In re FDIC*,
  58 F.3d 1055 (5th Cir. 1995) ................................................................................. *passim*

*Fed. Trade Comm'n v. Standard Oil*,
  449 U.S. 232 (1980).................................................................................................10, 11

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ...........................................................................................7

*Hannah v. Larche*,
    363 U.S. 420 (1960)..................................................................................11

*Harmon Law Offices, P.C. v. Att'y Gen.*,
    991 N.E.2d 1098 (Mass. App. Ct. 2013) ...............................................14

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ..................................................................6

*King v. Dogan*,
    31 F.3d 344 (5th Cir. 1994) ..................................................................16

*Kugler v. Helfant*,
    421 U.S. 117 (1975)..............................................................................13

*Lederman v. New York City Dep't of Parks & Rec.*,
    731 F.3d 199 (2d Cir. 2013)....................................................................9

*McNatt v. Texas*,
    37 F.3d 629 (5th Cir. 2004) (per curiam)..............................................13

*In re Northern Marianas Islands*,
    694 F.3d 1051 ..........................................................................................9

*In re Office of Inspector Gen.*,
    933 F.2d 276 (5th Cir. 1991) ................................................3, 8, 10, 12

*Ramirez v. Exxon Mobil Corp.*,
    No. 3:16-cv-3111-L (N.D. Tex. Nov. 7, 2016)........................................4

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999)..............................................................................7, 8

*Sandsend Fin. Cons. v. Federal Home Loan Bank Bd.*,
    878 F.2d 875 (5th Cir.1989) .................................................................12

*Saxton v. Faust*,
    No. 3:09-cv-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010) ......7

*In re SEC*
    *ex rel Glotzer*, 374 F.3d 184, 187-192 (2d Cir. 2004) ............................9

*SEC v. McGoff*,
    647 F.2d 185 (D.C. Cir. 1981)..............................................................12

*Simplex Time Recorder Co. v. Sec'y of Labor*,
    766 F.2d 575 (D.C. Cir. 1985) ................................................................8

*Smith v. Hightower*,
    693 F.2d 359 (5th Cir. 1982) ................................................................14, 15

*Sprint Commc'ns, Inc. v. Jacobs*,
    134 S. Ct. 584 (2013).........................................................................13

*In re Stone*,
    986 F.2d 898 (5th Cir. 1993) ...............................................................2, 8

*Stroman Realty, Inc. v. Wercinski*,
    513 F.3d 476 (5th Cir. 2008) (*Stroman*) .........................................6, 7, 8

*In re United States*,
    197 F.3d 310 (8th Cir. 1999) .................................................................9

*In re United States*,
    624 F.3d 1368 (11th Cir. 2010) ............................................................9

*United States Board of Parole* v. *Merhige*,
    487 F.2d 25 (4th Cir. 1973) ..................................................................9

*In re United States (Kessler)*,
    985 F.2d 510 (11th Cir.1993) .......................................................8, 11, 12

*United States v. Hamm*,
    659 F.2d 624 (5th Cir. 1981) ...............................................................11

*United States* v. *Morgan*,
    313 U.S. 409 (1941)........................................................................2, 9

*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950).........................................................................12

*Vill. of Arlington Heights* v. *Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977).........................................................................9

*In re: Volkswagen of America, Inc.*,
    545 F.3d 304 (5th Cir. 2008) ...............................................................7

*Wayte v.United States*,
    470 U.S. 598 (1985)........................................................................11

*Wightman v. Tex. Sup. Ct.*,
    84 F.3d 188 (5th Cir. 1996) ................................................................13

*Wilson v. Thompson*,
    593 F.2d 1375 (5th Cir. 1979) ............................................................15

*Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Facilities Comm'n*,
685 F.2d 974 (5th Cir. 1982) ................................................................................13

*Younger v. Harris*,
401 U.S. 37 (1971) ................................................................................... *passim*

**Statutes**

20 U.S.C. § 1391(b) ...............................................................................................7

FTC Act ...............................................................................................................10, 11

*Harmon Law* ........................................................................................................14

Mass. Gen. Laws ch. 93A, § 6(1) .........................................................................14

Mass. Gen. Laws ch. 93A, § 6(7) ...........................................................................2

Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 6 .....................3

**Other Authorities**

Bradley Olson & Aruna Viswanatha, *SEC Probes Exxon Over Accounting for
Climate Change*, WALL ST. J., Sept. 20, 2016, available at
http://www.wsj.com/articles/sec-investigating-exxon-on-valuing-of-assets-
accounting-practices-1474393593 ...........................................................................3

Bradley Olson & Lynn Cook, *Exxon Warns on Reserves As It Posts Lower Profit:
Oil producer to examine whether assets in an area devastated by low price
and environmental concerns should be written down*, WALL ST. J., Oct. 28,
2016 .........................................................................................................................4

