**<u>EXHIBIT 2</u>**

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DISTRICT OF TEXAS

3                      FORT WORTH DIVISION

4
  EXXON MOBIL CORPORATION,      )          4:16-CV-469-K
5              Plaintiff,       )
                               )
6                              )
  VS.                          )
7                              )
                               )          DALLAS, TEXAS
8  ERIC TRADD SCHNEIDERMAN,     )
  Attorney General of New      )
9  York, in his official       )
  capacity, and MAURA TRACY    )
10 HEALEY, Attorney General of  )
  Massachusetts, in her        )
11 official capacity,           )
              Defendants.      )          November 16, 2016
12

13                TRANSCRIPT OF TELEPHONE CONFERENCE

14               BEFORE THE HONORABLE ED KINKEADE

15                 UNITED STATES DISTRICT JUDGE

16

17 A P P E A R A N C E S:

18

19
  FOR THE PLAINTIFF:        MR. JUSTIN ANDERSON
20                          Paul, Weiss, Ritkind,
                              Wharton & Garrison LLP
21                          2001 K Street, NW
                           Washington, D.C.  20006
22                          janderson@paulweiss.com
                           (202) 223-7300
23

24

25



1    **MR. TED WELLS**
     Paul, Weiss, Ritkind,
2        Wharton & Garrison LLP
     1285 Avenue of the Americas
3    New York, New York  10019
     twells@paulweiss.com
4    (212) 373-3317

5

     **MS. MICHELE HIRSHMAN**
6    Paul, Weiss, Rifkind,
         Wharton & Garrison, LLP
7    1285 Avenue of the Americas
     New York, New York  10019
8    MHirschman@paulweiss.com
     (212) 373-3000

9

10   **MR. DANIEL E. BOLIA**
     Exxon Mobil Corporation
11   1301 Fannin Street
     Room 1546
12   Houston, Texas  77002
     daniel.e.bolia@exxonmobil.com
13   (832) 648-5500

14

     **MR. PATRICK JOSEPH CONLON**
15   Exxon Mobil Corporation
     1301 Fannin Street
16   Room 1539
     Houston, Texas  77002
17   patrick.j.conlon@exxonmobil.com
     (832) 624-6336

18

19

     **MS. NINA CORTELL**
20   Haynes & Boone LLP
     2323 Victory Avenue
21   Suite 700
     Dallas, Texas  75219
22   nina.cortell@haynesboone.com
     (214) 651-5579

