IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-469-K |
| | ) | |
| ERIC TRADD SCHNEIDERMAN, | ) | |
| Attorney General of New York, in his official | ) | |
| capacity, and MAURA TRACY HEALEY, | ) | |
| Attorney General of Massachusetts, in her | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## ATTORNEY GENERAL MAURA HEALEY'S MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.       Introduction ................................................................................................................ 1

II.      Statement of Prior Proceedings ................................................................................. 2

III.     Argument ................................................................................................................... 5

         A.       This Court Lacks Personal Jurisdiction over Attorney General Healey. ................5

                  1.       Texas's Long-Arm Statute Does Not Apply to Attorney General
                           Healey. ....................................................................................................5

                  2.       Exercise of Personal Jurisdiction Over the Attorney General in
                           Texas Would Violate Due Process. ...........................................................7

                  3.       The Court Should Consider Personal Jurisdiction Before Any
                           Other Ground for Dismissal. ...................................................................14

         B.       This Case Should Be Dismissed as Unripe. ...........................................................16

         C.       The Northern District of Texas Remains an Improper Venue. .............................18

         D.       Exxon's State Law Claims Are Barred by the Eleventh Amendment. .................19

         E.       The Court Should Abstain from Hearing This Case Due to Ongoing State
                  Proceedings in Massachusetts. ..............................................................................20

         F.       Exxon's Complaint Does Not State Plausible Grounds for Relief, in
                  Violation of the Minimum Pleading Standards of the Federal Rules. ..................22

IV.      Conclusion ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000)................................... 4, 15

*Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102 (1987)................................. 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................. 8, 23, 24

*Atl. Richfield Co. v. FTC*, 546 F.2d 646 (5th Cir. 1977) ............................................ 18

*Att'y Gen. v. Bodimetric Profiles*, 533 N.E.2d 1364 (Mass. 1989) ...................................... 16, 24

*Att'y Gen. v. Colleton*, 444 N.E.2d 915 (Mass. 1982) ................................................... 22

*B & G Prod. Co. v. Vacco*, No. CIV.98-2436 ADM/RLE, 1999 WL 33592887 (D. Minn. Feb. 19, 1999) ....................................................................................... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 23

*Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046 (S.D. Tex. 2000)............................. 19

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..................................................... 7

*Burns-Toole v. Byrne*, 11 F.3d 1270 (5th Cir. 1994) .................................................... 25

*Bustos v. Lennon*, 538 F. App'x 565 (5th Cir. 2013)..................................................... 11

*Calder v. Jones*, 465 U.S. 783 (1984)................................................................... 11

*Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976) ................................ 22

*Cutting Edge Enters., Inc. v. Nat'l Ass'n of Att'ys Gen.*, 481 F. Supp. 2d 241 (S.D.N.Y. 2007) ............................................................................................... 14

*Ex parte Young*, 209 U.S. 123 (1908) .................................................................. 6, 19

*Finance and Trading, Ltd. v. Rhodia, S.A.*, No. 04 Civ. 6083 (MBM), 2004 WL 2754862 (S.D.N.Y. Nov. 30, 2004)................................................................................ 25

*Firefighters' Ret. Sys. v. Regions Bank*, 598 F. Supp. 2d 785 (M.D. La. 2008).......................... 25

*Forty One News, Inc. v. Cty. of Lake,* 491 F.3d 662 (7th Cir. 2007)..................................... 22

*Gibson v. Berryhill*, 411 U.S. 564 (1973) .............................................................. 21

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016)......................................... 1, 3, 17, 24

*Hanson v. Denckla*, 357 U.S. 235 (1958) ................................................................. 9

*Harmon Law Offices, P.C. v. Att'y Gen.*, 991 N.E.2d 1098 (Mass. App. Ct. 2013)..................... 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .................................... 7

*Hernandez v. Tex. Dep't of Human Servs.*, 91 Fed. App'x 934 (5th Cir. 2004) (per curiam)....................................................................................................................................... 20

*Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986)................................................. 7, 8

*In re Ramirez*, 905 F.2d 97 (5th Cir. 1990) ................................................................................ 17

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ............................ 17

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945).............................................................................. 7

*J. & W. Seligman & Co. Inc. v. Spitzer*, No. No. 05-Civ.-7781 (KMW), 2007 WL 2822208 (S.D.N.Y. Sept. 27, 2007).......................................................................................... 21

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008)....................................... 5

*Juidice v. Vail,* 430 U.S. 327 (1977)...................................................................................... 21, 22

*Kitchens v. Tex. Dep't of Human Res.*, 747 F.2d 985 (5th Cir. 1984) ......................................... 20

*Kulko v. Super. Ct.*, 436 U.S. 84 (1978) ...................................................................................... 9

*Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)................................................................ 19

*Lupin Pharm., Inc. v. Richards*, Civ. No. RDB-15-1281, 2015 WL 4068818 (D. Md. July 2, 2015) (memorandum decision) .......................................................................................... 21

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ................. 20, 22

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007)..................................... 10

*Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844 (5th Cir. 2009)............................................. 22

*Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650 (5th Cir. 2002) ............................................................................................................................................. 22

*Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002)............................. 7, 13

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) .............. 10

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)..................................... 1, 19, 20

*PTI, Inc. v. Philip Morris Inc*., 100 F. Supp. 2d 1179 (C.D. Cal. 2000) ..................................... 14

*R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941) .................................................................... 22

*Rodriguez v. Ritchey*, 539 F.2d 394 (5th Cir. 1976), *on reh'g,* 556 F.2d 1185 (5th Cir.

1977) .................................................................................................................. 19

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ......................... 4, 15, 16, 17

*Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010)
(Kinkeade, J.) ........................................................................................................ 12

*SEC v. McGoff*, 647 F.2d 185 (D.C. Cir. 1981) ................................................... 24

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) ......... 19

*Smith v. Hightower*, 693 F.2d 359 (5th Cir. 1982) .............................................. 15

*Sprint Commc'ns v. Jacobs, Inc.*, 134 S.Ct. 584 (2013) ....................................... 21

*Stroman Realty, Inc. v. Antt (Stroman II)*, 528 F.3d 382 (5th Cir. 2008) ................. 9, 10

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008)... 5, 6, 7, 9, 10, 11, 12, 13, 14, 16

*Temple of the Lost Sheep, Inc. v. Abrams*, 761 F. Supp. 237 (E.D.N.Y. 1989) ............ 21

*Travis v. City of Glenn Heights, Tex.,* No. 3:13-CV-01080-K, 2013 WL 5508662 (N.D.
Tex. Oct. 3, 2013) (Kinkeade, J.) ......................................................................... 25

*Turner v. Abbott*, 53 F. Supp. 3d 61 (D.D.C. 2014) ........................................... 14

*U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., L.L.C.*, No. 3:11-CV-02843-M, 2012 WL
12827489 (N.D. Tex. Apr. 16, 2012) .................................................................. 18

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ................................................. 8, 9, 10, 11, 12

*Wheeldin v. Wheeler*, 373 U.S. 647 (1963) ...................................................... 19

*Wightman v. Tex. Sup. Ct.*, 84 F.3d 188 (5th Cir 1996) ....................................... 15

*Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Fac. Comm'n*, 685 F.2d 974
(5th Cir. 1982) .................................................................................................... 20

*Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995) .................................................. 19

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................ 8

*Younger v. Harris*, 401 U.S. 37 (1971) .............................................. 2, 3, 4, 15, 20, 21, 22

**Statutes**

15 U.S.C. § 77r ...................................................................................................... 25

28 U.S.C. § 1391 ............................................................................................. 1, 18, 19

42 U.S.C. § 1983 .......................................................................................... 12, 18, 21

42 U.S.C. § 1985 ................................................................................................................. 25

Mass. Gen. Laws ch. 12, § 3 ................................................................................................. 2

Mass. Gen. Laws ch. 93A, § 1 *et seq.* .................................................. 2, 3, 8, 13, 16, 17

Mass. Gen. Laws ch. 93A, § 2 ............................................................................................. 3

Mass. Gen. Laws ch. 93A, § 4 ............................................................................................. 3

Mass. Gen. Laws ch. 93A, § 6 .................................................... 3, 9, 13, 15, 17, 21, 22

Mass. Gen. Laws, ch. 93A, § 7 .................................................................................. 9, 13, 21

Tex. Civ. Prac. & Rem. Code Ann. § 17.041 .................................................................... 6

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 ................................................................. 5, 6

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 23, 25

**Treatises**

6 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1476 (3d ed. 2016) ..................... 5

**Constitutional Provisions**

U.S. Const., Amend. 11 ........................................................................................... 1, 19, 20

## I.    INTRODUCTION

Exxon Mobil Corporation's ("Exxon") First Amended Complaint (Doc. No. 100; hereinafter, "Complaint" or "Compl."), like its original complaint, is subject to immediate dismissal because, first and foremost, this Court lacks personal jurisdiction over Attorney General Healey. As the Fifth Circuit has observed, a foreign state official sued in her official capacity is not subject to suit as a "non-resident" "doing business" in Texas under the state's long-arm statute. And were that not the case, an assertion of jurisdiction would violate due process because Attorney General Healey has had no contacts with the State of Texas in connection with the Civil Investigative Demand ("CID") she served on Exxon in Massachusetts. For these reasons alone, the Court should dismiss the case now, before any further inquiry into other grounds for dismissal and the resulting affront to Massachusetts's state sovereignty that continued proceedings would entail.

There are additional grounds for immediate dismissal of this action, none of which requires any factual inquiry. First, the case is unripe under *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016). There, the Fifth Circuit rejected Google's request to enjoin enforcement of an administrative subpoena served by the Mississippi Attorney General because Google had an adequate remedy at law in the Mississippi courts; here, Exxon has a remedy in Massachusetts state court. Second, dismissal is mandated because venue remains improper in this district under 28 U.S.C. § 1391(b). And third, Exxon's state-law claims under Texas Constitution and common law are plainly barred by the Eleventh Amendment under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), and should be dismissed for lack of subject matter jurisdiction.

Fourth, Exxon's petition to set aside Attorney General Healey's CID will be heard on the merits on December 7, 2016, in Massachusetts state court. Those state proceedings provide the

statutorily prescribed forum for Exxon to raise its objections to the CID under Massachusetts law, and to the extent the case is not immediately dismissed for lack of personal jurisdiction or the other dispositive grounds identified above, dismissal is warranted under *Younger v. Harris*, 401 U.S. 37 (1971).

Finally, Exxon's Complaint and voluminous attachments contain no facts that plausibly support its fanciful conspiracy theories about Attorney General Healey's motives. Instead, they confirm that Attorney General Healey's CID was issued based on her belief, well-supported by evidence in publicly-released internal Exxon documents and apparently inconsistent public statements by Exxon, that Exxon, in violation of the Massachusetts consumer protection statute, has misled Massachusetts consumers and investors about the contribution of its products to climate change and the risks posed by climate change to its business and assets. Indeed, other investigators are scrutinizing Exxon's disclosures on the same and related issues, including the United States Securities and Exchange Commission, the FBI, and the New York Attorney General, with whose year-old investigative subpoena Exxon was complying until the company added him as a defendant to this lawsuit in its First Amended Complaint.

## II.    STATEMENT OF PRIOR PROCEEDINGS

Attorney General Healey is the chief law enforcement official of the Commonwealth of Massachusetts. Mass. Gen. Laws ch. 12, § 3. Attorney General Healey also has various enumerated statutory powers, including enforcement of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"), which proscribes unfair and deceptive practices in the conduct of trade or commerce. Pursuant to Chapter 93A, the Attorney General is authorized to protect investors, consumers, and other persons in the state against unfair and deceptive business practices by promulgating regulations, conducting investigations through

CIDs, and instituting litigation. *See* Mass. Gen. Laws ch. 93A, §§ 2(c), 4, and 6. CIDs under Chapter 93A are a crucial tool for gaining information regarding whether an entity under investigation has violated the statute, and they are employed routinely by the Attorney General's Office.

On April 19, 2016, the Attorney General issued a CID to Exxon pursuant to Chapter 93A, § 6. The CID was served on Exxon's registered agent in Massachusetts, and Exxon confirmed that service was proper. *See* Compl. ¶ 69. Attorney General Healey issued the CID as part of her investigation of whether Exxon violated Chapter 93A, § 2, and the regulations promulgated thereunder, by failing to disclose fully to investors and consumers its knowledge of the serious potential for climate change, the likely contribution of fossil fuels (the company's chief product) to climate change, and the risks of climate change, including to Exxon's own assets and businesses.

On June 15, 2016, Exxon filed this action against Attorney General Healey, in her official capacity, alleging that the Attorney General's investigation violates its constitutional rights and is an abuse of process (Doc. No. 1). Also on June 15, Exxon filed a motion for a preliminary injunction to enjoin Attorney General Healey from enforcing the CID (Doc. No. 8). The following day, June 16, 2016, Exxon filed a petition in Massachusetts state court under Chapter 93A, § 6(7), to set aside or modify the CID along with an emergency motion seeking the same relief and to stay the Massachusetts proceeding pending the outcome of this litigation.

Attorney General Healey moved to dismiss this Texas action on August 8, 2016 (Doc. No. 41), pursuant to an agreed schedule approved by the Court. Attorney General Healey urged dismissal on the grounds that the Court lacked personal jurisdiction over her, the Court should abstain under *Younger*, the case was unripe under *Google*, and venue was improper in this

district. The Court did not schedule a hearing on the Attorney General's motion to dismiss.

