IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC TRADD SCHNEIDERMAN, | § | NO. 4:16-CV-469-K |
| Attorney General of New York, in his | § | |
| official capacity, and MAURA TRACY | § | |
| HEALEY, Attorney General of | § | |
| Massachusetts, in her official capacity, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**EXXON MOBIL CORPORATION'S OPPOSITION TO MAURA
TRACY HEALEY'S MOTION TO VACATE THE ORDER FOR HER
DEPOSITION, TO STAY DISCOVERY, AND FOR A PROTECTIVE ORDER**

Patrick J. Conlon (*pro hac vice*)
Daniel E. Bolia
EXXON MOBIL CORPORATION
1301 Fannin Street
Houston, TX 77002
Tel: (832) 624-6336

Theodore V. Wells, Jr. (*pro hac vice*)
Michele Hirshman (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Justin Anderson (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

Nina Cortell
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
Tel: (214) 651-5579
Fax: (214) 200-0411

Ralph H. Duggins
Philip A. Vickers
Alix D. Allison
CANTEY HANGER LLP
600 W. 6th St., Suite 300
Fort Worth, TX 76102
Tel: (817) 877-2800
Fax: (817) 877-2807

*Counsel for Exxon Mobil Corporation*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS ............................................................................2

ARGUMENT...............................................................................................5

I.      The Attorney General's Motion Is Unauthorized and Procedurally Improper. ...........5

II.     The Court Was Within the Bounds of Its Discretion in Ordering
        Jurisdictional Discovery Before Rejecting Every One of the Attorney
        General's Alternative Arguments for Dismissal. .........................................6

        A.   The Court Need Not Reach the Attorney General's Personal Jurisdiction
             Argument, Which Would in Any Event Merit Additional Discovery.................6

        B.   This Case Is Ripe for Adjudication. ....................................................8

        C.   Venue Is Properly Laid in this District. ...............................................9

III.    The Deposition of Attorney General Healey Is Well Supported by Both the
        Record and Applicable Law. ...............................................................10

        A.   The Record Supports an Inference that Attorney General Healey Has
             Misused Her Prosecutorial Powers and Supports Further Inquiry by
             Deposition...................................................................................10

        B.   None of the Cases Cited by Attorney General Healey Provides a Basis to
             Vacate the Court's Deposition Order. .................................................12

        C.   The Policy Rationales Offered by the Attorney General Also Do Not
             Supply a Basis to Vacate the Court's Deposition Order..............................15

IV.     The Court Did Not Abuse Its Discretion by Ordering Discovery............................16

V.      The Court Has Already Determined That It Lacks an Adequate Record to
        Resolve the Question of the Attorney General's Bad Faith, and the Attorney
        General Offers No Reason to Revisit that Determination........................................17

        A.   The Present Factual Record Does Not Mandate a Conclusion that the
             Attorney General Issued the CID in Good Faith. ...................................18

        B.   The Attorney General's Anticipatory Comments at the March 29 Press
             Conference Are Neither Required Nor Immunized by Massachusetts
             Law. .........................................................................................19

VI.     Discovery Should Not Be Stayed Because of the Amended Complaint....................20

CONCLUSION.........................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied Chem. Corp. v. Daiflon*,
    449 U.S. 33 (1980)................................................................................9

*Bogan* v. *City of Boston*,
    489 F.3d 417 (1st Cir. 2007)............................................................14

*Evenson* v. *Sprint/United Mgmt. Co.*,
    No. 3:08-CV-0759-D, 2011 WL 3702627 (N.D. Tex. Aug. 23, 2011) ........................5

*EEOC* v. *Exxon Corp.*,
    No. Civ.A. 3–95–CV–1311–H1, 1998 WL 50464 (N.D. Tex. Jan. 20,
    1998) ..........................................................................................13, 14

*In re FDIC*,
    58 F.3d 1055 (5th Cir. 1995) ...........................................................14

*Fund for La.'s Future* v. *La. Bd. of Ethics*,
    No. 14-0368, 2014 WL 1514234 (E.D. La. Apr. 16, 2014) .........................9

*Google* v. *Hood*,
    822 F.3d 212 (5th Cir. 2016) ...........................................................8

*Lederman* v. *New York City Dep't of Parks & Rec.*,
    731 F.3d 199 (2d Cir. 2013) ...........................................................14

*Lone Star Coll. Sys.* v. *EEOC*,
    No. H-14-529, 2015 WL 1120272 (S.D. Tex. Mar. 12, 2015) ....................8

*Mitchum* v. *Foster*,
    407 U.S. 225 (1972)........................................................................15

*Next Techs., Inc.* v. *ThermoGenisis, LLC*,
    121 F. Supp. 3d 671 (W.D. Tex. 2015) .............................................8

*In re Office of Inspector General*,
    933 F.2d 276 (5th Cir. 1991) .......................................................13, 17

*Saxton* v. *Faust*,
    No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010) .........................7

*Sec. & Exch. Comm'n* v. *Arcturus Corp.*,
    No. 3:13-CV-4861-K, 2016 WL 3654430 (N.D. Tex. July 8, 2016) ...........................5

*Simplex Time Recorder Co.* v. *Secretary of Labor*,
766 F.2d 575 (D.C. Cir. 1985) ................................................................12

*Sinochem Int'l Co. Ltd.* v. *Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ................................................................................6

*Sprint Sols., Inc.* v. *Cell Xchange, Inc.*,
49 F. Supp. 3d 1074 (M.D. Fla. 2014) ....................................................20

*In re Stone*,
986 F.2d 898 (5th Cir. 1993) ..................................................................13

*Stroman* v. *Wercinski*,
513 F.3d 476 (5th Cir. 2008) ....................................................................7

*In re United States (Kessler)*,
985 F.2d 510 (11th Cir. 1993) ................................................................13

