IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | ) | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-469-K |
| | ) | |
| ERIC TRADD SCHNEIDERMAN, Attorney | ) | |
| General of New York, in his official capacity, | ) | |
| and MAURA TRACY HEALEY, Attorney | ) | |
| General of Massachusetts, in her official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ATTORNEY GENERAL HEALEY'S REPLY IN SUPPORT OF HER
MOTION TO VACATE DISCOVERY ORDER AND
STAY DISCOVERY, AND FOR A PROTECTIVE ORDER**

This Court's October 13 and November 17, 2016, discovery orders (respectively, the "Jurisdictional Discovery Order" (Doc. No. 73), and the "Deposition Order," (Doc. No. 117)) have predictably ignited resource-intensive disputes over discovery, now involving three parties and multiple non-party recipients of subpoenas, that will only escalate—despite the fact that this Court plainly lacks personal jurisdiction over Attorney General Healey. The Court acknowledged at oral argument on Exxon's motion for a preliminary injunction that it had recently relied on *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), to dismiss a similar action against a non-resident state government official, and bluntly demanded of Exxon's counsel, "[h]ow the heck do I have jurisdiction?" *See* Tr. of Sept. 19 argument (Doc. No. 68) at 87. The answer is that Fifth Circuit and Supreme Court precedent makes clear that this Court does not have personal jurisdiction. Moreover, the matter is not ripe, and venue here is improper.

1

Exxon's counsel predicted to another court that discovery disputes arising from the Jurisdictional Discovery Order would consume months of the parties' and this Court's time, *see* Tr. of Show Cause Hearing at 54-55 (Motion to Amend Opp. App. Exh. 1 (Doc. No. 95-2) at 055-056), and then set about to ensure that result by immediately serving extensive, improper and burdensome discovery on Attorney General Healey. Exxon's Court-sanctioned, sweeping counter-discovery into the grounds for Attorney General Healey's civil investigative demand ("CID") is the precise type of "exhaustive inquisition into the practices of regulatory agencies" forbidden by the Fifth Circuit. *In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991). Exxon's purported justification for the discovery—adopted by the Court in its Orders—rings hollow given that Exxon was itself cooperating with the New York Attorney General's similar subpoena, six months after the March press conference it complains of, until the Jurisdictional Discovery Order enticed Exxon to add him as a defendant here.[1] And, Exxon continues to cooperate with the U.S. Securities and Exchange Commission's ongoing investigation, which is focused on matters similar to those at issue in Attorney General Healey's CID.

This Court should reject Exxon's ploy to shift the focus from the *investigations of Exxon's conduct* by two state attorneys general to the *investigators themselves* to avoid a ruling on the obvious jurisdictional failures of its lawsuit. The Court should vacate its Orders, stay discovery, and address Attorney General Healey's motion to dismiss for lack of personal

---

[1] Exxon also no doubt realized after the September 19 argument that its cooperation with the New York Attorney General's subpoena made it difficult, if not impossible, for Exxon to obtain its requested relief—an injunction of Attorney General Healey's CID—from this Court, since its cooperation establishes that compliance with the substantially similar Massachusetts CID would not cause Exxon irreparable harm. Recently, the New York Attorney General moved to compel Exxon's further compliance with that subpoena. Exxon's account of the November 21 hearing on that motion, Opp. at 3 n.2, is contradicted by the very article it cites, which confirms that Exxon is under New York state court direction to reach agreement with the New York Attorney General on a schedule to comply. Stewart Bishop, *NY AG, Exxon Spar over Climate Change Probe*, LAW360 (Nov. 21, 2016) https://www.law360.com/articles/865025/print?section=energy (subscription required) (cited in Opp. at 3 n.2).

jurisdiction, as *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) instructs, and for lack of ripeness and improper venue.

