IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

EXXON MOBIL CORPORATION,

§
§
§
§

Plaintiff,

§
§

v.

§
§

NO. 4:16-CV-469-K

ERIC TRADD SCHNEIDERMAN,
Attorney General of New York, in his
official capacity, and MAURA TRACY
HEALEY, Attorney General of
Massachusetts, in her official capacity.

§
§
§
§
§
§

Defendants.

§
§

**MEMORANDUM OF LAW IN SUPPORT OF THE NEW YORK ATTORNEY
GENERAL'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND AND PROCEDURAL HISTORY.................................................................. 2

      A.  The Important Role of State Attorneys General in Conducting Investigations and
          Enforcing State Laws Protecting Consumers and Investors. ....................................... 2

      B.  NYOAG's Subpoena to Exxon to Investigate Potential Violations of New York Laws
          Governing Commercial Disclosures. ........................................................................ 3

      C.  NYOAG's Public Statements Regarding Its Investigation of Exxon. ......................... 4

      D.  The Ongoing New York State Court Proceeding to Supervise Exxon's Subpoena
          Compliance. .......................................................................................................... 5

      E.  Exxon's Belated Request for Federal Review of the Subpoena. ................................. 6

ARGUMENT ....................................................................................................................... 7

I.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE NEW YORK STATE
     ATTORNEY GENERAL IN HIS OFFICIAL CAPACITY.................................................... 7

      A.  The Exercise of Personal Jurisdiction over NYOAG Would Violate Due Process...... 7

          1. NYOAG Lacks Minimum Contacts with Texas.................................................. 7

          2. It Is Unreasonable to Exercise Personal Jurisdiction over NYOAG. ...................... 8

      B.  The Texas Long-Arm Statute Does Not Reach NYOAG. .......................................... 10

II. THE NORTHERN DISTRICT OF TEXAS IS AN IMPROPER VENUE ............................ 10

III.THE RIPENESS DOCTRINE BARS THIS FEDERAL CHALLENGE TO A STATE
      INVESTIGATIVE SUBPOENA ................................................................................... 12

IV. THIS COURT LACKS SUBJECT MATTER JURISDICTION BASED ON THE
     *YOUNGER* ABSTENTION DOCTRINE.......................................................................... 14

      A.  There Is a Pending New York Judicial Proceeding Concerning the Subpoena. .......... 14

      B.  New York Has Strong Interests in the NY State Court Proceeding. .......................... 15

      C.  Exxon Can Raise All of Its Federal Claims in the NY Proceeding. ........................... 16

      D.  Younger's "Bad Faith" Exception Does Not Apply to the NY State Proceeding. ..... 17

V. THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR
RELIEF AGAINST NYOAG ............................................................................................... 17

    A.  Allegations of Political Motivation Do Not State a First Amendment Claim. ........... 18

    B.  Exxon's Fourth Amendment Claim Fails as a Matter of Law. ................................... 20

    C.  Exxon's Fourteenth Amendment Claims Fail as a Matter of Law. ............................ 21

    D.  Exxon's Dormant Commerce Clause Claims Fail as a Matter of Law...................... 22

    E.  Exxon's Preemption Claims Fail as a Matter of Law. ............................................... 23

    F.  Exxon's State Law Claims Are Barred by the Eleventh Amendment. ....................... 24

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*A.S. Goldmen v. N.J. Bureau of Sec.*,
   163 F.3d 780 (3d Cir. 1999)............................................................23

*Advanced Dynamics Corp. v. Mitech Corp.*,
   729 F. Supp. 519 (N.D. Tex. 1990) ..............................................11

*Agey v. Am. Liberty Pipe Line Co.*,
   141 Tex. 379 (1943)........................................................................2

*Allen v. Cisneros*,
   815 F.3d 239 (5th Cir. 2016) .......................................................20

*Am. Dental Coop., Inc. v. Att'y-Gen.*,
   127 A.D.2d 274 (1st Dep't 1987) ................................................12

*Asahi Metal Indus. Co., Ltd. v. Super. Ct.*,
   480 U.S. 102 (1987)........................................................................7

*Asgeirsson v. Abbott*,
   773 F. Supp. 2d 684 (W.D. Tex. 2011)........................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................17-18

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgt. Inc.*,
   18 N.Y.3d 341 (2011) ....................................................................3

*Atl. Richfield Co. v. FTC*,
   546 F.2d 646 (5th Cir. 1977) .......................................................12

*Bigham v. Envirocare of Utah, Inc.*,
   123 F. Supp. 2d 1046 (S.D. Tex. 2000) ......................................11

*Bishop v. State Bar of Tx.*,
   736 F.2d 292 (5th Cir. 1984) .......................................................17

*Brunswick Hosp. Cen., Inc. v. Hynes*,
   52 N.Y.2d 333 (1981) ...................................................................12

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)........................................................................8

*City of Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981).......................................................................20

*City of Renton v. Playtime Theatres, Inc.*,
    475 U.S. 41 (1986) ...................................................................................................19

*Clark v. Amoco Prod. Co.*,
    794 F.2d 967 (5th Cir. 1986) ...................................................................................18

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) .....................................................................................3

*Colorado River Water Conservation District v. U.S.*,
    424 U.S. 800 (1976) ...............................................................................................14

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994) ......................................................................................11

*Craig v. Barney*,
    678 F.2d 1200 (4th Cir. 1982) .................................................................................15

*Daigle v. Gulf State Utilities Co.*,
    794 F.2d 974 (5th Cir. 1986) ...................................................................................25

*DeSpain v. Johnston*,
    731 F.2d 1171 (5th Cir. 1984) .................................................................................15

*Dias v. Consol. Edison Co. of N.Y.*,
    116 A.D.2d 453 (1st Dep't 1986) ............................................................................16

*Dunham v. Ottinger*,
    243 N.Y. 423 (1926) ...............................................................................................15

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982) ...........................................................................................22-23

*Endicott Johnson Corp. v. Perkins*,
    317 U.S. 501 (1943) ...............................................................................................24

*Ex parte Young*,
    209 U.S. 123 (1908) ............................................................................................9, 24

*FEC v. Lance*,
    635 F.2d 1132 (5th Cir. 1981) ............................................................................18, 24

*First Energy Leasing Corp. v. Attorney General of N.Y.*,
    68 N.Y.2d 59 (1986) .................................................................................................4

*Google v. Hood*,
    822 F.3d 212 (5th Cir. 2016) ..........................................................................*passim*

*Hartman v. Moore,*
  547 U.S. 250 (2006) ............................................................................. 20-21

*Holt Oil & Gas Corp. v. Harvey,*
  801 F.2d 773 (5th Cir. 1986) ...................................................................... 7-8

*Huffman v. Pursue, Ltd.,*
  420 U.S. 592 (1975) ..................................................................................15

*Hynes v. Moskowitz,*
  44 N.Y.2d 383 (1978) ................................................................................12

*Illinois ex rel. Madigan v. Telemarketing Assocs.,*
  538 U.S. 600 (2003) ..................................................................................18

*In re FDIC,*
  58 F.3d 1055 (5th Cir. 1995) .......................................................................22

*In re Grand Jury of S. Dist.,*
  508 F. Supp. 1210 (S.D. Ala. 1980) .............................................................22

*In re Ramirez,*
  905 F.2d 97 (5th Cir. 1990) ........................................................................12

*Izen v. Catalina,*
  398 F.3d 363 (5th Cir. 2005) .......................................................................20

