IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| EXXON MOBIL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ERIC TRADD SCHNEIDERMAN,<br>Attorney General of New York, in his<br>official capacity, and MAURA TRACY<br>HEALEY, Attorney General of<br>Massachusetts, in her official capacity.<br><br>Defendants. | § § § § § § § § § § § § § | NO. 4:16-CV-469-K |

**MEMORANDUM OF LAW IN SUPPORT OF THE NEW YORK ATTORNEY
GENERAL'S MOTION TO QUASH DISCOVERY AND FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND AND PROCEDURAL HISTORY.........................................................3

    A. Investigative and Enforcement Authority of Attorneys General .......................3

    B. The NYOAG's Investigation of Exxon.............................................................4

    C. Exxon's Attempts to Obtain Discovery from the NYOAG ...............................8

ARGUMENT .................................................................................................................11

I. DISCOVERY IS NOT NECESSARY TO RESOLVE THE NYOAG'S
   MOTION TO DISMISS ..............................................................................................11

    A. The Absence of Personal Jurisdiction is Dispositive .......................................11

    B. Burdensome Jurisdictional Discovery Violates the
       Principle of *Younger v. Harris* .........................................................................13

II. THE DISCOVERY REQUESTS WERE ISSUED IN VIOLATION
    OF RULE 26(D) OF THE FEDERAL RULES OF CIVIL PROCEDURE ...............18

III. THE DISCOVERY REQUESTS SEEK PRIVILEGE, PROTECTED
     TESTIMONY AND SHOULD BE QUASHED ........................................................19

    A. The Deposition of the Attorney General and Senior NYOAG
       Attorneys Would Necessarily Elicit Privilege Information ............................19

    B. The Document Requests and Written Discovery Plainly Seek
       Privileged Information ....................................................................................20

CONCLUSION...............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agey v. Am. Liberty Pipe Line Co.*,
  141 Tex. 379 (1943).................................................................................2

*Allen v. Cisneros*,
  815 F.3d 239 (5th Cir. 2016) .........................................................15, 16

*Alpine View Co. Ltd. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ...............................................................11

*Asociacion Nacional de Pescadores v. Dow Quimica*,
  988 F.2d 559 (5th Cir. 1993) ...............................................................12

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgt. Inc.*,
  18 N.Y.3d 341 (2011)......................................................................6, 17

*Ballard v. Wilson*,
  856 F.2d 1568 (5th Cir. 1988) .............................................................17

*Bishop v. State Bar of Tx.*,
  736 F.2d 292 (5th Cir. 1984) ...............................................................14

*Branch v. Phillips Petrol. Co.*,
  638 F.2d 873 (5th Cir. 1981) ...............................................................21

*Chamberlain v. Kurtz*,
  589 F.2d 827 (5th Cir. 1979) ...............................................................20

*Edgenet, Inc. v. Home Depot U.S.A., Inc.*,
  259 F.R.D. 385 (E.D. Wisc. 2009)......................................................18

*Gerber v. Down E. Cmty. Hosp.*,
  266 F.R.D. 29 (D. Me. 2010)...............................................................21

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ...............................................................15

*Hall v. Louisiana*,
  No. 12-657, 2014 U.S. Dist. LEXIS 56165 (M.D. La. Apr. 23, 2014)....................................20

*Hannah v. Larche*,
  363 U.S. 420 (1960).............................................................................14

*Hartman v. Moore*,
    547 U.S. 250 (2006)............................................................................15, 16

*Hensler v. Dist. Four Grievance Comm. of State Bar of Tx.*,
    790 F.2d 390 (5th Cir. 1986) ............................................................17

*Hickman v. Taylor*,
    329 U.S. 495 (1947)............................................................................20

*In re City of New York*,
    607 F.3d 923 (2d Cir. 2010)...............................................................22

*In re EEOC*,
    207 Fed. Appx. 426 (5th Cir. 2006)..............................................19, 21

*In re FDIC*,
    58 F.3d 1055 (5th Cir. 1995) ........................................................ 12-13

*In re Murphy*,
    560 F.2d 326 (8th Cir. 1977) .............................................................21

*In re Office of Inspector Gen., R.R. Ret. Bd.*,
    933 F.2d 276 (5th Cir. 1991) .......................................................13, 14

*Lederman v. N.Y. City Dep't of Parks & Rec.*,
    731 F.3d 199 (2d Cir. 2013)...............................................................19

*Marisol A. by Forbes v. Giuliani*,
    No. 95-10533, 1998 U.S. Dist. LEXIS 3719 (S.D.N.Y. Mar. 23, 1998) ...............................19

*McNatt v. Texas*,
    37 F.3d 629 (5th Cir. 2004) ...............................................................14

*O'Keefe v. Chisholm*,
    769 F.3d 936 (7th Cir. 2014) .............................................................15

*Perez v. Ledesma*,
    401 U.S. 82 (1971)..............................................................................15

*Plew v. Limited Brands, Inc.*,
    No. 08-3741, 2009 U.S. Dist. LEXIS 39715 (S.D.N.Y. Apr. 23, 2009) ...............................21

*Randleman v. Fid. Nat'l Title Ins. Co.*,
    251 F.R.D. 281 (N.D. Ohio 2008) ......................................................22

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)............................................................................14

*SEC v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006) ...................................................................21

*Ruhrga s v. Marathon Oil.*,
    526 U.S. 574 (1999) ............................................................................... 11-12

*Shelton v. American Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) .....................................................................20

*Smith v. Hightower*,
    693 F.2d 359 (5th Cir. 1982) ................................................................. 14-15

*Stroman Realty, Inc. v. Wercinski*,
    513 F.3d 476 (5th Cir. 2008) .......................................................................12

*Theriot v. Parish of Jefferson*,
    185 F.3d 477 (5th Cir. 1999) .......................................................................20

*Thompson v. Fred's Stores of Tenn., Inc.*,
    No. 15-102, 2015 U.S. Dist. LEXIS 128449 (S.D. Miss. Sept. 24, 2015) ............................18

*Wayte v. United States*,
    470 U.S. 598 (1985) ....................................................................................14

