IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC TRADD SCHNEIDERMAN, | § | NO. 4:16-CV-469-K |
| Attorney General of New York, in his | § | |
| official capacity, and MAURA TRACY | § | |
| HEALEY, Attorney General of | § | |
| Massachusetts, in her official capacity, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## EXXON MOBIL CORPORATION'S OPPOSITION TO DEFENDANT ERIC TRADD SCHNEIDERMAN'S MOTION TO QUASH DISCOVERY REQUESTS AND FOR A PROTECTIVE ORDER

Patrick J. Conlon (*pro hac vice*)
Daniel E. Bolia
EXXON MOBIL CORPORATION
1301 Fannin Street
Houston, TX 77002
Tel: (832) 624-6336

Theodore V. Wells, Jr. (*pro hac vice*)
Michele Hirshman (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Justin Anderson (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

Nina Cortell
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
Tel: (214) 651-5579
Fax: (214) 200-0411

Ralph H. Duggins
Philip A. Vickers
Alix D. Allison
CANTEY HANGER LLP
600 W. 6th St. #300
Fort Worth, TX 76102
Tel: (817) 877-2800
Fax: (817) 877-2807

*Counsel for Exxon Mobil Corporation*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS & PROCEDURAL HISTORY ...............................................2

ARGUMENT....................................................................................................................5

    A.   The Motion to Quash Rehashes the Baseless Argument that the Court  Must Address Personal Jurisdiction Before Subject Matter Jurisdiction. ......................................................................................................5

    B.   ExxonMobil's Discovery Requests Seek Relevant Information That Is Tailored to the Scope of the Discovery Order. ......................................6

    C.   The Attorney General's Blanket Assertions of  Privilege Are Improper and Should Be Rejected. ..............................................................10

         1.    The Attorney General's Claim of Attorney-Client Privilege Is Unavailing. ...........................................................................................13

         2.    ExxonMobil Has a Substantial Need for Materials Purportedly Protected by the Work Product Doctrine. ........................14

         3.    The Deliberative Process Privilege Does Not  Protect the Information ExxonMobil Has Requested..............................................15

    D.   The Discovery Requests Do Not Violate Rule 26(d)......................................16

CONCLUSION................................................................................................................17

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**C**ASES

*A.C.L.U. of Miss., Inc.* v. *Finch,*
   638 F.2d 1336 (5th Cir. Unit A Mar. 1981) .................................................................. 12

*Advisors Excel, L.L.C.* v. *Am. Ret. Sys., LLC,*
   No. 12-4019-RDR, 2013 WL 1001670 (D. Kan. Feb. 4, 2013) ................................. 17

*U.S. ex rel. Becker* v. *Tools & Metals, Inc.,*
   No. 3:05-2301-L, 2011 WL 856928 (N.D. Tex. Mar. 11, 2011) ................................ 11

*Burka* v. *N.Y. City Transit Auth.,*
   110 F.R.D. 660 (S.D.N.Y. 1986) ............................................................................... 17

*Cannon* v. *Fortis Ins. Co.,*
   No. CIV-07-1145-F, 2007 WL 4246000 (W.D. Okla. Nov. 29, 2007) ...................... 17

*Cappetta* v. *GC Servs. Ltd. P'ship,*
   No. CIV. A. 3:08-CV-288, 2008 WL 5377934 (E.D. Va. Dec. 24,
   2008) ............................................................................................................................ 11

*Coastal Corp.* v. *Duncan,*
   86 F.R.D. 514 (D. Del. 1980) .............................................................................. 11, 13

*SEC* v. *Cuban,*
   No. 3:08-CV-2050-D, 2013 WL 1091233 (N.D. Tex. Mar. 15, 2013) ...................... 11

*Denova* v. *U.S. Dep't of Labor (In re Kaiser Aluminum & Chem. Co.),*
   214 F.3d 586 (5th Cir. 2000) ..................................................................................... 12

*Edgenet, Inc.* v. *Home Depot U.S.A.,*
   Inc., 259 F.R.D. 385 (E.D. Wis. 2009) ..................................................................... 17

*United States* v. *El Paso Co.,*
   682 F.2d 530 (5th Cir. 1982) ..................................................................................... 13

*Evans* v. *City of Chicago,*
   231 F.R.D. 302 (N.D. Ill. 2005) ................................................................................ 16

*Exxon Corp.* v. *Dep't of Energy,*
   91 F.R.D. 26 (N.D. Tex. 1981) ............................................................................ 13, 16

*Gaskin* v. *Pennsylvania,*
   No. 94-4048, 1997 WL 734031 (E.D. Pa. Nov. 4, 1997) .......................................... 16

*Holmgren* v. *State Farm Mutual Auto. Ins. Co.*,
    976 F.2d 573 (9th Cir. 1992) ...................................................................15

