IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| EXXON MOBIL CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. 4:16-CV-469-K |
| ERIC TRADD SCHNEIDERMAN, Attorney General of New York, in his official capacity, and MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity. | § § § § § § | |
| Defendants. | § § | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE NEW YORK ATTORNEY GENERAL'S MOTION TO QUASH DISCOVERY AND FOR A PROTECTIVE ORDER**

## PRELIMINARY STATEMENT

More than a year ago, Exxon received an investigatory Subpoena from the NYOAG.[1] Exxon chose to comply without raising any of the constitutional objections it asserts here, and made repeated document productions over the course of early-to-mid 2016. Six months ago, following receipt of a CID from the Massachusetts Attorney General, Exxon decided to sue Massachusetts in this Court for alleged constitutional violations caused by the CID. Exxon did *not* allege any such claims against the NYOAG, however, and continued producing documents pursuant to the Subpoena. Exxon sought to add the NYOAG to this lawsuit only after this Court signaled a willingness to permit discovery against Massachusetts, and only after the NYOAG had begun a proceeding in New York state court (before the Honorable Barry R. Ostrager) to enforce a related subpoena seeking documents concerning Exxon's financial disclosures. This past Monday, December 5, 2016, Exxon told Justice Ostrager that it would complete its production in response to the NYOAG's Subpoena by January 31, 2017. Exxon has never presented any constitutional objections to the New York court, despite having had numerous opportunities to do so.

Exxon now seeks to have this Court automatically extend its prior discovery rulings to the NYOAG, whose investigation and posture in this case differ from Massachusetts' in several key respects. For example, Exxon suggests that the Court's October 13, 2016 discovery ruling—issued before Exxon sought leave to add the NYOAG as a party—has effectively authorized discovery from the NYOAG on supposed "bad faith." (*See* Opp. at 1, 16-17.) Such an argument assumes that this Court has prejudged how it will resolve the NYOAG's motion to dismiss, to

---

[1] Defined terms have the same meaning as in the NYOAG's Memorandum of Law in Support of its Motion to Quash Discovery and for a Protective Order, dated December 5, 2016 (Dkt. No. 136) ("Br." or "Brief"). "Opp." refers to Exxon's Opposition brief, dated December 7, 2016 (Dkt. No. 144).

which Exxon has not yet filed an opposition, much less formally opposed on the ground that the

NYOAG initiated the New York subpoena enforcement proceeding in bad faith.[2]

Exxon's ongoing compliance with the Subpoena and representations to the New York

court actively managing that compliance are inconsistent with any claim of immediate and

irreparable injury necessitating an exception to *Younger* abstention. (*See* Opp. at 6-10.) Having

complied with the Subpoena for a year, Exxon cannot now plausibly contend that some sudden

and dire urgency requires discovery on the issue of abstention before briefing on the NYOAG's

motion to dismiss is complete.

Exxon's brief in opposition to *this* motion does not address the NYOAG's arguments

about the absence of personal jurisdiction in Texas, the important reasons for deciding that

threshold question first, or how Exxon's own undisputed conduct dooms its otherwise premature

attempt to sidestep *Younger* abstention. That Exxon's Discovery Requests seek documents and

testimony that would almost certainly be privileged and protected from disclosure provides yet

another reason to refrain from going forth with such invasive discovery at this stage.

The failure to seek injunctive relief from the New York court supervising Exxon's

compliance underscores its lack of any genuine need for immediate relief from the Subpoena.

Indeed, in the New York proceeding, Exxon claims that it is *fully* and *voluntarily* complying with

its production obligations. Avoiding needless interference with such a state proceeding is the

point of *Younger* abstention, and that same concern compels this Court to resolve the NYOAG's

other non-merits defenses—most notably personal jurisdiction—before delving into discovery on

*Younger*. In any event, history belies Exxon's claim of being selectively targeted for an

investigation into its corporate disclosures: the NYOAG's opening brief describes a number of

---

[2]     At this stage, the NYOAG's motion to dismiss remains unopposed. *See* N.D. Tex. Local Rule 7.1(d) ("A response to an opposed motion *must* be accompanied by a brief that sets forth the responding party's contentions of fact and/or law, and argument and authorities." (emphasis added)).

recent successful investigations of fossil fuel companies for misrepresenting the financial impact of environmental issues, including a successful investigation of Peabody Energy for misleadingly portraying to its investors the company's own internal projections about the financial impact of climate change on its business.

Accordingly, this Court should quash the discovery requests propounded by Exxon and grant a protective order in favor of the NYOAG.

