**FILED**

**December 09, 2016**

KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

In re MAURA T. HEALEY, Attorney General
for the Commonwealth of Massachusetts,

　　　　　　　　*Petitioner.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EXXON MOBIL CORP.

　　　*Plaintiff,*

　v.

ERIC T. SCHNEIDERMAN, Attorney General
of New York, in his official, and MAURA T.
HEALEY, Attorney General of Massachusetts
in her official capacity,

　　　　*Defendant.*

No. 16-_____

No. 4:16-CV-469-K
(N.D. Tex.)

## PETITION FOR A WRIT OF MANDAMUS

RICHARD A. JOHNSTON
　*Chief Legal Counsel*
ROBERT E. TOONE\*
MELISSA A. HOFFER
TIMOTHY CASEY
SETH SCHOFIELD
　*Assistant Attorneys General*
OFFICE OF THE ATTORNEY GENERAL
　OF MASSACHUSETTS
One Ashburton Place
Boston, Massachusetts 02108
robert.toone@state.ma.us
(617) 727-2200
\*　*Counsel of Record*

December 8, 2016

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Interested Parties | Counsel |
|---|---|
| The Honorable Ed Kinkeade<br>U.S. District Court for the Northern District of Texas | |
| Exxon Mobil Corporation<br>*Plaintiff-Respondent* | Alix Dean Allison<br>Ralph H. Duggins<br>Philip A. Vickers<br>CANTEY HANGER LLP<br><br>Daniel E. Bolia<br>Patrick Joseph Conlon<br>EXXON MOBIL CORPORATION<br><br>Justin Anderson<br>Michele Hirshman<br>Daniel Toal<br>Theodore V. Wells<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br><br>Nina Cortell<br>HAYNES & BOONE LLP |
| ERIC T. SCHNEIDERMAN<br>Attorney General of the State of New York<br>*Defendant* | Roderick L. Arz<br>OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK |

|  | Tyler J. Bexley<br>Peter D. Marketos<br>REESE GORDON MARKETOS LLP |
|  | Jeffrey M. Tillotson<br>LYNN TILLOTSON PINKER & COX LLP |
| STATE OF NEW YORK<br>*Amicus* | Judith Vale<br>OFFICE OF THE NEW YORK ATTORNEY GENERAL |
| Attorneys General of the States of Texas, Louisiana, South Carolina, Alabama, Michigan, Arizona, Wisconsin, Nebraska, Oklahoma, Utah, and Nevada<br>*Amici* | Austin R. Nimocks<br>OFFICE OF THE TEXAS ATTORNEY GENERAL |
| Attorneys General of the States of Maryland, Alaska, Minnesota, Connecticut, Mississippi, Hawaii, New Jersey, Illinois, New Mexico, Iowa, Oregon, Kentucky, Rhode Island, Maine, Vermont, Virginia, Washington, District of Columbia, and U.S. Virgin Islands<br>*Amici* | Thiruvendran Vignarajah<br>OFFICE OF THE MARYLAND ATTORNEY GENERAL<br><br>Brian E. Frosh<br>ATTORNEY GENERAL STATE OF MARYLAND |
| ADR Provider<br>*Mediator* | James M Stanton<br>STANTON LLP |

/s/ Robert E. Toone
*Attorney of Record for the*
*Massachusetts Attorney General*

(b)

# TABLE OF CONTENTS

*Page*

Certificate of Interested Persons ............................................................. (a)

Addendum Table of Contents ................................................................... iii

Table of Authorities .............................................................................. vii

Introduction ........................................................................................ 1

Issue Presented .................................................................................... 3

Relief Requested .................................................................................. 4

Statement ........................................................................................... 4

   I.    The Attorney General's Civil Investigative Demand. .................................. 4

   II.   Federal District Court Proceedings ....................................................... 7

      A.   Exxon's Complaint and the Attorney General's Motion to Dismiss ............................................................................... 7

      B.   The District Court's *Sua Sponte* Orders Authorizing Discovery into the Attorney General's Investigatory Deliberations. ...................... 9

   III.  Massachusetts Superior Court CID Proceedings on Exxon's Petition to Vacate or Modify the CID. ................................................ 12

Reasons the Writ Should Issue .............................................................. 13

   I.    The District Court Committed Extraordinary Error in Authorizing Discovery Against the Attorney General Even Though the Court Clearly Lacks Personal and Subject-Matter Jurisdiction and Venue Is Improper. ................................................................................... 14

      A.   The District Court Clearly Erred When It Ordered the Attorney General's Deposition. ................................................................. 15

      B.   The District Court Should Have Dismissed This Action Rather Than Authorizing Discovery into the Basis for the Attorney General's Investigation. ............................................................... 18

**Table of Contents – Continued**                                    *Page*

1.  The District Court Lacks Personal Jurisdiction over the
    Attorney General. ..................................................................18

2.  The District Court Lacks Subject-Matter Jurisdiction Because
    the Case is Unripe. ................................................................21

3.  Venue Is Improper in the Northern District of Texas..........................23

C.  There is No Justification for Discovery in a Collateral Action
    Resisting the Attorney General's CID....................................................25

1.  The Orders Require Discovery into the Decision to Initiate a
    Law Enforcement Proceeding, and Touch Upon Deliberative
    Process and Attorney Work Product. ..................................................25

2.  The District Court Based Its Orders on the "Bad Faith"
    Exception to *Younger*, Which Is Almost Never Applicable
    and Which Has No Basis Here. ...........................................................28

II.  The District Court's Failure to Rule on the Attorney General's
    Bases for Dismissal, Even Though Supported by Controlling
    Authority of this Court, While at the Same Time Authorizing
    Sweeping and Intrusive Discovery, Constituted Extraordinary
    Error. ...................................................................................31

Conclusion ..................................................................................34

Certificate of Compliance With Fed. R. App. P. 32 ..................................... i

Certificate of Service ............................................................... ii

# ADDENDUM TABLE OF CONTENTS

*Page*

## RELEVANT DISTRICT COURT ORDERS

Order Authorizing Discovery into Whether the Massachusetts Attorney
General Issued Her Civil Investigative Demand in "Bad Faith"
(Oct. 13, 2016) (ECF Doc. No. 73) .......................................................................1

Order Directing Massachusetts Attorney General to Appear in Dallas,
Texas for December 13, 2016 Deposition (Nov. 17, 2016)
(ECF Doc. No. 117) ............................................................................................. 7

## RELEVANT DISTRICT COURT PLEADINGS

Docket Report as of December 6, 2016 ....................................................................9

Complaint (June 15, 2016) (ECF Doc. No. 1) ........................................................30

Memorandum of Law in Support of Plaintiff Exxon Mobil Corporation's
Motion for a Preliminary Injunction (June 15, 2016) (ECF Doc. No. 9) ...............63

Memorandum of Law in Support of Defendant Attorney General Maura
Healey's Motion To Dismiss (Aug. 8, 2016) (ECF Doc. No. 42)...........................95

Opposition of Attorney General Maura Healey to Plaintiff Exxon Mobil
Corporation's Motion for Preliminary Injunction (Aug. 8, 2016)
(ECF Doc. No. 43) ...............................................................................................122

Reply in Support of Exxon Mobil Corporation's Motion for a Preliminary
Injunction (Aug. 24, 2016) (ECF Doc. No. 57) ....................................................156

Exxon Mobil Corporation's Opposition to Defendant's Motion to Dismiss
the Complaint (Sept. 8, 2016) (ECF Doc. No. 60) ................................................169

Attorney General Healey's Reply to Exxon Mobil Corporation's
Opposition to Motion To Dismiss (Sept. 16, 2016) (ECF Doc. No. 65)...............202

Mediation Order (Sept. 22, 2016) (ECF Doc. No. 69) ..........................................218

**Addendum Table of Contents – Continued**                    *Page*

Attorney General Healey's Motion to Reconsider Jurisdictional
Discovery Order  (Oct. 20, 2016) (ECF Doc. No. 78)............................................219

Memorandum of Law in Support of Defendant Attorney General
Healey's Motion to Reconsider Jurisdictional Discovery Order
(Oct. 20, 2016) (ECF Doc. No. 79) ........................................................223

