IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC TRADD SCHNEIDERMAN, | § | No. 4:16-CV-469-K |
| Attorney General of New York, in his | § | |
| official capacity, and MAURA TRACY | § | |
| HEALEY, Attorney General of | § | |
| Massachusetts, in her official capacity, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## EXXON MOBIL CORPORATION'S
## OPPOSITION TO MAURA TRACY HEALEY'S
## <u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

Patrick J. Conlon (*pro hac vice*)
Daniel E. Bolia
EXXON MOBIL CORPORATION
1301 Fannin Street
Houston, TX 77002
(832) 624-6336

Theodore V. Wells, Jr. (*pro hac vice*)
Michele Hirshman (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Justin Anderson (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

Nina Cortell
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
Tel: (214) 651-5579
Fax: (214) 200-0411

Ralph H. Duggins
Philip A. Vickers
Alix D. Allison
CANTEY HANGER LLP
600 West 6th St., Suite 300
Fort Worth, TX 76102
Tel: (817) 877-2800
Fax: (817) 877-2807

*Counsel for Exxon Mobil Corporation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 2

    A.    The Attorney General's Public Statements Demonstrate Viewpoint Bias. ................................................................................................................ 2

    B.    Documents Obtained Via Third-Party Public Records Reveal the Origins of a Conspiracy to Violate ExxonMobil's Constitutional Rights. .............................................................................................................. 2

    C.    The CID Is a Fishing Expedition that Expressly Targets One Side of a Partisan Debate. .......................................................................................... 3

    D.    The Attorney General Directed Her Unlawful Conduct at Texas. ............. 4

ARGUMENT ................................................................................................................ 5

I.    This Court Has Personal Jurisdiction over the Attorney General............................ 5

    A.    The Texas Long-Arm Statute Reaches the Attorney General. ................... 5

    B.    Exercising Personal Jurisdiction over the Attorney General Comports with Due Process........................................................................ 6

        1.    The Attorney General Directed Her Unlawful Conduct at Texas with an Intent to Cause Injury in Texas. ................................ 8

        2.    It Is Fair and Reasonable to Exercise Personal Jurisdiction over the Attorney General. ................................................................ 12

    C.    The Court Need Not Consider Personal Jurisdiction First. ...................... 14

II.    ExxonMobil's Constitutional Claims Are Ripe for Adjudication. ........................ 15

III.    Venue Is Proper in the Northern District of Texas. .............................................. 16

IV.    The State Law Claims Are Not Barred by the Eleventh Amendment. .................. 17

V.    This Court Should Reject the Attorney General's Request for Abstention. .......... 19

    A.    The Attorney General's Bad Faith Precludes Abstention.......................... 20

    B.    Even Absent Bad Faith, *Younger* Abstention Is Inappropriate.................. 22

VI.    The First Amended Complaint States Claims upon Which Relief Can Be Granted. ................................................................................................................ 23

CONCLUSION........................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

C<small>ASES</small>

*21 Turtle Creek Square, Ltd.* v. *N.Y. State Teachers' Ret. Sys.*,
    425 F.2d 1366 (5th Cir. 1970) ...................................................................5

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)....................................................................23, 25

*Atwood Hatcheries* v. *Heisdorf & Nelson Farms*,
    357 F.2d 847 (5th Cir. 1966) ...................................................................5

*Bd. of Cty. Comm'rs of Beaver Cty., Okla.* v. *Amarillo Hosp. Dist.*,
    835 S.W.2d 115 (Tex. Ct. App.—Amarillo 1992, no writ)...........................5

*Bear Stearns Cos.* v. *Lavalle*,
    No. 3:00 Civ. 1900-D, 2001 WL 406217 (N.D. Tex. Apr. 18, 2001) ...........9

*Bice* v. *La. Pub. Defender Bd.*,
    677 F.3d 712 (5th Cir. 2012) ..............................................................20, 23

*Bishop* v. *State Bar of Tex.*,
    736 F.2d 292 (5th Cir. 1984) ..............................................................20, 21

*Calder* v. *Jones*,
    465 U.S. 783 (1984)................................................................................11

*Colo. River Water Conservation Dist.* v. *United States*,
    424 U.S. 800 (1976)..........................................................................19, 23

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
    No. 3:11-MD-2244-K, 2014 WL 3557392 (N.D. Tex. July 18, 2014) ........9

*Farina* v. *Nokia Inc.*,
    625 F.3d 97 (3d Cir. 2010) ...................................................................25

*Fitzgerald* v. *Peek*,
    636 F.2d 943 (5th Cir. 1981) .................................................................21

*Future* v. *La. Bd. of Ethics*,
    No. 14-0368, 2014 WL 1514234 (E.D. La. Apr. 16, 2014) .......................17

*Galloway* v. *State of La.*,
    817 F.2d 1154 (5th Cir. 1987) ................................................................25

*Google* v. *Hood,*
     822 F.3d 212 (5th Cir. 2016) ................................................................15, 16

*Gruber Hurst Johansen & Hail, LLP* v. *Hackard & Holt,*
     No. 3:07-CV-1410-G, 2008 WL 137970 (N.D. Tex. Jan. 15, 2008).........................16

*Guidry* v. *U.S. Tobacco Co.,*
     188 F.3d 619 (5th Cir. 1999) ................................................................7, 12

*Gulf Coast Int'l L.L.C.* v. *The Research Corp. of the Univ. of Haw.,*
     490 S.W.3d 577 (Tex. Ct. App.—Houston [1st Dist.] 2016, pet. denied)....................5

*Int'l Energy Ventures Mgmt., L.L.C.* v. *United Energy Grp., Ltd.,*
     818 F.3d 193 (5th Cir. 2016) .........................................................................7

*Jordan* v. *Reis,*
     169 F. Supp. 2d 664 (S.D. Tex. 2001) ........................................................23

*Kalman* v. *Cortes,*
     646 F. Supp. 2d 738 (E.D. Pa. 2009) ...........................................................8

*Larson* v. *Domestic & Foreign Commerce Corp.,*
     337 U.S. 682 (1949)...................................................................................17

*Lewis* v. *Fresne,*
     252 F.3d 352 (5th Cir. 2001) ......................................................................9

*Lone Star Coll. Sys.* v. *EEOC,*
     No. H-14-529, 2015 WL 1120272 (S.D. Tex. Mar. 12, 2015) ...................16

*Markland* v. *Bay Cty.*
     [Florida] *Sheriff's Office*, No. 1:14-CV-572, 2015 WL 3430120 (E.D.
     Tex. May 28, 2015) .....................................................................................5

*McFadin* v. *Gerber,*
     587 F.3d 753 (5th Cir. 2009) .......................................................................12

*Mitchum* v. *Foster,*
     407 U.S. 225 (1972)....................................................................................16

*Monkton Ins. Servs., Ltd.* v. *Ritter,*
     768 F.3d 429 (5th Cir. 2014) .......................................................................7

*Nationwide Mut. Ins. Co.* v. *Unauthorized Practice of Law Comm.,*
     283 F.3d 650 (5th Cir. 2002) ......................................................................23

*Next Techs., Inc.* v. *ThermoGenisis, LLC,*
     121 F. Supp. 3d 671 (W.D. Tex. 2015) ......................................................14

iii

*Patsy* v. *Bd. of Regents of State of Fla.*,
   457 U.S. 496 (1982)..................................................................................16

*Payne* v. *Cty. of Kershaw, S.C.*,
   No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008) ........................5

*Pennhurst State Sch. & Hosp.* v. *Halderman*,
   465 U.S. 89 (1984)...............................................................................17, 18

*Perez Bustillo* v. *State of La.*,
   718 S.W.2d 844 (Tex. Ct. App.—Corpus Christi 1986, no writ)................................5

*Perez* v. *Ledesma*,
   401 U.S. 82 (1971)..................................................................................22

*Petterway* v. *Veterans Admin. Hosp., Hous., Tex.*,
   495 F.2d 1223 (5th Cir. 1974) ....................................................................18

