IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ERIC TRADD SCHNEIDERMAN, | § | No. 4:16-CV-469-K |
| Attorney General of New York, in his | § | |
| official capacity, and MAURA TRACY | § | |
| HEALEY, Attorney General of | § | |
| Massachusetts, in her official capacity, | § | |
| | § | |
| Defendants. | § | |
| | § | |

# EXXON MOBIL CORPORATION'S
## OPPOSITION TO ERIC TRADD SCHNEIDERMAN'S
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Patrick J. Conlon (*pro hac vice*)
Daniel E. Bolia
EXXON MOBIL CORPORATION
1301 Fannin Street
Houston, TX 77002
(832) 624-6336

Theodore V. Wells, Jr. (*pro hac vice*)
Michele Hirshman (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Justin Anderson (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

Nina Cortell
HAYNES & BOONE, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219
Tel: (214) 651-5579
Fax: (214) 200-0411

Ralph H. Duggins
Philip A. Vickers
Alix D. Allison
CANTEY HANGER LLP
600 W. 6th St. #300
Fort Worth, TX 76102
Tel: (817) 877-2800
Fax: (817) 877-2807

*Counsel for Exxon Mobil Corporation*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .....................................................................................................2

    A.    The Attorney General's Public Statements Demonstrate Viewpoint Bias. ............2

    B.    The Subpoena Is a Fishing Expedition  That Targets One Side of a Policy Debate. .................................................................................................................3

    C.    Documents Obtained via Third-Party Public Records Requests Further Reveal a Conspiracy to Violate ExxonMobil's Constitutional Rights. ..................4

    D.    The Attorney General Directed the Constitutional Torts at Texas. ........................5

ARGUMENT ........................................................................................................................5

I.    This Court Has Personal Jurisdiction over the Attorney General. .......................................5

    A.    The Texas Long-Arm Statute Can Reach the New York Attorney General...........6

    B.    Due Process Permits Personal Jurisdiction over the Attorney General. .................7

        1.    The Attorney General Intentionally Directed His  Unlawful Conduct at Texas, Causing Injury in Texas. ................................................8

        2.    It Is Fair and Reasonable to Exercise Personal Jurisdiction over the Attorney General........................................................................................11

II.    ExxonMobil's Constitutional Claims Are Ripe for Adjudication. ....................................13

III.    Venue Is Proper in the Northern District of Texas. ..........................................................13

IV.    This Court Should Reject the Attorney General's Request for Abstention. ......................14

V.    The FAC States Claims upon Which Relief Can Be Granted. ..........................................17

    A.    The FAC States a Claim for Relief Under the First Amendment. .........................17

    B.    The FAC States a Claim for Relief Under the Fourth Amendment.......................20

    C.    The FAC States a Claim for Relief Under the Fourteenth Amendment. ...............21

    D.    The FAC States a Claim for Relief Under the Dormant Commerce Clause. ........22

    E.    The FAC States a Claim for Relief Based on Federal Preemption........................23

    F.    The FAC's State Law Claims Are Not Barred by the Eleventh Amendment.................................................................................................24

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*21 Turtle Creek Square, Ltd.* v. *N.Y. State Teachers' Ret. Sys.*,
  425 F.2d 1366 (5th Cir. 1970) ...................................................................6

*Allen* v. *Cisneros*,
  815 F.3d 239 (5th Cir. 2016) ....................................................................20

*Am. Realty Trust, Inc.* v. *Hamilton Lane Advisors, Inc.*,
  115 F. App'x 662 (5th Cir. 2004) ..............................................................19

*Am. Booksellers Found.* v. *Dean*,
  342 F.3d 96 (2d Cir. 2003)........................................................................22

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)............................................................................17, 18

*Atwood Hatcheries* v. *Heisdorf & Nelson Farms*,
  357 F.2d 847 (5th Cir. 1966) .....................................................................5

*Bd. of Cty. Comm'rs of Beaver Cty., Okla.* v. *Amarillo Hosp. Dist.*,
  835 S.W.2d 115 (Tex. App. Ct. 1992) .......................................................6

*Bear Stearns Cos.* v. *Lavalle*,
  No. 3:00 Civ. 1900-D, 2001 WL 406217 (N.D. Tex. Apr. 18, 2001) .......9

*Berger* v. *United States*,
  295 U.S. 78 (1935)....................................................................................21

*Bice* v. *La. Pub. Defender Bd.*,
  677 F.3d 712 (5th Cir. 2012) ..............................................................14, 15

*Bishop* v. *State Bar of Tex.*,
  736 F.2d 292 (5th Cir. 1984) ..........................................................14, 15, 16

*Clark* v. *Amoco Prod. Co.*,
  794 F.2d 967 (5th Cir. 1986) ....................................................................19

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
  Nos. 3:11-CV-03590-K, 3:12-CV-4975-K, 2014 WL 3557392 (N.D. Tex. July
  18, 2014) (Kinkeade, J.)............................................................................9

*Edgar* v. *MITE Corp.*,
  457 U.S. 624 (1982)..................................................................................23

ii

*FEC* v. *Lance*,
635 F.2d 1132 (5th Cir. 1981) ........................................................................19

*FTC* v. *Am. Tobacco Co.*,
264 U.S. 298 (1924)........................................................................................21

*Fitzgerald* v. *Peek*,
636 F.2d 943 (5th Cir. 1981) ..........................................................................16

*Fund for La.'s Future* v. *La. Bd. of Ethics*,
No. 14-0368, 2014 WL 1514234 (E.D. La. Apr. 16, 2014)...............................14

*Galloway* v. *State of La.*,
817 F.2d 1154 (5th Cir. 1987) .........................................................................25

*Gobeille* v. *Liberty Mut. Ins. Co.*,
136 S. Ct. 936 (2016)......................................................................................24

*Google* v. *Hood*,
822 F.3d 212 (5th Cir. 2016) ..........................................................................13

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*,
706 F. Supp. 2d 11 (D.D.C. 2009) ..................................................................20

*In re Grand Jury of S. Dist. of Ala.*,
508 F. Supp. 1210 (S.D. Ala. 1980)................................................................22

*Gruber Hurst Johansen & Hail, LLP* v. *Hackard & Holt*,
No. 3:07-CV-1410-G, 2008 WL 137970 (N.D. Tex. Jan. 15, 2008)...................14

*Guidry* v. *U.S. Tobacco Co.*,
188 F.3d 619 (5th Cir. 1999) ......................................................................7, 11

*Gulf Coast Int'l* v. *The Research Corp. of the Univ. of Haw.*,
490 S.W.3d 577 (Tex. App. Ct. 2016) ...............................................................6

*Hartman* v. *Moore*,
547 U.S. 250 (2006)........................................................................................20

*Ill. ex rel. Madigan* v. *Telemarketing Assocs.*,
538 U.S. 600 (2003)........................................................................................18

*Int'l Energy Ventures Mgmt., L.L.C.* v. *United Energy Grp., Ltd.*,
818 F.3d 193 (5th Cir. 2016) .............................................................................7

*Janvey* v. *Wieselberg*,
No. 3:10-CV-1394-N, 2014 WL 2883897 (N.D. Tex. June 25, 2014)................19

*Jordan* v. *Reis*,
    169 F. Supp. 2d 664 (S.D. Tex. 2001) ................................................................15

*Kalman* v. *Cortes*,
    646 F. Supp. 2d 738 (E.D. Pa. 2009) ...................................................................8

*Larson* v. *Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949).............................................................................................24

*Lewis* v. *Fresne*,
    252 F.3d 352 (5th Cir. 2001) ...........................................................................7, 9

*Lone Star Coll. Sys.* v. *EEOC*,
    No. H-14-529, 2015 WL 1120272 (S.D. Tex. Mar. 12, 2015) ..............................13

*Major League Baseball* v. *Crist*,
    331 F.3d 1177 (11th Cir. 2003) ..........................................................................21

*Markland* v. *Bay Cty. Sheriff's Office*,
    No. 1:14-CV-572, 2015 WL 3430120 (E.D. Tex. May 28, 2015) ...........................6

*Marshall* v. *Jerrico, Inc.*,
    446 U.S. 238 (1980).............................................................................................21

*McFadin v. Gerber*,
    587 F.3d 753 (5th Cir. 2009) ..............................................................................11

