IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | ) | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-469-K |
| | ) | |
| ERIC TRADD SCHNEIDERMAN, | ) | |
| Attorney General of New York, in his official | ) | |
| capacity, and MAURA TRACY HEALEY, | ) | |
| Attorney General of Massachusetts, in her | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY IN SUPPORT OF ATTORNEY GENERAL MAURA HEALEY'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Exxon's opposition (Doc. No. 165; "Opp.") to Attorney General Maura Healey's Motion to Dismiss Exxon's First Amended Complaint (Doc. No. 124) recycles its prior inapposite legal arguments. Exxon's bald assertion that the Attorney General's civil investigative demand ("CID") and related actions far from Texas violate its free speech and other rights neither confers personal jurisdiction over Attorney General Healey in this Court nor defeats Attorney General Healey's numerous other dispositive arguments for dismissal. Like the First Amended Complaint (Doc. No. 100; "FAC") itself and the initial Complaint (Doc. No. 1), Exxon's opposition depends on its contrived theory that routine, statutorily-authorized actions by Attorney General Healey permit this Court to abandon controlling legal precedents governing this Court's exercise of its personal jurisdiction, its subject matter jurisdiction, proper venue, and now, the operation of the Eleventh Amendment bar to state law-based claims. Exxon's unsupported factual assertions provide no basis for this Court to depart from those precedents. Exxon's legal

challenges to Attorney General Healey's investigation belong and are required to be brought in Massachusetts state court, and indeed are now under advisement there, following oral argument on December 7. Exxon's First Amended Complaint should be dismissed.

## ARGUMENT

### I. EXXON MISCONSTRUES THE BINDING CASE LAW THAT COMPELS DISMISSAL FOR LACK OF PERSONAL JURISDICTION.

For the reasons discussed in the Attorney General's memorandum in support of her Motion to Dismiss (Doc. No. 125; "Mem."), the plain language of the Texas long-arm statute as interpreted by the Fifth Circuit and the unequivocal due process precedents of the United States Supreme Court and the Fifth Circuit require this Court to dismiss this action for lack of personal jurisdiction over her.[1] Exxon's legal arguments to the contrary do not withstand scrutiny.

First, Exxon contends that the Texas long-arm statute reaches foreign state officials, failing to quote the plain language of the statute and then dismissing as dicta the Fifth Circuit's contrary interpretation of that language in *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482-83 (5th Cir. 2008). *See* Opp. 5-6. But Exxon cannot avoid the *Stroman* court's reading, on facts on all-fours with this case, that the Texas long-arm statute does not reach an out-of-state official acting in her official capacity. *See Stroman*, 513 F.3d at 483 ("[O]nly by twisting the ordinary meaning of the terms covered by the long-arm statute is [Massachusetts's] regulatory activity intended to be encompassed and adjudicated in Texas courts."). Exxon cites no case considering whether the Texas long-arm statute reaches a foreign state official implementing her regulatory

---

[1] Attorney General Healey has briefed this issue at length in other filings, *see, e.g.*, Mot. to Dismiss Mem. at 4-13 (Doc. No. 42); Mot. to Recon. Mem. at 3-7 (Doc. No. 79); Opp. to Mot. to Amend at 8-12 (Doc. No. 94); Mem. at 5-16, and will further elaborate on this Court's lack of personal jurisdiction in her brief on the subject that is due February 1, 2017. As she has argued elsewhere, *see, e.g.*, Mot. for Recon. Mem. at 4-7 (Doc. No. 79); Mem. at 14-16, this Court should first consider personal jurisdiction before considering other dispositive grounds for dismissal, *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 588 (1999); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213-14 (5th Cir. 2000).

authority or any case otherwise addressing or contradicting the *Stroman* court's reasoning. Indeed, the precedents Exxon cites either concern the *commercial* conduct of foreign state entities or fail to make any express ruling regarding the statute's reach.[2] There is no jurisdiction over Attorney General Healey under the Texas long-arm statute.

