IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. 4:16-CV-469-K |
| ERIC TRADD SCHNEIDERMAN, Attorney General of New York, in his official capacity, and MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity, | § § § § § § § | |
| Defendants. | § § | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE NEW YORK ATTORNEY GENERAL'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.   EXXON'S PRESENCE IN TEXAS DOES NOT GIVE THIS COURT PERSONAL JURISDICTION OVER THE NYOAG ...................................................................................2

        A.  Texas's Long-Arm Statute Does Not Extend to the NYOAG. ......................................2

        B.  Due Process Bars the Exercise of Personal Jurisdiction Over the NYOAG. ................2

    II.  VENUE IN THIS DISTRICT IS IMPROPER .....................................................................4

    III.  EXXON HAS NOT DEMONSTRATED THE RIPENESS OF ITS CLAIMS ....................4

    IV.  THIS COURT SHOULD ABSTAIN FROM INTERFERING WITH THE ONGOING NEW YORK SUBPOENA ENFORCEMENT PROCEEDING ............................................6

    V.  EXXON FAILS TO PLEAD A PLAUSIBLE CLAIM UNDER 42 U.S.C. § 1983 .............7

        A.  The Amended Complaint Fails to State a First Amendment Claim..............................7

        B.  Exxon's Remaining Claims Are Meritless.....................................................................9

CONCLUSION .............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                        **Page(s)**

*21 Turtle Creek Square, Ltd. v. N.Y. State Teachers' Ret. Sys.*,
    425 F.2d 1366 (5th Cir. 1970) ............................................................................................. 2

*Allen v. Cisneros*,
    815 F.3d 239 (5th Cir. 2016) ............................................................................................... 8

*Allred v. Moore & Peterson*,
    117 F.3d 278 (5th Cir. 1997) ........................................................................................... 3, 4

*Bd. of Cnty. Comm'rs v. Amarillo Hosp. Dist.*,
    835 S.W.2d 115 (Tex. App. 1992) ...................................................................................... 2

*Bishop v. State Bar of Tex.*,
    736 F.2d 292 (5th Cir. 1984) ............................................................................................... 6

*Clancey v. City of Coll. Station*,
    2010 WL 1268083 (S.D. Tex. 2010) ................................................................................... 9

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982) .......................................................................................................... 10

*FEC v. Lance*,
    635 F.2d 1132 (5th Cir. 1981) (en banc) ....................................................................... 7, 10

*FTC v. Ken Roberts Co.*,
    276 F.3d 583 (D.C. Cir. 2001) .......................................................................................... 10

*FTC v. Texaco, Inc.*,
    555 F.2d 862 (D.C. Cir. 1977) (en banc) ...................................................................... 7, 10

*Fund for La.'s Future v. La. Bd. of Ethics*,
    2014 WL 1514234 (E.D. La. 2014) ..................................................................................... 4

*Gobeille v. Liberty Mut. Ins. Co.*,
    136 S. Ct. 936 (2016) ........................................................................................................ 10

*Google Inc. v. Hood*,
    822 F.3d 212 (5th Cir. 2016) ..................................................................................... 3, 5, 8

*Hartman v. Moore*,
    547 U.S. 250 (2006) ............................................................................................................ 7

*Healy v. Beer Inst.*,
    491 U.S. 324 (1989) .......................................................................................................... 10

*Huffman v. Pursue, Ltd.*,
    420 U.S. 592 (1975) .................................................................................................. 7

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
    538 U.S. 600 (2003) .................................................................................................. 8

*In re FDIC*,
    58 F.3d 1055 (5th Cir. 1995) ................................................................................... 9

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C.
    § 1461 et seq.*, 706 F. Supp. 2d 11 (D.D.C. 2009) .................................................. 9

*In re Office of Inspector Gen.*,
    933 F.2d 276 (5th Cir. 1991) ................................................................................... 5

*Juidice v. Vail*,
    430 U.S. 327 (1977) .................................................................................................. 6

*Leroy v. Great W. United Corp.*,
    443 U.S. 173 (1979) .................................................................................................. 4

*Lewis v. Fresne*,
    252 F.3d 352 (5th Cir. 2001) ................................................................................... 3

