IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| EXXON MOBIL CORPORATION, | § § § | |
| Plaintiff, | § | |
| v. | § § § | NO. 4:16-CV-469-K |
| ERIC TRADD SCHNEIDERMAN, Attorney General of New York, in his official capacity, and MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity. | § § § § § § § | |
| Defendants. | § | |

**SUPPLEMENTAL APPENDIX IN FURTHER SUPPORT OF
DEFENDANT ERIC T. SCHNEIDERMAN'S MOTION TO DISMISS
EXXONMOBIL'S FIRST AMENDED COMPLAINT**

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| N/A | Declaration of Tyler J. Bexley | iii |
| 47 | Transcript of a December 9, 2016, hearing before the New York Supreme Court for New York County in *New York v. PwC and Exxon* [Doc. No. 110], available at https://iapps.courts.state.ny.us/webcivil/FCASMain | 593-621 |

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of New York

By his attorneys:

  s/ *Pete Marketos*

Jason Brown*                          Pete Marketos
*Chief Deputy Attorney General*        Lead Attorney
Roderick Arz (pro hac vice)            Texas State Bar No. 24013101
*Assistant Attorney General*           pete.marketos@rgmfirm.com
Eric Del Pozo (pro hac vice)           Tyler J. Bexley
*Assistant Solicitor General*          Texas State Bar No. 24073923
NEW YORK STATE OFFICE OF THE          tyler.bexley@rgmfirm.com
ATTORNEY GENERAL                       REESE GORDON MARKETOS LLP
120 Broadway, 25th Floor               750 N. Saint Paul St. Suite 610
New York, NY 10271                     Dallas, TX 75201
212-416-8085                           (214) 382-9810
                                       Fax: (214) 501-0731

*pro hac vice application pending       Jeffrey M. Tillotson
                                       Texas Bar No. 20039200
                                       TILLOTSON LAW FIRM
                                       750 N. Saint Paul St. Suite 610
                                       Dallas, TX 75201
                                       Telephone:  (214) 382-3041
                                       Fax:  (214) 501-0731

Dated: January 6, 2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on January 6, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*s/ Pete Marketos*
Pete Marketos

<u>DECLARATION OF TYLER J. BEXLEY</u>

I, Tyler J. Bexley, declare as follows:

1.      My name is Tyler J. Bexley.   I am admitted to practice in this Court and am an associate at Reese Gordon Marketos, LLP, which is counsel-of-record for Eric T. Schneiderman, Attorney General of New York, in his official capacity, in this case.  I am over 18 years of age and am fully competent in all respects to make this declaration.  Based on my personal knowledge, my review of relevant documents, and my discussion with colleagues, I have knowledge of the facts stated herein, and each of them is true and correct.

2.      I submit this supplemental declaration in further support of the Attorney General of New York's Motion to Dismiss Plaintiff's First Amended Complaint.

3.      Attached to this declaration as Exhibit 47 is a true and accurate copy of the Transcript of a December 9, 2016 hearing before the New York Supreme Court for New York County in *New York v. PwC and Exxon* [Doc. No. 96], available at https://iapps.courts.state.ny.us/webcivil/FCASMain.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 6, 2017.

Tyler J. Bexley

# Exhibit 47

1

```
                                                          1

 1

 2    SUPREME COURT OF THE STATE OF NEW YORK
      NEW YORK COUNTY  - CIVIL TERM - PART  61
 3    -----------------------------------------------X
      In the Matter of the Application of the

 4
      PEOPLE OF THE STATE OF NEW YORK, by
 5    ERIC T. SCHNEIDERMAN,
      Attorney General of the State of New York,

 6
                     PETITIONER,
 7    For an order pursuant to CPLR 2308(b) to compel
      Compliance with a subpoena issued by the Attorney
 8    General

 9              -against-

10    PRICE WATERHOUSE COOPERS LLP and
      EXXON MOBIL CORPORATION,

11
                     RESPONDANTS
12    -----------------------------------------------X

13    Index No. 451962/16          60 Centre Street
      Proceedings                  New York, New York
14                                 December 9, 2016

15    B E F O R E:

16        HONORABLE BARRY R. OSTRAGER,
      Justice

17

18    A P P E A R A N C E S:

19        STATE OF NEW YORK
          OFFICE OF THE ATTORNEY GENERAL
20        ERIC T. SCHNEIDERMAN
          Attorneys for the Petitioner
21        120 Broadway
          New York, New York 10271
22             BY:  MANISHA M. SHETH, ESQ.
                    JONATHAN C. ZWEIG, ESQ.
23                  KATHERINE C. MILGRAM, ESQ.

24
      -appearances continued on following page-
25

26


                      AB
```

