IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-469-K |
| | ) | |
| ERIC TRADD SCHNEIDERMAN, | ) | |
| Attorney General of New York, in his official | ) | |
| capacity, and MAURA TRACY HEALEY, | ) | |
| Attorney General of Massachusetts, in her | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ATTORNEY GENERAL MAURA HEALEY'S BRIEF IN SUPPORT
OF DISMISSAL FOR LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

I.    Introduction ........................................................................................................... 1

II.   Statement of Facts ................................................................................................. 2

    A.   The Attorney General's Civil Investigative Demand .............................. 2

    B.   Prior Proceedings ................................................................................... 3

    C.   Recent Events in the Massachusetts Litigation ..................................... 7

III.  Argument .............................................................................................................. 7

    A.   This Court Lacks Personal Jurisdiction over Attorney General Healey. ................. 7

    B.   Texas's Long-Arm Statute Does Not Apply to Attorney General Healey. ............ 9

    C.   Exercise of Personal Jurisdiction over the Attorney General in Texas
        Would Violate Due Process. ................................................................. 12

        1.   The Attorney General Lacks the Minimum Contacts with Texas
            Required for the Court to Exercise Personal Jurisdiction over Her. .......... 12

        2.   Exxon's Claims of Injury in Texas Are Unavailing. ................................ 16

        3.   Exxon's Previously Cited Authorities for Personal Jurisdiction Are
            Outdated and Irrelevant. ...................................................................... 21

        4.   Exercise of Personal Jurisdiction over the Attorney General Would
            Be Unreasonable in This Case. .............................................................. 23

IV.   Conclusion .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*21 Turtle Creek Square, Ltd. v. N.Y. State Teachers' Ret. Sys.*, 425 F.2d 1366 (5th Cir. 1970) ............................................................................................................................... 11

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014) ......................................................................................................................... 17

Allred v. Moore & Peterson, 117 F.3d 278 (5th Cir. 1997).................................................... 16, 22

*Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000)...................................... 5, 8

*Asahi Metal Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102 (1987).................................................. 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 13

*Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847 (5th Cir. 1966) .................. 10, 11

*B & G Prod. Co. v. Vacco*, No. CIV.98-2436 ADM/RLE, 1999 WL 33592887 (D. Minn. Feb. 19, 1999) ......................................................................................................................... 25

*Bd. of Cty. Comm'rs v. Amarillo Hosp. Dist.*, 835 S.W.2d 115 (Tex. Ct. App. 1992)................. 11

*Bear Stearns Cos. v. Lavalle*, No. 3:00 Civ. 1900-D, 2001 WL 406217 (N.D. Tex. Apr. 18, 2001) ................................................................................................................................. 23

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).................................................................. 12

*Bustos v. Lennon*, 538 F. App'x 565 (5th Cir. 2013)..................................................................... 19

*Calder v. Jones*, 465 U.S. 783 (1984)...................................................................................... 18, 22

*Clark Advert. Agency, Inc. v. Tice*, 331 F. Supp. 1058 (N.D. Tex. 1971) ..................................... 11

*Cutting Edge Enters., Inc. v. Nat'l Ass'n of Att'ys Gen.*, 481 F. Supp. 2d 241 (S.D.N.Y. 2007) ......................................................................................................................................... 25

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ........................................................................... 12

*Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113 (6th Cir. 1988) ................. 20

*Everly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir. 1969)........................................................ 11

*Ex Parte Young*, 209 U.S. 123 (1908) ........................................................................................... 9

*Gilbert v. DaGrossa*, 756 F.2d 1455 (9th Cir. 1985)................................................................... 20

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011) ............................................. 12

*Guidry v. U.S. Tobacco Co.*, 188 F.3d 619 (5th Cir. 1999) ................................................... 21, 22

*Gulf Coast Int'l LLC v. Research Corp. of the Univ. of Haw.*, 490 S.W.3d 577 (Tex. Ct. App. 2016) .................................................................................................................................. 11

*Hanson v. Denckla*, 357 U.S. 235 (1958) ................................................................................... 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................................ 12

*Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986) ............................................. 12, 14

*Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026 (5th Cir. 1983) ................................. 16

*In re Civil Investigative Demand No. 2016-EPD-36*, No. 2016-1888-F (Mass. Super. Jan. 11, 2017) ............................................................................................................................ passim

*In re DuPuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-MD-2244-K, 2014 WL 3557392 (N.D. Tex. Jul. 18, 2014) ............................................................. 23

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945) ............................................................................ 12

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008) .......................................... 7

*Kalman v. Cortes*, 646 F. Supp. 2d 738 (E.D. Pa. 2009) .......................................................... 23

*Kulko v. Super. Ct.*, 436 U.S. 84 (1978) .................................................................................... 14

*Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) .......................................................................... 23

*Markland v. Bay Cty. Sheriff's Office*, No. 1:14-cv-572, 2015 WL 3430120 (E.D. Tex. May 28, 2015) .......................................................................................................................... 12

*McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) ..................................................................... 16

*Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520 (N.D. Tex. 2001) ..................... 19

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) .............................. 16, 19

*Nelson v. Bulso*, 149 F.3d 701 (7th Cir. 1998) ......................................................................... 16

*Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002) ............................ 12, 23

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) .............. 19

*Payne v. Cty. of Kershaw*, No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008) ..................................................................................................................................... 11, 16

*Perez Bustillo v. State of La.*, 718 S.W.2d 844 (Tex. Ct. App. 1986) ......................................... 11

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214 (5th Cir. 2012) ................ 16

iv

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) .................................................................. 17

*PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179 (C.D. Cal. 2000) ...................................... 25

*Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003), reh'g denied,
   clarification granted, 82 F. App'x 144 (5th Cir. 2003)................................................................ 16

*Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178
   (10th Cir. 2014)........................................................................................................... 17

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ........................................................ 5, 8

*Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415 (5th Cir. 2001)................................. 23

*Saxton v. Faust*, No. 3:09-CV-2458-K, 2010 WL 3446921 (N.D. Tex. Aug. 31, 2010)........ 11, 19

*Shotton v. Pitkin*, No. Civ-15-0241-HE, 2015 WL 5091984 (W.D. Okla. Aug. 28, 2015).......... 16

*Spir Star AG v. Kimich*, 310 S.W.3d 868 (Tex. 2010)............................................................. 10

*Stroman Realty, Inc. v. Antt (Stroman II)*, 528 F.3d 382 (5th Cir. 2008) .................................. 15

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008)........................................ passim

*Turner v. Abbott*, 53 F. Supp. 3d 61 (D.D.C. 2014) .............................................................. 25

*Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333 (D. Mass. 2013) ........................................ 16

*United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995), amended July 28, 1995...................... 16

*Vanderbilt Mortg. & Fin v. Flores.*, 692 F.3d 358 (5th Cir. 2012) ........................................... 23

*Walden v. Fiore*, 134 S. Ct. 1115 (2014).......................................................................... passim

*Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985)............................................................. 16, 22

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ............................................ 22, 23

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)........................................ 13, 24

*Younger v. Harris*, 401 U.S. 37 (1971)............................................................................. 4, 5, 6

## Statutes

42 U.S.C. § 1983................................................................................................... 15, 16, 19

Mass. Gen. Laws ch. 12, § 3 ........................................................................................... 2

Mass. Gen. Laws ch. 93A ............................................................................... 2, 3, 13, 24

Mass. Gen. Laws ch. 93A, § 2 ........................................................................................ 3

Mass. Gen. Laws ch. 93A, § 4 ........................................................................................................ 3

Mass. Gen. Laws ch. 93A, § 6 ........................................................................................ 3, 14, 21, 24

Mass. Gen. Laws ch. 93A, § 6(7) ................................................................................................. 4

Mass. Gen. Laws, ch. 93A, § 7 ............................................................................................... 14, 24

Tex. Civ. Prac. & Rem. Code Ann. § 17.041 ................................................................................. 9

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 .......................................................................... 9, 10

# I.     INTRODUCTION

This Court should, as Attorney General Healey has argued consistently since the outset of this case, immediately dismiss Exxon Mobil Corporation's ("Exxon") complaint against Attorney General Healey because the Court lacks personal jurisdiction over her.

