IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| EXXON MOBIL CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:16-CV-469-K |
| ERIC TRADD SCHNEIDERMAN, Attorney General of New York, in his official capacity, and MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity, | ) |
| Defendants. | ) |

## APPENDIX

### ATTORNEY GENERAL MAURA HEALEY'S BRIEF IN SUPPORT OF DISMISSAL FOR LACK OF PERSONAL JURISDICTION

| **Exhibit** | **Description** | **Page(s)** |
|---|---|---|
| n/a | Declaration of Christophe G. Courchesne | - |
| 1 | *In re Civil Investigative Demand No. 2016-EPD-36*, No. 2016-1888-F (Mass. Super. Jan. 11, 2017) | App. 001-014 |

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS

By her attorneys:

| | |
|---|---|
| Richard Johnston (*pro hac vice*) | *s/ Douglas A. Cawley* |
| Chief Legal Counsel | Douglas A. Cawley |
| richard.johnston@state.ma.us | Lead Attorney |
| Melissa A. Hoffer (*pro hac vice*) | Texas State Bar No. 04035500 |
| Chief, Energy and Environment Bureau | dcawley@mckoolsmith.com |
| melissa.hoffer@state.ma.us | Richard A. Kamprath |
| Christophe G. Courchesne (*pro hac vice*) | Texas State Bar No. 24078767 |
| Chief, Environmental Protection Division | rkamprath@mckoolsmith.com |
| christophe.courchesne@state.ma.us | MCKOOL SMITH, P.C. |
| I. Andrew Goldberg (*pro hac vice*) | 300 Crescent Court, Suite 1500 |
| andy.goldberg@state.ma.us | Dallas, Texas 75201 |
| Peter C. Mulcahy (*pro hac vice*) | (214) 978-4000 |
| peter.mulcahy@state.ma.us | Fax (214) 978-4044 |
| Assistant Attorneys General | |
| OFFICE OF THE ATTORNEY GENERAL | |
| One Ashburton Place, 18th Floor | |
| Boston, MA 02108 | |
| (617) 727-2200 | |
| Fax (617) 727-9665 | |

Dated: February 1, 2017

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on February 1, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

                                */s/ Douglas A. Cawley*
                                Douglas A. Cawley

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:16-CV-469-K |
| ERIC TRADD SCHNEIDERMAN, Attorney General of New York, in his official capacity, and MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF CHRISTOPHE G. COURCHESNE

I, Christophe G. Courchesne, declare as follows:

1. My name is Christophe G. Courchesne. I am admitted to practice *pro hac vice* in this Court and am an Assistant Attorney General in and Chief of the Environmental Protection Division of the Office of Massachusetts Attorney General Maura Healey. I am one of the attorneys representing Maura Healey, Attorney General of Massachusetts, in her official capacity, in this case. I am over 18 years of age and am fully competent in all respects to make this Declaration. I have personal knowledge of the facts stated herein, and each of them is true and correct.

2. I submit this Declaration in support of the Attorney General's Brief in Support of Dismissal for Lack of Personal Jurisdiction.

3. Attached to this declaration as **Exhibit 1** is a true and accurate copy of a slip opinion of the Massachusetts Superior Court (Brieger, J.) in *In re Civil Investigative Demand No. 2016-EPD-36*, Civil Action No. 2016-1888-F, dated January 11, 2017.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2017.

*s/ Christophe G. Courchesne*
Christophe G. Courchesne (admitted *pro hac vice*)
christophe.courchesne@state.ma.us
Chief, Environmental Protection Division
Office of Attorney General Maura Healey
(617) 727-2200
(617) 727-9665 (fax)

# EXHIBIT 1

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                                 SUPERIOR COURT
                                                                             CIVIL ACTION
                                                                             NO. 2016-1888-F

IN RE CIVIL INVESTIGATIVE DEMAND NO. 2016-EPD-36,
ISSUED BY THE OFFICE OF THE ATTORNEY GENERAL

### ORDER ON EMERGENCY MOTION OF EXXONMOBIL CORPORATION TO SET ASIDE OR MODIFY THE CIVIL INVESTIGATIVE DEMAND OR ISSUE A PROTECTIVE ORDER AND THE COMMONWEALTH'S CROSS-MOTION TO COMPEL EXXONMOBIL CORPORATION TO COMPLY WITH CIVIL INVESTIGATIVE DEMAND NO. 2016-EPD-36