Clifford Krauss, *Exxon Concedes It May Need to Declare Lower Value for Oil in
Ground*, N.Y. TIMES, Oct. 28, 2016 .........................................................................4

# I.    INTRODUCTION

Attorney General Healey respectfully requests that the Court vacate its Order of November 17, 2016, (Doc. No. 117, "Deposition Order," Appendix Exhibit ("App. Exh.") 1), stay discovery and all proceedings in this case pending resolution of her motions to dismiss, and issue a protective order barring ExxonMobil's ("Exxon") deposition of her on December 13, which Exxon has also now noticed, from going forward. This Court has still not ruled on Attorney General Healey's August 8, 2016, motion to dismiss Exxon's first complaint on the grounds that the Court lacks personal jurisdiction over her, the case is not ripe, and venue is improper in this district—each of which may be decided on the basis of clear, controlling legal precedent without any factual development.[1] Nevertheless, the Court's *sua sponte* Deposition Order directs Attorney General Healey to (i) appear for a deposition at the federal courthouse in Dallas on December 13, and (ii) respond to "written discovery ten (10) days from the date the discovery is served." The Court set the Dallas location for the deposition, despite the fact that Exxon itself had noticed a deposition of Attorney General Healey to take place in Boston, Massachusetts, at the offices of its local counsel. Moreover, because written discovery had been served by Exxon on Attorney General Healey on October 24, 2016, the Court's order makes the discovery responses due on a date that had already passed.[2] The Court ordered this deposition and written discovery even though the Massachusetts Superior Court will hear on December 7,

---

[1] Attorney General Healey will be filing on November 28 her motion to dismiss Exxon's First Amended Complaint (Doc. No. 100), which will advance these same arguments.

[2] Exxon informed the Court during the November 16, 2016, telephone status conference with the parties (Doc. No. 114, App. Exh. 2, at 020), that it had served its written discovery on the Attorney General on October 24, 2016, and thus the ten-day period ordered by the Court had already passed before issuance of the Second Discovery Order. As Attorney General Healey reported to the Court she would do during the status conference, she now has filed timely objections under Rule 26, but not responses, to this discovery. App. Exh. 2 at 013.

2016, argument on the merits of Exxon's motion to set aside the civil investigative demand

("CID") issued by Attorney General Healey to Exxon, as provided under Massachusetts law. *See*

Mass. Gen. Laws ch. 93A, § 6(7).

In issuing both its October 13, 2016, order authorizing discovery against the Attorney

General (Doc. No. 73, "Jurisdictional Discovery Order," App. Exh. 3), and its Deposition Order

directing her to travel to Texas for a deposition, despite this Court's clear lack of personal

jurisdiction over her, the clear absence of a ripe dispute, and the fact that this Court is an

improper venue for the dispute, the Court has made errors of law and abused its discretion.

Further, long-settled Supreme Court and Fifth Circuit precedent make plain that it is

wholly improper here to order the deposition of Attorney General Healey, as the chief law

enforcement officer for the state of Massachusetts. *See, e.g.*, *United States* v. *Morgan*, 313 U.S.

409, 422 (1941); *In re Stone*, 986 F.2d 898, 904-05 (5th Cir. 1993); *In re FDIC*, 58 F.3d 1055,

1060 (5th Cir. 1995).

And, in any event, Exxon is not entitled to discovery in an action contesting an

administrative subpoena. The Court acted *sua sponte* in authorizing discovery in mid-October,

even though a party resisting a lawful administrative subpoena has a substantial burden to meet

to obtain discovery from the government. *See Davila v. United States*, 713 F.3d 248, 263-64 (5th

Cir. 2013).

Allowing discovery to go forward here would set a troubling precedent by allowing the

*target* of a state government investigation to confound and effectively halt law state enforcement

efforts by filing suit in the target's favored federal forum and permitting the target to "investigate

the investigator"—even in the absence of personal jurisdiction, and without requiring the target

to satisfy its lawful burden to obtain such extraordinary discovery.

Accordingly, the Court should vacate the Jurisdictional Discovery and Deposition Orders,

stay all discovery, issue a protective order prohibiting Exxon from taking the deposition of Attorney General Healey, and defer all activity in this action by Exxon while the Massachusetts Superior Court considers Exxon's motion to set aside the CID. *See In re Office of Inspector Gen.*, 933 F.2d 276, 277-78 (5th Cir. 1991) (vacating district court orders that allowed discovery by party resisting administrative subpoena and ordering court to defer all action in preemptive challenge to subpoena); *In re FDIC*, 58 F.3d at 1060 (issuing writ of mandamus to preclude testimony of three members of the Board of the FDIC when magistrate judge "clearly abused his discretion" in permitting deposition in absence of findings of exceptional circumstances).