23

24

25

```
 1   FOR THE DEFENDANT,          MR. RODERICK ARZ
     ERIC TRADD SCHNEIDERMAN:    Office of the Attorney General
 2                                  State of New York
                                 120 Broadway, Fl 24th
 3                               New York, New York  10271
                                 (212) 416-8633
 4

 5
                                 MR. JEFFREY M. TILLOTSON, P.C.
 6                               Tillotson Law
                                 750 N. Saint Paul Street
 7                               Suite 610
                                 Dallas, Texas  75201
 8                               Jtillotson@TillotsonLaw.como
                                 (214) 382-3041
 9

10
                                 MR. PETE MARKETOS
11                               Reese Gordon Marketos LLP
                                 750 N. Saint Paul Street
12                               Suite 610
                                 Dallas, Texas  75201
13                               petemarketos@rgmfirm.com
                                 (214) 382-9810
14

15
     FOR THE DEFENDANT,          MR. DOUGLAS A. CAWLEY
16   MAURA TRACY HEALY:          McKool Smith
                                 300 Crescent Court
17                               Suite 1500
                                 Dallas, Texas  75201
18                               dcawley@mckoolsmith.com
                                 (214) 978-4972
19

20
                                 MR. RICHARD JOHNSTON
21                               Massachusetts Attorney
                                   General's Office
22                               One Ashburton Place
                                 20th Floor
23                               Boston, Massachusetts  02108
                                 Richard.Johnston@state.ma.us
24                               (617) 963-2028

25
```



```
 1                                  MS. MELISSA HOFFER
                                    Massachusetts Attorney
 2                                    General's Office
                                    One Ashburton Place
 3                                  19th Floor
                                    Boston, Massachusetts  02108
 4                                  melissa.hoffer@state.ma.us
                                    (617) 963-2322
 5

 6
     ALSO PRESENT:                  MR. JASON BROWN
 7

 8
     COURT REPORTER:                MR. TODD ANDERSON, RMR, CRR
 9                                  United States Court Reporter
                                    1100 Commerce St., Rm. 1625
10                                  Dallas, Texas  75242
                                    (214) 753-2170
11

12

13

14

15

16

17

18

19

20

21

22

23         Proceedings reported by mechanical stenography and

24   transcript produced by computer.

25
```

```
 1              TELEPHONE CONFERENCE - NOVEMBER 16, 2016
 2                      P R O C E E D I N G S
 3              THE COURT:  Good morning.  Let me make sure who I
 4      have got.
 5              Mr. Anderson?
 6              Hello?
 7              Mr. Anderson?
 8              MR. ANDERSON:  Good morning, Judge.
 9              THE COURT:  Ms. Cortell?
10              MS. CORTELL:  Yes, Your Honor.  I've got a full list
11      if that would help.
12              THE COURT:  Is it Richard Johnston?
13              MR. JOHNSTON:  Yes, Your Honor.
14              THE COURT:  And then Mr. Arz?
15              MR. ARZ:  Yes, Your Honor.  Good morning.
16              THE COURT:  Good morning.
17              How is the weather in New York?
18              MR. ARZ:  Good.
19              MR. BROWN:  And, Your Honor, this is Jason Brown.
20      I'm the chief deputy for the New York Attorney General's
21      Office.  I'm on the line as well.
22              And the weather up here is actually not so bad.
23              THE COURT:  What does that mean?
24              Is it raining -- raining and cold?
25              MR. BROWN:  Yesterday it was raining and cold.
```

```
 1    Today, it's funny, it's a little bit warmer, so --
 2              THE COURT:  Oh, well, good.  Good.
 3              MR. BROWN:  (Inaudible)
 4              THE COURT:  Well, good.  So -- all right.  Anybody
 5    else on the line?
 6              MS. CORTELL:  Your Honor, it's Nina Cortell.  Let me
 7    give you a full list, if that's okay.
 8              THE COURT:  Sure.
 9              MS. CORTELL:  I think that might expedite it.
10              THE COURT:  Okay.
11              MS. CORTELL:  So for ExxonMobil, in addition to
12    Justin Anderson, you have myself, Nina Cortell, Ted Wells, Pat
13    Conlon, Dan Bolia, and Michele Hirshman.
14              For the Massachusetts Attorney General, in addition
15    to Richard Johnston, you have Melissa Hoffer and Doug Cawley.
16              And for the New York Attorney General you have -- in
17    additional to Mr. Arz and Jason Brown, you have Pete Marketos
18    and Jeff Tillotson.
19              THE COURT:  Mr. Tillotson.  You haven't been in here
20    since you became an independent lawyer.  How are you doing?
21              MR. TILLOTSON:  I'm doing fine, Your Honor.  Thanks
22    for asking.  I'm -- I'm my own boss, and so I routinely both
23    hire and fire myself every afternoon.
24              THE COURT:  Well, there you go.  I wasn't worried
25    that you were going broke.  I just wondered what was going on
```

 1   with you.  That's good.  Good to have you back.

 2          Okay.

 3          MR. TILLOTSON:  Thank you.

 4          THE COURT:  You know, I've got Ms. Cortell's letter,

 5   and I guess her concern and my concern, too, at this point is

 6   whether or not Attorney General Schneiderman -- isn't that the

 7   right way to say it, general?  Just call him General

 8   Schneiderman and General Healey, whether they're going to

 9   comply with the order on the discovery or not and/or what's

10   going to happen there.  And I just wanted to kind of hear

11   y'all's response from that.

12          MR. JOHNSTON:  Your Honor, this is Richard Johnston.

13   You heard from me in September when we were down there arguing.

14   I will talk for the Attorney General's Office in Massachusetts.

15          As Your Honor will probably recall when we were

16   before you the last time, we argued quite strenuously that the

17   Court didn't have personal jurisdiction over Attorney General

18   Healey.  We argued secondarily that the Court should abstain

19   from taking the case because there was almost equivalent

20   proceeding in a Massachusetts state court.