The Court did, however, hear argument on Exxon's motion for a preliminary injunction on September 19, 2016. At the hearing, counsel for Attorney General Healey outlined the arguments set forth in her fully briefed motion to dismiss, as these demonstrate that Exxon cannot demonstrate a likelihood of success on the merits in order to obtain injunctive relief. In addition, counsel explained that Exxon faced no irreparable harm, since it had already produced hundreds of thousands of pages of documents to the New York Attorney General in response to a similar subpoena issued by him in November 2015. *See* Hearing Transcript. (Doc. No. 68) 88:1-13. Upon learning of Exxon's compliance with the New York subpoena, the Court directed the parties to attempt to resolve Exxon refusal to produce any documents to Massachusetts and subsequently ordered the parties to participate in mediation. The parties were unable to reach a resolution. On October 13, 2016, the Court entered an order (Doc. No. 73) authorizing discovery to ascertain whether the bad faith exception to *Younger* abstention applies in this case.[1]

On October 17, 2016, Exxon moved for leave to amend its original complaint in this action to add the New York Attorney General as a defendant, enjoin the New York investigation, and add certain claims against Attorney General Healey (Doc. No. 74). Attorney General Healey opposed that motion because, *inter alia*, that amendment would be futile, since the Court would

---

[1] On October 20, 2016, Attorney General Healey filed a motion (Doc. No. 78) seeking reconsideration of the discovery order, arguing that, under *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) and *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000), the Court should grant her pending motion to dismiss on personal jurisdiction grounds before reaching *Younger* abstention, and without further factual inquiry. The Court has not taken action on the motion for reconsideration. On October 24, without any offer to meet and confer on parameters for discovery, Exxon served the Attorney General with over one hundred discovery requests and, on November 3, served deposition notices for Attorney General Healey, as well as the New York Attorney General and two senior attorneys in his office. On November 9, Exxon served subpoenas for documents on 11 non-party individuals and organizations. On November 17, the Court issued an order (Doc. No. 117) requiring Attorney General Healey to respond to Exxon's discovery by ten days from service (November 3, a date that had already passed), and to appear at a deposition in Dallas on December 13, despite the fact that Exxon had noticed the deposition of Attorney General Healey to occur in Boston, Massachusetts. On November 25, Attorney General Healey filed a motion to vacate and reconsider the November 17 order and for a stay of discovery and a protective order barring Attorney General Healey's deposition (as corrected, Doc. No. 120).

still lack personal jurisdiction over her. On November 10, 2016, the Court granted Exxon's

motion to amend its original complaint and file its First Amended Complaint.[2]

## III.    ARGUMENT

### A.    THIS COURT LACKS PERSONAL JURISDICTION OVER ATTORNEY GENERAL HEALEY.

To proceed in this Court, Exxon must establish that "both the forum state's long-arm

statute and federal due process permit the court to exercise personal jurisdiction." *Johnston v.*

*Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Exxon can establish neither here.

The posture of this case is nearly identical to the controlling Fifth Circuit case of *Stroman Realty,*

*Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) (*Stroman*), which found personal jurisdiction

lacking in a suit filed by a Texas company in Texas against an Arizona state official challenging

her enforcement of Arizona law against the plaintiff. *Stroman* compels the Court to dismiss this

case on personal jurisdiction grounds without further proceedings regarding the Attorney

General's other grounds for dismissal. *See infra* Part III.A.3.

### 1.    Texas's Long-Arm Statute Does Not Apply to Attorney General Healey.

The Texas long-arm statute permits assertion of jurisdiction over "a nonresident [who]

does business in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The statute does not

apply to Attorney General Healey because the Attorney General is not a "nonresident" within the

meaning of the statute. The long-arm statute defines "nonresident" as either (1) "an individual

who is not a resident of this state" or (2) "a foreign corporation, joint-stock company,

association, or partnership." Tex. Civ. Prac. & Rem. Code Ann. § 17.041. In addition, the

---

[2] A more complete recitation of the facts surrounding Attorney General Healey's investigation, which is unnecessary for purposes of the Attorney General's motion to dismiss, is provided in the Attorney General's opposition to Exxon's motion for preliminary injunction (Doc. No. 43). The Court may find additional authorities supporting dismissal of this case in Attorney General's prior briefing in support of her original motion to dismiss (Doc. Nos. 42, 65) and of her motion to reconsider the Court's discovery order (Doc. Nos. 79, 91). *See generally* 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476 (3d ed. 2016) (suggesting courts should consider earlier dispositive motions addressed to defects that are repeated in amended pleadings).

Attorney General has not "do[ne] business" in Texas by initiating an investigation under Massachusetts law of whether Exxon has deceived Massachusetts investors and consumers. As such, the Texas long-arm statute is inapplicable. As in *Stroman*, the Attorney General is not sued as an individual but rather "is acting in and was sued in her official capacity for enforcing [her state's] statutes." *Stroman*, 513 F.3d at 482. *See* Compl. ¶ 17 (Attorney General Healey sued "in her official capacity"). Attorney General Healey has acted under express statutory authority to investigate a violation of Massachusetts law. And as in *Stroman*, Exxon seeks to challenge "an out-of-state regulator's enforcement of her state's statute." *Id.* at 482. A state official sued in her official capacity is not an "individual" within the meaning of § 17.041 of the long-arm statute because, under *Ex parte Young*, 209 U.S. 123 (1908), the official's "conduct remains *state action* under the Fourteenth Amendment." *Stroman*, 513 F.3d at 482 (emphasis added). Likewise, the Attorney General does not fit into "the only other class of nonresident defined by the statute"— "a foreign corporation, joint-stock company, association, or partnership"—which "includes business entities but not fellow states." *Id.* at 483. As the Fifth Circuit observed in *Stroman*, the statute does not appear to reach nonresident government officials acting in their official capacity at all. *Id.* at 482-83 ("[T]he Texas statute offers no obvious rationale for including nonresident individuals sued solely in their official capacity under *Ex Parte Young*.").

Additionally, in issuing the CID, the Attorney General did not "do business" in Texas within the meaning of the long-arm statute. The long-arm statute identifies three examples of "doing business": (1) entering into a contract with a Texas resident, to be performed at least in part in Texas; (2) committing a tort in the state; or (3) recruiting Texas residents for employment. Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The Attorney General has engaged in no such acts. Although Exxon has contended otherwise, *Stroman* found that an official-capacity suit like this

6

one does not reasonably constitute a "tort" claim within the long-arm statute. *Stroman*, 513 F.3d at 483 ("[O]nly by twisting the ordinary meaning of the terms covered by the long-arm statute is Arizona's regulatory activity intended to be encompassed and adjudicated in Texas courts.").

2.    Exercise of Personal Jurisdiction Over the Attorney General in Texas Would Violate Due Process.

Even if the Texas long-arm statute purported to reach Attorney General Healey, this Court's exercise of specific personal jurisdiction over her would violate due process.[3] The Attorney General lacks requisite "minimum contacts" with Texas—because she has not "purposely directed [her] activities toward [Texas] or purposely availed [herself] of the privileges of conducting activities there"—and the exercise of personal jurisdiction here would be manifestly unreasonable. *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)); *see also Stroman*, 513 F.3d at 483 ("exercising personal jurisdiction over the [Arizona] Commissioner in the Southern District of Texas would violate due process").[4]

a.    *The Attorney General Lacks the Minimum Contacts with Texas Required for the Court to Exercise Personal Jurisdiction Over Her.*

"In order for an exercise of personal jurisdiction to be consistent with due process, the nonresident defendant must have some minimum contact with the forum which results from an affirmative act on the part of the nonresident." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Where, as here, the plaintiff asserts specific (or case-linked) jurisdiction, "the defendant's suit-related conduct

---

[3] Personal jurisdiction "may be general or specific." *Stroman*, 513 F.3d at 484. It is not disputed that the Attorney General lacks the "continuous and systematic general business contacts" with Texas required by due process for general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

[4] Because Attorney General Healey lacks any suit-related contacts with Texas, as discussed below, the second prong of the *Nuovo Pignone* test, "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts," is not relevant. 310 F.3d at 378.