*Valtech Sols., Inc.* v. *Davenport*,
No. 3:15-CV-3361-D, 2016 WL 2958927 (N.D. Tex. May 23, 2016) ....................7, 8

*In re Volkswagen*,
545 F.3d 304 (5th Cir. 2008) ....................................................................9

*Wayte* v. *United States*,
470 U.S. 598 (1985) ............................................................................15, 16

*Wellogix, Inc.* v. *SAP Am., Inc.*,
648 F. App'x 398 (5th Cir. 2016) ..............................................................6

*Younger* v. *Harris*,
401 U.S. 37 (1971) ..................................................................................2

**STATUTES**

28 U.S.C. § 1391(b) ..................................................................................9

42 U.S.C. § 1983 ....................................................................................15

Mass. Gen. Laws c. 93A, § 6(1) ..............................................................19

**OTHER AUTHORITIES**

Chris Villani, *AG Healey Vows to Fight Judge's Deposition Order in
Exxon Case* – Boston Herald, (Nov. 21, 2016),
http://www.bostonherald.com/news/local_coverage/2016/11/ag_healey
_vows_to_fight_judge_s_deposition_order_in_exxon_case. ........................4

Fed. R. Civ. P. 60(b)(6) ............................................................................5

Stewart Bishop, *NY AG, Exxon Spar Over Climate Change Probe*,
        Law360 (Nov. 21, 2016, 8:48pm),
        https://www.law360.com/articles/865025/print?section=energy. ..................................3

U.S. Const. amend. I .......................................................................................................9, 12

Exxon Mobil Corporation ("ExxonMobil") respectfully submits this opposition to the motion (Dkt. 120) of Defendant Maura Tracy Healey (the "Attorney General") to vacate the Court's order requiring her deposition (the "Deposition Order") (Dkt. 117), to stay discovery, and for a protective order.[1]

## PRELIMINARY STATEMENT

The Attorney General's motion to vacate the Deposition Order is unauthorized by rule or precedent, recycles the same arguments presented previously, and offers no compelling reason for this Court to reconsider its ruling on the need for discovery.  It continues the Attorney General's pattern of resisting the very discovery required to resolve her challenge to this Court's jurisdiction.  As with the Attorney General's prior motion for reconsideration of the Court's October 13, 2016 discovery order, the instant application presents no new facts or law that the Attorney General has not raised before.  Instead, the Attorney General reprises the same arguments concerning personal jurisdiction, venue, ripeness, and governmental privilege.  These arguments were unpersuasive when first made and have not become more cogent with repetition.

As ExxonMobil demonstrated in opposition to the Attorney General's motion to reconsider the Court's October 13, 2016 discovery order, the Court is well within the bounds of its discretion to examine the exercise of its subject matter jurisdiction under *Younger* before taking up the Attorney General's personal jurisdiction argument—which, itself, would merit discovery as broad as that the Court has already ordered.  Nor has the Court overstepped any bounds by ordering the deposition of the Attorney General where, as here, ExxonMobil has made a substantial showing that she misused her law enforcement powers and the Attorney General has identified no other party or non-party from whom ExxonMobil can obtain the relevant

---

[1]   Citations herein to "Mem." are references to the Attorney General's Memorandum of Law in Support of the Motion to Vacate Order for Deposition of Attorney General Healey and Stay Discovery, and for a Protective Order, dated November 25, 2016 (Dkt. 121).

information.  As set forth herein, and in ExxonMobil's opposition to the Attorney General's prior motion to reconsider the October 13, 2016 discovery order (Dkt. 90), the Court is well within its discretion to direct the parties to assemble a proper record to facilitate review of the Attorney General's abstention argument.  Discovery should be permitted to proceed, and this latest motion should be denied.

## STATEMENT OF FACTS

On August 8, 2016, Attorney General Healey moved to dismiss ExxonMobil's complaint. (Dkt. 41.)  Among other grounds for dismissal, the Attorney General argued that this Court should abstain from hearing this case pursuant to *Younger* v. *Harris*, 401 U.S. 37 (1971).  (Dkt. 42 at 13–17.)  On September 8, 2016, ExxonMobil opposed the Attorney General's motion to dismiss, arguing, among other things, that abstention was unwarranted because the Attorney General's investigation of ExxonMobil was undertaken in bad faith.  (Dkt. 60 at 18–20.)

On October 13, 2016, the Court entered an order directing the parties to develop a record on which to assess the Attorney General's request that this Court abstain under *Younger*.  (Dkt. 73.)  Further discovery was appropriate in light of ExxonMobil's allegations of fact supporting the bad faith exception to *Younger*, including the Attorney General's (i) statements suggesting bias and a predetermination of ExxonMobil's liability and (ii) participation in a closed-door meeting with climate activists and plaintiffs' lawyers that was intentionally concealed from the press and public.  (*Id.* at 4–6.)  To develop the factual record that would enable the Court to assess the Attorney General's *Younger* abstention argument, the Court directed the parties to take discovery that would "aid the Court in deciding whether this lawsuit should be dismissed on jurisdictional grounds."  (*Id.* at 6.)  Pursuant to the October 13 order, ExxonMobil served on October 24, 2016 document requests, interrogatories, and requests for admission on Attorney

General Healey.  On November 3, 2016, ExxonMobil noticed the Attorney General's deposition for December 6, 2016.

On November 10, 2016, the Court granted ExxonMobil's motion for leave to file an amended complaint to assert additional claims against Attorney General Healey and add New York Attorney General Eric Schneiderman as a defendant.  (Dkt. 99.)  ExxonMobil's first amended complaint—filed by the Clerk of the Court on November 10, 2016—contains all of the allegations set forth in the prior complaint upon which the Court premised the October 13 discovery order.  It also adds additional allegations concerning Attorney General Healey's conspiracy with others to violate ExxonMobil's constitutional rights, and asserts a claim that the Attorney General's latest theory of ExxonMobil's supposed liability is preempted by federal law. (*See* Dkt. 100 at ¶¶ 77–81, 105–08.)