A.  **THE ATTORNEY GENERAL'S MOTION IS PROPERLY BEFORE THIS COURT.**

For the reasons set forth in her Memorandum of Law in Support of Her Motion to Vacate Order for Deposition and Stay Discovery and for a Protective Order (Doc. No. 121, "Vacate Mem.") at 9-12, the Court erred in issuing *sua sponte* its Deposition Order commanding Attorney General Healey's deposition in Dallas, Texas, on December 13, and she immediately moved to vacate it. Pursuant to Fed. Rules Civ. P. 60(b)(6) and 54(b) and this Court's inherent authority to control its docket and reconsider its orders (particularly those entered absent a request by any party), the Court is fully empowered to grant this relief. *See, e.g.*, *Hand v. United States*, 441 F.2d 529, 531 (5th Cir. 1971); 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2864 (3d ed. 2016); *see also Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002) ("The plain meaning of [Rule 54(b)] is that a court retains jurisdiction over all the claims in a suit and may alter any earlier decision at its discretion until final judgment has been issued on a claim or on the case as a whole.").[2]

Further, as Attorney General Healey argued in her opening brief, Exxon's First Amended Complaint mooted the Jurisdictional Discovery Order; that Order should therefore be vacated. Vacate Mem. at 17. Attorney General Healey cannot be required to comply with an Order that has no legal effect.

---

[2] Attorney General Healey's prior Motion for Reconsideration (Doc. No. 78) of the Court's Jurisdictional Discovery Order, filed on *October 20*, obviously did not address the Court's Deposition Order, which was issued on *November 17*. The arguments presented in her Motion to Vacate therefore do not constitute a "rehashing" of prior arguments, as Exxon asserts. Opp. at 5.

B.  **NO DISCOVERY IS NECESSARY TO RESOLVE THE ATTORNEY GENERAL'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.**

Exxon asserts that, even if this Court vacated the Jurisdictional Discovery Order as it relates to the application of *Younger v. Harris*, 401 U.S. 37 (1971), discovery would still be necessary to determine whether the Court has personal jurisdiction over Attorney General Healey. Exxon is wrong. Apparently continuing to rely on a flawed understanding of the "effects" jurisdiction described in *Calder v. Jones*, 465 U.S. 783 (1984), Exxon argues that the Attorney General's remarks at the March 29, 2016, press conference in New York show that she intentionally directed a constitutional tort at Exxon in issuing the CID, harming Exxon in Texas. Even if that were true—which Attorney General Healey strongly disputes—it would be an insufficient basis to support "effects" jurisdiction under the Supreme Court's personal jurisdiction jurisprudence.

As the Supreme Court remarked in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), construing *Calder*: "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts *with the forum*"—*i.e.*, with Texas itself—and "not just [with] the plaintiff." *Id.* at 1123 (emphasis added). In contrast with the "ample" variety of actions directed toward and into California by the defendant in *Calder*, *id.*, Exxon points only to Attorney General Healey's remarks at the press conference in New York in March 2016, and, implicitly, her issuance of the CID to Exxon in Massachusetts in April 2016 to justify personal jurisdiction. *See* Opp. at 7. None of these actions, however, could reasonably be described as "contacts *with the forum*"—*i.e.*, contacts *with Texas*, as opposed to Exxon—and Exxon has not suggested that Attorney General Healey has any other such contacts with Texas. *Id.* at 1123.

Instead, Exxon, the plaintiff, attempts to refocus the jurisdictional analysis on its *own*

4

presence in Texas and the alleged foreseeable "injuries resulting from [defendant Attorney General Healey's] conduct to be suffered in Texas." Opp. at 7. This logic was rejected—unanimously—by the Supreme Court in *Walden*. *Id.* at 1125. Here, as in *Walden*, Exxon's presence in Texas and its "claimed injury do[] not evince a connection between" *Attorney General Healey* and Texas, let alone a "meaningful" one. *Id.* Indeed, as in *Walden*, Exxon "would have experienced this same [alleged, intentional harm] wherever else" it might have established its principal place of business. *Id.* As such, there is no hint of any plausible basis for personal jurisdiction over Attorney General Healey to be found by jurisdictional discovery.[3]

### C.   EXXON'S ARGUMENTS FOR VENUE AND RIPENESS ARE WITHOUT MERIT.

Exxon makes no pretense of arguing that discovery is warranted for Attorney General Healey's other dispositive grounds for dismissal. Instead, Exxon argues first that, as a matter of law, venue is proper because Exxon's principal place of business is in this district and this district is the location of its alleged harm. Opp. at 9. That Exxon resides in Texas or may feel some effect from the CID there, however, does not control the venue analysis; what matters is "the *defendant's* conduct, and where that conduct took place," and none of the Attorney General's conduct took place in Texas. *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (emphasis added) ("[T]he fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district.") (citing *Woodke v. Dahm*, 70 F.3d 983, 985-86 (8th