*J. & W. Seligman & Co. v. Spitzer,*
  No. 05-cv-7781, 2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 26, 2007) .................... 22-23

*Juidice v. Vail,*
  430 U.S. 327 (1977) ..................................................................................16

*Keenan v. Tejada,*
  290 F.3d 252 (5th Cir. 2002) .......................................................................20

*Kentucky v. Graham,*
  473 U.S. 159 (1985) ...................................................................................7

*Leroy v. Great W. United Corp.,*
  443 U.S. 173 (1979) ..................................................................................11

*Lippitt v. Raymond James Fin. Servs., Inc.,*
  340 F.3d 1033 (9th Cir. 2003) .......................................................................3

*Lowrey v. Tex. A&M Univ. Sys.,*
  117 F.3d 242 (5th Cir. 1997) .......................................................................17

*Marshall v. Jerrico, Inc.*,
    446 U.S. 238 (1980)..................................................................21

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)...................................................................18

*McKinley v. Abbott*,
    643 F.3d 403 (5th Cir. 2011) ....................................................24

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982)..................................................................15

*Moore v. Sims*,
    442 U.S. 415 (1979).............................................................14, 16

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995)..................................................................23

*NAACP v. Alabama*,
    357 U.S. 449 (1958)..................................................................19

*Nelson v. Univ. of Tex.*,
    535 F.3d 318 (5th Cir. 2008) ......................................................7

*New York v. Mobil Oil Corp.*,
    40 A.D.2d 369 (1st Dep't 1973) ...............................................12

*Nicholson v. State Comm'n on Judicial Conduct*,
    50 N.Y.2d 597 (1980) ..............................................................19

*NiGen Biotech, L.L.C. v. Paxton*,
    804 F.3d 389 (5th Cir. 2015) ......................................................9

*Nuovo Pignone, SpA v. Storman Asia M/V*,
    310 F.3d 374 (5th Cir. 2002) ......................................................8

*O'Keefe v. Chisholm*,
    769 F.3d 936 (7th Cir. 2014) ....................................................13

*Ohio Civil Rights Comm'n v. Dayton Christian Schs.*,
    477 U.S. 619 (1986)..................................................................15

*Okla. Press Publ'g Co. v. Walling*,
    327 U.S. 186 (1943)..................................................................21

*Oliver v. Scott*,
    276 F.3d 736 (5th Cir. 2002) ....................................................17

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ................................................................................24

*Pennzoil Co. v. Texaco Inc.*
   481 U.S. 1(1987) ................................................................................16

*People v. Applied Card Sys., Inc.*,
   11 N.Y.3d 105 (2008) ........................................................................24

*PTI, Inc. v. Philip Morris Inc.*,
   100 F. Supp. 2d 1179 (C.D. Cal. 2000) ..............................................9

*Reisman v. Caplin*,
   375 U.S. 440 (1964) ..........................................................................12

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ..........................................................................20

*Rhurgas v. Marathon Oil*,
   526 U.S. 574 (1999) ............................................................................7

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
   878 F.2d 875 (5th Cir. 1989) ............................................................21

*Saxton v. Faust*,
   No. 09- 2458, 2010 U.S. Dist. LEXIS 90671 (N.D. Tex. Aug. 31, 2010)
   (Kinkeade, J.) ................................................................................8, 10

*SEC v. McGoff*,
   647 F.2d 185 (D.C. Cir. 1981) ..........................................................19

*Smith v. Johnson*,
   No. 04-cv-374, 2005 U.S. Dist. LEXIS 3770 (N.D. Tex. Mar. 11, 2005) ..............................24

*Smith v. Hightower*,
   693 F.2d 359 (5th Cir. 1982) ............................................................17

*Sprint Commc'ns, Inc. v. Jacobs*,
   134 S. Ct. 584 (2013) ........................................................................15

*Steffel v. Thompson*,
   415 U.S. 452 (1974) ......................................................................15-16

*Stroman Realty, Inc. v. Antt*,
   528 F.3d 382 (5th Cir. 2008) ..............................................................8

*Stroman Realty, Inc. v. Wercinski*,
   513 F.3d 476 (5th Cir. 2008) ........................................................7-10

vii

*Tex. Ass'n of Bus. v. Earle,*
    388 F.3d 515 (5th Cir. 2004) ........................................................ 14-16

*Turner Broad. Sys., Inc. v. FCC,*
    512 U.S. 622 (1994)....................................................................19

*U.S. v. Ferrara,*
    54 F.3d 825 (D.C. Cir. 1995).........................................................10

*U.S. v. Morton Salt Co.,*
    338 U.S. 632 (1950)....................................................................21

*U.S. v. O'Brien,*
    391 U.S. 367 (1968)....................................................................19

*U.S. v. Transocean Deepwater Drilling, Inc.,*
    767 F.3d 485 (5th Cir. 2014) .........................................................21

*U.S. v. Zadeh,*
    820 F.3d 746 (5th Cir. 2016) .........................................................21

*United Transp. Union v. Foster,*
    205 F.3d 851 (5th Cir. 2000) .........................................................13

*Varela v. Gonzales,*
    773 F.3d 704 (5th Cir. 2014) .........................................................18

*Walden v. Fiore,*
    134 S. Ct. 1115 (2014)..................................................................8

*Wightman v. Tex. Sup. Ct.,*
    84 F.3d 188 (5th Cir. 1996) .....................................................14, 17

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989)......................................................................20

*Woodke v. Dahm,*
    70 F.3d 983 (8th Cir. 1995) ...........................................................11

*Wilson v. Thompson,*
    593 F.2d 1375, 1383 (5th Cir. 1979) ...............................................17

*World-wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980)......................................................................8

*Younger v. Harris,*
    401 U.S. 37 (1971).............................................................. *passim*

**FEDERAL STATUTES**

15 U.S.C.
  §§ 77p(a), 78bb(a)(2) ...................................................................................................... 23

28 U.S.C.
  § 1257 ............................................................................................................................. 16
  § 1391(b) ............................................................................................................. 1, 10, 12


42 U.S.C.
  § 1985 .......................................................................................................................... 24-25

**STATE STATUTES**

New York  General Business Law
  § 349 ................................................................................................................ 2-3, 15, 21
  § 352 ................................................................................................................ 2-4, 15, 21

New York Executive Law
  § 63(12) ............................................................................................................... 2,3,15, 21

Texas Civil Practice & Remedies  Code
  § 17.041 .......................................................................................................................... 10
  § 17.042 .......................................................................................................................... 10

**RULES**

New York Civil Practice Law and Rules
  § 404(a) ........................................................................................................................... 12
  § 2308 ......................................................................................................................... 12, 15

## PRELIMINARY STATEMENT

In this action, Exxon Mobil Corp. ("Exxon") asks this Court to enjoin further enforcement of an investigatory subpoena ("Subpoena") issued in November 2015 by the New York Office of the Attorney General ("NYOAG") for documents relating to its investigation of potential violations by Exxon of New York's business, securities, and consumer fraud laws. Exxon has been complying with the Subpoena for nearly a year without objection—producing over one million pages of documents—but sought to add NYOAG to this action only a few days after this Court ordered jurisdictional discovery against the Massachusetts Attorney General. Relief from Exxon's remaining obligations under the Subpoena, if appropriate, is available from the New York state court that is actively supervising Exxon's compliance with the Subpoena.