*Wilson v. Thompson*,
    593 F.2d 1375 (5th Cir. 1979) ............................................................... 15-16

*Younger v. Harris*,
    401 U.S. 37 (1971) ......................................................................................16

**STATE STATUTES**

New York General Business Law
    § 349 ..............................................................................................................6

New York Executive Law
    § 63(12) ........................................................................................................6

**FEDERAL REGULATIONS**

*Position of the Exec. Dep't Regarding Investigative Reports*,
    40 U.S. Op. Att'y Gen. 45 (1941) ...............................................................2

**RULES**

Federal Rules of Civil Procedure
Rule 12(b) ....................................................................................................18
Rule 26(b) ....................................................................................................21
Rule 26(d) ....................................................................................................18

Rule 26(f) ........................................................................................................................18


**MISCELLANEOUS AUTHORITIES**

State Attorneys General: Powers and Responsibilities, 244-45 (2d ed. 2007) ..............................3

Guidelines for Joint State/Federal Civil Environmental Enforcement Litigation,
 6-7 (March 2003) ...............................................................................................................3,17

## PRELIMINARY STATEMENT

Exxon Mobil Corp. ("Exxon") improperly seeks expansive discovery from the New York State Office of the Attorney General ("NYOAG")–including a deposition of senior staff at the NYOAG and voluminous documentary discovery–all for the purported purpose of determining whether the NYOAG commenced its investigation in bad faith. Such efforts to obtain internal information about an ongoing state law enforcement investigation into Exxon's potential violations of New York business, securities, and consumer fraud laws are highly improper. These efforts are particularly extraordinary here, given that (i) for the past year, Exxon has produced well over one million pages of documents in response to the NYOAG's subpoena issued in this investigation; (ii) Exxon has agreed to complete its production of documents in response to the subpoena by January 31, 2017; (iii) a New York State Court is actively supervising Exxon's compliance with the Subpoena and Exxon has never argued to that court that the NYOAG's investigation is unauthorized or was commenced in bad faith..

The Court should reject Exxon's tactics and quash the discovery propounded by Exxon. As a threshold matter–and as explained fully in the Motion to Dismiss the First Amended Complaint that NYOAG has filed together with this motion to quash–this Court lacks personal jurisdiction over the NYOAG in the suit underlying Exxon's discovery demands, venue in this district is improper, and Exxon's claimed injury is not ripe for federal review. Further, it would be a perversion of the *Younger* abstention doctrine to force the NYOAG to produce sensitive investigative materials to Exxon before this Court has determined whether it may entertain Exxon's case *at all*. At its core, the *Younger* doctrine protects fundamental federalism values by preventing undue federal interference with ongoing state processes. If allegations of bad faith in connection with those state processes were sufficient to justify discovery into the subjective

motivations of state officials, nearly every application of *Younger* would get bogged down in questions of official motivation and the narrow exception would swallow the rule.

In addition to those serious and fundamental defects, Exxon's requests also contravene the ordinary rules of discovery. The requests were served without leave of Court and are not reasonably designed to uncover information relevant to deciding the threshold issues raised in the NYOAG's motion to dismiss, which can be resolved without any discovery whatsoever. Instead, the requests appear calculated to elicit privileged and confidential information, and to interfere with an ongoing law enforcement investigation by, *inter alia*, requiring high-ranking law enforcement officials to be deposed by the entity they are investigating. In seeking such discovery, Exxon is plainly attempting to disrupt the NYOAG's investigation through invasive questioning of senior staff at the NYOAG, and to thwart the NYOAG's inquiries by seeking the production of vast numbers of internal investigative documents and information which–if they exist and are disclosed–would reveal the NYOAG's investigative strategy. For instance, Exxon seeks written admissions from the NYOAG about the "theory of liability" and "focus" of its ongoing investigation *of Exxon*. As former United States Attorney General Robert Jackson put it long ago: "Disclosure of [investigative] reports could not do otherwise than seriously prejudice law enforcement. Counsel for a defendant or prospective defendant, could have no greater help than to know how much or how little information the Government has, and what witnesses or sources of information it can rely upon."[1]

For all of these reasons, the Court should quash Exxon's discovery demands in their entirety.

---

[1] Position of the Exec. Dep't Regarding Investigative Reports, 40 U.S. Op. Att'y Gen. 45, 46 (1941) (refusing to provide Congress with investigative reports).

## BACKGROUND AND PROCEDURAL HISTORY

### A.  Investigative and Enforcement Authority of Attorneys General

A fundamental responsibility of Attorneys General of each state, including the NYOAG, is investigating and remediating matters of public concern affecting their States. Attorneys General traditionally serve as their State's "chief law officer" responsible for safeguarding the public interest through, among other things, investigations and enforcement proceedings to halt violations of state law. *See Agey v. Am. Liberty Pipe Line Co.*, 141 Tex. 379, 382 (1943). It is not uncommon for such investigations and enforcement proceedings to involve entities that operate in multiple States or that are incorporated or headquartered outside the investigating Attorney General's state. N.Y. App. 252-53.[2] And Attorneys General frequently collaborate in investigating and combatting suspected unlawful activity that may be occurring in many states. *See* N.Y. App. 318 (Nat'l Ass'n of Att'ys Gen., *State Attorneys General: Powers and Responsibilities* ("*Attorneys General*") 244-45 (2d ed. 2007)); N.Y. App. 320-24 (Nat'l Ass'n of Attorneys General & Dep't of Justice, Environmental & Nat'l Resources Division, *Guidelines for Joint State/Federal Civil Environmental Enforcement Litigation* 6-7, 20-21 (March 2003)).

In New York, it is the NYOAG's obligation to the people of the State to enforce state laws, including those enacted to protect consumers and investors from fraud. And the NYOAG has a long history of taking action against consumer and securities fraud that threatens the health, safety, and economic security of the people, businesses, and institutions of the State.