*J.H. Rutter Rex Mfg. Co.* v. *NLRB*,
    473 F.2d 223 (5th Cir. 1973) ...................................................................13

*Kuwait Pearls Catering Co.* v. *Kellogg, Brown & Root Servs.*,
    Civ. A. H-15-0754, 2016 WL 1259518 (S.D. Tex. Mar. 31, 2016) .............6

*FTC* v. *Liberty Supply Co.*,
    No. 4:15-CV-829, 2016 WL 4272706 (E.D. Tex. Aug. 15, 2016).............11

*Merrill* v. *Waffle House, Inc.*,
    227 F.R.D. 467 (N.D. Tex. 2005)..............................................................10

*Mir* v. *L-3 Commc'ns Integrated Sys.*, L.P., 315 F.R.D. 460, 464 (N.D.
    Tex. 2016)...................................................................................................12

*In re MPF Holdings US LLC*,
    701 F.3d 449 (5th Cir. 2012) .....................................................................6

*Neidich* v. *Safety Tubs Co., LLC*,
    No. 3:12-CV-0391-M-BK, 2013 WL 12137003 (N.D. Tex. May 8,
    2013)...........................................................................................................12

*Nguyen* v. *Excel Corp.*,
    197 F.3d 200 (5th Cir. 1999) ...................................................................12

*United States* v. *Nixon*,
    418 U.S. 683 (1974)...................................................................................12

*Ramirez* v. *Abreo*,
    No. 5:09-CV-189-C, 2010 WL 11470101 (N.D. Tex. Oct. 6, 2010) ........15

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of
    the Currency*,
    145 F.3d 1422 (D.C. Cir. 1998).................................................................16

*Sinochem Int'l Co. Ltd.* v. *Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)....................................................................................6

*Thompson* v. *Fred's Stores of Tenn., Inc.*,
    No. 3:15CV102TSL-RHW, 2015 WL 5655948 (S.D. Miss. Sept. 24,
    2015)...........................................................................................................17

*Tri-State Hosp. Supply Corp.* v. *United States*,
    226 F.R.D. 118 (D.D.C. 2005) .................................................................16

iii

*In re U.S. Dep't of Homeland Sec.*,
   459 F.3d 565 (5th Cir. 2006) ....................................................................................11

*Williams* v. *City of Boston*,
   213 F.R.D. 99 (D. Mass. 2003)..................................................................................16

*Williams* v. *City of Dallas*,
   178 F.R.D. 103 (N.D. Tex. 1998).............................................................................12

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(1) .................................................................................................10

Fed. R. Civ. P. 26(b)(3)(A).............................................................................................15

Fed. R. Civ. P. 26(b)(3)(A)(ii) ........................................................................................15

Fed. R. Civ. P. 26(d) ..........................................................................................5, 10, 17

Fed. R. Civ. P. 26(d)(1) ..................................................................................................18

Exxon Mobil Corporation ("ExxonMobil") respectfully submits this memorandum of law in opposition to the motion of Defendant Eric Tradd Schneiderman ("Attorney General Schneiderman") to quash the Discovery Requests served on him by ExxonMobil on November 16, 2016 and for a protective order (Dkt. 135) (the "Motion to Quash").

## PRELIMINARY STATEMENT

In disregard of this Court's October 13, 2016 discovery order (the "Discovery Order"), and his discovery obligations under the Federal Rules of Civil Procedure, Attorney General Schneiderman seeks to avoid providing any discovery that would permit the parties to assemble an adequate record to assess the *Younger* abstention arguments raised by both Attorney General Schneiderman and Attorney General Healey. Attorney General Schneiderman's contention that the Court must address his personal jurisdiction argument before deciding subject matter jurisdiction is no more convincing now than when it was advanced—repeatedly and unsuccessfully—by Attorney General Healey. And Attorney General Schneiderman's blanket assertions of privilege over any document or information sought by ExxonMobil's discovery requests are similarly meritless. None of these arguments relieves Attorney General Schneiderman of his obligation to provide the discovery that this Court has deemed necessary to assemble a record on which to determine the potential bad faith of Attorneys General Healey and Schneiderman. Accordingly, the Court should deny the Motion to Quash and direct Attorney General Schneiderman to produce responsive documents and respond to ExxonMobil's discovery requests as soon as possible.

1

## STATEMENT OF FACTS & PROCEDURAL HISTORY

ExxonMobil brought this suit against Massachusetts Attorney General Maura Healey on June 15, 2016, in connection with a Civil Investigative Demand ("CID") her office had issued to ExxonMobil.  Attorney General Healey filed a motion to dismiss the complaint on August 8, 2016, claiming—among other things—that the Court should abstain from hearing this case pursuant to *Younger*.