## I.     THERE IS NO JUSTIFICATION FOR ORDERING DISCOVERY ON *YOUNGER* ABSTENTION BEFORE RESOLVING THE NYOAG'S PERSONAL JURISDICTION DEFENSE

The NYOAG's opening brief sets forth several reasons why this Court must resolve whether the NYOAG is subject to personal jurisdiction in Texas before allowing Exxon to embark on a course of intrusive discovery to help determine the separate issue of *Younger* abstention. (Br. at 11–13.) In response, Exxon argues only that subject-matter jurisdiction should usually be resolved before personal jurisdiction, and that district courts, rather than litigants, set the order in which threshold issues are reached. (Opp. at 5–6.) Neither of those arguments justifies the discovery Exxon seeks from a state entity over which a Texas court has no power to enter judgment.

As an initial matter, Exxon is wrong to call *Younger* abstention an "antecedent question" to that of personal jurisdiction. (Opp. at 5.) Although the parties and Court have spoken of *Younger* in terms of subject-matter jurisdiction, such abstention "does *not* arise from lack of jurisdiction in the District Court." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986). *Younger* abstention "reflects a court's *prudential* decision not to exercise" jurisdiction that "it in fact possesses." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (emphasis added; quotation marks omitted); *see Ohio Civil Rights Comm'n*, 477 U.S. at 626.

3

Under settled law, a federal court has no independent obligation to determine whether to abstain from hearing a case, but may address that question at a *defendant's* request. *See, e.g.*, *Ohio Bureau of Emp't Servs. v. Hodory*, 431 U.S. 471, 480 & n.10 (1977); *Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 967 & n.6 (5th Cir. 1993). Nor is discovery into *Younger* abstention necessary to establish subject-matter jurisdiction. *Cf. Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981). Rather, *Younger* abstention—much like personal jurisdiction—resides among the group of threshold issues that may, in appropriate circumstances, be addressed before Article III jurisdictional requirements. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007); *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006).

Nothing demands that this Court decide *Younger* abstention prior to the other threshold defenses raised in the NYOAG's motion to dismiss. To the contrary, personal jurisdiction *must* come first. (*See* Br. at 11–13.) That conclusion follows not from the NYOAG's mere preference, as Exxon maintains (Opp. at 6), but rather from "concerns of federalism, and of judicial economy and restraint," *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 213–14 (5th Cir. 2000) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)); *see also Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) (holding that Due Process Clause prohibits Texas from exercising personal jurisdiction over foreign State's official sued, as here, in official capacity).

There is no sound justification at this stage for allowing Exxon—the recipient of an investigative subpoena—to subject the NYOAG to intrusive discovery explicitly "crafted to elicit the facts relating to the basis for the investigation." (Opp. at 9.) There is even less of a reason to do so where a clear lack of personal jurisdiction over the NYOAG deprives this Court of "'an essential element of [its] jurisdiction'" and renders it "'powerless to proceed to an

4

adjudication'" on the merits. *Ruhrgas AG*, 526 U.S. at 584 (quoting *Emp'rs Reins. Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).

Indeed, as Exxon freely admits, the discovery it seeks directly relates to the merits of the amended complaint's "substantive claims" of an "improper and unlawful" investigation by the NYOAG.[3] (Opp. at 10.) Deciding *Younger* first would leapfrog *all* of the NYOAG's other threshold defenses—not just the absence of personal jurisdiction, but also lack of ripeness and venue—and improperly head to "an adjudication of the cause." *Sinochem Int'l*, 549 U.S. at 431.

The costs of this "preliminary" discovery drastically outweigh its conceivable benefits— an independent reason to deny discovery now. If this Court decides not to abstain under *Younger*, the Court will then need to address the NYOAG's other defenses. And any discovery will have been of "scant purpose" if the Court next dismisses the case on another ground "without reaching the merits." *Id.* at 435. The NYOAG's time and resources will have been misspent; this action will be over; and yet, Exxon will have obtained the extraordinary benefit of questioning the NYOAG about an ongoing and confidential investigation into Exxon's business practices. Even if the Court ultimately decided to abstain under *Younger*, the potential damage to the NYOAG's investigation would already be done. The Court must therefore decide personal jurisdiction first and not "allow the *Younger* principle to be thus circumvented." *Kowalski v. Tesmer*, 543 U.S. 125, 133 (2004); *see O'Keefe v. Chisholm*, 769 F.3d 936, 943 (7th Cir. 2014).

---

[3]     The Court should carefully scrutinize Exxon's shifting claims about what it is entitled to do under the Jurisdictional Discovery Order. That Order was issued solely in aid of a *Younger* analysis regarding Massachusetts, the only party then in the case. On the one hand, Exxon asserts that the Discovery Requests target only Attorney General Healey's intent (Opp. at 6); on the other hand, Exxon states that the requests are "particularly relevant" to Attorney General Schneiderman's alleged motives (Opp. at 7).