Exxon Mobil Corporation's Opposition to Defendant's Motion for
Reconsideration (Oct. 27, 2016) (ECF Doc. No. 90)  ............................................239

Attorney General Maura Healey's Reply to Plaintiff Exxon Mobil
Corporation's Opposition to Her Motion to Reconsider Jurisdictional
Discovery Order (Oct. 31, 2016) (ECF Doc. No. 91) ............................................264

Exxon Mobil's First Amended Complaint for Declaratory and Injunctive
Relief (Nov. 10, 2016) (ECF Doc. No. 100)............................................274

New York Attorney General Letter Declining Special Master and
Proposing Magistrate (Nov. 16, 2016) (ECF Doc. No. 113)..................................323

Attorney General Healey Letter Agreement to the Referral of Discovery
Issues to a Magistrate (Nov. 17, 2016) (ECF Doc. No. 116) ................................325

Attorney General Healey's Motion to Vacate and Reconsider
November 17 Order, Stay Discovery, and Enter a Protective Order
(Nov. 26, 2016) (ECF Doc. No. 120)  ....................................................327

Memorandum of Law in Support of Motion to Vacate Order for
Deposition of Attorney General Healey and Stay Discovery, and
for a Protective Order (Nov. 26, 2016) (ECF Doc. No. 121) ................................331

Defendant Attorney General Maura Healey's Motion to Dismiss
First Amended Complaint (Nov. 28, 2016) (ECF Doc. No. 124) ........................357

Memorandum of Law in Support of Defendant Attorney General
Maura Healey's Motion to Dismiss First Amended Complaint
(Nov. 28, 2016) (ECF Doc. No. 125) ....................................................361

**Addendum Table of Contents – Continued** *Page*

Exxon Mobil Corporation's Opposition to Maura Tracy Healey's Motion
to Vacate the Order for Her Deposition, to Stay Discovery, and for a
Protective Order (Nov. 29, 2016) (ECF Doc. No. 127) .........................................394

Attorney General Healey's Reply in Support of Her Motion to Vacate
Discovery Order and Stay Discovery, and for a Protective Order
(Dec. 1, 2016) (ECF Doc. No. 130) .....................................................421

Order (denying Attorney General Healey's Motion for Reconsideration
of the October 13 Discovery Order (ECF Doc. No. 78) and Her Motion
to Vacate the November 17 Deposition Order (ECF Doc. No. 120)
(Dec. 5, 2016) (ECF Doc. No. 131) .....................................................432

### DISTRICT COURT TRANSCRIPTS

Transcript of Hearing on Exxon's Motion for a Preliminary Injunction
(Sept. 19, 2016) (ECF Doc. No. 68) .....................................................433

Transcript of Telephonic Status Conference (Nov. 16, 2016)
(ECF Doc. No. 114) .....................................................................539

### OTHER RELEVANT DISTRICT COURT MATERIALS

Civil Investigative Demand to Exxon Mobil Corporation (Apr. 19, 2016)
(reproduced in Appendix Supporting Exxon's Preliminary Injunction
Motion) (ECF Doc. No. 10, at 22-51)) ..................................................565

Bradley Olson & Aruna Viswanatha, *SEC Probes Exxon Over
Accounting for Climate Change*, WALL ST. J., Sept. 20, 2016
(cited at p.2 n.2 of ECF Doc. No. 79) ..................................................594

Clifford Krauss, *Exxon Concedes It May Need to Declare Lower Value
for Oil in Ground*, N.Y. TIMES, Oct. 28, 2016 (excerpted from Appendix
to Attorney General's Opp. to Exxon's Mot. for Leave to File a First
Amended Compl. (Oct. 28, 2016) (ECF Doc. No. 95, at 77)) ..............................598

**Addendum Table of Contents – Continued** *Page*

Bradley Olson & Lynn Cook, *Exxon Warns on Reserves As It Posts
Lower Profit: Oil producer to examine whether assets in an area
devastated by low price and environmental concerns should be written
down*, WALL ST. J., Oct. 28, 2016 (excerpted from of Appendix to
Attorney General's Opp. to Exxon's Mot. for Leave to File a First
Amended Compl. (Oct. 28, 2016) (ECF Doc. No. 95, at 82-83)) ........................602


### MASSACHUSETTS SUPERIOR COURT PLEADINGS

Docket Report as of December 6, 2016 ...................................................................605

Emergency Motion of Exxon Mobil Corporation to Set Aside or Modify
the Civil Investigative Demand or Issue a Protective Order (June 16, 2016) ......609

Petition of Exxon Mobil Corporation to Set Aside or Modify the Civil
Investigative Demand or Issue a Protective Order (June 16, 2016) ....................614

Commonwealth's Cross-Motion to Compel Exxon Mobil Corporation
to Comply with Civil Investigative Demand No. 2016-EPD-36
(Aug. 8, 2016) .........................................................................................................639

Commonwealth's Consolidated Memorandum Opposing Exxon's
Motion to Set Aside or Modify the Civil Investigative Demand or
for a Protective Order and Supporting the Commonwealth's Cross-
Motion to Compel Exxon to Comply with the Civil Investigative
Demand (Aug. 8, 2016) ..........................................................................................643

Notice to Appear for Motion Hearing (Oct. 21, 2016) (ECF Doc. 122-7) ...........691

# TABLE OF AUTHORITIES

*Page*

**Cases**

*AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ........................................................ 14

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000) ................. 10, 32

*Atlantic Marine Constr. v. U.S. Dist. Court for W. Dist. of Texas*, 134
   S. Ct. 568 (2013) ............................................................................ 23, 24

*Attorney Gen. v. Colleton*, 444 N.E.2d 915 (Mass. 1982) ...................................... 23

*Attorney General v. Bodimetric Profiles*, 533 N.E.2d 1364 (Mass.
   1989) ......................................................................................................... 5

*Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046 (S.D. Tex.
   2000) ........................................................................................................ 24

*Bogan v. Boston*, 489 F.3d 417 (1st Cir. 2007) ...................................................... 16

*Calder v. Jones*, 465 U.S. 783 (1984) ..................................................................... 21

*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429
   U.S. 252 (1977) ....................................................................................... 15

*Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) .......................................... 26

*FTC v. Standard Oil Co.*, 449 U.S. 232 (1980) ...................................................... 17

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) ...................................... passim

*Hannah v. Larche*, 363 U.S. 420 (1960) ................................................................. 17

*Harmon Law Offices v. Attorney General*, 991 N.E.2d 1098 (Mass.
   App. Ct. 2013) ......................................................................................... 33

*Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986) ........................... 19

*In re Cheney*, 544 F.3d 311 (D.C. Cir. 2008) ........................................................ 16

*In re EEOC*, 207 Fed. Appx. 426 (5th Cir. 2006) .................................................. 27

**Table of Authorities – Continued**                                          *Page*

*In re EEOC*, 709 F.2d 392 (5th Cir. 1983) ........................................................ 16, 27

*In re FDIC*, 58 F.3d 1055 (5th Cir. 1995) .................................................. 15, 16, 26

*In re Office of Inspector General*, 933 F.2d 276 (5th Cir. 1991) .................... passim

*In re Ramu Corp.*, 903 F.2d 312, 314, 318 (5th Cir. 1990) ......................................14

*In re SEC ex rel Glotzer*, 374 F.3d 184 (2d Cir. 2004)...........................................16

*In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565 (5th Cir. 2006) ..........................28

*In re United States (Kessler)*, 985 F.2d 510 (11th Cir.1993) ..................................17

*In re United States*, 197 F.3d 310 (8th Cir. 1999) ...................................................16

*In re United States*, 624 F.3d 1368 (11th Cir. 2010) ...............................................16

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008)(en banc)...................14

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S.
     694 (1982) ...........................................................................................................14

*Johnston v. Multidata Sys. Int'l*, 523 F.3d 602 (5th Cir. 2008) ...............................18

*Kugler v. Helfant*, 421 U.S. 117 (1975) ...................................................................29

*Leroy v. Great W. United Corp.*, 443 U.S. 1731 (1979).........................................24