*PTI, Inc.* v. *Philip Morris Inc.*,
   100 F. Supp. 2d 1179 (C.D. Cal. 2000) ..........................................................14

*R.R. Comm'n of Tex.* v. *Pullman Co.*,
   312 U.S. 496 (1941)..................................................................................23

*Saxton* v. *Faust*,
   No. 3:09 CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010) ............5, 11, 12

*Scham* v. *District Courts Trying Criminal Cases*,
   967 F. Supp. 230 (S.D. Tex. 1997)................................................................18

*Schlagler* v. *Phillips*,
   166 F.3d 439 (2d Cir. 1999) ......................................................................21

*Sinochem Int'l Co. Ltd.* v. *Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)..................................................................................14

*Spir Star AG* v. *Kimich*,
   310 S.W.3d 868 (Tex. 2010) .......................................................................5

*Sprint Commc'ns, Inc.* v. *Jacobs*,
   134 S. Ct. 584 (2013)................................................................................19

*Stewart* v. *Dameron*,
   448 F.2d 396 (5th Cir. 1971) ......................................................................22

*Stripling* v. *Jordan Prod. Co.*,
   234 F.3d 863 (5th Cir. 2000) .......................................................................7

*Stroman Realty, Inc.* v. *Antt*,
528 F.3d 382 (5th Cir. 2008) ..................................................................10

*Stroman Realty, Inc.* v. *Wercinski*,
513 F.3d 476 (5th Cir. 2008) ..............................................................6, 10

*Sullivan* v. *Cty. of Hunt, Tex.*,
106 F. App'x 215 (5th Cir. 2004) ............................................................25

*Trower* v. *Maple*,
774 F.2d 673 (5th Cir. 1985) ..................................................................22

*Turner* v. *Pavlicek*,
No. H-10-00749, 2011 WL 4458757 (S.D. Tex. Sept. 22, 2011)..............23

*United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO* v.
*Scott*,
463 U.S. 825 (1983).................................................................................25

*Valtech Solutions Inc.* v. *Davenport*,
No. 3:15-CV-3361-D, 2016 WL 2958927 (N.D. Tex. May 23, 2016).......14

*Vanderbilt Mortg. & Fin., Inc.* v. *Flores*,
692 F.3d 358 (5th Cir. 2012) ..............................................................7, 10

*Walden* v. *Fiore*,
134 S. Ct. 1115 (2014).........................................................................9, 11

*Wien Air Alaska, Inc.* v. *Brandt*,
195 F.3d 208 (5th Cir. 1999) ...........................................................7, 9, 12

*Wightman-Cervantes* v. *Texas*,
No. 3:03-CV-3025-D, 2005 WL 770598 (N.D. Tex. Apr. 6, 2005)...........22

*Wilson* v. *Thompson*,
593 F.2d 1375 (5th Cir. 1979) ...........................................................22, 23

*Word of Faith World Outreach Ctr. Church, Inc.* v. *Morales*,
986 F.2d 962 (5th Cir. 1993) .............................................................17, 18

*Younger* v. *Harris*,
401 U.S. 37 (1971).............................................................................*passim*

**STATUTES**

28 U.S.C. § 1391(b)(2) ...................................................................................17

42 U.S.C. § 1985(3) .........................................................................................25

Mass. Gen. Laws ch. 93A, § 6(1) ....................................................................................15

Mass. Gen. Laws ch. 260, § 5A ......................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8...........................................................................................................23

U.S. Const. Amendment I....................................................................................8, 17, 23

U.S. Const. Amendment IV .......................................................................................8, 9

U.S. Const. Amendment XI......................................................................1, 17, 18, 19

U.S. Const. Amendment XIV .....................................................................................11

Exxon Mobil Corporation ("ExxonMobil") respectfully submits this memorandum of law in opposition to Defendant Maura Tracy Healey's motion to dismiss the First Amended Complaint ("FAC").

## PRELIMINARY STATEMENT

ExxonMobil brought this action to protect its constitutional rights from Attorney General Healey's misuse of government power.  Desperate to avoid this Court's scrutiny of her unlawful conduct, the Attorney General has assembled a laundry list of meritless objections to the action, contesting personal jurisdiction, ripeness, venue, the permissibility of ExxonMobil's state law claims under the Eleventh Amendment, the viability of the suit under *Younger*, and whether the FAC states plausible grounds for relief.  The Attorney General is wrong on all counts.

*First*, the moment Attorney General Healey elected to use the levers of government to cause constitutional torts in Texas, she subjected herself to the jurisdiction of courts in this state. *Second*, the ripeness of this lawsuit is evidenced by the penalties ExxonMobil faces for non-compliance with the civil investigative demand ("CID") the Attorney General has served on ExxonMobil and by the Attorney General's motion to compel in Massachusetts state court. *Third*, venue is appropriate because ExxonMobil is seeking relief in the very district where its rights have been violated.  *Fourth*, by issuing the unlawful CID in order to regulate ExxonMobil's speech in Texas, the Attorney General exceeded her statutory authority, thus permitting this Court to hear ExxonMobil's state law claims.  *Fifth*, the Attorney General's bad faith precludes abstention.  *Finally*, ExxonMobil's detailed allegations concerning the Attorney General's unconstitutional plan to target ExxonMobil for expressing views about climate change with which she disagrees are more than sufficient to state a plausible claim for relief.

Having failed to identify a valid basis to dismiss the FAC, the Attorney General's motion should be denied.

1

## STATEMENT OF FACTS

Attorney General Healey has violated ExxonMobil's constitutional rights by misusing the powers of her office.  As described in the detailed allegations in the FAC, the Attorney General is engaging in unapologetic viewpoint discrimination, conducting an unlawful fishing expedition, directing a biased investigation with preordained results, and seeking to regulate speech and conduct occurring well beyond the borders of the Commonwealth of Massachusetts.

### A.       The Attorney General's Public Statements Demonstrate Viewpoint Bias.

Joining Attorney General Schneiderman and other members of the so-called "Green 20" group of attorneys general at a March 29, 2016 press conference, Attorney General Healey declared that "certain companies" needed to be "held accountable" for expressing a viewpoint on climate change that she disfavored.[1]  After acknowledging that "public perception" was her principal concern, she condemned her targets for not adopting her beliefs on "the catastrophic nature of" climate change in their statements to the public.[2]  Attorney General Healey then pledged to take "quick, aggressive action" to "address climate change" by investigating ExxonMobil.[3]  Prejudging the investigation's results, she told the public she had already found a "troubling disconnect between what Exxon knew, what industry folks knew, and what the company and industry chose to share with investors and with the American public."[4]

### B.       Documents Obtained Via Third-Party Public Records Reveal the
###           Origins of a Conspiracy to Violate ExxonMobil's Constitutional Rights.

Documents obtained by third parties through public record demands further confirm the ulterior and biased objectives driving the Attorney General's investigation.  The first set of

---

[1]     MTD App. at 13.

[2]     *Id.*

[3]     MTD App. at 14.

[4]     MTD App. at 13.

documents shows the origins of the "Green 20" and that group's focus on politics and sheds light on Attorney General Healey's decision to join Attorney General Schneiderman and the Green 20 in their efforts.  A draft set of "Principles" guiding the group's actions included a "Pledge" to "work together" to enforce laws "that require progressive action on climate change."[5]  Fellow coalition members expressed qualms about this overtly partisan language, which the Vermont Attorney General's Office feared "might alienate" some constituents.[6]  The second set of documents relates to a common interest agreement executed in April and May 2016 by Attorneys General Healey and Schneiderman and fifteen fellow coalition members to shield the participants' communications from the public.[7]  The agreement describes their common interest as "limiting climate change and ensuring the dissemination of accurate information about climate change."[8]  That description reflects the Attorney General's biased objective, while embracing the regulation of speech to accomplish that end.