*Mills* v. *Alabama*,
    384 U.S. 214 (1966).............................................................................................20

*Mitchum* v. *Foster*,
    407 U.S. 225 (1972).............................................................................................13

*Monkton Ins. Servs., Ltd.* v. *Ritter*,
    768 F.3d 429 (5th Cir. 2014) ................................................................................7

*Next Techs., Inc.* v. *ThermoGenisis, LLC*,
    121 F. Supp. 3d 671 (W.D. Tex. 2015)................................................................12

*Payne* v. *Cty. of Kershaw, S.C.*,
    No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008)......................6

*Pennhurst State School & Hospital* v. *Halderman*,
    465 U.S. 89 n.17 (1984).......................................................................................25

*Perez Bustillo* v. *State of La.*,
    718 S.W.2d 844 (Tex. App. Ct. 1986) ...................................................................6

*Perez* v. *Ledesma*,
    401 U.S. 82 (1971)............................................................................................16

*Pet Quarters, Inc.* v. *Depository Tr. & Clearing Corp.*,
    559 F.3d 772 (8th Cir. 2009) ...........................................................................24

*PTI, Inc.* v. *Philip Morris Inc.*,
    100 F. Supp. 2d 1179 (C.D. Cal. 2000) ...........................................................12

*R.A.V.* v. *City of Saint Paul*,
    505 U.S. 377 (1992)..........................................................................................18

*Rosenberger* v. *Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995)..........................................................................................20

*Saxton* v. *Faust*,
    No. 3:09 CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010)..............6, 10

*Schlagler* v. *Phillips*,
    166 F.3d 439 (2d Cir. 1999)..............................................................................16

*SEC* v. *McGoff*,
    647 F.2d 185 (D.C. Cir. 1981) ..........................................................................20

*Sinochem Int'l Co. Ltd.* v. *Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)............................................................................................5

*Smith* v. *Johnson*,
    No. 4:04-CV-374-A, 2005 WL 578470 (N.D. Tex. Mar. 11, 2005).....................25

*Spir Star AG* v. *Kimich*,
    310 S.W.3d 868 (Tex. 2010)...............................................................................5

*Stewart* v. *Dameron*,
    448 F.2d 396 (5th Cir. 1971) .............................................................................17

*Stripling* v. *Jordan Prod.*,
    234 F.3d 863 (5th Cir. 2000) ...............................................................................8

*Stroman Realty, Inc.* v. *Antt*,
    528 F.3d 382 (5th Cir. 2008) ..........................................................................9, 10

*Stroman Realty, Inc.* v. *Wercinski*,
    513 F.3d 476 (5th Cir. 2008) .......................................................................6, 9, 10

*Sullivan* v. *Cty. of Hunt, Tex.*,
    106 F. App'x 215 (5th Cir. 2004) ......................................................................25

*Trower* v. *Maple*,
 774 F.2d 673 (5th Cir. 1985) ..............................................................................17

*United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO* v. *Scott*,
 463 U.S. 825 (1983).............................................................................................25

*United States* v. *Bowen*,
 799 F.3d 336 (5th Cir. 2015) ..............................................................................22

*U.S. ex rel. SEC* v. *Carter*,
 907 F.2d 484 (5th Cir. 1990) ..............................................................................22

*United States* v. *Morton Salt Co.*,
 338 U.S. 632, 652-53 (1950) ..............................................................................21

*United States* v. *O'Brien*,
 391 U.S. 367 (1968).............................................................................................20

*Valtech Solutions Inc.* v. *Davenport*,
 No. 3:15-CV-3361-D, 2016 WL 2958927 (N.D. Tex. May 23, 2016)...................12

*Vanderbilt Mortg. & Fin., Inc.* v. *Flores*,
 692 F.3d 358 (5th Cir. 2012) .................................................................................7

*Walden* v. *Fiore*,
 134 S. Ct. 1115 (2014)....................................................................................9, 10

*Wien Air Alaska, Inc.* v. *Brandt*,
 195 F.3d 208 (5th Cir. 1999) .......................................................................7, 9, 11

*Wightman-Cervantes* v. *Texas*,
 No. 3:03-CV-3025-D, 2005 WL 770598 (N.D. Tex. Apr. 6, 2005)........................17

*Wilson* v. *Thompson*,
 593 F.2d 1375 (5th Cir. 1979) ...........................................................14, 15, 16, 17

*Word of Faith World Outreach Ctr. Church, Inc.* v. *Morales*,
 986 F.2d 962 (5th Cir. 1993) .........................................................................24, 25

*Wudtke* v. *Davel*,
 128 F.3d 1057 (7th Cir. 1997) ............................................................................13

*Young* v. *U.S. ex rel. Vuitton et Fils S.A.*,
 481 U.S. 787 (1987).............................................................................................21

*Younger* v. *Harris*,
 401 U.S. 37 (1971)...................................................................................... *passim*

**STATUTES**

28 U.S.C. § 1391(b)(2) ....................................................................................................14

42 U.S.C. § 1985...........................................................................................................25

N.Y. Gen. Bus. Law § 352............................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ...........................................................................................................17

U.S. Const. amend. I................................................................................................8, 14, 18, 19

U.S. Const. amend. IV ...........................................................................................8, 9, 20

U.S. Const. amend. XI ...........................................................................................1, 24, 25

U.S. Const amend. XIV ................................................................................................21

U.S. Const. art. I § 8....................................................................................................22, 23

Exxon Mobil Corporation ("ExxonMobil") respectfully submits this memorandum of law in opposition to Defendant Eric Tradd Schneiderman's motion to dismiss the First Amended Complaint ("FAC").

## PRELIMINARY STATEMENT

Attorney General Schneiderman's motion to dismiss repeats the arguments made in Attorney General Healey's similar motion and fails for the same reasons.

ExxonMobil brought this action to safeguard its constitutional rights against the misuse of law enforcement power.  Desperate to avoid this Court's scrutiny of that unlawful conduct, the Attorney General has assembled a laundry list of meritless objections to the action, contesting personal jurisdiction, ripeness, venue, the permissibility of ExxonMobil's state law claims under the Eleventh Amendment, the viability of the suit under *Younger*, and whether the FAC states plausible grounds for relief.  The Attorney General is wrong on all counts.

*First*, the moment the Attorney General elected to use the levers of government to cause constitutional torts in Texas, he subjected himself to the jurisdiction of this state's courts. *Second*, the ripeness of this lawsuit is evidenced by the Attorney General's motion to compel in New York state court, and by the existence of statutory penalties for failure to comply with the Attorney General's subpoena.  *Third*, venue is appropriate because ExxonMobil is seeking relief in the very district where its rights have been violated.  *Fourth*, the Attorney General's bad faith precludes abstention.  *Finally*, ExxonMobil's detailed allegations concerning the Attorney General's unconstitutional plan to target ExxonMobil for expressing views about climate change with which he disagrees are more than sufficient to state a plausible claim for relief.

Having failed to identify a valid basis to dismiss the FAC, the Attorney General's motion should be denied.

## STATEMENT OF FACTS

Attorney General Schneiderman has violated ExxonMobil's constitutional rights by misusing the powers of his office.  As described in the FAC's detailed allegations, the Attorney General is engaging in unapologetic viewpoint discrimination, conducting an unlawful fishing expedition, directing a biased investigation with preordained results, and seeking to regulate speech and conduct occurring well beyond the borders of the State of New York.

### A.      The Attorney General's Public Statements Demonstrate Viewpoint Bias.

The Attorney General's investigation is the product of a coordinated campaign of partisan state officials urged on by activists and attorneys motivated by their own policy goals and private interests.  On March 29, 2016, Attorney General Schneiderman hosted a press conference in New York City with former Vice President Al Gore and the attorneys general or staff from over a dozen other states (including Attorney General Healey), the purpose of which was to discuss the objective of breaking the perceived "gridlock in Washington" regarding climate change legislation, and of working "creatively" and "aggressively" to advance that agenda.[1]  Attorney General Schneiderman announced that the assembled coalition of state actors—the "Green 20," as he labeled them—intended "to send the message that [they were] prepared to step into this [legislative] breach."[2]

According to Attorney General Schneiderman, the goal of the coalition's "coordination" was "to deal with th[e] most pressing issue of our time," namely, the need to "reduce the carbon emissions that threaten all of the people we represent."[3]  The Attorney General declared that the debate about climate change was over:  "[W]e are here for a very simple reason.  We have heard

---

[1]    MTD App. at 1-21.