Second, Exxon asserts that personal jurisdiction comports with due process because, when Attorney General Healey issued her CID to Exxon's registered agent in Massachusetts, she "targeted Texas." Opp. at 8. Under United States Supreme Court and Fifth Circuit precedent, Exxon's argument is entirely wrong. *Walden v. Fiore*, 134 S. Ct. 1115, 1124-25 (2014) (due process analysis considers only "the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who reside there"); *Stroman*, 513 F.3d at 486 ("We have declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident."); *Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921, *2 (N.D. Tex. Aug. 31, 2010) (following *Stroman*'s rejection of "idea that a nonresident government official may be haled into a Texas court simply because the effects of a ruling are felt in Texas").[3] Moreover, Exxon has no answer to the patent unreasonableness of this Court's exercise of personal jurisdiction here, which would run afoul of *Stroman*'s holding that bars suits

---

[2] Neither of the two cases Exxon cites supports Exxon's proposition that it is "well-established" that the long-arm statute applies to foreign state officials' regulatory activity. And, both are inapposite because they involved foreign state entities' commercial contacts with Texas: one concerned a Texas hospital's action against an Oklahoma county to recover the costs of care it provided the county's employee in Texas under an implied contract, *see Bd. of Cty. Comm'rs of Cty. of Beaver Okl. v. Amarillo Hosp. Dist.*, 835 S.W.2d 115, 118-20 (Tex. App. 1992), and the other concerned a dispute over a contract for financing between a Dallas high rise development and a New York pension fund, *21 Turtle Creek Square, Ltd. v. N.Y. State Teachers' Ret. Sys.*, 425 F.2d 1366, 1367-68 (5th Cir. 1970).

[3] Tellingly, the principal cases on which Exxon relies predate both *Walden* and *Stroman*. *See* Opp. at 7-8. Exxon attempts to distinguish *Walden, Stroman*, and *Saxton* on the question-begging ground that they do not concern "constitutional torts." *See* Opp. at 10-12. In the first place, none of the conduct Exxon alleges amounts to a constitutional, much less any, tort. In any event, Exxon cites no case that recognizes an exception—for so-called "constitutional torts" or otherwise—that would permit the exercise of personal jurisdiction here, where Attorney General Healey has *no contacts with the forum*. And for good reason—such an exception would allow any company subject to out-of-state regulatory action the opportunity to force regulators to defend the action in any district where the company alleges harm.

2

against state officials requiring them to defend enforcement of their own state laws in federal courts of another state. *See* 513 F.3d at 487-88. This case should be dismissed for lack of personal jurisdiction without further proceedings.[4]

## II. EXXON'S ACTION IS UNRIPE.

Massachusetts courts' competence to hear Exxon's claims provides another dispositive basis for dismissal: Exxon's suit is unripe under *Google, Inc. v. Hood*, 822 F.3d 212, 224-26 (5th Cir. 2016). Currently, a Massachusetts Superior Court has pending before it Exxon's petition to set aside or modify the CID, and, as Exxon points out, the Attorney General's motion to compel compliance with it. By law, that Massachusetts court is the exclusive forum for such proceedings. Mass. Gen. Laws ch. 93A, §§ 6(7), 7. As was the case with the Mississippi Attorney General's administrative subpoena in *Google*, Exxon faces "no current consequence for resisting" the Attorney General's CID. *Google*, 822 F.3d at 226. Exxon will not face *any* non-compliance consequences until after the Massachusetts courts—including appellate courts—have adjudicated its claims and, if justified, uphold the Attorney General's CID. And, as in *Google*, Exxon may raise (and in fact has raised) the same challenges it has raised in this Court, and the Massachusetts Superior Court is fully capable of adjudicating them.[5] *See id.; In re Ramirez*, 905 F.2d 97, 98 (5th Cir. 1990) (dismissing action to quash investigatory subpoena for lack of subject

---

[4] Despite Exxon's half-hearted proposition that discovery into Attorney General Healey's non-existent contacts with Texas may be warranted, *see* Opp. at 14 n.28, it alleges no contacts or facts that would change the legal analysis under the Texas long-arm statute or the Constitution, *see Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (affirming denial of jurisdictional discovery when facts not disputed and requesting party "unable to state how the discovery he requested would change the jurisdictional determination"); *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982) ("When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted").