*O'Keefe v. Chisholm*,
    769 F.3d 936 (7th Cir. 2014) ................................................................................... 7

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .................................................................................................. 7

*Okla. Press Publ'g Co. v. Walling*,
    327 U.S. 186 (1946) .................................................................................................. 7

*Papasan v. Allain*,
    478 U.S. 265 (1986) ................................................................................................ 10

*People v. D'Amato*,
    12 A.D.2d 439 (1st Dep't 1961) .............................................................................. 5

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) .................................................................................................. 8

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) .................................................................................................. 9

*Roe v. Abortion Abolition Soc.*,
    811 F.2d 931 (5th Cir. 1987) ................................................................................. 10

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ................................................................................................8

*Shelby County v. Holder*,
    133 S. Ct. 2612 (2013) ............................................................................................3

*SPGGC, LLC v. Blumenthal*,
    505 F.3d 183 (2d Cir. 2007) ..................................................................................10

*Stroman Realty, Inc. v. Wercinski*,
    513 F.3d 476 (5th Cir. 2008) ...............................................................................2, 3

*Tex. Ass'n of Bus. v. Earle*,
    388 F.3d 515 (5th Cir. 2004) ...................................................................................6

*United States v. Zadeh*,
    820 F.3d 746 (5th Cir. 2016) ...................................................................................9

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ............................................................................................3

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ...................................................................................3

*Wilson v. Thompson*,
    593 F.2d 1375 (5th Cir. 1979) .................................................................................6

*Wyatt v. Kaplan*,
    686 F.2d 276 (5th Cir. 1982) ...................................................................................4

*Younger v. Harris*,
    401 U.S 37 (1971) ...................................................................................................6

**Federal Statutes**

28 U.S.C. § 1391 ................................................................................................................4

42 U.S.C. § 1985 ..............................................................................................................10

**State Statutes**

N.Y. Gen. Bus. Law § 352 .................................................................................................5

Tex. Civ. Prac. & Rem. Code
    § 17.041 ...................................................................................................................2
    § 17.042 ...................................................................................................................2

**Miscellaneous Authorities**

Br. for Pl.-Appellee, *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016)
    (No. 15-60205), 2015 WL 4592163 ........................................................................... 5

**PRELIMINARY STATEMENT**

In its opening brief in support of dismissal, the NYOAG established that controlling authority bars Exxon's claims against the NYOAG on a number of different grounds.[1] Among these fundamental defects are the absence of personal jurisdiction over the NYOAG in Texas, the lack of any alleged injury to Exxon that is ripe for federal court review, the absence of venue in this judicial district, and the pendency of a state court Subpoena enforcement proceeding warranting *Younger* abstention. The NYOAG's opening brief also demonstrated that Exxon's allegations of illegal motive, even if taken as true, cannot transform objectively authorized law-enforcement conduct into a violation of the First Amendment—and that the Amended Complaint in any event fails to identify the viewpoint or statements of Exxon purportedly being targeted for suppression. In addition, the NYOAG showed that Exxon's claims of bias cannot be reconciled with New York Attorney General Schneiderman's repeated public promises not to prejudge the investigation.

In opposition, Exxon fails to distinguish any of this settled law or even to address many of the NYOAG's arguments. Instead, Exxon demands that this Court accept its conclusory assertions and naked contentions as true, including its unsupported allegation that the NYOAG's Subpoena is an illegally motivated instrument of harm. Meanwhile, Exxon's counsel recently gave the New York Supreme Court Justice supervising Exxon's Subpoena compliance (the Honorable Barry R. Ostrager) a vastly different "big picture": that Exxon does not dispute the good faith of the NYOAG's investigation or the constitutionality of the Subpoena, and will complete the production of all responsive material by January 31, 2017. *See* N.Y. App. 612-13 (Dec. 9, 2016 Hr'g Tr., Ex. 47 to Supplemental Appendix). Exxon's conduct in the New York

---

[1] The NYOAG's opening brief is cited herein as "Br." and Exxon's opposition brief as "Opp." Other undefined capitalized terms have the meanings given in the NYOAG's opening brief.

court—for which Exxon offers no semblance of an explanation here—calls into serious question Exxon's basis for maintaining this federal action. For these reasons, and for the reasons set forth below and in the NYOAG's other filings, this action must be dismissed.