1                           Proceedings

2     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
      Attorneys for the Respondents
3     Four Times Square
      New York, New York 10036
4          BY:  DAVID HEISTER,  ESQ.
                JOCELYN E. STRAUBER, ESQ.
5
      PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
6     Attorneys for  Respondents
      1285 Avenue of the Americas
7     New York, New York 10019
           BY:  THEODORE V. WELLS, ESQ.
8               DANIEL J. TOAL, ESQ.
                NORA AHMED, ESQ.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                  Angela Bonello, RPR, Sr. Court Reporter

N.Y. App 595

3

1    Proceedings

2    THE COURT: Presently before the Court is a

3    discovery dispute relating to the compliance by Exxon with

4    the subpoena issued by the New York Attorney General.  And

5    in a letter dated December 1, 2016, the Office of the

6    Attorney General requested the Court to order Exxon to, one;

7    insure "all sources of discoverable information identified

8    in search"  including adding document custodians,

9    supplemental search terms and searching shared folders and

10   data bases.  Two; address the deficiencies identified by OAG

11   as outlined above.  Three; complete its production by

12   January 31, 2017, a schedule that was set forth in footnote

13   one, with weekly rolling productions followed by privileged

14   logs for each production two weeks later.  Four; produce

15   un-redacted copies of documents previously redacted on

16   responsive grounds.

17        Now, in response to the December 1st letter, Exxon

18   notes that it's produced 1.4 million pages of responsive

19   documents, its committed to producing all documents it

20   undertook to produce, based on the stipulated search terms

21   from the custodians previously identified no later than

22   January 31, 2017, and that it's going to complete production

23   of documents responsive to a number of the requests by

24   December 31, 2016.  And Exxon and the New York A.G. have

25   agreed that no further production is required regarding the

26   requests 1, 2, 6 and 7.

Angela Bonello, RPR, Sr. Court Reporter

N.Y. App 596

Proceedings

Now, with respect to the New York A.G.'s request that Exxon make rolling productions weekly followed by privileged logs for each production two weeks later, that hasn't been the practice of the parties for the year long period, during which the document production has been ongoing and I think that's an unreasonable burden to impose on Exxon, although perhaps the parties can agree to something other than quarterly productions of privileged logs.

I'll hear from the New York A.G., but the December 1st letter doesn't identify the additional document custodians that the New York A.G. wants to have documents search from.  The New York A.G. hasn't indicated what additional search terms it wants Exxon to utilize and Exxon claims that it's already searching shared folders and data bases, so short of having a hearing with witnesses with respect to what Exxon is doing and it's agreed to meet and confer process, I need to understand what it is that the Court can order at this point in time.

MS. SHETH:    Thank you, Your Honor.

Your Honor, I think what would be helpful is we prepared a presentation for the Court that will help the Court understand what is deficient about Exxon's production, both from a substantive document and categories of document perspective, but also with regard to the process.  And with

Angela Bonello, RPR, Sr. Court Reporter

1                          Proceedings

2      regard to Your Honor's last question with regard to the

3      relief we're seeking, we plan to address that as well.   So

4      if I may hand up a copy of the presentation, and we have

5      copies for counsel, as well.

6                  THE COURT:   All right.

7                  MS. SHETH:   Now, Your Honor, I think the question

8      before the Court is why is what Exxon is doing unreasonable.

9      All right, they're telling the Court we've made a reasonable

10     production of documents, what is the A.G. complaining about;

11     and let me address that.

12             First, we had identified for Exxon and its counsel,

13     specific categories of documents that are missing or

14     incomplete in Exxon's production.   And if Your Honor turns

15     to slide one of our presentation, we have listed these nine

16     categories of documents and they're outlined in our letter

17     of December 1st, to Your Honor.   These are categories that

18     are missing and incomplete from Exxon's production.

19             Now, rather than going back to their client and

20     finding these categories of documents, Exxon has simply said

21     we are not going to address these deficiencies until after

22     our production is complete, so, New York A.G., wait until

23     the end of December, wait until the end of January and then

24     we'll go and try to find these documents.   That is not

25     appropriate.