As this Court recognized very early on in its question to Exxon counsel at oral argument on Exxon's motion for preliminary injunction, Tr. at 87 (Doc. No. 68) ("[h]ow the heck do I have jurisdiction?"), the threshold question whether this Court may properly exercise personal jurisdiction over Attorney General Healey is not a close one. The Texas long-arm statute does not reach out-of-state officials sued solely in their official capacity, as Attorney General Healey is so named here. Moreover, and consistent with the Fifth Circuit's controlling decision in *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) ("*Stroman*"), exercising personal jurisdiction over Attorney General Healey would violate due process because she lacks *any*—let alone minimum—contacts with the Texas forum, and jurisdiction thus would be unreasonable.

Exxon attempts to avoid these controlling legal precedents by manufacturing a theory of personal jurisdiction, alleging that the Attorney General directed a "constitutional tort" at Texas that harmed Exxon in Texas and that, therefore, personal jurisdiction must lie. The Supreme Court's recent decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), however, forecloses Exxon's contrived argument. Under *Stroman* and *Walden*, this allegation cannot support jurisdiction over Attorney General Healey, who has no contacts with Texas and is alleged to have done no more than issue a state-law Civil Investigative Demand ("CID") to the company's Massachusetts agent and make a public statement about her investigation outside Texas. Across dozens of pages of briefing, Exxon has not offered any valid reason why its lawsuit can withstand the clear commands of *Stroman* and *Walden*.

1

In a January 11, 2017, decision denying Exxon's motion to set aside the CID, the Massachusetts Superior Court specifically rejected Exxon's assertions that the CID was politically motivated and that the Attorney General's press conference statements evince bias and prejudgment, eviscerating Exxon's argument that Attorney General Healey's actions constitute a "constitutional tort" at all, let alone one directed at Texas. *See In re Civil Investigative Demand No. 2016-EPD-36*, No. 2016-1888-F at 9, 11-13 (Mass. Super. Jan. 11, 2017) (attached as Appendix Exhibit 1 ("App. Exh. 1")). On the same record before this Court, the Superior Court found that the Attorney General has "assayed sufficient grounds—her concerns about Exxon's possible misrepresentations to Massachusetts consumers—upon which to issue the CID," and that "[n]othing in the Attorney General's comments at the press conference indicate to the court that she is doing anything more than explaining reasons for her investigation to the Massachusetts consumers she represents." App. Exh. 1 at App. 009, 013. In particular, the Superior Court found that those comments merely "identified the basis for her belief that Exxon may have violated c. 93A"—a belief the Attorney General is legally required to hold prior to opening an investigation under the Massachusetts Consumer Protection Act, Mass. Gen. Laws, ch. 93A ("Chapter 93A"). App. Exh. 1 at App. 012. The Superior Court is now supervising Exxon's prospective compliance with the CID. App. Exh. 1 at App. 011, 014. This federal case—from day one a forum-shopping gambit by Exxon to evade the reach of statutorily-required proceedings before the Massachusetts state courts—must go no further because there is no jurisdiction in this Court over Attorney General Healey.

## II.     STATEMENT OF FACTS

## A.     THE ATTORNEY GENERAL'S CIVIL INVESTIGATIVE DEMAND

Attorney General Healey is the chief law enforcement official of the Commonwealth of Massachusetts. Mass. Gen. Laws ch. 12, § 3. Attorney General Healey also has various

enumerated statutory powers, including enforcement of Chapter 93A, which proscribes unfair and deceptive practices in the conduct of trade or commerce. Pursuant to Chapter 93A, the Attorney General is authorized to protect investors, consumers, and other persons in the state against unfair and deceptive business practices by promulgating regulations, conducting investigations through CIDs, and instituting litigation. *See* Mass. Gen. Laws ch. 93A, §§ 2(c), 4, and 6. CIDs under Chapter 93A are a crucial tool for gaining information regarding whether an entity under investigation has violated the statute, and they are employed routinely by the Attorney General's Office.

On April 19, 2016, the Attorney General issued a CID to Exxon pursuant to Chapter 93A, § 6. The CID was served on Exxon's registered agent in Massachusetts, and Exxon confirmed that service was proper. *See* First Am. Compl. ("FAC") at ¶ 69 (Doc. No. 100). Attorney General Healey issued the CID as part of her investigation of whether Exxon violated Chapter 93A, § 2, and associated regulations, in its marketing and sale of fossil-fuel products and securities to Massachusetts consumers and investors by failing to disclose fully the economic, regulatory, and other risks posed by climate change, including the role of Exxon's products in contributing to climate change and how climate change and actions related to it could adversely affect the value of Exxon's assets and the company's profitability.[1]

## B.   PRIOR PROCEEDINGS

On June 15, 2016, Exxon filed this action against Attorney General Healey, in her official capacity, alleging that the Attorney General's investigation violates its constitutional rights and is an abuse of process. Compl. (Doc. No. 1). That same day, Exxon moved to enjoin Attorney General Healey from enforcing the CID (Doc. No. 8). The following day, June 16, 2016, Exxon

---

[1] A more complete recitation of the facts surrounding Attorney General Healey's investigation is provided in the Attorney General's opposition to Exxon's motion for preliminary injunction (Doc. No. 43).

filed a petition to set aside or modify the CID in Massachusetts Superior Court under Chapter 93A, § 6(7)—the statutorily required process for challenging a CID—along with an emergency motion seeking the same relief and to stay the Massachusetts proceeding pending the outcome of the Texas case. The Attorney General subsequently filed a cross-motion to compel Exxon's compliance with the CID in the Massachusetts proceeding.

Attorney General Healey moved to dismiss this Texas action on August 8, 2016 (Doc. No. 41), pursuant to an agreed-upon schedule approved by the Court. Attorney General Healey urged dismissal because, among other reasons, the Court lacked personal jurisdiction over her and abstention under *Younger v. Harris*, 401 U.S. 37 (1971), was warranted.

The Court did not schedule a hearing on the Attorney General's motion to dismiss. The Court did, however, hear argument on Exxon's motion for a preliminary injunction on September 19, 2016. At the hearing, counsel for Attorney General Healey outlined the arguments set forth in her fully briefed motion to dismiss, including lack of personal jurisdiction, as these demonstrate that Exxon cannot show a likelihood of success on the merits in order to obtain injunctive relief. In addition, counsel explained that Exxon faced no irreparable harm, since it had already produced hundreds of thousands of pages of documents to the New York Attorney General in response to a similar subpoena issued by him in November 2015. *See* Tr. at 57-64 (Doc. No. 68). Upon learning of Exxon's compliance with the New York subpoena, the Court directed the parties to attempt to resolve Exxon's refusal to produce any documents to Massachusetts and subsequently ordered the parties to participate in mediation. The parties were unable to reach a resolution, and so informed the Court by letter.[2]

---

[2] The letter confirmed that Attorney General Healey's involvement in the mediation did not constitute a waiver of her arguments with respect to the Court's jurisdiction, including her argument that the Court lacks personal jurisdiction over her.

On October 13, 2016, the Court, without motion by Exxon, entered an order (Doc. No. 73) authorizing discovery to ascertain whether the bad faith exception to *Younger* abstention applies in this case.