On April 19, 2016, the Massachusetts Attorney General issued a Civil Investigative Demand ("CID") to ExxonMobil Corporation ("Exxon") pursuant to G. L. c. 93A, § 6. The CID stated that it was issued as:

> [P]art of a pending investigation concerning potential violations of M.G.L. c. 91A, § 2, and the regulations promulgated thereunder arising both from (1) the marketing and/or sale of energy and other fossil fuel derived products to consumers in the Commonwealth ...; and (2) the marketing and/or sale of securities, as defined in M.G.L. c. 110A, §401(k), to investors in the Commonwealth, including, without limitation, fixed- and floating rate-notes, bonds, and common stock, sold or offered to be sold in the Commonwealth.

Appendix in Support of Petition and Emergency Motion of Exxon Mobil Corporation to Set Aside or Modify the Civil Investigative Demand or Issue a Protective Order, Exhibit B. The CID requests documents generally related to Exxon's study of $CO^2$ emissions and the effects of these emissions on the climate from January 1, 1976 through the date of production.

On June 16, 2016, Exxon commenced the instant action to set aside the CID. The Attorney General has cross-moved pursuant to G. L. c. 93A, § 7 to compel Exxon to comply with the CID. After a hearing and careful review of the parties' submissions, and for the reasons that follow, Exxon's motion to set aside the CID is **DENIED** and the Commonwealth's motion to

compel is **ALLOWED**, subject to this Order.

## DISCUSSION

General Laws c. 93A, § 6 authorizes the Attorney General to obtain and examine documents "whenever he believes a person has engaged in or is engaging in any method, act or practice declared to be unlawful by this chapter." Among the things declared to be unlawful by chapter 93A are unfair and deceptive acts or practices in the conduct of any trade or commerce. G. L. c. 93A, § 2(a). General Laws c. 93A, § 6 "should be construed liberally in favor of the government," see Matter of Civil Investigative Demand Addressed to Yankee Milk, Inc., 372 Mass. 353, 364 (1977), and the party moving to set aside a CID "bears a heavy burden to show good cause why it should not be compelled to respond," see CUNA Mutual Ins. Soc. v. Attorney Gen., 380 Mass. 539, 544 (1980). There is no requirement that the Attorney General have probable cause to believe that a violation of G. L. c. 93A has occurred; she need only have a belief that a person has engaged in or is engaging in conduct declared to be unlawful by G. L. c. 93A. Id. at 542 n.5. While the Attorney General must not act arbitrarily or in excess of her statutory authority, she need not be confident of the probable result of her investigation. Id. (citations omitted).

**I. Exxon's Motion to Set Aside the CID**

**A. Personal Jurisdiction**

Exxon contends that this court does not have personal jurisdiction over it in connection with any violation of law contemplated by the Attorney General's investigation. Memorandum of Exxon Mobil Corporation in Support of its Emergency Motion to Set Aside or Modify the Civil Investigative Demand or Issue a Protective Order, page 2. Exxon is incorporated in New

2

Jersey and headquartered in Texas. All of its central operations are in Texas.

Determining whether the court has personal jurisdiction over a nonresident defendant involves a familiar two-pronged inquiry: (1) is the assertion of jurisdiction authorized by the longarm statute, G. L. c. 223A, § 3, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution? Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Jurisdiction is permissible only when both questions draw affirmative responses. Id. As the party claiming that the court has the power to grant relief, the Commonwealth has the burden of persuasion on the issue of personal jurisdiction. Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 612 n.28 (1979).

The Commonwealth invokes jurisdiction under G. L. c. 223A, § 3(a), which permits the court to assert jurisdiction over a defendant if the defendant "either directly or through an agent transacted any business in the Commonwealth, and if the alleged cause of action arose from such transaction of business." Good Hope Indus., Inc., 378 Mass. at 6. The "transacting any business" language is to be construed broadly. See Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). "Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." Id. Whether the alleged injury "arose from" a defendant's transaction of business in Massachusetts is determined by a "but for" test. Id. at 771-772 (jurisdiction only proper if, *but for* defendant's solicitation of business in Massachusetts, plaintiff would not have been injured).