## II.    BACKGROUND

Attorney General Healey issued her CID to Exxon in April 2016, as authorized by the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 6. She did so because the information her office had reviewed, principally Exxon's own documents and statements, supports her belief that Exxon has engaged in unfair or deceptive acts or practices that have harmed Massachusetts investors and consumers. *Id.*, § 2. The New York Attorney General already had issued a similar subpoena to Exxon, with which Exxon had been complying at the time Attorney General Healey issued her CID; by the fall of 2016, Exxon had produced over a million pages of documents to New York. Later, in August 2016, the United States Securities and Exchange Commission opened its own investigation into Exxon's representations to shareholders in light of its knowledge of climate change.[3] Exxon itself announced on October 28 that it anticipates it will need to make the largest ever write down of the valuation of its fossil

---

[3] Bradley Olson & Aruna Viswanatha, *SEC Probes Exxon Over Accounting for Climate Change*, WALL ST. J., Sept. 20, 2016, available at http://www.wsj.com/articles/sec-investigating-exxon-on-valuing-of-assets-accounting-practices-1474393593.

fuel reserves in the history of the company[4]; and shareholders commenced an action against Exxon on November 7, in this very District, alleging federal securities violations in connection with Exxon's failure to disclose the impacts of climate change on the value of its assets. *See Ramirez v. Exxon Mobil Corp.*, No. 3:16-cv-3111-L (N.D. Tex. Nov. 7, 2016).

### III.    PRIOR PROCEEDINGS

As set forth in Attorney General Healey's prior filings with the Court, *see* Memorandum of Law in Support of Motion to Reconsider (Doc. No. 79), at 1-3, Attorney General Healey's Opposition to Exxon's Motion for Leave to File an Amended Complaint, Doc. No. 94, at 3-4, following the September 19, 2016, hearing on Exxon's motion for a preliminary injunction, the Court ordered the parties to meet and confer, and then to mediate, their dispute over Exxon's decision to provide over a million pages of documents to the New York Attorney General in response to his similar subpoena, but none to Attorney General Healey.[5] *See also* Transcript of Preliminary Injunction Hearing, App. Exh. 6, at 142. Shortly after the parties reported to the Court that mediation had been unsuccessful, the Court, acting *sua sponte*, issued its Jurisdictional Discovery Order, and Attorney General Healey immediately sought reconsideration of that Order. In response to the Jurisdictional Discovery Order, Exxon served on Attorney General

---

[4] Clifford Krauss, *Exxon Concedes It May Need to Declare Lower Value for Oil in Ground*, N.Y. TIMES, Oct. 28, 2016, http://www.nytimes.com/2016/10/29/business/energy-environment/exxon-concedes-it-may-need-to-declare-lower-value-for-oil-in-ground.html; Bradley Olson & Lynn Cook, *Exxon Warns on Reserves As It Posts Lower Profit: Oil producer to examine whether assets in an area devastated by low price and environmental concerns should be written down*, WALL ST. J., Oct. 28, 2016, http://www.wsj.com/articles/exxon-mobil-profit-revenue-slide-again-1477657202.

[5] The New York Attorney General subsequently moved in New York State court to compel compliance with its November 5, 2015 subpoena to Exxon, on November 14, 2016. *See* Memorandum of Law in Support of Motion to Compel, App. Exh. 4. The New York court will hear argument on the motion to compel on December 15, 2016. *See* Docket Appearance Detail, *In the Matter of the Application of the People of the State of New York*, No. 451963/2016 (N.Y. S. Ct.), App. Exh. 5.

4

Healey over 100 requests for written discovery and documents[6], noticed depositions of her and two of her staff,[7] noticed the depositions of New York Attorney General Schneiderman and two of his staff, and subpoenaed eleven third parties.[8] The Court has not ruled on Attorney General Healey's motion to reconsider the Jurisdictional Discovery Order. App. Exh. 2 at 012.

On November 16, 2016, the Court held a telephone conference on the status of discovery pursuant to the Jurisdictional Discovery Order and asked the parties to consent to appointment of the Honorable James Stanton (whom the Court previously had assigned as a paid mediator) as a discovery special master, to be paid at the rate of $750 per hour by the parties. *Id.* at 021-026. Later that same day, the New York Attorney General's office ("AGO") informed the Court that it could not consent to the appointment of Judge Stanton, due to costs, and, as an alternative, proposed the appointment of a federal magistrate judge to oversee discovery. Nov. 16, 2016, Ltr. from NY AGO (Doc. No. 113). On November 17, Attorney General Healey joined that proposal. Nov. 17, 2016, Ltr. from MA AGO (Doc. No. 116). Later on November 17—and fewer than twenty-four hours after the New York Attorney General informed the Court that he could not consent to the appointment of a paid special master—the Court entered its Deposition Discovery Order directing Attorney General Healey to appear for a deposition in the federal courthouse in Dallas, Texas on December 13, 2016. The Court also advised New York Attorney General Schneiderman to be available for a deposition on December 13, and stated that it would enter an order to that effect once Attorney General Schneiderman filed his answer to the Amended

---

[6] Those requests include 33 requests for documents, several of which include sub-requests; 24 interrogatories, some of which contain subsidiary interrogatories; and 74 requests for admission.