21          We also argued there was no real irreparable harm

22   because Exxon had already produced many of the same documents

23   to New York.

24          And when we left court, or as we were leaving court,

25   you told us -- you told the parties that it seemed strange that

1   Exxon had produced a lot of documents to New York but wouldn't

2   give them to Massachusetts, and directed the parties to have a

3   discussion, and failing a discussion between us that we would

4   mediate before Judge Stanton.

5         We had discussions about the subject, and then we had

6   a mediation with Judge Stanton, and we left the process with no

7   documents from Exxon.

8         To our somewhat surprise we then got almost

9   immediately the discovery order, which seemed to relate

10  primarily the issue of abstention, at which point we filed a

11  motion for reconsideration with Your Honor on the discovery

12  order because we pointed out that the law on personal

13  jurisdiction seemed very clear under the Fifth Circuit, that

14  there was no ability on the part of the Court to exercise

15  jurisdiction over an attorney general from another state, no

16  federal court anywhere in the country had done that over the

17  opposition of an attorney general and Exxon didn't provide any

18  such cases.  So that motion for reconsideration is still

19  pending.

20        In the meantime, we received from Exxon approximately

21  a hundred and so written discovery requests, including

22  interrogatories, document requests, and requests for admission.

23  We also got notices of the deposition for Attorney General

24  Healey herself and -- to assist the attorneys general.

25        Now, each one of those discovery requests had a

1    particular time period for responding under the rules, and we

2    do intend to respond to all of them under the rules.  And as we

3    have said in at least one other paper, we do intend to object

4    to the discovery, including depositions of Attorney General

5    Healey and her associates and to the other forms of discovery.

6            But we will be filing those in a timely fashion.  I

7    think in direct response to Ms. Cortell's concern, we do not

8    expect that Attorney General Healey or the other assistant

9    attorneys general will show up for depositions.  We will be

10   filing motions with respect to those prior to the depositions.

11           I should note that when we got the notices -- we got

12   the letter from Exxon's counsel, I think on Friday during the

13   holiday about whether we would show up or not, and when by

14   Monday afternoon we had not yet responded, they sent a letter

15   to Your Honor saying there was concern about whether people

16   were going to show up.

17           So it's not as though there was any long delay in

18   letting people know.  I think less than -- there hadn't even

19   been a working day on Friday and we were a few hours into the

20   working day on Monday and we still had several days before our

21   formal responses were due.

22           So we will be filing those responses, and the

23   responses will, among other things, talk about the fact that it

24   is heavily, heavily disfavored to have top executive officials,

25   including attorneys general, deposed about their thought

 1    processes in bringing particular matters.

 2           And what we seem to have here, as we argue in our

 3    motion for reconsideration, is a situation where the normal

 4    investigatory process has been turned on its head.

 5           We still in response to our civil investigation

 6    demand have not received one document from Exxon, and yet Exxon

 7    is going after the Attorney General's entire thought process

 8    through a hundred written discovery requests and more and then

 9    three depositions of key people who are involved in the

10    decision-making process.

11           So our motion for reconsideration focuses on that as

12    will our objections to the specific discovery requests which

13    they have made.

14           THE COURT:  Is that no?

15           MR. JOHNSTON:  That is a no.

16           THE COURT:  That's the longest no I have had in two

17    or three weeks, but it's okay.  I'm used to that.  You're a

18    lawyer.

19           All right.

20           MR. JOHNSTON:  Also it's been a few -- it's been a

21    couple of months now since we were before you, and I know you

22    have been in a busy trial.  And, you know, sometimes it's

23    important to just remind everybody where we -- where we think

24    we are on this.

25           THE COURT:  I appreciate that, and that -- you know,

1    I was a history minor, and so I always like history, and so not

2    that I always need it, and I kind of like to choose which

3    history I'm -- you know, whatever.

4           But I kind of do keep up with my docket, what's going

5    on.  But I'm glad for you to keep up with it, too.  That's

6    always fascinating, and that's -- you know, you talk about

7    things are unusual.  I would say that's a little unusual to

8    think that, you know, your comments about we got this unusual

9    thing from the Court.  You know, whatever.