7

must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 1122. These limits, imposed by due process, "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).

Here, Attorney General Healey not only lacks "affirmative" minimum contacts with Texas, she lacks—and Exxon has not adequately alleged—any suit-related contacts with Texas at all. All of the acts on the part of the Attorney General alleged in Exxon's Complaint occurred in Massachusetts or New York. As set forth above, Attorney General Healey issued the CID under Massachusetts's Chapter 93A from her office in Massachusetts, to Exxon's registered agent in Massachusetts. *See* Compl. ¶ 69. The press conference Exxon describes at length in its Complaint—which forms no basis for legal action, in any event—took place in New York. Compl. ¶¶ 2, 27. These realities belie Exxon's spurious assertion that "all or a substantial part of the events giving rise to the claims occurred in the Northern District of Texas." Compl. ¶ 19. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court should not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

At no point did the Attorney General take *any* "affirmative act" in Texas related to her investigation, let alone "purposefully avail[] [her]self of the privilege of conducting activities" in Texas. *Holt*, 801 F.2d at 777. Likewise, serving the CID on Exxon's registered agent in Massachusetts under Massachusetts law does not "invok[e] the benefits and protections of [Texas's] laws, such that she "should reasonably anticipate being haled into court" in Texas. *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Indeed, Chapter 93A expressly provides

for enforcement or objections to CIDs *only* in Massachusetts Superior Court. Mass. Gen. Laws ch. 93A, §§ 7.

The Attorney General's lack of suit-related Texas contacts is dispositive here. *See Walden*, 134 S. Ct. at 1124-26 (finding lack of personal jurisdiction when defendant had no contacts with forum State, even though plaintiff resided in forum and alleged she experienced injury there). Indeed, in recent cases, the Fifth Circuit found that out-of-state regulators who had taken action against a Texas company for doing business in their states in violation of their state laws lack the required minimum contacts to support personal jurisdiction in Texas. In *Stroman*, discussed above, a Texas-based real estate broker sued the Commissioner of the Arizona Department of Real Estate in a Texas federal court to challenge a cease-and-desist order issued by the Commissioner under Arizona law concerning the broker's activities with Arizona purchasers. Because "the totality of the Commissioner's contacts with Texas involves a cease and desist order [that was served in Texas] and correspondence with [Plaintiff's] attorneys," the Fifth Circuit held that "the Commissioner, a nonresident state official, could not have reasonably anticipated being haled into federal court in Texas to defend her enforcement of the Arizona statute." 513 F.3d at 484.[5] Similarly, in *Stroman Realty, Inc. v. Antt (Stroman II)*, 528 F.3d 382 (5th Cir. 2008), the Fifth Circuit again found a lack of personal jurisdiction in a suit brought by the same plaintiff in Texas against California and Florida officials who not only served a cease and desist order on the plaintiff in Texas (and commenced enforcement proceedings in their respective states) but also communicated with the Texas Real Estate Commission and Texas Attorney General's office about the plaintiff. *Id.* at 386-87. But the court held that these contacts

---

[5] The court also found consequential that, unlike cases where personal jurisdiction is reasonable because the defendant is engaged in a commercial, profit-making enterprise with a connection to the forum state, "the Commissioner was not engaged in commercial transactions to obtain a commercial benefit by acting in a governmental capacity to enforce Arizona law." *Stroman*, 513 F.3d at 485 (citing *Kulko v. Super. Ct.*, 436 U.S. 84, 96-98 (1978)).

did not represent "purposeful availment" by the California and Florida officials "of the privileges of conducting business" in Texas. *Id.* Here, unlike the defendants in *Stroman* and *Stroman II*, Attorney General Healey did not serve the CID in Texas or have any contact with the State of Texas in connection with the investigation, therefore making it even less likely she would anticipate being required to defend her enforcement of Massachusetts law in a Texas federal court. Accordingly, both *Stroman* cases require dismissal of this action.[6]

    b.  *Because the Attorney General's Lack of Contacts with the State of Texas Precludes Jurisdiction, It Is Irrelevant that Exxon Alleges It Experienced Harm in Texas.*

  Exxon's theory of personal jurisdiction—based solely on its allegation of "injury" in Texas—was emphatically rejected in the Supreme Court's unanimous opinion in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). That case reaffirmed that the due process analysis considers only "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 134 S. Ct. at 1122. Accordingly, the Court held that it was not enough for the plaintiff to allege, as Exxon does here, that a defendant's actions elsewhere have harmed the plaintiff in the forum State. *Id.* at 1125-26. And before *Walden*, the Fifth Circuit had reached the same conclusion. *See Stroman*, 513 F.3d at 486 ("We have declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident.") (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) and *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001)); *see also Bustos v. Lennon*, 538 F. App'x 565, 568 (5th Cir. 2013) (effects "jurisdiction is rare").

  Here, there is no such connection between the Attorney General and the State of Texas. The only connection Exxon alleges between the Attorney General and Texas is that the Attorney

---

[6] *See also* cases cited in Memorandum of Law in Support of Attorney General Healey's Motion to Dismiss (Doc. No. 42) at 9 n.8.

General intentionally issued the CID in order to harm Exxon, which is located in Texas. The

Supreme Court specifically rejected finding personal jurisdiction on such a basis in *Walden*:

> Petitioner's actions in Georgia did not create sufficient
> contacts with Nevada simply because he allegedly directed
> his conduct at plaintiffs whom he knew had Nevada
> connections. Such reasoning improperly attributes a
> plaintiff's forum connections to the defendant and makes
> those connections "decisive" in the jurisdictional analysis.
> It also obscures the reality that none of petitioner's
> challenged conduct had anything to do with Nevada itself.

134 S. Ct. at 1125 (citation omitted). Moreover, as *Walden* explains, the "effects" test

that Exxon advances is not supported by *Calder v. Jones*, 465 U.S. 783 (1984): "*Calder* made

clear that mere injury to a forum resident is not a sufficient connection to the forum" and "is

jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the

forum State. The proper question is not where the plaintiff experienced a particular injury or

effect but whether the defendant's conduct connects him to the forum *in a meaningful way*." 134

S. Ct. at 1125 (emphasis added).[7] "[V]iewed through the proper lens— whether the *defendant's*

actions connect him to the *forum*"—it is clear that the Attorney General's issuance of the CID to

Exxon's registered agent in Massachusetts does not connect her to Texas in any meaningful way

and, as such, personal jurisdiction is lacking. *Id.* at 1124. *See also Stroman*, 513 F.3d at 486

("[T]he Commissioner is not 'expressly aim[ing]' her actions at Texas. Rather, her intent is to

uphold and enforce the laws of Arizona.") (internal citations omitted).