On November 14, 2016, Attorney General Schneiderman moved in New York State Court to compel ExxonMobil's production of documents concerning its oil and gas reserve estimates and its asset impairment calculations, purportedly pursuant to a subpoena issued in November 2015.  Explaining his haste in rushing to New York State Court to enforce a year-old subpoena, Attorney General Schneiderman explained in his motion papers that he was concerned this Court might issue a "federal injunction barring New York courts from enforcing [the] subpoena to Exxon."  That motion was denied the following week.[2]  In light of the New York Attorney General's acknowledged effort to short-circuit the proceedings in this Court by asking a New York court to compel compliance with a subpoena that is one of the subjects of this action,

---

[2]    Contrary to Attorney General Healey's statement to the Court (Mem. 4–5 n.5), that motion is not pending and is not set for argument on December 15, 2016.  Indeed, the New York Attorney General's motion was denied in open court during a hearing on November 21, 2016, in which the Judge determined that documents concerning ExxonMobil's reserves and impairments were not within the scope of the November 2015 subpoena unless they concerned climate change.  That decision has been reported in the legal media.  *See, e.g.*, Stewart Bishop, *NY AG, Exxon Spar over Climate Change Probe*, Law360 (Nov. 21, 2016, 8:48 PM), https://www.law360.com/articles/865025/print?section=energy.; *see also* Ex. A at App. 2.

as well as Attorney General Healey's repeated statements that she would not cooperate with the Court's October 13, 2016 discovery order, ExxonMobil requested, and the Court granted, a telephonic conference, which was held on November 16, 2016.  (Dkt. 109.)

During the November 16, 2016 teleconference, the Court inquired of Attorney General Healey's counsel whether the Attorney General would comply with the October 13, 2016 discovery order.  The answer was an unequivocal "no."[3]  On November 17, 2016, the Court issued the Deposition Order directing the Attorney General to appear for her noticed deposition on December 13, 2016 at the Court in Dallas, Texas.  (Dkt. 117.)  The record is clear that the Attorney General never had any intention of complying with the Court's Deposition Order.  In conformity with a propensity to litigate in the press, the first to know of her refusal was not the Court or counsel, but rather the *Boston Herald*.  On November 21, 2016—two business days after the Court issued the Deposition Order—a reporter asked the Attorney General whether she had plans to travel to Texas for the Court-ordered deposition.  Her response:  "No, I don't and we will take it up on appeal."[4]

The Attorney General's motion to vacate followed on November 25, 2016 (as subsequently corrected on November 26).  The Attorney General advances four main arguments in support of her application.  First, she reprises her arguments that her motion to dismiss should have been granted without any discovery.  Second, she once again seeks to relitigate whether her deposition is warranted on the facts.  Third, she rehashes the argument that, in her view, the Court has all the record it needs to determine whether abstention is appropriate.  Fourth, and

---

[3]   Ex. B at App. 13.
[4]   *See* Chris Villani, *AG Healey Vows to Fight Judge's Deposition Order in Exxon Case* – Boston Herald, (Nov. 21, 2016), http://www.bostonherald.com/news/local_coverage/2016/11/ag_healey_vows_to_fight_judge_s_deposition_order_in_exxon_case.

finally, Attorney General Healey asks the Court to stay discovery pending her filing of a motion to dismiss ExxonMobil's first amended complaint.

For the reasons set forth below, none of these arguments has any merit, and the motion should be denied.

## ARGUMENT

### I.    The Attorney General's Motion Is Unauthorized and Procedurally Improper.

As an initial matter, Attorney General Healey cites no procedural vehicle or legal standard for her so-called "motion to vacate" the Court's Deposition Order, and ExxonMobil is unaware of any federal or local rule that permits the Attorney General to make such a motion. For this reason alone, the Attorney General's "motion to vacate" should be denied.

To the extent that Attorney General Healey's "motion to vacate" can be construed as a second motion for reconsideration of the Court's October 13, 2016 discovery order, the application also should be denied because it rests on "rehashing old arguments or advancing theories of the case that could have been presented earlier." *Sec. & Exch. Comm'n* v. *Arcturus Corp.*, No. 3:13-CV-4861-K, 2016 WL 3654430, at *1 (N.D. Tex. July 8, 2016) (quoting *Reneker* v. *Offill*, No. 3:08-CV-1394-D, 2012 WL 3599231, at *1 n.1 (N.D. Tex. Aug. 22, 2012)).

In the alternative, if the Attorney General's "motion to vacate" is considered to be a motion for relief from an order under Fed. R. Civ. P. 60(b)(6), the motion also should be denied because the Attorney General fails even to acknowledge, much less carry, her burden to demonstrate the "extraordinary circumstances" that could justify relief under that rule. *Evenson* v. *Sprint/United Mgmt. Co.*, No. 3:08-CV-0759-D, 2011 WL 3702627, at *4 (N.D. Tex. Aug. 23, 2011).

Regardless of how the Court interprets the Attorney General's "motion to vacate," her failure to identify, or even attempt to meet, any procedural ground or legal standard for the requested relief provides a threshold reason for denying the motion in its entirety.

Even if the Court were to proceed to the merits of the Attorney General's motion, it should be dismissed for the additional reasons set forth below.

## II.   The Court Was Within the Bounds of Its Discretion in Ordering Jurisdictional Discovery Before Rejecting Every One of the Attorney General's Alternative Arguments for Dismissal.

The Attorney General's motion to vacate the Deposition Order and stay discovery simply repeats the same arguments already made in her prior submissions, while adding no new facts or law that supply a basis to forgo the discovery the Court has already determined is necessary to evaluate the Attorney General's request for *Younger* abstention.

### A.   The Court Need Not Reach the Attorney General's Personal Jurisdiction Argument, Which Would in Any Event Merit Additional Discovery.