---

[3] In any event, jurisdictional discovery may not rest "on vague assertions that additional discovery will produce needed, but unspecified, facts." *Freeman v. United States*, 556 F.3d 326, 341–42 (5th Cir. 2009) (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir.1980)); *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (affirming denial of jurisdictional discovery when facts not disputed and requesting party "unable to state how the discovery he requested would change the jurisdictional determination"); *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982) (when "the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted.").

5

Cir. 1995)); *see also Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921, at *4 (N.D. Tex. Aug. 31, 2010) (Kinkeade, J.) (holding venue in Texas improper where plaintiffs brought § 1983 claim against Utah judge based on sanctions order issued in Utah state court case). Exxon's decision to maintain its principal place of business in Texas or store its responsive documents there is, therefore, not relevant to the venue inquiry.[4]

Exxon also argues that this case is, in fact, ripe for adjudication. Exxon is wrong because, as the Fifth Circuit has recognized, Exxon may defend itself and raise objections in Massachusetts state court when—and if—an actual enforcement action against it ultimately occurs. *Google, Inc. v. Hood*, 822 F.3d 212, 225-26 (5th Cir. 2016). *See also In re Ramirez*, 905 F.2d 97, 98 (5th Cir. 1990) (dismissing action to quash investigatory subpoena for lack of subject matter jurisdiction "because of the availability of an adequate remedy at law if, and when, the agency files an enforcement action"); *Atl. Richfield Co. v. FTC*, 546 F.2d 646 (5th Cir. 1977) (pre-enforcement relief from administrative subpoenas inappropriate in light of opportunity to bring due process and regulatory procedural objections in any subsequent enforcement proceeding). To evade this outcome, Exxon wrongly insists that the CID is self-executing, but that is unquestionably not the case under Massachusetts law; Attorney General Healey has no independent ability to impose a civil penalty without a court order. The Attorney General has moved to compel Exxon's compliance with the CID in the context of Exxon's blanket challenge

---

[4] Exxon accuses Attorney General Healey of misconstruing the Fifth Circuit's decision in *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008), Opp. at 9 n.8, but Exxon is mistaken. "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b). If it . . . does not, venue is improper, and the case *must* be dismissed or transferred under § 1406(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013) (emphasis added). *Volkswagen* makes clear that even discretionary decisions on proper venue may be vacated through mandamus if the district court committed a "clear abuse of discretion" producing a "patently erroneous result." 545 F.3d at 310. Here, as in *Volkswagen*, it would be extraordinary error not to dismiss or, instead, transfer venue to the District of Massachusetts, where "the only connection between this case and the [Northern] District of Texas is plaintiff['s] choice to file there." *Id.* at 318 (citation omitted).

to the CID in Massachusetts Superior Court under Massachusetts law, Mass. Gen. Laws ch. 93A, § 6(7), but Exxon will face no consequence for not complying with the CID while its petition to set aside or modify it is pending before the Superior Court—nor until its appeals are exhausted. Moreover, Attorney General Healey has only *initiated an investigation* by issuing a CID under Chapter 93A; she has neither determined to undertake an enforcement action against Exxon under that law nor asserted any specific claim under any other state law. The dispute is, therefore, not ripe.

### D. EXXON'S ALLEGATIONS DO NOT EVIDENCE THE EXTRAORDINARY CIRCUMSTANCES REQUIRED TO JUSTIFY DEPOSING ATTORNEY GENERAL HEALEY.