As a threshold matter, this Court lacks personal jurisdiction over NYOAG and must dismiss Exxon's complaint on that basis. Fifth Circuit law holds that it violates due process for a district court to exercise personal jurisdiction over the official of another State, sued in his official capacity for acts taken to enforce that State's laws. Comity for New York as a sovereign participant in our federal system further demands dismissal for lack of personal jurisdiction.

Settled law also requires dismissal on two other threshold grounds. *First*, venue in this judicial district is improper under the governing standard in 28 U.S.C. § 1391(b). *Second*, Exxon can allege no injury from the Subpoena warranting federal intervention because Exxon has an adequate means of redress in the New York state court enforcement proceeding.

If this Court concludes—contrary to controlling decisional law—that it has personal jurisdiction over NYOAG, that venue in this district is proper, and that Exxon's claim is ripe for federal review, the Court should nevertheless abstain from hearing this case against NYOAG in light of the ongoing proceeding to enforce the Subpoena in New York state court, where Exxon indisputably can—but has elected not to—raise any constitutional defenses to compliance.

Finally, even if this Court were to hold that Exxon's case surmounts each and every one of these jurisdictional and procedural hurdles, the Court still should dismiss the amended complaint for failure to state a claim on the merits.

## BACKGROUND AND PROCEDURAL HISTORY

**A. The Important Role of State Attorneys General in Conducting Investigations and Enforcing State Laws Protecting Consumers and Investors.**

Attorneys General, including NYOAG, have the fundamental responsibility of investigating and remediating matters of public concern affecting their States. Attorneys General traditionally serve as "chief law officer" for their States, safeguarding the public interest through investigations and enforcement proceedings to halt violations of state law. *See Agey v. Am. Liberty Pipe Line Co.*, 141 Tex. 379, 382 (1943).

NYOAG protects the people and interests of New York by enforcing state securities and consumer fraud laws. New York's longstanding securities law—the Martin Act—provides for broad law-enforcement powers to investigate suspected fraud in the offer, sale, or purchase of securities. *See generally* N.Y. Gen. Bus. Law ("GBL") art. 23-A. NYOAG also has authority to investigate suspected fraud against New York consumers, *see, e.g.,* N.Y. GBL § 349, and suspected fraud or illegality in the conduct of business, *see* N.Y. Exec. Law § 63(12). All of these statutes give NYOAG authority to seek judicial relief as appropriate, and NYOAG has a long history of taking action against consumer and securities fraud that threatens the health, safety, and economic security of the people, businesses, and institutions of the State.

In enforcing New York's securities and consumer fraud laws, NYOAG has sought to ensure that companies are truthful in their disclosures to investors and consumers about the impact of climate change on the companies' businesses. This does not demand that a company hew to any particular orthodoxy or political position. It does mean, however, that when an energy company

makes disclosures about the impact of climate change and related government policies on that company's core business, it must do so accurately—and not present an external picture materially at odds with the company's internal knowledge. Misrepresentation of such information is not a legitimate business strategy or protected by the First Amendment. Rather, deliberately misleading speech is detrimental to investors and consumers, who are entitled to rely on the fact that a company's public positions do not materially differ from, for example, the conclusions its executives and managers have reached in the course of its operations.

### B. NYOAG's Subpoena to Exxon to Investigate Potential Violations of New York Laws Governing Commercial Disclosures.

New York law authorizes NYOAG to "prevent fraudulent securities practices by investigating and intervening at the first indication of possible securities fraud on the public." *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 18 N.Y.3d 341, 352 (2011). NYOAG issued the Subpoena to Exxon on November 4, 2015, pursuant to the Martin Act, N.Y. Exec. Law § 63(12), and N.Y. GBL § 349. Am. Cmpl. ¶ 20.[1] The Subpoena at issue here requested documents that would allow NYOAG to determine whether Exxon had made false or misleading representations to consumers and investors about the impacts of climate change, including its impact on Exxon's business operations and financial reporting. N.Y. App. 52-69.

Exxon admits that, over the past year, it has produced well over one million pages of documents in response to the Subpoena. Am. Cmpl. ¶ 74. Exxon continues to produce responsive documents and has agreed to finish production within two months. N.Y. App. 230.

---

[1] References to "N.Y. App." and "Exhibit" or "Ex." are to the Appendix in Support of Defendant Eric T. Schneiderman's Motion to Dismiss ExxonMobil's First Amended Complaint and Motion to Quash dated December 5, 2016, and the exhibits thereto. References to the "Amended Complaint" or "Am. Cmpl." are to Exxon's First Amended Complaint [Dkt. 100], N.Y. App. 2-50. Documents concerning NYOAG's investigation of Exxon, including those filed in or related to the ongoing proceedings in New York state court, are properly "considered part of the pleadings" because they "are referred to in . . . complaint and are central to [Exxon's] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

**C.  NYOAG's Public Statements Regarding Its Investigation of Exxon.**

Following issuance of the Subpoena, NYOAG publicly confirmed that it was investigating Exxon. *See* Am. Cmpl. ¶ 22. Those statements are not improper: New York law vests NYOAG with discretion to determine if and when to keep a Martin Act investigation confidential. N.Y. GBL § 352(5); *see First Energy Leasing Corp. v. Att'y Gen.*, 68 N.Y.2d 59, 64 (1986).

In his public comments, Attorney General ("AG") Schneiderman provided appropriate caveats reflecting a lack of any prejudgment about the investigation. For example, when speaking about the investigation shortly after the Subpoena was issued, AG Schneiderman explained: "[W]e're at the very beginning stages. We don't want to prejudge what we're going to find, but the public record is troubling enough that we brought—that we decided we had to bring this investigation." N.Y. App. 74.

On March 29, 2016, the AGs of New York and Vermont invited several state AGs and staff to a conference a week after New York and seventeen other States filed a brief in the U.S. Court of Appeals for the D.C. Circuit in support of EPA's Clean Power Plan. N.Y. App. 80; *see* Br. for New York *et al.* in Support of Resps., *West Virginia v. EPA*, No. 15-1363 (D.C. Cir. Mar. 29, 2016). Speaking about NYOAG's investigation of Exxon at an accompanying press conference, AG Schneiderman—consistent with his other public statements—explained that the investigation was ongoing and that NYOAG had not reached any conclusions. When asked what he hoped to accomplish in the investigation, AG Schneiderman responded:

> It's too early to say. We started the investigation. We received a lot of documents already. We're reviewing them. We're not prejudging anything . . . . It's too early to say what we're going to find with Exxon but we intend to work as aggressively as possible, but also as carefully as possible.

N.Y. App. 100. And in response to a question asking him to compare the Exxon investigation to the multi-state efforts against tobacco companies for concealing the harmful effects of tobacco

use, AG Schneiderman responded:

> Well, again, we're at the early stages of the case. We are not prejudging the evidence. We've seen some things that have been published by [media outlets], but it is our obligation to take a look at the underlying documentation and to get at all the evidence, and we do that in the context of an investigation where we will not be talking about every document we uncover.

N.Y. App. 102. Although Exxon alleges that the "playing field changed" with this press conference, Am. Cmpl. ¶ 27, its compliance with the Subpoena continued for months thereafter. Indeed, Exxon did not bring suit against NYOAG for another seven months—almost a year after the issuance of the Subpoena. N.Y. App. 312-16.

### D.  The Ongoing New York State Court Proceeding to Supervise Exxon's Subpoena Compliance.

In August 2016, NYOAG issued a separate subpoena to PricewaterhouseCoopers LLP ("PwC"), Exxon's independent auditor, seeking documents concerning, *inter alia*, Exxon's reporting of oil and gas reserves and projections of oil and gas prices. N.Y. App. 105-23.