For years, the NYOAG has consistently sought to ensure that companies in New York speak truthfully to the public when they disclose the impact of environmental issues or regulations on their operations and finances. These official actions, whether in the form of investigations or

---

[2] All references to "Exhibit," "Ex." or "App." are to the Appendix in Support of the New York Attorney General's Motion to Dismiss the First Amended Complaint and to Quash Discovery submitted herewith.

enforcement proceedings, have focused on specific, actionable conduct taken by companies and individuals in violation of New York law. When an energy company makes disclosures about the impact of climate change and related government policies on that company's core business, New York law requires it do so accurately–and not present an external picture materially at odds with what the company or its executives have concluded internally. The NYOAG has conducted numerous investigations to ensure that corporate statements about environmental issues comply with New York laws governing commercial disclosures. For example:

- In 2008 and 2009, the NYOAG announced the successful settlement of three investigations of potentially misleading statements by companies operating in New York about the impact of climate change on their business. N.Y. App. 326-49.

- In 2014, the NYOAG announced the successful settlement of two investigations of potentially misleading statements by companies concerning the financial impact of the use of hydraulic fracturing as part of the natural gas extraction process. N.Y. App. 351-70.

- In 2015, the NYOAG announced the successful settlement of an investigation of Peabody Energy (formerly Peabody Coal). As a result of the settlement, Peabody was prohibited from making the following misleading statements to investors: (1) stating that it could not predict the potential impact of climate regulations on its business when, in fact, Peabody *had* projected internally that such regulations would have severe negative impacts on coal demand, and (2) claiming that an International Energy Agency report had found government action affecting demand for coal unlikely, and that such demand would remain high, when the report had not, in fact, drawn that conclusion. N.Y. App. 372-90.

**B.  The NYOAG's Investigation of Exxon.**

NYOAG had a good faith basis for commencing the investigation and, as set forth below, Exxon's Amended Complaint should be dismissed without an intrusive inquiry into the merits of the NYOAG's ongoing investigation, which properly remain confidential at this investigatory, pre-enforcement stage. Nonetheless, a discussion of certain limited facts relating to information in the public record—namely, Exxon's public statements—follows to provide context.

4

In the years prior to the commencement of the NYOAG's investigation into Exxon, the company made numerous public statements concerning its purported understanding of the causes, course, and business and financial impact of climate change. N.Y. App. 422-40. Apparent contradictions between some of those statements and internal company documents that became publicly available in early 2015 suggested that Exxon may not have been accurately disclosing to investors and consumers what it knew about the risks and impact of climate change on its business and financial reporting. N.Y. App. 422-40.

More recent statements by the company that specifically addressed the impact of climate change on the company's business included a 2014 report entitled *Energy and Carbon - Managing the Risks*. N.Y. App. 442-71. Exxon published this report in response to shareholders' repeated requests that the company set out its plan for managing the risks posed to its business by climate change: for example, the risk that Exxon would have "unburnable proved reserves of oil and natural gas" or "stranded" assets if nations collectively implemented regulations aimed at achieving a "low carbon scenario." N.Y. App. 449 & 460. In addressing that issue, the report assured shareholders that Exxon was "confident that none of [its] hydrocarbon reserves are now or will become 'stranded,'" N.Y. App. 442, that the company's "current investments in new reserves are [not] exposed to the risk of stranded assets," N.Y. App. 460, and that the company was employing an analysis of a "proxy cost" of carbon to reflect expected government regulation in testing the economic viability of its exploration and other capital projects on an ongoing basis. N.Y. App. 458.

Some of these statements in the *Managing the Risks* report appear to be based on unsupported assumptions, including the following, which may render the statements potentially misleading: (1) that fossil fuel demand will not decline in a low carbon scenario, despite the

5

steep increase in prices that Exxon asserts would be needed to achieve such a scenario; and (2) that median household income will remain flat for decades, such that a low energy scenario would cost American households a large percentage of income, even though the models upon which Exxon purports to rely, the government agencies whose data it cites, and Exxon's own public reports predict robust GDP growth and/or rising incomes. N.Y. App. 450.

New York law authorizes NYOAG to "prevent fraudulent securities practices by investigating and intervening at the first indication of possible securities fraud on the public." *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgt. Inc.*, 18 N.Y.3d 341, 349-50 (2011). To that end, the NYOAG issued a document subpoena ("Subpoena") to Exxon on November 4, 2015, pursuant to the Martin Act, N.Y. Gen. Bus. Law, article 23-A (securities fraud statute); N.Y. Exec. Law § 63(12) (general business fraud); and N.Y. Gen. Bus. Law § 349 (consumer fraud). The Subpoena seeks, among other things, documents and information concerning whether and how Exxon publicly disclosed its own conclusions about the impact, risk, and economic significance of climate change on the company's business operations and financial reporting. N.Y. App. 59-60.

Exxon did not serve objections to the NYOAG's Subpoena, and to date has produced more than one million pages of documents to the NYOAG. Am. Cmpl. ¶ 74.[3] Exxon has also withheld certain documents under claims of various privileges, including documents that Exxon claims would injure its expressive and associational freedoms under the First Amendment. *Id.* ¶¶ 11, 67.

In August 2016, the NYOAG issued a separate subpoena to PricewaterhouseCoopers LLP ("PwC"), Exxon's independent auditor, seeking documents concerning, *inter alia*, Exxon's reporting of oil and gas reserves and projections of oil and gas prices. N.Y. App. 112-14. The

---

[3] References to the "Amended Complaint" or "Am. Cmpl." are to Exxon's First Amended Complaint dated November 10, 2016 [Dkt. 100]. N.Y. App. 2-50.

NYOAG moved to compel compliance after Exxon blocked PwC's production by asserting a purported (and never previously recognized) Texas accountant-client privilege with respect to responsive documents in PwC's possession. *See* N.Y. App. 125-27 (*People ex rel. Schneiderman v. Pricewaterhouse Coopers LLP & Exxon Mobil Corp.*, No. 451962/2016). At oral argument, the New York court observed that Exxon did not dispute either that the subpoena to PwC was "reasonable and appropriate" or that the NYOAG had authority "to bring this investigation" and was doing so in "good faith." N.Y. App. 164. To the contrary, Exxon's counsel stated in open court that the NYOAG "ha[s] the right to conduct the investigation" into the accuracy of Exxon's public statements. N.Y. App. 169. The New York court held Exxon's claim of privilege to be without merit and further held that New York law governs enforcement of a New York subpoena in any event. N.Y. App. 180. Exxon appealed, but stipulated that PwC could continue in the meantime to produce documents that are responsive and not subject to any claimed privilege. N.Y. App. 186-90.