On October 13, 2016, this Court entered the Discovery Order (Dkt. 73), directing the parties to develop a record on which it could decide whether the bad faith exception to the doctrine of *Younger* abstention should apply.  The Discovery Order noted that Attorney General Healey and other Attorneys General participated in the "AGs United for Clean Power Press Conference" on March 29, 2016 in New York, New York—an event Attorney General Schneiderman convened and during which he spoke at length. The Discovery Order further noted that Attorney General Healey and a group of Attorneys General also attended private presentations from an environmental plaintiffs' attorney and a climate change activist.  Stating that Attorney General Healey's actions and comments prior to issuing the CID were "concerning," the Court ordered the parties to conduct jurisdictional discovery to assist in its decision on abstention.  On October 20, 2016, Attorney General Healey filed a Motion for Reconsideration of the Discovery Order (Dkt. 78) (the "Motion for Reconsideration"), arguing, *inter alia*, that the Court should decide her motion to dismiss on the grounds of personal jurisdiction before addressing the question of *Younger* abstention, thus, in her view, obviating the discovery required in the Discovery Order.

On October 17, 2016, ExxonMobil filed a motion for leave to amend its complaint to join Attorney General Schneiderman as a defendant and to add claims for

2

federal preemption and a conspiracy among Attorneys General Schneiderman, Healey, and others to deprive ExxonMobil of its constitutional rights.

On November 3, 2016, ExxonMobil issued third-party document subpoenas to Attorney General Schneiderman, which were focused on the question raised by the Discovery Order—namely, whether Attorney General Healey's investigation was instituted in bad faith, with bias, and as part of an enterprise to inhibit ExxonMobil's participation in the policy debate regarding climate change. A week later, on November 10, 2016, the Court granted ExxonMobil's motion to file the amended complaint (Dkt. 99), and a copy of the amended complaint was filed by the clerk (Dkt. 100). Attorney General Schneiderman was served with a summons shortly thereafter.

On November 16, 2016, the Court held a telephonic status conference with the parties focused on the question of whether Attorneys General Schneiderman and Healey would cooperate with the Discovery Order. Their unanimous response: "No." That same day, ExxonMobil withdrew its third-party subpoenas to Attorney General Schneiderman and propounded a set of narrowly tailored party discovery requests—including requests for production, requests for admission, interrogatories, and notices of deposition—all of which (like the previously served subpoenas) were focused on the specific question raised by this Court in the Discovery Order.[1] In particular, the discovery requests seek documents and information concerning the statements made by Attorney General Schneiderman and others at the March 29 press conference, the Attorneys General's involvement with private climate activists and plaintiffs' attorneys (including those who presented at a closed-door meeting on March 29), the Common

---

[1] Attorney General Schneiderman impermissibly lumps all of the discovery requests together in his Motion to Quash, offering no arguments as to why he believes any particular request for production, request for admission, interrogatory, or notice of deposition is improper.

Interest Agreement memorializing the viewpoint discrimination intended by the "Green 20," and the political nature and shifting justifications for the investigations initiated by the Attorneys General.

The next day, November 17, 2016, the Court entered another order (Dkt. 117) (the "Deposition Order"), requiring Attorney General Healey to respond to written discovery and appear for a deposition on December 13, 2016.  The order also required Attorney General Schneiderman to make himself available for deposition on the same day.  Attorney General Healey filed a motion to vacate the Deposition Order, to stay discovery pending resolution of her motion to dismiss, and for a protective order preventing ExxonMobil from deposing her (Dkt. 118) (the "Motion to Vacate").   The motion essentially repeated arguments made in her previously filed Motion for Reconsideration, and both motions were denied by the Court on December 5, 2016 (Dkt. 131).

Later that same day, Attorney General Schneiderman filed the instant Motion to Quash, along with a motion to dismiss the amended complaint (Dkt. 133) and supporting brief (the "Motion to Dismiss"), which recycles many of the same arguments from Attorney General Healey's motion to dismiss, including that the Court lacks subject matter jurisdiction because the *Younger* abstention doctrine applies.[2]  The memorandum of law in support of the Motion to Quash ("Def. Mem.") similarly rehashes several arguments previously advanced by Attorney General Healey in support of her Motion for Reconsideration and Motion to Vacate—all of which have been carefully considered and rejected by this Court.  And the few new arguments adduced in the Motion to Quash are equally unavailing.

---

[2]     *See* Motion to Dismiss at 7–17.