## II.    EXXON HAS NO PLAUSIBLE CLAIM TO AVOIDING *YOUNGER* ABSTENTION

The *Younger* abstention doctrine installs "heightened requirements for an injunction to restrain" an ongoing "civil action involving important state interests." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 n.1 (1992). Federal courts should let such a state proceeding run its course, unless the federal plaintiff can demonstrate that it would be irreparably injured "if denied equitable relief" to remedy "bad faith" or "harassment." *Younger v. Harris*, 401 U.S. 37, 43–44, 53 (1971). That is to say, the federal courts may intervene only to prevent a "constitutional injury done by bad faith [state] proceedings themselves." *Bishop v. State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984).

In its opening brief, the NYOAG described a series of undisputed acts, statements, and omissions by Exxon that preclude the showing of irreparable injury that is necessary to evade *Younger* abstention on a "bad faith" (or any other) theory. (Br. at 15–17.) To date, Exxon has produced over a million pages of documents in response to the NYOAG's Subpoena. And Exxon has participated without objection in a New York state court proceeding to enforce both the Subpoena and a separate subpoena issued to Exxon's auditor, without ever suggesting to the New York court that the NYOAG's investigation—or the New York proceeding itself—was commenced in bad faith or in violation of Exxon's constitutional rights. (*See id.*)

In opposition, Exxon does not contest any of these arguments or the facts on which they are based. Indeed, Exxon fails to even acknowledge its own participation in the ongoing New York proceeding to enforce the very Subpoena that Exxon here attacks as an unconstitutional invasion of its rights. Instead, Exxon attempts to justify hasty discovery on *Younger* abstention— before that defense even is fully briefed—on the ground that the discovery sought may be

"relevant" to the NYOAG's motivation for issuing the Subpoena, as well as to the claims in Exxon's amended complaint. (Opp. at 6–10.)

Yet Exxon does not purport to explain why, if it faces supposedly imminent danger from the New York state enforcement proceeding, it has failed to seek immediate relief from the New York court supervising the proceedings. *See Younger*, 401 U.S. at 43–44; *Bishop*, 736 F.2d at 294. In fact, Exxon told the New York court three days ago that Exxon "is fully complying with its obligations with regard to the Subpoena" (N.Y. App. 230), and that Exxon aspires "to conclude the production by January 31, 2017" (N.Y. App. 236). A party's turning over subpoenaed documents moots any "case or controversy" on "the issue of compliance," thereby also mooting any arguments for or against *Younger* abstention. *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004). Because Exxon's behavior in the New York court may moot its federal complaint, and Exxon has presented no plausible justification for discovery from the NYOAG in the interim, Exxon is not entitled to any of the discovery it seeks here.

### III.   EXXON MAY NOT INQUIRE INTO ITS INVESTIGATOR'S CONFIDENTIAL PROCESSES

The impropriety of the requested discovery is underscored by Exxon's attempt to depose the New York Attorney General—the chief law enforcement officer of the State of New York—as well as the Bureau Chief and Deputy Bureau Chief of the NYOAG's Environmental Protection Bureau. *See* N.Y. App. 528-80. Exxon has also propounded eighty-seven requests for documents, interrogatories, and requests for admission, almost all of which are directed at core aspects of the internal processes of the NYOAG's investigation into potential fraud by Exxon. *See id*. Document production, testimony, and written discovery on those subjects directly implicates attorney-client communications, attorney work product, and the NYOAG's deliberative process in commencing and conducting its investigation. (*See* Br. at 19.)

7

Exxon—the recipient of an investigative subpoena—seeks to depose the high-ranking law-enforcement officials conducting the investigation by filing a lawsuit and then using that litigation to inquire into confidential and privileged law enforcement files before Exxon's ability to sue in Texas has even been decided. (Br. at 13-14.) Allowing what Exxon seeks here would undermine the orderly administration of the law and the principles underlying *Younger* abstention.

Contrary to Exxon's assertion (Opp. at 12-14), the NYOAG may request that the Discovery Requests be quashed in their entirety on the ground that the requests were issued without authorization and facially seek privileged information (*see* Br. at 19-22). As Exxon acknowledges, the Discovery Requests seek information about the NYOAG's internal views of the "justification" and "basis" for aspects of its ongoing investigation, as well as about conversations among NYOAG attorneys, and between NYOAG attorneys and confidential sources. (Opp. at 4, 9; *see also* Br. at 10 (describing categories of requests that seek privileged information.).) Such material is presumptively privileged in its entirety.[4]

The Fifth Circuit has held that a so-called "blanket" assertion of attorney-client, work-product, and deliberative-process privileges by a government agency is proper in response to broad discovery requests—and even court orders—inquiring into a law enforcement agency's decision-making process.[5] *See In re United States*, 397 F.3d 274, 285-86 (5th Cir. 2005). There,

---

[4]    To the extent that any material sought by Exxon would be disclosable on the margins, Exxon does not explain what that material would be.