*O'Keefe v. Chisholm*, 769 F.3d 936 (7th Cir. 2014).................................................22

*Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995) ................................................29

*Ruhrgas AG v. Marathon Oil*, 526 U.S. 574 (1999)............................ 10, 14, 31, 32

*Sandsend Fin. Cons. v. Federal Home Loan Bank Bd.*, 878 F.2d 875
     (5th Cir. 1989)......................................................................................................25

*SEC v. McGoff*, 647 F.2d 185 (D.C. Cir. 1981)................................................... 8, 26

*Secretary of Admin. & Finance v. Attorney General*, 326 N.E.2d 334
     (Mass. 1975)..........................................................................................................4

**Table of Authorities – Continued** *Page*

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422
(2007) ...................................................................................31

*Skelton v. U.S. Postal Serv.*, 678 F.2d 35 (5th Cir. 1982) ........................28

*Smith v. Hightower*, 693 F.2d 359 (5th Cir. 1982) ..................................30

*Sprint Comms., Inc. v. Jacobs*, 134 S. Ct. 584 (2013)............................28

*Stockman v. FEC*, 138 F.3d 144 (5th Cir. 1998) ....................................17

*Stroman Realty Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) ................... passim

*Stroman Realty, Inc. v. Antt*, 528 F.3d 382 (5th Cir. 2008)....................................20

*United States Bd. of Parole v. Merhige*, 487 F.2d 25 (4th Cir. 1973).....................16

*United States v. Armstrong*, 517 U.S. 456 (1996) ...................................26

United States v. Morgan, 313 U.S. 409 (1941).......................................15

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .........................25

*Walden v. Fiore*, 134 S. Ct. 1115 (2014)............................... 19, 20, 21, 32

*Wayte v. United States*, 470 U.S. 598 (1985) ................................. 16, 17

*Wightman v. Texas Supreme Court*, 84 F.3d 188 (5th Cir. 1996) ............... 2, 29, 31

*Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995).......................................24

**Statutes**

28 U.S.C. § 1391(b) ........................................................ 23, 24, 32

Mass. Gen. Laws ch. 12, § 3 .................................................4

Mass. Gen. Laws ch. 93A, § 1 ...............................................4

Mass. Gen. Laws ch. 93A, § 4 ...............................................4

Mass. Gen. Laws ch. 93A, § 6 ............................................ 4, 12, 30, 33

Mass. Gen. Laws ch. 93A, § 6(1) ........................................ 4, 30, 33

**Table of Authorities – Continued**                                    *Page*

Mass. Gen. Laws ch. 93A, § 6(6) ..................................................................5

Mass. Gen. Laws ch. 93A, § 6(7) ..................................................................5

**Other Authorities**

17B Charles A. Wright et al., *Federal Practice & Procedure* § 4255
   (3d ed. 2007) ..........................................................................................30

# INTRODUCTION

This Court's decisions in *Stroman Realty Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), and *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016), require the district court to dismiss Exxon Mobil Corporation's complaint against Attorney General Healey for lack of personal and subject-matter jurisdiction.  The complaint seeks to enjoin the Attorney General from pursuing an investigation of Exxon in Massachusetts for potential violations of Massachusetts's consumer and investor protection law.  Instead of ruling on the Attorney General's motion to dismiss, however, the district court turned basic law-enforcement practice on its head by, *sua sponte*, ordering counter-discovery into the grounds for the Attorney General's civil investigative demand (CID).  Unswayed by the Attorney General's motion for reconsideration, the district court then ordered—again, *sua sponte*—the Attorney General to appear personally in a Dallas courtroom on December 13, 2016, to be deposed about her reasons for initiating the investigation.  Having exhausted all available means to obtain relief from the district court, the Attorney General respectfully requests that this Court issue a writ of mandamus directing that court to vacate its discovery orders and dismiss the case based on this Circuit's controlling precedent.

Mandamus is warranted.  The district court clearly abused its discretion by authorizing any discovery where this Court's dispositive decisions—identified in

the Attorney General's unresolved August 8, 2016, motion to dismiss and her
November 28, 2016 motion to dismiss the first amended complaint[1]—compel
dismissal of this case.  In all events, it was extraordinary error to authorize
discovery of the Attorney General's decision to issue a CID to Exxon and order the
Attorney General to personally appear in Texas for an in-court deposition to
explain that decision.  It is settled in this Circuit that it is inappropriate to probe the
mental processes of a government official absent extraordinary circumstances
(none of which are present here) and that parties like Exxon are not entitled to
counter-discovery to find grounds to resist an administrative subpoena.  *In re
Office of Inspector General*, 933 F.2d 276, 278 (5th Cir. 1991).  Both orders are
particularly flawed because they rest on Exxon allegations that do not support
application of the narrow and "parsimoniously" granted exception to the general
rule (one that the district need not even reach to dismiss the case) that federal
courts must abstain from exercising jurisdiction where, as here, there is an ongoing
state-court proceeding that affords the federal plaintiff an adequate forum for
relief.  *See Wightman v. Texas Supreme Court*, 84 F.3d 188, 190 (5th Cir. 1996).

---

[1] Exxon filed its first amended complaint adding the New York Attorney
General as a co-defendant on November 10.  Addendum (Add-[page]) 274.  The
New York Attorney General has also moved to dismiss the amended complaint.
ECF Doc. No. 133.

By ignoring this Court's decisive precedent, the district court invites a new era of federal-court litigation, where companies can file pre-enforcement actions in distant federal courts to shut down or deter state civil and criminal investigations, rather than raising their objections in the proper state-court forum. That, however, is an invitation this Court rejected in *Stroman* because Texas courts lack personal jurisdiction over out-of-state regulators in cases like this one. 513 F.3d at 487-88. And it is an invitation this Court rejected in *Google* where, as here, there is an existing state-court process for contesting the state-law subpoena. 822 F.3d at 225-26. The Attorney General respectfully urges this Court to exercise its supervisory authority to correct these extraordinary errors.

## ISSUE PRESENTED

Where the district court clearly lacks personal jurisdiction over the Attorney General based on controlling precedent from this Circuit but has refused even to rule on the Attorney General's motion to dismiss, did the district court commit extraordinary error when it *sua sponte* authorized Exxon, for *Younger* abstention purposes, to conduct discovery into the Attorney General's reasons for deciding to investigate Exxon and ordered the Attorney General to personally appear in a Dallas courtroom on December 13, 2016 to effect that improper inquisition?

## RELIEF REQUESTED

The Attorney General seeks a writ of mandamus vacating the district court's discovery orders and directing the district court to grant the Attorney General's motion to dismiss for lack of personal jurisdiction, or, alternatively, directing the district court to stay all discovery and rule on the Attorney General's motion to dismiss based on this Circuit's precedent that dictates dismissal of the action against her.

## STATEMENT

### I.    THE ATTORNEY GENERAL'S CIVIL INVESTIGATIVE DEMAND.

The Attorney General is Massachusetts's "chief law officer," with a "common law duty to represent the public interest."  *Secretary of Admin. & Finance v. Attorney General*, 326 N.E.2d 334, 336, 338 (Mass. 1975); Mass. Gen. Laws ch. 12, § 3.  The Attorney General is empowered to enforce the Massachusetts Consumer Protection Act, which prohibits unfair and deceptive practices in the conduct of business, including offers for sale and sales of securities.  Mass. Gen. Laws ch. 93A, §§ 1, 4, 6.  To effectuate that power, the Attorney General has broad authority to investigate potential unlawful conduct by issuing CIDs for documents and testimony "whenever [s]he believes a person has engaged or is engaging in any method, act or practice declared to be unlawful" by the statute.  *Id.* § 6(1); *see also Attorney General v. Bodimetric Profiles*, 533

N.E.2d 1364, 1367 (Mass. 1989).  The Act allows a CID recipient to challenge its

propriety in state court, Mass. Gen. Laws ch. 93A, § 6(7), and prohibits the

Attorney General from disclosing any documents obtained under a demand without

the party's consent.  *Id.* § 6(6).  Issuance of a CID is a first step, and may or may

not result in an actual enforcement action.