### C.  The CID Is a Fishing Expedition that Expressly Targets One Side of a Partisan Debate.

Three weeks after the March 29, 2016 press conference, the Attorney General issued the CID to ExxonMobil demanding, among other things, all communications between ExxonMobil and 12 organizations,[9] each of which has been derided as a so-called climate change "denier." The focus of the CID on entities the Attorney General perceives to be antagonistic to her policy preferences underscores the improper motivation for issuing the CID in the first place—namely, to silence perceived political opponents.  The sheer breadth of the CID also reflects its impropriety, demonstrating that it is nothing more than a transparent fishing expedition

---

[5]   MTD App. at 53-54 (noting that Attorney General Healey will attend the Green 20 press conference).

[6]   MTD App. at 53.

[7]   MTD App. at 57-75.

[8]   MTD App. at 57.

[9]   MTD App. at 35 (Request No. 5).

forbidden by the Constitution.  The CID seeks 38 categories of documents (more than 60 when

including sub-categories) on a worldwide basis for a period of 40 years.[10]  Given the relevant

four-year statute of limitations, *see* Mass. Gen. Laws ch. 260, § 5A, this scope suggests a fishing

expedition.

### D. The Attorney General Directed Her Unlawful Conduct at Texas.

The constitutional violations that form the basis of ExxonMobil's First Amended

Complaint occurred in Texas.  ExxonMobil is a Texas-based company with no significant

contacts in Massachusetts.  Although ExxonMobil designates a Massachusetts-based agent in its

registration filing with the Massachusetts Secretary of State, that filing also states that

ExxonMobil's "Principal Office" is located in Irving, Texas, and that ExxonMobil has no office

in Massachusetts.[11]  Nor has ExxonMobil had any presence in Massachusetts that could give rise

to a violation of the Massachusetts consumer protection law.[12]

The CID seeks records that are located in Texas and, in turn, is directed at ExxonMobil's

speech that originated in Texas.  Many of the CID's requests expressly acknowledge those facts.

Request 10 asks for documents concerning a speech given by an ExxonMobil executive "in

Dallas, Texas."[13]  Likewise, Request 16 seeks a broad array of documents concerning a press

release that was issued from ExxonMobil's headquarters in Irving, Texas.[14]  Other requests

pertain to matters that are routinely handled at a company's corporate headquarters, such as the

securities filings sought by Requests 19 and 31.[15]

---

[10]   MTD App. at 34-42.
[11]   MTD App. at 77.
[12]   FAC ¶ 70.
[13]   MTD App. at 37.
[14]   MTD App. at 38-39.
[15]   MTD App. at 39, 41.  The CID also seeks documents even farther afield from Massachusetts.  Request 8 seeks documents concerning a presentation made in Beijing, China, and Request 11 asks for records concerning a speech given by an ExxonMobil executive in London, England. MTD App. at 36-37.

## ARGUMENT

### I.    This Court Has Personal Jurisdiction over the Attorney General.

This Court has personal jurisdiction over the Attorney General because, through the issuance of the unlawful CID and the pursuit of her biased investigation, she intentionally and purposefully directed tortious conduct at Texas and intended for ExxonMobil to suffer constitutional injuries from that conduct in Texas.

### A.    The Texas Long-Arm Statute Reaches the Attorney General.

The exercise of jurisdiction over the Attorney General is fully consistent with the Texas long-arm statute, which both the Texas Supreme Court and the Fifth Circuit have construed to "reach[] as far as the federal constitutional requirements for due process will allow." *Spir Star AG* v. *Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) (internal quotation marks and citation omitted); *see also Atwood Hatcheries* v. *Heisdorf & Nelson Farms*, 357 F.2d 847, 852 (5th Cir. 1966)).

Indeed, it is well-established that the Texas long-arm statute confers jurisdiction over sister states, their instrumentalities, and their officers. *See, e.g.*, *21 Turtle Creek Square, Ltd.* v. *N.Y. State Teachers' Ret. Sys.*, 425 F.2d 1366, 1368 (5th Cir. 1970) (personal jurisdiction over New York state agency); *Bd. of Cty. Comm'rs of Beaver Cty., Okla.* v. *Amarillo Hosp. Dist.*, 835 S.W.2d 115, 119 (Tex. Ct. App.—Amarillo 1992, no writ) (finding that Texas long-arm statute applied to subdivision of Oklahoma state government).[16]

---

[16]   Other courts have implicitly recognized that reach by considering the sufficiency of an out-of-state official's contacts with Texas, which could occur only if the Texas long-arm statute permitted such an inquiry in the first instance. *See, e.g.*, *Gulf Coast Int'l L.L.C.* v. *The Research Corp. of the Univ. of Haw.*, 490 S.W.3d 577, 583-84 (Tex. Ct. App.—Houston [1st Dist.] 2016, pet. denied); *Markland* v. *Bay Cty.* [Florida] *Sheriff's Office*, No. 1:14-CV-572, 2015 WL 3430120, at *2-3 (E.D. Tex. May 28, 2015) (adopting report and recommendation); *Payne* v. *Cty. of Kershaw, S.C.*, No. 3:08-CV-0792-G, 2008 WL 2876592, at *2-5 (N.D. Tex. July 25, 2008); *Perez Bustillo* v. *State of La.*, 718 S.W.2d 844, 846 (Tex. Ct. App.—Corpus Christi 1986, no writ).  Indeed, this very Court did so on different facts in *Saxton* v. *Faust*, No. 3:09 CV-2458-K, 2010 WL 3446921, at *3 (N.D. Tex. Aug. 31, 2010), a case the Attorney General herself cites.

Notwithstanding the established reach of the Texas long-arm statute to sister states and their officers, the Attorney General continues to argue that out-of-state public officers, like her, are exempt from personal jurisdiction under the Texas long-arm statute, and that her commission of a constitutional tort in Texas does not constitute "doing business" under Texas's long-arm statute. (Mem. 5-7.)[17] That is wrong. The passage of *Stroman Realty, Inc.* v. *Wercinski* on which the Attorney General so heavily relies is plainly dicta. The Fifth Circuit observed that the particular circumstances of that case "relieve[d] the court of an obligation to pursue the[] interpretive questions" of whether the long-arm statute applied to out-of-state officials and whether an out-of-state official's conduct could constitute committing a tort in Texas. 513 F.3d 476, 482-83 (5th Cir. 2008). Further, Judge Barksdale's concurrence in *Stroman* objected to "the opinion's extensive dicta, including parts about: whether the Texas long-arm statute applies." *Id.* at 489. But even this dicta is inaccurately characterized by the Attorney General. The *Stroman* court did not find the Texas long-arm statute to omit out-of-state officials, but rather said only that "[w]hether the long-arm statute's definition of nonresidents ignores or subsumes the *Ex Parte Young* fiction is uncertain." *Id.* at 483. The Attorney General thus substantially oversells both the *Stroman* court's dicta about the Texas long-arm statute and the weight that such dicta should be given.

### B. Exercising Personal Jurisdiction over the Attorney General Comports with Due Process.

The due process clause permits personal jurisdiction over an out-of-state actor, like Attorney General Healey, who intentionally directs tortious conduct at Texas and intends for injuries resulting from that conduct to be suffered in Texas.

---

[17] "Mem." refers to the Memorandum of Law in Support of Defendant Attorney General Maura Tracy Healey's Motion to Dismiss First Amended Complaint, dated November 28, 2016 (Dkt. 125).

A defendant is subject to personal jurisdiction where she "has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Int'l Energy Ventures Mgmt., L.L.C.* v. *United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (alteration in original) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945)).  In considering whether a defendant is subject to jurisdiction, courts consider: (1) whether the defendant "directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there"; (2) whether the plaintiff's cause of action arose from "defendant's forum-related contacts"; and (3) "whether the exercise of personal jurisdiction is fair and reasonable." *Vanderbilt Mortg. & Fin., Inc.* v. *Flores*, 692 F.3d 358, 375 (5th Cir. 2012).