[2]    *Id.* at 3-4.

[3]    *Id.* at 2, 5.

the scientists.  We know what's happening to the planet.  There is no dispute but there is confusion, and confusion sowed by those with an interest in profiting from the confusion and creating misperceptions in the eyes of the American public that really need to be cleared up."[4]

To correct that so-called "confusion," Attorney General Schneiderman endorsed using law enforcement power to target ExxonMobil as a perceived source and sponsor of a viewpoint that Attorneys General Schneiderman and Healey do not share.[5]  Betraying his prejudgment of the facts, Attorney General Schneiderman announced his conclusion that ExxonMobil had lied to the public about climate change, and that ExxonMobil "paid millions of dollars to support organizations that put out propaganda denying that we can predict or measure the effects of fossil fuel on our climate, or even denying that climate change was happening."[6]  Attorney General Schneiderman further claimed—without citation whatsoever to any evidence—that his coalition already knew that ExxonMobil was "using the best climate models" to run its business, while telling "the public for years that there were no 'competent models' . . . to project climate patterns."[7]

**B.    The Subpoena Is a Fishing Expedition
That Targets One Side of a Policy Debate.**

The bias displayed at the Green 20 press conference is further reflected by the subpoena issued by the Attorney General on November 4, 2015.  Among other things, the subpoena demanded production of all ExxonMobil documents related to climate change, on a worldwide basis, for a period of 40 years.  Given the maximum relevant six-year statute of limitations for the claims purportedly being investigated by the Attorney General, this scope suggests a fishing

---

[4]    *Id.* at 3.

[5]    *Id.* at 3-4.

[6]    *Id.* at 4.

[7]    *Id.*

3

expedition.  The subpoena also demands that ExxonMobil produce all of its communications with organizations that the Attorney General perceives to be his opponents in the climate change debate, including trade associations and industry advocates, some of which the Attorney General has derided as so-called "climate deniers."[8]  These demands underscore the improper motivation for issuing the subpoena in the first place—namely, to silence the Attorney General's perceived political opponents.[9]

### C.    Documents Obtained via Third-Party Public Records Requests Further Reveal a Conspiracy to Violate ExxonMobil's Constitutional Rights.

Documents obtained by third parties through public record demands further confirm the ulterior political objectives driving the Attorney General's investigation.  The first set of documents shows the origins of the "Green 20" and sheds light on that group's political focus.  A draft set of "Principles" guiding the group's actions included a "Pledge" to "work together" to enforce laws "that require progressive action on climate change."[10]  Fellow coalition members expressed qualms about this overtly political language, which the Vermont Attorney General's Office feared "might alienate" some constituents.[11]  The second set of documents relates to a common interest agreement executed in April and May 2016 by representatives of Attorney General Schneiderman and sixteen fellow coalition members to shield the participants' communications from the public.[12]  The agreement describes their common interest as "limiting climate change and ensuring the dissemination of accurate information about climate change."[13]

---

8    *Id.* at 30-31, 42.

9    Although ExxonMobil has produced documents in response to the subpoena, it has done so subject to an express agreement with the Attorney General's Office that "by producing documents . . . Exxon is not waiving any right to seek to quash or otherwise object to the subpoena."  *Id.* at 45.

10   *Id.* at 51 (noting that Attorney General Healey will attend the Green 20 press conference).

11   *Id.* at 50.

12   *Id.* at 54-72

13   *Id.* at 54.

That description reflects Attorney General Schneiderman's biased objective, while embracing the unconstitutional regulation of speech to accomplish that end.

### D.    The Attorney General Directed the Constitutional Torts at Texas.

The constitutional violations that form the basis of ExxonMobil's FAC occurred in Texas.  ExxonMobil is a Texas-based company; the subpoena is addressed to ExxonMobil at its "Corporate Headquarters" in Irving, Texas; and the subpoena was sent by email to a corporate officer based in Texas, where it was received and opened.  The Attorney General has publicly expressed interest in statements ExxonMobil made in Texas, including statements made in disclosures and investor-facing reports created in Texas,[14] and the subpoena demands the production of all documents concerning those Texas-based statements.[15]

## ARGUMENT

### I.    This Court Has Personal Jurisdiction over the Attorney General.

This Court has personal jurisdiction over the Attorney General because, through his investigation and delivery of the subpoena into Texas, he intentionally and purposefully directed tortious conduct at ExxonMobil in Texas, which had the effect of causing constitutional injury to ExxonMobil in Texas.[16]

---

[14]    *See, e.g.*, *id.* at 73-117.

[15]    *See id.* at 30-31.

[16]    The Court is under no obligation to address the Attorney General's personal jurisdiction arguments prior to other grounds for dismissal.  Instead, when considering threshold, non-merits grounds for dismissal, it is the Court's discretion—not the Attorney General's preference—that controls.  *See Sinochem Int'l Co. Ltd.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (holding that "a federal court has leeway 'to choose among threshold grounds'" when considering whether to dismiss a complaint, and that "a district court has discretion to respond at once to a [threshold ground] and need not take up first any other threshold objection" (quoting *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 585 (1999))).  At the very least, if the Court is uncertain that the Attorney General has sufficient contacts with Texas for the exercise of personal jurisdiction, then jurisdictional discovery is warranted.  *See Valtech Solutions Inc.* v. *Davenport*, No. 3:15-CV-3361-D, 2016 WL 2958927, at *2 (N.D. Tex. May 23, 2016) ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." (citation omitted)); *Next Techs., Inc.* v. *ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015) (permitting jurisdictional discovery to determine, *inter alia*, whether the

A.       **The Texas Long-Arm Statute Can Reach the New York Attorney General.**

The exercise of jurisdiction over the Attorney General is fully consistent with the Texas

long-arm statute, which both the Texas Supreme Court and the Fifth Circuit have construed to

"reach[] as far as the federal constitutional requirements for due process will allow." *Spir Star*

*AG* v. *Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) (internal quotation marks and citation omitted);

*see also Atwood Hatcheries* v. *Heisdorf & Nelson Farms*, 357 F.2d 847, 852 (5th Cir. 1966)).

Indeed, it is well established that the Texas long-arm statute confers jurisdiction over

sister states, their instrumentalities, and their officers.  *See, e.g.*, *21 Turtle Creek Square, Ltd.* v.

*N.Y. State Teachers' Ret. Sys.*, 425 F.2d 1366, 1368 (5th Cir. 1970) (jurisdiction over New York

state agency); *Bd. of Cty. Comm'rs of Beaver Cty., Okla.* v. *Amarillo Hosp. Dist.*, 835 S.W.2d

115, 119 (Tex. App. Ct. 1992) (jurisdiction over subdivision of Oklahoma state government).[17]

Nevertheless, the Attorney General—relying solely on *Stroman Realty, Inc.* v. *Wercinski*,

513 F.3d 476 (5th Cir. 2008)—argues that out-of-state public officers, like him, are exempt from

personal jurisdiction under the statute, and that his commission of a constitutional tort in Texas

does not constitute "doing business" in Texas.  (Mem. 10.)[18]  That is wrong.  The passage of

*Stroman* on which the Attorney General heavily relies is plainly dicta.  *See* 513 F.3d at 483 (5th

Cir. 2008); *id.* at 489 (Barksdale, J., concurring).  Moreover, the *Stroman* court did not find—as

the Attorney General suggests—that the Texas long-arm statute omitted out-of-state officials; it

court could exercise specific personal jurisdiction over defendants alleged to have "directed" activities into
Texas).

[17]   Other courts have implicitly recognized that reach by considering the sufficiency of an out-of-state official's
contacts with Texas, which could occur only if the Texas long-arm statute permitted such an inquiry in the first
instance.  *See, e.g.*, *Gulf Coast Int'l* v. *The Research Corp. of the Univ. of Haw.*, 490 S.W.3d 577, 583-84 (Tex.
App. Ct. 2016); *Markland* v. *Bay Cty. Sheriff's Office*, No. 1:14-CV-572, 2015 WL 3430120, at *2-3 (E.D. Tex.
May 28, 2015) (adopting report and recommendation); *Payne* v. *Cty. of Kershaw, S.C.*, No. 3:08-CV-0792-G,
2008 WL 2876592, at *2-5 (N.D. Tex. July 25, 2008); *Perez Bustillo* v. *State of La.*, 718 S.W.2d 844, 846 (Tex.
App. Ct. 1986).  Indeed, this very Court did so on different facts in *Saxton* v. *Faust*, No. 3:09 CV-2458-K, 2010
WL 3446921, at *3 (N.D. Tex. Aug. 31, 2010), a case the Attorney General himself cites.