[5] Nor is Exxon's invocation of the Attorney General's authority to seek the assessment of a civil penalty germane: the Attorney General has not sought to have penalties imposed for noncompliance with the CID, and, in any case, any such penalties can only be imposed by order of the Massachusetts courts—not by the Attorney General herself. *See* Mass. Gen. Laws. c. 93A, § 7 ("The attorney general may file in the superior court . . . a petition for an order of such court for the enforcement of this section . . . .").

matter jurisdiction "because of the availability of an adequate remedy at law if, and when, the agency files an enforcement action"); *Atl. Richfield Co. v. FTC*, 546 F.2d 646, 648-50 (5th Cir. 1977) (pre-enforcement relief from administrative subpoenas inappropriate in light of opportunity to bring due process objections in any subsequent enforcement proceeding).

## III. THE NORTHERN DISTRICT OF TEXAS REMAINS AN IMPROPER VENUE.

All of the relevant "events" that Exxon describes in its First Amended Complaint occurred outside Texas. These facts do not support venue in this Court, nor do Exxon's claimed injuries at its corporate home. *See* 28 U.S.C. § 1391(b)(2) (venue lies in district where "a substantial part of the events or omissions giving rise to the claim occurred"); *Gray Cas. & Sur. Co. v. Lebas*, No. CIV. A. 12-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 7, 2013) ("Plaintiff's argument regarding the place of injury is contrary to the plain language of the venue statute and to the weight of jurisprudence."); *Saxton*, 2010 WL 3446921, at *4 (dismissing lawsuit because, *inter alia*, venue was improper where "all of the events the Saxtons complain of occurred in Utah"); *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) ("[T]he fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district."). Under these circumstances, the Court should dismiss the lawsuit for improper venue.

## IV. NO EXCEPTION TO *YOUNGER* ABSTENTION APPLIES.

Exxon cannot—and does not—seriously dispute that the core factors supporting dismissal of this action on abstention grounds under *Younger v. Harris*, 401 U.S. 37 (1971) are present here: (i) there is pending a qualifying state judicial proceeding (the Massachusetts Superior Court action Exxon itself initiated), (ii) the state proceeding implicates important state interests (the enforcement of Massachusetts law), and (iii) the state proceeding provides an adequate

4

opportunity for the federal plaintiff to assert federal constitutional claims. *See Sprint Comms., Inc. v. Jacobs*, 134 S. Ct. 584, 588, 591 (2013).

Instead, Exxon seeks to avoid *Younger* abstention by invoking the narrow exception to the doctrine in cases of "bad faith" or "harassment." *See* Opp. at 19-22. Because *Younger* abstention is intended both to preserve "a prosecutor's discretion" in deciding whether to initiate an enforcement action and to respect federalism by giving state courts an opportunity to correct any prosecutorial violations of individual constitutional rights, "the exceptions to *Younger* only provide for a very narrow gate for federal intervention." *Phelps v. Hamilton*, 59 F.3d 1058, 1064 (10th Cir. 1995) (citation omitted) (internal quotation marks omitted). In other words, "[o]nly if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state [judicial] process." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975). *Younger*'s exceptions apply "only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown . . . ." *Id.* (internal quotation marks omitted). *See also Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 190-91 (5th Cir. 1996).[6]

Here, there is no colorable allegation that the Massachusetts court in which Exxon has sought relief is incapable of adjudicating Exxon's claims,[7] and Exxon has not met its prima facie