## **ARGUMENT**

I. **EXXON'S PRESENCE IN TEXAS DOES NOT GIVE THIS COURT PERSONAL JURISDICTION OVER THE NYOAG**

   A. **Texas's Long-Arm Statute Does Not Extend to the NYOAG.**

The Fifth Circuit has noted the lack of any "obvious rationale" for construing Texas's long-arm statute to extend to § 1983 claims brought against other States' officials in their official capacities. *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482-83 (5th Cir. 2008) (analyzing Tex. Civ. Prac. & Rem. Code §§ 17.041-17.042). And Exxon offers no justification for "twisting the ordinary meaning of" the statute's terms in this way. *Id.* at 483. Instead, Exxon relies on two inapposite contractual cases.[2] In the absence of any statutory basis for long-arm jurisdiction over the NYOAG, dismissal of this action is required.

   B. **Due Process Bars the Exercise of Personal Jurisdiction Over the NYOAG.**

Exxon's argument for personal jurisdiction also fails because of the NYOAG's lack of tangible contacts with Texas. *Stroman* makes clear that due process principles bar a Texas court from exercising personal jurisdiction over an official from another State who is being sued in an official capacity under § 1983 for attempting to enforce that State's laws against a Texas-based company. *See* 513 F.3d at 483-89. *Stroman* enforced this rule even where a defendant's communications into Texas directly gave rise to the plaintiff's § 1983 claim of unlawful extraterritorial regulation. *See id.* at 487 (issuance of cease-and-desist order). Here, by contrast,

---

[2] *See 21 Turtle Creek Square, Ltd. v. N.Y. State Teachers' Ret. Sys.*, 425 F.2d 1366, 1367 (5th Cir. 1970) (suit against New York pension fund that financed project in Dallas); *Bd. of Cnty. Comm'rs v. Amarillo Hosp. Dist.*, 835 S.W.2d 115 (Tex. App. 1992) (suit against Oklahoma municipal subdivision); *see also* Tex. Civ. Prac. & Rem. Code §§ 17.041(2) & 17.042(1) (defining "nonresident" to include "corporation" that contracts with Texas resident).

the NYOAG's only alleged contact with Texas was the service of a non-self-executing Subpoena by email to a person in Texas (*see* Am. Cmpl. ¶ 19), which caused no actionable injury as a matter of law, *see Google Inc. v. Hood*, 822 F.3d 212, 226 (5th Cir. 2016). Indeed, Exxon itself argues that its claims depend on the NYOAG's filing of a New York state court proceeding to enforce the Subpoena. *See* Opp. at 13. Exxon's claims are thus so detached from "service of process" as to render the NYOAG's alleged contact with Texas trivial. *See Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997); *id.* at 285 (service of process alone, even if "for purportedly improper motives," could not sustain personal jurisdiction in recipient's location).[3]

Exxon's conclusory assertion that the NYOAG has "purposefully directed tortious conduct" at Texas with "the effect of causing" injury here (Opp. at 5) cannot substitute for the required minimum contacts. Even where "an intentional tort" is concerned, personal jurisdiction is not created solely by "alleged harm to a Texas resident." *Stroman*, 513 F.3d at 486; *accord Walden v. Fiore*, 134 S. Ct. 1115, 1124 (2014) ("knowledge" of plaintiff's location and prospect of "foreseeable harm" in forum do not give rise to personal jurisdiction there for constitutional tort claim).[4] And here, much like in *Stroman*, the NYOAG is not "expressly aiming" any "actions at Texas" by pursuing violations of New York law in New York. 513 F.3d at 486 (quotation marks and alterations omitted). The NYOAG is investigating the accuracy of representations made to New York investors and consumers by a multinational corporation traded on the New York Stock Exchange. Forcing an elected New York official to answer in Texas for efforts to enforce New York law on behalf of New York residents ignores "that our Nation 'was and is a union of States, equal in power, dignity and authority.'" *Shelby County v.*

---

[3] The lack of a close link between any in-forum contact and this litigation distinguishes this case from Exxon's proffered cases, which involve communications into Texas alleged in themselves to be fraudulent. *See Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

[4] Indeed, Exxon's dependence on the alleged perpetration of "constitutional torts" by the NYOAG (Opp. at 1, 5, 9, 10, 12) mistakes personal jurisdiction for "the merits of the case," *Stroman*, 513 F.3d at 489.