26             Second; Exxon has attempted to shift the burden of

                    Angela Bonello, RPR, Sr. Court Reporter

6

|    |                                                                                    |
|----|------------------------------------------------------------------------------------|
| 1  | Proceedings                                                                         |
| 2  | finding all sources of responsive documents to the A.G. and                         |
| 3  | that is what they have done by saying, New York A.G., you                            |
| 4  | identify additional custodians, you identify supplemental                            |
| 5  | search terms, you tell us where these documents are.  We                             |
| 6  | can't do that.  Exxon has the best knowledge about where                             |
| 7  | these documents reside in the company, whether they're aware                         |
| 8  | of shared drives or with document custodians and what                                |
| 9  | specific language and terms are used within the company to                           |
| 10 | capture these concepts.                                                              |
| 11 | THE COURT: I completely understand that, but the                                     |
| 12 | problem that I am having is that as a result of extensive                            |
| 13 | negotiations, which culminated a year ago, an agreement was                          |
| 14 | reached with respect to search terms and an agreement was                            |
| 15 | apparently reached with respect to custodians and unless you                         |
| 16 | tell me otherwise, it's my understanding from the                                    |
| 17 | correspondence that Exxon is producing documents predicated                          |
| 18 | on search terms that were stipulated to a year ago and                               |
| 19 | custodians that were identified and agreed to a year ago.                            |
| 20 | Now, if there are additional custodians that the                                     |
| 21 | A.G. has identified from its review of the 1.4 million                               |
| 22 | documents that had been produced and New York A.G. can                               |
| 23 | identify from that review of that volume of documents                                |
| 24 | specific individuals who, whose files should be searched, I                          |
| 25 | believe that Exxon will agree to add those custodians to its                         |
| 26 | production and I believe that Exxon will have the production                          |

Angela Bonello, RPR, Sr. Court Reporter

N.Y. App 599

Proceedings

1
2    from those additional custodians made available in the
3    timeframe that you're requesting.
4            Is that correct, Mr. Wells?
5            MR. TOAL:  Your Honor, during the meet and confer
6    process we invited the A.G.'s Office to identify additional
7    custodians they thought were necessary for reasonable
8    production.  We've already produced from the custodians we
9    think are reasonable production.  Obviously we've given them
10   the benefit of these 1.4 million pages of documents which
11   give them a basis to identify additional custodians.  In the
12   meet and confer they refused to identify additional
13   custodians; they said that's not our job, that is your job.
14   So in this presentation for the first time we're seeing
15   identification of additional custodians.
16           MS. SHETH:   Actually, Your Honor, I do want to
17   correct one point, and that is about the search terms and
18   custodians which Your Honor specifically asked about.
19           The search terms that were agreed to were a
20   preliminary set of search terms at the very beginning, so
21   literally one month after we got the subpoena before we had
22   the benefit of  any documents, so once we started to get the
23   documents we saw that other terms were being used in the
24   documents that Exxon provided and we respectfully asked them
25   over the period from June to present for, you know, your
26   search terms that we initially ran before we had the benefit

Angela Bonello, RPR, Sr. Court Reporter

N.Y. App 600

Proceedings

1

2      of a single one of your documents that are not capturing

3      what we expected.

4              And if Your Honor turns to slide four in our

5      presentation, we list specific reasons why we think that

6      preliminary search terms were not adequate. We have, for

7      example, just four custodians that we've identified that

8      have produced, where Exxon has produced relevant documents

9      anywhere between one and twenty-four documents.  These are

10     highly relevant documents, exactly what we're looking for,

11     but we only have twenty-four documents, and that suggests

12     that there's a serious mismatch or improper use of the

13     search terms that were initially proposed by Exxon.

14              In addition, another example of why the search

15     terms that were initially proposed and agreed to at the

16     beginning are insufficient are because the number of reserve

17     and proxy reference documents are very small.  If you look

18     at the second bullet point, now they keep talking about

19     1.4 million pages, that's only 20,000 documents, and out of

20     those 20,000 documents we only have slightly more than 1,100

21     documents that pertain to reserves.  So there is something

22     that is inadequate about the search terms that they have

23     identified.

24              We have repeatedly asked them, can you supplement

25     these search terms and they have refused to do so until the

26     very last meet and confer where they said we are agreeing to

Angela Bonello, RPR, Sr. Court Reporter

1                          Proceedings
2       add one -- familiar terms and that term is proxy cost but we
3       will only do that if you agree you're not going to
4       supplement with any additional search terms.  Now we can't
5       agree to that.
6               THE COURT:  Given the size of Exxon and the
7       potentially available universe of documents which could be,
8       what is a magnitude more than the 1.4 million pages that
9       Exxon has produced, a Court can't invent search terms and a
10      Court can't identify custodians.
11              It seems to me that it's incumbent upon the
12      New York Attorney General, after receiving 1.4 million pages
13      of documents over the last year to propose additional search
14      terms and different custodians based on the review of the
15      documents that you already have.  And if you do propose
16      additional search terms and additional custodians and Exxon
17      refuses to comply that's something that the Court can rule
18      upon, but what the Court can't do is independently identify
19      search terms for you or independently identify custodians
20      that Exxon should have a document search from.
21              MS. SHETH:  I agree with Your Honor, obviously we
22      can't ask the Court to do that and we wouldn't expect the
23      Court to do that.  What we're saying is we've identified
24      where the deficiencies are and let Exxon make the initial
25      proposal, let them tell us who are the custodians and places
26      where these documents reside because what they have given us

1                              Proceedings

2       is a list of 368 potential custodians that they put on the

3       litigation hold and they have produced from 56 of those

4       custodians.  We can't look at that list of the remaining 300

5       plus custodians and figure out who has the documents that

6       are missing and incomplete from the production.