On October 17, 2016, Exxon moved for leave to amend its original complaint in this action to add the New York Attorney General as a defendant, enjoin the New York investigation, and add certain claims against Attorney General Healey (Doc. No. 74). Attorney General Healey opposed that motion because, among other reasons, amendment would be futile, since the Court would still lack personal jurisdiction over her. Opp. at 8-12 (Doc. No. 94).[3]

On October 20, 2016, Attorney General Healey filed a motion (Doc. No. 78) seeking reconsideration of the discovery order, arguing that, under *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) and *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000), the Court should grant her pending motion to dismiss on personal jurisdiction grounds before reaching *Younger* abstention, and without further factual inquiry. Mem. at 4-5 (Doc. No. 79). On October 24, 2016, without any offer to meet and confer on parameters for discovery, Exxon served the Attorney General with over 100 discovery requests and, on November 3, served a deposition notice for Attorney General Healey.[4]

On November 10, 2016, the Court granted Exxon's motion to amend its original complaint (Doc. No. 99), and Exxon filed its First Amended Complaint (Doc. No. 100).

---

[3] Attorney General Healey also opposed the motion because, since no facts had changed and Exxon could have named Attorney General Schneiderman as a defendant in this case in its initial complaint, the timing of Exxon's motion to amend suggested that Exxon sought to join Attorney General Schneiderman in order to thwart enforcement of New York's subpoena by the New York state courts. *See* Opp. at 2-3 (Doc. No. 85); Opp. at 13-15 (Doc. No. 94).

[4] Also on October 24, Exxon's counsel stated during a hearing in New York state court that Exxon intended to use this Court's October 13 discovery order "to take the deposition of both the Mass. AG people and really everybody. . . that was at that March 29th conference. And we would like to get the New York AG in the case as we work out these discovery issues. . . . We are going to try to take depositions of the state AG's." Tr., App. at App. 056 (Doc. No. 95).

5

On November 17, 2016, the Court issued another *sua sponte* order (Doc. No. 117), requiring Attorney General Healey to respond to Exxon's discovery by ten days from service (November 3, 2016, a date already passed), and to appear at a deposition in Dallas at the federal district courthouse on December 13, despite the fact that Exxon had noticed the deposition of Attorney General Healey to occur in Boston, Massachusetts. On November 23, Attorney General Healey served on Exxon her objections to Exxon's discovery requests, and filed on November 25 a motion to vacate and reconsider the November 17 order and for a stay of discovery and a protective order barring Attorney General Healey's deposition (as corrected, Doc. No. 120).

On November 28, 2016, Attorney General Healey filed a motion to dismiss Exxon's First Amended Complaint (Doc. No. 124), arguing again that this Court lacks personal jurisdiction over her.[5]

On December 5, 2016, the Court denied Attorney General Healey's motion to reconsider the November 17 order (Doc. No. 131). On December 6, 2016, Attorney General Healey filed an emergency motion to stay the discovery pending appellate review (Doc. No. 140), and on December 8, 2016, Attorney General Healey filed a petition for a writ of mandamus with the United States Court of Appeals for the Fifth Circuit (Doc. No. 151). On December 9, 2016, this Court denied Attorney General Healey's motion to stay pending appellate review (Doc. No. 152).

On December 12, 2016, this Court cancelled the deposition of Attorney General Healey in Dallas, scheduled for December 13, 2016 (Doc. No. 158).[6] Also on December 12, 2016, this

---

[5] Attorney General Healey further argued that the case is unripe; that the Northern District of Texas is an improper venue; that Exxon's state claims are barred by the Eleventh Amendment; that the Court should abstain under *Younger*; and that the First Amended Complaint did not satisfy the minimum pleading standards of the Federal Rules of Civil Procedure. *See* Mem. (Doc. No. 125).

[6] On December 13, 2016, the United States Court of Appeals for the Fifth Circuit denied Attorney General Healey's petition for writ of mandamus as moot (Doc. No. 161). On December 14, 2016, this Court also denied Attorney

Court ordered "all parties to submit a brief to the Court regarding whether this Court has personal jurisdiction over Defendants . . . ." (Doc. No. 159). This brief is Attorney General Healey's submission in response to that order, the deadline for which was extended to February 1, 2017, by a later order (Doc. No. 164). On December 15, 2016, this Court stayed discovery pending further order (Doc. No. 163).

## C.   RECENT EVENTS IN THE MASSACHUSETTS LITIGATION

On December 7, 2016, the Massachusetts Superior Court heard argument in Boston on Exxon's motion to set aside or modify the CID or issue a protective order—on grounds nearly identical to those Exxon raises here—and Attorney General Healey's cross-motion to compel Exxon's compliance with the CID. On January 11, 2017, that court denied Exxon's motion and granted Attorney General Healey's motion to compel. App. Exh. 1. The court ruled that it has personal jurisdiction over Exxon in Massachusetts and found Exxon's constitutional and other objections to the Attorney General's CID to be without merit. The court further ordered the parties to meet and confer on Exxon's production and provide a status report to the court by February 15, 2017.

## III.   ARGUMENT

## A.   THIS COURT LACKS PERSONAL JURISDICTION OVER ATTORNEY GENERAL HEALEY.

To proceed in this Court, Exxon must establish that "both the forum state's long-arm statute and federal due process permit the court to exercise personal jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Exxon can establish neither here. The posture of this case is nearly identical to the controlling Fifth Circuit decision in *Stroman*, which found personal jurisdiction lacking in a suit filed by a Texas company in Texas against an

─────────────

General Healey's motion to dismiss Exxon's original complaint as moot (Doc. No. 162).

Arizona state official in her official capacity challenging her enforcement of Arizona law against the plaintiff. Along with the Supreme Court's subsequent decision in *Walden*, which squarely rejects Exxon's principal argument that its alleged harms in Texas from Attorney General Healey's actions outside Texas support jurisdiction, *Stroman* compels the Court to dismiss this case for lack of personal jurisdiction.

It is firmly established that this Court can and should decide first the essential question of personal jurisdiction over Attorney General Healey before considering other dispositive grounds for dismissal. In *Ruhrgas*, the Supreme Court held that it was appropriate to resolve first the question of personal jurisdiction when "the absence of personal jurisdiction is the surer ground[.]"[7] 526 U.S. at 578. And in *Stroman,* although the defendant Arizona commissioner moved for dismissal on multiple grounds, including personal jurisdiction, the district court dismissed the case on *res judicata* and abstention grounds without reaching personal jurisdiction. 513 F.3d at 481, 489. The Fifth Circuit was adamant that the district court should have first considered personal jurisdiction: "Why the district court failed to consider personal jurisdiction over the Commissioner in a Texas federal court is unclear. This court *must do so*." *Id.* at 482 (emphasis added); *cf. Ruhrgas*, 526 U.S. at 577 (emphasis added) (citation and internal quotation marks omitted) ("[J]urisdiction is power to declare the law, and *without jurisdiction the court cannot proceed at all in any cause*."). The Court should dismiss this case now, without any further proceedings.

---

[7] *See also Alpine View*, 205 F.3d at 213 (emphasis added) (reading *Ruhrgas* "to direct lower courts facing multiple grounds for dismissal to consider the complexity of subject-matter jurisdiction issues raised by the case, *as well as concerns of federalism*, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction").

**B.      TEXAS'S LONG-ARM STATUTE DOES NOT APPLY TO ATTORNEY GENERAL HEALEY.**

The Texas long-arm statute permits assertion of jurisdiction over "a nonresident [who] does business in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The Attorney General is neither a "nonresident" nor "do[ing] business in [Texas]" within the meaning of the statute. As such, the long-arm statute does not reach Attorney General Healey.