The CID says that the Attorney General is investigating potential violations arising from

3

Exxon's marketing and/or sale of energy and other fossil fuel derived products to Commonwealth consumers. The Commonwealth argues that Exxon's distribution of fossil fuel to Massachusetts consumers "through more than 300 Exxon-branded retail service stations that sell Exxon gasoline and other fuel products" satisfies the transaction of business requirement. Exxon objects because it contends that for the past five years, it has neither (1) sold fossil fuel derived products to consumers in Massachusetts, nor (2) owned or operated a retail store or gas station in Massachusetts. According to the affidavit of Geoffrey Grant Doescher ("Doescher"), the U.S. Branded Wholesale Manager, ExxonMobil Fuels, Lubricants and Specialities Marketing Company at Exxon, any service station or wholesaler in Massachusetts selling fossil fuel derived products under an "Exxon" or "Mobil" banner is independently owned and operated pursuant to a Brand Fee Agreement ("BFA"). Doescher says that branded service stations purchase gasoline from wholesalers who create ExxonMobil-branded gasoline by combining unbranded gasoline with ExxonMobil-approved additives obtained from a third-party supplier. The BFA also provides that Exxon agrees to allow motor fuel sold from these outlets to be branded as Exxon or Mobil-branded motor fuel.

Exxon provided to the court and the Commonwealth a sample BFA. By letter dated December 19, 2016, the Commonwealth argued that many provisions of the BFA properly give rise to this court's jurisdiction. The Commonwealth contends that the BFA provides many instances in which Exxon retains the right to control both the BFA Holder and the BFA Holder's franchisees.[1] For example, Section 15(a) of the BFA states:

---

[1] The BFA mandates that all BFA Holders require their outlets to meet minimum facility, product, and service requirements, Section 13, and provide a certain level of customer service, Section 16. Moreover, Exxon requires that the BFA Holder enter into written agreements with

4

> BFA Holder agrees to diligently promote and cause its Franchise Dealers to diligently promote the sales of Products, including through advertisements, all in accordance with the terms of this Agreement. BFA Holder hereby acknowledges and agrees that, notwithstanding anything set forth herein to the contrary, to insure the integrity of ExxonMobil trademarks, products and reputation, ExxonMobil shall have the authority to review and approve, in its sole discretion, all forms of advertising and sales promotions that will use media vehicles for the promotion and sale of any product, merchandise or services, in each case that (i) uses or incorporates and Proprietary Mark or (ii) relates to any Business operated at a BFA Holder Branded outlet. ... BFA Holder shall expressly require all Franchise Dealers to (a) agree to such review and control by ExxonMobil. ...

By letter dated December 27, 2016, Exxon disputes that any of the BFA's provisions establish the level of control necessary to attribute the conduct of a BFA Holder to Exxon. See Depianti v. Jan-Pro Franchising Int'l Inc., 465 Mass. 607, 617 (2013) (citation omitted) ("[T]he marketing, quality, and operational standards commonly found in franchise agreements are insufficient to establish the close supervisory control or right of control necessary to demonstrate the existence of a master/servant relationship for all purposes or as a general matter."); Lind v. Domino's Pizza LLC, 87 Mass. App. Ct. 650, 654-655 (2015) ("The mere fact that franchisors set baseline standards and regulations that franchisees must follow in an effort to protect the franchisor's trademarks and comply with Federal law, does not mean that franchisors have undertaken an agency relationship with the franchisee such that vicarious liability should apply."); Theos & Sons, Inc. v. Mack Trucks, Inc., 1999 Mass. App. Div. 14, 17 (1999)

---

each of its Franchise Dealers and in the agreement, the Franchise Dealer must commit to Exxon's "Core Values." Section 19. "Core Values" is defined on page one of the BFA:
> BHA Holder acknowledges that ExxonMobil has established the following core values ("Core Values") to build and maintain a lasting relationship with its customers, the motoring public:
> (1) To deliver quality products that consumers can trust.
> (2) To employ friendly, helpful people.
> (3) To provide speedy, reliable service.
> (4) To provide clean and attractive retail facilities.
> (5) To be a responsible, environmentally-conscious neighbor.

(obligations to render prompt and efficient service in accordance with licensor's policies and standards and to satisfy other warranty related service requirements did not constitute evidence of agency relationship because they were unrelated to licensee's day-to-day operations and specific manner in which they were conducted).