[7] On November 18, Exxon agreed to withdraw without prejudice the deposition notices of those two staff attorneys.

[8] Those subpoenas have a return date of November 23, 2016.

Complaint.[9]

The contentious, even baiting, nature of the discovery sought by Exxon pursuant to the Court's *sua sponte* Jurisdictional Discovery Order demonstrates why permitting discovery here is unwarranted, and, to the extent it is a reasonable indicator of the types of questions Exxon would direct to Attorney General Healey at her deposition, it illustrates precisely why depositions of high ranking officials is heavily disfavored. For example, Interrogatory No. 24 asks Attorney General Healey to: "State, identify, and describe the basis for Your belief that investigating a single company will help combat or limit climate change." In Request for Admission No. 13, Exxon asks Attorney General Healey to "Admit that, as of March 29, 2016, You had formed a belief that the United States should work towards a 'clean energy future.'" In Request No. 20, Exxon seeks production of: "Any and all documents concerning or reflecting Your speeches regarding climate change, renewable energy, or ExxonMobil." Such discovery improperly seeks to inquire into the Attorney General's policy beliefs, the details of the investigation, her deliberative process and mental impressions, and is well beyond the scope of what could be permissible in this action.

## IV.   ARGUMENT

### A.   THE COURT ABUSED ITS DISCRETION IN ORDERING DISCOVERY WHERE IT IS EVIDENT THAT IT LACKS PERSONAL JURISDICTION AND THE CASE IS UNRIPE, AND VENUE IS IMPROPER.

To proceed in this Court, Exxon must establish that "both the forum state's long-arm statute and federal due process permit the court to exercise personal jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Exxon can establish neither here. In *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) (*Stroman*), the Court found

---

[9] Meanwhile, the Massachusetts Superior Court has set a hearing date for Exxon's challenge to the CID for December 7, 2016. *See* Notice of Hearing, App. Exh. 7.

personal jurisdiction lacking in a suit in Texas by a Texas company against an Arizona state official challenging her enforcement of Arizona law against the plaintiff. *Stroman* compels the Court to dismiss this case on the same grounds without discovery or further proceedings. *See also Saxton v. Faust*, No. 3:09-cv-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010) (dismissal suit in Texas against Idaho judge for lack of personal jurisdiction). This Court can, and should, decide the essential question of personal jurisdiction over the defendant before considering other dispositive grounds for dismissal. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999).

In addition, Exxon's suit should be dismissed under *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016), which found unripe a challenge to an investigatory subpoena issued by Mississippi Attorney General Hood. *Id*. at 224-26. Reversing the district court, the Fifth Circuit ordered dismissal of Google's challenge to the subpoena and vacated the district court's injunction against Attorney General Hood. *Id.* at 228. The court held that injunctive relief was not warranted because Google would have an adequate remedy at law defending any action to enforce the subpoena that Attorney General Hood might later file in a Mississippi state court. For that reason, the action was not ripe. *Id.* at 226.

Further, dismissal is mandated because venue is improper in this district under 20 U.S.C. § 1391(b). Venue is improper because the defendant does not reside in Texas; the events giving rise to Exxon's purported claims did not occur in Texas; and the court lacks jurisdiction over the defendants. No discovery or fact development is necessary in this regard. The failure to address plainly improper venue, at the outset of a case, is an abuse of discretion. *See In re: Volkswagen of America, Inc*., 545 F.3d 304 (5th Cir. 2008) (granting mandamus petition after finding that the district court committed a "clear abuse of discretion" in retaining venue).

In these circumstances, the Court should not have authorized discovery by Exxon. *See*

7

*Ruhrgas,* 526 U.S. at 577 ("[W]ithout jurisdiction the court cannot proceed at all in any cause

. . . .") (internal citations omitted). Instead, "concerns of federalism, and of judicial economy and

restraint" should have guided the Court to dismiss Exxon's claims for lack of personal

jurisdiction before considering more complex bases for dismissal. *Alpine View Co. Ltd. v. Atlas

Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000). Indeed, the Court's Jurisdictional Discovery Order

acknowledges that its questions about *Younger* abstention are independent of other grounds for

dismissal raised by Attorney General Healey. See App. Exh. 3 at 034. As *Stroman* teaches, there

is no reason to examine abstention doctrines, when there is a jurisdictional basis for dismissal.