10          You can make whatever comments you want to make.  I'm

11   going to make whatever rulings I think are appropriate, and

12   I'll rule on your motion when I -- in due time.

13          So I'll take that as an answer of no.

14          All right.  Mr. Schneiderman's representative --

15   excuse me.  General Schneiderman's representative, who is going

16   to be -- tell me who's speaking for him.

17          Mr. Arz?

18          MR. BROWN:  So, Your Honor, again, Chief Deputy Jason

19   Brown speaking.

20          THE COURT:  Oh, I'm sorry.  Okay.

21          MR. BROWN:  I'm going to take Your Honor's cue, the

22   answer is no.  I'm happy to expand at greater length.

23          The only thing I would note at this point is we were

24   served as nonparty.  We got nonparty discovery requests, you

25   know, basically hours or a day or so before we became a party,

```
 1    so that's also an issue that needs to be fleshed out.

 2          But -- but for the reasons that Mr. Johnston said and

 3    others that are unique to me, you are the -- we'll need to

 4    exercise our right to make appropriate objections to that

 5    discovery request.

 6          THE COURT:  Are you a party now?

 7          MR. BROWN:  Now?  Yes.  I think we were served

 8    earlier.  We're new to the dance, as the Court knows.  Today is

 9    Wednesday.  I think we became a party either on Monday or

10    yesterday.  So this is all very new to us.

11          MS. CORTELL:  Your Honor, it's Nina.  It may be new

12    to New York, but the order amending was November 10th, and then

13    they immediately went into court in New York and sought to

14    pursue a subpoena there which they had now set for hearing on

15    this coming Monday.  And that's really what prompted our

16    letter, because in their papers they're saying that New York is

17    the appropriate place to litigate this, whereas we're already

18    set here on discovery that was then pending.

19          And so what we're hoping to do is set up a protocol

20    here to handle our discovery which was issued properly pursuant

21    to this Court 's October 13 order permitting discovery.

22          We acted promptly, which I think the Court would have

23    expected us to do.  The discovery is returnable as early as

24    some of it tomorrow and early next week.

25          We had asked them for confirmation if they were going
```

1  to comply.  We had not heard back.  And in the meantime they go

2  into court in New York and assert jurisdiction there, and

3  that's what prompted the letter.

4          So what we're here for today is to ask for a

5  protocol, if you will, for how to handle discovery, discovery

6  disputes, so that we, you know, get the discovery we're

7  entitled to under this Court's order.

8          THE COURT:  Y'all want to respond?

9          MR. BROWN:  Yes, Your Honor.  Jason Brown again.  I

10  mean, Ms. Cortel has slightly butchered the procedural history

11  here.  We had, as I think the Court knows, a prior case pending

12  in New York where actually Justice Ostrager had issued an

13  opinion rejecting one of their arguments, as Mr. Wells knows.

14  He appeared in court on that.

15          So this is not some new litigation intended to do an

16  end-run around anybody.  It was simply pursuing the motion to

17  compel that we had previously begun litigation on for a

18  subpoena that long predated any issues that Exxon raises in the

19  Texon case -- in Exxon case that has been pending now for over

20  a year on the subpoena.

21          So what we did is when we got the -- when we were

22  added as a party, we -- we wrote to Paul, Weiss and asked

23  whether they would withdraw those subpoenas since we were now a

24  party.

25          On Saturday we received the response no, and then the

```
 1   next thing we knew we were being scheduled for a status
 2   conference here.
 3          So I'm still a little unclear as to what is being
 4   requested, but obviously we haven't missed any deadlines yet.
 5   We are planning to participate in a way that makes the Court
 6   aware of our -- our issues.
 7          Right now, because they are styled as Rule 45
 8   nonparty discovery requests, the only court that would have
 9   jurisdiction over that dispute, because the depositions have
10   been noticed here in Manhattan, would be the Southern District
11   of New York.
12          So right now, without withdrawing their prior
13   subpoenas to us, we have no choice but to go to the Southern
14   District of New York.  Again, these are issues that perhaps,
15   know, we would have been better off discussing with Paul, Weiss
16   directly, but they requested a status conference, so here we
17   are.
18          MR. ANDERSON:  Judge, this is Justin Anderson.  May I
19   respond to a few of those points?
20          THE COURT:  Yes.
21          MR. ANDERSON:  Well, first, I would just like to say
22   Ms. Cortell did not butcher any -- any history, procedural or
23   otherwise.  The matter that was pending before the New York
24   Supreme Court had to do with a subpoena that the New York
25   Attorney General issued to PricewaterhouseCoopers.  That was
```

1    the subject matter of that litigation, and that is the only

2    litigation that was pending before they rushed into court on

3    Monday morning to raise the subpoena that was at issue before

4    this Court.