This Court has reached the same result in cases involving similar facts. In *Saxton v.*

*Faust*, the plaintiffs sued a Utah judge under 42 U.S.C. § 1983 for allegedly violating their First,

Fifth, and Fourteenth Amendment rights by sanctioning them for violating discovery and

---

[7] "The crux of *Calder*," the Court wrote, was that the defendants wrote an allegedly defamatory article "for publication in California that was read by a large number of California citizens," thereby "connect[ing] the defendants' conduct to *California*, not just to a plaintiff who lived there." 134 S. Ct. at 1123-24

preliminary injunction orders in a case in Utah state court. No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010) (Kinkeade, J.). The defendant Utah judge lacked any contacts with Texas; the only contacts alleged by the plaintiffs "are the effects they have felt in Texas" of the judge's orders. This Court found that it lacked personal jurisdiction over the defendant judge, noting that "[t]he Fifth Circuit recently rejected the idea that a nonresident government official may be haled into a Texas court simply because the effects of a ruling are felt in Texas." *Id.* at *3 (citing *Stroman*, 513 F.3d at 482-85). The result should be the same here.

Importantly, under Exxon's expansive theory, personal jurisdiction over a defendant would obtain so long as the plaintiff claimed some intentional harmful effect in its favored forum, notwithstanding the complete absence of any facts establishing a meaningful connection between the defendant and the forum. Such a rule would eviscerate jurisdictional due process limits that are intended to "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 134 S. Ct. at 1122; *see also Stroman*, 513 F.3d at 486-87 (rejecting "an interpretation of personal jurisdiction under which . . . any state official seeking to enforce her state's laws . . . could potentially be subjected to suit in any state where the validity of her [actions] were in question").

In any case, Exxon has not made—and cannot make—a prima facie showing of intentional harm. As discussed in Part III.F, *infra*, Exxon's conclusory assertions and unsupported allegations are woefully inadequate to this task. To find personal jurisdiction over the Attorney General on that basis, without more, would defeat core constitutionally-guaranteed due process limits on the exercise of jurisdiction.

   c. <u>*Exercise of Personal Jurisdiction Over the Attorney General Would Be Unreasonable in This Case.*</u>

Due process also requires that the Court consider whether exercising personal jurisdiction

over the Attorney General would be "fair and reasonable." *Nuovo Pignone*, 310 F.3d at 378.

Each of the factors relevant to that determination—(1) the burden on the defendant; (2) the

interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial

system's interest in obtaining the most efficient resolution of controversies; and (5) the shared

interest of the states in furthering fundamental, substantive social policies, *Asahi Metal Indus.*

*Co., Ltd. v. Super. Ct.*, 480 U.S. 102, 113 (1987)—weigh heavily against jurisdiction.

*First*, litigating in this Court is imposing and will continue to impose a heavy burden on

Attorney General Healey, who has been compelled by the Local Rules to engage local counsel

and whose offices and personnel are located in Massachusetts, despite the fact that the matter can

be efficiently resolved in Massachusetts state courts, to which Chapter 93A assigns exclusive

jurisdiction over enforceability of CIDs.[8] Exxon already has a suit pending in that forum, and

argument on the CID will be held on December 7, 2016. *Second*, Texas has little stake in this

litigation, beyond the fact that one of its residents, Exxon, is the plaintiff. The forum with the

greatest (indeed, the only significant) interest is Massachusetts because at issue is the legality of

enforcing a CID issued by the Massachusetts Attorney General under a Massachusetts statute,

Chapter 93A. *See Stroman*, 513 F.3d at 487 ("[A]lthough a Texas court certainly has an interest

in determining the legitimacy of Texas statutes, states have little interest in adjudicating disputes

over other states' statutes.") (internal quotation marks and citation omitted). *Third*, Exxon's

interest in obtaining relief would not be harmed if this Court found that it lacked personal

jurisdiction over the Attorney General in light of Exxon's parallel lawsuit in Massachusetts state

court. *Fourth* and relatedly, resolution of this matter in the existing Massachusetts proceeding

furthers the interests of the interstate judicial system in obtaining the most efficient resolution of

---

[8] Mass. Gen. Laws, ch. 93A, §§ 6 (7), 7 (designating Massachusetts Superior Court exclusive forum for objections to CIDs and Attorney General's enforcement of CIDs).

controversies. Parallel litigation in two states would be duplicative, inefficient, and unwarranted. Particularly where Exxon has brought both suits, Exxon cannot fairly claim prejudice if this Court dismisses this case. *Finally*, the fundamental interests of the several states are not served by the Court hearing this suit. As the Fifth Circuit wrote in *Stroman*, "[a]llowing the Southern District of Texas to exercise jurisdiction over [an Arizona official] creates the possibility that [she] will have to defend her attempt to enforce Arizona laws in courts throughout the nation . . . los[ing] the benefit of having the laws examined by local state or federal courts—courts that have special expertise interpreting its laws." 513 F.3d at 487. The same reasoning applies to state attorneys general. *See* Memorandum of Law for Amici Curiae States of Maryland et al. (Doc. No. 54, "Amici States Br.") at 18-20. Indeed, numerous federal courts have held that they lacked jurisdiction over an out-of-state attorney general. *See, e.g.*, *PTI, Inc. v. Philip Morris Inc*., 100 F. Supp. 2d 1179, 1189 & 1189 n.8 (C.D. Cal. 2000) (cited with approval in *Stroman*, 513 F.3d at 487) ("conflict with state sovereignty is perhaps the most compelling factor [demonstrating the unreasonableness of asserting jurisdiction]—requiring the states to submit to California jurisdiction constitutes an extreme impingement on state sovereignty").[9]

> 3.   <u>The Court Should Consider Personal Jurisdiction Before Any Other Ground for Dismissal.</u>

It is firmly established that this Court can and should decide the essential question of personal jurisdiction over the defendant before considering other dispositive grounds for dismissal. In *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999), the Court explained "there is no unyielding jurisdictional hierarchy," and "there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry." *Id.* at 578. The Fifth Circuit has

---

[9] *See also Turner v. Abbott*, 53 F. Supp. 3d 61, 68 (D.D.C. 2014); *Cutting Edge Enters., Inc. v. Nat'l Ass'n of Att'ys Gen.*, 481 F. Supp. 2d 241, 246 (S.D.N.Y. 2007); *B & G Prod. Co. v. Vacco*, No. CIV.98-2436 ADM/RLE, 1999 WL 33592887, at *5 (D. Minn. Feb. 19, 1999).

read *Ruhrgas* "to direct lower courts facing multiple grounds for dismissal to consider the complexity of subject-matter jurisdiction issues raised by the case, *as well as concerns of federalism*, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000) (emphasis added).