The Attorney General begins by stating, once again, her position that the Court lacks personal jurisdiction over her and should grant her motion to dismiss immediately on this basis. (Mem. 7.)  As demonstrated in ExxonMobil's prior submissions, however, the Court is under no obligation to address the Attorney General's arguments for dismissal in her preferred order. (Dkt. 90 at 7–9.)  Instead, when considering matters of jurisdiction and justiciability, it is the Court's discretion—not the Attorney General's preference—that controls.  *See Sinochem Int'l Co. Ltd.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (stating that "a federal court has leeway 'to choose among threshold grounds'" when considering whether to dismiss a complaint (quoting *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 585 (1999))); s*ee also Wellogix, Inc.* v. *SAP Am., Inc.*, 648 F. App'x 398, 400 (5th Cir. 2016) (addressing prudential doctrine of *forum non conveniens* before jurisdictional question).  Indeed, in prior briefing the

Attorney General herself has conceded that "[c]ustomarily, a federal court first resolves doubts about its jurisdiction over subject matter"—including questions of *Younger* abstention—before turning to personal jurisdiction."  (Dkt. 79 at 4 (quoting *Ruhrgas*, 526 U.S. at 578).)   The Attorney General offers no reason to deviate from that custom.

Even if the Court indulged the Attorney General's preference and considered personal jurisdiction at this juncture, the result would be either a finding of jurisdiction or the continuation of discovery.  As set forth in ExxonMobil's prior submissions, the Texas Supreme Court has made clear that the State's long-arm statute extends to the outer boundaries of due process, and the Fifth Circuit has held that due process poses no obstacle to the exercise of jurisdiction over an out-of-state actor who, like the Attorney General, intentionally directs tortious conduct at Texas and intends for injuries resulting from that conduct to be suffered in Texas.[5]  Neither the Fifth Circuit's dicta in *Stroman* v. *Wercinski*, 513 F.3d 476 (5th Cir. 2008), nor the decision reached on a starkly different record in *Saxton* v. *Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010), undermines the propriety of jurisdiction over an out-of-state actor who reaches into Texas with the intent of violating the constitutional rights, and stifling the speech, of a Texas resident.

At a minimum, the Attorney General's own statements, quoted in ExxonMobil's pleadings, "suggest with reasonable particularity the possible existence of the requisite contacts" resulting from the Attorney General's bad faith and intentional direction of constitutional torts at ExxonMobil in Texas.   *Valtech Sols., Inc.* v. *Davenport*, No. 3:15-CV-3361-D, 2016 WL 2958927, at *2 (N.D. Tex. May 23, 2016) (internal citations omitted) (quoting *Toys "R" Us, Inc.*

---

[5]   Dkt. 90 at 9 (citing, *e.g.*, *Spir Star AG* v. *Kimich*, 310 S.W.3d 868, 872 (Tex. 2010); *Wien Air Alaska, Inc.* v. *Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *Lewis* v. *Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001); *Ruston Gas Turbines Inc.* v. *Donaldson Co.*, 9 F.3d 415, 420 (5th Cir. 1993); *Bear Stearns Cos.* v. *Lavalle*, No. 3:00 Civ. 1900-D, 2001 WL 406217, at *3–4 (N.D. Tex. Apr. 18, 2001)); Dkt. 60 at 9–12  (same).

v. *Step Two, SA*, 318 F.3d 446, 456 (3d Cir. 2003)).   In such cases, "the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (quoting *Step Two*, 318 F.3d at 456); *see also Next Techs., Inc.* v. *ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015) (permitting jurisdictional discovery to determine, *inter alia*, whether the court could exercise specific personal jurisdiction over defendants alleged to have "directed" activities into Texas). The consideration of the Attorney General's arguments in her preferred sequence therefore will not enable the parties to forgo discovery, but rather will simply beg the same question of whether the Attorney General harbored an intent to direct her unlawful conduct at Texas and stifle speech she knew to be emanating from Texas.[6]

### B.      This Case Is Ripe for Adjudication.

Nor, as the Attorney General contends, is this dispute unripe.  Distinguishing this case from *Google* v. *Hood*, 822 F.3d 212 (5th Cir. 2016)—the authority on which the Attorney General exclusively relies—the civil investigative demand ("CID") served on ExxonMobil is self-executing and carries an immediate penalty for non-compliance that does not, by its terms, require the intervention of a court.  In fact, the CID served on ExxonMobil includes as an exhibit the provision of Massachusetts law stating that failure to comply is punishable by a civil penalty of $5,000.[7]  Even if the CID were not self-executing, the Attorney General has rendered this dispute ripe by seeking to enforce the CID in Massachusetts state court.  *Google*, 822 F.3d at 225 (dispute concerning a non-self-executing subpoena was unripe so long as the state official "ha[d] not brought an enforcement action"); *Lone Star Coll. Sys.* v. *EEOC*, No. H-14-529, 2015 WL 1120272, at *7 (S.D. Tex. Mar. 12, 2015) ("These claims are not ripe for review because there is

---

[6]     Indeed, were the Court to determine that it needed discovery to ensure an adequate record to assess the Attorney General's personal jurisdiction argument, that would appear to moot one of the Attorney General's primary objections to discovery.

[7]     Dkt. 10-1 at App. 044.

no final agency action or a move to enforce a subpoena."). The Attorney General's actions have therefore made this matter ripe.

### C.      Venue Is Properly Laid in this District.

The Attorney General is also mistaken in claiming that venue is improper. Venue is properly laid in this District because the Attorney General intends to impinge on the free speech rights of ExxonMobil, which has a principal place of business in this District, and a First Amendment injury has been held to be located at the plaintiff's principal place of business. *Fund for La.'s Future* v. *La. Bd. of Ethics*, No. 14-0368, 2014 WL 1514234, at *12 (E.D. La. Apr. 16, 2014).[8] As a result, a substantial part of the events giving rise to the claim— ExxonMobil's injuries—occurred in this District. 28 U.S.C. § 1391(b).