Exxon does not dispute that testimony of high ranking officials can be gained only in extraordinary circumstances, and its only response is to argue that the facts here—Attorney General Healey's remarks at a press conference,[5] a pre-press conference briefing to attorneys general by an environmental attorney and a scientist, and the existence of a routine common interest agreement—constitute such circumstances.[6] Opp. at 10. But allegations such as

---

[5] Contrary to Exxon's implication otherwise, Opp. at 19 n.14, Attorney General Healey and other state attorneys general regularly discuss their offices' open civil investigations, especially when those investigations respond to public information that suggests wrongdoing. *See, e.g.*, Robert Weisman, *AG warns maker on hepatitis drug costs*, BOSTON GLOBE, Jan. 27, 2016, *available at* http://www.bostonglobe.com/business/2016/01/27/calls-gilead-lower-price-hepatitis-medicines/CNykZWySat0LiYY4cUZfRO/story.html; Felice J. Freyer, *AG Maura Healey continues probe of Connector software developer*, BOSTON GLOBE, May 18, 2015, *available at* https://www.bostonglobe.com/metro/2015/05/17/massachusetts-attorney-general-maura-healey-continues-probe-connector-software-developer/KTU4qzm8FVxKXZXmGWZY2I/story.html; Lana Shadwick, *Texas AG Vows 'Aggressive Investigation' of Planned Parenthood*, BREITBART, July 29, 2015, *at* http://www.breitbart.com/texas/2015/07/29/texas-ag-vows-aggressive-investigation-of-planned-parenthood/.

[6] Exxon goes so far as to assert that an e-mail between a conference attendee and an employee of the New York Attorney General's Office somehow demonstrates Attorney General Healey's bad faith, Opp. at 10, though Exxon points to not a single fact to show that Attorney General Healey or anyone in her Office was even aware of that correspondence prior to Exxon obtaining it, via state public records requests made by Exxon's third-party surrogates, and then attaching it as an exhibit to its complaint. Such grounds are not a sufficient basis to obtain deposition testimony from Attorney General Healey. *See EEOC v. Exxon*

7

Exxon's, on which this Court relied in issuing its Orders, do not even come close to satisfying the high bar to obtain a top executive's testimony. The Fifth Circuit has been adamant that, "a defendant is not entitled to engage in counter-discovery to find grounds for resisting a subpoena." *In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991) (granting mandamus and vacating discovery order). Absent a "substantial demonstration" including "meaningful evidence that [an] agency is attempting to abuse its investigative authority," *no* such discovery is permissible. *Id.* Exxon's anemic allegations and conclusory statements in no way constitute "meaningful evidence" sufficient to meet this standard.

Exxon suggests that, since the Court has acted *sua sponte*, Exxon has no burden here to demonstrate that discovery is necessary to support its claim that *Younger* abstention is barred by alleged bad faith on the part of Attorney General Healey.[7] Opp. at 17. In any case, the facts alleged by Exxon are insufficient to show bad faith—to the extent Exxon has a burden, it has failed to meet it, and the Court's reliance on those facts as a basis for its Orders was error. Attorney General Healey has no burden here; moreover, as she has argued, it is reversible error for the Court to ignore, as it appears to have done, the extensive record facts that demonstrate her good faith basis for issuing the CID. Vacate Mem. at 16 & 16 n.3; *see Smith v. Hightower*, 693 F.2d 359, 369 (5th Cir. 1982).

Notwithstanding Exxon's unavailing efforts to distinguish and mischaracterize the cases on which Attorney General Healey relies, those cases uniformly stand for the longstanding proposition that a federal court's authority is narrowly circumscribed with respect to ordering or

---

*Corp.*, No. Civ.A. 3:95-cv-1311-H, 1998 WL 50464, at *2 (N.D. Tex. Jan. 20, 1998) (Sanders, J.) (deposition unwarranted where Exxon failed to make any showing that official had knowledge of a letter and information contained therein).

[7] Indeed, Exxon admits that it did not request discovery, perhaps because it recognizes it could not meet its heavy burden. Opp. at 17.

permitting the depositions of high ranking officials. The U.S. Supreme Court took pains in *United States v. Morgan* to point out that the district court erred when, "over the government's objection," it authorized the deposition of the Agriculture Secretary, concluding "the Secretary should never have been subjected to examination," because it was not the court's role to probe his "mental processes." 313 U.S. 409, 422 (1941) (internal quotation omitted).