On October 14, 2016, NYOAG commenced a proceeding in New York State Supreme Court ("NY State Court Proceeding") under article 4 of New York's Civil Procedure Law and Rules ("CPLR"), seeking to compel PwC and Exxon to comply with the PwC subpoena. N.Y. App. 125-27. In defense, Exxon raised only a claim of accountant-client privilege under Texas law. N.Y. App. 129-30, 132-59. At oral argument, the Court observed that Exxon had not disputed that the PwC subpoena was "reasonable and appropriate," N.Y. App. 164, or that NYOAG was acting in "good faith," N.Y. App. 176. And Exxon even confirmed that NYOAG "ha[s] the right to conduct the investigation" into the accuracy of Exxon's public statements. N.Y. App. 169. The New York court held Exxon's claim of privilege to be without merit. N.Y. App. 179-84. Exxon appealed, but stipulated that PwC would continue to produce documents that Exxon did not claim to be privileged. N.Y. App. 186-90.

5

On November 14, 2016, after Exxon's undue delay in producing certain categories of documents, NYOAG moved in the NY State Court Proceeding to compel production of all responsive documents concerning Exxon's valuation, accounting, and reporting of its assets and liabilities; and establishing a schedule for prompt production of all remaining documents responsive to the Subpoena. N.Y. App. 192-94. In response, Exxon again did not raise any federal constitutional challenge, but merely asserted that some of the documents at issue were beyond the Subpoena's scope. N.Y. App. 196-220. Ruling from the bench, the court denied NYOAG's request for those documents as outside of the Subpoena,[2] but ordered the parties to agree by December 1 to a schedule for production of all remaining responsive material, stating that otherwise the court would "fix a date" for Exxon's full compliance. N.Y. App. 227-28. Since then, Exxon has informed the New York court that it is "fully complying with its obligations with regard to the Subpoena" and has expressly agreed to "complete" its production of responsive documents by January 31, 2017. N.Y. App. 230.

### E.  Exxon's Belated Request for Federal Review of the Subpoena.

Nearly a year after receiving the Subpoena, Exxon sought to join NYOAG as a defendant in this case to seek relief from further compliance with the Subpoena. N.Y. App. 312. Exxon did so four months after initially suing only the Massachusetts Attorney General, and its amended complaint mostly repeats the allegations of the original complaint.

---

[2] The court noted—and Exxon agreed—that NYOAG could issue a new subpoena for these documents. N.Y. App. 224-25.

## ARGUMENT

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE NEW YORK STATE ATTORNEY GENERAL IN HIS OFFICIAL CAPACITY

Exxon sues AG Schneiderman in his official capacity only. Am. Cmpl. ¶ 16. An official-capacity suit "is *not* a suit against the official personally," but rather "is to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Nelson v. Univ. of Tex.*, 535 F.3d 318, 320 (5th Cir. 2008) (treating official-capacity suit "as one against the State"). Yet a holding that this Court has personal jurisdiction over NYOAG here (1) would violate due process, and (2) is not authorized by the Texas long-arm statute.[3] *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008). Moreover, in light of the federalism and comity concerns implicated by this suit, the question of personal jurisdiction over NYOAG must be addressed before any other issue. *See Rhurgas v. Marathon Oil*, 526 U.S. 574, 586-88 (1999).

### A.   The Exercise of Personal Jurisdiction over NYOAG Would Violate Due Process.

The Fifth Circuit has squarely held that the Due Process Clause does not permit a federal court to exercise personal jurisdiction over the government official of another State, sued in his official capacity for acts undertaken to enforce that state's law. *See Stroman*, 513 F.3d at 488. That holding compels dismissal of the amended complaint.

#### 1.   NYOAG Lacks Minimum Contacts with Texas.

Due process requires "minimum contacts" between a defendant and the forum. *See Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102, 108-09 (1987). And a showing of minimum contacts requires the defendant to have taken some "affirmative act" constituting purposeful availment "of the privilege of conducting activities" in the forum State. *Holt Oil & Gas Corp. v.*

---

[3] Alternatively, to avoid the issue of personal jurisdiction, the Court should transfer venue to the Southern District of New York. *See* Point II, *infra*.

*Harvey*, 801 F.2d 773, 777 (5th Cir. 1986).

Investigating potential violations of New York law by a company that does business in New York, but happens to be headquartered in Texas, does not invoke the benefits and protections of Texas's laws such that NYOAG "should reasonably anticipate being haled into court" in Texas. *See World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 386-87 (5th Cir. 2008); *Saxton v. Faust*, No. 09- 2458, 2010 U.S. Dist. LEXIS 90671, at *8 (N.D. Tex. Aug. 31, 2010) (Kinkeade, J.).

The only alleged contact NYOAG has had with Texas was emailing the Subpoena to Exxon's General Counsel. Am. Cmpl. ¶ 19. This alleged contact is not purposeful availment by NYOAG of the protections and benefits of Texas law. *See Stroman,* 513 F.3d at 484 (service of cease-and-desist order in Texas not enough for personal jurisdiction over out-of-state official). Every other alleged act or omission by NYOAG occurred exclusively in New York. *See* Am. Cmpl. ¶¶ 27-51. The lack of suit-related Texas contacts by NYOAG thus bars personal jurisdiction, irrespective of whether Exxon may claim to feel some effects from the Subpoena in Texas. *See, e.g., Walden v. Fiore*, 134 S. Ct. 1115, 1124-25 (2014) (holding plaintiff's contacts irrelevant to personal jurisdiction); *Saxton*, 2010 U.S. Dist. LEXIS 90671, at *8.

### 2.   It Is Unreasonable to Exercise Personal Jurisdiction over NYOAG.

Due process further prohibits the exercise of personal jurisdiction over NYOAG because doing so would be unreasonable. This second step of analysis considers (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the States' shared interests in furthering important social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002). Each of these factors counsels against forcing NYOAG to

defend the propriety of a New York investigative subpoena before a Texas tribunal.

"Federalism and state sovereignty are an essential part of the constraints that due process imposes upon personal jurisdiction," and they prevent a federal district court from exercising personal jurisdiction "over a nonresident state official." *Stroman*, 513 F.3d at 488. Requiring one State to submit to the long-arm jurisdiction of another State "constitutes an extreme impingement on state sovereignty." *PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1189 n.8 (C.D. Cal. 2000). It also raises the specter of state officials' having to defend attempts to enforce their own States' laws "in courts throughout the nation," rather than in the "local state or federal courts" that possess "special expertise" in such matters.[4] *Stroman*, 513 F.3d at 487. Here, distinct questions of *both* Massachusetts and New York law would need to be addressed, *see* Am. Cmpl. ¶¶ 61, 69, and resolving claims against two sister States together in a non-local forum "greatly diminish[es] the independence of the states." *Stroman*, 513 F.3d at 488.

The remaining reasonableness factors heavily weigh against the exercise of personal jurisdiction. *First*, litigating in this Court imposes a severe burden on NYOAG, which is based in New York, including by requiring private local counsel. *Second*, the forum state, Texas, has an imperceptible stake in this litigation. *See Stroman*, 513 F.3d at 487 (forum has "little interest" in opining on other states' laws). *Third*, Exxon's interest in obtaining relief will not be harmed by a dismissal for lack of personal jurisdiction because Exxon can raise all of its constitutional objections in a New York forum. *Infra* at Point IV.C. *Fourth* and finally, resolving this matter in New York maximizes judicial economy. There is an ongoing proceeding in New York; parallel litigation in two states would be duplicative, inefficient, and unwarranted.