On November 14, 2016–in response to Exxon's failure to provide documents that the NYOAG had requested in June 2016, and that Exxon had repeatedly maintained it was on the verge of providing–the NYOAG sought an order compelling production of all responsive documents concerning Exxon's valuation, accounting, and reporting of its assets and liabilities, and establishing a schedule for prompt production of all other documents called for by the Subpoena. N.Y. App. 192-94. In response, Exxon claimed to be in compliance with the Subpoena. N.Y. App. 213. Exxon contended that certain documents covered by the NYOAG's motion were beyond the Subpoena's scope, N.Y. App. 215-18, but did not assert before the New York court any federal objections to the Subpoena or the NYOAG's underlying investigation, N.Y. App. 201. Ruling from the bench, the court (1) ordered the parties to agree by December 1

to a schedule for production of the remaining responsive documents that are within the scope of the Subpoena, or else the "Court will fix a date" for Exxon's full compliance, and (2) denied the NYOAG's request for certain limited categories of documents as beyond the scope of the Subpoena. N.Y. App. 227-28. Although Exxon and the NYOAG disagree about the parameters of what constitutes a complete production under the Subpoena (a dispute which is pending before the New York state court), the parties have agreed that Exxon will complete its production of documents by January 31, 2017. N.Y. App. 236.

**C. Exxon's Attempts to Obtain Expedited Discovery from the NYOAG Without Leave.**

On June 15, 2016, Exxon filed a complaint in this Court against the Massachusetts Attorney General, seeking an injunction barring the enforcement of her Civil Investigative Demand ("CID") against Exxon, as well as a declaration that the CID violates Exxon's rights under state and federal law. After the Massachusetts Attorney General moved to dismiss the complaint, this Court ordered discovery to aid it in determining whether to abstain from exercising federal jurisdiction in light of a pending proceeding in Massachusetts state court, in which Exxon also had raised objections to the CID ("Jurisdictional Discovery Order"). N.Y. App. 305-10 (requesting "further information so that [the court] can make a more thoughtful determination about whether this lawsuit should be dismissed for lack of jurisdiction").

On October 17, 2016, Exxon–recognizing that it could interfere with the NYOAG's investigation if permitted to obtain similar discovery from the NYOAG, N.Y. App. 174–sought leave to file an amended complaint joining the New York Attorney General as a defendant in this action. N.Y. App. 312-16. Inconsistently, Exxon then served the NYOAG with third-party discovery requests, subpoenaing the NYOAG for documents and the subpoenaing for deposition the Attorney General, the Bureau Chief of the NYOAG Environmental Protection Bureau, and

the Deputy Bureau Chief. N.Y. App. 477-509. Exxon refused a request by the NYOAG to hold the dates for compliance with these non-party subpoenas in abeyance during the pendency of various motions with this Court. N.Y. App. 511-12.

After this Court granted Exxon's motion to amend, N.Y. App. 514, Exxon served the Amended Complaint on the NYOAG and immediately requested a status conference to discuss the pending discovery requests to the NYOAG and the Massachusetts Attorney General. N.Y. App. 516-17. At the telephonic conference with the Court, held on November 16, the NYOAG relayed its intention to move to quash the third-party subpoenas. N.Y. App. 522-23. Later that day, without forewarning or notice to this Court, Exxon served the NYOAG with the following wide-ranging discovery requests that were purportedly "in lieu of" the earlier subpoenas:

1. Plaintiff Exxon Mobil Corporation's First Request to Defendant Eric Schneiderman for the Production of Documents;

2. Plaintiff Exxon Mobil Corporation's First Set of Requests for Admission to Defendant Eric Schneiderman;

3. Plaintiff Exxon Mobil Corporation's First Set of Interrogatories to Defendant Eric Schneiderman;

4. Plaintiff Exxon Mobil Corporation's Notice of Deposition of Monica Wagner, Deputy Chief of the Environmental Protection Bureau of the Office of the Attorney General of New York at 10:00 am on November 21, 2016;

5. Plaintiff Exxon Mobil Corporation's Notice of Deposition of Lemuel Srolovic at 10:00 am on November 28, 2016; and

6. Plaintiff Exxon Mobil Corporation's Notice of Deposition of Eric Schneiderman, Attorney General of the New York, at 10:00 am on December 5, 2016.

N.Y. App. 528-80 ("Discovery Requests").

The Discovery Requests directly inquire into the NYOAG's beliefs, thought processes, and legal theories, and information about how the NYOAG has conducted, and is currently conducting, its ongoing investigation. They request, for example, that the NYOAG disclose:

9

o   the identities of all NYOAG attorneys and staff involved in the investigation, in any capacity, N.Y. App. 550 (No. 1);

o   the confidential evidentiary basis for various public statements made by the Attorney General, N.Y. App. 550-51 (Nos. 2-3);

o   NYOAG's internal views on the scope of its legal authority to investigate Exxon, N.Y. App. 552 (No. 4) & 542 (Nos. 22-25);

o   the names, dates, and circumstances of individuals with whom NYOAG has spoken in the course of its investigation of Exxon, N.Y. App. 552-54 (Nos. 5, 6, 9-17) & 540 (Nos. 1, 5, 7);

o   all communications between the NYOAG and any third parties (including, if they exist, confidential informants, experts, and others) concerning the NYOAG's investigation of Exxon, *see, e.g.,* N.Y. App. 568-69 (Nos. 12, 14, 15, 19) & 552-53 (Nos. 6, 9, 10, 11);

o   information regarding what the NYOAG believes are the current priorities and "focus" of its investigation, N.Y. App. 543 (Nos. 32 33).

A day after the telephonic conference, this Court ordered the Massachusetts Attorney General to appear for a courtroom deposition in Dallas on December 13, 2016, and advised the New York Attorney General "to be available" for a deposition on that day, pending the filing of a response to the Amended Complaint. N.Y. App. 582-83.