## ARGUMENT

Attorney General Schneiderman raises four basic arguments in his Motion to Quash. First, he asserts that the Court should resolve his motion to dismiss on personal jurisdiction grounds, without inquiry into the antecedent question of the Court's subject matter jurisdiction and whether abstention is appropriate under *Younger*. Second, he contends that the discovery sought is not justified under *Younger*, and that the Court already has all the record it needs to accept his request for abstention. Third, Attorney General Schneiderman argues that every single document, fact, or shred of information sought by the discovery requests is necessarily privileged. Finally, he argues that the discovery requests were improperly propounded in supposed violation of Fed. R. Civ. P. 26(d). As discussed below, all of these arguments are meritless.

### A.    The Motion to Quash Rehashes the Baseless Argument that the Court Must Address Personal Jurisdiction Before Subject Matter Jurisdiction.

Attorney General Schneiderman notes that the concurrently filed Motion to Dismiss demonstrates the Court's lack of personal jurisdiction over him, and claims that the Court must decide the motion on this basis before reaching the question of subject matter jurisdiction. This argument is a retread of an argument advanced by Attorney General Healey in her Motion for Reconsideration and Motion to Vacate, both of which the Court has already carefully considered and denied.

As repeatedly explained in ExxonMobil's responses to Attorney General Healey's unavailing motions, courts should determine the existence of subject matter jurisdiction "at the earliest possible stage in the proceedings." *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012). And the law is "well settled that 'a district court has broader power to decide its own right to hear the case than it has when the merits of the

5

case are reached.'" *Kuwait Pearls Catering Co.* v. *Kellogg, Brown & Root Servs.*, Civ. A. H-15-0754, 2016 WL 1259518, at *14 n.19 (S.D. Tex. Mar. 31, 2016) (quoting *Williamson* v. *Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  In other words, the Court need not address Attorney General Schneiderman's arguments for dismissal in the order he prefers, any more than it must do so for Attorney General Healey.  Matters of jurisdiction and justiciability are left to the Court's discretion, not the Attorneys General's preferences.  *See Sinochem Int'l Co. Ltd.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (stating that "a federal court has leeway 'to choose among threshold grounds'" when considering whether to dismiss a complaint (quoting *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 585 (1999))).  Accordingly, Attorney General Schneiderman cannot quash the Discovery Requests merely on the basis that his Motion to Dismiss presents arguments that he would prefer the Court to address, and agree with, immediately.

**B.**     **ExxonMobil's Discovery Requests Seek Relevant Information That Is Tailored to the Scope of the Discovery Order.**

The Court has already clearly explained why jurisdictional discovery is necessary to create a record on which to assess whether Attorney General Healey acted in bad faith in issuing the CID.  The discovery requests served upon Attorney General Schneiderman go directly to that important question, and are focused on discovering evidence of coordination, political motivation, and bad faith on the part of Attorneys General Healey and Schneiderman, both individually and as members of the Green 20.[3]  For example:

- Request for Production 2 seeks: "Any and all documents, recordings, and/or other materials discussed or presented during any meeting

---

[3]     Exs. C, D, E, F, G, and H at App. 6–62.

concerning the Green 20 Press Conference, including any meetings with and/or presentations from Peter Frumhoff and/or Matthew Pawa."[4]

- Request for Production 5 seeks: "Any and all documents concerning the Common Interest Agreement, including any documents concerning the purpose of the Common Interest Agreement, the decision to enter into the Common Interest Agreement, efforts to recruit or obtain signatories to the Common Interest Agreement, and the preparation, drafting and finalizing of the text of the Common Interest Agreement."[5]

- Interrogatory 6 asks:  "State, identify, and describe the actions that Your office, including Your office's Environmental Protection Bureau, took prior to the Green 20 Press Conference to learn the status of other states' investigations and/or plans and explore avenues for coordination with these other states.  As part of Your answer, identify all persons, documents or other sources of information that You contacted, consulted, reviewed or otherwise considered in taking these actions."[6]

The discovery requests are particularly relevant given that Attorney General Schneiderman has been joined as a party to this case, and has filed a motion to dismiss claiming that the Court must abstain from hearing this matter under *Younger* because his investigation is purportedly in bad faith.  Indeed, a wealth of evidence already in the record shows that, like Attorney General Healey's investigation, Attorney General Schneiderman's investigation was in bad faith.

First, Attorney General Schneiderman made a number of telling comments at the Green 20 Press Conference itself, including:

- Expressing dissatisfaction with the "gridlock in Washington" regarding climate-change legislation, saying that the Green 20 had to work "creatively" and "aggressively" to advance that agenda.[7]

- Vowing that the Green 20 would "send the message that [they were] prepared to step into this [legislative] breach" despite "highly aggressive and morally vacant forces that are trying to block every step by the federal

---

4   Ex. C at App. 15.

5   *Id.* at 16.