[5]    Exxon mischaracterizes *ACLU of Mississippi, Inc. v. Finch*, which rejected, on a question of first impression, a novel state-law privilege. 638 F.2d 1336 (5th Cir. 1981). Here, the privileges asserted by NYOAG are all well-recognized under federal law, and are core to NYOAG's law enforcement function. (Br. at 19-22.) Similarly, Exxon's suggestion that the Fifth Circuit in *Denova v. U.S. Dep't of Labor* held that assertions of privilege are "strictly construed" because they are "in derogation of the truth" is a red herring. 214 F.3d 586 (5th Cir. 2000). In *Denova*, the Fifth Circuit rejected a request to recognize a purported "self-evaluation" privilege (much like the New York court rejected Exxon's purported "accountant-client privilege"), and the court in fact enforced an administrative subpoena by a government agency investigating a company.

the Court observed that "turning over any further information—even *in camera*—would require documents, affidavits, or perhaps even depositions from several levels of the Department of Justice, all of which could engender various privilege claims, and as a precedent, could be subject to abuse in this and in future cases." *Id.* The Fifth Circuit therefore granted the government a writ of mandamus and vacated the discovery orders issued by the district court. *See id.*

Finally, Exxon incorrectly suggests that the NYOAG has "waived" its privilege objections by failing to raise them on a document-by-document basis. (Opp. at 11.) The NYOAG's Motion to Quash was filed well before objections were due on the document requests, interrogatories, and requests for admission (and before the date of Exxon's first requested deposition of NYOAG's Deputy Chief of the Environmental Protection Bureau). Should written responses and objections be required in the future, or should depositions go forward, NYOAG will timely raise specific privilege objections.[6] While Exxon objects to the form of the NYOAG's arguments on this point—claiming to expect a detailed privilege log ten days before responses and objections are even due—Exxon does not dispute that it will take an enormous expenditure of resources to sort out what, if anything, of the demanded materials are not protected from disclosure.[7]

---

[6]     Exxon's cited cases hold no differently.  In *Coastal Corp. v. Duncan*, 86 F.R.D. 514 (D. Del. 1980) (cited in Opp. at 11), the court ordered immediate production only after recounting the long history of the Department of Energy's years-long refusal to adhere to discovery rules – a far cry from this case, where the Discovery Requests have been outstanding for less than three weeks.  *See also Cappetta v. GC Serv's P'ship*, No. 08-288, 2008 WL 5377934 (E.D. Va. Dec. 24, 2008) (cited in Opp. at 11) (noting "clear pattern of obstruction and delay" by defendant).

[7]     In the New York proceeding, counsel for Exxon acknowledged that "we're going to engage without a question in fairly heated discovery issues." N.Y. App. 174.

## <u>CONCLUSION</u>

For the foregoing reasons, and for those stated in the NYOAG's Brief, the Court should quash Exxon's Discovery Requests, prohibit any future discovery, and enter a protective order to that effect.

<div style="margin-left: 50%;">

Respectfully submitted,

Eric T. Schneiderman
Attorney General of New York

By his attorneys:

  *s/ Pete Marketos*

</div>

| | |
|---|---|
| Jason Brown (pro hac vice) | Pete Marketos |
| *Chief Deputy Attorney General* | Lead Attorney |
| Leslie B. Dubeck* | Texas State Bar No. 24013101 |
| *Counsel to the Attorney General* | pete.marketos@rgmfirm.com |
| John Castiglione* | Tyler J. Bexley |
| *Assistant Attorney General* | Texas State Bar No. 24073923 |
| NEW YORK STATE OFFICE OF THE | tyler.bexley@rgmfirm.com |
| ATTORNEY GENERAL | REESE GORDON MARKETOS LLP |
| 120 Broadway, 25th Floor | 750 N. Saint Paul St. Suite 610 |
| New York, NY 10271 | Dallas, TX 75201 |
| 212-416-8085 | (214) 382-9810 |
| *pro hac vice application pending | Fax: (214) 501-0731 |

<div style="margin-left: 50%;">

Jeffrey M. Tillotson
Texas Bar No. 20039200
TILLOTSON LAW FIRM
750 N. Saint Paul St. Suite 610
Dallas, TX 75201
Telephone:  (214) 382-3041
Fax:  (214) 501-0731

</div>

Dated: December 8, 2016

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on December 8, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Pete Marketos*
Pete Marketos