In April 2016, the Attorney General served on Exxon's registered agent in

Massachusetts a CID asking for documents related to Exxon's marketing and sale

of fossil-fuel products and securities to Massachusetts consumers and investors,

and how it values its assets based on economic and regulatory risk due to climate

change.  Add-565, 576, 580-84.  Her issuance of the CID followed her public

announcement of her intention to investigate Exxon at a press conference with

other Attorneys Generals, including New York's.  Add-102.  The Attorney

General's belief that Exxon may have engaged in unlawful conduct was based on a

series of independent investigative journalism reports and Exxon's own

documents, publicly disclosed in those reports, suggesting that Exxon has long

been aware of how its products contribute to climate change and how climate

change and actions related to it could adversely affect the value of its assets and the

company's profitability.  Add-134-35.

The Attorney General is not alone in her belief.  Before she issued the CID,

the New York Attorney General issued a state-law subpoena to Exxon seeking

documents on how climate change risks may affect Exxon's assets and how Exxon has communicated those risks to investors and consumers. Add-138. Despite recently adding the New York Attorney General to its amended complaint, Exxon continues to contend that "it is fully complying" with New York's subpoena, having produced over one million pages of responsive documents to New York.[2] The U.S. Securities and Exchange Commission (SEC) has also launched an investigation into how Exxon accounts for climate-change impacts when it values its assets, Add-594-97, and why Exxon has not been "writing-down" the value of its oil and gas reserves when developing them becomes unprofitable—a practice that no other major oil company follows. *Id.*; *see also* Add-603. On October 28, 2016, Exxon announced that it might have to write down 4.6 billion barrels of tar sands oil reserves—reserves that are more affected by climate-change-related risks—because it may be too expensive to extract them. Add-598. According to Exxon, this would be "the biggest accounting revision of reserves in its history." *Id.*; Add-602. This news prompted at least one shareholder class action alleging federal securities violations in connection with Exxon's failure to disclose climate-change impacts on the value of its assets. Add-340.

---

[2] Petitioner's Emergency Mot. for Stay Pending Mandamus, p.14 n.8 (Dec. 8, 2016).

## II.    FEDERAL DISTRICT COURT PROCEEDINGS.

### A.    Exxon's Complaint and the Attorney General's Motion to Dismiss.

Unlike Exxon's initial cooperative response to the New York Attorney General's subpoena, Exxon sued the Massachusetts Attorney General in federal district court in Texas seeking to enjoin enforcement of Massachusetts's similar CID. Add-614. Exxon complains that the Attorney General's un-enforced CID deprives it of its First (free speech), Fourth (unreasonable search and seizure), and Fourteenth Amendment (due process) rights under the U.S. and Texas Constitutions, contravenes the dormant Commerce Clause, and constitutes a common-law abuse of process. Add-633-37. Its first amended complaint adds civil conspiracy and preemption to its grievance list. Add-314-19. Exxon also requested a preliminary injunction. And, as described below, Exxon has made similar complaints in its action before a Massachusetts state court, which was filed one day after its federal court complaint.

On August 8, 2016, the Attorney General moved to dismiss the complaint based on lack of personal jurisdiction, lack of ripeness, improper venue, and abstention. Add-103-19. On personal jurisdiction and ripeness, the Attorney General pointed to two decisive cases from this Circuit: *Stroman*, 513 F.3d 476, which held that an Arizona state agency did not subject itself to personal jurisdiction in a Texas federal court when it sought to enforce Arizona's laws

against the Texas-based target, and *Google*, 822 F.3d at 225-28, which held that a state's administrative subpoena was unripe for federal-court review where the party had an adequate state-court remedy.  Add-103-12, 117-18.  The Attorney General also opposed the preliminary injunction motion, arguing that Exxon could not demonstrate irreparable harm because it has an adequate remedy in its pending Massachusetts state-court action, does not have to comply with the CID until its state-court petition is adjudicated, and had by that time voluntarily produced 700,000 pages of the requested documents to New York.  Add-141-44.  The Attorney General also argued that Exxon cannot demonstrate likelihood of success on the merits of its claims because existing precedent refutes them.[3]

The district court heard argument on September 19, 2016, on Exxon's preliminary injunction motion.  Add-433.  There, the court recognized that it had relied on *Stroman* in a prior unrelated case to dismiss an action against a non-resident state government official,[4] and asked Exxon "how the heck do I have jurisdiction?"  Add-519.  Later, the court asked whether a federal judge has ever "shut down an attorney general."  Add-526.  It was not until very late in the

---

[3] *E.g.*, Add-144 (citing *SEC v. McGoff*, 647 F.2d 185, 187-88 (D.C. Cir. 1981) (administrative subpoenas "do not directly regulate the content, time, place, or manner of expression, nor do they directly regulate political associations")).

[4] Add-491-92 (referring to *Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010)).  *Saxton* is included as Attachment 3 to the Attorney General's emergency motion for a stay pending mandamus.

argument that Exxon's counsel argued that the court should prolong the litigation
by invoking the "bad faith" exception to abstention (and dismissal) under *Younger
v. Harris*, 401 U.S. 37 (1971), one of the four grounds for dismissal cited by the
Attorney General. Add-528. At no point during the hearing or in its underlying
pleadings, did Exxon ever move for court approval to allow it to conduct discovery
on that issue.[5]

### B.    The District Court's *Sua Sponte* Orders Authorizing Discovery into the Attorney General's Investigatory Deliberations.

After a court-ordered mediation failed to result in Exxon's agreement to
produce any of the documents it had already provided to New York, *see* Add-520-
23; *see also* Add-218, 340-41, the district court, on October 13, 2016, issued, *sua
sponte*, an order authorizing discovery on whether the Attorney General issued the
CID in bad faith, ostensibly so that the court could decide whether to dismiss the
case under *Younger*. Add-1 (Discovery Order). Surprised by the sudden change in
direction, the Attorney General moved for reconsideration of the Discovery Order,
arguing, based on well-established U.S. Supreme Court and Fifth Circuit
precedent, that the court should first rule on the other grounds raised by the

---

[5] While Exxon asked in a footnote in its opposition to the motion to dismiss to
conduct discovery on personal jurisdiction, Add-191 n.29, in regard to "bad faith,"
it stated only that it stood "ready to conduct discovery ... to probe the ... Attorney
General's politically motivated investigation" if the court deemed further record
development necessary. Add-194 n.38.

Attorney General's pending motion to dismiss before allowing Exxon to probe the Attorney General's state-of-mind.[6]  In turn, Exxon served on the Attorney General over 100 requests for written discovery and documents, noticed depositions of her and two of her staff in Boston,[7] noticed the depositions of New York Attorney General Schneiderman and two of his staff in New York, and subpoenaed eleven third parties.  Add-341.[8]

On November 14, 2016, Exxon asked the district court to schedule a status conference on its discovery requests.  Add-219.  During a November 16 telephonic status conference, both the Massachusetts and New York Attorneys General informed the court that they intended to object to all of Exxon's discovery requests.  Add-548-49.  In response, the court stated that, with the parties' permission, it would like to redesignate the previously used mediator to a special master to oversee any discovery issues.  Add-555.  The court also indicated that it would rule on the Attorney General's motion for reconsideration "in due time,"

---

[6] Add-230-31 (citing *Ruhrgas AG v. Marathon Oil*, 526 U.S. 574 (1999), and *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000)).

[7] Exxon has since agreed to withdraw without prejudice its notices to depose and subpoenas to the two assistant attorneys general.

[8] Exxon's requests, some of which are set forth at Add-342 illustrate why depositions of high ranking officials are heavily disfavored, since those requests ask the Attorney General to describe matters that are all protected by one or more available privileges.  *See infra* pp.27-28 (citing privileges).

Add-549, and that it would *only* consider a discovery stay if the Attorneys General agreed to the appointment of Mr. Stanton as special master (and the payment of his $725.00 hourly fee).  Add-555, 561.  Based on concerns expressed during the status conference, which included cost, *see* Add-557-58, both Attorneys General declined to consent, but, as an alternative, agreed to consent to the appointment of a magistrate judge to resolve any discovery disputes.  Add-323-26.