A single out-of-state act can support jurisdiction in Texas, so long as the defendant knew or intended that the effects of the action would be felt in Texas.  Indeed, a court may confer personal jurisdiction over a non-resident defendant when she commits "an act outside the state that causes tortious injury within the state." *Guidry* v. *U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999).  Put differently, when a defendant intentionally directs a harm at Texas, she has "purposefully avail[ed] [her]self of the privilege of causing a consequence in Texas," thereby subjecting herself to jurisdiction in Texas courts. *Wien Air Alaska, Inc.* v. *Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (internal quotation marks omitted).

To satisfy its burden, a "plaintiff need only present a prima facie case of personal jurisdiction" in the absence of an evidentiary hearing. *Stripling* v. *Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000).  In undertaking its analysis, the Court "must accept the plaintiff's uncontroverted allegations, and resolve in [its] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Monkton Ins. Servs., Ltd.* v. *Ritter*, 768 F.3d

429, 431 (5th Cir. 2014) (internal quotation marks and citation omitted).

This standard is easily satisfied here.

### 1.      The Attorney General Directed Her Unlawful Conduct at Texas with an Intent to Cause Injury in Texas.

The Attorney General's issuance of the unlawful CID creates the requisite minimum contacts with Texas because she intentionally directed her tortious conduct at Texas and intended for injuries resulting from that conduct to be suffered in Texas.  As the Attorney General noted at the press conference, she issued the CID to "h[o]ld" ExxonMobil "accountable" for exercising its First Amendment rights.[18]  Although issued in Massachusetts, the CID plainly targets Texas, where ExxonMobil exercises its First Amendment rights by considering, developing, and releasing corporate statements on matters of public concern, and where ExxonMobil maintains and stores the communications and other records demanded by the CID.[19]

Because the CID was intentionally directed at Texas, the injuries caused by the Attorney General's violation of ExxonMobil's constitutional rights occurred, as she knew and expected, in Texas.  "A plaintiff suing because his freedom of expression has been unjustifiably restricted . . . suffers harm only where the speech would have taken place, as opposed to the district in which . . . the decision to restrict this plaintiff's speech was made."  *Kalman* v. *Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009).  The speech that Attorney General Healey seeks to restrain through the CID emanates from Texas, and ExxonMobil's First Amendment injury has thus occurred in Texas.  Similarly, ExxonMobil has no office in Massachusetts, and none of the papers the Attorney General hopes to fish through can be found in Massachusetts.[20]  The injury caused by the violation of ExxonMobil's right "to be secure in . . . [its] papers, and effects," U.S.

---

[18]    MTD App. at 13.

[19]    *See, e.g.*, MTD App. at 37-39 (Request Nos. 10, 16).

[20]    MTD App. at 77-79.

Const. amend. IV, is therefore not suffered in Massachusetts either, but rather where those "papers, and effects" are kept—here, in Texas.[21]  *Cf. Walden* v. *Fiore*, 134 S. Ct. 1115, 1124 (2014) (finding jurisdiction lacking in a *Bivens* action for violation of Fourth Amendment rights because the seizure did not take place in the forum).

The Attorney General's direction of constitutional torts at Texas, together with her intentional infliction of injuries on a Texas domiciliary, provide an ample basis for personal jurisdiction.  *See, e.g.*, *Lewis* v. *Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (finding purposeful availment by out-of-state defendants where they sent communications into Texas in furtherance of an intentional tort); *Wien Air*, 195 F.3d at 213 ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *see also Bear Stearns Cos.* v. *Lavalle*, No. 3:00 Civ. 1900-D, 2001 WL 406217, at *3-4 (N.D. Tex. Apr. 18, 2001) (jurisdiction existed where "harassing" communications were directed to Texas "because the defendant has knowingly aimed his intentional actions at Texas and knows that the plaintiff will feel the brunt of the injury in Texas").

Nevertheless, the Attorney General argues that she cannot be held responsible for directing a constitutional tort at Texas because she issued the CID in Massachusetts and served it on ExxonMobil's Massachusetts registered agent.  (Mem. 8.)  But the Attorney General knows that her CID would be a dead letter if its force were limited to Massachusetts because ExxonMobil has no office there.[22]  The Attorney General knew the CID would be transmitted to Texas, where ExxonMobil's relevant speech is made and its records are stored.  Only by

---

[21]   ExxonMobil's claims thus arise out of the Attorney General's issuance of the CID to a company she knew to be based in Texas which seeks documents she could expect to be in Texas.  This is a clear instance in which the Attorney General has "directed [her] activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," making jurisdiction "appropriate.*"  In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-MD-2244-K, 2014 WL 3557392, at *2 (N.D. Tex. July 18, 2014) (Kinkeade, J.).

[22]   MTD App. at 77-79.

reaching into Texas could the CID accomplish its purpose of restricting a viewpoint the Attorney General disfavors, while facilitating a fishing expedition of ExxonMobil's records.  Even though the CID was, as a matter of legal fiction, served through a Massachusetts agent, it was, as a matter of fact, "directed [] toward the forum state" of Texas.  *Vanderbilt Mortg. & Fin.*, 692 F.3d at 375.  The Attorney General cannot avoid jurisdiction in a forum where she has intentionally violated a resident's constitutional rights by laundering the means of that violation through an intermediary.

The cases that the Attorney General cites in arguing for dismissal are not to the contrary. Once again, the Attorney General relies heavily on the *Stroman* cases,[23] which are not similar to the facts here.  In both cases, plaintiff Stroman Realty, based in Texas, sued out-of-state officials who sought to restrict Stroman's agents from engaging in unlicensed real estate sales in the officials' home states.  In *Stroman I*, the only contacts between the out-of-state officials and Texas were "a cease-and-desist order [sent into Texas relating to business activities *outside* Texas] and correspondence with Stroman's attorneys."  513 F.3d at 484.  In *Stroman II*, the Texas contacts consisted of cease-and-desist orders sent to Texas relating to business activities *outside* Texas, letters disclosing the existence of the orders, and a Texas state information request by Florida regulators that was unrelated to Stroman's claims. *See* 528 F.3d at 386-87.

The out-of-state officials' contacts with Texas in the *Stroman* cases are fundamentally different from the contacts the Attorney General has made with Texas here.  In *Stroman*, there was no allegation that out-of-state officials intended to cause constitutional torts within Texas. Here, by contrast, ExxonMobil alleges that the Attorney General issued the CID, which on its face is expressly aimed at speech occurring in Texas, to cause constitutional torts in Texas where

---

[23]    *Stroman Realty, Inc.* v. *Wercinski*, 513 F.3d 476 (5th Cir. 2008) ("*Stroman I*") and *Stroman Realty, Inc.* v. *Antt*, 528 F.3d 382 (5th Cir. 2008) ("*Stroman II*").

ExxonMobil exercises its First, Fourth, and Fourteenth Amendment rights.  It is in Texas that ExxonMobil issues statements on matters of public concern, enjoys the right "to be secure in . . . [its] papers, and effects," and rightfully expects not to be investigated by a biased prosecutor.

The Attorney General's reliance on *Walden* v. *Fiore*, 134 S. Ct. 1115 (2014), is similarly misplaced.  In *Walden*, the Supreme Court held that a Nevada court lacked personal jurisdiction over Georgia defendants who improperly seized money from the Nevada plaintiffs in a Georgia airport because "none of the [Georgia defendant's] challenged conduct had anything to do with Nevada itself" and "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 1125.  Here, however, the Attorney General's issuance of the unlawful CID was intentionally directed at Texas, as demonstrated by the face of the CID and the fact that the Attorney General knew that the CID would have effect only if it were directed at Texas.  As a result, Texas is the "focal point" of both the Attorney General's conduct and "the harm suffered," and there is nothing "random, fortuitous, or attenuated" about the Attorney General's contacts with Texas.  *Id.* at 1123.  And, despite the Attorney General's argument to the contrary, this conclusion is consistent with *Calder* v. *Jones*, which held that a court may exercise personal jurisdiction over a nonresident when her "intentional, and allegedly tortious actions were expressly aimed at [the forum]" and she "knew" that "the brunt of the injury" would be felt in the forum. 465 U.S. 783, 789-90 (1984).