[18]   "Mem." refers to the Memorandum of Law in Support of Defendant Attorney General Eric Tradd
Schneiderman's Motion to Dismiss First Amended Complaint, dated December 5, 2016 (Dkt. 134).

merely noted that "[w]hether the long-arm statute's definition of nonresidents ignores or subsumes the *Ex Parte Young* fiction is uncertain." *Id.* at 483. The Attorney General thus substantially oversells both the *Stroman* court's dicta and the weight it should be given.

### B.    Due Process Permits Personal Jurisdiction over the Attorney General.

Consistent with due process, this Court may exercise personal jurisdiction over an out-of-state actor, like Attorney General Schneiderman, who intentionally directs tortious conduct at Texas, which causes injuries to be suffered in Texas.

Under the due process clause, a defendant is subject to personal jurisdiction where he "has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Int'l Energy Ventures Mgmt., L.L.C.* v. *United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945)). In considering whether a defendant is subject to jurisdiction, courts consider: (1) whether the defendant "directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there"; (2) whether the plaintiff's cause of action arose from "defendant's forum-related contacts"; and (3) "whether the exercise of personal jurisdiction is fair and reasonable." *Vanderbilt Mortg. & Fin., Inc.* v. *Flores*, 692 F.3d 358, 375 (5th Cir. 2012).

A single out-of-state act can support jurisdiction in Texas, so long as the defendant knew or intended that the effects of the action would be felt in Texas. *See Lewis* v. *Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) ("A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). Indeed, a court may exercise personal jurisdiction over a non-resident defendant when he commits "an act outside the state that causes tortious injury within the state." *Guidry* v. *U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999). Put differently, when a defendant intentionally directs a harm at Texas, he has

"purposefully avail[ed] [him]self of the privilege of causing a consequence in Texas," thereby

subjecting himself to jurisdiction in Texas courts.  *Wien Air Alaska, Inc.* v. *Brandt*, 195 F.3d 208,

213 (5th Cir. 1999) (internal quotation marks and citation omitted).

To satisfy its burden, a "plaintiff need only present a prima facie case of personal

jurisdiction."  *Stripling* v. *Jordan Prod.*, 234 F.3d 863, 869 (5th Cir. 2000) (citation omitted).  In

undertaking its analysis, the Court "must accept the plaintiff's uncontroverted allegations, and

resolve in [its] favor all conflicts between the facts contained in the parties' affidavits and other

documentation."  *Monkton Ins. Servs., Ltd.* v. *Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (internal

quotation marks and citation omitted).  ExxonMobil easily satisfies this standard.

1.    The Attorney General Intentionally Directed His
Unlawful Conduct at Texas, Causing Injury in Texas.

The Attorney General's issuance and delivery of his subpoena to ExxonMobil involved

an intentional direction of conduct at Texas and has resulted in injuries being suffered in Texas.

The subpoena—which is addressed to ExxonMobil at its "Corporate Headquarters" in Texas and

was sent by email to Texas where it was received and opened—is plainly targeted at Texas,

where ExxonMobil exercises its First Amendment rights by considering, developing and

releasing corporate statements on matters of public concern, and where ExxonMobil maintains

and stores communications and other records sought by the subpoena.

 "A plaintiff suing because his freedom of expression has been unjustifiably restricted . . .

suffers harm only where the speech would have taken place, as opposed to the district in

which . . . the decision to restrict this plaintiff's speech was made."  *Kalman* v. *Cortes*, 646 F.

Supp. 2d 738, 742 (E.D. Pa. 2009).  The speech that Attorney General Schneiderman's

investigation aims to suppress through the subpoena emanates from Texas, and ExxonMobil's

First Amendment injury has thus occurred in Texas.  Similarly, the injury caused by the violation

8

of ExxonMobil's right "to be secure in . . . [its] papers, and effects," U.S. Const. amend. IV, is where those "papers, and effects" are kept—here, in Texas. *Cf. Walden* v. *Fiore*, 134 S. Ct. 1115, 1124 (2014) (finding jurisdiction lacking in a *Bivens* action for violation of Fourth Amendment rights because the seizure did not take place in the forum).  Accordingly, the Attorney General has "directed [his] activities at the forum state and [this] litigation results from alleged injuries that arise out of or relate to those activities," making jurisdiction "appropriate.*" In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, Nos. 3:11-CV-03590-K, 3:12-CV-4975-K, 2014 WL 3557392, at *2 (N.D. Tex. July 18, 2014) (Kinkeade, J.).

The Attorney General's intentional direction into Texas of a subpoena that causes constitutional torts and results in injury in Texas provides an ample basis for personal jurisdiction.  *See, e.g.*, *Lewis* v. *Fresne*, 252 F.3d 352, 359 (5th Cir. 2001) (finding purposeful availment by out-of-state defendants where they sent communications into Texas in furtherance of an intentional tort); *Wien Air*, 195 F.3d at 213 ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *see also Bear Stearns Cos.* v. *Lavalle*, No. 3:00 Civ. 1900-D, 2001 WL 406217, at *3–4 (N.D. Tex. Apr. 18, 2001) (jurisdiction existed where "harassing" communications were directed to Texas "because the defendant has knowingly aimed his intentional actions at Texas and knows that the plaintiff will feel the brunt of the injury in Texas").

The precedents that the Attorney General cites in arguing for dismissal are not to the contrary.  Once again, the Attorney General relies heavily on the *Stroman* cases,[19] which are not similar to the facts here.  In both *Stroman* cases, plaintiff Stroman Realty, based in Texas, sued out-of-state officials who sought to restrict Stroman's agents from engaging in unlicensed real

---

[19]    *Stroman Realty, Inc.* v. *Wercinski*, 513 F.3d 476 (5th Cir. 2008) ("*Stroman I*") and *Stroman Realty, Inc.* v. *Antt*, 528 F.3d 382 (5th Cir. 2008) ("*Stroman II*").

estate sales in the officials' home states.  In *Stroman I*, the only contacts between the out-of-state

officials and Texas were "a cease-and-desist order [sent into Texas relating to business activities

*outside* Texas] and correspondence with Stroman's attorneys."  *Stroman I*, 513 F.3d at 484.  In

*Stroman II*, the Texas contacts consisted of (i) cease-and-desist orders sent to Texas relating to

business activities *outside* Texas, (ii) letters disclosing the existence of the orders, and (iii) a

Texas state information request by Florida regulators that was unrelated to Stroman's claims.

*Stroman II*, 528 F.3d at 386-87.  Because the orders and letters at issue in those cases did not

purport to affect conduct in Texas, the out-of-state officials' actions are different from the

investigation and subpoena at issue here, which impinges on ExxonMobil's speech in Texas and

requires it to produce documents maintained in Texas.

The Attorney General's reliance on *Walden* v. *Fiore*, 134 S. Ct. 1115 (2014), and *Saxton*

v. *Faust*, No. 3:09 CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010), are similarly

misplaced.  In *Walden*, the Supreme Court held that a Nevada court lacked personal jurisdiction

over Georgia defendants who improperly seized money from the Nevada plaintiffs in a Georgia

airport because "none of the [Georgia defendant's] challenged conduct had anything to do with

Nevada itself" and "mere injury to a forum resident is not a sufficient contact with the forum."