---

[6] The Supreme Court, in fact, has never found the bad-faith exception applicable. *See* 17B Charles A. Wright et al., *Federal Practice & Procedure* § 4255 (3d ed. 2007). As commentators have observed, "the universe of bad-faith harassment claims that can be established is virtually empty." *Id.*

[7] Exxon's strained argument that Exxon has no remedy in Massachusetts courts because those courts have no personal jurisdiction over Exxon, Opp. at 23, actually supports abstention here. Exxon has briefed and argued lack of jurisdiction extensively in the Massachusetts case. If the Massachusetts courts agree that they lack personal jurisdiction over Exxon, despite the unassailable evidence of Exxon's wide-ranging commercial contacts with Massachusetts, *see* Opp. of Attorney General Healey to Exxon's Mot. for Prelim. Inj. at 5-6 (Doc. No. 43), the Attorney General would be left with no recourse to enforce her CID, and all of the claims Exxon raises here would be moot.

5

burden to allege facts that would support this Court retaining jurisdiction based on *Younger*'s "narrow" and "parsimoniously" granted bad faith exception. *Id.* at 190. Contrary to Exxon's conclusory characterizations, Attorney General Healey's actions in her investigation and in her public statement at a press conference reflect only the concerns of a responsible prosecutor and that she had a reason to believe there was a basis to issue the CID. *See* Mass. Gen. Laws ch. 93A, § 6(1) (Attorney General must "believe[] a person has engaged in or is engaging in any method, act or practice declared to be unlawful by [Chapter 93A]" before she "may conduct an investigation to ascertain whether in fact such person has [violated the law]"). In other words, "[t]he record shows nothing more than [the Attorney General's] adherence to standard procedure and compliance with statutory requirements." *Wightman*, 84 F.3d at 191 (rejecting bad-faith exception). That is the opposite of bad faith.

Moreover, this Court must not ignore the information Attorney General Healey had before her at the time she made the contested decision, *see Smith v. Hightower*, 693 F.2d 359, 369-70, 375 (5th Cir. 1982), and must avoid a subjective inquiry into her deliberative process, *see, e.g.*, *Wayte v. United States*, 470 U.S. 598, 607-08 (1985) ("Examining the basis of a prosecution delays the . . . proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy."); *In re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991) (citation omitted) (internal quotation marks omitted) ("[A recipient of a subpoena is] not entitled to engage in counter-discovery to find grounds for resisting a subpoena"); *cf. FTC v. Standard Oil Co.*, 449 U.S. 232, 243 (1980) (refusing to permit action to "turn[] prosecutor into defendant" before judicial review is even warranted). Here, the

6

record underlying Attorney General Healey's decision to issue the CID was extensive,[8] and eliminates any rationale for the discovery that Exxon desires. Should the Court conclude that it has personal jurisdiction, the matter is ripe, and venue is proper, it should nevertheless abstain under *Younger*.

## V.   THE ELEVENTH AMENDMENT BARS EXXON'S STATE LAW CLAIMS.

Also without merit is Exxon's contention that the Eleventh Amendment does not bar its state law claims because Attorney General Healey is acting outside her legal authority. Under *Pennhurst State School and Hospital v. Halderman*, the "narrow" *ultra vires* exception to the Eleventh Amendment bar against federal courts hearing state law claims against state officials applies *only if* the state official is acting "without any authority whatsoever." 465 U.S. 89, 101 n.11, 116 (1984). That is not the case here, where Attorney General Healey indisputably issued the CID pursuant to a specific provision of Massachusetts law, Mass. Gen. Laws ch. 93A, § 6(1).[9] *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 101 n.11 (citation omitted) ("[A]n *ultra vires* claim rests on 'the officer's lack of delegated power. A claim of error in the exercise of that power is therefore not sufficient.'"). Thus, the reasoning of *Pennhurst* applies with full force, and the Eleventh Amendment bars Exxon's state law claims.[10]

---

[8] *See* Mem. at 23-24 (citing exhibits to Exxon complaint, including Exxon internal documents).