3

*Holder*, 133 S. Ct. 2612, 2623 (2013) (quoting *Coyle v. Smith*, 221 U.S. 559, 567 (1911)).[5]

## II. VENUE IN THIS DISTRICT IS IMPROPER

Exxon's defense of venue disregards the company's own description of why this case was filed here. *See* Opp. at 13-14. According to Exxon's counsel, this district is "the only place" where Exxon "can get" multiple Attorneys General, "rather than fight them separately." N.Y. App. 173; *see also* N.Y. App. 176. But a plaintiff's convenience in being able to sue multiple out-of-state officials at once is not sufficient to "justify its choice of forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979).

Exxon's alternative claim that the Subpoena is "impinging" on the company's speech in Texas (Opp. at 14) simply repackages its flawed personal-jurisdiction analysis into an equally flawed theory of venue. Any effect on Exxon's speech cannot be a "substantial part of the events or omissions giving rise to [its] claim[s]," 28 U.S.C. § 1391(b)(2), because Exxon insists that those claims do not "require that a *curtailment* of speech be established."[6] Instead, according to Exxon, the claims rest on the NYOAG's alleged "ulterior political objectives." Opp. at 4; *see, e.g.*, Am. Cmpl. ¶¶ 11, 27, 38, 53, 80, 88, 92, 95, 99, 107, 110, 128. If such objectives existed and were relevant to a claim, they could in any event have arisen only in New York. *See Allred*, 117 F.3d at 285. The lone decision Exxon cites for support is not to the contrary. *See Fund for La.'s Future v. La. Bd. of Ethics*, 2014 WL 1514234, at *12 (E.D. La. 2014) (upholding venue in district where state statute allegedly barred in-state donor from giving money).

## III. EXXON HAS NOT DEMONSTRATED THE RIPENESS OF ITS CLAIMS

As shown in the NYOAG's opening brief (at 12-13), and as Exxon does not dispute, Exxon's objections to the Subpoena could be raised as defenses in an action to enforce the

---

[5] Because Exxon makes no plausible case for personal jurisdiction, discovery on the point "would serve no purpose." *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).
[6] Reply in Supp. of Exxon Mobil Corp.'s Mot. for Prelim. Inj., ECF No. 57, at 10 (emphasis added).

Subpoena. An overlapping federal lawsuit asserting those objections is thus foreclosed. *See Google*, 822 F.3d at 224-26; *In re Office of Inspector Gen.,* 933 F.2d 276, 277 (5th Cir. 1991).

Exxon's attempts to distinguish this controlling authority are baseless. That the NYOAG has moved to enforce the Subpoena (*see* Opp. at 13) does not inflict injury allowing a federal action. As *Google* unambiguously holds, a federal action is barred where "the same challenges raised in the federal suit could be litigated in state court." 822 F.3d at 226; *see id.* at 225 n.10 (refusing to "presume" that state tribunal "would be insensitive" to First Amendment concerns or would blindly enforce a subpoena "issued for an improper purpose"). Contrary to Exxon's assertion (Opp. at 13), the principle articulated in *Google* does not impose an "exhaustion requirement" on certain § 1983 claims. Indeed, *Google* considered—and necessarily rejected— the very argument that remitting a subpoena recipient to available state court procedures would impermissibly impose an exhaustion requirement. *See* Br. for Pl.-Appellee, *Google, Inc. v. Hood* (No. 15-60205), 2015 WL 4592163, at *55. *Google* simply dictates that, because Exxon does not face any current consequence for resisting the Subpoena, Exxon has no ripe § 1983 claim.