7               So what I would propose, respectfully, is that

8       Exxon tell us who are the custodians that have the documents

9       that are missing which we've identified for them, and if

10      they tell us that then we can certainly have a back and

11      forth about whether or not those are the right people, but

12      to put the burden on us to find those people from the list

13      of 38 puts us in a position where we're guessing. We know

14      the documents of search terms are not pulling up the precise

15      documents, but we can't tell them where the documents reside

16      in the company.

17              MR. TOAL:  This is all based on falsity.  They

18      pointed to three areas of supposed gaps.  One is proxy

19      costs; we've already produced 1,200 documents related to

20      proxy costs even when it was not a search term.  We also

21      agreed to supplement our search term with the term proxy

22      cost and we'll produce them from three additional custodians

23      that we think are likely to have documents relating to proxy

24      costs.  So we're going to produce all those documents by the

25      end of the year.  That's not a gap in the production.

26              With respect to reserve documents, again there's no

1             Proceedings

2    gap in the production.  We've explained for a long time that

3    reserves have nothing to do with climate change.

4    Reserves --

5             THE COURT:  I read your letter, I understand your

6    argument, there.

7             MR. TOAL: And Your Honor, as I said and as you

8    recognize, we have searched, we have searched all the places

9    we think are reasonably likely to have responsive documents

10   and in the meet and confer we said if you think we missed

11   something, if you think there's a custodian we didn't search

12   that is likely to have responsive documents tell us who that

13   is and we can have discussions.  And with respect to search

14   terms, we think our existing search terms are adequate.  We

15   didn't think we need to search for proxy costs, but we

16   agreed to do it anyway and we said if you think there are

17   missing search terms, tells us what they are and we can have

18   a discussion.  And the A.G.'s office was unwilling to have

19   that discussion.

20            THE COURT:  Look, I want to be helpful to the

21   parties and to the process, but it really does seem to me

22   that if you have 1,200 documents relating to a specific

23   subject and those documents are to and from particular

24   people, and undoubtedly cc many other people that New York

25   Attorney General, looking at those 1,200 documents and

26   looking at the recurrence of the names that appear on those

12

1              Proceedings

2      1,200 documents can say these four, six, eight or twelve

3      people whose names appear on repeated occasions in these

4      1,200 documents are custodians whose documents we want to

5      see.   And if you do that and you say to the Court we have a

6      reasonable basis to believe based on our review of these

7      1,200 documents that these four, six or eight additional

8      custodians are custodians whose documents should be

9      produced, you know, I'll say that makes sense to me.

10              Similarly, if you look at the 1,200 documents and

11     you see a particular term that's not a search term that you

12     think would produce relevant and pertinent material I would

13     order that Exxon add that to the list of search terms, but

14     this concept that they know what you're looking for, I don't

15     think is fair.

16              MS. SHETH:   Your Honor, I don't want to give the

17     Court the impression that we're not willing to do the work,

18     because we are, and we have done the work.   For example,

19     with your last suggestion on proxy cost we did send them a

20     letter, I believe it was October or November of this year

21     where we said what you've pulled with regard to proxy cost

22     is insufficient, 1,400 documents out of a universe of 20,000

23     documents, clearly, something is missing.   And we either

24     proposed --we didn't say, run this particular search term,

25     but we gave them terms that we saw in the documents and we

26     said we're seeing these kinds of words, maybe you want to

              Angela Bonello, RPR, Sr. Court Reporter

N.Y. App 605

13

Proceedings

1
2   run these terms.  We can't tell you, but here is what we're

3   seeing, can you go find the correct documents, can you fill

4   out what's missing.