The long-arm statute defines "nonresident" as either (1) "an individual who is not a resident of this state" or (2) "a foreign corporation, joint-stock company, association, or partnership." Tex. Civ. Prac. & Rem. Code Ann. § 17.041. Attorney General Healey meets neither definition. As in *Stroman*, the Attorney General is not sued here as an "individual," but rather "is acting in and was sued in her official capacity for enforcing [her state's] statutes." 513 F.3d at 482; FAC at ¶ 17 (Attorney General Healey sued "in her official capacity"). Attorney General Healey has acted under express statutory authority to investigate a violation of Massachusetts law. And as in *Stroman*, Exxon seeks to challenge "an out-of-state regulator's enforcement of her state's statute." 513 F.3d at 482. A state official sued in her official capacity is not an "individual" within the meaning of the long-arm statute because, under *Ex Parte Young*, 209 U.S. 123 (1908), the official's "conduct remains *state action* under the Fourteenth Amendment." *Stroman*, 513 F.3d at 482 (emphasis added). Moreover, the Attorney General plainly does not fit into "the only other class of nonresident defined by the statute"—"a foreign corporation, joint-stock company, association, or partnership"—which "includes business entities but not fellow states." *Id.* at 482-83. As the Fifth Circuit observed in *Stroman*, the "Texas statute offers no obvious rationale for including nonresident individuals sued solely in their official capacity under *Ex Parte Young*." *Id.* at 482-83.

Likewise, the Attorney General has not "do[ne] business" in Texas within the meaning of

the long-arm statute by initiating an investigation under Massachusetts law of whether Exxon has deceived Massachusetts investors and consumers. The long-arm statute identifies three examples of "doing business": (1) entering into a contract with a Texas resident, to be performed at least in part in Texas; (2) committing a tort in the state; or (3) recruiting Texas residents for employment. Tex. Civ. Prac. & Rem. Code Ann. § 17.042. The Attorney General has engaged in no such acts. Indeed, *Stroman* found that an official-capacity suit like this one does not reasonably constitute a "tort" claim within the long-arm statute. *Stroman*, 513 F.3d at 483 ("[O]nly by twisting the ordinary meaning of the terms covered by the long-arm statute is Arizona's regulatory activity intended to be encompassed and adjudicated in Texas courts.").[8]

Exxon argues that the Fifth Circuit's reasoning in *Stroman* should be ignored as dicta, pointing to a pair of cases for the unremarkable proposition that the Texas long-arm statute "'reaches as far as the federal constitutional requirements for due process will allow.'" Doc. No. 165 at 5 (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) and citing *Atwood Hatcheries v. Heisdorf & Nelson Farms*, 357 F.2d 847, 852 (5th Cir. 1966)). The lead opinion in *Stroman*, however, explicitly addressed that point, concluding that "the long-arm statute is coextensive with the limits of procedural due process *for those people and entities and activities that it describes*"—and it does not describe out-of-state government officials acting in their official capacities. 513 F.3d at 483 (emphasis added). And, unlike *Stroman*, neither case Exxon cites applies the long-arm statute to a lawsuit against an out-of-state government official acting in his or her official capacity. *See Spir Star*, 310 S.W.3d at 871 (Texas citizen suing German high-pressure hose manufacturer); *Atwood Hatcheries*, 357 F.2d at 849 (Texas farm suing

---

[8] In any event, Exxon's conclusory allegations of bad faith and bias fail to support a "plausible" claim, as required by Rule 8(a), that Attorney General Healey committed a tort against it by issuing a lawful CID. *See* Doc. No. 169 at 8-10. *See also* App. Exh. 1 at App. 008-013 (rejecting Exxon's allegations of wrongdoing).

Washington farm over contract for chicken breeding stock).[9]

Exxon also cites seven cases that it claims, wrongly, stand for the proposition that the Texas long-arm statute reaches out-of-state government officials sued in their official capacity. *See* Doc. No. 165 at 5. Not one of those cases, however, held that a court may exercise personal jurisdiction over an out-of-state official sued in his or her official capacity, and none of the seven cases addresses or contradicts the *Stroman* court's reading of the Texas long-arm statute. In fact, only three of the cases even involve out-of-state government officials sued in their official capacity, and two of those cite *Stroman* and explicitly follow its "reject[ion of] the idea that a nonresident government official may be haled into a Texas court simply because the effects of a ruling are felt in Texas," even with allegations of unconstitutional conduct. *Saxton v. Faust*, No. 3:09-cv-2458-K, 2010 WL 3446921 at *3 (N.D. Tex. Aug. 31, 2010) (Kinkeade, J.) (citing *Stroman*, 513 F.3d at 482-85); *see also Payne v. Cty. of Kershaw, S.C.*, No. 3:08-cv-0792-G, 2008 WL 2876592 at *5 (N.D. Tex. Jul. 25, 2008) (citing *Stroman*).[10] Indeed, four of the cases concern the *commercial* conduct of foreign state entities, which is entirely irrelevant here; they do not concern the conduct of out-of-state officials endeavoring to enforce their states' laws at all.[11]

---

[9] The *Atwood Hatcheries* case as well as the federal cases Exxon cited in its opposition to Attorney General Healey's motion to dismiss the original complaint predate *Stroman* by decades and do not, in any event, involve an out-of-state government official sued in his or her official capacity. *See* Doc. No. 60 at 6-7 (citing *Atwood Hatcheries*, 357 F.2d at 847; *Clark Advert. Agency, Inc. v. Tice*, 331 F. Supp. 1058, 1059 (N.D. Tex. 1971) (Texas corporation suing Kansas citizen and Missouri corporation in contract dispute); *Everly Aircraft Co. v. Killian*, 414 F.2d 591, 599 (5th Cir. 1969) (Texas father, as an individual and on minor daughter's behalf, suing Oregon amusement park ride manufacturer in products liability action)).

[10] The third case, *Perez Bustillo v. State of La.*, 718 S.W.2d 844 (Tex. Ct. App. 1986), did not inquire into whether the long-arm statute applied at all, instead dismissing for a lack of personal jurisdiction on due process grounds.

[11] *See 21 Turtle Creek Square, Ltd. v. N.Y. State Teachers' Ret. Sys.*, 425 F.2d 1366 (5th Cir. 1970) (Texas developer suing New York pension fund in dispute over financing for Dallas high-rise); *Bd. of Cty. Comm'rs v. Amarillo Hosp. Dist.*, 835 S.W.2d 115 (Tex. Ct. App. 1992) (Texas hospital suing Oklahoma county to recover costs of care provided to county's employee under implied contract); *Gulf Coast Int'l LLC v. Research Corp. of the Univ. of Haw.*, 490 S.W.3d 577 (Tex. Ct. App. 2016) (Louisiana company suing Hawaiian university for overdue payments on repairs of university's research vessel); *Markland v. Bay Cty. Sheriff's Office*, No. 1:14-cv-572, 2015

The Texas long-arm statute does not reach Attorney General Healey, and as such, this Court lacks personal jurisdiction over her.

## C.   EXERCISE OF PERSONAL JURISDICTION OVER THE ATTORNEY GENERAL IN TEXAS WOULD VIOLATE DUE PROCESS.

Even if the Texas long-arm statute purported to reach Attorney General Healey—and it does not—this Court's exercise of specific personal jurisdiction over her would violate due process.[12] The Attorney General lacks requisite "minimum contacts" with Texas—because she has not "purposely directed [her] activities toward [Texas] or purposely availed [herself] of the privileges of conducting activities there"—and the exercise of personal jurisdiction here would be manifestly unreasonable. *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)); *see Stroman*, 513 F.3d at 483 ("exercising personal jurisdiction over the [Arizona] Commissioner in the Southern District of Texas would violate due process").[13]

1.   <u>The Attorney General Lacks the Minimum Contacts with Texas Required for the Court to Exercise Personal Jurisdiction over Her.</u>

"In order for an exercise of personal jurisdiction to be consistent with due process, the nonresident defendant must have some minimum contact with the forum which results from an affirmative act on the part of the nonresident." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Where, as here,

---

WL 3430120 (E.D. Tex. May 28, 2015) (Texas individual suing Florida sheriff's department after being injured in accident involving a van allegedly operated by department's contractor in Nevada).