Here, though, Section 15 of the BFA evidences a retention of more control than necessary simply to protect the integrity of the Exxon brand. By Section 15, Exxon directly controls the very conduct at issue in this investigation – the marketing of Exxon products to consumers. See Depianti, 465 Mass. at 617 ("right to control test" should be applied to franchisor-franchisee relationship in such a way as to ensure that liability will be imposed only where conduct at issue properly may be imputed to franchisor). This is especially true because the Attorney General's investigation focuses on Exxon's marketing and/or sale of energy and other fossil fuel derived products to Massachusetts consumers. Section 15(a) makes it evident to the court that Exxon has retained the right to control the "specific policy or practice" allegedly resulting in harm to Massachusetts consumers. See id. (franchisor vicariously liable for conduct of franchisee only where franchisor controls or has right to control specific policy or practice resulting in harm to plaintiff). The quantum of control Exxon retains over its BFA Holders and the BFA Holders' franchisees as to marketing means that Exxon retains sufficient control over the entities actually marketing and selling fossil fuel derived products to consumers in the Commonwealth such that the court may assert personal jurisdiction over Exxon under G. L. c. 223A, § 3(a).

To determine whether such an exercise of personal jurisdiction satisfies – or does not satisfy – due process, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S.

6

462, 474 (1985). The plaintiff must demonstrate (1) purposeful availment of commercial activity in the forum State by the defendant; (2) the relation of the claim to the defendant's forum contacts; and (3) the compliance of the exercise of jurisdiction with "traditional notions of fair play and substantial justice." Bulldog Investors Gen. Partnership v. Secretary of the Commonwealth, 457 Mass. 210, 217 (2010) (citations omitted). Due process requires that a nonresident defendant may be subjected to suit in Massachusetts only where "there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." Good Hope Indus., Inc., 378 Mass. at 7 (citation omitted). "In practical terms, this means that an assertion of jurisdiction must be tested for its reasonableness, taking into account such factors as the burden on the defendant of litigating in the plaintiff's chosen forum, the forum State's interest in adjudicating the dispute, and the plaintiff's interest in obtaining relief." Tatro, 416 Mass. at 773.

      The court concludes that in the context of this CID, Exxon's due process rights are not offended by requiring it to comply in Massachusetts. If the court does not assert its jurisdiction in this situation, then G. L. c. 93A would be "de-fanged," and consequently, a statute enacted to protect Massachusetts consumers would be reduced to providing hollow protection against non-resident defendants. Compare Bulldog Investors Gen. Partnership, 457 Mass. at 218 (Massachusetts has strong interest in adjudicating violations of Massachusetts securities law; although there may be some inconvenience to non-resident plaintiffs in litigating in Massachusetts, such inconvenience does not outweigh Commonwealth's interest in enforcing its laws in Massachusetts forum). Also, insofar as Exxon delivers its products into the stream of

commerce with the expectation that they will be purchased by consumers in all states, including Massachusetts, it is not overly burdened by being called into court in Massachusetts. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (1980) (forum State does not exceed its powers under Due Process Clause if it asserts personal jurisdiction over corporation that delivers its products into stream of commerce with expectation that they will be purchased by consumers in forum State).

For all of these reasons, the court concludes that it has personal jurisdiction over Exxon with respect to this CID.

### B. Arbitrary and Capricious

Exxon next contends that the CID is not supported by the Attorney General's "reasonable belief" of wrongdoing. General Laws c. 93A, § 6 gives the Attorney General broad investigatory powers to conduct investigations whenever she *believes* a person has engaged in or is engaging in any conduct in violation of the statute. Attorney Gen. v. Bodimetric Profiles, 404 Mass. 152, 157 (1989); see Harmon Law Offices P.C. v. Attorney Gen., 83 Mass. App. Ct. 830, 834 (2013). General Laws c. 93A does not contain a "reasonable" standard, but the Attorney General "must not act arbitrarily or in excess of his statutory authority." See CUNA Mut. Ins. Soc., 380 Mass. at 542 n.5 (probable cause not required; Attorney General "need only have a belief that a person has engaged in or is engaging in conduct declared to be unlawful by G. L. c. 93A").

Here, Exxon has not met its burden of persuading the court that the Attorney General acted arbitrarily or capriciously in issuing the CID. See Bodimetric Profiles, 404 Mass. at 157 (challenger of CID has burden to show that Attorney General acted arbitrarily or capriciously). If Exxon presented to consumers "potentially misleading information about the risks of climate

8

change, the viability of alternative energy sources, and the environmental attributes of its products and services," see CID Demand Nos. 9, 10, and 11, the Attorney General may conclude that there was a 93A violation. See Aspinall v. Philip Morris Cos., 442 Mass. 381, 395 (2004) (advertising is deceptive in context of G. L. c. 93A if it consists of "a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information"); Commonwealth v. DeCotis, 366 Mass. 234, 238 (1974) (G. L. c. 93A is legislative attempt to "regulate business activities with the view to providing proper disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities"). The Attorney General is authorized to investigate such potential violations of G. L. c. 93A.