513 F.3d at 482 n.3. Accordingly, the Court should now vacate the discovery orders, stay further

proceedings, and rule on the Attorney General's impending motion to dismiss.

**B.     THE COURT WAS NOT EMPOWERED TO ORDER A DEPOSITION OF
         ATTORNEY GENERAL HEALEY, AND COMPOUNDED ITS ERROR BY
         PURPORTING TO ORDER THAT SHE TRAVEL TO TEXAS TO BE DEPOSED.**

The federal courts of appeal, including the Fifth Circuit, have repeatedly recognized that

"top executive department officials should not, absent extraordinary circumstances, be called to

testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of

Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *accord, In re FDIC*, 58 F.3d 1055, 1060 (5th Cir.

1995) ("exceptional circumstances must exist before the involuntary depositions of high agency

officials are permitted. . . [T]op executive department officials should not, absent extraordinary

circumstances, be called to testify regarding their reasons for taking official actions.") (internal

citations omitted); *In re Stone*, 986 F. 2d 898, 904 (5th Cir. 1993) (deposition of high-ranking

government officials justified only in "egregious" cases); *In re United States (Kessler)*, 985 F.2d

510, 512 (11th Cir.1993) (parties noticing the deposition of a high ranking official must

demonstrate "a special need or situation compelling such testimony."); *In re Office of Inspector

Gen.*, 933 F.2d 276, 277-78 (5th Cir. 1991) (exceptional circumstances required to depose high-

ranking government officials).

These cases derive from *United States* v. *Morgan*, 313 U.S. 409 (1941), which emphasized that federal courts may not properly compel the testimony of agency decision-makers to probe their mental processes. And *Morgan* admonished against exactly what the Court has ordered here: the deposition of a high-ranking official regarding the reasons for taking official action, "including the manner and extent of [her] study of the record and [her] consultation with subordinates." *Id.* at 422; *see also Lederman v. New York City Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013). Authorizing this inquiry works a substantial intrusion on Massachusetts's sovereign interest in investigation violations of its state law. *Cf. Vill. of Arlington Heights* v. *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977) ("judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government).[10]

That is particularly true here, where the Court acted *sua sponte* in issuing its Deposition Order, and Exxon has failed entirely to meet its burden to make the "strong showing" of exceptional circumstances required to permit the deposition of Attorney General Healey. *See,*

---

[10] For these reasons, every court of appeals to consider the question has concluded that it is an appropriate exercise of an appellate court's mandamus authority to preclude the testimony of high-ranking officials absent an exceptional showing of need. *See, e.g.*, *In re United States*, 624 F.3d 1368, 1373 (11th Cir. 2010) (issuing a writ of mandamus to preclude the deposition of the EPA Administrator); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) ("The duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere.") (issuing writ of mandamus to preclude deposition of the Vice President's chief of staff); *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (issuing writ of mandamus to preclude testimony of Attorney General and Deputy Attorney General); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (issuing writ of mandamus to preclude testimony of three members of the Board of the FDIC); *United States Board of Parole* v. *Merhige*, 487 F.2d 25, 29 (4th Cir. 1973) (issuing writ of mandamus to preclude deposition of members of the Board of Parole); *see also In re Northern Marianas Islands*, 694 F.3d 1051 at 1059-1061; *In re SEC ex rel Glotzer*, 374 F.3d 184, 187-192 (2d Cir. 2004) (issuing writ of mandamus to preclude deposition of SEC attorneys).

*e.g.*, *EEOC v. Exxon Corp.*, No. 3:95-cv-1311, 1998 WL 50464, at *1 (N.D. Tex. 1998)

(vacating order for deposition of EEOC chairman where "Exxon has failed to make the strong

showing necessary for a finding of exceptional circumstances" based on its contention that

"Chairman Casellas may have personal knowledge of the facts at issue in this case because of

statements he made to the media and because he is a top policy maker for the Commission"); *see

also In re Office of Inspector Gen.*, 933 F.2d at 278 ("[W]e have concluded that it is normally

inappropriate to 'probe the mental processes and motives of the individual decision-maker, rather

than to question the objective legal validity of the institutional decision.'") (quoting *Kent Corp.

v. NLRB*, 530 F.2d 612, 620 (5th Cir.), *cert. denied*, 429 U.S. 920 (1976)).