5         So in terms of the procedural history, it is not

6    correct to suggest that this matter was before the Court in New

7    York.  It was a separate subpoena issued to ExxonMobil's

8    auditors.

9         Second, the request on Friday to adjourn the subpoena

10   that had been issued to ExxonMobil to the New York Attorney

11   General, that request had nothing to do with the addition of

12   the New York Attorney General as a party to this action.

13        You know, the basis in the letter was that there is a

14   motion for reconsideration and a motion to dismiss pending, and

15   the New York Attorney General requested that we adjourn the

16   return date pending this Court's resolution of those motions.

17        We responded in the letter promptly that that would

18   make no sense because you ordered discovery to determine

19   whether there is jurisdiction.  So putting off discovery until

20   jurisdiction has been resolved was nonsensical.

21        Aside from -- aside from that letter, we had heard

22   nothing from either the Massachusetts Attorney General or the

23   New York Attorney General in response to the discovery request

24   that we made.

25        And we made our first set of discovery requests at

1     the end of October.

2             On October 24th we served Massachusetts.

3             We then served New York on the 3rd of November.

4             So this idea that we came rushing to you without

5     giving them any time to respond, that is truly a butchering of

6     the record.

7             And, finally, Judge, you know, with respect to the

8     subpoenas, if -- if -- it is correct that right now all that is

9     pending is the third-party subpoenas, and they naturally would

10    be -- if there is a motion to quash or a motion to compel, it

11    naturally would -- would begin in the Southern District of New

12    York.  But there is a procedure for transferring jurisdiction

13    of -- of any motion to quash in connection with those subpoenas

14    to this Court.

15            And in light of the fact that those subpoenas now

16    pertain to parties to the litigation before this Court, they

17    would be -- it would be quite likely that if a motion to

18    transfer is made that those objections find their way to you.

19            THE COURT:  Well, here's -- let me -- let me begin by

20    saying, Mr. Brown, you scored some points by being -- with the

21    Court by being frank and to the point.  So I'm making you an

22    honorary, as you said, Texon.  I don't know what that is.  But

23    I'm going to make you -- I look forward to having you here

24    sometimes and I will tease you about that.  That's a good name

25    for some future company, I guess.

1            But, anyway, here's what I would like to do,

2    especially since I'm in this trial that may take the rest of my

3    adult days to finish, and then I have another one starting in

4    January with Facebook and a local company here, another big

5    case.

6            So what I would like to do is convert Judge Stanton

7    to a special master to deal with y'all on this so you can be

8    talking to somebody regularly.  He's my special master on this

9    case.  I have complete confidence in him.  Obviously, I need

10   y'all's permission to do that.  And you're going to -- you're

11   going to have to pay for that among yourselves.

12           But then we can get something, and you'll have

13   somebody to have my ear when my other part of me is sitting out

14   there and we can get this moving and can consider all of

15   your -- you know, your various concerns.

16           I get it.  And it's -- you know, we're getting pretty

17   close to the point of loggerheads.  And okay, that's fine.  And

18   try to figure that answer out.