In *Ruhrgas*, the Supreme Court found that it was appropriate to resolve first the question of personal jurisdiction where, as here, "the absence of personal jurisdiction is the surer ground[.]" 526 U.S. at 578. In order to assess the Attorney General's alternative ground for dismissal—*Younger* abstention, *see infra* Part III.E—the Court has ordered discovery into the basis for Attorney General Healey's issuance of the CID, specifically whether she was biased or pre-judged the outcome of the investigation.[10] The Attorney General vigorously disputes any suggestion of bad faith, or that an exception to *Younger* abstention applies here. However, under Massachusetts law, the Attorney General may only issue a CID if she believes that the target is violating Chapter 93A. *See* Mass. Gen. Laws ch. 93A, § 6(1); *Harmon Law Offices, P.C. v. Att'y Gen.*, 991 N.E.2d 1098, 1103 (Mass. App. Ct. 2013); Attorney General Healey's Opposition to Exxon's Motion for Preliminary Injunction (Doc. No. 43) at 3, 21-22. In other words, the Attorney General's belief that Exxon has violated Chapter 93A does not, under Massachusetts law, constitute bias; rather, it is a legally required predicate to issuance of a CID. *Att'y Gen. v. Bodimetric Profiles*, 533 N.E.2d 1364, 1367 (Mass. 1989); *Harmon Law Offices*, 991 N.E.2d at 1103. An inquiry into the basis for the Attorney General's CID therefore necessarily implicates a

---

[10] Attorney General Healey vigorously disputes that this exception applies at all because Exxon's conclusory allegations do not meet Exxon's prima facie burden to show bad faith on the part of the Attorney General and the Massachusetts courts. *See Wightman v. Tex. Sup. Ct.*, 84 F.3d 188, 190-91 (5th Cir 1996) (ruling that exception "is narrow and is to be granted parsimoniously" in rejecting exception's application to bar discipline case where plaintiff alleged First Amendment violations because "more than . . . allegation is required" and "extensive and lengthy" state procedures "protect [plaintiff] against bad faith behavior"); *Smith v. Hightower*, 693 F.2d 359, 369 (5th Cir. 1982) (holding that trial court committed reversible error by ignoring strong evidence of plaintiff's wrongdoing, which supports inference that prosecutor is not acting in bad faith under *Younger*).

substantial question of Massachusetts state law. Deciding the case on the issue of personal jurisdiction now pending before this Court will limit the potential for federal intrusion into the Massachusetts state court's authority to determine the lawfulness of a CID issued by the Massachusetts Attorney General pursuant to Massachusetts law. "Where, as here, [the] district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law," and other jurisdictional inquiries raise "difficult" questions, it is proper to decide first the issue of personal jurisdiction. *Ruhrgas,* 526 U.S. at 588.

The *Stroman* decision compels this course here. Although the defendant Arizona commissioner moved for dismissal on multiple grounds, including personal jurisdiction, the district court dismissed the case on *res judicata* and abstention grounds without reaching personal jurisdiction. *Stroman,* 513 F.3d at 481. The Fifth Circuit found that the district court should have first considered personal jurisdiction: "Why the district court failed to consider personal jurisdiction over the Commissioner in a Texas federal court is unclear. This court *must do so.*" *Id.* at 482 (emphasis added).

Because this Court lacks personal jurisdiction over Attorney General Healey, it *cannot* proceed in any fashion in this case, including to order discovery on one of the Attorney General's other arguments for dismissal. "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). *See also Ruhrgas*, 526 U.S. at 577 ("[J]urisdiction is power to declare the law, and *[w]ithout jurisdiction the court cannot proceed at all in any cause*.") (emphasis added; citation and quotation marks omitted). Exxon's suit must be dismissed.

**B.     THIS CASE SHOULD BE DISMISSED AS UNRIPE.**

Exxon's suit also should be dismissed under *Google, Inc. v. Hood*, which found unripe a

federal court challenge to an investigatory subpoena issued by Mississippi Attorney General Hood. 822 F.3d at 224-26. In *Google*, reversing the district court, the Fifth Circuit ordered dismissal of Google's challenges to the subpoena and vacated the district court's injunction against Attorney General Hood. *Id.* at 228. The court held that injunctive relief was not warranted because Google would have an adequate remedy at law defending any action to enforce the subpoena that Attorney General Hood might later file in a Mississippi state court. For that reason, the challenge was not ripe. *Google*, 822 F.3d at 226.

Exxon is in the same position as Google. Exxon is asserting its objections to the CID through the Massachusetts state court process for such challenges. Mass. Gen. Laws. ch. 93A, § 6(7). *Cf. Google*, 822 F.3d at 225-26. While its petition to set aside or modify the CID is pending before the Massachusetts Superior Court, it will face no sanction or consequence for not complying with the CID. Moreover, here Attorney General Healey has taken only the initial steps of issuing a CID to Exxon and asking the Massachusetts Superior Court to enforce the CID in the face of Exxon's blanket challenges—but she neither has determined to undertake a Chapter 93A enforcement action against Exxon nor asserted any specific claim. Exxon may defend itself and raise its objections in Massachusetts state court when and if that ultimately occurs. *Id. See In re Ramirez*, 905 F.2d 97, 98 (5th Cir. 1990) (dismissing action to quash investigatory subpoena for lack of subject matter jurisdiction "because of the availability of an adequate remedy at law if, and when, the agency files an enforcement action"); *Atl. Richfield Co. v. FTC*, 546 F.2d 646, 649 (5th Cir. 1977) (pre-enforcement relief from administrative subpoenas inappropriate in light of opportunity to bring due process and regulatory procedural objections in any subsequent enforcement proceeding). The dispute is, therefore, not ripe, and the Court should dismiss Exxon's suit. *See also* Amici States Br. at 10-16.

### C.    THE NORTHERN DISTRICT OF TEXAS REMAINS AN IMPROPER VENUE.

The Court also should dismiss because the Northern District of Texas is an improper venue for this case. This basis for dismissal also requires no fact development, as Exxon's amended complaint alleges no basis for venue in this district. *See* 28 U.S.C. § 1391 (b) (venue only proper in the judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or if neither (1) nor (2) exists, then any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action).

*First*, the office of the Attorney General is in Massachusetts, not Texas. *Second*, the events or omissions giving rise to Exxon's claim occurred in Massachusetts, where Attorney General Healey issued the CID to Exxon's registered agent—not Texas. That Exxon resides in Texas or may feel some effect of the CID there "does not necessarily mean that the events or omissions occurred there" for the purposes of venue. *U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., L.L.C.*, No. 3:11-CV-02843-M, 2012 WL 12827489, at *2 (N.D. Tex. Apr. 16, 2012) (Lynn, J.); *see also Saxton*, 2010 WL 3446921, at *4 (holding venue in Texas improper where plaintiffs brought § 1983 claim against Utah judge based on sanctions order issued in Utah state court case). Ultimately, "[i]n determining whether or not venue is proper, the Court looks to the *defendant's* conduct, and where that conduct took place. Actions taken by a *plaintiff* do not support venue." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) ("[The] fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district.") (citing *Woodke v. Dahm*, 70 F.3d 983, 985-86 (8th Cir. 1995)). Exxon's corporate home in Texas is, therefore, not relevant to the venue inquiry. *Third*, because the venue indicated

by § 1391 (b)(1) and (2) —*i.e.*, Massachusetts—is available, any possible alternative under § 1391 (b)(3) is not. Venue is improper in Texas, and the Court must dismiss Exxon's suit. *Cf. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) (holding that court may dismiss suit on grounds of *forum non conveniens* without first establishing its own jurisdiction); *Leroy v. Great W. United Corp.*, 443 U.S. 173, 181, 185 (1979) (holding venue improper without deciding other "difficult" jurisdiction issue).