---

[8]    The Attorney General asserts that the failure to address venue at this juncture would merit the issuance of a writ of mandamus by the Fifth Circuit. The case cited for this proposition, *In re Volkswagen*, 545 F.3d 304 (5th Cir. 2008), is inapposite. In *Volkswagen*, the Fifth Circuit found mandamus warranted on facts a far cry from those here, observing that "[t]he errors of the district court—applying the stricter *forum non conveniens* dismissal standard, misconstruing the weight of the plaintiffs' choice of venue, treating choice of venue as a § 1404(a) factor, misapplying the *Gilbert* factors, disregarding the specific precedents of this Court in *In re Volkswagen I*, and glossing over the fact that not a single relevant factor favors the Singletons' chosen venue—were extraordinary errors." *Id.* at 318. In this case, by contrast, the Court is well within the bounds of its discretion to assemble a record to weigh the abstention argument that the Attorney General herself raised. *See Allied Chem. Corp.* v. *Daiflon*, 449 U.S. 33, 36 (1980) (per curiam) (stating that, as a general rule, mandamus relief is not available to control an exercise of discretion, because "[w]here a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" (citation omitted)).

**III.    The Deposition of Attorney General Healey Is Well Supported by Both the Record and Applicable Law.**

The Attorney General does not dispute that the Court has the power to compel her to give testimony explaining the basis for her unlawful and politically motivated investigation, but rather claims that the Court abused its discretion in finding that "exceptional" and "extraordinary" circumstances justify her deposition in this case.  (Mem. 9–12.)  Nothing could be further from the truth.  The compelling record of the misuse of prosecutorial authority, and the applicable case law, amply support the deposition of the Attorney General.

**A.    The Record Supports an Inference that Attorney General Healey Has Misused Her Prosecutorial Powers and Supports Further Inquiry by Deposition.**

The record supporting the Attorney General's misuse of her prosecutorial authority is extraordinarily strong and supports further inquiry through a deposition.  As the Court set forth in the October 13, 2016 Discovery Order, "[p]rior to the issuance of the CID, Attorney General Healey and several other attorneys general participated in the AGs United for Clean Power Press Conference on March 29, 2016 in New York."  (Dkt. 73 at 4.)  "At the meeting, Attorney General Healey and the other attorneys general listened to presentations from a global warming activist and an environmental attorney that has a well-known global warming litigation practice. Both presenters allegedly discussed the importance of taking action in the fight against climate change and engaging in global warming litigation."  (*Id.*)

"One of the presenters, Matthew Pawa of Pawa Law Group, P.C., has [] previously sued Exxon for being a [purported] cause of global warming.  After the closed door meeting, Pawa emailed the New York Attorney General's office to ask how he should respond if asked by a *Wall Street Journal* reporter whether he attended the meeting with the attorneys general.  The New York Attorney General's office responded by instructing Pawa 'to not confirm that [he]

attended or otherwise discuss' the meeting he had with the attorneys general the morning before the press conference." (*Id.*)

During the press conference itself, Attorney General Healey "stated that '[f]ossil fuel companies that deceived investors and consumers about the dangers of climate change should be, must be, held accountable.' Attorney General Healey then went on to state that, '[t]hat's why I, too, have joined in investigating the practices of ExxonMobil. We can all see today the troubling disconnect between what Exxon knew, what industry folks knew, and what the company and industry chose to share with investors and with the American public.' The speech ended with Attorney General Healey reiterating the Commonwealth of Massachusetts's commitment to combating climate change and that the fight against climate change needs to be taken '[b]y quick, aggressive action, educating the public, holding accountable those who have needed to be held accountable for far too long.'" (*Id.* at 5.)  As the Court rightly observed in the October 13, 2016 Discovery Order, the "anticipatory nature" of Attorney General Healey's comments bespeak bias and suggest an "investigation" with an impermissibly pre-ordained outcome.  (*Id.* at 5.)[9]

The Attorney General's actions following the March 29 press conference have only confirmed the improper motive underlying her investigation.  On April 29, 2016—ten days after serving the CID—a representative of Attorney General Healey's office signed a common interest

---

[9]   The Attorney General attempts to create a false equivalency between her own conduct at the March 29 Press Conference and instances where other attorneys general have issued press releases regarding investigations.  In particular, Attorney General Healey analogizes her actions to the September 24, 2015 announcement that the Texas Attorney General was joining in a multi-state investigation of Volkswagen's diesel emissions scandal. (Mem. 15 n.12.)  What the Attorney General neglects to mention is that the Texas Attorney General announced an inquiry only *after* the Environmental Protection Agency had issued a formal notice of violation to Volkswagen on September 18, 2015 after extensive investigation and, indeed, after Volkswagen had ***publicly admitted*** the conduct that was being investigated on September 21, 2015.  There is thus no valid comparison between Attorney General Healey's conduct in this case and the type of activity that she insists is "common" for attorneys general to engage in.  (Mem. 15.)

agreement with other attorneys general seeking to conceal their activities from the public.[10]  The stated purposes of this agreement were "limiting climate change and ensuring the dissemination of accurate information about climate change"—removing any doubt that Attorney General Healey and other signatories intended to use their investigative powers to regulate speech on a matter of public debate and concern if the speech deviated from what they believe to be "accurate."[11]

In sum, as the Court recognized in the October 13, 2016 discovery order and the Deposition Order flowing from it, the preparatory, closed-door meeting with non-law enforcement officials, the comments at the March 29 press conference, together with the steps taken thereafter to shield the activities of the Attorney General and her co-conspirators from public view, provide exceptionally strong bases to require Attorney General Healey to explain why her "investigation" is not, as the facts suggest, a pre-ordained exercise designed to deter ExxonMobil (and others) from exercising rights secured by the First Amendment.