The Fifth Circuit, in *In re Stone v. IRS*, held it was an abuse of discretion for the district court to order a federal government official to attend a settlement conference—a far less onerous burden than a deposition—observing, "[t]his court, as well, has recognized that the government must sometimes be treated differently," since high-ranking officials "could never do their jobs if they could be subpoenaed for every case involving their agency." 986 F.2d 898, 904 (5th Cir. 1993); *see also In re Office of Inspector Gen.*, 933 F.2d at 278 (citing *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985)). In *In re FDIC v. 11,950 Acres of Land*, the Fifth Circuit granted mandamus, holding that the magistrate had abused his discretion by permitting depositions of FDIC board members where he "apparently made no attempt" to find exceptional circumstances. 58 F.3d 1055, 1060 (5th Cir. 1995). There, the Fifth Circuit found no "strong showing of bad faith or improper behavior," notwithstanding claimant's "allegations of misconduct (including conspiracy and cover-up) and assertions of gross abuse of power by government agencies and officials." *Id.* at 1062.

The Eleventh Circuit granted mandamus and ordered the district court to quash a subpoena issued to an official where no "extraordinary circumstances" justified taking his testimony. *In re United States (Kessler)*, 985 F.2d 510, 512-13 (11th Cir. 1993). The Second Circuit recently followed suit, affirming the district court's issuance of a protective order to prohibit the depositions of the mayor and deputy mayor of New York City, where plaintiffs

failed to demonstrate "exceptional circumstances" and "did not identify with particularity the information the needed, nor did they contend [defendant officials] had first-hand knowledge about the litigated claims, or that the relevant information could not be obtained elsewhere." *Lederman v. New York City Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013). And, in another case in this district in which Exxon attempted to gain the deposition testimony of a high-ranking government official, the court found that Exxon's mere contention that the EEOC Chairman "may have personal knowledge of the facts at issue because of statements he made to the media and because he is a top policy maker" was insufficient. *EEOC v. Exxon Corp.*, No. Civ.A. 3:95-cv-1311-H, 1998 WL 50464, at *1 (N.D. Tex. Jan. 20, 2008) (Sanders, J.). While the official in that case had submitted an affidavit stating he lacked personal knowledge, the court held that even if Exxon could establish that the official had personal knowledge of the lawsuit, that would not be sufficient grounds to permit discovery from him, and further found that "Exxon's speculation" that the official had information about the Department of Justice's involvement in the case concerning possible ethical violations by Exxon experts did not meet the exceptional circumstances test. *Id.* at *2.

The facts alleged by Exxon are plainly insufficient to justify the deposition of Attorney General Healey, and the Court's Deposition Order must be vacated.

## CONCLUSION

For the foregoing reasons, the Court should grant Attorney General Healey's motion to vacate its discovery orders and stay discovery, and for a protective order.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>MAURA HEALEY<br>ATTORNEY GENERAL OF<br>MASSACHUSETTS</td></tr>
<tr><td></td><td>By her attorneys:</td></tr>
<tr><td></td><td><i>s/ Douglas A. Cawley</i></td></tr>
<tr><td>Richard Johnston (<i>pro hac vice</i>)<br>Chief Legal Counsel<br>richard.johnston@state.ma.us<br>Melissa A. Hoffer (<i>pro hac vice</i>)<br>Chief, Energy and Environment Bureau<br>melissa.hoffer@state.ma.us<br>Christophe G. Courchesne (<i>pro hac vice</i>)<br>Chief, Environmental Protection Division<br>christophe.courchesne@state.ma.us<br>I. Andrew Goldberg (<i>pro hac vice</i>)<br>andy.goldberg@state.ma.us<br>Peter C. Mulcahy (<i>pro hac vice</i>)<br>peter.mulcahy@state.ma.us<br>Assistant Attorneys General<br>OFFICE OF THE ATTORNEY GENERAL<br>One Ashburton Place, 18th Floor<br>Boston, MA 02108<br>(617) 727-2200</td><td>Douglas A. Cawley<br>Lead Attorney<br>Texas State Bar No. 04035500<br>dcawley@mckoolsmith.com<br>Richard A. Kamprath<br>Texas State Bar No. 24078767<br>rkamprath@mckoolsmith.com<br>MCKOOL SMITH, P.C.<br>300 Crescent Court, Suite 1500<br>Dallas, Texas 75201<br>(214) 978-4000<br>Fax (214) 978-4044</td></tr>
</table>

Dated: December 1, 2016

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 1, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

<i>s/ Douglas A. Cawley</i>
Douglas A. Cawley