---

[4] *See, e.g, NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015) (Texas Attorney General sued in Texas); *see also Ex parte Young*, 209 U.S. 123, 149 (1908) (Minnesota Attorney General sued in Minnesota).

**B. The Texas Long-Arm Statute Does Not Reach NYOAG.**

In any event, the Texas long-arm statute does not apply to a suit against a state official of another State, sued in his official capacity, for actions taken in pursuit of the potential violation of that State's laws. *See Stroman*, 513 F.3d at 483. As relevant here, Texas's long-arm provision allows for jurisdiction over a "nonresident," defined as (1) an "an individual who is not a resident of this state," or (2) "a foreign corporation, joint-stock company, association, or partnership." Tex. Civ. Prac. & Rem. Code § 17.041. The State of New York does not meet either definition. The latter category, covering "business entities," does not include "fellow states." *Stroman*, 513 F.3d at 482-83. Nor is a State an "individual" with a residence under any "ordinary meaning" of the statute." *Id.*; *see also U.S. v. Ferrara*, 54 F.3d 825, 831-82 (D.C. Cir. 1995). By extension, NYOAG cannot be a nonresident "doing business" in Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.042; *Saxton*, 2010 U.S. Dist. LEXIS 90671, at *8 (long-arm statute does not permit haling out-of-state official "into a Texas court simply because the effects of" action "are felt in Texas").

## II. THE NORTHERN DISTRICT OF TEXAS IS AN IMPROPER VENUE

This lawsuit against NYOAG also fails because the Northern District of Texas is not a proper venue. Invoking 28 U.S.C. § 1391(b)(2), the only subsection that could conceivably apply, Exxon alleges that "all or a substantial part of the events giving rise to the claims occurred in the Northern District of Texas." Am. Cmpl. ¶19. But Exxon's claims center on allegations of purported misconduct by NYOAG, none of which occurred in Texas. NYOAG is based in New York, from where its investigations are conducted and where the Subpoena issued. *See* Am. Cmpl. ¶ 16. And New York was home to the March 29 press conference that Exxon alleges "changed" the "playing field," Am. Cmpl. ¶ 27 by supposedly transforming a presumptively valid investigation into an alleged interstate conspiracy by law enforcement officials, *see* Am.

Cmpl. ¶ 107.

That Exxon must "collect and review" documents "stored or maintained in the Northern District of Texas," Am. Cmpl. ¶ 19, is not relevant. In determining whether or not venue is proper, courts "look[ ] to the defendant's conduct, and where that conduct took place." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000); *see Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). Nor is venue in Texas supported by the allegation that the Subpoena "seek[s] to suppress" Exxon's speech. Am. Cmpl. ¶ 19. Exxon's claims focus on NYOAG's alleged "ulterior motives," which could only have arisen outside of Texas. Am. Cmpl. ¶ 107; *see, e.g.*, Am. Cmpl. ¶¶ 11, 38, 53, 80, 88, 92, 95, 99, 110, 128.[5]

Exxon's asserted basis for filing in Texas is its "position that there is a group of attorney generals who has decided to use their law enforcement powers for a political purpose, and the only place we can get them all, rather than fight them separately in each court, is in our home state of Texas." N.Y. App. 173. But venue requirements serve "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient" forum. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979); *accord Advanced Dynamics Corp. v. Mitech Corp.*, 729 F. Supp. 519, 521 (N.D. Tex. 1990). The "convenience" to a plaintiff of suing several state officials in "a single action" in "one place" is not relevant. *Leroy*, 443 U.S. at 183 (Northern District of Texas was an improper venue for Texas company's action against Idaho, Maryland, and New York securities regulators); *see also Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (*Leroy*'s focus on defendants' convenience "still retains viability" despite amendments to § 1391(b)). In sum, venue is lacking here, and the case must be dismissed.

---

[5] *Asgeirsson v. Abbott*, 773 F. Supp. 2d 684, 693 (W.D. Tex. 2011), previously cited by Exxon, is not to the contrary. Venue does not appear to have been contested in that case, which was brought in any event by local Texas legislators against the Texas Attorney General to challenge a Texas statute.

## III. THE RIPENESS DOCTRINE BARS THIS FEDERAL CHALLENGE TO A STATE INVESTIGATIVE SUBPOENA

The recipient of a non-self-executing administrative subpoena may not bring a federal suit to enjoin compliance where state procedures give it a full and fair opportunity to assert the "same challenges raised in the federal suit" before it faces "consequence[s] for resisting the subpoena." *Google v. Hood*, 822 F.3d 212, 226 (5th Cir. 2016). There is "no undue hardship in being remitted" to a state court remedy. *Atl. Richfield Co. v. FTC*, 546 F.2d 646, 649 (5th Cir. 1977); *see also, e.g.*, *Reisman v. Caplin*, 375 U.S. 440, 445-49 (1964); *In re Ramirez*, 905 F.2d 97, 98-99 (5th Cir. 1990).

Here, because New York's procedures provide Exxon with an adequate pre-enforcement remedy, binding precedent compels the dismissal of Exxon's claims against NYOAG. *See Google*, 822 F.3d at 224-26. To secure compliance, NYOAG must first establish in New York state court "that the subpoena was authorized." N.Y. CPLR 2308(b); *Am. Dental Coop., Inc. v. Att'y-Gen.*, 127 A.D.2d 274, 280 (1st Dep't 1987) (NYOAG must establish its "[legal] authority, the relevance of the items sought, and some factual basis for [the] investigation"). And a recipient can challenge the subpoena's validity in defense to a motion to compel or by moving to quash. *See Brunswick Hosp. Ctr., Inc. v. Hynes*, 52 N.Y.2d 333, 339 (1981). In so doing, the recipient may raise constitutional claims, *e.g.*, *New York v. Mobil Oil Corp.*, 40 A.D.2d 369, 370 (1st Dep't 1973), and claims that the subpoena is being "used as an instrument of harassment," *Hynes v. Moskowitz*, 44 N.Y.2d 383, 393 (1978) (citation omitted).

Consistent with these procedures, NYOAG has brought an action in a New York state court to enforce the Subpoena and another subpoena issued to Exxon's independent auditor, PwC. *Supra* at 5-6. In that ongoing proceeding, Exxon can "raise an[y] objection in point of law" that it may have to compliance. N.Y. CPLR 404(a). Exxon thus has ample opportunity to have all of

12

its federal claims resolved through New York's available state court processes, including its claims under the First, Fourth, and Fourteenth Amendments, and for alleged federal preemption.

Nonetheless, Exxon intentionally has avoided raising *any* of its federal claims in the New York action or making any categorical objection to the Subpoena or the state proceeding itself.[6] *E.g.* N.Y. App. 132-59, 196-220. Although in this action, Exxon alleges that the Subpoena was "issued in bad faith," Am. Cmpl. ¶ 13, Exxon has not disputed NYOAG's "good faith" before the New York court, N.Y. App. 176, and has in fact stated that NYOAG has "the right to conduct the investigation," N.Y. App. 169.