Exxon then rescheduled depositions of the Deputy Bureau Chief and Bureau Chief of the Environmental Protection Bureau, to December 9 and 12, respectively. N.Y. App. 585-86. Exxon has not withdrawn its written discovery demands, which are due on December 16, 2016, and only belatedly withdrew its deposition notice of the Attorney General.[4] N.Y. App. 592.

_____

[4] Exxon initially refused to withdraw its notice of deposition of Attorney General Schneiderman, which Exxon had scheduled for December 5, 2016, despite the Court's November 17 order reserving decision on such a deposition until after that date.  Exxon did not withdraw that notice until November 29, less than a week before the deposition date. Currently, there is no deposition of Attorney General Schneiderman scheduled, although the Court has advised Attorney General Schneiderman to be available to be in Dallas on December 13, should a deposition be ordered.

## <u>ARGUMENT</u>

## I. DISCOVERY IS NOT NECESSARY TO RESOLVE THE NYOAG'S MOTION TO DISMISS

### A.  The Absence of Personal Jurisdiction is Dispositive and Must Be Decided First.

The NYOAG has moved to dismiss Exxon's case against it for lack of personal jurisdiction. MTD at 7-10.[5] That threshold question–whether this Court even has jurisdiction over the NYOAG–*must* be resolved before Exxon may embark on any discovery purportedly bearing on whether this Court should abstain from exercising subject-matter jurisdiction. *See Ruhrgas v. Marathon* Oil, 526 U.S. 574, 586–88 (1999).

In *Ruhrgas*, the Supreme Court identified three factors for courts to consider when deciding whether to address personal jurisdiction before reaching other threshold defenses: (1) a "State's dignitary interest" in not having the case heard by the federal courts; (2) whether "the alleged defect in subject-matter jurisdiction raises a difficult and novel question"; and (3) "concerns of judicial economy and restraint." 526 U.S. at 586–88. Those three factors control the Court's discretion in determining which threshold issue to decide first. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000).

*Ruhrgas*'s relevant factors demand that this Court dismiss the claims against the NYOAG for lack of personal jurisdiction before exploring whether *Younger* abstention might also justify dismissal. *First*, the "dignitary interest" at issue in *Ruhrgas* was that of state courts as the primary interpreters of state law. 526 U.S. at 586-87. Federal recognition a State's interest–and the sensitive judgments such recognition requires–rests on the bedrock principle of "Our Federalism," which is inherent in the design of federal and state "complementary systems for administering justice." *Id.* The reasoning is as compelling here: the State of New York has a

---

[5] All references to MTD are to the Memorandum of Law dated December 5, 2016, and submitted by the NYOAG in support of its Motion to Dismiss.

strong interest not being haled into an out-of-state federal court to defend a state investigation. And it certainly has a dignitary interest in not having its chief law enforcement officer–the New York Attorney General–deposed by an entity that the NYOAG is currently investigating for potential violations of New York law. New York's interest is further strengthened because New York courts have consistently held that the NYOAG's investigative activities are presumed to be in good faith, and Exxon has not asserted otherwise before the New York court overseeing compliance with the very investigative subpoena challenged here, *see supra* 6-8. Moreover, the NYOAG's personal-jurisdiction argument is based primarily on a Fifth Circuit case applying federal constitutional principles, *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008). Hence, this Court need not explore the scope of Texas's long-arm statute, an issue that Texas has an interest in reserving for Texas's state courts. *See Asociacion Nacional de Pescadores v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 566-67 (5th Cir. 1993).

*Second*, sustaining Exxon's overreaching discovery requests would indisputably require this Court to venture into "difficult and novel" territory. *Ruhrgas*, 526 U.S. at 588. "It is a settled rule" in the Fifth Circuit "that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995). Thus, "[t]op executive department officials" should not be summoned for questioning about their "reasons for taking official actions" absent a finding of "extraordinary circumstances." *Id.* (quotation marks omitted). And any analysis of whether such circumstances exist must take into account "the high-ranking status of the deponents, the potential burden that the depositions would impose upon them, [and] the substantive reasons for taking the depositions." *Id.* The theories that Exxon propounds in support of its requested discovery "would justify deposing high-level government officers in a plethora of cases in order to probe their

12

decision-making processes and the reasons for their decisions." *Id.* at 1061. As the Fifth Circuit has made clear, that is not an acceptable use of "litigation discovery." *Id.*

*Third*, judicial economy will be served by resolving the threshold issue of personal jurisdiction first. As described below, *infra* at 19-22, Exxon's requested discovery calls for the disclosure of confidential and privileged information from a law enforcement agency conducting an ongoing investigation. Parsing out what, if anything, Exxon is entitled to receive from the NYOAG will require substantial motion practice (and thus judicial resources).

### B.  Burdensome Jurisdictional Discovery Violates the Principles of *Younger v. Harris*.

As explained in the NYOAG's Motion to Dismiss, this Court should reject Exxon's request for federal interference in the New York state court's ongoing supervision of Exxon's obligations under the Subpoena. *See* MTD at 14-17. For similar reasons, the Court should protect the NYOAG and its employees from Exxon's intrusive discovery requests, which are designed to undermine the NYOAG's ability to discharge its law enforcement functions. Exxon has served almost one hundred requests for written discovery and documents, and noticed depositions for the New York Attorney General and two members of his senior staff.

Courts are routinely–and rightfully–hesitant to permit these types of inquiries to be made to executive officials. "[I]t is normally inappropriate to probe the mental processes and motives of the individual decision-maker, rather than to question the objective legal validity of the institutional decision." *In re Office of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991) (quotation marks omitted). This reluctance is especially warranted in the context of prosecutorial discretion. Probing the reasons for prosecutorial action "delays" proceedings and "threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry," while running the risk of "revealing the Government's enforcement policy."

13

*Wayte v. United States*, 470 U.S. 598, 607–08 (1985); *accord Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999).