6   Ex. E at App. 49.

7   Ex. K at App. 71–72.

government to take meaningful action" and that they meant "to deal with th[e] most pressing issue of our time"—namely, the need to "preserve our planet and reduce the carbon emissions that threaten all of the people we represent."[8]

- Announcing his prejudgment of the result of the investigation of ExxonMobil before it was completed: "So we know, because of what's already out there in the public, that there are companies using the best climate science. They are using the best climate models so that when they spend shareholder dollars to raise their oil rigs, which they are doing, they know how fast the sea level is rising. Then they are drilling in places in the Arctic where they couldn't drill 20 years ago because of the ice sheets. They know how fast the ice sheets are receding. And yet they have told the public for years that there were no 'competent models,' was the specific term used by an Exxon executive not so long ago, no competent models to project climate patterns, including those in the Arctic. And we know that they paid millions of dollars to support organizations that put out propaganda denying that we can predict or measure the effects of fossil fuel on our climate, or even denying that climate change was happening."[9]

Second, Attorney General Schneiderman's office attempted to conceal the extent of his coordination with other like-minded Attorneys General and activists. As the Court noted in its Discovery Order, when environmental plaintiffs' lawyer Matthew Pawa, who presented at the closed-door meeting among Attorneys General participating at the Green 20 Press Conference, inquired about how to respond to a *Wall Street Journal* reporter who had contacted him about the conference, a senior official from Attorney General Schneiderman's office replied, "[m]y ask is if you speak to the reporter, to not confirm that you attended or otherwise discuss the event."[10] The New York Attorney General's Office was also one of the signatories of the Green 20's Common Interest agreement, which was intended to shield the group's communications from public disclosure and

---

[8]    *Id.* at 70–71, 73.

[9]    *Id.* at 72.

[10]   Ex. L at App. 91.

which laid out the political goals of "limit[ing] climate change" and "ensuring the dissemination of accurate information about climate change."[11]

Third, Attorney General Schneiderman's insistence on conducting this investigation in the press further evidences a motivation not to find the truth, but to use his bully pulpit for the purpose of inhibiting ExxonMobil's participation in debate on a matter of public concern. Even before ExxonMobil had confirmed willingness to accept the subpoena from Attorney General Schneiderman's office, the company received a request for comment from the *New York Times*. The next day, that paper ran a story about the subpoena, citing "people with knowledge of the investigation."[12] Months later, after his initial theory of investigation proved fruitless, Attorney General Schneiderman pivoted his focus to ExxonMobil's accounting practices as to oil and gas reserves. And, again, Attorney General Schneiderman publicized his investigation in the press—publicly accusing ExxonMobil of "massive securities fraud" without any evidence whatsoever.[13] These statements make clear that Attorney General Schneiderman's investigation is focused on a partisan objective, not facts.

ExxonMobil's discovery requests were crafted to elicit the facts relating to the basis for the investigation of ExxonMobil led by Attorneys General Schneiderman and Healey, which will further establish that this case fits squarely within the exception to *Younger* abstention.

The requests also seek material securely within the broad confines of relevance under the Federal Rules. Rule 26 provides that a party can obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

---

[11]   Ex. M at App. 93.
[12]   Ex. N. at App. 113.
[13]   Ex. P at App. 124; *see also* Ex. O at App. 119.

9

to the needs of the case," and information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Relevancy is broadly construed," and "[u]nless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *Merrill* v. *Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (internal quotation omitted). Here, the Discovery Order and ExxonMobil's substantive claims are both directed at the Attorney General's misuse of prosecutorial power for improper and unlawful purposes, potentially at the behest of private activists and plaintiffs' attorneys, and in concert with other government officials. Because ExxonMobil's discovery requests are squarely aimed at obtaining evidence on these precise issues, they seek "relevant" material within the meaning of the Federal Rules, and Attorney General Schneiderman should be ordered to produce responsive documents and information.

## C.   The Attorney General's Blanket Assertions of Privilege Are Improper and Should Be Rejected.

In lieu of providing reasons why specific evidence sought by the discovery requests may be subject to some privilege, Attorney General Schneiderman makes the blanket assertion that *all* documents, testimony or information sought would necessarily be covered by the attorney-client, work product, or deliberative process privileges.[14] *See*

---

[14]   To the extent the Motion to Quash may be construed as raising a claim of the so-called "law enforcement privilege," that claim must fail because "[t]he law enforcement privilege does not extend to . . . information . . . concerning civil investigations" such as this. *SEC* v. *Cuban*, No. 3:08-CV-2050-D, 2013 WL 1091233, at *8 (N.D. Tex. Mar. 15, 2013); *see also, e.g.*, *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569–70 n.2 (5th Cir. 2006) (stating law enforcement privilege "exists to protect government documents relating to an ongoing criminal investigation"); *FTC* v. *Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4272706, at *9 (E.D. Tex. Aug. 15, 2016) ("The FTC has not demonstrated that the Consumer Sentinel Complaints or the CIDs would fall within the law enforcement privilege as this is not a criminal investigation, but a civil investigation."); *U.S. ex rel. Becker* v. *Tools & Metals, Inc.*, No. 3:05-2301-L, 2011 WL 856928, at *3 (N.D. Tex. Mar. 11, 2011) ("[D]espite the government's attempt to eliminate a distinction between civil cases and criminal cases with respect to the application of the investigatory law enforcement privilege, the court declines to adopt the government's sweeping view. The Fifth Circuit has made no statement that suggests that this