On November 17, 2016, the district court responded to the decisions of the Attorneys General declining appointment of a special master by issuing a *sua sponte* order commanding the Massachusetts Attorney General to appear for a deposition in the judge's Dallas courtroom on December 13, 2016,[9] and advising the New York Attorney General to be available in Dallas that day as well, pending further court order.  Add-7 (Deposition Order).  In addition, the court directed the Massachusetts Attorney General to respond to Exxon's written discovery ten "days from the date the discovery is served" (Add-7)—a date that had already passed.  Add-554.[10]

---

[9] For its part, Exxon had previously noticed the Attorney General's deposition to be held at its counsel's Boston offices.

[10] The Attorney General timely served her objections to Exxon's discovery on November 23, 2016.

### III.   MASSACHUSETTS SUPERIOR COURT CID PROCEEDINGS ON EXXON'S PETITION TO VACATE OR MODIFY THE CID.

One day after filing its federal court complaint, Exxon filed, as is its right pursuant to Mass. Gen. Laws ch. 93A, § 6(7), a petition in Massachusetts Superior Court to set aside or modify the CID or for a protective order.  Add-614.  There, Exxon alleges that the CID violated its constitutional rights (by reference to the Massachusetts Constitution only) to due process, free speech, and freedom from unreasonable search and seizure, and otherwise constitutes an abuse of power.  Add-634-36.  In addition, Exxon argues that the Massachusetts court lacks personal jurisdiction over the company and asks the court both to disqualify the Attorney General and her staff for bias and to stay its petition pending the Texas district court's ruling on its motion for a preliminary injunction.  Add-633-37.

The Attorney General cross-moved to compel Exxon to comply with the CID and opposed Exxon's petition.  Add-639.[11]  As the Attorney General did in her motion to dismiss Exxon's federal complaint, Add-133, she described Exxon's extensive business-related contacts with Massachusetts, including selling its products to hundreds of Massachusetts retailers, distributing Exxon gasoline and other fuel products to more than 300 Exxon-branded retail gasoline service

---

[11] Shortly after Exxon filed its Texas federal district court and Massachusetts actions, the Attorney General and Exxon agreed that the Attorney General's cross-motion would be her only effort to enforce compliance with the CID during the pendency of both sets of litigation, including appeals.  ECF Doc. No. 21, at 3.

stations, operating its own oil pipeline system and fuel distribution facilities in

Massachusetts, advertising its products to Massachusetts residents, and selling its

securities to Massachusetts customers.  Add-666-67.  As of March 2016, Boston-

based investors State Street Corporation and Wellington Capital Management

together held more than $21 billion in Exxon common stock, and Exxon is among

the Boston-based Fidelity Independence Fund's top ten holdings.  Add-667.

The Massachusetts Superior Court has not granted Exxon's request for a

stay.  Instead, the court held a hearing on Exxon's Petition and the Attorney

General's cross-motion to compel compliance with the CID on December 7, 2016.

Add-691.  At that hearing, Exxon had an opportunity to raise all of the same

grievances about the CID that it would like to raise before the Texas district court.

The Massachusetts Superior Court has taken the matter under advisement and is

expected to issue a decision soon.

## REASONS THE WRIT SHOULD ISSUE

Mandamus should issue because the district court committed extraordinary

errors of law, and clearly abused its discretion in a manner that produced a

"patently erroneous result," when it entered the discovery orders, despite its clear

lack of personal jurisdiction over the Attorney General, the absence of a ripe

dispute, and the fact that venue is improper.  *In re Volkswagen of Am., Inc.*, 545

F.3d 304, 310 (5th Cir. 2008) (en banc).  Mandamus relief is justified because

there are no other adequate means to obtain the relief the Attorney General seeks;

her entitlement to the writ is "clear and indisputable"; and the extraordinary

circumstances present here warrant the exercise of this Court's discretion to grant

the writ.  *See id.* at 311.  And it is settled that this Court may direct the district

court to rule on the Attorney General's dispositive motions to dismiss, which have

been pending since August 8 and November 28, 2016.  *See In re Ramu Corp.*, 903

F.2d 312, 314, 318, 321 n.11 (5th Cir. 1990).

## I.    THE DISTRICT COURT COMMITTED EXTRAORDINARY ERROR IN AUTHORIZING DISCOVERY AGAINST THE ATTORNEY GENERAL EVEN THOUGH THE COURT CLEARLY LACKS PERSONAL AND SUBJECT-MATTER JURISDICTION AND VENUE IS IMPROPER.

The district court committed clear and substantial errors in entering the

discovery orders when it should have dismissed the case for lack of personal

jurisdiction, lack of ripeness, and improper venue.  "The validity of an order of a

federal court depends upon that court's having jurisdiction over both the subject

matter and the parties." *Ins. Corp. of Ireland v. Compagnie des Bauxites de

Guinee*, 456 U.S. 694, 701 (1982).  Indeed, "[w]ithout jurisdiction the court cannot

proceed at all in any cause." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577

(1999) (quotation omitted).

### A.     The District Court Clearly Erred When It Ordered the Attorney General's Deposition.

The federal courts of appeal, including the Fifth Circuit, have repeatedly recognized that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."  *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (granting mandamus and directing magistrate judge to vacate discovery order (quotation omitted); *accord In re Office of Inspector General*, 933 F.2d at 277-78 (granting mandamus and vacating discovery order).  These cases follow from *United States v. Morgan*, which emphasized that federal courts may not compel the testimony of agency decision-makers to probe their mental processes.  313 U.S. 409, 422 (1941).  *Morgan* admonished against exactly what the district court ordered: the deposition of a high-ranking official regarding the reasons for taking official action, "including the manner and extent of [her] study of the record and [her] consultation with subordinates."  *Id*.  Authorizing this inquiry works a substantial intrusion on Massachusetts's sovereign interest in investigating violations of its state laws.  *Cf. Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977) ("judicial inquiries into ... executive motivation represent a substantial intrusion into the workings of other branches of government").

Where, as here, there are no exceptional circumstances that would justify such an intrusion, this Court has not hesitated to grant mandamus to quash the deposition. *See In re FDIC*, 58 F.3d at 1062-63; *In re EEOC*, 709 F.2d 392, 398, 403 (5th Cir. 1983).[12]  Indeed, Exxon made no showing of a need to depose Attorney General Healey; in fact, it never moved for discovery at all. *See In re FDIC*, 58 F.3d at 1061 (party seeking depositions must make the "strong showing necessary for a finding of exceptional circumstances").  Nor did the district court make a finding of "exceptional circumstances" before entering the discovery orders *sua sponte*. *See id.* at 1060.  On these facts, this Court has granted mandamus. *Id.*  And, for these reasons alone, it should grant the Attorney General's petition here and direct the district court to vacate the discovery orders.

It is particularly improper to order the direct examination of a government prosecutor at the outset of her investigation.  Doing so imposes "systemic costs of particular concern." *Wayte v. United States*, 470 U.S. 598, 607-08 (1985).[13]

---

[12] Every court of appeals to consider the question has concluded that it is an appropriate exercise of an appellate court's mandamus authority to preclude the testimony of high-ranking officials absent an exceptional showing of need. *See*, *e.g.*, *In re United States*, 624 F.3d 1368, 1372-73 (11th Cir. 2010); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008); *Bogan v. Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *In re United States*, 197 F.3d 310, 314, 316 (8th Cir. 1999); *United States Bd. of Parole v. Merhige*, 487 F.2d 25, 29 (4th Cir. 1973); *see also In re SEC ex rel Glotzer*, 374 F.3d 184, 187-92 (2d Cir. 2004).