The Attorney General's reliance on *Saxton* v. *Faust*, No. 3:09 CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010) (Kinkeade, J.), is also unavailing.  In *Saxton*, this Court determined it lacked personal jurisdiction over a Utah judge where the basis for jurisdiction was nothing more than the fact that "the effects of a [Utah] ruling [were] felt in Texas."  *Id.* at *3.  In so ruling, this Court pointedly noted that "the Saxtons have alleged no other contacts with

11

Texas." *Id.* Once again, the differences between this case and *Saxton* are not of degree, but of kind. *Saxton* involved an out-of-state court ruling that had consequences felt in Texas but was not itself directed at Texas in a tortious manner. In stark contrast, ExxonMobil's uncontroverted allegations include that the Attorney General deliberately directed constitutional torts at Texas and intentionally caused ExxonMobil injuries in this State.

> 2. It Is Fair and Reasonable to Exercise Personal
> Jurisdiction over the Attorney General.

After establishing that a defendant has contacts with Texas sufficient to support jurisdiction, "'it is rare to say the assertion [of jurisdiction] is unfair.'" *McFadin* v. *Gerber*, 587 F.3d 753, 759-60 (5th Cir. 2009) (alteration in original) (quoting *Wien Air*, 195 F.3d at 215). When challenging personal jurisdiction as unfair, the burden rests with the defendant. *Id.* at 759. Here, the Attorney General's arguments fall short of establishing anything unreasonable or unfair about litigating this matter in the state where she directed her tortious conduct.

The Attorney General contends that litigating in Texas would unfairly burden her (Mem. 13), but the Fifth Circuit recognizes that "'once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant.'" *McFadin*, 587 F.3d at 764 (quoting *Guidry*, 188 F.3d at 628). Also unavailing is the Attorney General's argument that Texas has little interest in this dispute. (Mem. 13.) As the Fifth Circuit has recognized, "Texas has an interest in protecting its residents' . . . rights and providing a convenient forum for its residents to resolve their disputes." *McFadin*, 587 F.3d at 763.[24] Texas's interest is also demonstrated by the fact that the Texas Attorney General filed an amicus brief in this action and intervened in a state court action brought by ExxonMobil challenging similar constitutional torts brought by another attorney general and member of the Green 20. In the amicus brief, the Texas

---

[24] *McFadin* dealt with Texas residents' property rights. *See id.* Texas's interest in protecting fundamental constitutional rights can only be stronger.

Attorney General explained Texas's interest in preventing the Attorney General's "unconstitutional use of investigative powers" and efforts to "polic[e] viewpoints."[25]  Similarly, in his plea in intervention, the Texas Attorney General announced the State's interest in "protect[ing] the due process rights of [its] residents" and "protect[ing] the fundamental right of impartiality in criminal and quasi-criminal investigations."[26]

Attorney General Healey is also wrong to assert that the deprivation of this forum would cause ExxonMobil no hardship because it can seek relief in a Massachusetts state court.  (Mem. 13.)  ExxonMobil has contested the personal jurisdiction of a Massachusetts court, and it should not be forced to litigate in that forum simply because the Attorney General would prefer to have a matter concerning the intentional violation of constitutional rights of a Texas domiciliary within Texas heard by a Massachusetts state court.  Nor will litigating in this Court harm the interests of "the interstate judicial system" or subvert "fundamental, substantive social policies." (Mem. 13-14.)  To the contrary, the interests of the interstate judicial system would be harmed by *preventing* a Texas domiciliary from vindicating its rights in Texas against a defendant who intentionally harmed it in Texas.  Far from subverting substantive social policies, ExxonMobil seeks only to *promote* the most fundamental of social policies—the right to free speech and the right not to be harassed by an openly biased prosecutor from another state.

Finally, the Attorney General engages in needless alarmism with her claim that this Court's assertion of jurisdiction over her in this case would enable attorneys general to be haled into out-of-state courts across the country.  (Mem. 14.)  Evaluating personal jurisdiction requires a fact-intensive inquiry, and none of the out-of-circuit cases cited by the Attorney General bears any resemblance to this case in which an out-of-state attorney general is alleged to have

---

[25]   Br. of Texas, Louisiana, South Carolina, Alabama, Michigan, Arizona, Wisconsin, Nebraska, Oklahoma, Utah, and Nevada as *Amici Curiae* in Supp. of Pl.'s Mot. for Prelim. Inj. (Dkt. 63-2)  at 2.

[26]   MTD App. at 81-82.

intentionally directed constitutional torts at the forum.[27]  ExxonMobil's claim of jurisdiction here is based on the specific facts of this case—the Attorney General's transparent partisan targeting of ExxonMobil and her specific intent to violate its constitutional rights.  On these particular facts, the Court can, and should, permit ExxonMobil to press its claims here.[28]

### C.    The Court Need Not Consider Personal Jurisdiction First.

Despite the Attorney General's arguments to the contrary (Mem. 14-16), the Court is under no obligation to address the Attorney General's personal jurisdiction arguments prior to other grounds for dismissal.  Instead, when considering threshold, non-merits grounds for dismissal, it is the Court's discretion—not the Attorney General's preference—that controls.  *See Sinochem Int'l Co. Ltd.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 431 (2007) (holding that "a federal court has leeway 'to choose among threshold grounds'" when considering whether to dismiss a complaint, and that "a district court has discretion to respond at once to a [threshold ground], and need not take up first any other threshold objection" (quoting *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 585 (1999))).[29]

---

[27]   *See PTI, Inc.* v. *Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1189 (C.D. Cal. 2000) (no jurisdiction over non-California state defendants where the defendants signed a 46-state settlement agreement in which tobacco companies agreed to provide yearly payments, a portion of which came from cigarette sales in every state, including California, because payments "from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State");  *see also* Exxon Mobil Corporation's Reply in Further Supp. of Its Mot. for Leave to File First Am. Compl. (Dkt. 96) at 5-6.

[28]   At the very least, if the Court is uncertain that the Attorney General has sufficient contacts with Texas for the exercise of personal jurisdiction, then jurisdictional discovery is warranted.  *See Valtech Solutions Inc.* v. *Davenport*, No. 3:15-CV-3361-D, 2016 WL 2958927, at *2 (N.D. Tex. May 23, 2016) ("If  plaintiffs present factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiffs' right to conduct jurisdictional discovery should be sustained." (alterations and internal quotation marks omitted)); *Next Techs., Inc.* v. *ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015) (permitting jurisdictional discovery to determine, *inter alia*, whether the court could exercise specific personal jurisdiction over defendants alleged to have "directed" activities into Texas).

[29]   In prior briefing, the Attorney General conceded that there is "no unyielding jurisdictional hierarchy" requiring the Court to address personal jurisdiction before considering whether to abstain under *Younger*.  (Mem. Law in Supp. Def. Attorney General Healey's Mot. to Reconsider Jurisdictional Discovery Order (Dkt. 79) at 4 (quoting *Ruhrgas*, 526 U.S. at 578.)

The Attorney General also argues erroneously that the Court must address personal jurisdiction first to avoid an alleged conflict between federal law and Massachusetts law, which purportedly *requires* the Attorney General to prejudge the results of her investigation.  (Mem. 15-16.)  However, as ExxonMobil has previously explained, Mass. Gen. Laws ch. 93A, § 6(1) permits the Attorney General to commence an investigation in order "to ascertain whether in fact [the target of a CID] has engaged in or is engaging in" a prohibited practice.  The statutory purpose of a CID is thus to investigate whether a *suspicion* of unlawful conduct is well founded.[30]  Nothing in Massachusetts law permits—much less requires—the Attorney General to prejudge the results of her investigation.

## II.   ExxonMobil's Constitutional Claims Are Ripe for Adjudication.

Equally baseless is the Attorney General's claim that this dispute is not ripe for adjudication.  (Mem. 16-17.)  This case is ripe for two independent reasons: (i) the self-executing nature of the CID, and (ii) the state court proceedings to compel compliance with the CID.