134 S. Ct. at 1125.  In *Saxton*, this Court determined it lacked personal jurisdiction over a Utah

judge where the basis for jurisdiction was nothing more than the fact that "the effects of a [Utah]

ruling [were] felt in Texas."  2010 WL 3446921 at *3.  In so ruling, this Court pointedly noted

that "the Saxtons have alleged no other contacts with Texas."  *Id.*  Essentially, the out-of-state

judgment had consequences felt in Texas, but was not itself directed at the State in a tortious

manner.  Here, ExxonMobil alleges in detail that the Attorney General deliberately directed

constitutional torts at Texas and caused ExxonMobil injuries in this State.  (*See, e.g.*, FAC ¶¶ 18-

20, 69.)  As a result, Texas is the "focal point" of both the Attorney General's conduct and "the

harm suffered," and there is nothing "random, fortuitous, or attenuated" about the Attorney

General's intentional delivery of his subpoena to Texas and the effect in Texas of his

unconstitutional exercise of law enforcement power.  *Walden*, 134 S. Ct. at 1123 (internal

quotation marks omitted).

> ### 2.     It Is Fair and Reasonable to Exercise Personal
> Jurisdiction over the Attorney General.

The defendant bears the burden of proving that personal jurisdiction is unfair, *McFadin* v.

*Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), and the Attorney General's arguments fall short of

establishing anything unfair about litigating this matter in the state where he directed his tortious

conduct.  Once a plaintiff establishes minimum contacts, "'it is rare to say the assertion [of

jurisdiction] is unfair,'" and "'the interests of the forum and the plaintiff justify even large

burdens on the defendant.'"  *Id.* at 759-60 (quoting *Wien Air*, 195 F.3d at 215; *Guidry*, 188 F.3d

at 628).  The Attorney General's argument that litigating in Texas is unfair because he has had to

retain counsel hardly amounts to a burden that exceeds this standard.  (Mem. 9.)

Also unavailing is the Attorney General's argument that Texas has little interest in this

dispute.  (*Id.*)  As the Fifth Circuit has recognized, "Texas has an interest in protecting its

residents' . . . rights [against unlawful conduct by a non-Texas resident] and providing a

convenient forum for its residents to resolve their disputes."  *McFadin*, 587 F.3d at 763.[20]  The

State's interest is also demonstrated by the Texas Attorney General's filings in support of

ExxonMobil's constitutional claims against other members of the Green 20, where he has

---

[20]   *McFadin* dealt with Texas residents' property rights.  Texas's interest in protecting fundamental constitutional
rights can only be stronger.

explained Texas's interest in preventing the "unconstitutional use of investigative powers," and in "protect[ing] the due process rights of [its] residents."[21]

Attorney General Schneiderman is also wrong to assert that litigating in this Court would harm the interests of "the interstate judicial system" and that the deprivation of this forum would cause ExxonMobil no hardship because it can seek relief in a New York state court.  (Mem. 8-9.)  The interstate judicial system would be harmed by *preventing* a Texas domiciliary from vindicating its rights in Texas against a defendant who intentionally caused harm to that entity in Texas.  ExxonMobil should not be forced to litigate in New York simply because the Attorney General would prefer to have a matter concerning the intentional violation of constitutional rights of a Texas domiciliary within Texas heard by a New York state court.

Finally, the Attorney General engages in needless alarmism by suggesting that this Court's assertion of jurisdiction over him in this case would enable attorneys general to be haled into out-of-state courts across the country.  (Mem. 9.)  Evaluating personal jurisdiction requires a fact-intensive inquiry, and the out-of-circuit case cited by the Attorney General bears no resemblance to this case, in which an out-of-state attorney general is alleged to have directed action at the forum that resulted in constitutional torts.[22]  ExxonMobil's claim of jurisdiction here is based on the specific facts of this case—the Attorney General's transparent political targeting of ExxonMobil and his intentional direction of the subpoena at Texas, which violated ExxonMobil's rights in Texas.  On these particular facts, the Court can, and should, permit ExxonMobil to press its claims here.

---

[21]   Dkt. 63-2; MTD App. at 119-25.
[22]   *See* Dkt. 165 at 14 n.27.

## II.   ExxonMobil's Constitutional Claims Are Ripe for Adjudication.

Also baseless is the Attorney General's claim that this dispute is not ripe for adjudication. (Mem. 12-13.)  This case is ripe because the Attorney General has initiated state court proceedings to compel compliance with the subpoena.[23]  *See Google* v. *Hood*, 822 F.3d 212, 225 (5th Cir. 2016) (holding that the dispute concerning a non-self-executing subpoena was unripe so long as the state official "ha[d] not brought an enforcement action" to enforce the subpoena); *Lone Star Coll. Sys.* v. *EEOC*, No. H-14-529, 2015 WL 1120272, at *7 (S.D. Tex. Mar. 12, 2015) ("These claims are not ripe for review because there is no final agency action or a move to enforce a subpoena.").[24]

The Attorney General claims that ExxonMobil's opportunity to raise its claims in New York state court renders this action unripe.  (Mem. 12-13.)  But accepting that proposition would shut the doors of federal courthouses by imposing a state court exhaustion requirement for § 1983 plaintiffs.  The "very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights." *Mitchum* v. *Foster*, 407 U.S. 225, 242 (1972).  "[T]here is no general exhaustion requirement for § 1983 plaintiffs," *Wudtke* v. *Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997), and the Court should not create one here.

## III.   Venue Is Proper in the Northern District of Texas.

When evaluating a claim of improper venue, a court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Gruber Hurst Johansen & Hail, LLP* v. *Hackard & Holt*, No. 3:07-CV-1410-G, 2008 WL 137970, at *5 (N.D. Tex. Jan. 15,

---

[23]   MTD App. at 127-39.

[24]   This dispute also is ripe because the Attorney General claims in his motion to dismiss that the subpoena was issued pursuant to N.Y. Gen. Bus. Law § 352 (Mem. 21), which purports to make it a misdemeanor for any person to fail to comply with such a subpoena.  *See* N.Y. Gen. Bus. Law § 352(4).  In other words, the Attorney General effectively acknowledges that ExxonMobil may face a "current consequence for resisting" the subpoena.  *See Google*, 822 F.3d at 224-26 (holding that challenges to self-executing subpoenas are ripe).

2008).  As the FAC demonstrates, the Attorney General's investigation is impinging the free speech rights of ExxonMobil, which has its principal place of business in this District.  (*See, e.g.*, FAC ¶¶ 15, 18-19, 69, 97-108.)  It is well-settled, and the Attorney General does not contest, that First Amendment injury occurs at a plaintiff's principal place of business.  *See Fund for La.'s Future* v. *La. Bd. of Ethics*, No. 14-0368, 2014 WL 1514234, at *12 (E.D. La. Apr. 16, 2014).  As a result, venue is proper here because a substantial part of the events giving rise to the claim—ExxonMobil's injuries—occurred in this District.  *See* 28 U.S.C. § 1391(b)(2).

**IV.**   **This Court Should Reject the Attorney General's Request for Abstention.**

Attorney General Schneiderman invokes *Younger* v. *Harris*, 401 U.S. 37 (1971), as further grounds for the Court to dismiss this action.  (Mem. 14-17.)  But *Younger* abstention is not appropriate when "the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff."  *Bice* v. *La. Pub. Defender Bd.*, 677 F.3d 712, 716 n.3 (5th Cir. 2012).  The Fifth Circuit recognizes two circumstances where bad faith bars abstention: "first, when a state commences a prosecution or proceeding to retaliate for or to deter constitutionally protected conduct, [] and second, when the prosecution or proceeding is taken in bad faith or for the purpose to harass."  *Bishop* v. *State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984) (citations omitted).  Additionally, a state has no "important interest"—and thus a federal court should not abstain from hearing a parallel proceeding—in "pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights."  *Wilson* v. *Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979); *see also Jordan* v. *Reis*, 169 F. Supp. 2d 664, 668-69 (S.D. Tex. 2001) (declining to abstain where prosecution was brought in retaliation for exercise of First Amendment rights).  In light of the obligation of federal courts to hear cases within their jurisdiction, "[a] court necessarily abuses its discretion when it abstains outside of the [*Younger*] doctrine's strictures."  *Bice*, 677 F.3d at 716 (quotation marks and citation omitted).