[9] By contrast, in the principal case Exxon cites, the defendant state judges cited no state law authority for the challenged order, and the only statute mentioned in the record did not authorize the order on its face. *See Scham v. Dist. Courts Trying Criminal Cases*, 967 F. Supp. 230, 233 (S.D. Tex. 1997).

[10] The Fifth Circuit's decision in *Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 966 (5th Cir. 1993), is not to the contrary. In that case, the plaintiff's claims were not barred because the district court found that they were fundamentally federal in nature and that the Texas Attorney General was acting outside his official capacity. *Id* at 956-66. Here, Exxon's claims at issue are solely derived from state law and are asserted against Attorney General Healey *only* in her official capacity. FAC at ¶ 17. Notably, the Fifth Circuit went on to order dismissal of the *Word of Faith* lawsuit on abstention grounds. 986 F.2d at 969.

## VI. EXXON ALLEGES INSUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR RELIEF.

Exxon's effort to avoid dismissal under Rule 12(b)(6) consists of a list of allegations that, Exxon argues, render its "constitutional claims . . . plausible on their face" for the purposes of Rule 8(a)(2). Opp. at 23-25. Exxon states that "[t]hese are not legal conclusions; they are detailed factual allegations, supported by the facts from the public record, which are entitled to a presumption of truth." *Id.* at 25.

Exxon protests too much. Exxon's list is little more than another round of "naked assertions, devoid of further factual enhancement," incapable of supporting Exxon's extraordinary and outlandish claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). It is clear that each item is either a legal conclusion, misrepresentation, or unsupportable inference Exxon has labeled a "fact." Taking each in turn:

(1) That Attorney General Healey believes that society has a "moral obligation" to fight climate change—as do millions of people around the world—does not plausibly support the inference that she is part of a political conspiracy to "silence" Exxon. Opp. at 24. *See Twombly*, 550 U.S. at 557 (allegations must "plausibly suggest[] (not merely [be] consistent with)" claim to meet Rule 8(a)(2) threshold). Attorney General Healey did not "announce" at the press conference any "plan to control 'public perception'" nor any "finding" that Exxon is "liable" for anything. Opp. at 24. *See* FAC at App. 020-21 (Doc. No. 101-1). These are not so-called "facts"; they are Exxon spin.

(2) Exxon's supposition that third party advocates hoped that state attorneys general would "join them in a quest to silence political opponents"—itself a wild, unsupported allegation—is not evidence of any such supposed "quest," let alone that Attorney General Healey

8

is somehow involved and responsible. Opp. at 24. *See Twombly*, 550 U.S. at 556 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice."). That these same advocates allegedly hoped to "obtain documents for private law suits," Opp. at 24, is also irrelevant, since any documents the Attorney General obtains from Exxon under the CID are confidential and cannot legally be disclosed to third parties, Mass. Gen. Laws. ch. 93A, § 6(6).

(3) That a group of state attorneys general share "common legal interests" in "limiting climate change" and "ensuring the dissemination of accurate information about climate change," Opp. at 24; FAC at App. 195-214 (Doc. No. 101-5), does not plausibly support the allegation that those attorneys general are engaged in a conspiracy to abuse Exxon's constitutional rights. Rather, these are legitimate goals reflected in their respective state laws, *see, e.g.*, Global Warming Solutions Act, 2008 Mass. Acts ch. 298, and goals with which Exxon claims to agree. That the Attorneys General formalized those goals in a routine common interest agreement does not support that implausible allegation, either.[11]

(4) Exxon's assertion that "the Attorney General lacked a reasonable belief" to support the CID is not a fact—it is a legal conclusion without the support of any fact in the record. Opp. at 24. *See Twombly*, 550 U.S. at 555 (internal quotation marks omitted) ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation"). Simply repeating it does not make it true. Indeed, the attachments to Exxon's complaint show that the Attorney General and other authorities had ample basis for initiating investigations of Exxon. *See* Mem. at 23-24.