Exxon is also wrong in claiming that—unlike the subpoena at issue in *Google*—the NYOAG's Subpoena is self-executing because a recipient's failure to comply "without reasonable cause" can be penalized as a misdemeanor. N.Y. Gen. Bus. Law § 352(4); *see* Opp. at 13 n.24. A self-executing subpoena is one for which "the issuing agency" can "*itself* sanction non-compliance." *Google*, 822 F.3d at 224 (emphasis added). Here, the NYOAG cannot levy criminal penalties for non-compliance. Only a judge may do so, after available defenses have been "litigated in state court." *Id.* at 226; *see People v. D'Amato*, 12 A.D.2d 439, 443 (1st Dep't 1961). At any rate, Exxon avers that it is fully complying with the Subpoena in good faith, precluding the prospect of any such penalty. *See* Am. Cmpl. ¶ 74; N.Y. App. 230.

5

Finally, as explained more fully below, Exxon's repeated failure to raise any of its objections before the New York court supervising Subpoena compliance negates any claim of current or imminent injury. N.Y. App. 230, 613; *see Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (compliance with subpoena moots any case or controversy on that issue).

## IV. THIS COURT SHOULD ABSTAIN FROM INTERFERING WITH THE ONGOING NEW YORK SUBPOENA ENFORCEMENT PROCEEDING

Exxon concedes that the proceeding in New York to enforce the Subpoena triggers *Younger* abstention and that any of Exxon's objections to compliance may be fully and fairly aired in that proceeding. Exxon asserts, however, that its allegation of "bad faith" justifies an exception to *Younger* abstention—along with invasive discovery into the NYOAG's investigation. Opp. at 14-17. As explained in the NYOAG's opening brief (at 17), the "bad faith" exception to *Younger* abstention exists to forestall "constitutional injury done by bad faith proceedings themselves." *Bishop v. State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984); *see also Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979). Here, Exxon fails to allege any bad faith on the part of the New York Justice overseeing the proceeding. *See Juidice v. Vail*, 430 U.S. 327, 338 (1977) (reversing denial of abstention in part for this reason). Although Exxon claims that no such allegation is necessary (Opp. at 15 n.25), the presence of a fair and adequate state forum is one of the central reasons for applying the "longstanding public policy against federal court interference with state court proceedings," *Younger v. Harris*, 401 U.S 37, 43 (1971).

Nor does Exxon endeavor to justify its failure to raise any of its constitutional arguments in the New York Subpoena compliance proceeding. Exxon indisputably has acquiesced from the start in that proceeding, which provides a full and fair forum for any objections. Yet instead of seeking a remedy in that forum, Exxon has offered assurances that it "is fully complying with its

6

obligations" under the Subpoena and will soon complete the production. N.Y. App. 230, 236.[7]

Requiring a showing of "substantial and immediate irreparable injury" to avoid *Younger* abstention respects "the basic requisites of the issuance of equitable relief." *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 612 (1975). The question is "whether the injury would be irreparable if the federal court were to stay its hand." *O'Keefe v. Chisholm*, 769 F.3d 936, 939 (7th Cir. 2014). Here, for the reasons set forth above, Exxon cannot demonstrate any injury whatsoever. Exxon's blanket denial of wrongdoing (Opp. at 16) cannot establish that a mere investigation by the NYOAG inflicts irreparable harm. At the subpoena stage, the only pertinent question is "whether evidence relevant to the violation, whatever the obligation's character, can be drawn forth." *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 211 (1946). Defenses to "hypothetical charges" may not limit an agency's "right to determine the facts." *FTC v. Texaco, Inc.*, 555 F.2d 862, 874 (D.C. Cir. 1977) (en banc); *accord FEC v. Lance*, 635 F.2d 1132, 1138-39 (5th Cir. 1981) (en banc). Nor do they nullify the case for abstention here. Discovery is thus unnecessary to resolve the question of *Younger* abstention, which must be decided *after* all other threshold issues.[8] *See O'Shea*, 414 U.S. at 500 (cautioning against intervention in state proceedings solely "to establish the basis for future intervention").