5           And I want to give Your Honor a better sense of

6   what's missing because, you know, with regard to proxy cost

7   what we don't have, what we have seen in the production is

8   internal policies and procedures that show how Exxon is

9   applying the proxy cost to its projects, the actual

10  application of the proxy cost to specific oil and gas

11  projects, the effect of the proxy cost on the evaluation and

12  reporting of its gas assets and probably most significantly,

13  its CEO's own statement that Exxon's projects are either too

14  short term or too large for the cost of carbon, meaning the

15  proxy cost, to effect the decision-making.  So we haven't

16  seen the documents that support the representations that

17  Exxon has made to the public and to the investors.

18          So what we have seen in documents is one side of

19  the coin.  We've seen the documents, actually more than half

20  of their production relates to documents from scientists

21  that talk about climate change as a scientific principle and

22  we've seen the documents that reveal what the representation

23  that Exxon has made about the effect of climate change on

24  its business and its financial reporting, but we haven't

25  seen the other side of the coin, which is what are the

26  documents that support what Exxon has told the public and

Angela Bonello, RPR, Sr. Court Reporter

N.Y. App 606

```
 1                        Proceedings
 2      investors?  What are the documents that show the facts and
 3      the assumptions that Exxon considered and relied on in
 4      making those statements?  And we need those document to test
 5      the accuracy of Exxon's own statements, and that's what's
 6      missing.  And we're happy to do the work to try to identify
 7      additional custodians and additional search terms, but what
 8      I'm concerned with is that we will be back here in front of
 9      Your Honor because we will have suggested wrong custodians,
10      because we have such a limited universe of document to base
11      our review on 1,400 out of 200,000.
12              And I think another point --well, actually, on
13      reserves I do want to address Mr. Toal's point about
14      reserves, that when he says that reserves are-- let me make
15      sure-- in their letter they say:  "Reserves are a topic that
16      has no connection to climate change."  And I find that to be
17      a very troubling statement and I'll tell you why.
18              If I could hand up to Your Honor a copy of the
19      report called Managing the Risks, and this is a report
20      that-- if you can hand that up, thank you.
21              (Handing.)
22              MS. SHETH:   And Your Honor, this is a publicly
23      available report that Exxon made various disclosures
24      regarding the effect of the climate change on its business.
25              Now, if Your Honor looks at page 1 of the report,
26      the third paragraph, they say:  "Based on this analysis we
```

1                            Proceedings

2       are confident that none of our hydrocarbon reserves are now

3       or will become stranded."  So they're specifically talking

4       about reserves.

5                Second, if you look at page --

6                THE COURT: Let me understand your point today.  As

7       I understand it, Exxon's position is that none of its

8       hydrocarbon reserves are now or will become stranded means

9       that nothing relating to climate change will affect its

10      reserves.

11               MS. SHETH:   That's correct.  So, if you look at

12      page 8, they make the statement again.  They say: "A

13      concern --" this is this the top paragraph of page 8, last

14      sentence.  "A concern expressed by some of our stakeholders

15      is whether such a "low carbon scenario" could impact Exxon

16      Mobil's reserves and operations-i.e., whether this would

17      result in unburnable proved reserves of oil and natural

18      gas."

19               So we need to be able to test the accuracy of that

20      statement.  Exxon is is telling the public and investors,

21      don't worry about climate change, don't worry about climate

22      change regulation, it is not going to affect our business

23      operations and it is not going to affect our oil and natural

24      gas reserves.  We need the documents that will allow us to

25      test whether that representation is in fact accurate.

26               THE COURT: So what specific documents are you

                    Angela Bonello, RPR, Sr. Court Reporter

1                          Proceedings

2    talking about?

3              MS. SHETH:    So what we're talking about, the

4    categories are outlined of bottom of page 1.  We're talking

5    about the documents that will discuss the impact of climate

6    change and climate change reservation on reserves, on the

7    reserve replacement ratio, and the likelihood that the

8    reserves will be impaired or stranded, the rate at which

9    reserves will be utilized and the likelihood of low carbon

10   emission scenarios.

11             THE COURT: You just outlined a half a dozen

12   potential search terms that you can give to Exxon and which

13   I would ask Exxon to utilize.

14             That's the point of what I'm trying to get across,

15   here, which is if you have search terms that you want to add

16   and they're reasonable, based on everything that you have

17   done for the last year the Court would order them produced.

18   And frankly, I think Exxon would agree to add them at a meet

19   and confer without the Court's intervention.

20             MS. SHETH:    Okay, we've tried that in the past and

21   we'll try that again, Your Honor.

22             We will try again and we will do it expeditiously

23   because we do want these documents by the end of January.

24             THE COURT:    Well it seems to me we have a record

25   here.  You just articulated a half a dozen search terms

26   which may or may not be search terms that Exxon has

Proceedings

previously utilized.

I'm satisfied, based on what you presented to the Court, that those terms are reasonable for Exxon to add to search terms that its using and you should just send Exxon an e-mail or a letter listing those half a dozen search terms and it would be the order of the Court that those should be added to the search that's being made of the 56 custodians that have previously been agreed upon.  And if there are additional custodians that you've identified based on the review of the 1.4 million pages of documents that Exxon has produced those will be added, as well.  And it seems to me that Exxon has the resources to add those additional custodians and add those additional search terms without affecting the January 31st deadline.