[12] Personal jurisdiction "may be general or specific." *Stroman*, 513 F.3d at 484. It is not disputed that the Attorney General lacks the "continuous and systematic general business contacts" with Texas required by due process for general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (holding general personal jurisdiction requires contacts "so constant and pervasive 'as to render [the defendant] essentially at home in the forum State'").

[13] Because Attorney General Healey lacks any suit-related contacts with Texas, as discussed below, the second prong of the *Nuovo Pignone* test, "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts," is not relevant. 310 F.3d at 378.

the plaintiff asserts specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121. The analysis "looks to the defendant's contacts with the forum State itself, *not the defendant's contacts with persons who reside there*." *Id*. at 1122 (emphasis added). These limits, imposed by due process, "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).

Here, Attorney General Healey not only lacks "affirmative" minimum contacts with Texas, she lacks *any* suit-related contacts with Texas at all. All of the acts on the part of the Attorney General alleged in Exxon's First Amended Complaint occurred in Massachusetts or New York. As set forth above, Attorney General Healey issued the CID under Massachusetts's Chapter 93A from her office in Massachusetts, to Exxon's registered agent in Massachusetts. *See* FAC at ¶ 69. The press conference and preceding meeting Exxon describes at length in its complaint —which provide no basis for legal action, in any event—took place in New York. FAC at ¶¶ 2, 27. Exxon also does not allege that the routine common interest agreement entered into by several Attorneys General—which Exxon trumpets as evidence of a conspiracy among them—was negotiated or signed in Texas. FAC at ¶ 52. These realities belie Exxon's spurious assertion that "all or a substantial part of the events giving rise to the claims occurred in the Northern District of Texas." FAC at ¶ 19. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court should not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

Indeed, at no point did the Attorney General take *any* "affirmative act" in Texas related to her investigation, let alone "purposefully avail[] [her]self of the privilege of conducting

activities" in Texas. *Holt*, 801 F.2d at 777. Likewise, serving the CID on Exxon's registered

agent in Massachusetts under Massachusetts law does not "invok[e] the benefits and protections

of [Texas's] laws," such that she "should reasonably anticipate being haled into court" in Texas.

*Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Indeed, Chapter 93A expressly

provides for enforcement of, or objections to, CIDs *only* in Massachusetts Superior Court. Mass.

Gen. Laws ch. 93A, §§ 6(7), 7.

The Attorney General's lack of suit-related Texas contacts is dispositive here. *See*

*Walden*, 134 S. Ct. at 1119, 1124-26 (finding no personal jurisdiction when defendant had no

contacts with forum State, even though plaintiff resided in forum and alleged injury there).

Indeed, in recent cases, the Fifth Circuit has held that out-of-state regulators who had taken

action against a Texas company for doing business in their states in violation of their respective

state laws lacked the required minimum contacts to support personal jurisdiction in Texas.

In *Stroman*, discussed above, a Texas-based real estate broker sued the Commissioner of

the Arizona Department of Real Estate in a Texas federal court to challenge a cease-and-desist

order issued by the Commissioner under Arizona law concerning the broker's activities with

Arizona purchasers. *See* 513 F.3d at 479-81. Because "the totality of the Commissioner's

contacts with Texas involves a cease and desist order [that was served in Texas] and

correspondence with [Plaintiff's] attorneys," the Fifth Circuit held that "the Commissioner, a

nonresident state official, could not have reasonably anticipated being haled into federal court in

Texas to defend her enforcement of the Arizona statute." *Id*. at 484.[14]

---

[14] The court also found consequential that, unlike cases where personal jurisdiction is reasonable because the defendant is engaged in a commercial, profit-making enterprise with a connection to the forum state, "the Commissioner was not engaged in commercial transactions to obtain a commercial benefit by acting in a governmental capacity to enforce Arizona law." *Stroman*, 513 F.3d at 485 (citing *Kulko v. Super. Ct.*, 436 U.S. 84, 96-98 (1978)).

Similarly, in *Stroman Realty, Inc. v. Antt,* 528 F.3d 382 (5th Cir. 2008) ("*Stroman II*"),

the Fifth Circuit again found a lack of personal jurisdiction in a suit brought by the same plaintiff

in Texas against California and Florida officials who, the plaintiff argued, had even more

extensive contacts with Texas than the defendant in *Stroman*. In *Stroman II*, the officials not only

served a cease and desist order on the plaintiff in Texas (and commenced enforcement

proceedings in their respective states) but also communicated with the Texas Real Estate

Commission and Texas Attorney General's office about the plaintiff. *Id.* at 386-87. But the court

held that these contacts did not represent "purposeful availment" by the California and Florida

officials "of the privileges of conducting business" in Texas. *Id.* at 386.

Here, the facts even more strongly support dismissal. Unlike the defendants in *Stroman*

and *Stroman II*, Attorney General Healey did not serve the CID in Texas or have any contact

with the state in connection with her investigation, therefore making it *even less* likely she would

anticipate being required to defend her enforcement of Massachusetts law in a Texas federal

court than the defendants in those cases.

Exxon's sole argument to avoid the *Stroman* holdings is that the *Stroman* cases do not

involve "constitutional torts"; yet to the contrary, both *Stroman* suits—like Exxon's—were also

brought under 42 U.S.C. § 1983, and alleged deprivation of constitutional rights (including those

guaranteed by the dormant Commerce Clause)—like Exxon's. *See* Doc. No. 165 at 10-11;

*Stroman*, 513 F.3d at 480 ("The district court dismissed [plaintiff's] action, which alleged

violations of the Commerce Clause under 42 U.S.C. § 1983."); *Stroman II*, 528 F.3d at 384

("Invoking 42 U.S.C. § 1983, Stroman sued Florida's Secretary of the Department of Business

and Professional Regulation[.]").[15] Accordingly, both *Stroman* cases require dismissal of this

---

[15] The Supreme Court and federal courts in other circuits have reached the same result in similar cases against out-of-state officials. *See Walden v. Fiore*, 134 S. Ct. 1115 (2014) (discussed *infra*); *United States v. Ferrara*, 54 F.3d

case.[16]

## 2.    Exxon's Claims of Injury in Texas Are Unavailing.

Exxon argues that this Court has personal jurisdiction over Attorney General Healey

because—through her remarks at the New York press conference and in issuing the CID in

Massachusetts—the Attorney General directed an intentional constitutional tort at Exxon, which

resides in Texas, harming it there. Even if that were true—which Attorney General Healey

strongly disputes—it would be an entirely insufficient basis to support personal jurisdiction.

Indeed, the Supreme Court emphatically rejected such an application of "effects-based" personal

jurisdiction in its unanimous opinion in *Walden*.