Exxon also argues that the CID is politically motivated, that Exxon is the victim of viewpoint discrimination, and that it is being punished for its views on global warming. As discussed above, however, the court finds that the Attorney General has assayed sufficient grounds – her concerns about Exxon's possible misrepresentations to Massachusetts consumers – upon which to issue the CID. In light of these concerns, the court concludes that Exxon has not met its burden of showing that the Attorney General is acting arbitrarily or capriciously toward it.[2]

---

[2] The court does not address Exxon's arguments regarding free speech at this time because misleading or deceptive advertising is not protected by the First Amendment. In re Willis Furniture Co., 980 F.2d 721, 1992 U.S. App. LEXIS 32373 * 2 (1992), citing Friedman v. Rogers, 440 U.S. 1, 13-16 (1979). The Attorney General is investigating whether Exxon's statements to consumers, or lack thereof, were misleading or deceptive. If the Attorney General's investigation reveals that Exxon's statements were misleading or deceptive, Exxon is not entitled to any free speech protection.

### C. Unreasonable Burden and Unspecific

A CID complies with G. L. c. 93A, §§ 6(4)(c) & 6(5) if it "describes with reasonable particularity the material required, if the material required is not plainly irrelevant to the authorized investigation, and if the quantum of material required does not exceed reasonable limits." Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc., 372 Mass. at 360-361; see G. L. c. 93A, § 6(4)(c) (requiring that CID describe documentary material to be produced thereunder with reasonable specificity, so as fairly to indicate material demanded); G. L. c. 93A, § 6(5) (CID shall not "contain any requirement which would be unreasonable or improper if contained in a subpoena duces tecum issued by a court of the commonwealth; or require the disclosure of any documentary material which would be privileged, or which for any other reason would not be required by a subpoena duces tecum issued by a court of the commonwealth").

Exxon argues that the CID lacks the required specificity and furthermore imposes an unreasonable burden on it. With respect to specificity, Exxon takes issue with the CID's request for "essentially all documents related to climate change," and with the vagueness of some of the demands. Memorandum of Exxon Mobil Corporation in Support of its Emergency Motion to Set Aside or Modify the Civil Investigative Demand or Issue a Protective Order, page 18. In particular, Exxon objects to producing documents that relate to its "awareness," "internal considerations," and "decision making" on climate change issues and its "information exchange" with other companies.

The court has reviewed the CID and disagrees that it lacks the requisite specificity. The CID seeks information related to what (and when) Exxon knew about the impacts of burning

10

fossil fuels on climate change and what Exxon told consumers about climate change over the years. Some of the words used to further describe that information – awareness and internal considerations – simply modify the "what" and "when" nature of the requests.

With respect to the CID being unreasonably burdensome, an effective investigation requires broad access to sources of information. See Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc., 372 Mass. at 364. Documentary demands exceed reasonable limits only when they "seriously interfere with the functioning of the investigated party by placing excessive burdens on manpower or requiring removal of critical records." Id. at 361 n.8. That is not the case here. At the hearing, both parties indicated that Exxon has already complied with its obligations regarding a similar demand for documents from the New York Attorney General. In fact, as of December 5, 2016, Exxon had produced 1.4 million pages of documents responsive to the New York Attorney General's request. It would not be overly burdensome for Exxon to produce these documents to the Massachusetts Attorney General.

Whether there should be reasonable limitations on the documents requested for other reasons, such as based upon confidentiality or other privileges, should be discussed by the parties in a conference guided by Superior Court Rule 9C. After such a meeting, counsel should submit to the court a joint status report outlining disagreements, if any, for the court to resolve.

**II. Disqualification of Attorney General**

Exxon requests the court to disqualify the Attorney General and appoint an independent investigator because her "public remarks demonstrate that she has predetermined the outcome of the investigation and is biased against ExxonMobil." Memorandum of Exxon Mobil Corporation in Support of its Emergency Motion to Set Aside or Modify the Civil Investigative

11

Demand or Issue a Protective Order, page 8. In making this request, Exxon relies on a speech made by the Attorney General on March 29, 2016, during an "AGs United for Clean Power" press conference with other Attorneys Generals. The relevant portion of Attorney General Healey's comments were:

> Part of the problem has been one of public perception, and it appears, certainly, that certain companies, certain industries, may not have told the whole story, leading many to doubt whether climate change is real and to misunderstand and misapprehend the catastrophic nature of its impacts. Fossil fuel companies that deceived investors and consumers about the dangers of climate change should be, must be, held accountable. That's why I, too, have joined in investigating the practices of Exxon Mobil. We can all see today the troubling disconnect between what Exxon knew, what industry folks knew, and what the company and industry chose to share with investors and with the American public.