Indeed, the basis for the discovery Orders, as articulated by the Court—the "question of

whether Attorney General Healey issued the CID with bias or prejudgment about what the

investigation of Exxon would discover," App. Exh. 3 at 036-037, which the Court linked to its

analysis of whether *Younger* abstention applies here—does not constitute exceptional

circumstances that would warrant taking the deposition of a high ranking official. *Cf. Fed. Trade

Comm'n v. Standard Oil*, 449 U.S. 232, 241 (1980) (whether federal agency had "reason to

believe" defendant violated FTC Act, and could therefore proceed with investigation, was not

ripe for judicial review during investigative phase). And moreover, as explained below, there is

no conceivable need for discovery in these proceedings, especially at this early stage.[11]

Courts should be particularly reluctant to permit the direct examination of a government

prosecutor at the outset of her investigation. Doing so imposes "systemic costs of particular

---

[11] And even where "extraordinary circumstances" are present—which is not the case here—even
a high-ranking public official who has "first-hand knowledge" related to the litigation should not
be deposed if other persons can "provide the necessary information." *Bogan* v. *City of Boston*,
489 F.3d 417, 423 (1st Cir. 2007).

concern." *Wayte v. United States*, 470 U.S. 598, 607-08 (1985) ("Examining the basis of a prosecution delays the . . . proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy."); *see United States v. Hamm*, 659 F.2d 624, 628 (5th Cir. 1981); *see also EEOC v. Shell Oil Co.*, 466 U.S. 54, 71-73 (1984) (identifying interests injured by allow respondent to challenge underlying basis of EEOC's notice of investigation); *cf. Fed. Trade Comm'n v. Standard Oil*, 449 U.S. 232, 241 (1980) (whether federal agency had "reason to believe" defendant violated FTC Act not ripe for judicial review). Turning an investigation into "trial-like proceeding" would "make a shambles of the investigation and stifle the agency in its gathering of facts." *Hannah v. Larche*, 363 U.S. 420, 443-44 (1960).

An additional reason for protecting officials is to protect their time. *In re FDIC*, 58 F.3d at 1060 ("High ranking government officials have greater duties and time constraints than other witnesses.") (quoting *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir.) (per curiam), cert. denied, 510 U.S. 989 (1993)). But, the Court's Deposition Discovery Order, in fact, appears designed to *maximize* the burden placed upon Attorney General Healey, by requiring her to travel from Boston to Dallas for a deposition, thus consuming at least two business days. *Cf. Kessler*, 985 F.2d at 512 (vacating order for 30-minute telephonic deposition of FDA commissioner as too burdensome). Appearing for this deposition would interfere substantially with Attorney General Healey's responsibilities and impair her effectiveness as the state's chief law enforcement officer. *See In re EEOC*, 709 F. 2d 392, 398 (5th Cir. 1983) ("efficiency of the EEOC would suffer terribly if its commissioners were subject to deposition in every routine subpoena enforcement proceeding"). In addition, preparing and appearing for this particular deposition would unnecessarily keep Attorney General Healey from performing her official

duties. *Kessler*, 985 F.2d at 512 (11th Cir.1993) (parties noticing the deposition of a high ranking

official must demonstrate "a special need or situation compelling such testimony").

## C.   THERE IS NO JUSTIFICATION FOR AUTHORIZING ANY DISCOVERY BY EXXON IN THIS COLLATERAL ACTION RESISTING THE ATTORNEY GENERAL'S LAWFUL MASSACHUSETTS CID.

The role of a court in an action challenging an administrative subpoena is "strictly

limited." *Sandsend Fin. Cons. v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 879 (5th

Cir.1989) (citing *FTC v. Texaco*, 555 F.2d 862, 872 (D.C.Cir. 1977)); *see Burlington N. R.R. Co.*

*v. Office of Inspector Gen.*, 983 F.2d 631, 637-38 (5th Cir.1993) (recognizing the "summary

nature of administrative subpoena enforcement proceedings"). In general, a party like Exxon is

"not entitled to engage in counter-discovery to find grounds for resisting a subpoena." *In re*

*Office of Inspector Gen.*, 933 F.2d at 278 (internal citations omitted). Courts disfavor expansive

litigation challenging administrative subpoenas because, fundamentally, "law-enforcing agencies

have a legitimate right to satisfy themselves that corporate behavior is consistent with the law

and the public interest." *United States v. Morton Salt Co*., 338 U.S. 632, 652 (1950). The interest

in summary disposition also pertains where the party resisting the subpoena has filed a

preemptive action, as Exxon has here. *See In re Office of Inspector Gen.*, 933 F.2d at 277

(ordering district court to "defer and suspend all activity, specifically including discovery" in a

railroad's preemptive suit challenging administrative subpoena).