19           Is that okay with the parties at this point?

20           I will make sure that he does not overcharge or

21   undercharge you, if that's okay.  I think he charges about

22   $725.00 an hour.  And, you know, that's what Johnson &

23   Johnson -- I think that's what they're paying him in here.

24           But, anyway, so that's what I would like to be able

25   to do so we can get something going on it and try to get

```
1    something besides us talking on the phone and get some

2    resolution for y'all as quickly as possible.

3              So what about New York, Mr. Brown?

4              MR. BROWN:  Thank you, Your Honor.  And -- and I

5    think we all very much appreciate the spirit of that

6    suggestion.

7              My only concern -- and I -- you know, I know lawyers

8    always come up with concerns.  But we -- we obviously do have a

9    personal jurisdiction defense that we wanted to be careful not

10   to waive.

11             THE COURT:  I'm not trying to get you to waive -- I

12   don't want you to waive anything.  I'm not -- you know, yes,

13   you don't know me, but I'm not -- I'm not trying to sneak up on

14   you or anybody else.  That's not my style.  We're going to

15   fight this thing out, y'all are, one way or the other, and it's

16   not going to be based upon, you know, that sort of thing, okay?

17             I'm not -- I'm not trying to get you to do that,

18   okay?

19             This is on the record.  This is on the record.  I

20   don't know how much clearer I can be than that, okay?

21             MR. BROWN:  Okay.  Thank you, Your Honor.

22             THE COURT:  Is that okay?

23             So it's okay with you?

24             MR. BROWN:  Yeah, I mean, we haven't -- unfortunately

25   we have taxpayer money that we have to account for, but
```

```
 1    conceptually I think that's fine.
 2              THE COURT:  Okay.
 3              MR. BROWN:  I just have to work out the mechanics of
 4    how that would -- how we would be able to find funding for our
 5    payment.  That's all.
 6              THE COURT:  Yeah, but don't you do that now in
 7    various cases?
 8              MR. BROWN:  No.  Actually, no.
 9              THE COURT:  You don't?
10              MR. BROWN:  I'm not looking to throw -- Your Honor,
11    I'm not looking to throw a roadblock, so let's do this issue
12    and then let the Court know.
13              THE COURT:  Well, who's -- who's paying for Marketos?
14              MR. BROWN:  Marketos, Your Honor.
15              THE COURT:  Yeah, but, I mean, he's -- you're paying
16    for him, right?
17              MR. BROWN:  Yeah.  No.  And -- we have to get to
18    several levels of authorization to do it.  So, again, Your
19    Honor, I don't mean to put a --
20              THE COURT:  And Tillotson doesn't work for free.
21    Tillotson doesn't work for free at all, because I've had him in
22    here.  He's the most expensive lawyer in Dallas.
23              MR. TILLOTSON:  I'm going to take that as a
24    compliment.
25              THE COURT:  It is a compliment.
```

```
 1              MR. TILLOTSON:  Have to go through a big process and
 2    approval process that we went through, so I think there's
 3    just -- they want to make sure they can -- they can fund this
 4    in a way --
 5              THE COURT:  Yeah.  Okay.  Mr. Tillotson, will you
 6    just -- just commit to me -- yeah, Mr. Tillotson, will you just
 7    commit to me you will do your best to get this done?
 8              MR. TILLOTSON:  Of course, Your Honor.  Absolutely.
 9              THE COURT:  Yeah.  Okay.  And you know -- you know
10    Judge Stanton well, correct?
11              MR. TILLOTSON:  I do, Your Honor.  I just want to
12    make sure -- he needs to clear conflicts, because obviously I
13    have had relationships with him and against him in the past, so
14    he will need to inform everyone obviously of any conflicts he
15    may have with the parties.
16              THE COURT:  Okay.
17              MR. TILLOTSON:  I have no problem with him being
18    special master.
19              THE COURT:  Yeah.  Yeah.  Okay.  Well, yeah.
20    Obviously, everybody has got to do that.
21              All right.  All right.  And then I haven't meant to
22    ignore you, Mr. Johnston.
23              MR. JOHNSTON:  I will be short, Your Honor.  I echo
24    Mr. Brown's comments.  Because it is taxpayer money I don't
25    have the authority to commit to that, so I will have to have
```

```
 1  discussions internally here.
 2          THE COURT:  Well, you did hire Mr. Cawley, correct?
 3  Is that correct?
 4          MR. JOHNSTON:  That's correct.
 5          THE COURT:  And McKool Smith is known on what I see
 6  locally as the most expensive law firm and the most
 7  successful -- one of the successful firms, I'm sure that you
 8  would agree, wouldn't you, Mr. Cawley?
 9          MR. CAWLEY:  Well, I'd agree -- I'd love to agree
10  with the second half, Your Honor.  On the first one I'd say
11  maybe we're not the most expensive after getting through
12  negotiating with the State of Massachusetts.
13          THE COURT:  Oh, I'm sorry.  But you are a very
14  successful firm and do extremely well, partner by partner,
15  correct?
16          MR. CAWLEY:  Yes, Your Honor.
17          THE COURT:  I know.
18          Okay.  So y'all work on getting that done.  Assuming
19  that you can work through whatever layers there are -- there
20  are, you'll work on that?
21          Yes?
22          MR. CAWLEY:  Absolutely.
23          THE COURT:  Who said that?
24          UNIDENTIFIED SPEAKER:  Absolutely, Your Honor.
25          THE COURT:  Who said that, for the record?
```