## D.  EXXON'S STATE LAW CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.

Several of the "causes of action" in Exxon's Complaint, in whole or in part, allege violations of the Texas Constitution or "common law." Compl., First Cause (Texas common law conspiracy), ¶ 108; Second Cause (Texas Constitution), ¶ 110; Third Cause (Texas Constitution), ¶ 113; Fourth Cause (Texas Constitution), ¶ 116; Seventh Cause ("abuse of process" under "common law"), ¶¶ 127-28.[11] These claims are barred by the Eleventh Amendment, which prohibits lawsuits in federal court against state officials based on alleged violations of state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (contrary result would "conflict[] directly with the principles of federalism that underlie the Eleventh Amendment"). Thus, the exception to Eleventh Amendment immunity established in *Ex parte Young*, 209 U.S. 123 (1908)—which authorizes suits for prospective injunctive relief against state officials based on ongoing violations of *federal* law—is "inapplicable in a suit against state officials on the basis of *state* law." *Pennhurst*, 465 U.S. at 106 (emphasis added). And the doctrine applies as readily to "state-law claims brought into federal court under pendent jurisdiction" because such jurisdiction cannot authorize "evasion of the immunity guaranteed by the Eleventh Amendment."

---

[11] There is no federal common law "abuse of process" cause of action, leaving Exxon's seventh count to rest only on state law. *Rodriguez v. Ritchey*, 539 F.2d 394, 408 (5th Cir. 1976), *on reh'g*, 556 F.2d 1185 (5th Cir. 1977) (Tjoflat, J., concurring in part and dissenting in part) (citing *Wheeldin v. Wheeler*, 373 U.S. 647 (1963)).

*Id.* at 121.

The *Pennhurst* doctrine is applied widely and uniformly across federal courts, including the Fifth Circuit. *See Hernandez v. Tex. Dep't of Human Servs.*, 91 Fed. App'x 934, 935 (5th Cir. 2004) (per curiam) ("[T]he Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court."); *Kitchens v. Tex. Dep't of Human Res.*, 747 F.2d 985, 986 (5th Cir. 1984) (under *Pennhurst*, "the court below had no power to entertain [pendent state law claim] regardless of the existence or fate of her other causes of action"). Because Exxon's state-law claims ask this Court to pass judgment on the Attorney General's compliance with Texas—not federal—law, all are barred by the Eleventh Amendment and must be dismissed for lack of jurisdiction.

## E.   THE COURT SHOULD ABSTAIN FROM HEARING THIS CASE DUE TO ONGOING STATE PROCEEDINGS IN MASSACHUSETTS.

If the Court finds that it has jurisdiction over the Attorney General, that Exxon's claim is ripe, and that venue is proper—and it should not—it should abstain from hearing the case under *Younger v. Harris*, 401 U.S. 37 (1971). All three *Younger* factors support abstention in this case. *See Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Fac. Comm'n*, 685 F.2d 974, 979 (5th Cir. 1982) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (court must consider whether there is an ongoing state criminal, civil, or administrative proceeding; the state proceedings involve important state interests; and the state court provides an adequate forum to hear the claims raised in the federal complaint). Where the *Younger* requirements are met, the appropriate remedy is dismissal of the federal case. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973).

*First*, there is a pending state judicial proceeding that warrants *Younger* abstention. In

Massachusetts Superior Court, Exxon is challenging the CID,[12] and the Attorney General has moved to compel Exxon's compliance with the CID, both under the exclusive provisions of Chapter 93A. Mass. Gen. Laws ch. 93A, §§ 6(7), 7. The Attorney General's civil enforcement of state law is a type of proceeding "to which *Younger* has been extended." *Sprint Commc'ns v. Jacobs, Inc.*, 134 S. Ct. 584, 592-93 (2013). A federal court should abstain in favor of state judicial proceedings overseeing state-initiated investigations into the federal plaintiff's wrongdoing.[13]

*Second*, the Massachusetts proceeding concerns undeniably important state interests: the protection of Massachusetts consumers and investors from unfair and deceptive trade practices, the integrity of the Attorney General's investigatory tools under state law, and state judicial oversight. *See, e.g., Juidice v. Vail,* 430 U.S. 327, 335 (1977) (state's "vindicat[ion] [of] the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest").[14]

*Third*, as the procedural guarantees of Chapter 93A provide, Exxon has filed a petition in Massachusetts state court to modify or set aside the CID. Mass. Gen. Laws ch. 93A, § 6(7). Therefore, Exxon has a full and fair opportunity to raise its constitutional and other objections and defenses to the CID in state court. *See, e.g., Middlesex Cty. Ethics Comm.*, 457 U.S. at 437 (abstention is appropriate where federal plaintiff has "opportunity to raise" its constitutional

---

[12] Exxon's Texas suit includes federal constitutional claims that it did not, but could have, brought in Massachusetts. Those federal constitutional claims are analogous to the Massachusetts constitutional claims Exxon raised in its Massachusetts suit.

[13] *See also Lupin Pharm., Inc. v. Richards*, Civ. No. RDB-15-1281, 2015 WL 4068818, at *4 (D. Md. July 2, 2015) (memorandum decision) (abstaining under *Younger* in § 1983 challenge to Alaska civil investigative demand in light of state court litigation where Alaska Attorney General was seeking compliance with demand); *Temple of the Lost Sheep, Inc. v. Abrams*, 761 F. Supp. 237, 242 (E.D.N.Y. 1989).

[14] *See also Lupin Pharm.*, 2015 WL 4068818, at *4 (citing *Juidice*); *J. & W. Seligman & Co. Inc. v. Spitzer*, No. 05-Civ.-7781 (KMW), 2007 WL 2822208, at *6 (S.D.N.Y. Sept. 27, 2007) ("[T]he enforcement of subpoenas issued pursuant to state law in furtherance of a fraud investigation [] represent an important and legitimate state interest.").

claims in "competent state tribunal").[15] Exxon has failed to allege that Massachusetts courts cannot adequately safeguard its rights through the statutorily prescribed method of challenging CIDs, and Exxon's preference for a federal forum for its claims is of no significance to the abstention analysis. *See Forty One News, Inc. v. Cty. of Lake,* 491 F.3d 662, 667 (7th Cir. 2007) ("Denial of a preferred federal forum for federal claims is often the result of the application of *Younger* abstention . . . .").[16]

Should the Court reach abstention, all three *Younger* criteria are satisfied and, therefore, this Court should abstain in favor of the proceedings in Massachusetts.[17] And, for the reasons set forth above (at *supra* note 10) and in Attorney General Healey's motion to vacate the Court's November 17 discovery order, the Court should do so without further factual inquiry.

## F.  EXXON'S COMPLAINT DOES NOT STATE PLAUSIBLE GROUNDS FOR RELIEF, IN VIOLATION OF THE MINIMUM PLEADING STANDARDS OF THE FEDERAL RULES.

As well, the Court should dismiss the Complaint because its bald, baseless allegations that the Attorney General has, out of personal animus and in bad faith, undertaken an investigation to chill Exxon's political speech plainly fails to meet the pleading standards of Rule 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Exxon's textbook "conclusory statements" are insufficient to support its claims.

---

[15] *See also Juidice*, 430 U.S. at 337; *cf. Att'y Gen. v. Colleton*, 444 N.E.2d 915, 921 (Mass. 1982) (affirming trial court's denial, on state constitutional grounds, of Attorney General motion to compel compliance with CID).

[16] *See also Saxton at* *3 (abstaining where there was an ongoing civil judicial action in Utah, the Utah state proceeding involved "[t]he state court contempt process[, which] lies at the very core of a state's judicial system," and the plaintiffs "had recourse under Utah law for the wrongs of which they complained").