> **B.      None of the Cases Cited by Attorney General Healey Provides a Basis to Vacate the Court's Deposition Order.**

None of the cases relied upon by the Attorney General compels a different result. Instead, these cases permit depositions of government officials where, as here, there is an exceptionally strong record suggesting the misuse of prosecutorial power, and the government official in question has unique, personal knowledge of the circumstances in dispute.

In *Simplex Time Recorder Co.* v. *Secretary of Labor*, 766 F.2d 575 (D.C. Cir. 1985), the D.C. Circuit upheld the denial of a deposition of the Secretary of Labor because, unlike here, plaintiff had "not suggested any information in the possession of these officials (regarding general enforcement proceedings) that it could not obtain from published reports and available

---

[10]   Dkt. 101-5 at App. 202.
[11]   Dkt. 101-5 at App. 196.

agency documents." *Id.* at 587.  The Fifth Circuit's decision of *In re Stone*, 986 F.2d 898 (5th Cir. 1993)—cited for the proposition that depositions of officials are permitted only in "egregious" cases—did not concern depositions at all, but rather whether a district judge could require government representatives with settlement authority to attend conferences as a matter of course. *Id.* at 900.

The Eleventh Circuit's decision of *In re United States (Kessler)*, 985 F.2d 510 (11th Cir. 1993), is similarly far afield.  In *Kessler*, the Eleventh Circuit denied a deposition of the FDA administrator because, again unlike this case, "testimony was available from alternate witnesses" and the witness "did not assume office until . . . over two years after the case was sent to the Justice Department for further action" and thus "could not have been responsible for selectively prosecuting the defendants." *Id.* at 512–13.

Contrary to the Attorney General's characterization, the decision of the Fifth Circuit in *In re Office of Inspector General*, 933 F.2d 276 (5th Cir. 1991), actually recognizes that discovery should be permitted in subpoena enforcement proceedings where there has been a presentation of "meaningful evidence that the agency is attempting to abuse its investigative authority." *Id.* at 278 (quotation marks omitted).  And the *Inspector General* court's treatment of the question of deposing government officials simply confirms what the Attorney General has already conceded—that such depositions are appropriate in "extraordinary circumstances." *Id.*

The Attorney General's description of *EEOC* v. *Exxon Corp.*, No. Civ.A. 3–95–CV–1311–H1, 1998 WL 50464 (N.D. Tex. Jan. 20, 1998), is also distorted.  Attorney General Healey claims that the court in *EEOC* denied Exxon's request for a deposition of the EEOC chairman "based on its contention that 'Chairman Casellas may have personal knowledge of the facts at issue in this case because of statements he made to the media and because he is a top policy

13

maker for the Commission.'"  (Mem. 10 (quoting *EEOC*, 1998 WL 50464, at *1).)  Instead, the court found the deposition unnecessary because the witness "ha[d] submitted an affidavit wherein he specifically states he has no personal knowledge of any claim or defense asserted in this action, and that his only involvement in the case was to cast his vote to authorize the filing of suit in his capacity as a member of the Commission."  *EEOC*, 1998 WL 50464, at *1.  *EEOC* thus bears no resemblance to this case, where Attorney General Healey has provided no reason to believe she is unaware of the facts the Court has directed the parties to provide to it.

Finally, the Fifth Circuit's decision *In re FDIC*, 58 F.3d 1055 (5th Cir. 1995), is likewise inapposite.  In *FDIC*, the Fifth Circuit quashed deposition notices to FDIC officials because "the FDIC retained discretion with regard to the disposition of" the assets in question, and, "[a]bsent a showing of contrary provisions of law or contract" cabining that discretion, depositions directed at the exercise of that discretion could not be premised on "bad faith or improper behavior."  *Id.* at 1062.  That is a far cry from the situation here, in which (to state the obvious) the Attorney General has no discretion to misuse her prosecutorial powers to stifle ExxonMobil's speech in an attempt to place a thumb on the scale of an ongoing policy debate.[12]

In sum, Attorney General Healey finds no refuge in the cases she cites in attempting to escape a deposition in this matter.  Instead, when properly read in context, the cases fully support the deposition of the Attorney General where, as here, there is an uncommonly strong record suggesting the misuse of prosecutorial authority, and the deponent personally participated in, and appears to have unique knowledge of, the matters in dispute.

---

[12]    The additional, out-of-Circuit authority cited by the Attorney General simply stands for the unremarkable proposition that depositions of high-ranking officials are disfavored unless the official has unique knowledge or the information cannot be obtained elsewhere.  *See, e.g.*, *Lederman* v. *New York City Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013); *Bogan* v. *City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007).  The Attorney General has not identified any subordinate or other individual who could provide the information the Court has requested and, indeed, as described below, the Attorney General is resisting any discovery that could conceivably provide the pertinent facts or identify other knowledgeable subordinates.

**C.     The Policy Rationales Offered by the Attorney General Also Do Not Supply a Basis to Vacate the Court's Deposition Order.**

The Attorney General's position having no basis in the record or the applicable case law, she then cites a number of policy rationales that, in her view, militate against requiring her to give testimony in this case.  None has merit.

*First*, the Attorney General objects that permitting inquiry into her investigation constitutes "a substantial intrusion on Massachusetts's sovereign interest in investigation [sic] violations of its state law." (Mem. 9–10.)  But the Attorney General ignores that this is an action under 42 U.S.C. § 1983, and the "very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights."  *Mitchum* v. *Foster*, 407 U.S. 225, 242 (1972).  Massachusetts can have no legitimate "sovereign interest" in wielding its investigative powers as a cudgel to violate ExxonMobil's constitutional rights and inhibit its speech.  The discovery the Court has ordered is squarely aimed at determining whether Massachusetts has any sovereign interest meriting this Court's deference and, as a result, abstention.  Taken to its logical end, the Attorney General's argument that her prerogative should be respected would abrogate Section 1983 and would always prevent inquiry into the question of whether government power is being constitutionally exercised.