Exxon's refusal to invoke New York's comprehensive and available system for challenging the Subpoena does not manufacture an injury permitting federal court intervention. The question is whether the "same challenges raised in the federal suit *could* be litigated in state court." *Google*, 822 F.3d at 226 (emphasis added). If so, litigants cannot skip over adequate state procedures and burden the federal courts with challenges to subpoenas that are being enforced elsewhere or have not yet been enforced. Federal courts may not hear claims for injuries that are "speculative and may never occur." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). And as the Fifth Circuit has observed, comity and federalism concerns render the federal courts even "less willing to intervene" in anticipatory or needless disputes about state-issued subpoenas. *Google*, 822 F.3d at 226; *see also O'Keefe v. Chisholm*, 769 F.3d 936, 939-40 (7th Cir. 2014) (reversing injunction against state investigation supervised by state court). Any assertion of actionable injury from the Subpoena is especially frail here, given Exxon's claimed compliance. N.Y. App. 230.

---

[6] In the New York action, Exxon even called its constitutional claims "beside the point." N.Y. App. 201.

## IV. THIS COURT LACKS SUBJECT MATTER JURISDICTION BASED ON THE *YOUNGER* ABSTENTION DOCTRINE

Even if this Court otherwise had jurisdiction (which it does not) the Court should abstain from hearing Exxon's federal suit under the *Younger* doctrine in light of the ongoing New York action.[7] Under *Younger v. Harris*, federal courts must avoid action that would "unduly interfere" with state judicial systems. 401 U.S. 37, 44-45 (1971); *Moore v. Sims*, 442 U.S. 415, 423 (1979). The doctrine promotes the fundamental ideals of federalism and comity, thus respecting States' sovereignty. *Younger*, 401 U.S. at 44-45. Abstention also recognizes that federal injunctions should not issue when the moving party has an adequate remedy at law and no irreparable injury. *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518-19 (5th Cir. 2004). *Younger* abstention is proper where, as here: (1) the dispute involves an ongoing state judicial proceeding; (2) the State has an important interest in regulating the subject matter of the claim; and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *See Wightman v. Tex. Sup.Ct.*, 84 F.3d 188, 189 (5th Cir. 1996).

### A. There Is a Pending New York Judicial Proceeding Concerning the Subpoena.

As discussed above, *supra* at 5-6, a New York court is directly supervising Exxon's compliance with the Subpoena. That proceeding "to enforce the administrative subpoena in [a] state court" provides the necessary foundation for *Younger* abstention. *Cf. Google*, 822 F.3d at 223 (denying *Younger* abstention because State had yet to take this same enforcement step).

Exxon's pursuit of federal relief against the Subpoena creates "duplicative legal proceedings, and can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce

---

[7] Abstention is also warranted under *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976), which permits federal courts to abstain from adjudicating matters at issue in a parallel state court proceeding after considering such factors as the avoidance of piecemeal litigation, the inconvenience of the federal forum, and the adequacy of the state proceedings, *id.* at 818–19.

constitutional principles.'" *Id.* at 222 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)); *see Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (state courts are presumed to "safeguard federal constitutional rights"); *Steffel v. Thompson*, 415 U.S. 452, 460-61 (1974). Federal interference in "a civil proceeding such as this" would thus be "an offense" to interests of New York in a way "every bit as great as it would be were [the action] a criminal proceeding." *Huffman*, 420 U.S. at 604; *see Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013).

### B.  New York Has Strong Interests in the NY State Court Proceeding.

The "most important" concern driving *Younger* abstention is "a proper respect for state functions." *Earle*, 388 F.3d at 519. And *Younger* is directly contravened when a federal action "effectively halt[s] a legitimate state investigation . . . and enjoin[s] a pending state court proceeding." *DeSpain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984).

New York has a vital interest in enforcing its consumer and investor protection laws through NYOAG investigations and related enforcement proceedings. *See* N.Y. Exec. Law § 63(12); N.Y. GBL § 349(a), § 352(1)-(2). New York's sovereign interest is reflected in, and furthered by, the judicial process available to investigative targets to assert objections to subpoenas. *See, e.g.*, N.Y. CPLR 2308. Judicial oversight of NYOAG subpoenas has long been a primary responsibility of state courts. *See Dunham v. Ottinger*, 243 N.Y. 423, 433 (1926). A federal ruling interfering with this state judicial function would improperly intrude on "the rights of a state to enforce its own laws in its own courts." *See Craig v. Barney*, 678 F.2d 1200, 1201 (4th Cir. 1982). Such interference would be acute in this case, given that the Subpoena was issued in furtherance of NYOAG's law enforcement powers. *See Huffman*, 420 U.S. at 604; *see also Ohio Civil Rights Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 627-28 (1986).

**C.  Exxon Can Raise All of Its Federal Claims in the NY Proceeding.**

Under New York law, a non-judicial subpoena can only be enforced via court order, thus affording Exxon a clear and available mechanism to present its federal claims for review. *See Earle*, 388 F.3d at 521; *Dias v. Consol. Edison Co. of N.Y.*, 116 A.D.2d 453, 454 (1st Dep't 1986). As described earlier, *supra* at 13, Exxon has carefully avoided interposing any of its federal objections in the pending New York enforcement proceeding. But *Younger* abstention "is appropriate unless state law clearly bars the interposition of the constitutional claims." *Moore*, 442 U.S. at 425-26. Hence, Exxon "need be accorded only an *opportunity* to fairly pursue [its] constitutional claims in the ongoing state proceedings, and [its] failure to avail [itself] of such opportunities does not mean that the state procedures were inadequate." *Juidice v. Vail*, 430 U.S. 327, 337 (1977) (citation omitted, emphasis added).[8]

Indeed, a core purpose of the *Younger* doctrine is to prevent forum shopping. In *Pennzoil Co. v. Texaco Inc.*, for example, a litigant could not avoid *Younger* abstention by failing to "give the Texas [state] courts an opportunity to adjudicate its constitutional claims," instead raising its claims only in federal court in New York, the site of its headquarters. 481 U.S. 1, 6-17 (1987). The geography is reversed here, but the result is the same. Entertaining Exxon's federal case would reward forum shopping and send a message that the New York courts are incapable of neutrally overseeing investigative subpoenas: the exact outcome that the *Younger* doctrine prohibits. *See Steffel*, 415 U.S. at 460-61; *see also Google*, 822 F.3d at 225 n.10 (refusing to "presume that Mississippi courts would be insensitive to the First Amendment values that can be implicated by investigatory subpoenas, or to the general principle that courts will not enforce an administrative subpoena . . . issued for an improper purpose" (citations and alterations omitted)).

---

[8] Nor would abstention foreclose federal review: Exxon could seek to press any of its federal objections in the United States Supreme Court under 28 U.S.C. § 1257.

**D.  Younger's "Bad Faith" Exception Does Not Apply to the NY State Proceeding.**

The "bad faith" exception to *Younger* abstention "is to be granted parsimoniously," *Wightman*, 84 F.3d at 190, and only to prevent a "constitutional injury done by bad faith proceedings themselves," *Bishop v. State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984).  Neither the Subpoena nor NYOAG's investigation are "proceedings" for *Younger* purposes and therefore can cause no irreparable injury. *See Google*, 822 F.3d at 223. Moreover, Exxon makes no allegation of bad faith as to the New York court overseeing Exxon's compliance with the Subpoena. Nor could Exxon plausibly or credibly do so.

As discussed above, *supra* at 13-14, Exxon has made repeated assurances that it is complying with the Subpoena and is actively participating in the New York enforcement proceeding without objection. Given Exxon's *own* statements and actions, it cannot credibly claim New York's "legal machinery is being used in bad faith." *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979); *see Smith v. Hightower*, 693 F.2d 359, 367 (5th Cir. 1982) (federal courts must "scrupulously assure[ ]" that the "heavy burden" for invoking the bad faith exception is met, lest the exception swallow the rule). In short, Exxon's production of documents, assurances of compliance, and willingness to submit to New York enforcement without meaningful resistance defeat any claim of injury that is "both great and immediate." *Younger*, 401 U.S. at 45.