Inquiry into the alleged reasons behind a criminal prosecution or civil enforcement proceeding is rare, but judicial scrutiny of mere investigations and subpoenas is rarer still. Unlike a criminal indictment or civil enforcement complaint, an investigation has not progressed to the charging phase–and may never do so, if it unearths no actionable conduct or if the parties negotiate a resolution. Review of investigative subpoenas "is to be handled summarily and with dispatch" and the recipient is "not entitled to engage in counter-discovery to find grounds for resisting." *In re Office of Inspector Gen.*, 933 F.2d at 277–88; *see also Hannah v. Larche*, 363 U.S. 420, 443–44 (1960) (cautioning against turning mere investigation into "trial-like proceeding" that would "stifle the agency in its gathering of facts").

To be sure, an exception to *Younger* abstention exists "in cases of proven harassment or prosecutions undertaken without hope of obtaining valid convictions." *McNatt v. Texas*, 37 F.3d 629 (5th Cir. 2004). But this exception is "extremely narrow," *id.*, and federal courts must "scrupulously assure[]" that the "heavy burden" for invoking the bad faith exception is met, lest the exception swallow the rule, *Smith v. Hightower*, 693 F.2d 359, 367 (5th Cir. 1982). In particular, permitting burdensome and intrusive discovery regarding a state investigation solely to determine whether an exception to *Younger* applies would directly undermine the federalism and comity values the doctrine is intended to protect.

Hence, the "bad faith" exception to *Younger* abstention "is to be granted parsimoniously," *Wightman v. Texas Sup. Ct.*, 84 F.3d 188, 190 (5th Cir. 1996), and to prevent a "constitutional injury done *by bad faith proceedings themselves*," *Bishop v. State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984) (emphasis added). The Subpoena and the NYOAG's investigation are not

14

"proceedings" for *Younger* purposes, and they cause no irreparable injury. *See Google, Inc. v. Hood*, 822 F.3d 212, 223 (5th Cir. 2016). Accordingly, Exxon's allegations of bad faith and prejudgment with respect to the Subpoena and investigation are insufficient. For the bad faith exception to apply, a plaintiff must show that the state proceeding *itself* causes irreparable constitutional harm because the proceeding is either (1) brought in bad faith to deter or in retaliation for exercise of a constitutional right, such as engaging in protected speech,[6] *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979), or (2) brought in bad faith to harass "without hope of obtaining" the request relief, *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).

Even if discovery could be ordered to test whether the "bad faith" exception to *Younger* applies, such discovery is not proper absent a substantiated claim of unlawful state action causing serious and irreparable injury. *See Hightower*, 693 F.2d at 367. Otherwise, any complaint to a federal court "about the conduct of an ongoing state investigation would defeat the state interest in [the] secrecy" of its investigative proceedings, "even if the federal court concludes" under *Younger* "that the controversy does not belong in federal court." *O'Keefe v. Chisholm*, 769 F.3d 936, 943 (7th Cir. 2014).

Exxon has not made the necessary showing to investigate the NYOAG's investigation, for at least three reasons.[7] *First*, the Court should not entertain any claim of "bad faith" and irreparable injury from Exxon where Exxon has willingly submitted to the very New York processes regarding the Subpoena that it seeks to have this Court restrain. In those proceedings, Exxon has

---

[6] To show retaliatory bad faith, a plaintiff must prove that it was engaged in constitutionally protected conduct *and* that the state proceedings were initiated for the purpose of retaliating against or deterring such conduct. *Hightower*, 693 F.2d at 367. The plaintiff's required showing is similar to that for a claim of First Amendment retaliatory prosecution. *Id.* As in the First Amendment retaliation context, the presence of an objective basis–*e.g.* probable cause or other required predicate for official action–carries "powerful evidentiary significance" and strongly cautions against further inquiry into the subjective motivations of law enforcement officials. *Hartman v. Moore*, 547 U.S. 250, 256-61 (2006); *see Allen v. Cisneros*, 815 F.3d 239, 244-46 (5th Cir. 2016).

[7] Exxon's failure to state a direct claim under the First Amendment, *see* MTD at 18-20, also undermines any attempt by it to argue the New York state proceeding was brought in retaliation for protected speech.

told a New York judge in open court that the NYOAG has "the right to conduct th[is] investigation." N.Y. App. 169; *see* MTD at 12-14. And in none of its many communications with this Court has Exxon suggested that the Justice presiding over the New York action has conducted those proceedings or issued compliance orders in bad faith. *See Juidice v. Vail*, 430 U.S. 327, 338 (1977). Put simply, given ***its own*** statements and actions, Exxon cannot credibly argue that New York's "legal machinery is being used in bad faith." *Wilson*, 593 F.2d at 1383. Exxon's concessions provide a more than sufficient basis to decline the "narrow" exception to *Younger*, and to do so without any need for discovery.

*Second*, Exxon has produced over one million pages of documents in response to the Subpoena. Am. Cmpl. ¶ 74. In addition, it has agreed to complete its production of responsive documents to the Subpoena by January 31, 2017 (although the parties have a live dispute that is pending before the New York court on the parameters of what constitutes a complete production). N.Y. App. 236. Exxon has also agreed to a schedule for reviewing certain documents from its independent auditor that were subpoenaed by the NYOAG. N.Y. App. 186-90. Exxon's stated willingness to comply with the Subpoena–pursuant to which it has been producing documents for over a year–further defeats any showing of harm from subpoena enforcement that is "both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971).

*Third*, Exxon has not plausibly alleged the lack of an objectively sufficient basis for the NYOAG's investigation. *See Hartman*, 547 U.S. at 256-61; *Allen*, 815 F.3d at 244-46. Instead, Exxon simply proclaims that it has not made any statement that could possibly give rise to fraud in the past six years (Am. Cmpl. ¶ 63), as a basis for concluding that the investigation must be biased or pretextual. That conclusion cannot follow from Exxon's sweeping and unsupported premise, and Exxon's other factual allegations are typical of a lawful, good faith investigation.