Def. Mem. at 19–22.   Attorney General Schneiderman's failure to provide any detail whatsoever regarding the contours of his privilege claims suggests that these privileges were improperly asserted, without any actual review of the subject documents.   Such baseless objections support a waiver of any privilege or protection.   *See, e.g.*, *Coastal Corp.* v. *Duncan*, 86 F.R.D. 514, 523–24 (D. Del. 1980) ("[H]aving improperly raised its claims of privilege, DOE has, in effect, asserted no privilege at all and will be ordered to produce all documents withheld on the basis of executive privilege, attorney-client privilege and work-product privilege."); *Cappetta* v. *GC Servs. Ltd. P'ship*, No. CIV. A. 3:08-CV-288, 2008 WL 5377934, at *4 (E.D. Va. Dec. 24, 2008) ("Improper assertion of a privilege may result in a waiver of that privilege.").

But even if not waived, the Attorney General's privilege assertions fail on the merits.   As a matter of principle, federal courts are hesitant to exclude relevant evidence based on privilege.   *A.C.L.U. of Miss., Inc.* v. *Finch*, 638 F.2d 1336, 1344 (5th Cir. Unit A Mar. 1981).   As the Supreme Court has recognized, "[t]he need to develop all relevant facts in the adversary system is both fundamental and comprehensive . . . .   The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence."   *United States* v. *Nixon*, 418 U.S. 683, 709 (1974).   Consistent with this principle, assertions of privilege are strictly construed, "for they are in derogation of the search for truth."   *Denova* v. *U.S. Dep't of Labor (In re Kaiser Aluminum & Chem. Co.)*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting *Nixon*, 418 U.S. at 710).

---

privilege was intended to protect government files for any purpose other than insofar as they relate to an ongoing and criminal investigation.").

Accordingly, the Fifth Circuit has clearly stated that "[b]lanket claims of privilege are disfavored." *Nguyen* v. *Excel Corp.*, 197 F.3d 200, 207 n.16 (5th Cir. 1999); *see also Neidich* v. *Safety Tubs Co., LLC*, No. 3:12-CV-0391-M-BK, 2013 WL 12137003, at *2 (N.D. Tex. May 8, 2013) ("[B]lanket assertion of attorney-client privilege is generally not appropriate.").   That is why a party "'must claim and establish the attorney-client privilege on a document-by-document basis.'" *Williams* v. *City of Dallas*, 178 F.R.D. 103, 116 (N.D. Tex. 1998) (quoting *Hugley* v. *Art Inst. of Chicago*, 981 F. Supp. 1123, 1128 (N.D. Ill. 1997)).   Similarly, "a party asserting the work product exemption [] must provide 'a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure.'"   *Mir* v. *L-3 Commc'ns Integrated Sys.,* L.P., 315 F.R.D. 460, 464 (N.D. Tex. 2016) (quoting *Orchestrate HR, Inc.* v. *Trombetta*, No. 3:13–cv–2110–P, 2014 WL 884742, at *2 (N.D. Tex. Feb. 27, 2014)).

This is equally true for the deliberative process privilege claimed by the Attorney General.   As this Court has recognized, it is "firmly established that a claim of executive privilege[15] will only be considered if raised with reference to specific documents or specific deposition questions," and "any blanket assertion of privilege must summarily be rejected."   *Exxon Corp.* v. *Dep't of Energy*, 91 F.R.D. 26, 43 (N.D. Tex. 1981). Similarly, any protection afforded to investigative material is a "qualified privilege . . . [and] is not a blanket privilege that arises solely from the fact that the information being sought is investigatory matter in the hands of an investigatory or prosecutorial agency." *J.H. Rutter Rex Mfg. Co.* v. *NLRB*, 473 F.2d 223, 234 (5th Cir. 1973).

---

[15]   The opinion in *Exxon Corp.* v. *Dep't of Energy* uses the terms "executive privilege" and "deliberative process privilege" interchangeably.

12

In light of this controlling authority, Attorney General Schneiderman's conclusory, blanket privilege arguments should be rejected at the threshold as inadequate to support the withholding of responsive documents and information. *See, e.g.*, *Coastal Corp.*, 86 F.R.D. at 523–24.