[13] Ignoring completely the "systemic costs" the Supreme Court has warned against, the district court's Deposition Order here appears designed to *maximize*

- 16 -

"Examining the basis of a prosecution delays the ... proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* at 607. Indeed, requiring the Attorney General to explain her investigatory rationale at this stage "would make a shambles of the investigation and stifle" her "gathering of facts." *Hannah v. Larche*, 363 U.S. 420, 444 (1960). In other words, the discovery orders "turn[] prosecutor into defendant" before judicial review is even warranted. *FTC v. Standard Oil Co.*, 449 U.S. 232, 243 (1980). For that reason, courts have refused to permit such actions, especially where, as here, the Attorney General had a "reason to believe" Exxon may have violated the Massachusetts consumer and investor-protection law. *Id.* Otherwise, "allowing the person under investigation to bring suit in district court any time he felt aggrieved by the investigation could compromise the ability of the agency to investigate and enforce" the law, as it has here. *Stockman v. FEC*, 138 F.3d 144, 154 (5th Cir. 1998).

---

the burden on the Attorney General by requiring her to set aside her duties as Massachusetts's chief law officer and travel from Boston to Dallas for a courtroom deposition (something that would be highly unusual even in private party litigation). *See In re United States (Kessler)*, 985 F.2d 510, 512-13 (11th Cir.1993) (vacating order for 30-minute telephonic deposition of FDA commissioner as too burdensome).

**B.     The District Court Should Have Dismissed This Action Rather Than Authorizing Discovery into the Basis for the Attorney General's Investigation.**

**1.     The District Court Lacks Personal Jurisdiction over the Attorney General.**

To proceed in the district court, Exxon must establish that "both the forum state's long-arm statute and federal due process permit the court to exercise personal jurisdiction." *Johnston v. Multidata Sys. Int'l*, 523 F.3d 602, 609 (5th Cir. 2008). Exxon can establish neither here. The posture of this case is nearly identical to this Court's *Stroman* decision, which dismissed for lack of personal jurisdiction a suit in Texas by a Texas real estate broker against an Arizona state official challenging her enforcement of Arizona licensing requirements against the plaintiff. 513 F.3d at 479-80, 482-89. The district court dismissed the case based on claim preclusion and abstention, but this Court affirmed on the alternative ground of Texas's lack of personal jurisdiction, noting: "Why the district court failed to consider personal jurisdiction over the [Arizona] Commissioner in a Texas federal court is unclear. This court *must* do so." *Id.* at 482 (emphasis added). Here, the district court committed grievous error when it failed to apply *Stroman*, failed even to rule on the issue of personal jurisdiction, and instead ordered intrusive and unprecedented discovery against the Attorney General.

Even if the Texas long-arm statute purported to reach Attorney General Healey—which it does not, *see Stroman*, 513 F.3d at 482-83—any purported

exercise of personal jurisdiction over her would violate due process. "In order for an exercise of personal jurisdiction to be consistent with due process, the nonresident defendant must have some minimum contact with the forum which results from an affirmative act on the part of the nonresident." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). Where, as here, the plaintiff asserts specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

The district court clearly erred in authorizing discovery where, under this Circuit's controlling authority, it lacked personal jurisdiction over the Attorney General. Here, as in *Stroman*, the Attorney General not only lacks "affirmative" minimum contacts with Texas, she lacks any suit-related contacts with Texas at all. All of the conduct of the Attorney General alleged in Exxon's Complaint occurred in Massachusetts or New York. The press conference Exxon describes at length in its complaint—which forms no basis for legal action, in any event—took place in New York. Add-31. The Attorney General issued the CID under Massachusetts law, from her office in Massachusetts, to Exxon's registered agent in Massachusetts. Add-47; *Stroman*, 513 F.3d at 484. Plainly, she did not "invok[e] the benefits and protections of [Texas's] laws," such that she "should reasonably anticipate being haled into [Texas court]." *Holt*, 801 F.2d at 777 (citation omitted).

And, significantly, *Stroman* rejected the notion on which Exxon's theory of personal jurisdiction depends—that "any state official seeking to enforce her state's laws ... could ... be subjected to suit in any state where the validity of her state's laws were in question." Stroman, 513 F.3d at 486-87. This Court again rejected personal jurisdiction in *Stroman II*, even though California and Florida officials had served a cease and desist order on Stroman in Texas and had communicated with the Texas Real Estate Commission and the Texas Attorney General. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382 (5th Cir. 2008). For the same reasons, any purported exercise of jurisdiction over Attorney General Healey would violate due process.

Exxon's theory of personal jurisdiction—based solely on its spurious allegation that the Attorney General issued the CID intending to "injure" Exxon, which is located in Texas—was emphatically rejected by *Walden*, 134 S. Ct. at 1125. That case reaffirmed that the due-process analysis considers only "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122. Accordingly, the Court held that it was not enough for the plaintiff to allege, as Exxon does here, that a defendant's actions elsewhere have harmed the plaintiff in the forum State. *Id*. at 1125-26. Even before *Walden*, this Court reached the same conclusion, declining "to allow

jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident."  *Stroman*, 513 F.3d at 486.

*Walden* also rejected the "effects" test that Exxon has tried to read into *Calder v. Jones*, 465 U.S. 783 (1984): "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum."  134 S. Ct. at 1125. Thus, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum *in a meaningful way*."  *Id.* (emphasis added).[14]  The Attorney General's issuance of the CID to Exxon's registered agent in Massachusetts does not connect her to Texas in any meaningful way.  *Id.* at 1124.  As in *Stroman*, the Attorney General "is not 'expressly aim[ing]' her actions at Texas," but rather "her intent is to uphold and enforce the laws of" Massachusetts.  513 F.3d at 486.  There is no personal jurisdiction over her in Texas.

## 2.     The District Court Lacks Subject-Matter Jurisdiction Because the Case is Unripe.

The case is also clearly unripe because Exxon has an adequate state-court forum for relief and has not exhausted its ability to obtain relief in that state

---

[14] "The crux of *Calder*," the Court wrote, was that the defendants wrote an allegedly defamatory article "for publication in California that was read by a large number of California citizens," thereby "connect[ing] the defendants' conduct to *California*, not just to a plaintiff who lived there."  134 S. Ct. at 1123-24.  Here, the Attorney General had no meaningful connection to Texas before Exxon sued her there.

proceeding; indeed, it just participated in a lengthy hearing on December 7 in the Massachusetts Superior Court, to challenge the CID.  In *Google*, this Court vacated a district court injunction and dismissed as unripe Google's federal-court challenge to an investigatory subpoena issued by the Mississippi Attorney General.  822 F.3d at 224-36.  Critical to the Court's decision was its view that "comity should make [federal courts] less willing to intervene" in matters concerning state administrative subpoenas than they might be in matters concerning similar federal ones "when there is no current consequence for resisting the subpoena and the same challenges raised in the federal suit could be litigated in state court."  *Id.* at 226.  In other words, if the federal plaintiff can litigate its grievances in state court, it must exhaust its state court remedies—which could afford the plaintiff the relief it seeks—before seeking federal-court review.  That is so *even when* the district court believes that "bad faith" by the government defendant would otherwise justify an injunction.  *Id.* (citing *O'Keefe v. Chisholm*, 769 F.3d 936, 939-42 (7th Cir. 2014)).

Currently, a Massachusetts Superior Court has pending before it Exxon's petition to set aside or modify the CID, Add-614, and the Attorney General's motion to compel compliance with it.  Add-639.  As was the case with the Mississippi Attorney General's administrative subpoena in *Google*, Exxon faces "no current consequence for resisting" the Attorney General's CID.  *Google*, 822 F.3d at 226.  Exxon will not face any non-compliance consequences until after the

Massachusetts courts have adjudicated its claims and, if justified, upheld the
Attorney General's CID.  And, as in *Google*, Exxon may raise (and in fact has
raised) the same challenges it has raised in the district court below, and the
Massachusetts Superior Court is fully capable of adjudicating them.  *See Attorney
Gen. v. Colleton*, 444 N.E.2d 915, 921 (Mass. 1982) (affirming trial court's denial,
on state constitutional grounds, of Attorney General's motion to compel
compliance with CID).  Thus, as *Google* dictates, this Court should grant
mandamus and preclude any further pre-enforcement review.  *See In re Office of
Inspector General*, 933 F.2d at 277-78.