Challenges to subpoenas are unripe only if "the issuing agency could not itself sanction non-compliance."  *Google* v. *Hood*, 822 F.3d 212, 224 (5th Cir. 2016).  The CID is not such an instrument; it is self-executing and carries an immediate penalty for non-compliance that does not, by its terms, require the intervention of a court.  In fact, the CID served on ExxonMobil includes as an exhibit the provision of Massachusetts law stating that failure to comply is punishable by a civil penalty of $5,000.[31]  Thus, the fact that ExxonMobil may face a "current consequence for resisting" the CID makes a challenge to the CID ripe.  *Id.* at 226.

---

[30]   This interpretation of Massachusetts law comports with the Attorney General's prior statements to this Court.  In opposing ExxonMobil's motion for a preliminary injunction, the Attorney General explained that her office "has issued several hundred CIDs to or regarding companies or individuals *suspected* of committing unfair and deceptive business practices."  (Opp. of Attorney General Maura Healey to Pl. Exxon Mobil Corporation's Mot. for Prelim. Inj. (Dkt. 43) at 4 (emphasis added).)

[31]   MTD App. at 24-25.

Even if the CID were not self-executing, the Attorney General has rendered this dispute ripe by seeking to enforce the CID in Massachusetts state court.[32]  Despite the Attorney General's argument to the contrary, ripeness does not require the Attorney General to "undertake a Chapter 93A enforcement action against Exxon."  (Mem. 18.)  The Attorney General's cross-motion to enforce the CID is sufficient as it presents ExxonMobil with further immediate consequences for non-compliance.  *See Google*, 822 F.3d at 225 (holding that the dispute concerning a non-self-executing subpoena was unripe so long as the state official "ha[d] not brought an enforcement action" to enforce the subpoena); *Lone Star Coll. Sys.* v. *EEOC*, No. H-14-529, 2015 WL 1120272, at *7 (S.D. Tex. Mar. 12, 2015) ("These claims are not ripe for review because there is no final agency action or a move to enforce a subpoena.").

Nevertheless, the Attorney General stands by her claim that the availability of a state forum renders this action unripe.  (Mem. 17.)  This is not the law.  Accepting this proposition would shut the doors of federal courthouses by imposing a state court exhaustion requirement for § 1983 plaintiffs.  But the "very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights."  *Mitchum* v. *Foster*, 407 U.S. 225, 242 (1972).  "[E]xhaustion is not a prerequisite to an action under § 1983," *Patsy* v. *Bd. of Regents of State of Fla.*, 457 U.S. 496, 501 (1982), and the Court should not create one here.

## III.    Venue Is Proper in the Northern District of Texas.

The Attorney General also continues to argue incorrectly that venue is improper.  (Mem. 18-19.)  When evaluating a claim of improper venue, a court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."  *Gruber Hurst Johansen & Hail, LLP* v. *Hackard & Holt*, No. 3:07-CV-1410-G, 2008 WL 137970, at *5 (N.D. Tex. Jan. 15,

---

[32]    MTD App. at 120-23.

2008).  As the FAC demonstrates, the Attorney General intends to impinge on the free speech

rights of ExxonMobil, which has its principal place of business in this District.[33]  It is well-

settled, and the Attorney General does not contest, that First Amendment injury occurs at

plaintiff's principal place of business.  *See Fund for La.'s Future* v. *La. Bd. of Ethics*, No. 14-

0368, 2014 WL 1514234, at *12 (E.D. La. Apr. 16, 2014).  As a result, venue is proper here

because a substantial part of the events giving rise to the claim—ExxonMobil's injuries—

occurred in this District. *See* 28 U.S.C. § 1391(b)(2).

## IV.    The State Law Claims Are Not Barred by the Eleventh Amendment.

Also without merit is the Attorney General's argument that the Eleventh Amendment

bars ExxonMobil's state law claims.  (Mem. 19-20.)  Although state officials may be immune

from state law claims in federal courts under the Eleventh Amendment, they lose any such

protection when their actions exceed their statutory authority.  *See, e.g., Word of Faith World

Outreach Ctr. Church, Inc.* v. *Morales*, 986 F.2d 962, 966 & n.5 (5th Cir. 1993).  Here, by

issuing the CID to an out-of-state corporation over which she has no jurisdiction, and pursuing

her unlawful investigation, all with the intent to restrict speech occurring in another state, the

Attorney General exceeded her statutory authority and thus lost any claim of sovereign

immunity.

The Supreme Court has long recognized an *ultra vires* exception to the Eleventh

Amendment, which provides that where an "officer's powers are limited by statute, his actions

beyond those limitations are considered individual and not sovereign actions." *Larson* v.

*Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949).  While the Supreme Court

cautioned against a broad reading of this exception in *Pennhurst State School & Hospital* v.

*Halderman*, it did not overrule it.  *See* 465 U.S. 89, 114 n.25 (1984).  Rather, the Court found

---

[33]    *See, e.g.*, FAC ¶¶ 15, 18-19, 69, 97-104.

that defendants did not act beyond their authority, thus making the *ultra vires* exception

inapplicable. *See id.* at 107-09 & n.17 (affirming district court's finding that the defendants

"acted in the utmost good faith" and within their official capacities).

Fifth Circuit case law confirms that when government officials act "beyond the scope of

[their] statutory authority," courts refuse to allow them to hide behind the Eleventh Amendment.

*Word of Faith*, 986 F.2d at 966.  For example, in *Scham* v. *District Courts Trying Criminal*

*Cases*, the court considered whether state judges, sued in their official capacities, acted beyond

their statutory authority when they adopted a local rule barring the disclosure of criminal

defendants' contact information pursuant to a Texas statute which permitted the judges to adopt

local rules only for "administrative needs."  967 F. Supp. 230, 233 (S.D. Tex. 1997).  Because

the local rule did not "further the administrative concerns contemplated by the state legislature,"

the court found that the judges had acted beyond their statutory authority and granted plaintiff's

request for injunctive relief.  *Id.* at 233-34; *see also Petterway* v. *Veterans Admin. Hosp., Hous.,*

*Tex.*, 495 F.2d 1223, 1225 (5th Cir. 1974) (remanding for consideration of whether racial

discrimination by defendant "was *ultra vires* to his statutory and constitutional authority").

In this case, the Attorney General similarly exceeded her statutory authority by issuing a

CID and pursuing an investigation with the stated intent to regulate speech of a corporation over

which she has no jurisdiction. Under the pretext of Massachusetts' consumer protection statute,

Attorney General Healey commenced her investigation of ExxonMobil in order to fix "public

perception" about "whether climate change is real,"[34] not out of any reasonable belief that the

company violated any laws.[35]  Pursuant to that goal, she issued a CID that targets ExxonMobil's

speech in Texas and entered into a common interest agreement in order "ensur[e] the

---

[34]   MTD App. at 13.
[35]   FAC ¶¶ 63-64, 69-70.

dissemination of accurate information about climate change."[36]  Moreover, she undertook this

action even though Massachusetts courts lack jurisdiction over ExxonMobil in connection with

any violation of law contemplated by the Attorney General's investigation.[37]  Such unlawful

actions do not fall within the scope of the Attorney General's authority under Massachusetts law

and, as a result, ExxonMobil's state law claims are not barred by the Eleventh Amendment.

## V.     This Court Should Reject the Attorney General's Request for Abstention.

Even though the Court has ruled that there are fact issues related to the Attorney

General's bad faith that must be resolved, the Attorney General continues to invoke *Younger* v.

*Harris*, 401 U.S. 37 (1971) as further grounds for this Court to dismiss this action.  (Mem. 20-

22.)  This Court should not abstain from reaching the merits of ExxonMobil's claims.

When a federal court has jurisdiction, its "'obligation' to 'hear and decide a case is

virtually unflagging.'"  *Sprint Commc'ns, Inc.* v. *Jacobs*, 134 S. Ct. 584, 591 (quoting *Colo.*

*River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976)).  "Parallel state-

court proceedings do not detract from that obligation."  *Id.* (citation omitted).  Beginning with

*Younger* v. *Harris*, however, the Supreme Court recognized that "exceptional circumstances"

may justify abstention "within narrow limits" in cases seeking injunctive relief against certain

categories of state proceedings.  *Sprint*, 134 S. Ct. at 591 (quoting *Younger*, 401 U.S. at 44, and

*New Orleans Pub. Serv., Inc.* v. *Council of City of New Orleans*, 491 U.S. 350, 368 (1989)).