14

The Attorney General's bad faith in undertaking this investigation makes abstention under *Younger* inappropriate.[25]  As the FAC demonstrates, the Attorney General's investigation was aimed "to retaliate for or to deter constitutionally protected conduct"—in this case, ExxonMobil's participation in policy discussions about climate change.[26]  *Bishop*, 736 F.2d at 294.  The Attorney General's public statements, the viewpoint bias memorialized in the subpoena, and the objectives set forth in the common interest agreement support that conclusion. Attorney General Schneiderman publicly described his office's efforts to "creatively" and "aggressively" bypass the perceived gridlock in Washington to "take action on climate change" by reducing carbon emissions, "mov[ing] rapidly towards renewables," and otherwise "chang[ing] conduct."[27]  This agenda included the impermissible use of law enforcement power to "clear[] up" the claimed "confusion sowed" by fossil fuel companies regarding climate change by, among other things, attacking their "fund[ing of] organizations" that he labeled as "aggressive climate deniers."[28]  Viewpoint discrimination is also amply documented in the common interest agreement, in which the Attorney General claimed to share an interest with other law enforcement officers in "ensuring the dissemination of accurate information about climate change"—that is, information *he* believes to be "accurate" based on his viewpoint.[29]

All of this evidence demonstrates that the Attorney General sought to enforce the

---

[25]  Attorney General Schneiderman attempts to evade the bad faith exception by declaring that ExxonMobil must allege that the state court overseeing the motion to compel compliance with the Attorney General's subpoena is acting in bad faith.  That unsupported assertion cannot be taken seriously.  The bad faith motivating the subpoena also motivates the Attorney General's motion to compel.  They are part of the same bad faith investigation, and it is that bad faith that precludes abstention.  *See, e.g.*, *Wilson* v. *Thompson*, 593 F.2d 1375, 1381-83 & n.7 (5th Cir. 1979).  Likewise, the Attorney General fails to explain why ExxonMobil's compliance with the subpoena and its participation in the New York enforcement proceeding prevents it from claiming that the Attorney General filed the motion to compel in bad faith.

[26]  Notably, the Attorney General does not dispute that ExxonMobil's participation in climate research and policy advocacy is protected speech.

[27]  MTD App. at 3, 20-21, 42.

[28]  MTD App. at 3, 42.

[29]  MTD App. at 54.

subpoena to "deter constitutionally protected conduct." *Bishop*, 736 F.2d at 294.  This record

does not warrant abstention.  *See Schlagler* v. *Phillips*, 166 F.3d 439, 443 (2d Cir. 1999)

(*Younger* bad faith "exception should apply" where "the prosecution is in retaliation for past

speech or shows a pattern of prosecution to inhibit speech beyond the acts being prosecuted").[30]

Abstention under *Younger* also is inappropriate because the Attorney General's

investigation was undertaken to harass ExxonMobil.  The pretextual nature of the Attorney

General's investigation has been laid bare in the FAC.  (FAC ¶¶ 61-68, 77-81, 122-26.)  The

FAC debunked the theories presented by Attorney General Schneiderman to defend his actions

and unmasked them as mere pretexts for an investigation designed to harass a perceived political

opponent.  (*Id.*)  ExxonMobil cannot have violated the statute invoked by the Attorney General

to justify his investigation because it engaged in no covered conduct during the limitations

period.  (*Id.*)  This is a textbook example of state officials investigating "in bad faith without

hope of obtaining a valid conviction," *Perez* v. *Ledesma*, 401 U.S. 82, 85 (1971), and "using or

threatening to use prosecutions, *regardless of their outcome*, as instrumentalities for the

suppression of speech," *Wilson*, 593 F.2d at 1383.

As this Court has already recognized with respect to Attorney General Healey, this

extraordinary record of allegations, "if true, may constitute bad faith in issuing the [subpoena]

which would preclude *Younger* abstention."[31]  Insofar as any doubt might remain about Attorney

General Schneiderman's bad faith, jurisdictional discovery is appropriate before the Court rules

on the Attorney General's motion to dismiss.  *See, e.g.*, *Trower* v. *Maple*, 774 F.2d 673, 674 (5th

Cir. 1985) (describing an earlier order in the litigation vacating grant of dismissal on *Younger*

---

[30]   The fact that the Attorney General could theoretically impose liability for ExxonMobil's speech does not immunize an investigation that was undertaken for improper motives.  A showing that a prosecution was brought to constrain the exercise of constitutional rights "will justify an injunction regardless of whether valid convictions conceivably could be obtained." *Fitzgerald* v. *Peek*, 636 F.2d 943, 945 (5th Cir. 1981).

[31]   Order at 5-6 (Dkt. 73).

16

grounds and remanding for evidentiary hearing on bad faith).  Indeed, the Fifth Circuit has

vacated district court decisions where no proper evidentiary hearing was conducted and

remanded for "the appropriate evidentiary hearing required [by *Younger*], in which [the] plaintiff

shall be allowed to introduce evidence regarding his allegations of bad faith prosecution and

harassment."  *Stewart* v. *Dameron*, 448 F.2d 396, 397 (5th Cir. 1971); *see also Wightman-

Cervantes* v. *Texas*, No. 3:03-CV-3025-D, 2005 WL 770598, at *5 (N.D. Tex. Apr. 6, 2005)

("Evidentiary hearings are properly convened, if not in some instances required, in deciding

whether to abstain" when bad faith is alleged).

## V.      The FAC States Claims upon Which Relief Can Be Granted.

Attorney General Schneiderman's assertion that the FAC fails to meet the minimum

pleading standards of Rule 8 is baseless.  (Mem. 17-25.)  Rule 8 requires a plaintiff to "state a

claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  Because the FAC contains detailed

factual allegations, grounded in well-recognized legal principles, each of the claims in the FAC

easily satisfies this pleading standard.

### A.      The FAC States a Claim for Relief Under the First Amendment.

ExxonMobil's First Amendment claims are plausible on their face, and the Attorney

General's arguments to the contrary fail on both the law and the facts.

As an initial matter, the mere invocation of the word "fraud" by the Attorney General

(Mem. 18) does not dispel the First Amendment concerns raised by the subpoena.  It is the

defendant's burden to establish a fraud defense to a First Amendment claim.  *See, e.g.*, *Ill. ex rel.

Madigan* v. *Telemarketing Assocs.*, 538 U.S. 600, 617 (2003) ("Simply labeling an action one for

'fraud,' of course, will not carry the day.").  Courts can only dismiss claims based on affirmative

defenses that appear on the face of the plaintiff's complaint.  *E.g.*, *Am. Realty Trust, Inc.* v.

17

*Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 664 n.1 (5th Cir. 2004); *Clark* v. *Amoco Prod. Co.*, 794 F.2d 967, 974 (5th Cir. 1986); *Janvey* v. *Wieselberg*, No. 3:10-CV-1394-N, 2014 WL 2883897, at *2 (N.D. Tex. June 25, 2014).  The face of the FAC contains detailed allegations showing that the Attorney General's theories of fraud are time-barred and preempted pretexts for an unconstitutional conspiracy to silence ExxonMobil.  (FAC ¶¶ 61-68, 74-81.)  And the Attorney General does not—and cannot—point to any allegation in the FAC that supports his fraud argument.[32]

To the contrary, the FAC contains detailed factual allegations—supported by citations to the public record—that the subpoena is pretextual and will deter ExxonMobil's speech about climate change, and those allegations must be accepted as true for purposes of this motion. *Compare* FAC ¶¶ 1-14, 20-53, 61-68, 74-81, 88-104, 109-11, *with Iqbal*, 556 U.S. at 680-81.[33] A state "may not regulate [speech] based on hostility—or favoritism—towards the underlying message expressed," even when—unlike here—the speech at issue has no "claim upon the First Amendment." *R.A.V.* v. *City of Saint Paul*, 505 U.S. 377, 386 (1992).  That principle applies with even greater force when the underlying speech, as here, is itself protected by the First Amendment.  Because the Attorney General's subpoena reflects viewpoint discrimination, the First Amendment prohibits the state action the Attorney General has undertaken.

The Attorney General's remaining arguments attempt to confuse the issues, and the Court should not indulge them.  ExxonMobil's First Amendment claims neither turn on the retaliatory

---

[32]   The Attorney General's citation to *FEC* v. *Lance*, 635 F.2d 1132 (5th Cir. 1981), is inapposite.  There, the Fifth Circuit held that the appellant's *ex post facto* challenge to a subpoena was unripe because he could not yet show that any future enforcement proceeding would necessarily depend on transactions that occurred before the enactment of the relevant statute.  *Id.* at 1138-39.  Here, by contrast, it is the Attorney General who must make out his fraud defense.  *See, e.g.*, *Clark*, 794 F.2d at 974.