(5) Likewise, Exxon's allegation that the CID "regulates out-of-state speech," Opp. at 24, is a legal conclusion, unsupported by fact, *see Twombly*, 550 U.S. at 555, and one that is contradicted by black letter law.[12] Similarly, Exxon's allegations that the CID "is a product of

---

[11] It is worthy of note that the common interest agreement itself does not even mention this investigation.
[12] *See, e.g.*, *SEC v. McGoff*, 647 F.2d 185, 187-88 (D.C. Cir. 1981) ("[Administrative subpoenas] do not

9

this effort to control the public debate" and "target[] organizations which express views with which the Attorney General disagrees," Opp. at 24, are just assertions, not facts, and are not plausibly supported by the paltry facts in the First Amended Complaint, *see Iqbal*, 556 U.S. at 681 ("[T]he allegations are conclusory and not entitled to be assumed true.").

(6) Finally, Exxon's assertion that the rationale for Attorney General Healey's investigation is "in conflict with federal regulations," Opp. at 24, is plainly a legal conclusion, not a fact, and is, in any case, belied by *the SEC's investigation into the same conduct*. *See* Mem. at 24 n.20.

Clearing away Exxon's conclusory assertions, Exxon is left with three facts: (1) Attorney General Healey's attendance and remarks at a press conference, (2) the issuance of the CID, and (3) the Attorney General's entry into a routine common interest agreement.[13] A transcript of the remarks and the texts of the CID and agreement are before the Court. Taken together, without Exxon's conclusory flourishes, they simply do not "nudge" Exxon's claims that Attorney General Healey is biased against Exxon and engaged in a conspiracy to silence it "across the line from conceivable to plausible," and, as such, Exxon's First Amended Complaint must be dismissed. *Twombly*, 550 U.S. at 570.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in her principal brief supporting her Motion to Dismiss, the Attorney General respectfully requests that the Court dismiss Exxon's case with prejudice.

---

directly regulate the content, time, place, or manner of expression, nor do they directly regulate political associations.").

[13] And again, none of these events took place in Texas. *See* Sections I and III, *supra*.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS

By her attorneys:

| | |
|---|---|
| Richard Johnston (*pro hac vice*) | *s/ Douglas A. Cawley* |
| Chief Legal Counsel | Douglas A. Cawley |
| richard.johnston@state.ma.us | Lead Attorney |
| Melissa A. Hoffer (*pro hac vice*) | Texas State Bar No. 04035500 |
| Chief, Energy and Environment Bureau | dcawley@mckoolsmith.com |
| melissa.hoffer@state.ma.us | Richard A. Kamprath |
| Christophe G. Courchesne (*pro hac vice*) | Texas State Bar No. 24078767 |
| Chief, Environmental Protection Division | rkamprath@mckoolsmith.com |
| christophe.courchesne@state.ma.us | MCKOOL SMITH, P.C. |
| I. Andrew Goldberg (*pro hac vice*) | 300 Crescent Court, Suite 1500 |
| andy.goldberg@state.ma.us | Dallas, Texas 75201 |
| Peter C. Mulcahy (*pro hac vice*) | (214) 978-4000 |
| peter.mulcahy@state.ma.us | Fax (214) 978-4044 |
| Assistant Attorneys General | |
| OFFICE OF THE ATTORNEY GENERAL | |
| One Ashburton Place, 18th Floor | |
| Boston, MA 02108 | |
| (617) 727-2200 | |

Dated: January 3, 2017

**CERTIFICATE OF SERVICE**

　　The undersigned hereby certifies that on January 3, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

　　　　　　　　　　　　　　　　　　　　*s/ Douglas. A. Cawley*
　　　　　　　　　　　　　　　　　　　　Douglas A. Cawley

11