## V. EXXON FAILS TO PLEAD A PLAUSIBLE CLAIM UNDER 42 U.S.C. § 1983

### A. The Amended Complaint Fails to State a First Amendment Claim.

As established in the NYOAG's opening brief (at 18-20), Exxon's sparsely pleaded theory of improper motive fails to state a plausible § 1983 claim under the First Amendment. *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 256-58 (2006). Exxon labels *Hartman* inapposite on

---

[7] This course of conduct stands in stark contrast to Exxon's theory of injury on its prior motion for a preliminary injunction. *See* Mem. of Law in Supp. of Pl. Exxon Mobil Corp.'s Mot. for Prelim. Inj., ECF No. 9, at 24-25 (claiming injury from being forced to choose between "comply[ing] with the [Massachusetts] CID" or else "risk[ing] an enforcement action" on the CID, either of which would cause "the same constitutional harms").
[8] *See* Reply Mem. of Law in Support of NYOAG's Mot. to Quash Discovery, ECF No. 150, at 3-5.

the ground that it involved a "retaliatory prosecution." Opp. at 19 n.36. Yet as in *Hartman*, Exxon here claims that the NYOAG has misused the power of a "prosecutor" in an alleged effort to silence or deter speech. Opp. at 19, 21. Under prevailing law, an objective justification for law-enforcement activity "take[s] primacy over" a claim of selective targeting based on protected speech. *Allen v. Cisneros*, 815 F.3d 239, 245-46 (5th Cir. 2016) (quotation marks omitted). And Exxon's speculation that any enforcement claims would be "time-barred and preempted" (Opp. at 18) is entirely improper now, before any enforcement action even has been brought, *see Google*, 822 F.3d at 227; *infra* at 10.

Exxon misses the mark in asserting that its First Amendment claims must survive because the Amended Complaint does not describe any fraud by Exxon. Opp. at 17-18. Whether Exxon has committed fraud is a matter to be determined in the course of the NYOAG's investigation and any enforcement action that may result. At this juncture, the only question is whether Exxon has pleaded plausible First Amendment grounds for prohibiting such an investigation. The answer is plainly no, in light of the NYOAG's showing (Br. at 2-5) that the Subpoena seeks documents relevant to potential fraud—a category of speech for which, as Exxon concedes, a court could properly "impose liability" (Opp. at 16 n.30). *See, e.g.*, *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 617 (2003) (reaffirming that First Amendment clearly permits "fraud actions trained on representations made in individual cases").

Exxon also misplaces its reliance on decisions applying heightened scrutiny to direct content-based restrictions on speech,[9] especially given Exxon's own admission that the Subpoena does not "directly regulate[ ]" the content of its expression. Opp. at 19. Nor has Exxon set forth a plausible case that its speech is being targeted, much less chilled. Indeed, even after

---

[9] *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 830 (1995) (denial of funding for student newspaper); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992) (ban on hate speech).

the NYOAG asked Exxon to identify the specific viewpoint or statements (besides possibly misleading statements) being targeted for suppression (Br. at 19), Exxon *still* has refused to do so (Opp. at 19).[10] That is not how notice pleading works. *See Clancey v. City of Coll. Station*, 2010 WL 1268083, at *6 (S.D. Tex. 2010) (dismissing § 1983 First Amendment claim where plaintiff alleged only that targeted speech was "of public concern," without offering detail). In any event, should Exxon believe that the Subpoena "burdens" protected speech (Opp. at 19), it may object to disclosing specific information, as it has already done (Am. Cmpl. ¶ 67). *See In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F. Supp. 2d 11, 17 (D.D.C. 2009) (requiring showing of need for names of purchasers of explicit films).

### B. Exxon's Remaining Claims Are Meritless.

Exxon's remaining claims likewise fail as a matter of law. *See* Opp. at 20-25.

*First*, Exxon's demand to enjoin the Subpoena as calling for an unreasonable search in violation of the Fourth Amendment (Opp. at 20) collapses under Exxon's insistence that its lawyers already "have searched all the places [they] think are reasonably likely to have responsive documents" (N.Y. App. 604). If that is true, then there are no "constructive" searches left to prohibit.[11] *See United States v. Zadeh*, 820 F.3d 746, 756 (5th Cir. 2016).