Now, with respect to this business of having privileged logs produced every two weeks, that's just unreasonable.

MS. SHETH:  Thank you, Your Honor, we will do that.  We will expeditiously provide them with a supplemental list of custodians and supplemental list of search terms.

And if I could address just one other point, Your Honor.

THE COURT:  Let me just make sure that Exxon is agreeable to this.

MR. TOAL: So, I would just say a few things.  I

1                        Proceedings

2     think we have a set of search terms that it was agreed upon

3     and it was negotiated.

4                 THE COURT: I understand.

5                 MR. TOAL: So I think those are reasonable terms to

6     accomplish the task of trying to come --

7                 THE COURT: The New York Attorney General has

8     indicated there are these additional search terms that the

9     New York Attorney General deems to be relevant based on its

10    evolving review of the documents and it doesn't seem to me

11    to be extraordinarily onerous to add the four or five

12    additional specific search terms that counsel has

13    articulated, and if there are a couple of, three or four

14    custodians that the New York Attorney General has

15    identified, it doesn't seem to me to be onerous for you to

16    add those.

17                 The burden of your letter to the Court was that the

18    New York Attorney General wasn't telling you what it was

19    they wanted you to search or whose files they wanted you to

20    search.  Now we've convened here with a large audience, the

21    New York Attorney General has identified a handful of

22    additional search terms and is proposing to add a handful of

23    additional custodians.  I would have thought that could have

24    been agreed upon at a meet and confer but it wasn't, so --

25                 MR. TOAL: So Your Honor, I would say a few things.

26    If we're talking about a handful of search terms and they're

                  Angela Bonello, RPR, Sr. Court Reporter

1                              Proceedings

2       not their terms that are likely to capture documents that

3       the existing search terms wouldn't have caught and they're

4       reasonable and responsive to the subpoena, that obviously is

5       something we've been willing to talk about from the

6       beginning.  If we're talking about a few additional

7       custodians and there's a reasonable likelihood to believe

8       they have responsive documents, that is something we can

9       talk about if there is reasonable documents in that the

10      existing custodians wouldn't have produced that we can talk

11      about.

12              The January 31st deadline was predicated on the

13      custodians that were specifically identified in the search

14      terms that were specifically identified and if we do have to

15      go back and collect data from additional custodians, load

16      that data, run search terms, that will take additional time

17      and we don't know how much additional time until we know how

18      many of those documents hit on the search terms.  So that's

19      the only proviso that I would add, Your Honor, is that we

20      really can't predict what the volume is going to be, how

21      many documents will hit on the search terms.  Once we know

22      that we can make reliable predictions about how long it will

23      take us to review those documents.

24              MR. WELLS:   Your Honor, if I could just add, in

25      terms of what I'll call a big picture answer we'll get done

26      what you just said.  If we're talking about a handful of new

                    Angela Bonello, RPR, Sr. Court Reporter

1                        Proceedings

2       search terms, whatever they are, we'll run them, okay.

3                 With respect to the handful of custodians, we will

4       take care of that and do our best to meet the end of the

5       month deadline, if possible.

6                 The search terms are different from the custodians.

7       What's different is that with the existing custodians

8       they're now in the data base.  So they give us handful of

9       new search terms we can run it, okay.  The custodians, if

10      they're new names, what has to happen is more time-consuming

11      in the sense we've got to go out to that person's office.

12                THE COURT: You have to upload the document.  I've

13      been there done this, so I understand exactly what we're

14      talking about.  And it's my belief that if the parties both

15      behave reasonably and responsibly, adding a handful of

16      additional search terms and a handful of additional

17      custodians shouldn't be an insuperable barrier to production

18      of all of the documents by January 31st.

19                MR. WELLS:    I agree, Your Honor.

20                MS. SHETH:    Thank you, Your Honor.

21                One last point, and this goes to Mr. Wells's point

22      about the custodians.  I just want to be clear about the

23      shared drives, and I know Your Honor is well familiar with

24      shared drives.  I like to think of them as an electronic

25      filing cabinet where, you know, the entire filing cabinet a

26      particular department or group of individuals at the company

                 Angela Bonello, RPR, Sr. Court Reporter

1              Proceedings

2    has access to that cabinet.  They can pull it out and within

3    the cabinets are folders and they're organized by either

4    topic or sometimes by person.

5              Now, Exxon is telling the Court it has searched

6    those shared drives, but I think what Exxon has done, based

7    on my understanding of the correspondence, is that they have

8    searched the folders within this cabinet that relate to the

9    56 custodians.  What they haven't searched are the topical

10   folders.  And I have a nice document from Exxon's own

11   production, which if I may hand it up, will show what I'm

12   talking about, here.