In *Walden*, the Court held that a federal court in Nevada lacked personal jurisdiction over

---

825 (D.C. Cir. 1995) (no personal jurisdiction in District of Columbia over New Mexico attorney disciplinary board chief counsel when she brought ethics enforcement action in New Mexico against attorney based on activities in District of Columbia); *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) (lack of personal jurisdiction over defendant accused of malicious prosecution where defendant served interrogatories in forum and caused plaintiff to respond to complaints in forum state); *Nelson v. Bulso*, 149 F.3d 701, 704-05 (7th Cir. 1998) (no personal jurisdiction in a malicious prosecution, abuse of process, and defamation suit, because no relevant conduct for those claims occurred in forum state nor did the defendant direct the actions of officials within the forum); *Shotton v. Pitkin*, No. Civ-15-0241-HE, 2015 WL 5091984, at *1-2 (W.D. Okla. Aug. 28, 2015) (dismissing § 1983 case involving Connecticut order against Oklahoma companies "directed to stopping the alleged violations in Connecticut, involving the companies' dealings with Connecticut residents, rather to any other activity that might have been originating from their operations in Oklahoma generally"); *see also Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333, 338-39 (D. Mass. 2013) (collecting cases to similar effect); *Payne v. Cty. of Kershaw*, No. 3:08-CV-0792-G, 2008 WL 2876592 (N.D. Tex. July 25, 2008).

[16] Indeed, the Fifth Circuit has found a lack of jurisdiction even when the defendant had seemingly substantial contacts with the forum, unlike the Attorney General's total lack of contacts in this case. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214 (5th Cir. 2012) (lack of personal jurisdiction when defendant licensed software from and negotiated other licensing agreements with Texas company and software license included a Texas choice of law provision); *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) (lack of personal jurisdiction in Texas when defendant sent orders for goods to and received commission checks from company in Texas, pursuant to contract underlying dispute with that company); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) (lack of personal jurisdiction in Texas when defendant negotiated contract with Texas company through communications and visits to Texas and Texas company performed work in Texas); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369 (5th Cir. 2003) (lack of personal jurisdiction in Texas in breach of contract action when defendant estate representative negotiated and signed contract at issue in Texas), *reh'g denied*, *clarification granted*, 82 F. App'x 144 (5th Cir. 2003); *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997) (nonresident defendant's service of process on plaintiff in forum state in another action does not support personal jurisdiction over defendant in forum state in abuse of process/malicious prosecution case); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026 (5th Cir. 1983) (lack of personal jurisdiction in Texas, even when defendant negotiated contract underlying dispute for goods to be manufactured in Texas via phone, letter, and travel to Texas).

a DEA agent who allegedly violated the plaintiff's constitutional rights by wrongly seizing almost $100,000 in cash in Georgia and writing a false affidavit in that state supporting the seizure. 134 S. Ct. at 1119-20. As here, the plaintiff in *Walden* argued that the district court had personal jurisdiction over the Georgia defendant because he intentionally directed conduct at the plaintiff, knowing that the plaintiff had a significant connection to Nevada and would suffer harm there. *See id*. at 1125. The Supreme Court rejected that argument. *Id.* Reviewing its "minimum contacts" jurisprudence, the Court emphasized that the inquiry must focus on "the defendant's contacts with *the forum State itself*, *not* the defendant's contacts with persons who reside there." *Id.* at 1122 (emphasis added); *see also id*. ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State."). Accordingly, the Court held that it was not enough for the plaintiff to allege, as Exxon does here, that a defendant's actions elsewhere have harmed the plaintiff in the forum State. *Id*. at 1125-26.[17] And despite Exxon's apparent attempt to distinguish *Walden* by alleging intentional tortious conduct on the part of Attorney General Healey (which she strongly denies), the *Walden* Court explained that the "same principles apply when intentional torts are involved." *Id.* at 1123.

Moreover, as *Walden* explains, the "effects" test that Exxon advances here is also not

---

[17] Lower courts have embraced *Walden*'s reasoning. *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 802 (7th Cir. 2014) (quoting *Walden*, 134 S. Ct. at 1122) (personal jurisdiction lacking in Indiana although out-of-state defendant could foresee that misleading emails and sales would harm the plaintiff in Indiana because "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum'" and "[a]ny decision that implies otherwise can no longer be considered authoritative"); *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (finding lack of personal jurisdiction because the effect of the defendant's tortious actions—the plaintiff's inability to access out-of-state funds—was not tied to the forum; "[r]ather, his [the plaintiff's] injury is entirely personal to him and would follow him wherever he might choose to live or travel"); *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state.").

supported by *Calder v. Jones*, 465 U.S. 783 (1984): "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum" and "is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact *with the forum State*. The proper question is not *where* the plaintiff experienced a particular injury or effect but *whether the defendant's conduct connects him to the forum in a meaningful way.*" 134 S. Ct. at 1125 (emphasis added).[18] Here, there is no such connection between the Attorney General and the State of Texas itself, much less a "meaningful" connection. The only connection Exxon alleges between the Attorney General and Texas is that the Attorney General intentionally issued the CID, *in Massachusetts*, allegedly in order to harm Exxon, which happens to be headquartered in Texas. The Supreme Court specifically rejected finding personal jurisdiction on such a basis in *Walden*:

> Petitioner's actions in [Massachusetts] did not create sufficient contacts with [Texas] simply because he allegedly directed his conduct at plaintiffs whom he knew had [Texas] connections. Such reasoning *improperly attributes a plaintiff's forum connections to the defendant* and makes those connections "decisive" in the jurisdictional analysis. It also obscures the reality that none of petitioner's challenged conduct had anything to do *with [Texas] itself*.

134 S. Ct. at 1125 (citation omitted) (emphasis added). *Compare* Doc. No. 165, n.21 ("ExxonMobil's claims thus arise out of the Attorney General's issuance of the CID to a company she knew to be based in Texas which seeks documents she could expect to be in Texas."). "[V]iewed through the proper lens—whether the *defendant's* actions connect him to the *forum*"—it is clear that the Attorney General's issuance of the CID to Exxon's registered agent in Massachusetts does not connect her to Texas and, as such, personal jurisdiction is

---

[18] "The crux of *Calder*," the Court wrote, was that the defendants wrote an allegedly defamatory "article for publication in California that was read by a large number of California citizens," thereby "connect[ing] the defendants' conduct to *California*, not just to a plaintiff who lived there." *Walden*, 134 S. Ct. at 1123-24.

lacking. *Walden*, 134 S. Ct. at 1124; *see also Stroman*, 513 F.3d at 486 (citation omitted) ("[T]he Commissioner is not 'expressly aim[ing]' her actions at Texas. Rather, her intent is to uphold and enforce the laws of Arizona.").

Importantly, under Exxon's expansive theory, personal jurisdiction over a defendant would exist whenever the plaintiff claimed some intentional harmful effect in its favored forum, notwithstanding the complete absence of any facts establishing a meaningful connection between the defendant and the forum. Such a rule would eviscerate jurisdictional due process limits that are intended to "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 134 S. Ct. at 1122; *see also Stroman*, 513 F.3d at 486 (rejecting "an interpretation of personal jurisdiction under which . . . any state official seeking to enforce her state's laws . . . could potentially be subjected to suit in any state where the validity of her [actions] were in question").[19]

This Court has reached the same result in cases involving similar facts. In *Saxton v. Faust*, for example, the plaintiffs sued a Utah judge under 42 U.S.C. § 1983 for allegedly violating their First, Fifth, and Fourteenth Amendment rights by sanctioning them for violating discovery and preliminary injunction orders in a case in Utah state court. 2010 WL 3446921, at *1. The defendant Utah judge lacked any contacts with Texas; the only contacts alleged by the plaintiffs "are the effects they have felt in Texas" of the judge's orders. *Id.* at *3. This Court

---

[19] Even before *Walden*, the Fifth Circuit had reached the same conclusion in *Stroman*. 513 F.3d at 486 (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) and *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001)) ("We have declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident."); *see also Bustos v. Lennon*, 538 F. App'x 565, 568 (5th Cir. 2013) ("Merely causing harm to a resident of a state is not sufficient . . . ."); *Allred*, 117 F.3d at 286 (explaining that plaintiffs' injury in the forum "is not a substitute for a nonresident's minimum contacts"); *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 526 (N.D. Tex. 2001) (To invoke jurisdiction based on the plaintiff suffering harm in Texas "would . . . destroy altogether the limits imposed by due process. Such a finding would allow every plaintiff who filed suit in its home state to justify assertion of jurisdiction over a defendant simply by averring that the plaintiff was injured by the defendant's out-of-state conduct.").