General Laws c. 93A, § 6 gives the Attorney General power to conduct investigations whenever she believes a person has engaged in or is engaging in any conduct in violation G. L. c. 93A. Bodimetric Profiles, 404 Mass. at 157. In the Attorney General's comments at the press conference, she identified the basis for her belief that Exxon may have violated G. L. c. 93A. In particular, she expressed concern that Exxon failed to disclose relevant information to its Massachusetts consumers. These remarks do not evidence any actionable bias on the part of the Attorney General; instead it seems logical that the Attorney General inform her constituents about the basis for her investigations. Cf. Buckley v. Fitzsimmons, 509 U.S. 259, 278 (1993) ("Statements to the press may be an integral part of a prosecutor's job ... and they may serve a vital public function."); Goldstein v. Galvin, 719 F.3d 16, 30 (1st Cir. 2013) ("Not only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern."); see also Commonwealth v. Ellis, 429 Mass. 362, 372 (1999) (due process provisions require that prosecutor be disinterested in sense that prosecutor must not be – nor

12

appear to be – influenced in exercise of discretion by personal interests). It is the Attorney General's duty to investigate Exxon if she believes it has violated G. L. c. 93A, § 6. See also G. L. c. 12, § 11D (attorney general shall have authority to prevent or remedy damage to the environment caused by any person or corporation). Nothing in the Attorney General's comments at the press conference indicates to the court that she is doing anything more than explaining reasons for her investigation to the Massachusetts consumers she represents. See generally Ellis, 429 Mass. at 378 ("That in the performance of their duties [the Attorney General has] zealously pursued the defendants, as is [his or her] duty within ethical limits, does not make [his or her] involvement improper, in fact or in appearance.").

### III. Stay

On June 15, 2016, Exxon filed a complaint and a motion for preliminary injunction in the United States District Court for the Northern District of Texas alleging that the CID violates its federal constitutional rights. Exxon Mobil requests this court to stay its adjudication of the instant motion pending resolution of the Texas federal action. See G. L. c. 223A, § 5 ("When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just."); see WR Grace & Co. v. Hartford Accident & Indemnity Co., 407 Mass. 572, 577 (1990) (decision whether to stay action involves discretion of motion judge and depends greatly on specific facts of proceeding before court). The court determines that the interests of substantial justice dictate that the matter be heard in Massachusetts.

This matter involves the Massachusetts consumer protection statute and Massachusetts case law arising under it, about which the Massachusetts Superior Court is certainly more

13

familiar than would be a federal court in Texas. See New Amsterdam Casualty Co. v. Estes, 353 Mass. 90, 95-96 (1967) (factors to consider include administrative burdens caused by litigation that has its origins elsewhere and desirability of trial in forum that is at home with governing law). Further, the plain language of the statute itself directs a party seeking relief from the Attorney General's demand to the courts of the commonwealth. See G. L. c. 93A, § 6(7) (motion to set aside "may be filed in the superior court of the county in which the person served resides or has his usual place of business, or in Suffolk county"); see also G. L. c. 93A, § 7 ("A person upon whom notice is served pursuant to the provisions of section six shall comply with the terms thereof unless otherwise provided by the order of a court of the commonwealth."). The court declines to stay this proceeding.

## ORDER

For the reasons discussed above, it is hereby **ORDERED** that the Emergency Motion of ExxonMobil Corporation to Set Aside or Modify the Civil Investigative Demand or Issue a Protective Order is **DENIED** and the Commonwealth's Cross-Motion to Compel ExxonMobil Corporation to Comply with Civil Investigative Demand No. 2016-EPD-36 is **ALLOWED** consistent with the terms of this Order. The parties are **ORDERED** to submit a joint status report to the court no later than February 15, 2017, outlining the results of a Rule 9C Conference.

_____
Heidi E. Brieger
Associate Justice of the Superior Court

Dated at Lowell, Massachusetts, this 11th day of January, 2017.