Here, the Court abused its discretion in ordering discovery *sua sponte*, where Exxon had

a heavy burden to demonstrate the need for and propriety of discovery. "As the party opposing

dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity

of discovery." *Davila v. United States*, 713 F.3d 248, 263–64 (5th Cir. 2013) (citing *Freeman v.*

*United States,* 556 F.3d 326, 341–42 (5th Cir. 2009); *see also SEC v. McGoff*, 647 F.2d 185,

187-88 (D.C. Cir. 1981) (upholding Securities and Exchange Commission subpoena; rejecting

discovery notwithstanding assertion that investigation was "politically motivated"). Because the Court ordered discovery *sua sponte*, Exxon has at no time shown why discovery is necessary in these proceedings, and indeed it is not.

**D.   NO DISCOVERY IS NECESSARY OR APPROPRIATE TO EXPLORE WHETHER "BAD FAITH" PRECLUDES *YOUNGER* ABSTENTION.**

In evaluating whether to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), the Court must consider: (1) whether there is an ongoing state criminal, civil, or administrative proceeding; (2) whether the state proceedings involve important state interests; and (3) whether the state court provides an adequate forum to hear the claims raised in the federal complaint. *Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Facilities Comm'n*, 685 F.2d 974, 979 (5th Cir. 1982) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Abstention should be ordered "absent bad faith, harassment or a patently invalid state statute." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013). These exceptions, however, provide only a "very narrow gate for federal intervention in pending state [] proceedings." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975). "The bad faith exception to *Younger* is extremely narrow and applies only in cases of proven harassment or prosecutions undertaken without hope of obtaining valid convictions." *McNatt v. Texas*, 37 F.3d 629 (5th Cir. 2004) (per curiam); *see also Wightman v. Tex. Sup. Ct.*, 84 F.3d 188, 190 (5th Cir. 1996) (bad faith exception to *Younger* is narrow and granted "parsimoniously").

The concerns identified in the Court's Jurisdictional Discovery Order would not trigger the "bad faith" exception to *Younger*, and so cannot justify discovery. The Court's basis for ordering jurisdictional discovery was that certain statements Attorney General Healey made, if true, may show bias or prejudgment about what the investigation would discover, constituting bad faith in issuing the CID. App. Exh. 3 at 036-037. The Court misapprehends what

13

Massachusetts law requires for the issuance of a CID by the Attorney General. A belief on her part that Exxon had engaged in unfair business practices would not constitute bad faith; rather, under Massachusetts law, the Attorney General may *only* issue a CID *if she believes that the target is violating Chapter 93A. See* Mass. Gen. Laws ch. 93A, § 6(1); *Harmon Law Offices, P.C. v. Att'y Gen.*, 991 N.E.2d 1098, 1103 (Mass. App. Ct. 2013); Attorney General Healey's Opposition to Exxon's Motion for Preliminary Injunction (Doc. No. 43, "PI Opp.") at 3, 21-22. In other words, the Attorney General's belief that Exxon has violated Chapter 93A does not, under Massachusetts law, constitute bias; rather, it is a legally *required* predicate to issuance of a CID. *Att'y Gen. v. Bodimetric Profiles*, 533 N.E.2d 1364, 1367 (Mass. 1989); *Harmon Law Offices*, 991 N.E.2d at 1103.

Moreover, as Attorney General Healey has shown in prior submissions, it is common for state Attorneys General to coordinate on investigations, *see* Attorney General Healey's Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. No. 43) at 4 (discussing joint investigations), and it is common for state attorneys general to make statements to press about those investigations.[12] Attorney General Healey issued her CID to Exxon, as set forth above, because the information the AGO reviewed supports a belief that Exxon has violated and is violating the Massachusetts consumer protection act, and therefore met the threshold required for issuance of CIDs.

The determination as to the application of the bad faith exception to *Younger* abstention is properly made by reviewing the information that the Attorney General had before her at the time the CID was issued. *Smith v. Hightower*, 693 F.2d 359, 374 (5th Cir. 1982). As set forth in

---

[12] *See, e.g.*, Office of the Attorney General of Texas, "Attorney General Paxton Announces Investigation of Volkswagen," Sept. 24, 2015, available at
https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-announces-investigation-of-volkswagen.

her motion to reconsider the Jurisdictional Discovery Order, that Order cited only *allegations made by Exxon* as grounds justifying jurisdictional discovery; the Court appears to have ignored completely the ample facts in the record and cited by Attorney General Healey that show the good faith basis for issuance of the CID. *See* App. Exh. 3 at 036-037. For example, the AGO reviewed numerous internal Exxon documents made public in 2015 as a result of investigative reports by journalists, Memorandum of Law in Support of Motion to Reconsider, at 7-8 (referencing numerous appended documents, totaling more than 200 pages), illustrating Exxon's extensive knowledge—decades ago—of climate change, and the likely effects of climate change on ecological systems and Exxon's own business. Attorney General Healey also reviewed statements and representations made by Exxon, *id.*, that appear to be inconsistent with Exxon's knowledge of climate change and its impacts on ecological systems and Exxon's business and assets. Under the Fifth's Circuit's test for determining whether bad faith precludes application of *Younger* abstention, those facts are sufficient to establish that the CID was issued in good faith, and it is reversible error not to consider a target's wrongdoing in determining a prosecutor's bad faith. *Hightower,* 693 F.2d at 369 (evidence of violations supports inference that prosecutor is fulfilling her duty in good faith).[13] In light of these facts, Exxon cannot meet its burden of