1          MR. CAWLEY:  This is Doug Cawley.  I'm one person who

2   said we'll work on it.

3          THE COURT:  And also, Mr. Johnston, do you, too?

4          MR. JOHNSTON:  I do.  I do, too.

5          THE COURT:  Hey, is the T silent or not in your --

6   Johnston?

7          MR. JOHNSTON:  Not the way I pronounce it, Your

8   Honor.

9          THE COURT:  Okay.  I'm working on trying to get you

10  to be a -- what did we make -- what did I make Mr. Brown?  A

11  Texon.

12         MR. BROWN:  Not a very strong --

13         THE COURT:  Texon.  A Texon.  You're next.  We're

14  going to --

15         MR. BROWN:  A Texon.

16         THE COURT:  Okay.

17         MR. JOHNSTON:  Last time you told me I was your

18  thirteenth favorite Yankee.

19         THE COURT:  That's correct.  Okay.  Well --

20         MS. CORTELL:  And, Your Honor, for the record,

21  ExxonMobil of course is agreeable, and we'll work with the

22  parties to that end.

23         THE COURT:  Oh, you were next.

24         Okay.  So y'all work on that.  And get that done in

25  the next day or two so we can get that resolved before

```
 1    Thanksgiving, and we can kind of get things moving, okay?

 2              And then try to set up --

 3              MR. BROWN:  Your Honor?

 4              THE COURT:  Yes, sir.

 5              MR. BROWN:  Your Honor, this is Mr. Brown here.

 6    Implicit in what you're saying, I hope, is because I think our

 7    objections -- our court filing might be due as early as

 8    tomorrow -- is that the current discovery requests are stayed

 9    pending our discussions to work with the special master?

10              THE COURT:  Well, you agree on the special master and

11    then we'll see, okay?

12              So -- all right.  That does kind of put the pressure

13    on y'all to get on it, so let me know.

14              You know what?  I have always found that what we want

15    to do or can -- we can get things done through the process of

16    whatever.  I realize there's a lot of lawyers in the attorney

17    generals' offices, but there's one at the top and can make

18    these decisions, and so y'all get that done, okay?

19              Anything else y'all want to talk to me about?

20              MS. CORTELL:  I'm assuming that there's no implied

21    stay as a result of this conference.

22              THE COURT:  I'm not staying anything.  I'm not

23    staying anything.  No.  If you want to stay, file something and

24    ask me for it, okay?

25              MS. CORTELL:  Okay.
```

```
 1              THE COURT:  All right.

 2              MS. CORTELL:  Thank you, Your Honor.

 3              THE COURT:  All right.  Y'all --

 4              MR. BROWN:  Thank you, Your Honor.

 5              THE COURT:  Thank y'all.  And we'll look forward to

 6   seeing y'all again soon, and have a wonderful Thanksgiving.

 7              MS. CORTELL:  You, too, Your Honor.  Thank you.

 8              MR. BROWN:  Thank you, Your Honor.

 9              THE COURT:  Thank y'all.  Bye-bye.

10              (Hearing adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                              INDEX

2   Telephone conference...................................... 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I, TODD ANDERSON, United States Court Reporter for the

2   United States District Court in and for the Northern District

3   of Texas, Dallas Division, hereby certify that the above and

4   foregoing contains a true and correct transcription of the

5   proceedings in the above entitled and numbered cause.

6        WITNESS MY HAND on this 17th day of November, 2016.

7

8

9
                              /s/Todd Anderson
10                            TODD ANDERSON, RMR, CRR
                              United States Court Reporter
11                            1100 Commerce St., Rm. 1625
                              Dallas, Texas  75242
12                            (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25