[17] The other abstention and legal doctrines promoting comity also support abstention here. *See, e.g.*, *Nationstar Mortg. LLC v. Knox*, 351 F. App'x 844, 852 (5th Cir. 2009) (affirming abstention under doctrine of *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976)); *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 653 (5th Cir. 2002) (affirming abstention under doctrine of *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)).

Exxon effectively offers no more than three facts: (1) the CID was issued, (2) the

Attorney General participated in a press conference where she stated that climate change is a

major challenge and that she would investigate Exxon based on reports that Exxon knew more

about climate change than it revealed to investors and consumers, and (3) the Attorney General is

a party to a routine common interest agreement with other state attorneys general covering

climate change-related litigation.[18] Pointing to no other facts applicable to Attorney General

Healey, Exxon asserts in its Complaint that she, "in an *apparent* effort to silence, intimidate, and

deter those possessing a particular viewpoint from participating in [a policy] debate" (¶ 110,

emphasis added):

- "issued . . . the CID based on [her] disagreement with ExxonMobil regarding how the United States should respond to climate change"—an "illegal purpose . . . not substantially related to any compelling governmental interest" (¶ 111);

- thereby engaged in "an abusive fishing expedition . . . without any legitimate basis for believing that ExxonMobil violated . . . Massachusetts law" (¶ 114); and

- undertook these actions because she is "biased against ExxonMobil" (¶ 117) and has "an ulterior motive . . . namely, an intent to prevent ExxonMobil from exercising its right to express views with which [she] disagree[s]" (¶ 128).

Removing the conclusory statements referenced above and their repetition throughout the

Complaint, Exxon offers solely the three facts—the CID, the press conference, and the common

interest agreement—to support its claims that the Attorney General issued the CID as part of an

intentional, malicious effort to violate Exxon's constitutional rights and federal law.[19]

Those facts are insufficient. As is clear from documents Exxon itself attached to its

Complaint, Attorney General Healey has a clear, supported basis for believing investigation of

Exxon is warranted based on her office's review of a significant number of internal Exxon

---

[18] *See, e.g.*, Compl. ¶¶ 18, 107. A transcript of the Attorney General's remarks at the press conference can be found in Exhibit B of the Complaint, App. 020-021, the accuracy of which Attorney General Healey does not concede.

[19] Exxon's allegations are not dissimilar to the allegations against Attorney General Hood in *Google*, which the Fifth Circuit did not even entertain in its decision vacating the injunction against him. 822 F.3d at 228.

documents illustrating Exxon's advanced knowledge of climate change and the likely adverse impacts on Exxon's business of efforts to address climate change. Compl., Ex. A, App. 004-006; Ex. J, App. 111-112; Ex. NN, App. 357-361; Ex. RR, App. 439. Based on this review and her broad authority to issue CIDs unless they are arbitrary and capricious, *Att'y Gen. v. Bodimetric Profiles*, 533 N.E.2d 1364 (Mass. 1989)), she has amply satisfied the statutory requirement that the Attorney General have a "belief" that the target of an investigation has violated or is violating the statute. That belief is further supported by the fact that other jurisdictions are investigating the same conduct, Compl., Ex. QQ, App. 435, including the FBI, as confirmed by the U.S. Attorney General, *id.*, Ex. DD, App. 247-249.[20] As in *Iqbal*, "[a]s between that 'obvious alternative explanation'" for the CID "and the purposeful, invidious discrimination [Exxon] asks us to infer, discrimination is not a plausible conclusion." 556 U.S. at 682. *See also SEC v. McGoff*, 647 F.2d 185, 194 (D.C. Cir. 1981) (upholding subpoena against "diffuse speculations" regarding its political motive).

Exxon's new claims against Attorney General Healey—conspiracy and preemption—fare no better. As for conspiracy, Exxon has not even bothered to cite a specific subsection of 42 U.S.C. § 1985 to support its federal conspiracy claims, nor does Exxon even attempt to track the elements of a cognizable claim under the statute. *Compare* Compl. ¶¶ 106-08 *with, e.g.*, *Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994) ("[I]n order to assert a claim under § 1985(3), a plaintiff must allege some class-based animus."). And Exxon's preemption claim does not even identify a federal statutory provision that could preempt Attorney General Healey's CID, and

---

[20] As was disclosed in press reports, the U.S. Securities and Exchange Commission ("SEC") also is investigating Exxon's accounting practices, including the valuation of its reserves, in light of the future impacts of climate change regulation on its business and other factors. *See* Doc. Nos. 95-4, 95-5. On October 28, 2016, Exxon announced a thirty-eight percent drop in earnings as a result of low energy prices, and "acknowledged that it faced what could be the biggest accounting revision of its reserves in its history." Doc. No. 95-4. The SEC investigation and Exxon's own accounting decisions further confirm that Exxon's narrative of unconstitutional persecution is implausible.

that omission is fatal in light of the general rule that federal law does not preempt action by state authorities to protect investors from deception and fraud. Compl. ¶¶ 122-126; *see also id.* ¶¶ 77-81 (citing federal regulations and policy statement). *See, e.g.*, *Firefighters' Ret. Sys. v. Regions Bank*, 598 F. Supp. 2d 785, 795 (M.D. La. 2008) ("federal securities laws generally do not preempt similar state law causes of action" (quoting *Finance & Trading, Ltd. v. Rhodia, S.A.*, No. 04 Civ. 6083 (MBM), 2004 WL 2754862, at *7 (S.D.N.Y. Nov. 30, 2004)); 15 U.S.C. § 77r(c)(1) (preserving state authority to investigate "fraud or deceit" despite preemption of certain state regulation of securities).

The Complaint is wholly insufficient to satisfy Rule 8(a)(2) and should be dismissed for failure to state a claim. *See Travis v. City of Glenn Heights, Tex.*, No. 3:13-CV-01080-K, 2013 WL 5508662, at *3 (N.D. Tex. Oct. 3, 2013) (Kinkeade, J.) ("this Court will not strain to find inferences favorable to [plaintiff's] claims").

## IV.    CONCLUSION

For the foregoing reasons, the Court should DISMISS Exxon's Complaint as to Attorney General Healey with prejudice.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS

By her attorneys:


_s/ Douglas A. Cawley_

Richard Johnston (*pro hac vice*)          Douglas A. Cawley
Chief Legal Counsel                        Lead Attorney
richard.johnston@state.ma.us               Texas State Bar No. 04035500
Melissa A. Hoffer (*pro hac vice*)         dcawley@mckoolsmith.com
Chief, Energy and Environment Bureau       Richard A. Kamprath
melissa.hoffer@state.ma.us                 Texas State Bar No. 24078767
Christophe G. Courchesne (*pro hac vice*)  rkamprath@mckoolsmith.com
Chief, Environmental Protection Division   MCKOOL SMITH, P.C.
christophe.courchesne@state.ma.us          300 Crescent Court, Suite 1500
I. Andrew Goldberg (*pro hac vice*)        Dallas, Texas 75201
andy.goldberg@state.ma.us                  (214) 978-4000
Peter C. Mulcahy (*pro hac vice*)          Fax (214) 978-4044
peter.mulcahy@state.ma.us
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200


Dated: November 28, 2016

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 28, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Douglas. A. Cawley*
Douglas A. Cawley