*Second*, the Attorney General suggests that courts should be reluctant to permit examination of government investigators during their investigation, because doing so will impose "systemic costs" that could "chill law enforcement." (Mem. 11–12 (quoting *Wayte* v. *United States*, 470 U.S. 598, 607–08 (1985).)  But as the Supreme Court recognized in its next breath in *Wayte*, "'[s]electivity in the enforcement of criminal laws is . . . subject to constitutional constraints'" and "the decision to prosecute may not be 'deliberately based upon an unjustifiable standard'" such as "the exercise of protected statutory and constitutional rights."

15

470 U.S. at 608 (quoting *United States* v. *Batchelder*, 442 U.S. 114, 125 (1979), and citing *United States* v. *Goodwin*, 457 U.S. 368, 372 (1982)).  Once again, the Attorney General's objection to participating in discovery simply requires the Court to assess, as it is seeking to do through the discovery it has ordered, whether there is a credible allegation that her authority has been, or is being, misused.

*Third*, and finally, the Attorney General asks the Court to forgo her deposition because her time is valuable.  (Mem. 12.)  However, the Deposition Order reflects that the Court is both aware, and respectful, of the duties that the Attorney General must exercise, and therefore stated that it is open to alternative dates for the Attorney General's deposition if necessary.[13]

## IV.   The Court Did Not Abuse Its Discretion by Ordering Discovery.

The Attorney General next argues that the Court erred in permitting discovery because discovery is not favored in actions that (unlike this one) solely challenge an administrative subpoena, and, further, that the Court abused its discretion by not compelling ExxonMobil to meet a heavy burden before discovery is granted.  (Mem. 13–14.)  Both arguments are red herrings.

*First*, this action is not, as the Attorney General's argument suggests, a mere challenge to an administrative subpoena.  By this action, ExxonMobil is indeed seeking to protect constitutional rights that the subpoena would seek to infringe, but is also seeking a declaration that the totality of the actions of Attorneys General Healey and Schneiderman—along with others—has infringed on its rights.  ExxonMobil is, further, independently seeking redress for Attorney General Healey's tortious abuse of process and civil conspiracy under Texas common law.  Simply put, this case does not fit into the box in which the Attorney General seeks to put it.

---

[13]   Attorney General Healey also complains that the Court "compounded its error" by requiring her to appear for a deposition in Dallas.  Although that complaint does not supply a basis to vacate the Deposition Order, ExxonMobil stands ready to conduct this deposition at whatever location the Court prefers.

But even if it did, discovery would still be permitted.  Indeed, the case Attorney General Healey relies on most heavily—*In re Office of Inspector General*—affirmatively recognizes that discovery should go forward where there has been a presentation of "meaningful evidence that the agency is attempting to abuse its investigative authority."  933 F.2d at 278 (quotation marks omitted).

*Second*, the Attorney General complains that ExxonMobil has not met a "heavy burden" of showing that discovery is necessary.  This argument is an exercise in revisionist history and turns the posture of these proceedings upside down.  ExxonMobil did not request, and does not have the burden to justify, discovery.  Instead, the Court determined, after the benefit of full briefing and oral argument on ExxonMobil's motion for a preliminary injunction, that discovery was necessary to weigh the abstention argument that the Attorney General herself raised.  It is therefore not ExxonMobil's burden to show that discovery is necessary, it is the Attorney General's burden to show that the *Younger* abstention argument she continues to press can be resolved without the need for discovery—a burden she has failed to carry.

## V.   The Court Has Already Determined That It Lacks an Adequate Record to Resolve the Question of the Attorney General's Bad Faith, and the Attorney General Offers No Reason to Revisit that Determination.

Perhaps recognizing the lack of merit in the preceding argument, Attorney General Healey next pivots to rehash the contention made in her prior motion for reconsideration that the record already before the Court is adequate to determine that she issued the CID in good faith and as required by Massachusetts law.  (Mem. 14–17.)  These arguments—addressed in the briefing on ExxonMobil's motion for a preliminary injunction and the Attorney General's prior motion for reconsideration—are entirely meritless.

**A.    The Present Factual Record Does Not Mandate a Conclusion that the Attorney General Issued the CID in Good Faith.**

As for her good faith factual basis for issuing the CID, the Attorney General complains that the Court cited "only allegations made by Exxon" in the October 13, 2016 discovery order and "appears to have ignored completely the ample facts in the record and cited by Attorney General Healey that show the good faith basis for issuance of the CID." (Mem. 16.)  There are two problems with this contention.

*First*, although it is literally true that the Court cited "allegations made by Exxon" in the October 13, 2016 discovery order, the suggestion that the order was premised on bare allegations is misleading at best.  Indeed, the "allegations made by Exxon" on which the Court relied were undisputedly *the Attorney General's own words*, as well as documentary evidence of communications between attorneys general and environmental activists that were turned over pursuant to freedom of information requests made by third parties.

*Second*, as ExxonMobil demonstrated in opposing the Attorney General's prior motion for reconsideration, and as shown at oral argument on ExxonMobil's motion for a preliminary injunction, the documents which the Attorney General claims "illustrat[e] Exxon's extensive knowledge—decades ago—of climate change" (Mem. 16) cannot fairly be read to support that statement.  Instead, the Attorney General's supposed good faith theory is reliant on cherry-picking documents and taking quotes out of context to reverse engineer a premise about ExxonMobil's knowledge that is not supported by the full record.  The Attorney General's complaint is thus, once again, not that the Court has failed to consider the materials she has put forward but that those materials have failed to persuade the Court that her investigation was initiated in good faith.