**V. THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST NYOAG**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the pleading, viewing all facts in a light most favorable to the plaintiff. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002); *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). A claim may also be subject to 12(b)(6) dismissal if a successful affirmative defense appears clearly on the face of the pleadings. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Hence, although NYOAG vigorously disputes the truth of Exxon's allegations, it takes them as true solely for the purpose of this motion.

### A.  Allegations of Political Motivation Do Not State a First Amendment Claim.

Exxon alleges that the Subpoena is "pretextual," Am. Cmpl. ¶ 89, and claims that NYOAG has the "ulterior motive" of deterring Exxon's commercial speech about climate change, Am. Cmpl. ¶ 107. But even treating these unfounded allegations as true, Exxon has not stated a claim to relief under the First Amendment, which does not protect fraudulent statements concerning securities. *See Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 617 (2003).

Consistent with the First Amendment, companies can face fraud liability for suppressing or skewing internal conclusions or data, *i.e.* "alter[ing] the 'total mix' of information made available," the disclosure of which might imperil the "commercial viability" of a company's "leading product." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46-47 (2011). Indeed, Exxon acknowledges that a fraud claim can permissibly turn on the "'disconnect between'" the knowledge or beliefs of company insiders and what they "'chose to share with investors.'" Am. Cmpl. ¶¶ 3, 37. Exxon cannot avoid these settled principles merely by declaring that it has "made no statements" during New York's six-year limitations period "that could give rise to fraud." Am. Cmpl. ¶ 63. This sweeping legal conclusion—covering an untold number of unidentified public statements—is the type of "conclusory assertion[ ]" that is not entitled to an assumption of truth. *Varela v. Gonzales*, 773 F.3d 704, 710 (5th Cir. 2014). A target's unsupported allegation that it did not engage in misconduct cannot establish that its conduct is constitutionally protected from investigation. *See FEC v. Lance*, 635 F.2d 1132, 1138 (5th Cir. 1981) (disregarding subpoena recipient's "own unsworn assertion that no violations could have occurred").

18

In addition, Exxon fails to allege any First Amendment harm from the Subpoena itself. The Subpoena's requests "do not directly regulate the content, time, place, or manner of expression, nor do they directly regulate political associations." *SEC v. McGoff*, 647 F.2d 185, 187–88 (D.C. Cir. 1981). Even so, Exxon remains free to raise a First Amendment privilege against production of those documents (if any) whose release might have the "practical effect of discouraging" protected speech. *NAACP v. Alabama*, 357 U.S. 449, 461 (1958). Exxon admits that it has in fact done so, Am. Cmpl. ¶ 67, and does not object to the New York court's consideration of its privilege assertions. N.Y. App. 129. As the New York courts are equipped to review these claims under standard balancing principles, *see Nicholson v. State Comm'n on Judicial Conduct*, 50 N.Y.2d 597, 607 (1980), Exxon's attempt to interpose federal court review should be rejected.

Exxon also cannot transform NYOAG's lawful Subpoena into an "impermissible viewpoint-based restriction[ ] on speech," Am. Cmpl. ¶ 111, by claiming that NYOAG was acting with political motivations to suppress Exxon's viewpoints and speech. [9] Even liberally construed, the Amended Complaint does not identify what viewpoint of Exxon is in danger of being suppressed, or what protected speech Exxon was retaliated against for making or deterred from making. *See* Am. Cmpl. ¶ 9 (alleging that Exxon "has widely and publicly confirmed" the possibly significant impact of climate change).  Moreover, there is "no support whatever" for the notion that an allegation of "wrongful purpose or motive" is enough to defeat a legally compliant action. *U.S. v. O'Brien*, 391 U.S. 367, 383 (1968) (quotation marks omitted); *accord Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 652 (1994); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48 (1986).

---

[9] And in any event, even this claim is belied by Exxon's allegations that state attorneys general found there was "confusion" regarding climate science and acted with the goal of "disseminating accurate information" on climate change. Am. Cmpl. ¶¶ 31-36, 52.

Merely labeling the Subpoena "an apparent effort to silence, intimidate, and deter those possessing a particular viewpoint," Am. Cmpl. ¶ 110, cannot sustain a § 1983 claim. The Supreme Court made clear that, to challenge prosecutorial action as retaliation for protected speech, a plaintiff must plead and prove that the action was *independently* unjustified. *Hartman v. Moore*, 547 U.S. 250, 256-58 (2006). This element honors the "presumption that a prosecutor has legitimate grounds for the action he takes," *id.* at 263, and acknowledges that a prosecutor's motive "is particularly ill-suited to judicial review," *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 472, 489-90 (1999) (quotation marks omitted), even when there is an alleged direct "disclosure of retaliatory thinking," *Hartman*, 547 U.S. at 264. And the Fifth Circuit has extended the requirement beyond criminal prosecutions. *See Allen v. Cisneros*, 815 F.3d 239, 246 (5th Cir. 2016) (investigatory seizures).

If the relevant objective standard for official action is met, law enforcement priorities "take primacy over the citizen's right to avoid retaliation,'" and the First Amendment provides no avenue of redress. *Id.* at 244-45 (quoting *Keenan v. Tejeda*, 290 F.3d 252, 261-62 (5th Cir. 2002)); *see also Izen v. Catalina*, 398 F.3d 363, 367-68 (5th Cir. 2005). Although the foregoing suits involve individual capacity claims under § 1983, their rationale extends with force to claims, as here, against the heads of law enforcement agencies sued only in their official capacities. Such a suit is "no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and a government entity "can have no malice independent of the malice of its officials," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981). Exxon may not use a mere "invocation of the First Amendment" as a backdoor route to frustrate an investigation that has not yet progressed to an enforcement action. *Google*, 822 F.3d at 227.

**B. Exxon's Fourth Amendment Claim Fails as a Matter of Law.**

Because the recipient of an administrative subpoena "may challenge it in court before

20

complying," such subpoenas "are limited by the general reasonableness standard of the Fourth Amendment . . . not by the probable cause requirement." *U.S. v. Zadeh*, 820 F.3d 746, 756 (5th Cir. 2016). And under that standard, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *accord U.S. v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 488 (5th Cir. 2014).

Here, the Subpoena is clearly within NYOAG's statutory authority to investigate. *See* N.Y. Exec. Law § 63(12); N.Y. Gen. Bus. Law §§ 349 and 352. Moreover, the information sought by the Subpoena is relevant on its face to NYOAG's fraud investigation. The purpose of an investigative subpoena is to "discover and procure evidence, not to prove a pending charge or complaint." *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 201 (1946); *see Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989). And Exxon does not purport to explain why the materials sought are "irrelevant" to this investigation. Am. Cmpl. ¶ 114. Although Exxon suggests the Subpoena is overbroad because it seeks materials from outside the limitations periods of the statutes enforced by NYOAG, Am. Cmpl. ¶ 9, such materials may be relevant to showing the false and fraudulent nature of statements within the limitations period. Law enforcement officials can thus compel the documents' production.