16

For example, Exxon alleges: (i) coordination between law enforcement officials of various states (*id.* ¶¶ 26-36);[8] (ii) statements by third parties that those parties hoped that an investigation would result in the release of yet more internal Exxon documents (*id.* ¶¶ 47-49);[9] and (iii) the notion that the NYOAG has altered its investigative theory, despite that an investigation is fluid by definition and that an as-yet hypothetical complaint could take multiple forms (*see id.* ¶¶ 74-76).[10]   Exxon's own disavowal of liability on the merits of future charges cannot establish a lack of authority *to investigate.*[11]  *See Assured Guar.*, 18 N.Y.3d at 349-50 (NYOAG authorized to investigate "at the first indication of possible securities fraud"). And it is nowhere near the "strong showing of a constitutional infraction" necessary for bad faith where, as here, a party fails to dispute "the basic facts which have triggered the investigation." *Hensler v. Dist. Four Grievance Comm. of State Bar of Tex.*, 790 F.2d 390, 392 (5th Cir. 1986).

## II.  THE DISCOVERY REQUESTS WERE ISSUED IN VIOLATION OF RULE 26(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 26(d) provides in relevant part that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." None of those

---

[8] Contrary to Exxon's suggestions (Am. Cmpl. ¶¶ 52-53), no nefarious purpose can be presumed from the fact that several states signed a common interest agreement to protect the confidentiality of law enforcement communications between states with a common interest.  Such agreements are common in the context of a multi-state or joint state/federal enforcement effort.  *See, e.g.*, N.Y. App. 320-24 (Nat'l Ass'n of Attorneys General & Dep't of Justice, Environmental & Nat'l Resources Division, *Guidelines for Joint State/Federal Civil Environmental Enforcement Litigation* 6-7, 20-21 (March 2003)).

[9] Exxon has not alleged that any subpoenaed documents have in fact been shared with these third parties, and offers no explanation for why these statements by third parties are relevant to determining whether NYOAG had a good faith basis for commencing its investigation.

[10] Contrary to Exxon's claim that NYOAG recently shifted the focus of its investigation to Exxon's representations about the potential for stranded assets, (Am. Cmpl. ¶¶ 74-76), Exxon has elsewhere admitted that NYOAG has been focused on those representations from the inception of its investigation. N.Y. App. 206 (noting that in 2015, parties agreed to search terms including "asset" or "reserve" with "stranded"). Moreover, there is nothing improper about an investigator pursuing different avenues of inquiry as an investigation unfolds, if the facts warrant.

[11] The NYOAG is hardly alone in its beliefs: the federal Securities and Exchange Commission reportedly also has launched an analogous investigation into Exxon's accounting practices. N.Y. App. 473-75.

things happened before Exxon served the Discovery Requests. On that basis alone, the Discovery Requests are improper and should be quashed. *Thompson v. Fred's Stores of Tenn., Inc*., No. 15-102, 2015 U.S. Dist. LEXIS 128449, at *8 (S.D. Miss. Sept. 24, 2015) (discovery requests were premature and need not have been responded to, where "[a]t the time the requests for admission were served, there was no court order authorizing discovery," the federal rules "did not authorize discovery," and nothing had "been submitted to show that the parties had conferred and developed a discovery plan or had stipulated to proceeding with discovery").

Leave to serve the Discovery Requests cannot be fairly read into the Court's Jurisdictional Discovery Order, which was issued before the NYOAG was a party to the action and was directed at informing the Court's resolution of the Massachusetts Attorney General's then-pending motion to dismiss. N.Y. App. 305-10. Moreover, the Court's November 17, 2016 Order specifically reserved decision on whether to order a deposition of Attorney General Schneiderman until after the NYOAG's response to the First Amended Complaint. N.Y. App. 582-83.

The NYOAG made its timely response to the First Amended Complaint today by filing a motion under Rule 12(b). Exxon has not yet opposed the motion; and this Court has not found that jurisdictional discovery–expedited or otherwise–is required to aid in resolving any defense raised therein, and need not do so for the reasons discussed above. *Supra* at 11-17. Enforcing earlier-served and unauthorized expedited jurisdictional discovery against the NYOAG would be improper. *See Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 388 (E.D. Wisc. 2009) ("courts have an obligation to protect defendants from unfairly expedited discovery" (citation omitted)).

### III. THE DISCOVERY REQUESTS SEEK PRIVILEGED, PROTECTED TESTIMONY AND SHOULD BE QUASHED

Exxon's Discovery Requests are also improper because they seek, from the Attorney General and his senior staff, testimony that is plainly privileged and protected from disclosure. Exxon's requests for documents and written discovery similarly seek information that would reveal the mental processes and opinions of NYOAG attorneys – precisely the kind of "roadmap" of the investigation that Federal Rules of Civil Procedure protect from disclosure.

#### A. The Deposition of the Attorney General and Senior NYOAG Attorneys Would Necessarily Elicit Privileged Information.

Exxon seeks testimony from the Attorney General–the chief law enforcement officer of the State of New York–as well as from the Bureau Chief and Deputy Bureau Chief of NYOAG's Environmental Protection Bureau. N.Y. App. 585-86. Moreover, it seeks that testimony to probe into the thought processes of the attorneys who commenced and are conducting the NYOAG's investigation of Exxon. Testimony on those subjects implicates attorney-client communications, attorney work product, and the NYOAG's deliberative process in commencing and conducting its investigation. Permitting such testimony would thus be improper. *In re EEOC*, 207 Fed. Appx. 426, 432 (5th Cir. 2006) (attorney-client and attorney work product privileges prevented testimony and document disclosure from EEOC in the context of a lawsuit by EEOC for alleged violations of federal law); *Lederman v. N.Y. City Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013) (protective order issued barring deposition of mayor); *Marisol A. by Forbes v. Giuliani*, No. 95-10533, 1998 U.S. Dist. LEXIS 3719, at *24 (S.D.N.Y. Mar. 23, 1998) (quashing attempted deposition of Mayor Giuliani on executive privilege/deliberative process grounds; "Any examination by plaintiffs as to the Mayor's mental processes would be barred by the executive privilege").

Additionally, the individuals from whom Exxon seeks testimony are attorneys who are tantamount to opposing counsel. Courts disfavor depositions of opposing counsel in any context. *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) ("Generally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances.").[12] And such attorney depositions are particularly disfavored when the attorney is a government official conducting an investigation.