1. The Attorney General's Claim of Attorney-Client Privilege Is Unavailing.

Attorney General Schneiderman suggests that the information and materials sought by the Discovery Requests may be subject to the attorney-client privilege. *See* Def. Mem. at 19.  However, the attorney-client privilege only applies when the relevant material reflects a confidential communication between a client and his or her attorney for the purposes of obtaining or providing legal advice. *See, e.g.*, *United States* v. *El Paso Co.*, 682 F.2d 530, 539 n.9 (5th Cir. 1982).  The Motion to Quash fails to identify who the attorney is, who the client is, whether the purportedly privileged communication(s) occurred in a confidential context, or the purpose of the communications—in short, Attorney General Schneiderman has done nothing to meet even one of the elements necessary to sustain a claim of privilege.

Indeed, the record makes clear that Attorney General Schneiderman cannot invoke the privilege to withhold documents or information from the closed-door meeting with climate activists and plaintiffs' lawyers in advance of the March 29 press conference.  Publicly available documents indicate that, far from being confidential, attendees at the meeting fully expected that any documents or information presented or discussed would become public.  As a representative of the Vermont Attorney General wrote to the New York Attorney General's office the day before the March 29 meeting and press conference:

> [A]nyone providing anything in writing at the conference should assume
> that it may get produced because of some state's public record laws. Matt
> [Pawa] and Peter [Frumhoff] should stick to what is in the public domain
> or be prepared to have those materials become public.[16]

Because the attendees at the March 29 meetings had no expectation of confidentiality, no documents or information presented or discussed at that meeting can be hidden in the shadows of the attorney-client privilege.

2. ExxonMobil Has a Substantial Need for Materials
   Purportedly Protected by the Work Product Doctrine.

Attorney General Schneiderman also claims that the information and materials sought by the Discovery Requests would be subject to the work product doctrine. That doctrine provides a qualified protection for "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). But the Federal Rules of Civil Procedure equally recognize that relevant documents subject to the work product doctrine are discoverable if the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

ExxonMobil has a substantial need for the documents it has requested, and is not aware of—nor has Attorney General Schneiderman identified—anywhere else ExxonMobil can obtain these documents. And although "opinion" work product reflecting an "attorney's legal strategy, mental impressions, opinions, or evaluation of the case" is afforded greater protection, this doctrine does not shield such documents from disclosure here. *Ramirez* v. *Abreo*, No. 5:09-CV-189-C, 2010 WL 11470101, at *3 (N.D. Tex. Oct. 6, 2010). That is because here, as in *Ramirez*, ExxonMobil's claims "raise issues relevant to the prosecutors' opinions, mental impressions, or legal theories

---

[16]   Ex. Q at App. 128.

14

regarding the underlying investigation." *Id.* Because the "mental impressions" of Attorney General Schneiderman and his staff—as well as the impressions of Attorney General Healey and her staff—"are at issue in [this] case and the need for the material is compelling," the work product doctrine does not prevent production. *Id.* (internal quotation marks omitted) (citing *Conoco Inc.* v. *Boh Bros. Const. Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998)); *see also Holmgren* v. *State Farm Mutual Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

   3.  The Deliberative Process Privilege Does Not
        <u>Protect the Information ExxonMobil Has Requested.</u>

Finally, Attorney General Schneiderman argues that information responsive to the Discovery Requests is protected by the deliberative process privilege. *See* Def. Mem. at 19–22. As an initial matter, Attorney General Schneiderman has failed to acknowledge, much less meet, the procedural requirements for asserting this privilege, which entail (1) the submission of an affidavit by the head of the agency; (2) a designation of the particular information claimed to be privileged; and (3) an explanation of why the public interest weighs against disclosure. *See Exxon Corp.* v. *Dep't of Energy*, 91 F.R.D. 26, 44 (N.D. Tex. 1981); *see also Evans* v. *City of Chicago*, 231 F.R.D. 302, 316 (N.D. Ill. 2005); *Gaskin* v. *Pennsylvania*, No. 94-4048, 1997 WL 734031, at *1 n.2 (E.D. Pa. Nov. 4, 1997).

Even if Attorney General Schneiderman had complied with these threshold requirements, the privilege is unavailable where, as here, the Court's inquiry focuses on whether a government official has acted in bad faith. *See, e.g.*, *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("If the plaintiff's cause of action is directed at the government's intent,

however, it makes no sense to permit the government to use the [deliberative process] privilege as a shield."); *Tri-State Hosp. Supply Corp.* v. *United States*, 226 F.R.D. 118, 134–35 (D.D.C. 2005) (holding deliberative process privilege yields when suit concerns government misconduct); *Williams* v. *City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) (where the government's "decision-making process" is the "subject of the litigation, it is inappropriate to allow the deliberative process to preclude discovery of relevant information." (quoting *Burka* v. *N.Y. City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986)).