### 3.     Venue Is Improper in the Northern District of Texas.

The district court also should have dismissed this case because the Northern
District of Texas is an improper venue.  "When venue is challenged, the court *must*
determine whether the case falls within one of the three categories set out in [28
U.S.C.] § 1391(b).  If it ... does not, venue is improper, and the case *must* be
dismissed or transferred under § 1406(a)."  *Atlantic Marine Constr. v. U.S. Dist.
Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013) (emphasis added); *see also
Volkswagen*, 545 F.3d at 318 (granting mandamus and ordering transfer where
venue improper).  Venue is proper only where (1) any defendant resides; (2) a
substantial part of the events or omissions giving rise to the claim occurred; or
(3) if neither (1) nor (2) exists, then any judicial district in which any defendant is

subject to the court's personal jurisdiction with respect to such action. 28 U.S.C.

§ 1391(b). Because none of Section 1391(b)'s factors apply here, it was clear error

for the district court not to dismiss the complaint or transfer the case to the District

of Massachusetts. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 181, 185 (1979)

(holding venue improper without deciding other "difficult" jurisdiction issue).

First, the Attorney General is in Massachusetts, not Texas. Second, the

events giving rise to Exxon's claims occurred in Massachusetts, where the

Attorney General served the CID on Exxon's registered Massachusetts agent—not

Texas. That Exxon resides in Texas or claims to be affected there is irrelevant,

since what matters is "the *defendant's* conduct, and *where that conduct took*

*place*." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D.

Tex. 2000) (citing *Woodke v. Dahm*, 70 F.3d 983, 985-86 (8th Cir. 1995)

(emphasis added)). "Actions taken by a plaintiff do not support venue," and any

claim that Exxon somehow feels the effects of the Attorney General's

Massachusetts-based conduct in Texas "does not mean that the events or omissions

occurred in that district." *Id.* Third, as discussed, Texas lacks personal jurisdiction

over Attorney General Healey. The district court therefore should have dismissed

the case, or at the very least transferred it to the District of Massachusetts. *Atlantic*

*Marine*, 134 S. Ct. at 577.

### C.    There is No Justification for Discovery in a Collateral Action Resisting the Attorney General's CID.

Even if jurisdiction over the Attorney General did exist or if venue were proper, the district court's discovery orders would still constitute extraordinary error, since they turn the law enforcement process on its head by allowing Exxon to probe the Attorney General's motives for issuing the CID before Exxon has produced even a single document to her.

### 1.    The Orders Require Discovery into the Decision to Initiate a Law Enforcement Proceeding, and Touch Upon Deliberative Process and Attorney Work Product.

The judiciary's role in a challenge to an administrative subpoena is "strictly limited," *Sandsend Fin. Cons. v. Federal Home Loan Bank Bd*., 878 F.2d 875, 879 (5th Cir. 1989) (citation omitted), to be "handled summarily and with dispatch." *In re Office of Inspector General*, 933 F.2d at 277. Parties like Exxon are generally "not entitled to engage in counter-discovery to find grounds for resisting a subpoena." *Id.* at 278 (internal quotations and citation omitted). Courts disfavor administrative-subpoena challenges because "law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." *United States v. Morton Salt Co*., 338 U.S. 632, 652 (1950). A contrary rule would permit administrative subpoena challenges to "transform" law enforcement investigations into "exhaustive inquisitions into the practices of" the government investigator. *In re Office of Inspector General*, 933

F.2d at 278 (internal quotations and citation omitted).  To avoid that result, this Court has issued a writ of mandamus to "defer and suspend all activity, specifically including discovery" in a pre-enforcement suit like this one pending resolution of a related subpoena-enforcement action like the CID proceedings now pending in Massachusetts, *see id.* at 277, and it should do so here for the same reason.

The district court also committed extraordinary error when it ordered discovery *sua sponte*, because "[a]s the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating" its necessity.  *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013) (citation omitted).  That is the case even where the party alleges, as Exxon as here, that the investigation was "politically motivated."  *McGoff*, 647 F.2d at 187-88 (upholding SEC subpoena and rejecting discovery directed, in part, to whether investigation was "politically motivated"); *see also In re FDIC*, 58 F.3d at 1062-63 (similar, granting mandamus).  Exxon not only failed to demonstrate "necessity"; it failed to move for discovery on the "bad faith" issue at all.

The district court also ignored the established presumption that the Attorney General has "properly discharged [her] official duties" in issuing the CID "in the absence of clear evidence to the contrary."  *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996) (describing showing necessary to authorize discovery by defendants raising claims of selective criminal prosecution).  Nothing about the

Attorney General that Exxon presented to the District court—cooperating with other Attorneys General, speaking publicly about her investigation and other matters of environment-related public interest, consulting with scientific and legal experts, and requesting business records—supports any factual inquiry, much less the sweeping inquiry the district court set in motion.  In fact, the examples of bias and bad faith cited by Exxon are the kinds of things Attorneys General across the nation do every day.  Were Attorneys General and other prosecutors actually subject to demands for counter-discovery based on baseless claims that such commonplace activity amounts to "bad faith," virtually every subject of an ongoing investigation would be able to follow Exxon's lead, initiate an onerous investigation of the investigator, and bring the entire law enforcement system to a halt.

The only likely outcome of the discovery that the Court has ordered is an improper and vexatious investigation into privileged or protected information.  The remaining information about the Attorney General's investigation not currently in the public domain, as the cases make clear, consists largely of attorney work product and other privileged materials.  *See, e.g.*, *In re EEOC*, 207 Fed. Appx. 426, 429-35 (5th Cir. 2006) (per curiam) (granting mandamus to block deposition of EEOC attorney and production of documents regarding agency's decision to bring lawsuit, where testimony and documents were protected by attorney-client

privilege and work-product doctrine); *see also In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569-71 (5th Cir. 2006) (recognizing "existence of a law enforcement privilege" relating to ongoing investigations); *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38-39 (5th Cir. 1982) (recognizing "deliberative process" privilege).  This is therefore not a case where discovery will yield significant additional facts.

> ### 2.    The District Court Based Its Orders on the "Bad Faith" Exception to *Younger*, Which Is Almost Never Applicable and Which Has No Basis Here.

The district court's discovery orders are even more extraordinary because they turn *Younger*, a case founded on respect for State sovereignty, into a weapon against state law enforcement.  *Younger* requires federal courts to abstain from exercising jurisdiction where (i) there is pending a qualifying state judicial proceeding, (ii) the state proceeding implicates important state interests, and (iii) the state proceeding provides an adequate opportunity for the federal plaintiff to assert federal constitutional claims.  *Sprint Comms., Inc. v. Jacobs*, 134 S. Ct. 584, 588, 591 (2013).  Once these requirements are met, abstention should be ordered "absent bad faith, harassment, or a patently invalid state statute."  *Id.* at 591.  Because *Younger* abstention is intended both to preserve "a prosecutor's discretion" in deciding whether to initiate an enforcement action, and to respect federalism by giving state courts an opportunity to correct any prosecutorial violations of individual constitutional rights, "the exceptions to *Younger* only

provide for a very narrow gate for federal intervention." *Phelps v. Hamilton*, 59 F.3d 1058, 1064 (10th Cir. 1995) (citation and internal quotation marks omitted). Or, as the Supreme Court has described the exceptions: "Only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state [judicial] process." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) (citations omitted). Here, there is no allegation that the Massachusetts court is incapable of adjudicating fairly and fully Exxon's claims, and there is no basis for applying *Younger*'s "narrow" and "parsimoniously" granted bad faith exception. *Wightman*, 84 F.3d at 190.

The concerns identified in the Discovery Order do not trigger *Younger*'s bad faith exception, and so cannot justify discovery. *Younger*'s exceptions would apply "[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Kugler*, 421 U.S. at 124 (internal quotations and citation omitted); *Wightman*, 84 F.3d at 190-91. The Supreme Court, in fact, has never found the bad-faith exception applicable. 17B Charles A. Wright et al., *Federal Practice & Procedure*

§ 4255 (3d ed. 2007).[15]  But in this case, the district court concluded that it might

be applicable based on the Attorney General's goal of holding Exxon

"accountable" if it violated Massachusetts law and her statement that she was

"troubled" by the "disconnect between what" the existing record before her

suggested Exxon knew and what Exxon "chose to share with investors." Add-5.