Thus, in certain state proceedings, *Younger* abstention may be appropriate when each of the

following conditions is satisfied: (1) the federal proceeding would interfere with an ongoing state

judicial proceeding; (2) the state has an important interest in regulating the subject matter of the

claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise

---

[36]    MTD App. at 57.

[37]    FAC ¶ 69.

constitutional challenges.  *See Bice* v. *La. Pub. Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (citations omitted).

Even if each of these conditions is satisfied, however, abstention is unwarranted where "the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff."  *Id.* at 716 n.3.  The Fifth Circuit recognizes two circumstances where bad faith bars abstention: "first, when a state commences a prosecution or proceeding to retaliate for or to deter constitutionally protected conduct, [] and second, when the prosecution or proceeding is taken in bad faith or for the purpose to harass."  *Bishop* v. *State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984) (citations omitted).  In light of the obligation of federal courts to hear cases within their jurisdiction, "[a] court necessarily abuses its discretion when it abstains outside of the [*Younger*] doctrine's strictures."  *Bice*, 677 F.3d at 716 (internal quotation marks and citation omitted).

### A.      The Attorney General's Bad Faith Precludes Abstention.

Attorney General Healey's bad faith in issuing the CID, and in attempting to compel ExxonMobil's compliance with it, makes abstention under *Younger* inappropriate.  As the FAC demonstrates, the Attorney General's investigation is motivated by a desire "to retaliate for or to deter constitutionally protected conduct"—in this case, ExxonMobil's participation in policy discussions about climate change.[38]  *Bishop*, 736 F.2d at 294.  The Attorney General's public statements, the viewpoint bias memorialized in the CID, and the objective set forth in the common interest agreement support that conclusion.  At the press conference preceding issuance of the CID, Attorney General Healey stated that she intended to "hold[] accountable" those who "have needed to be held accountable for far too long" for, in her view, having "misled the public" about what she considered "the catastrophic nature" of climate change.[39]  The CID

---

[38]   The Attorney General does not dispute that ExxonMobil's participation in such advocacy is protected speech.

[39]   MTD App. at 13-14.

20

reflected this priority, as it targeted ExxonMobil's communications with supposed "climate deniers."[40]  Viewpoint discrimination is also amply documented in the common interest agreement, in which the Attorney General claimed to share an interest with other law enforcement officers in "ensuring the dissemination of accurate information about climate change"—that is, information *she* believes to be "accurate" based on her viewpoint.[41]  All of this evidence demonstrates that the Attorney General issued and then sought to enforce the CID to "deter constitutionally protected conduct."  *Bishop*, 736 F.2d at 294.  Abstention is unwarranted on this record.  *See Schlagler* v. *Phillips*, 166 F.3d 439, 443 (2d Cir. 1999) (*Younger* bad faith "exception should apply" where "the prosecution is in retaliation for past speech or shows a pattern of prosecution to inhibit speech beyond the acts being prosecuted").[42]

       In addition to filing the motion to compel compliance with the CID to deter constitutionally protected conduct, the Attorney General also filed it to harass ExxonMobil, which is an independent ground for finding bad faith.  The pretextual nature of the Attorney General's investigation has been laid bare in ExxonMobil's reply memorandum in support of its motion for a preliminary injunction.[43]  That memorandum debunked the theories presented by Attorney General Healey to defend her actions and unmasked them as mere pretexts for an investigation designed to harass a perceived ideological opponent.[44]  ExxonMobil cannot have violated the statute invoked by the Attorney General to justify her investigation because it engaged in no covered conduct during the limitations period.[45]  This is a textbook example of

---

[40]   MTD App. at 35 (Request No. 5).

[41]   MTD App. at 57.

[42]   That the Attorney General theoretically could impose liability for ExxonMobil's speech does not immunize an investigation that was undertaken in bad faith.  *See Fitzgerald* v. *Peek*, 636 F.2d 943, 945 (5th Cir. 1981).

[43]   Reply in Supp. of Exxon Mobil Corporation's Mot. for a Prelim. Inj. (Dkt. No. 57).

[44]   *Id.* at 4-7.

[45]   MTD App. at 100-01; FAC ¶¶ 69-73.

state officials investigating "in bad faith without hope of obtaining a valid conviction," *Perez* v. *Ledesma*, 401 U.S. 82, 85 (1971), and "using or threatening to use prosecutions, *regardless of their outcome*, as instrumentalities for the suppression of speech," *Wilson* v. *Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979) (citation omitted and emphasis in original).

As this Court has already recognized, this extraordinary record of allegations, "if true, may constitute bad faith in issuing the CID which would preclude *Younger* abstention."[46] Insofar as any doubt might remain about the existence of bad faith here, continued jurisdictional discovery is appropriate before the Court rules on the Attorney General's motion to dismiss. *See, e.g.*, *Trower* v. *Maple*, 774 F.2d 673, 674 (5th Cir. 1985) (describing an earlier order in the litigation vacating grant of dismissal on *Younger* grounds and remanding for evidentiary hearing on bad faith). Indeed, the Fifth Circuit has vacated district court decisions where no proper evidentiary hearing was conducted and remanded for "the appropriate evidentiary hearing required [by *Younger*], in which [the] plaintiff shall be allowed to introduce evidence regarding his allegations of bad faith prosecution and harassment." *Stewart* v. *Dameron*, 448 F.2d 396, 397 (5th Cir. 1971); *see also Wightman-Cervantes* v. *Texas*, No. 3:03-CV-3025-D, 2005 WL 770598, at *5 (N.D. Tex. Apr. 6, 2005) ("Evidentiary hearings are properly convened, if not in some instances required, in deciding whether to abstain" when bad faith is alleged).

## B.      Even Absent Bad Faith, *Younger* Abstention Is Inappropriate.

Even if the evidence of Attorney General Healey's bad faith is set aside, *Younger* abstention would still be unwarranted for two additional and independent reasons.

*First*, the Commonwealth of Massachusetts has no "important interest" in aiding the Attorney General's violation of ExxonMobil's constitutional rights. The Fifth Circuit has recognized as much, holding that, "[w]ith respect to the interests of the State, it by definition

---

[46]      Order (Dkt. 73) at 5-6.

does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights." *Wilson*, 593 F.2d at 1383; *see also Jordan* v. *Reis*, 169 F. Supp. 2d 664, 668-69 (S.D. Tex. 2001) (declining to abstain where prosecution was brought in retaliation for exercise of First Amendment rights).

*Second*, abstention is inappropriate because ExxonMobil does not have "an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice*, 677 F.3d at 716 (internal quotation marks and citation omitted). While the Attorney General submits that ExxonMobil should litigate its constitutional claims in Massachusetts state court (Mem. 21-22), she has failed to establish that her preferred forum has personal jurisdiction over ExxonMobil.[47] ExxonMobil has expressly contested jurisdiction in its filings with the Massachusetts state court, which were made solely to avoid a claim by her of forfeiture.[48] The absence of personal jurisdiction in Massachusetts makes that forum inadequate to vindicate ExxonMobil's constitutional rights and would only compound ExxonMobil's injury.[49]

## VI.   **The First Amended Complaint States Claims upon Which Relief Can Be Granted.**

Finally, even though the Attorney General did not challenge the adequacy of ExxonMobil's original complaint, she now argues that the First Amended Complaint fails to meet the minimum pleading standards of Rule 8 (Mem. 22-25), which require a plaintiff to "state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)

---

[47]   Attorney General Healey also fails to establish that ExxonMobil could raise its conspiracy claim against her in Massachusetts state court.

[48]   MTD App. at 96, 117-18.