[33]   Although the Attorney General argues that there is a presumption that prosecutors have legitimate grounds for the actions they take (Mem. 20), he does not argue that this presumption can overcome the presumption at the motion to dismiss stage that plaintiff's factual allegations are true.

nature of the subpoena, nor require proof that the subpoena directly regulates the company's political associations or the "content, time, place, or manner of expression." (Mem. 19.) Likewise, ExxonMobil does not suggest that "wrongful purpose or motive is enough to defeat a legally compliant action." (*Id.* (internal quotation marks omitted).) Rather, the FAC alleges that the Attorney General has used his investigative powers selectively to target an entity he perceives to be on the opposite side of the public policy debate about how to address climate change, in an apparent effort to silence, intimidate, and deter those who possess that viewpoint from participating in that debate. (FAC ¶¶ 1-14, 110.)[34] ExxonMobil contends that the investigation and the subpoena are unlawful because "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger* v. *Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).[35] ExxonMobil further claims that the subpoena impermissibly burdens ExxonMobil's political speech because the Attorney General does not have a "compelling interest" in obtaining the materials he seeks, and because there is an insufficient nexus between his interest and the materials he has requested. *See Mills* v. *Alabama*, 384 U.S. 214, 218-19 (1966); *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F. Supp. 2d 11, 18 (D.D.C. 2009). Accordingly, the cases cited by Attorney General Schneiderman are inapposite.[36]

---

[34] Inexplicably, Attorney General Schneiderman claims that the FAC does not identify the viewpoint against which he is discriminating.

[35] Viewpoint discrimination does not require a showing that the plaintiff was retaliated against for making, or was deterred from making, protected speech. *See, e.g., id.* at 828 ("Discrimination against speech because of its message is presumed to be unconstitutional."). The Court should give no weight to the Attorney General's unsupported assertion to the contrary.

[36] For example, *Hartman* v. *Moore*, 547 U.S. 250 (2006), and *Allen* v. *Cisneros*, 815 F.3d 239 (5th Cir. 2016), involved retaliatory prosecution claims; *SEC* v. *McGoff*, 647 F.2d 185, (D.C. Cir. 1981), involved a publisher's attempt to resist an investigation solely because of his status as a publisher and his involvement in politics; and *United States* v. *O'Brien*, 391 U.S. 367 (1968), involved a state action arguably motivated by discriminatory intent but without unconstitutional effect.

**B.     The FAC States a Claim for Relief Under the Fourth Amendment.**

Equally meritless is the Attorney General's argument that the FAC fails to state a claim for relief under the Fourth Amendment.  (Mem. 20-21.)  The Attorney General does not dispute that the Fourth Amendment's reasonableness requirement mandates that a subpoena be limited in scope, relevant in purpose, and specific in directive.  (FAC ¶ 114.)  The FAC clearly states a claim for relief under that standard insofar as it alleges that the subpoena is unreasonable because it unlawfully purports to authorize a fishing expedition into four decades' worth of records, despite a marked absence of any basis for suspecting that ExxonMobil violated the law. Notwithstanding the Attorney General's unsupported assertion that materials decades beyond the relevant statute of limitations "may be relevant to showing the false and fraudulent nature of statements within the limitations period" (Mem. 21), the scope of the subpoena is far too broad to be squared with the Fourth Amendment, which does not permit the government to rifle through ExxonMobil's papers on climate change, "relevant or irrelevant, in the hope that something will turn up."  *FTC* v. *Am. Tobacco Co.*, 264 U.S. 298, 306 (1924); *see also United States* v. *Morton Salt Co.*, 338 U.S. 632, 652-53 (1950) (noting impropriety of an investigation that is "of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power").   The investigation must follow from a legitimate suspicion that a law has been broken, s*ee FTC*, 264 U.S. at 306, and ExxonMobil has alleged in detail that no such suspicion exists here, under either of the Attorney General's pretextual theories of liability. (FAC ¶¶ 62-64, 74-81.)  Where, as here, there is no plausible suggestion that the recipient of a subpoena violated the law, a court should enjoin its enforcement.  *See Major League Baseball* v. *Crist*, 331 F.3d 1177, 1187-88 (11th Cir. 2003).

20

### C.     The FAC States a Claim for Relief Under the Fourteenth Amendment.

In opposing ExxonMobil's claim for violation of its due process rights under the

Fourteenth Amendment, Attorney General Schneiderman falsely asserts that "Exxon's

Fourteenth Amendment claim is based on the assertion that it has a due process right not to be

investigated by a law enforcement agency that it claims has disagreed with its political views."

(Mem. 21.)  But the Attorney General cannot defeat ExxonMobil's Fourteenth Amendment

claim simply by mischaracterizing it.  The FAC alleges that due process guarantees ExxonMobil

a prosecutor who will set aside his or her own interests—financial, political, or otherwise—in

favor of a single interest: "that justice shall be done." *Berger* v. *United States*, 295 U.S. 78, 88

(1935).  That requirement bars a prosecutor from "injecting a personal interest . . . into the

enforcement process." *Marshall* v. *Jerrico, Inc*., 446 U.S. 238, 249-50 (1980).  It also prohibits

a prosecutor from pursuing a case when he or she is "influenced by improper motives." *Young* v.

*U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987).  These principles require prosecutors

to abide by "standards of prosecutorial ethics," including their obligation to "respect the

presumption of innocence" and "refrain[] from speaking in public about pending and impending

cases except in very limited circumstances." *United States* v. *Bowen*, 799 F.3d 336, 353-54 (5th

Cir. 2015).  Prosecutors violate these requirements when they make "[i]nflammatory and biased"

comments about ongoing matters. *Id.* at 358.  ExxonMobil's detailed factual allegations[37] are

more than sufficient to support its claim that Attorney General Schneiderman cannot serve as a

disinterested prosecutor in his investigation of ExxonMobil because his public statements and

---

[37]    FAC ¶¶ 1-14, 20-53, 60-68, 74-81, 92, 115-17.  To be clear, ExxonMobil does not allege mere coordination among state attorneys general.  It alleges a conspiracy to use law enforcement powers selectively to promote a particular climate change policy agenda by, among other things, silencing ExxonMobil's speech on the subject.

actions create "an appearance of impropriety" that "undermine [the public] confidence" in his investigation.  *U.S. ex rel. SEC* v. *Carter*, 907 F.2d 484, 488 (5th Cir. 1990).[38]

### D.    The FAC States a Claim for Relief Under the Dormant Commerce Clause.

Attorney General Schneiderman argues that ExxonMobil is not entitled to the protections of the Dormant Commerce Clause because (i) the statutes authorizing the Attorney General's subpoena are not "constitutionally improper" on their face; and (ii) ExxonMobil "engage[s] in commerce within New York State" "[g]iven the nationwide nature of Exxon's business, and its participation in the securities markets within New York State."  (Mem. 22-23.)  But ExxonMobil is not making a facial challenge to the constitutionality of the statutes authorizing the Attorney General to issue subpoenas when appropriate.  Instead, the FAC alleges that Attorney General Schneiderman has misused his power by targeting ExxonMobil's speech outside of New York.  (FAC ¶¶ 68, 118-21.)  *See Am. Booksellers Found.* v. *Dean*, 342 F.3d 96, 103-04 (2d Cir. 2003) (holding that a state's regulation of out-of-state speech violates the Dormant Commerce Clause).