*Second*, Exxon points to no factual allegations meeting its "particularly demanding" burden of showing that it has been selectively targeted by law enforcement based on political concerns. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 472 (1999); *see also In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995). In place of the necessary facts, Exxon seeks to rely on a "presumption" that its claims have merit. Opp. at 18 n.33. But no such presumption attaches to Exxon's naked assertion that the NYOAG lacks grounds for suspecting legal

---

[10] The Amended Complaint paragraphs that Exxon cites (¶¶ 1-14, 110) offer no answer.
[11] There is a dispute pending before the New York court regarding whether any other locations exist where responsive documents may be found. Argument on this issue, among others, is set for Monday, January 9, 2017.

9

violations. *See* Opp. at 20. And any claim of bias for political gain is conclusively undermined by AG Schneiderman's public promises *not* to "prejudge" the investigation. N.Y. App. 74, 100.

*Third*, there is no support for Exxon's theory that a State violates the Dormant Commerce Clause simply by enforcing state law against conduct undertaken "out-of-state." Opp. at 23. If that were so, the Commerce Clause would invalidate (or severely constrain) "almost every state consumer protection law." *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 194 (2d Cir. 2007). This category would include Texas laws enforced by the Texas Attorney General on behalf of Texas residents against companies based elsewhere. The NYOAG here is acting on behalf of *in-state* investors and consumers, which the Commerce Clause allows. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982); *see also Healy v. Beer Inst.*, 491 U.S. 324, 332 (1989).

*Fourth*, Exxon's claim that charges in any enforcement complaint would be preempted by federal accounting standards is "unripe" as against a mere subpoena. *Lance*, 635 F.2d at 1139; *see also Texaco*, 555 F.2d at 873-74 (refusing to conclude "in the pre-complaint stage" that "only proved reserves" could be relevant to agency's inquiry). Exxon does not and cannot allege that federal law preempts the source of the NYOAG's investigative authority.[12]

*Fifth*, the Eleventh Amendment bars hearing Exxon's state law claims. Contrary to Exxon's argument (Opp. at 25), there exists no further exception for *ultra vires* activity beyond the *Ex parte Young* doctrine, *see Papasan v. Allain*, 478 U.S. 265, 277-78 (1986).[13]

## CONCLUSION

For the foregoing reasons, as well as those set forth in the NYOAG's opening brief, this Court should dismiss all of the Amended Complaint's claims against the NYOAG.

---

[12] *Compare Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 945 (2016) (reporting requirement preempted), *with FTC v. Ken Roberts Co.*, 276 F.3d 583, 593 (D.C. Cir. 2001) (investigative authority not preempted).
[13] The failure of Exxon's substantive claims also dooms the claim of conspiracy under 42 U.S.C. § 1985, which does "not itself provide any substantive rights." *Roe v. Abortion Abolition Soc.*, 811 F.2d 931, 933 (5th Cir. 1987).

        Respectfully submitted,

        Eric T. Schneiderman
        Attorney General of New York

        By his attorneys:

        *s/ Pete Marketos*

| | |
|---|---|
| Jason Brown\* | Pete Marketos |
| *Chief Deputy Attorney General* | Lead Attorney |
| Roderick Arz (pro hac vice) | Texas State Bar No. 24013101 |
| *Assistant Attorney General* | pete.marketos@rgmfirm.com |
| Eric Del Pozo (pro hac vice) | Tyler J. Bexley |
| *Assistant Solicitor General* | Texas State Bar No. 24073923 |
| NEW YORK STATE OFFICE OF THE | tyler.bexley@rgmfirm.com |
| ATTORNEY GENERAL | REESE GORDON MARKETOS LLP |
| 120 Broadway, 25th Floor | 750 N. Saint Paul St. Suite 610 |
| New York, NY 10271 | Dallas, TX 75201 |
| 212-416-8085 | (214) 382-9810 |
| | Fax: (214) 501-0731 |
| \*pro hac vice application pending | |
| | Jeffrey M. Tillotson |
| | Texas Bar No. 20039200 |
| | TILLOTSON LAW FIRM |
| | 750 N. Saint Paul St. Suite 610 |
| | Dallas, TX 75201 |
| | Telephone: (214) 382-3041 |
| | Fax: (214) 501-0731 |

Dated: January 6, 2017

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that, on January 6, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

        *s/ Pete Marketos*
        Pete Marketos

11