13             So, we were lucky in that we coincidentally found

14   this in Exxon's production, it's on a topic that really is

15   not relevant to this investigation but Exxon happened to

16   produce this document which pertains to something relating

17   to water resource management.  But what this document shows

18   is this, a screen shot of the shared drive system or one of

19   the shared drive systems in place at Exxon.  And if you look

20   at the right --sorry, the left hand corner, it says Document

21   Resource Library, and at the bottom, you see a bunch of

22   documents; some look like word documents, some appear to be

23   power point documents.  But these are documents that are

24   within this folder called Water Resources.

25             Now, we had asked Exxon repeatedly, can you please

26   search these shared drives.  And if you look at page 3 of

Angela Bonello, RPR, Sr. Court Reporter

1                              Proceedings
2      our dec we've even identified the specific shared drives
3      that we've identified based on their document production.
4      We said, rather than look for the folder of custodians,
5      please look for the topical folder.  For example, look at
6      the folder that pertains to greenhouse gases, look at the
7      folder that pertains to oil and gas project approvals which
8      does have documents concerning the application of the proxy
9      cost and they have refused to do that.  So I would ask Your
10     Honor that in addition to us identifying additional
11     supplemental custodians and search terms, that Exxon also
12     search these shared drives and the specific topical folder
13     in the shared drives.
14            And the one other area is data bases.  We have not
15     seen any documents in their production that come from data
16     bases and we know based on a review of the documents there
17     are data bases for example the flex data base which contains
18     emissions and environmental data, so we would ask that they
19     also search those the January 31st deadline.
20            THE COURT:  Well, let me ask a very practical
21     question.  Is it contemplated that there are going to be
22     depositions in this proceeding?
23            MS. SHETH:   Yes, Your Honor, I think that that's a
24     fair assumption.
25            THE COURT: What I think is that the search terms
26     that you give to Exxon, supplemental search terms will

                    Angela Bonello, RPR, Sr. Court Reporter

1                              Proceedings

2    capture what you're looking for.

3              MS. SHETH:    Only if they run them in the shared

4    drives.   If they're just running them on custodians we may

5    not get these shared drive documents.   That's my

6    understanding of how it works.

7              THE COURT: You've represented they have run the

8    search terms on shared drives, that's what they have

9    represented.

10             MS. SHETH: I would ask for a clarification from

11   counsel.   Are they running the search terms on the topical

12   shared drive folder?

13             MR. TOAL: We have asked custodians, we've

14   interviewed custodians, we've asked them where they store

15   documents, we asked them if they store documents on shared

16   drives.   They indicated they stored documents on the shared

17   drives that are reasonably likely to be responsive to the

18   subpoena.   We searched the shared drive.

19             THE COURT:   Okay, it seems to me that, you know,

20   it's unreasonable for Exxon to deliver to the New York

21   Attorney General's Office every document that Exxon has in

22   its possession and it seems to me that when you commence the

23   deposition process it will become very apparent if there are

24   any gaps in the document production, and you're just

25   throwing darts against the wall, here.

26             If you give them, as part of the supplemental

                 Angela Bonello, RPR, Sr. Court Reporter

1                              Proceedings

2        search terms, some of the terms that are, that appear on

3        page 3 and they run those through the shared drives, which

4        they have represented that they're doing, you're going to

5        get pretty close to the universe of what you need and what

6        you want.

7                MS. SHETH:  I agree with Your Honor, if that's what

8        they're doing, if they're willing to run our search terms on

9        the shared drives then, yes, you're absolutely right, we

10       will get what we're asking go for and looking for.  I don't

11       interpret what Mr. Toal  said to be doing that.  I think

12       what he's saying is we're only going to look in a particular

13       shared drive because the custodians said I put my documents

14       in the shared drive.

15               So what that means is, let's say we have the search

16       shared climate change, if I am one of their custodians I

17       mention that drive, they're not running searches in that

18       drive but meanwhile, based on the folder name we know there

19       are documents in a shared drive, that's the climate change

20       implementation shared drive.  So we're asking to search that

21       drive using the search terms, and if they're willing to do

22       that, that's perfect.

23               MR. TOAL: So we're aware of our obligation to

24       search for documents in places that they're reasonably

25       likely to be found.  I can't address all the specific shared

26       drives now because they were raised for the first time right

                    Angela Bonello, RPR, Sr. Court Reporter

1                              Proceedings

2      now.  This is really what should have happened during the

3      meet and confer.  The A.G. was not willing to engage on

4      these topics so I can only talk generally.

5              We are aware of our obligation to search for

6      documents where they're reasonably likely to be found and

7      we'll continue to do that.