19

found that it lacked personal jurisdiction over the defendant judge, noting that "[t]he Fifth Circuit recently rejected the idea that a nonresident government official may be haled into a Texas court simply because the effects of a ruling are felt in Texas." *Id.* (citing *Stroman*, 513 F.3d at 482-85). The result should be the same here.[20]

In any case, even if a plaintiff's alleged injury in a forum state—resulting from a defendant's intentional, tortious, but wholly out-of-state conduct—was sufficient to confer personal jurisdiction over the defendant in the forum state, Exxon has not made and cannot make a *prima facie* showing of either injury or intentional tortious conduct on the part of Attorney General Healey. As discussed in the memorandum of law supporting Attorney General Healey's pending motion to dismiss (Doc. No. 125 at 22-25), Exxon's conclusory assertions and unsupported allegations are woefully inadequate to this task. Indeed, in its January 11, 2017, order, the Massachusetts Superior Court rejected Exxon's allegations—essentially the same as those before this Court, and at the core of Exxon's theory of intentional, constitutional tort—that Attorney General Healey lacked sufficient grounds for issuing the CID, that the CID was unduly burdensome or lacked specificity, and that her remarks at the March 29, 2016, press conference evinced bias against Exxon. App. Exh. 1 at App. 010-013. Importantly, the Massachusetts Superior Court found that Attorney General Healey's press conference statements merely articulated the legally required basis for her belief that Exxon has engaged in conduct that

---

[20] Likewise, other courts typically refuse to exercise personal jurisdiction over out-of-state government officials accused of directing constitutional torts at the forum in the course of their enforcement work. *See, e.g.*, *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,* 845 F.2d 113, 116 (6th Cir. 1988) (internal quotation marks omitted) (personal jurisdiction lacking where plaintiffs accused IRS employees of conspiring with state officials to violate plaintiff's constitutional rights because "totally unsupported allegations of conspiracy cannot constitute sufficient contacts with [forum] to justify an exercise of personal jurisdiction and we conclude[] that the allegation of conspiratorial activities in the forum state is insufficient to support jurisdiction under the long arm statute in the absence of some minimal factual showing"); *Gilbert v. DaGrossa,* 756 F.2d 1455, 1457, 1459 (9th Cir. 1985) (no personal jurisdiction over IRS employees who lived and worked outside the forum, even though plaintiff resided in the forum and claimed harm there from defendants' audit and transmittal of deficiency notices).

violates Chapter 93A—a belief she must hold prior to opening an investigation under Chapter

93A: "General Laws c. 93A, § 6 gives the Attorney General the power to conduct investigations

whenever she believes a person has engaged in or is engaging in any conduct in violation [of]

G.L. c. 93A. In the Attorney General's comments at the press conference, she identified the basis

for her belief that Exxon may have violated G.L. c. 93A." App. Exh. 1 at App. 012 (internal

citation omitted). To find personal jurisdiction over the Attorney General on the basis of such

plainly inadequate grounds would defeat core constitutionally guaranteed due process limits on

the exercise of jurisdiction.

      3.    <u>Exxon's Previously Cited Authorities for Personal Jurisdiction Are Outdated and Irrelevant.</u>

None of the cases that Exxon has previously cited in support of personal jurisdiction

provides a basis for the Court to depart from the clear rules of *Stroman* and *Walden*. In addition

to being decided years prior to *Walden*, each case Exxon cites is readily distinguishable from the

facts of this case.

Exxon cites *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619 (5th Cir. 1999), in support of its

misguided argument that personal jurisdiction attaches, without more, when a non-resident

defendant commits "an act outside the state that causes tortious injury within the state." *See, e.g.*,

Doc. No. 165 at 7 (quoting *Guidry*, 118 F.3d at 628). *Guidry* concerned a Louisiana consumer's

suit against tobacco industry associations that undertook an organized disinformation campaign

in Louisiana and elsewhere regarding the addictive and cancer-causing effects of tobacco use,

resulting in the consumer's addiction to tobacco and his development of cancer. *Guidry*, 188

F.3d at 623. The defendants' conduct there bears no reasonable resemblance to the Attorney

General's conduct in this case, and, indeed, the *Guidry* court *explicitly distinguished* that conduct

from *the sending of legal process in one state, allegedly causing harm in another state*, which

21

courts have deemed "insufficient as a 'minimum contact' for purposes of [personal] jurisdiction." *Id.* at 629 (citing *Allred v. Moore & Patterson*, 117 F.3d 278, 287 (5th Cir. 1997) and *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)). As those cases—and *Walden* and *Calder*—emphasize, the "effects" test for jurisdiction is not some "type of dramatic change in the due-process analysis," but

> [r]ather, [the test] is merely another way of assessing the defendant's relevant contacts with the forum State. The defendant must still purposefully avail himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . . [such that] the defendant himself [has] create[d] a substantial connection with the forum State.

*Wallace*, 778 F.2d at 395 (citations and internal quotation marks omitted). As discussed above, there is no such "substantial connection" between Attorney General Healey and Texas, whatever Exxon's alleged harm.[21]

Similarly, Exxon's citation to *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) should be disregarded, as the case is inconsistent with *Walden*. Exxon asserts that, "when a defendant intentionally directs a harm at Texas, she has 'purposefully availed herself of the privilege of causing a consequence in Texas,' thereby subjecting herself to jurisdiction in Texas courts." Doc. No. 165, at 7, 9 (quoting *Wien Air*, 195 F.3d at 213). But that position cannot be squared with *Walden*, for the reasons explained above. And even if *Wien Air* were still good law, Exxon has not alleged that Attorney General Healey directed any activity *at Texas itself.* Exxon offers essentially no evidence that Attorney General Healey intentionally directed any activity *at Texas*, as *Walden* and *Calder* require, nor even that she intentionally directed any harm at Exxon

---

[21] Indeed, Exxon has not shown that it has or will suffer *any* real harm *anywhere*—particularly because Exxon has already complied and continues to comply with a substantially similar subpoena from the State of New York, having produced more than a million responsive pages of documents to the New York Attorney General. *See* App. Exh. 1 at App. 011 ("At the hearing, both parties indicated that Exxon has already complied with its obligations regarding a similar demand for documents from the New York Attorney General. In fact, as of December 5, 2016, Exxon had produced 1.4 million pages of documents responsive to the New York Attorney General's request.").

in issuing the CID (or that Exxon has suffered any harm as a result, *see supra* note 21). The lack

of any connection here to Texas stands in marked contrast to the facts of *Wien Air*, where the

defendant directed fraudulent communications to Texas, rendered services in Texas, and made

multiple visits to Texas, during which the defendant made additional misrepresentations giving

rise to the suit. *Wien Air*, 195 F.3d at 212-14.[22] Other cases Exxon cites for the same proposition

are equally dissimilar to the present case.[23]

Exxon misreads these authorities, none of which alters the commands of *Stroman* and

*Walden,* which require that this case be dismissed for lack of personal jurisdiction.

4.   Exercise of Personal Jurisdiction over the Attorney General Would Be Unreasonable in This Case.

Due process also requires that the Court consider whether exercising personal jurisdiction

over the Attorney General would be "fair and reasonable." *Nuovo Pignone*, 310 F.3d at 378.