---

[13] In *Hightower*, the Fifth Circuit held that the district court erred in failing to consider evidence of crimes and wrongdoing in determining whether the prosecution was brought in good or bad faith. *Id.* at 369. Strong evidence of a good-faith basis for prosecution precludes a finding of bad faith, even where a bad faith motive exists—and no such motive exists here. *Id.* at 369 n.25; *see also Wilson v. Thompson*, 593 F.2d 1375, 1388 (5th Cir. 1979) (remanding bad faith determination to district court to determine whether the state's purpose in bringing a criminal prosecution was to retaliate for or deter constitutionally protected conduct and, even if it was, whether the State would have reached the same decision to prosecute if any impermissible purpose had not been considered); *Bunch v. City of Wichita Falls*, No. Civ.A.7:05 CV 97, 2005 WL 1766363, at * 1 (N.D. Tex. Jul. 26, 2005) ("Assuming *arguendo* that Plaintiffs [established that criminal prosecution was motivated in part by retaliation for or deterrence of protected conduct], the evidence presented . . . clearly showed that the City would have fined Plaintiffs anyway.")

proving that the CID was issued in bad faith, so there is no need for jurisdictional discovery.

Further, answering the question whether the AGO had sufficient information upon which to form a belief that there may have been a violation of Chapter 93A does not require the deposition of Attorney General Healey. Attorney General Healey has already apprised the Court of her sufficient grounds for issuing the CID. Exxon itself has placed much such evidence into the record before this Court. *See, e.g.*, Exxon First Amended Complaint, App. at Exh. NN.

**E.      DISCOVERY SHOULD BE STAYED UNTIL AFTER THE COURT RULES ON MOTIONS TO DISMISS THE AMENDED COMPLAINT.**

On November 10, 2016, this Court granted Exxon's motion to amend its complaint to add the New York Attorney General as a defendant and to add certain additional claims (Doc. No. 99). On the same day, Exxon filed its first amended complaint (Doc. No. 100, "Amended Complaint"). The Massachusetts Attorney General anticipates filing a motion to dismiss all claims in the Amended Complaint on November 28, 2016.

The Court's Jurisdictional Discovery Order is based on Exxon's initial Complaint, which has been superseded by Exxon's Amended Complaint. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (amended complaint was "the only effective complaint"). The First Discovery Order is therefore moot and should be vacated. All discovery should be stayed pending filing of defendants' responsive pleadings and resolution of any dispositive motions directed to Exxon's Amended Complaint. Accordingly, no purpose will be served in permitting discovery while the motions are pending.

**V.      CONCLUSION**

For the reasons stated here, Attorney General Healey respectfully requests that the Court vacate the Jurisdictional and Deposition Discovery Orders, issue a protective order preventing the December 13 deposition from going forward, and stay all discovery and other proceedings in

this case until it has ruled on her impending motion to dismiss the amended complaint.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS

By her attorneys:

|  |  |
|---|---|
| | _s/ Douglas A. Cawley_ |
| Richard Johnston (pro hac vice) | Douglas A. Cawley |
| Chief Legal Counsel | Lead Attorney |
| richard.johnston@state.ma.us | Texas State Bar No. 04035500 |
| Melissa A. Hoffer (pro hac vice) | dcawley@mckoolsmith.com |
| Chief, Energy and Environment Bureau | Richard A. Kamprath |
| melissa.hoffer@state.ma.us | Texas State Bar No. 24078767 |
| Christophe G. Courchesne (pro hac vice) | rkamprath@mckoolsmith.com |
| Chief, Environmental Protection Division | MCKOOL SMITH, P.C. |
| christophe.courchesne@state.ma.us | 300 Crescent Court, Suite 1500 |
| I. Andrew Goldberg (pro hac vice) | Dallas, Texas 75201 |
| andy.goldberg@state.ma.us | (214) 978-4000 |
| Peter C. Mulcahy (pro hac vice) | Fax (214) 978-4044 |
| peter.mulcahy@state.ma.us | |
| Assistant Attorneys General | |
| OFFICE OF THE ATTORNEY GENERAL | |
| One Ashburton Place, 18th Floor | |
| Boston, MA 02108 | |
| (617) 727-2200 | |

Dated: November 25, 2016

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 25, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Douglas A. Cawley*
Douglas A. Cawley