**B.      The Attorney General's Anticipatory Comments at the March 29 Press Conference Are Neither Required Nor Immunized by Massachusetts Law.**

The Attorney General also contends that the Court "misapprehends what Massachusetts law requires for the issuance of a CID by the Attorney General." (Mem. 15.)  If only the Court understood that Massachusetts law *requires* the Attorney General to prejudge the results of her investigations, the argument goes, it would understand that her anticipatory comments at the March 29 press conference were not indicative of bad faith.  ExxonMobil's opposition to the Attorney General's prior motion for reconsideration has already debunked this tortured reading of Massachusetts law, which amounts to nothing more than a post-hoc attempt to rationalize the Attorney General's extraordinary comments at the March 29 press conference.  (Dkt. 90 at 11.).

Indeed, the Attorney General's argument omits the clause of Mass. Gen. Laws c. 93A, § 6(1), which states that the purpose of a CID is "to ascertain whether in fact [the target of a CID] has engaged in or is engaging in" a prohibited practice.  Contrary to the Attorney General's claim, the statutory purpose of a CID is thus to investigate whether a *suspicion* of unlawful conduct is well founded.  This interpretation of Massachusetts law comports with the Attorney General's prior statements to this Court. In opposing ExxonMobil's motion for a preliminary injunction, the Attorney General explained that her office "has issued several hundred CIDs to or regarding companies or individuals *suspected* of committing unfair and deceptive business practices." (Dkt. 43 at 4 (emphasis added).)  The Court should not credit the Attorney General's attempt to normalize her comments at the March 29 press conference by characterizing them as required by Massachusetts law.[14]

---

[14]   Tellingly, although the Attorney General suggests that Massachusetts law requires her to make judgments regarding the liability of a target for a CID, she has cited no other instances in which she made comments like those she made about ExxonMobil at the March 29 press conference.

**VI.     Discovery Should Not Be Stayed Because of the Amended Complaint.**

Finally, the Attorney General asserts that the October 13, 2016 discovery order is moot in light of the filing of ExxonMobil's first amended complaint.  (Mem. 17–18.)  That is not so.  The Attorney General's recently filed motion to dismiss the first amended complaint (Dkt. 124) raises the same *Younger* abstention argument that gave rise to the Court's October 13, 2016 discovery order.  (Dkt. 125 at 20–22.)  Attorney General Healey's motion also asserts the same personal jurisdiction argument as her prior motion (*id.* at 5–16) which, as set forth above, should be either rejected on the current record or considered only after discovery at least as broad as that already ordered by the Court.  Under such circumstances, it would be a futile injection of needless delay to impose a stay on already-proceeding discovery that will be necessary in all events.  *See, e.g.*, *Sprint Sols., Inc.* v. *Cell Xchange, Inc.*, 49 F. Supp. 3d 1074, 1077 n.3 (M.D. Fla. 2014) ("Even if the [Court] determined that the discovery was rendered moot, given the filing of the Second Amended Complaint and, as discussed below, the determination that Plaintiffs appear to state a valid federal claim, requiring Plaintiffs to re-serve the discovery requests upon the TCX Defendants at this juncture would prove an exercise in futility.").

<u>CONCLUSION</u>

For the reasons set forth above, there is no merit to Attorney General Healey's repetitious motion seeking to evade the very discovery this Court has determined is necessary to evaluate the Attorney General's motion to dismiss for lack of subject matter jurisdiction.  The Attorney General offers no new facts or law that could, or should, justify a departure from this Court's direction that the parties assemble a proper record to weigh the *Younger* abstention argument that the Attorney General herself made in the first instance.  Having no basis in law, fact, or logic, the Attorney General's motion should be denied, and discovery should be permitted to proceed.

20

Dated:  November 29, 2016


EXXON MOBIL CORPORATION

By: /s/ Patrick J. Conlon                         /s/ Nina Cortell
Patrick J. Conlon                                 Nina Cortell
(*pro hac vice*)                                  State Bar No. 04844500
State Bar No. 24054300                            nina.cortell@haynesboone.com
patrick.j.conlon@exxonmobil.com                   HAYNES & BOONE, LLP
Daniel E. Bolia                                   2323 Victory Avenue
State Bar No. 24064919                            Suite 700
daniel.e.bolia@exxonmobil.com                     Dallas, TX 75219
1301 Fannin Street                                (214) 651-5579
Houston, TX 77002                                 Fax: (214) 200-0411
(832) 624-6336


/s/ Theodore V. Wells, Jr.                        /s/ Ralph H. Duggins
Theodore V. Wells, Jr.                            Ralph H. Duggins
(*pro hac vice*)                                  State Bar No. 06183700
twells@paulweiss.com                              rduggins@canteyhanger.com
Michele Hirshman                                  Philip A. Vickers
(*pro hac vice*)                                  State Bar No. 24051699
mhirshman@paulweiss.com                           pvickers@canteyhanger.com
Daniel J. Toal                                    Alix D. Allison
(*pro hac vice*)                                  State Bar. No. 24086261
dtoal@paulweiss.com                               aallison@canteyhanger.com
PAUL, WEISS, RIFKIND, WHARTON &                   CANTEY HANGER LLP
GARRISON, LLP                                     600 West 6th Street, Suite 300
1285 Avenue of the Americas                       Fort Worth, TX 76102
New York, NY  10019-6064                          (817) 877-2800
(212) 373-3000                                    Fax: (817) 877-2807
Fax: (212) 757-3990

Justin Anderson
(*pro hac vice*)
janderson@paulweiss.com
2001 K Street, NW
Washington, D.C.  20006-1047
(202) 223-7300
Fax: (202) 223-7420

*Counsel for Exxon Mobil Corporation*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 29th day of November 2016, a true and correct copy of the foregoing document was filed electronically via the CM/ECF system, which gave notice to all counsel of record pursuant to Local Rule 5.1(d).

/s/ Ralph H. Duggins
RALPH H. DUGGINS