### C.  Exxon's Fourteenth Amendment Claims Fail as a Matter of Law.

Exxon's Fourteenth Amendment claim is based on the assertion that it has a due process right not to be investigated by a law enforcement agency that it claims has disagreed with its political views. But due process does not require administrative prosecutors to be "entirely neutral and detached." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980) (internal quotations omitted). Moreover, judicial review of prosecutorial discretion is particularly deferential at the investigative stage, during which a prosecutor must be able to "investigate . . . wrongdoing free

from interference by the courts." *In re Grand Jury of S. Dist.*, 508 F. Supp. 1210, 1214 (S.D. Ala. 1980).

In any event, Exxon's factual allegations are consistent with a lawful, unbiased investigation. Allegations of coordination among state attorneys general, Am. Cmpl. ¶¶ 27-39, which is both appropriate and commonplace, *see* N.Y. App. 250-55, do not plausibly show an unconstitutional bias. And allegations that attorneys general discussed an ongoing investigation with members of the press or private citizens, Am. Cmpl. ¶¶ 20-26, 40-51, are likewise insufficient to state a claim, especially when those same comments—taken in context—demonstrate a lack of prejudgment, *see supra* at 4-5. Put simply, allegations of political disagreement cannot insulate the subject of an ongoing investigation from further law enforcement activity. *In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995) (taking political considerations into account could not establish "bad faith or improper behavior" by agency officials). A rule that prosecutors and enforcement agencies cannot investigate any subject with whom they are alleged to disagree politically would allow subjects to handpick their investigators or avoid being investigated at all.

### D. Exxon's Dormant Commerce Clause Claims Fail as a Matter of Law.

The "Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982). Although Exxon asserts that its rights under the Dormant Commerce Clause have been violated by the Subpoena, it fails to allege that the statutes authorizing the Subpoena are constitutionally improper. There is no allegation that these laws, by giving NYOAG the power to investigate fraud, either directly discriminate against interstate commerce, have the effect of disfavoring out-of-state interests, or burden interstate commerce in a manner disproportionate to New York State's powerful interest in regulating its securities markets. *See, e.g., J. & W. Seligman & Co. v. Spitzer*, No. 05-cv-

7781, 2007 U.S. Dist. LEXIS 71881, at *17-18 (S.D.N.Y. Sept. 26, 2007).

Exxon's claim dwindles to the assertion that it is a national company, and so should be free of state investigation. But the rule stated in *Edgar v. MITE Corp.* only prohibits a State from regulating commerce taking place "wholly outside [its] borders." 457 U.S. 642-43. Given the nationwide nature of Exxon's business, and its participation in the securities markets within New York State, Exxon could not possibly allege—and has not alleged—that it is not engaged in commerce within New York State. No support exists for the theory that NYOAG is barred by the Commerce Clause from investigating Exxon's potentially fraudulent statements regarding securities sold in New York to New York consumers simply because the statements were made to a national audience.

### E.  Exxon's Preemption Claims Fail as a Matter of Law.

Exxon's premature suggestion that any charges ultimately filed by NYOAG would be federally preempted also fails to state a claim. *See* Am. Cmpl. ¶¶ 78, 94. There is a background "presumption that Congress does not intend to supplant state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). In addition, federal law deliberately protects States' authority over securities transactions and to investigate and prosecute securities fraud by including provisions designed to save state securities fraud laws from preemption. *See* 15 U.S.C. §§ 77p(a), 78bb(a)(2). Both sources of law "continue to play a vital role in eliminating securities fraud and abuse." *A.S. Goldmen v. N.J. Bureau of Sec.*, 163 F.3d 780, 782 (3d Cir. 1999).

Here, NYOAG is investigating whether representations made by Exxon were fraudulent, including—as relevant to Exxon's preemption claim—disclosures to investors. *See Lippitt v. Raymond James Fin. Servs., Inc.,* 340 F.3d 1033, 1037 (9th Cir. 2003). A court is "not free to speculate about the possible charges that might be included in a future complaint, and then to

23

determine the validity of the subpoena requests by reference to those hypothetical charges." *Lance*, 635 F.2d at 1138–39 (5th Cir. 1981) (quotation marks and alterations omitted). As Exxon concedes: "There has not been any return of a charge. There is no reality at the moment that there's going to be a trial of anything. This at the moment is a mere investigation." N.Y. App. 169.

Nevertheless, Exxon alleges NYOAG's investigation conflicts with the SEC's disclosure rules for regulated oil and gas companies. Am. Cmpl. ¶¶ 77-81. But federal regulations requiring specific disclosures are not in conflict with the Martin Act, which simply requires that any representation made to the investing public be truthful. *See People v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 117-18 (2008). Determining whether Exxon has made fraudulent or misleading representations to investors is precisely the type of permissible state enforcement action contemplated by Congress. And despite Exxon's allegations that NYOAG seeks "to layer additional disclosure requirements," Am. Cmpl. ¶ 124, the Subpoena requires no more than for Exxon to produce documents. In the event of an enforcement action, Exxon is free to raise preemption as a defense. *See Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943) (defenses to future enforcement action cannot be accepted "as a defense against [a] subpoena").

**F.  Exxon's State Law Claims Are Barred by the Eleventh Amendment.**

The Eleventh Amendment bars a private suit against a State in federal court unless it seeks to enjoin an ongoing violation *of federal law. Ex parte Young*, 209 U.S. at 123; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105-06 (1984); *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011). Exxon's claims under the Texas Constitution and Texas common law[10] are thus

---

[10] Exxon's conspiracy claim under 42 U.S.C. § 1985 also fails for numerous reasons. *First*, § 1985 claims are for private conspiracies for recovery of damages, and thus barred by the Eleventh Amendment. *Smith v. Johnson*, No. 04-cv-374, 2005 U.S. Dist. LEXIS 3770, at *12 (N.D. Tex. Mar. 11, 2005). *Second*, even if solely for prospective,

barred by the Eleventh Amendment. *See* Am. Cmpl. ¶¶ 106-108, 110, 113, 116, 128.

## CONCLUSION

For the foregoing reasons, NYOAG respectfully requests that this Court grant its motion to dismiss the First Amended Complaint, and all claims asserted therein, with prejudice and together with such further relief as the Court deems just and proper.

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of New York

By his attorneys:

*s/ Pete Marketos*
Pete Marketos
Lead Attorney
Texas State Bar No. 24013101
pete.marketos@rgmfirm.com
Tyler J Bexley
Texas State Bar No. 24073923
tyler.bexley@rgmfirm.com
REESE GORDON MARKETOS LLP
750 N. Saint Paul St. Suite 610
Dallas, TX 75201
(214) 382-9810
Fax: (214) 501-0731

Jason Brown*
*Chief Deputy Attorney General*
Roderick L. Arz (*pro hac vice*)
*Assistant Attorney General*
Eric Del Pozo*
*Assistant Solicitor General*
NEW YORK STATE OFFICE OF THE
ATTORNEY GENERAL
120 Broadway, 25th Floor
New York, NY 10271
212-416-8085

*\*pro hac vice application forthcoming*

Jeffrey M. Tillotson, P.C.
Texas Bar No. 20039200
jtillotson@TillotsonLaw.com
TILLOTSON LAW
750 N. Saint Paul Street, Suite 610
Dallas, Texas 75201
Telephone: (214) 382-3041
Facsimile: (214) 501-0731

Dated: December 5, 2016

---

injunctive relief, any claim under § 1985(2) or § 1985(3) fails to state a claim because those sections are directed at conspiracies to deprive equal protection, and thus require allegations of class-based animus. *Daigle v. Gulf State Utilities Co.*, 794 F.2d 974, 979-80 (5th Cir. 1986).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on December 5, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Pete Marketos*
Pete Marketos