### B. The Document Requests and Written Discovery Plainly Seek Privileged Information.

Similarly, Exxon's request for documents and written discovery seek to give Exxon a comprehensive view into the NYOAG's ongoing investigation of Exxon. Exxon's dozens of separate requests include a wide swath of documents connected to the evidence the NYOAG has collected in the course of its investigation, the NYOAG's legal interpretations of that evidence, and the outside persons and organizations with whom the NYOAG may have had contact in the course of its investigation. *See supra* at 9-10. Most concerning, Exxon seeks admissions by the NYOAG regarding the focus and theories of its investigation. (*See, e.g.,* N.Y. App. 552 (No.4) & 542-43 (Nos. 22-25, 32, 33).

The documents and information Exxon seeks–if they exist–constitute core aspects of the NYOAG's decision-making process, and are exactly the kind of information that Rule 26(b) protects from disclosure. *Hickman v. Taylor*, 329 U.S. 495 (1947); *In re EEOC*, 207 Fed. Appx. at 432 (internal communications and analysis of the "strengths and weaknesses" in a matter are protected from disclosure); *Chamberlain v. Kurtz,* 589 F.2d 827, 841 (5th Cir. 1979)

---

[12] *See also Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation."); *Hall v. Louisiana*, No. 12-657, 2014 U.S. Dist. LEXIS 56165 (M.D. La. Apr. 23, 2014) (citing *Shelton,* noting that deposing opposing counsel is an extraordinary measure only permitted where "no other means exist to obtain the information than to depose opposing counsel . . . the information sought is relevant and non-privileged [and] the information is crucial to the preparation of the case").

(deliberative process privilege prevented disclosure of documents in context of civil enforcement action by IRS); *SEC v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006) ("The Fifth Circuit has recognized 'opinion work product' and noted that some courts have provided an almost absolute protection for such materials.") (internal quotations omitted).[13]

*First*, information and documents regarding the NYOAG's internal staffing, review of documents and other materials, legal analysis, and priorities in its investigation are the very definition of attorney work product, and their disclosure to Exxon would provide the kind of "roadmap" to the NYOAG's ongoing investigation that the work-product doctrine is designed to prevent. *In re EEOC*, 207 Fed. Appx. at 432; *Brady*, 238 F.R.D. at 441. Indeed, the materials Exxon seeks from the NYOAG are qualitatively different in this regard from the materials that Exxon seeks from the MAOAG. Whereas this Court has ordered discovery into the *commencement* of Massachusetts's investigation, Exxon here seeks information about the *ongoing* NYOAG investigation, which long predated Massachusetts's investigation.

*Second*, discussions and correspondence between NYOAG's attorneys and third-parties about the subject matter of the investigation were conducted in the course of a law enforcement investigation and in anticipation of litigation, and are therefore protected from disclosure. *See, e.g.*, *Plew* v. *Limited Brands, Inc.*, No. 08-3741, 2009 U.S. Dist. LEXIS 39715, at *3-4 (S.D.N.Y. Apr. 23, 2009) (upholding work product protection for emails exchanged between a nonparty and a party where the party had requested the information to assist in litigating matter); *Gerber* v. *Down E. Cmty. Hosp.*, 266 F.R.D. 29, 33 (D. Me. 2010) (work product protection applies to email correspondence between attorney and potential witness; remarking that "The *Hickman* decision, I note, includes correspondence among its list of protected papers." (citing

---

[13] *See also In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977) (mental impressions, conclusions, opinions, or legal theories of a party's attorney "receives nearly absolute protection and can be discovered only in very rare and extraordinary circumstances").

*Hickman*, 329 U.S. at 511)); *Randleman* v. *Fid. Nat'l Title Ins. Co.*, 251 F.R.D. 281, 285 (N.D. Ohio 2008) (draft affidavits and counsel correspondence protected). The protection afforded by the Federal Rules of Civil Procedure applies both to materials sent by the NYOAG to outside parties, and those received in return. *Plew*, 2009 U.S. Dist. LEXIS 39715, at *4 (argument that work product protection did not apply to email communications <u>from</u> third party <u>to</u> party claiming protection was "fundamentally misconceived" given the text of Fed. R. Civ. P. 26).

The protection that such material receives is crucial to maintaining the orderly and effective enforcement of the law. Courts that have considered requests similar to Exxon's often observe that it would chill the free flow of information from witnesses or other member of the public to law enforcement agencies, were those communications be subject to subpoena by investigatory targets. *See, e.g., In re City of New York*, 607 F.3d 923, 948 (2d Cir. 2010) (disclosure would "seriously impair the ability of a law enforcement agency to conduct future investigations").

## CONCLUSION

For the foregoing reasons, the Court should quash the Exxon's discovery notices, prohibit any future discovery, and enter a protective order to that effect.

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of New York

By his attorneys:

*s/ Pete Marketos*
Pete Marketos
Lead Attorney
Texas State Bar No. 24013101
pete.marketos@rgmfirm.com
Tyler J Bexley
Texas State Bar No. 24073923
tyler.bexley@rgmfirm.com
REESE GORDON MARKETOS LLP
750 N. Saint Paul St. Suite 610
Dallas, TX 75201
(214) 382-9810
Fax: (214) 501-0731

Jason Brown*
*Chief Deputy Attorney General*
Leslie B. Dubeck*
*Counsel to the Attorney General*
John Castiglione*
*Assistant Attorney General*
NEW YORK STATE OFFICE OF THE
ATTORNEY GENERAL
120 Broadway, 25th Floor
New York, NY 10271
212-416-8085

*\*pro hac vice application forthcoming*

Jeffrey M. Tillotson, P.C.
Texas Bar No. 20039200
jtillotson@TillotsonLaw.com
TILLOTSON LAW
750 N. Saint Paul Street, Suite 610
Dallas, Texas 75201
Telephone: (214) 382-3041
Facsimile: (214) 501-0731

Dated: December 5, 2016

23

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on December 5, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

_s/ Pete Marketos_
Pete Marketos

## CERTIFICATE OF CONFERENCE

On December 5, 2016, Counsel for Movants spoke with counsel for Plaintiff Exxon Mobil Justin Anderson and discussed the merits of the requested relief.  Despite that discussion, no agreement was reached and Plaintiff opposes the relief sought by way of this motion.

_s/ Pete Marketos_
Pete Marketos

24