### D.  The Discovery Requests Do Not Violate Rule 26(d).

Finally, Attorney General Schneiderman contends that, because the parties did not meet and confer about the discovery requests before they were served pursuant to Rule 26(d), they must be quashed.  However, a Rule 26(d) meet and confer is unnecessary when a court has issued a jurisdictional discovery order.  *See, e.g.*, *Advisors Excel, L.L.C.* v. *Am. Ret. Sys., LLC*, No. 12-4019-RDR, 2013 WL 1001670, at *3 (D. Kan. Feb. 4, 2013) (holding that, because no Rule 26(f) conference had taken place, discovery was not permitted—except for the jurisdictional discovery authorized by the court); *see also Cannon* v. *Fortis Ins. Co.*, No. CIV-07-1145-F, 2007 WL 4246000, at *3 (W.D. Okla. Nov. 29, 2007) ("No Rule 26(f) discovery plan or status conference is required in order to conduct discovery for the jurisdictional inquiry.").  Here, as Attorney General Schneiderman must acknowledge, the Discovery Order authorized jurisdictional discovery.  *See* Discovery Order at 6 (ordering "that jurisdictional discovery" be allowed "to aid the Court in deciding whether this law suit should be dismissed on jurisdictional

grounds"). Thus, no meet-and-confer was required before serving the discovery requests.[17]

Indeed, the text of Rule 26(d) includes a specific exception to the meet-and-confer requirement where a party is authorized to seek discovery pursuant to a court order. *See* Fed. R. Civ. P. 26(d)(1). As set forth above, the Court's Discovery Order and the Deposition Order plainly allowed for issuance of the discovery requests to Attorney General Schneiderman, negating the need for a meet-and-confer.[18]

## CONCLUSION

In sum, Attorney General Schneiderman's Motion to Quash improperly seeks to disregard this Court's Discovery Order and the Attorney General's discovery obligations under the Federal Rules of Civil Procedure. The motion therefore should be denied, and Attorney General Schneiderman should be directed to comply with the discovery requests immediately.

---

[17]   The two inapposite cases cited by Attorney General Schneiderman do not involve court ordered discovery, much less jurisdictional discovery. *See Thompson* v. *Fred's Stores of Tenn., Inc.*, No. 3:15CV102TSL-RHW, 2015 WL 5655948, at *2 (S.D. Miss. Sept. 24, 2015); *Edgenet, Inc.* v. *Home Depot U.S.A.*, Inc., 259 F.R.D. 385 (E.D. Wis. 2009).

[18]   Attorney General Schneiderman seems to argue that the Court's Discovery Order is insufficient to overcome Rule 26(d)'s meet-and-confer requirement, because he was initially served with discovery subpoenas as a non-party. *See* Def. Mem. at 18. The practical outcome of this argument would be that ExxonMobil encounters more difficulty in obtaining discovery from a party to the action than it would in obtaining similar discovery from the *same entity* served as a non-party. This absurd result should be avoided.

Dated:  December 7, 2016


EXXON MOBIL CORPORATION

By:  /s/ Patrick J. Conlon
Patrick J. Conlon
(*pro hac vice*)
State Bar No. 24054300
patrick.j.conlon@exxonmobil.com
Daniel E. Bolia
State Bar No. 24064919
daniel.e.bolia@exxonmobil.com
1301 Fannin Street
Houston, TX 77002
(832) 624-6336

/s/ Theodore V. Wells, Jr.
Theodore V. Wells, Jr.
(*pro hac vice*)
twells@paulweiss.com
Michele Hirshman
(*pro hac vice*)
mhirshman@paulweiss.com
Daniel J. Toal
(*pro hac vice*)
dtoal@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000
Fax: (212) 757-3990

Justin Anderson
(*pro hac vice*)
janderson@paulweiss.com
2001 K Street, NW
Washington, D.C.  20006-1047
(202) 223-7300
Fax: (202) 223-7420

*Counsel for Exxon Mobil Corporation*

/s/ Nina Cortell
Nina Cortell
State Bar No. 04844500
nina.cortell@haynesboone.com
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
(214) 651-5579
Fax: (214) 200-0411

/s/ Ralph H. Duggins
Ralph H. Duggins
State Bar No. 06183700
rduggins@canteyhanger.com
Philip A. Vickers
State Bar No. 24051699
pvickers@canteyhanger.com
Alix D. Allison
State Bar. No. 24086261
aallison@canteyhanger.com
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800
Fax: (817) 877-2807

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2016, a true and correct copy of the foregoing document was filed electronically via the CM/ECF system, which gave notice to all counsel of record pursuant to Local Rule 5.1(d).


/s/ Ralph H. Duggins
Ralph H. Duggins