Those remarks, however, reflect only the concerns of a responsible prosecutor, and

that she had a "reason to believe" there was a basis to issue the CID.  Mass. Gen.

Laws ch. 93A, § 6(1) (Attorney General *must* "believe[] a person has engaged in or

is engaging in any method, act or practice declared to be unlawful by [Chapter

93A]" before she "may conduct an investigation to ascertain whether in fact such

person has [violated the law].").[16]  In other words, "[t]he record shows nothing

more than [the Attorney General's] adherence to standard procedure and

---

[15] In fact, "the universe of bad-faith harassment claims that can be established is virtually empty."  Wright, *supra*, § 4255,

[16] The record underlying the Attorney General's decision to issue the Exxon CID was extensive, *see* Add-134-38 (describing review by Attorney General staff of numerous internal Exxon documents made public in 2015 by investigative journalists) and Add-233-34 (referencing numerous appended documents, totaling more than 200 pages), and completely ignored by the district court's Discovery Order.  Add-4-5.  That also constitutes error.  This Court has instructed lower courts to consider the "bad faith" exception's applicability based on the information the government official had before her at the time she made the contested decision, not by a subjective inquiry into the official's deliberative process.  *Smith v. Hightower*, 693 F.2d 359, 374 (5th Cir. 1982).

compliance with statutory requirements." *Wightman*, 84 F.3d at 191 (rejecting bad-faith exception). That is the opposite of bad faith.

## II. THE DISTRICT COURT'S FAILURE TO RULE ON THE ATTORNEY GENERAL'S BASES FOR DISMISSAL, EVEN THOUGH SUPPORTED BY CONTROLLING AUTHORITY OF THIS COURT, WHILE AT THE SAME TIME AUTHORIZING SWEEPING AND INTRUSIVE DISCOVERY, CONSTITUTED EXTRAORDINARY ERROR.

Presented with three bases for dismissal that required no discovery and that were based on controlling decisions from this Court and the Supreme Court—personal jurisdiction, ripeness, and improper venue—the district court instead chose to order intrusive discovery into the Attorney General's decision-making process based on the almost-never-applicable bad faith exception to *Younger* abstention. This was extraordinary error here, where this Court's decision in *Stroman* so clearly demonstrates that the district court lacks personal jurisdiction over the Attorney General.

As the Supreme Court has explained, federal courts ordinarily "resolve[] doubts about" subject matter jurisdiction first, but, the Court continued, "there are circumstances" when a district court "appropriately accords priority to a personal jurisdiction inquiry." *Ruhrgas*, 526 U.S. at 578; *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435-36 (2007) (district court "properly" dismisses based on *forum non conveniens* where that basis for dismissal is clear, and where subject-matter or personal jurisdiction is "difficult to

determine" and may entail burdensome discovery). In deciding which threshold basis for dismissal to consider first, the Supreme Court made clear that "[a] State's dignitary interest bears consideration." *Ruhrgas*, 526 U.S. at 586. This Court has read *Ruhrgas* in precisely this manner, directing district courts "facing multiple grounds for dismissal to consider the complexity of subject-matter jurisdiction issues ..., *concerns of federalism*, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction." *Alpine ViewCo. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000) (emphasis added).

Here, this Court's decision in *Stroman* and the Supreme Court's decision in *Walden* make clear that lack of personal jurisdiction was the "surer ground" for dismissal. *Ruhrgas*, 526 U.S. at 578; *see supra* pp.18-21. Similarly, this Court's decision in *Google* makes clear that this case is unripe, and 28 U.S.C. § 1391(b) makes clear that venue in the Northern District of Texas is improper. *See supra* pp.21-24. Deciding personal jurisdiction in this case also implicates no question of Massachusetts law. *See Ruhrgas*, 526 U.S. at 588. The facts that Exxon relies on to allege bad faith—the Attorney General's statements, in essence, that she believes Exxon has violated Massachusetts's consumer and investor protection statute—do not, under Massachusetts law, demonstrate bias; rather, the Attorney General's belief that Exxon is or has engaged in practices that violate Chapter 93A

is a legally required predicate to issuance of a CID.  *See* Mass. Gen. Laws ch. 93A, § 6(1); *Harmon Law Offices v. Attorney General*, 991 N.E.2d 1098, 1103 (Mass. App. Ct. 2013).

Faced with these clear-cut bases for dismissal that require no discovery to resolve, the district court instead chose first to explore the Attorney General's alternative ground for dismissal—*Younger* abstention—by, *sua sponte*, authorizing Exxon to try to unearth some yet-to-be disclosed bias that motivated the Attorney General's issuance of the CID to decide whether to apply *Younger*'s narrow bad-faith exception.  Equally remarkable is that the district court did so without any record-based justification and despite overwhelming precedent that spurns deposing high-level government officials and counter-discovery in challenges to administrative subpoenas likes the CID here.  And, the district court based its actions exclusively on a decision—*Younger*—that is intended to protect state sovereignty and respect state interests.  The district court's failure to rule on the Attorney General's motions to dismiss, and its entry of sweeping discovery orders, taken individually or combined, amount to extraordinary error that can only be remedied by mandamus.

## CONCLUSION

For the reasons set forth above, the Petitioner asks that this Court issue a writ of mandamus (1) vacating the Discovery Orders and (2) directing the district court to dismiss the case for lack of personal jurisdiction or alternatively directing the district court to stay discovery until it rules on the motion to dismiss.

Respectfully submitted,

MAURA T. HEALEY, as Attorney General of the Commonwealth of Massachusetts,

By her attorneys,

 /s/ Robert E. Toone
RICHARD A. JOHNSTON
  *Chief Legal Counsel*
ROBERT E. TOONE*
MELISSA A. HOFFER
TIMOTHY CASEY
SETH SCHOFIELD
  *Assistant Attorneys General*
OFFICE OF THE ATTORNEY GENERAL
  OF MASSACHUSETTS
One Ashburton Place
Boston, Massachusetts 02108
robert.toone@state.ma.us
(617) 727-2200
robin.toone@state.ma.us

December 8, 2016          * *Counsel of Record*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32

I hereby certify that:

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 21(d), because this brief contains 7,792 words, excluding the parts of the brief exempted by Fed. R. App. P. 21(a)(2)(C) and Circuit R. 21; and.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with 14-point, Times New Roman-style font.

Dated: December 8, 2016              /s/ Robert E. Toone
                                      Robert E. Toone
                                      *Attorney of Record for the*
                                      *Massachusetts Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on December 8, 2016.

I further certify that on December 8, 2016, I caused the foregoing motion to be served, by e-mail on:

Patrick J. Conlon
Exxon Mobil Corporation
1301 Fannin Street
Houston, TX 77002
(832) 624-6336
daniel.e.bolia@exxonmobil.com

Ralph H. Duggins
Cantey Hanger LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
(817) 877-2800
rduggins@canteyhanger.com

Theodore V. Wells, Jr.
Paul, Weiss, Rifkind, Wharton &
    Garrison, LLP
1285 Avenue of the Americas New
York, NY 10019-6064
(212) 373-3000
twells@paulweiss.com

Nina Cortell
Haynes & Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
(214) 651-5579
nina.cortell@haynesboone.com

Justin Anderson
Paul, Weiss, Rifkind, Wharton &
    Garrison, LLP
2001 K Street, NW
Washington, D.C. 20006-1047
(202) 223-7300
janderson@paulweiss.com

I further certify that on December 8, 2016 I have caused the petition and the attachments, including the petitioner's emergency motion for a stay pending mandamus to be hand-delivered to the district court on the morning of Friday, December 9, 2016, the most expeditious means of service available to us.  The foregoing will be delivered to:

The Honorable Ed Kinkeade
U.S. District Court for the Northern
   District of Texas
1100 Commerce Street, Room 1625
Dallas, Texas 75242-1003

Dated:  December 8, 2016                    /s/ Robert E. Toone
                                           Robert E. Toone
                                           *Attorney of Record for the*
                                           *Massachusetts Attorney General*