[49]   In a footnote, the Attorney General half-heartedly invokes the abstention doctrines of *Colorado River Water Conservation District* v. *United States*, 424 U.S. 800 (1976) and *Railroad Commission of Texas* v. *Pullman Co.*, 312 U.S. 496 (1941). (Mem. 22 n.17.)  Neither doctrine merits abstention in this case. *Pullman* abstention requires "an unclear issue of state law that, if resolved, would make it unnecessary for us to rule on the federal constitutional question"—which is not present here. *Nationwide Mut. Ins. Co.* v. *Unauthorized Practice of Law Comm.*, 283 F.3d 650, 653 (5th Cir. 2002).  And *Colorado River* abstention requires consideration of six factors, none of which the Attorney General addresses despite the fact that it is her burden to do so. *See Turner* v. *Pavlicek*, No. H-10-00749, 2011 WL 4458757, at *4-5 (S.D. Tex. Sept. 22, 2011).

(quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  Because it contains detailed allegations, grounded in recognized legal principles, the FAC satisfies this pleading standard.

ExxonMobil's constitutional claims are plausible on their face.  The FAC claims that the Attorney General issued a CID that is intended to silence ExxonMobil's views on climate change emanating from Texas and unlawfully fish through ExxonMobil's records, all under the supervision of a biased prosecutor.[50]  To support the claims, ExxonMobil alleges that:

> (1) the Attorney General announced in a press conference her "moral obligation" to fight climate change, plan to control "public perception" on that issue, and finding that ExxonMobil is liable before even issuing the CID;[51]

> (2) this plan was the "culmination of [climate activists] Frumhoff and Pawa's collective efforts to enlist state law enforcement officers to join them in a quest to silence political opponents, enact preferred policy responses to climate change, and obtain documents for private law suits";[52]

> (3) Attorney General Healey, along with sixteen other attorneys general, signed a common interest agreement in order to conceal the fact that the real goal of their investigations is to "limit[] climate change" and "ensur[e] the dissemination of accurate information about climate change";[53]

> (4) the Attorney General lacked a reasonable belief at the time she issued the CID that ExxonMobil could be held liable for any of the claims within the scope of the CID, which seeks 40 years of ExxonMobil's records relating to climate change;[54]

> (5) the CID, which regulates out-of-state speech, is a product of this effort to control the public debate related to climate change policy as it targets organizations which express views with which the Attorney General disagrees;[55] and

> (6) Attorney General Healey's professed investigative theories are in conflict with federal regulations.[56]

---

[50] The Court already suggested as much when it stated that ExxonMobil's allegations, "if true, may constitute bad faith in issuing the CID." Order (Dkt. 73) at 6.

[51] FAC ¶¶ 3, 27-39.

[52] *Id.* ¶¶ 40-51.

[53] *Id.* ¶¶ 52-53.

[54] *Id.* ¶¶ 69-73.

[55] *Id.* ¶¶ 71-73, 111.

[56] *Id.* ¶¶ 74-81, 114.  Attorney General Healey attempts to prove the propriety of her investigation by stating that the FBI and the SEC are investigating the same conduct.  As an initial matter, ExxonMobil is not aware of any FBI investigation.  All the Department of Justice has done is refer a request to investigate matters related to

These are not legal conclusions; they are detailed factual allegations, supported by facts from the public record, which are entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 680-81.

Likewise, ExxonMobil's civil conspiracy claim is based on detailed allegations that Attorneys General Healey and Schneiderman have agreed among themselves and with others to deprive ExxonMobil of its constitutional rights because of its political or ideological associations and its statements on the public policy issue of climate change.[57]   In furtherance of that illegal objective, the FAC alleges that Attorneys General Healey and Schneiderman issued unlawful subpoenas and CIDs, discussed their collective goals to target ExxonMobil for its views on climate change at the press conference, and entered into a common interest agreement in order to ensure the "accurate" dissemination of information about climate change.[58]

And, contrary to the assertion in the Attorney General's opposition (Mem. 24-25), the basis of ExxonMobil's federal preemption claim is set forth in detail in the FAC.[59]

## CONCLUSION

For these reasons, the Court should deny the Attorney General's motion to dismiss and allow this action to proceed.

---

climate change to the FBI "to consider whether or not it meets the criteria for what we could take action on." FAC, Ex. DD at App. 247.  In any event, different investigations by different law enforcement entities under different statutes have no bearing on the propriety of Attorney General Healey's investigation.

[57]   *Id.* ¶¶ 27-51, 106. The Fifth Circuit has recognized civil conspiracy claims to violate a corporation's constitutional rights based on its political or ideological associations under 42 U.S.C. § 1985(3).  *See, e.g.*, *Sullivan* v. *Cty. of Hunt, Tex.*, 106 F. App'x 215, 220 (5th Cir. 2004) (stating that a Section 1985(3) claim may be supported by discriminatory animus based on "political association or beliefs"); *Galloway* v. *State of La.*, 817 F.2d 1154, 1159 (5th Cir. 1987); *see also United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO* v. *Scott*, 463 U.S. 825, 830 (1983).

[58]   *Id.* ¶¶ 27-39, 51-84, 107.

[59]   *Id.* ¶¶ 77-81, 124 (citing *Modernization of Oil & Gas Reporting*, SEC Release No. 78, File No. S7-15-08, 2008 WL 5423153, at *66 (Dec. 31, 2008) and Commission Statement of Policy Reaffirming the Status of the FASB as a Designated Private-Sector Standard Setter, 68 Fed. Reg. 23,333-401 (May 1, 2003)). To the extent Attorney General Healey is suggesting that federal regulations cannot preempt state law, she is wrong. *See, e.g.*, *Farina* v. *Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) ("Federal regulations preempt state laws in the same fashion as congressional statutes.").

Dated: December 19, 2016


EXXON MOBIL CORPORATION

By: /s/ Patrick J. Conlon            /s/ Nina Cortell

| | |
|---|---|
| Patrick J. Conlon | Nina Cortell |
| (*pro hac vice*) | State Bar No. 04844500 |
| State Bar No. 24054300 | nina.cortell@haynesboone.com |
| patrick.j.conlon@exxonmobil.com | HAYNES & BOONE, LLP |
| Daniel E. Bolia | 2323 Victory Avenue |
| State Bar No. 24064919 | Suite 700 |
| daniel.e.bolia@exxonmobil.com | Dallas, TX 75219 |
| 1301 Fannin Street | (214) 651-5579 |
| Houston, TX 77002 | Fax: (214) 200-0411 |
| (832) 624-6336 | |

/s/ Theodore V. Wells, Jr.            /s/ Ralph H. Duggins

| | |
|---|---|
| Theodore V. Wells, Jr. | Ralph H. Duggins |
| (*pro hac vice*) | State Bar No. 06183700 |
| twells@paulweiss.com | rduggins@canteyhanger.com |
| Michele Hirshman | Philip A. Vickers |
| (*pro hac vice*) | State Bar No. 24051699 |
| mhirshman@paulweiss.com | pvickers@canteyhanger.com |
| Daniel J. Toal | Alix D. Allison |
| (*pro hac vice*) | State Bar. No. 24086261 |
| dtoal@paulweiss.com | aallison@canteyhanger.com |
| PAUL, WEISS, RIFKIND, WHARTON & | CANTEY HANGER LLP |
| GARRISON, LLP | 600 West 6th Street, Suite 300 |
| 1285 Avenue of the Americas | Fort Worth, TX 76102 |
| New York, NY 10019-6064 | (817) 877-2800 |
| (212) 373-3000 | Fax: (817) 877-2807 |
| Fax: (212) 757-3990 | |

Justin Anderson
(*pro hac vice*)
janderson@paulweiss.com
2001 K Street, NW
Washington, D.C. 20006-1047
(202) 223-7300
Fax: (202) 223-7420

*Counsel for Exxon Mobil Corporation*

26

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 19th day of December 2016, a true and correct copy of the foregoing document was filed electronically via the CM/ECF system, which gave notice to all counsel of record pursuant to Local Rule 5.1(d).

/s/ Ralph H. Duggins         
RALPH H. DUGGINS