Nor is there any merit to the Attorney General's suggestion that ExxonMobil is deprived of the protections of the Dormant Commerce Clause simply because it sells its products nationwide and is listed on the New York Stock Exchange.  Indeed, the Attorney General's argument is predicated on a fundamental misreading of the decision in *Edgar* v. *MITE Corp.*, 457 U.S. 624 (1982), which he claims "stated" a "rule" that "only prohibits a State from regulating commerce taking place 'wholly outside [its] borders.'"  (Mem. 23.)  The Supreme Court in *MITE* stated no such rule.  The Illinois statute at issue in that case sought to regulate tender offers made to Illinois corporations.  *See* 457 U.S. at 626-27.  MITE Corp., the tender offeror, was a Delaware corporation with its principal offices in Connecticut, and Chicago Rivet,

---

[38]    Unlike the plaintiff in *In re Grand Jury of S. Dist. of Ala.*, 508 F. Supp. 1210, 1214 (S.D. Ala. 1980), ExxonMobil does not seek an injunction preventing the Attorney General from presenting evidence to a grand jury; it seeks an injunction against the biased and burdensome investigation.

the target of the tender offer, was an Illinois corporation "with shareholders scattered around the country, 27% of whom live[d] in Illinois." *Id.* at 641-42.  The Court held that the statute was invalid under the Dormant Commerce Clause because it "sought to prevent MITE from making its offer and concluding interstate transactions not only with Chicago Rivet's stockholders living in Illinois, but also with those living in other States and having no connection with Illinois." *Id.* at 642.  In other words, the statute was invalid even though some of the regulated speech occurred within the state, since most of the regulated speech took place outside of the state.  The same reasoning supports ExxonMobil's claim for relief under the Dormant Commerce Clause in this case.  Here, through his subpoena and investigation, Attorney General Schneiderman seeks to deter ExxonMobil's speech, most of which occurs beyond New York's borders.  If New York had the power to regulate such out-of-state speech, then so would every other state, and the interstate commerce generated by such speech "would be thoroughly stifled." *Id.* at 642.

**E.    The FAC States a Claim for Relief Based on Federal Preemption.**

The FAC alleges that Attorney General Schneiderman has no legitimate suspicion that ExxonMobil has violated the law, and that his most recent pretextual theories—that ExxonMobil has committed fraud by failing to take possible future regulations into account when reporting its proved reserves and asset impairment—are preempted by the SEC regulations with which they conflict.  (FAC ¶¶ 74-81, 122-26.)  Rather than address the merits of ExxonMobil's preemption claim, Attorney General Schneiderman asserts that it is premature.  (Mem. 23.)  But the Supreme Court has recently made clear that the recipient of a subpoena may seek to enjoin the subpoena based on its preemption by federal law. *See, e.g.*, *Gobeille* v. *Liberty Mut. Ins. Co.*, 136 S. Ct. 936 (2016) (enjoining a subpoena based on federal preemption).  Although states remain free to enact and apply their own securities laws, the Attorney General may not apply New York's

securities law in a manner that conflicts with federal securities regulations.  *See, e.g.*, *Pet Quarters, Inc.* v. *Depository Tr. & Clearing Corp.*, 559 F.3d 772, 781-82 (8th Cir. 2009).

**F.    The FAC's State Law Claims Are Not Barred by the Eleventh Amendment.**

The Attorney General effectively concedes that ExxonMobil's state law claims for conspiracy and abuse of process are adequately pled.  He argues, however, that those claims are barred by the Eleventh Amendment.  (Mem. 24-25.)  Not true.  Although state officials may be immune from state law claims in federal courts under the Eleventh Amendment, they lose such protection when their actions exceed their statutory authority.  *See, e.g., Word of Faith World Outreach Ctr. Church, Inc.* v. *Morales*, 986 F.2d 962, 966 (5th Cir. 1993).  Here, by intentionally directing his unlawful conduct at Texas, causing injury in Texas, the Attorney General exceeded his statutory authority and lost any claim of sovereign immunity.

The Supreme Court and Fifth Circuit have long recognized an *ultra vires* exception to the Eleventh Amendment, which provides that where an "officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions."  *Larson* v. *Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949); *see also Word of Faith*, 986 F.2d at 966 (holding that government officials cannot hide behind the Eleventh Amendment when they act "beyond the scope of [their] statutory authority").[39]

The subpoena is *ultra vires* because its issuance has the effect of regulating the speech of a foreign corporation.  Under the pretext of New York's securities and consumer fraud statutes, the Attorney General commenced his investigation of ExxonMobil in order to "clear[] up" the claimed "confusion sowed" allegedly by fossil fuel companies regarding climate change, to "ensur[e] the dissemination of accurate information about climate change," and to assist private

---

[39]    While the Supreme Court cautioned against a broad reading of this exception and refused to apply it in *Pennhurst State Sch. & Hosp.* v. *Halderman*, it did not overrule it.  *See* 465 U.S. 89, 114 n.25, 107-09, 109 n.17 (1984).

litigants in their efforts to collect documents from fossil fuel companies like ExxonMobil[40]—not out of any reasonable belief that ExxonMobil violated any laws.[41]  Pursuant to that goal, he issued a subpoena targeting ExxonMobil's speech in Texas.  Such unlawful and unconstitutional actions do not fall within the scope of the Attorney General's authority under New York law and, as a result, ExxonMobil's state law claims are not barred by the Eleventh Amendment.[42]

## **CONCLUSION**

In sum, this Court has jurisdiction over the Attorney General, the case is ripe for adjudication, venue is proper, abstention is inappropriate, the state law claims are not barred by the Eleventh Amendment, and ExxonMobil has adequately pled its claims.  Accordingly, the Court should deny the Attorney General's motion to dismiss and allow this action to proceed.

---

[40]   MTD App. at 3, 54.

[41]   FAC ¶¶ 40-51, 63-64, 69-70.

[42]   Equally unavailing is the Attorney General's assertion that ExxonMobil has failed to state a claim for conspiracy under 42 U.S.C. § 1985(3).  (Mem. 24 n.10.)  As an initial matter, the FAC's federal conspiracy claim does not run afoul of the Eleventh Amendment because the FAC does not seek damages.  *See Smith* v. *Johnson*, No. 4:04-CV-374-A, 2005 WL 578470, at *4 (N.D. Tex. Mar. 11, 2005).  Moreover, because the conspiracy, as alleged in detail in the FAC, is targeted at ExxonMobil's "political association or beliefs," it falls squarely within 42 U.S.C. § 1985.  *See, e.g., Sullivan* v. *Cty. of Hunt, Tex.*, 106 F. App'x 215, 220 (5th Cir. 2004); *Galloway* v. *State of La.*, 817 F.2d 1154, 1159 (5th Cir. 1987); *see also United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO* v. *Scott*, 463 U.S. 825, 830 (1983).

Dated: December 23, 2016


EXXON MOBIL CORPORATION

By: /s/ Patrick J. Conlon     /s/ Nina Cortell

| | |
|---|---|
| Patrick J. Conlon | Nina Cortell |
| (*pro hac vice*) | State Bar No. 04844500 |
| State Bar No. 24054300 | nina.cortell@haynesboone.com |
| patrick.j.conlon@exxonmobil.com | HAYNES & BOONE, LLP |
| Daniel E. Bolia | 2323 Victory Avenue |
| State Bar No. 24064919 | Suite 700 |
| daniel.e.bolia@exxonmobil.com | Dallas, TX 75219 |
| 1301 Fannin Street | (214) 651-5579 |
| Houston, TX 77002 | Fax: (214) 200-0411 |
| (832) 624-6336 | |


/s/ Theodore V. Wells, Jr.     /s/ Ralph H. Duggins

| | |
|---|---|
| Theodore V. Wells, Jr. | Ralph H. Duggins |
| (*pro hac vice*) | State Bar No. 06183700 |
| twells@paulweiss.com | rduggins@canteyhanger.com |
| Michele Hirshman | Philip A. Vickers |
| (*pro hac vice*) | State Bar No. 24051699 |
| mhirshman@paulweiss.com | pvickers@canteyhanger.com |
| Daniel J. Toal | Alix D. Allison |
| (*pro hac vice*) | State Bar. No. 24086261 |
| dtoal@paulweiss.com | aallison@canteyhanger.com |
| PAUL, WEISS, RIFKIND, WHARTON & | CANTEY HANGER LLP |
| GARRISON, LLP | 600 West 6th Street, Suite 300 |
| 1285 Avenue of the Americas | Fort Worth, TX 76102 |
| New York, NY 10019-6064 | (817) 877-2800 |
| (212) 373-3000 | Fax: (817) 877-2807 |
| Fax: (212) 757-3990 | |

Justin Anderson
(*pro hac vice*)
janderson@paulweiss.com
2001 K Street, NW
Washington, D.C. 20006-1047
(202) 223-7300
Fax: (202) 223-7420

*Counsel for Exxon Mobil Corporation*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 23rd day of December 2016, a true and correct copy of the foregoing document was filed electronically via the CM/ECF system, which gave notice to all counsel of record pursuant to Local Rule 5.1(d).


                                /s/    Ralph H. Duggins
                                RALPH H. DUGGINS