8              MS. SHETH:   And I would submit that the documents

9      relating to climate change are reasonably likely to be found

10     in the shared drives with these names.

11             THE COURT:  Counsel is attempting to be responsive

12     to your concerns and I think we've accomplished all we can

13     accomplish this morning.  If it turns out that you believe

14     that there isn't good faith compliance with what we've

15     agreed upon and discussed this morning then you come back

16     here and we'll drill down deeper than we've drilled today,

17     but it seems to me that they have agreed to produce by

18     January 31st, documents captured by additional search terms.

19     They have agreed to produce by January 31st documents from

20     additional custodians and they have agreed, to the extent

21     the search terms are reasonably likely to produce documents

22     from shared drives, they will produce them.  That's by order

23     of the Court.

24             And if there is any further issues you will

25     initiate additional conferences in early January.

26             MS. SHETH:   Thank you, Your Honor, we really

                  Angela Bonello, RPR, Sr. Court Reporter

N.Y. App 618

26

1                           Proceedings

2      appreciate your time and your patience and we will do that,

3      we'll work expeditiously starting as soon as Monday or even

4      this afternoon to get that done.  And I would ask Your Honor

5      that if we could keep the December 15th pre-existing

6      conference on the calendar so that if we do have disputes

7      about what's a reasonable handful of custodians and search

8      terms that we may revisit that issue with Your Honor.

9               MR. WELLS:   I was going to ask just the opposite,

10     Your Honor.  The December 15th date was set with respect to

11     the climate.  We reached a stipulation, we don't have any

12     dispute, we have a schedule and that's all in place, so that

13     was the purpose of the December 15th date.

14              THE COURT: I understand and I agree.

15              MR. WELLS:   And so, since -- so I would ask that

16     we not be --not have to hold this date.  People have to fly

17     here from Texas and make plans and there's no reason, as

18     Your Honor has indicated it looks like if there's a problem

19     they can write a letter and you call us in on short notice

20     and we appear and that's worked out so far fine with

21     everybody, so I would ask that we adjourn the December 15th

22     date and if we have to get back here whenever, we will.

23              THE COURT: I agree with that.  The December 15th

24     date relating to the PWC issues, and I signed the  .

25     stipulation yesterday memorializing your agreement as

26     respects the PWC documents, so there's no reason to come

                    Angela Bonello, RPR, Sr. Court Reporter

27

1                              Proceedings

2      back here on December 15th, but, if things go awry in

3      connection with what we've discussed this morning you'll

4      apprise me by letter and if you have to come back next week

5      or the week after we'll do that.  But it seems to me that

6      there's been a meeting of the minds, here, and let's hope

7      that things move smoothly and cooperatively.

8              MS. SHETH:    Thank you, Your Honor.

9              I think there is one issue that's still pending and

10     that pertains to the redactions of --the redactions for

11     responsiveness.  So we had asked in our letter --well, we

12     submitted in our letter that those redactions are improper.

13     Exxon is only permitted to redact on the basis of privilege

14     or work product and instead we have received documents that

15     are responsive but have been redacted oftentimes in the

16     entirety.  So we've got multiple documents where the entire

17     document, but for one line, has been redacted for

18     responsiveness reasons.  So we would respectfully ask those

19     documents be produced immediately.

20             THE COURT: I'm not prepared to order that at this

21     point in time.  That's something that would have to be fully

22     briefed by both parties.  And if you want to submit  within

23     ten days simultaneous briefs on that issue, I will address

24     it.

25             MS. SHETH:    Thank you, Your Honor.

26             MR. TOAL: Your Honor, I would say on the redaction

                Angela Bonello, RPR, Sr. Court Reporter

N.Y. App 620

| | Proceedings |
|---|---|
| 1 | |
| 2 | point, we have agreed to go back and re-review all of our |
| 3 | redactions for responsiveness and limit our redactions to |
| 4 | issues regarding sensitive and private information which |
| 5 | even the A.G. says is an appropriate reaction. |
| 6 | THE COURT: That's among the reasons why I'm not |
| 7 | prepared to order anything today. |
| 8 | MR. TOAL: Thank you, Your Honor. |
| 9 | THE COURT: Okay.  Thank you.  You will order the |
| 10 | transcript. |
| 11 | |
| 12 | C E R T I F I C A T E |
| 13 | |
| 14 | |
| 15 | It is hereby certified that the foregoing is a true and accurate |
| 16 | transcript of the proceedings. |

ANGELA BONELLO

SENIOR COURT REPORTER

SUPREME COURT-NEW YORK COUNTY

SO ORDERED

BARRY R. OSTRAGER, J.S.C.   12/15/16

Angela Bonello, RPR, Sr. Court Reporter

N.Y. App 621