Each of the factors relevant to that determination—(1) the burden on the defendant; (2) the

interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial

system's interest in obtaining the most efficient resolution of controversies; and (5) the shared

interest of the states in furthering fundamental, substantive social policies, *see Asahi Metal*

---

[22] Exxon's reliance on *Bear Stearns Cos. v. Lavalle*, No. 3:00 Civ. 1900-D, 2001 WL 406217 (N.D. Tex. Apr. 18, 2001), for the proposition that allegedly tortious communications are sufficient to give rise to jurisdiction is similarly misplaced. Doc. No. 165 at 9. The Court in *Lavalle* found jurisdiction in Texas because, in addition to the defendant's harassing communications directed at the Texas plaintiff's employees, the defendant also *broke into and vandalized a property in Texas*, at the center of the parties' long-running dispute, which the Texas plaintiff repossessed. *See* 2001 WL 406217, at *3. The other case law Exxon cites to support its theory is even less on point. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 417-20 (5th Cir. 2001) (Doc. No. 60 at 10) (finding personal jurisdiction based on "stream of commerce" theory where defendant shipped its allegedly defective products into Texas 211 times); *Kalman v. Cortes*, 646 F. Supp. 2d 738 (E.D. Pa. 2009) (Doc. No. 165 at 8) (venue case making no reference to personal jurisdiction).

[23] *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (Doc. No. 165 at 9) (defendant made fraudulent call and sent fraudulent documents into Texas); *In re DuPuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-MD-2244-K, 2014 WL 3557392, at *2-*3 (N.D. Tex. Jul. 18, 2014) (Kinkeade, J.) (Doc. No. 165 at 9 n.21) (defendant undertook branded marketing campaign regarding allegedly defective product in forum); *Vanderbilt Mortg. & Fin v. Flores.*, 692 F.3d 358, 375-76 (5th Cir. 2012) (Doc. No. 165 at 10) (defendant executed contract at issue in Texas and marketed financing to plaintiffs in Texas).

*Indus. Co., Ltd. v. Super. Ct.*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen*, 444 U.S. at 292)—weigh heavily against the exercise of personal jurisdiction.

*First*, litigating in this Court is imposing and will continue to impose a heavy burden on Attorney General Healey, who has been compelled by the Local Rules to engage Texas counsel and whose offices and personnel are located in Massachusetts, despite the fact that the matter can be efficiently resolved in Massachusetts state courts, to which Chapter 93A assigns exclusive jurisdiction over enforceability of CIDs.[24] Indeed, in litigation Exxon itself initiated, the Massachusetts Superior Court has already heard and decided Exxon's motion to set aside or modify the CID and granted Attorney General Healey's motion to compel compliance with it. *See* App. Exh. 1.

*Second*, Texas has little stake in this litigation, beyond the fact that one of its residents, Exxon, is the plaintiff. The forum with the greatest (indeed, the only significant) interest is Massachusetts because at issue is the legality of enforcing a CID issued by the Massachusetts Attorney General under a Massachusetts statute, Chapter 93A, regarding Massachusetts investors and consumers. *See Stroman*, 513 F.3d at 487 (internal quotation marks and citation omitted) ("[A]lthough a Texas court certainly has an interest in determining the legitimacy of Texas statutes, states have little interest in adjudicating disputes over other states' statutes.").[25]

*Third*, dismissal would not harm Exxon's interests in obtaining relief in light of Exxon's parallel lawsuit and its attendant rights in Massachusetts state court.

*Fourth* and relatedly, resolution of this matter in the existing Massachusetts proceeding furthers the interests of the interstate judicial system in obtaining the most efficient resolution of

---

[24] Mass. Gen. Laws, ch. 93A, §§ 6(7), 7 (designating Massachusetts Superior Court exclusive forum for objections to CIDs and Attorney General's enforcement of CIDs).

[25] *Accord* App. Exh. 1 at App. 013-014 (denying Exxon request to stay Massachusetts court action because "interests of substantial justice dictate that the matter be heard in Massachusetts").

controversies. Parallel litigation in two states is duplicative, inefficient, and unwarranted. Particularly where Exxon has brought both suits, Exxon cannot fairly claim prejudice if this Court dismisses this case.

*Finally*, the fundamental interests of the several states are not served by the Court hearing this suit. As the Fifth Circuit wrote in *Stroman*, "[a]llowing the Southern District of Texas to exercise jurisdiction over [an Arizona official] creates the possibility that [she] will have to defend her attempt to enforce Arizona laws in courts throughout the nation . . . los[ing] the benefit of having the laws examined by local state or federal courts—courts that have special expertise interpreting its laws." 513 F.3d at 487.[26] The same reasoning applies to state attorneys general—eighteen of whom, from all parts of the country, share Attorney General Healey's concerns that a finding of jurisdiction here would greatly impede the vital enforcement of state laws.[27]

Exercising personal jurisdiction over Attorney General Healey would violate the due process guarantees of the United States Constitution, and Exxon's lawsuit should be dismissed.

## IV.   CONCLUSION

The Court should dismiss this action for lack of personal jurisdiction.

---

[26] Indeed, numerous federal courts have held that they lacked jurisdiction over an out-of-state attorney general. *See, e.g.*, *PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1189, 1189 n.8 (C.D. Cal. 2000) (cited with approval in *Stroman*, 513 F.3d at 487) ("conflict with state sovereignty is perhaps the most compelling factor [demonstrating the unreasonableness of asserting jurisdiction]—requiring the states to submit to California jurisdiction constitutes an extreme impingement on state sovereignty"); *see also Turner v. Abbott*, 53 F. Supp. 3d 61, 67-68 (D.D.C. 2014); *Cutting Edge Enters., Inc. v. Nat'l Ass'n of Att'ys Gen.*, 481 F. Supp. 2d 241, 245-49 (S.D.N.Y. 2007); *B & G Prod. Co. v. Vacco*, No. CIV.98-2436 ADM/RLE, 1999 WL 33592887, at *5 (D. Minn. Feb. 19, 1999).

[27] *See* Mem. Amici Curiae States at 18-20 (Doc. No. 54) (brief of Attorneys General of Maryland, New York, Alaska, Connecticut, Hawai'i, Illinois, Iowa, Kentucky, Maine, Minnesota, Mississippi, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, Virginia, Washington, the District of Columbia, and the U.S. Virgin Islands).

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS

By her attorneys:


/s/ Douglas A. Cawley

| | |
|---|---|
| Richard Johnston (*pro hac vice*) | Douglas A. Cawley |
| Chief Legal Counsel | Lead Attorney |
| richard.johnston@state.ma.us | Texas State Bar No. 04035500 |
| Melissa A. Hoffer (*pro hac vice*) | dcawley@mckoolsmith.com |
| Chief, Energy and Environment Bureau | Richard A. Kamprath |
| melissa.hoffer@state.ma.us | Texas State Bar No. 24078767 |
| Christophe G. Courchesne (*pro hac vice*) | rkamprath@mckoolsmith.com |
| Chief, Environmental Protection Division | MCKOOL SMITH, P.C. |
| christophe.courchesne@state.ma.us | 300 Crescent Court, Suite 1500 |
| I. Andrew Goldberg (*pro hac vice*) | Dallas, Texas 75201 |
| andy.goldberg@state.ma.us | (214) 978-4000 |
| Peter C. Mulcahy (*pro hac vice*) | Fax (214) 978-4044 |
| peter.mulcahy@state.ma.us | |
| Assistant Attorneys General | |
| OFFICE OF THE ATTORNEY GENERAL | |
| One Ashburton Place, 18th Floor | |
| Boston, MA 02108 | |
| (617) 727-2200 | |

Dated: February 1, 2017

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 1, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*/s/ Douglas. A. Cawley*
Douglas A. Cawley