IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § § | |
| Plaintiff, | § § | No. 4:16-CV-469-K |
| v. | § § § | |
| ERIC TRADD SCHNEIDERMAN, Attorney General of New York, in his official capacity, and MAURA TRACY HEALEY, Attorney General of Massachusetts, in her official capacity, | § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE NEW YORK ATTORNEY GENERAL'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ....................................................3

      A.    The Parties ....................................................................................................3

      B.    The NYOAG's Subpoena to Exxon and the Ongoing New York State Court Proceeding to Supervise Exxon's Subpoena Compliance ..........................................4

      C.    Exxon's Current Suit Against the NYOAG in Texas .................................5

ARGUMENT ..............................................................................................................7

I.    THE DUE PROCESS CLAUSE PROHIBITS THE EXERCISE OF PERSONAL JURISDICTION OVER THE NEW YORK STATE ATTORNEY GENERAL IN THIS CASE ...............................................................................7

      A.    The NYOAG Lacks the Requisite Minimum Contacts With Texas. .........8

      B.    It Would Be Unreasonable for a Texas-Based Court to Exercise Personal Jurisdiction Over the NYOAG in This Lawsuit. ......................................14

            1.    Core Principles of Federalism and Comity Preclude the Exercise of Personal Jurisdiction Over the NYOAG.......................................15

            2.    The Inefficiencies and Burdens of Exxon's Lawsuit Further Weigh Against This Court's Exercising Personal Jurisdiction. ................17

            3.    Dismissal for Lack of Personal Jurisdiction Would Not Harm Any Interests of Exxon or Texas. ........................................................18

II.   TEXAS' LONG-ARM STATUTE DOES NOT EXTEND TO THIS § 1983 OFFICIAL-CAPACITY LAWSUIT AGAINST THE NEW YORK ATTORNEY GENERAL ...............................................................................19

CONCLUSION ..........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*21 Turtle Creek Square, Ltd. v. N.Y. State Teachers' Ret. Sys.*,
    425 F.2d 1366 (5th Cir. 1970) ............................................................................21

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ............................................................................16

*Allred v. Moore & Peterson*,
    117 F.3d 278 (5th Cir. 1997) ...............................................................11, 12, 23

*Anzures v. Flagship Rest. Grp.*,
    819 F.3d 1277 (10th Cir. 2016) ..........................................................................13

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*,
    18 N.Y.3d 341 (2011) ..........................................................................................3

*Bd. of County Comm'rs v. Amarillo Hosp. Dist.*,
    835 S.W.2d 115 (Tex. App. 1992).......................................................................21

*Bear Stearns Cos. v. Lavalle*,
    No. cv. A. 300-cv-1900-D, 2001 WL 406217 (N.D. Tex. Apr. 18, 2001) .............12

*Bearry v. Beech Aircraft Corp.*,
    818 F.2d 370 (5th Cir. 1987) .........................................................................16, 18

*Bice v. La. Pub. Def. Bd.*,
    677 F.3d 712 (5th Cir. 2012) ...............................................................................17

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)........................................................................................11, 14

*Burstein v. State Bar of Cal.*,
    693 F.2d 511 (5th Cir. 1982) ........................................................................ 15-16

*Calder v. Jones*,
    465 U.S. 783 (1984)............................................................................................13

*Ex Parte Young*,
    209 U.S. 123 (1908)............................................................................................20

*Google, Inc. v. Hood*,
    822 F.3d 212 (5th Cir. 2016) .........................................................................17, 23

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                      **Page(s)**

*Guidry v. U.S. Tobacco Co.*,
   188 F.3d 619 (5th Cir. 1999) ......................................................................11

*Gulf Coast Int'l, L.L.C. v. Research Corp. of Univ. of Hawaii*,
   490 S.W.3d 577 (Tex. App. 2016) ...............................................................21

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ......................................................................................8

*Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*,
   283 S.W.3d 838 (Tex. 2009) ................................................................20, 21

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997) ....................................................................................20

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
   No. 3:11-MD-2244-K, 2014 WL 3557392 (N.D. Tex. July 18, 2014)..................12

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ......................................................................18

*Kalman v. Cortes*,
   646 F. Supp. 2d 738 (E.D. Pa. 2009) .........................................................14

*Kelly v. Gen. Interior Constr., Inc.*,
   301 S.W.3d 653 (Tex. 2010)...................................................................19, 23

*Kentucky v. Graham*,
   473 U.S. 159 (1985)....................................................................................20

*Lewis v. Fresne*,
   252 F.3d 352 (5th Cir. 2001) ......................................................................11

*Matter of Am. Dental Coop., Inc. v. Att'y-Gen.*,
   127 A.D.2d 274 (1st Dep't 1987) ................................................................11

*McFadin v. Gerber*,
   587 F.3d 753 (5th Cir. 2009) ......................................................................16

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)..........................................................................16

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                      **Page(s)**

*Michiana Easy Livin' Country, Inc. v. Holten,*
    168 S.W.3d 777 (Tex. 2005)..........................................................................16

*Nuovo Pignone, SpA v. Storman Asia M/V,*
    310 F.3d 374 (5th Cir. 2002) ......................................................................14

*Perez Bustillo v. Louisiana,*
    718 S.W.2d 844 (Tex. App. 1986)...............................................................21

*Picot v. Weston,*
    780 F.3d 1206 (9th Cir. 2015) ....................................................................13

*PTI, Inc. v. Philip Morris Inc.,*
    100 F. Supp. 2d 1179 (C.D. Cal. 2000) .....................................................15

*Rhurgas AG v. Marathon Oil,*
    526 U.S. 574 (1999)......................................................................................1

*Searcy v. Parex Res., Inc.,*
    496 S.W.3d 58 (Tex. 2016)..........................................................................11

*Stroman Realty, Inc. v. Antt,*
    528 F.3d 382 (5th Cir. 2008) .............................................................. passim

*Stroman Realty, Inc. v. Wercinski,*
    513 F.3d 476 (5th Cir. 2008) .............................................................. passim

*Terracom v. Valley Nat. Bank,*
    49 F.3d 555 (9th Cir. 1995) ........................................................................19

*United States v. Ferrara,*
    54 F.3d 825 (D.C. Cir. 1995) ........................................................................9

*Walden v. Fiore,*
    134 S. Ct. 1115 (2014)............................................................................8, 13

*Waldman v. Palestine Liberation Org.,*
    835 F.3d 317 (2d Cir. 2016).........................................................................13

*Wallace v. Herron,*
    778 F.2d 391 (7th Cir. 1985) .......................................................................12

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                        **Page(s)**

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ...................................................................12

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...........................................................................15

**Laws**

Fed. R. Civ. P. 4 ........................................................................................19

N.Y. C.P.L.R.
    404........................................................................................................18
    2308......................................................................................................11

N.Y. Executive Law § 63 ...........................................................................3

N.Y. Gen. Bus. Law
    art. 23-A...............................................................................................3
    § 349.....................................................................................................3

Tex. Civ. Prac. & Rem. Code
    § 1.001.................................................................................................22
    §§ 17.041–17.045.....................................................................19, 20
    § 17.041...............................................................................................20
    § 17.042...............................................................................................22
    § 17.044...............................................................................................20

Tex. Gov't Code § 312.005........................................................................21

Tex. Rev. Civ. Stat. art. 2031b, § 3 (West 1974)....................................22

Tex. Rev. Civ. Stat. art. 2031b, § 4 (West Supp. 1981)..........................22

**Miscellaneous Authorities**

Bill Analysis, S.B. 797, 69th Regular Session (1985),
    http://www.lrl.state.tx.us/LASDOCS/69R/SB797/SB797_69R.pdf#page=1 .......................22

Cal. Att'y Gen., Press Release, Attorney General Kamala D. Harris Announces
    That Volkswagen Will Pay Additional $86 Million to California over
    Emissions "Defeat Devices" (July 6, 2016), https://oag.ca.gov/news/press-
    releases/attorney-general-kamala-d-harris-announces-volkswagen-will-pay-
    additional-86 ........................................................................................10

**<u>TABLE OF AUTHORITIES (cont'd)</u>**

**Miscellaneous Authorities**                                                                     **Page(s)**

Md. Att'y Gen., Press Release, Secretary of State Wobensmith, Attorney General
    Frosh Announce Dissolution of Scam Cancer Charities (Mar. 30, 2016),
    http://governor.maryland.gov/2016/03/30/secretary-of-state-wobensmith-
    attorney-general-frosh-announce-dissolution-of-scam-cancer-charities/ ..............................10

Mich. Att'y Gen., Press Release, Cox Demands Vehicle Data from Toyota (Mar.
    24, 2010), http://www.michigan.gov/ag/0,1607,7-164--234101--,00.html ...........................10

Miss. Att'y Gen., Press Release, AG Jim Hood Announces Settlement with
    Volkswagen Over Emissions Fraud (June 28, 2016),
    http://www.ago.state.ms.us/releases/ag-jim-hood-announces-settlement-with-
    volkswagen-over-emissions-fraud-mississippi-to-receive-2-5-million-in-
    compensation/ ......................................................................................................................10

Nat'l Ass'n of Att'ys Gen., Press Release, 50 States Sign Mortgage Foreclosure
    Joint Statement (Oct. 13, 2010), http://www.naag.org/naag/media/naag-
    news/joint-statement-of-the-mortgage-foreclosure-multistate-group.php............................10

Tex. Att'y Gen., Civil Investigative Demand to Wells Fargo Financial Inc. (Oct.
    1, 2004), available at https://www.texasattorneygeneral.gov/files/cpd/
    cid_wellsfargo.pdf ...............................................................................................................10

Tex. Att'y Gen., Consumer Protection – NorVergence,
    https://www.texasattorneygeneral.gov/cpd/norvergence.......................................................10

Wash. Att'y Gen., Press Release, Multistate Settlement Puts the Brakes on Toyota
    (Feb. 14, 2013), http://www.atg.wa.gov/news/news-releases/multistate-
    settlement-puts-brakes-toyota ..............................................................................................10

## PRELIMINARY STATEMENT

Exxon Mobil Corp. ("Exxon") brought this suit in Texas against the Attorneys General of New York and Massachusetts in their official capacities, to enjoin each of them from enforcing subpoenas they issued in connection with their investigations of Exxon for possible violations of their own State's laws against securities fraud, business fraud, and consumer fraud. By the time that Exxon moved to join the New York Attorney General as a defendant in October 2016, it had been complying with New York's investigative Subpoena for some eleven months. And even as it pursues this lawsuit in Texas, Exxon has been representing to the New York court that is supervising its compliance with the Subpoena that it is cooperating fully. Indeed, Exxon has recently stated that it intends to complete its production of documents responsive to the Subpoena by February 15, 2017, two weeks from now.

The New York Attorney General's Office (NYOAG) respectfully submits this memorandum pursuant to the Court's order directing the parties to file supplementary briefs on the issue of personal jurisdiction. The memoranda of law previously submitted in connection with the NYOAG's motion to dismiss explained that this Court lacks personal jurisdiction over the New York Attorney General.[1] Moreover, the NYOAG established that in light of the federalism and comity concerns implicated by this suit, the question of personal jurisdiction over the NYOAG must be addressed before any other issue. *See Rhurgas AG v. Marathon Oil*, 526 U.S. 574, 586-88 (1999). The NYOAG now submits this brief in response to this Court's order, to address the lack of personal jurisdiction in greater detail.

---

[1] *See* Mem. of Law in Support of the N.Y. Att'y Gen.'s Mot. to Dismiss the First Am. Cmpl. (ECF No. 134) ("NYOAG Mem."); Reply Mem. of Law in Support of the N.Y. Att'y Gen.'s Mot. to Dismiss the First Am. Cmpl. (ECF No. 170) ("NYOAG Reply"). Undefined capitalized terms have the meanings given in these prior memoranda.

Controlling authority makes clear that Exxon's connection to Texas does not give this Court personal jurisdiction over New York Attorney General Schneiderman: an out-of-state law-enforcement official being sued in his official capacity for investigating Exxon in a different State for potential violations of that State's laws. *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008); *see also Stroman Realty, Inc. v. Antt*, 528 F.3d 382 (5th Cir. 2008). As an initial matter, the NYOAG lacks the requisite minimum contacts with Texas and it would be unreasonable for this Court to exercise personal jurisdiction over the NYOAG in light of the serious federalism and comity concerns presented by Exxon's suit. Moreover, it would be an unwarranted waste of judicial resources and would encourage improper forum shopping to permit Exxon to raise claims to a Texas federal court that, despite numerous opportunities, Exxon has never sought to raise before the New York court that has been supervising Exxon's Subpoena compliance since October 2016. Indeed, Exxon's representations to the New York court—that it does not dispute the good faith of the New York Attorney General's investigation or the constitutionality of the Subpoena—are completely at odds with the claims it presses before this Court.

Finally, even if the Due Process Clause were to permit the exercise of personal jurisdiction over the NYOAG under the circumstances of this case, this Court would still lack a legal basis for personal jurisdiction because the Texas long-arm statute does not extend to the NYOAG here. Neither the State of New York nor the New York Attorney General sued in his official capacity falls within the statute's definition of the entities covered by the long-arm statute. Nor is the NYOAG "doing business" in Texas within the meaning of the statute by investigating whether Exxon's representations to New York investors and consumers violated New York's consumer and investor-protection laws.

2

## BACKGROUND AND PROCEDURAL HISTORY

### A.    The Parties

Exxon, the plaintiff in this suit, is a global company incorporated in New Jersey. N.Y. App. 9 (Am. Cmpl. ¶ 15). Although the company's executive offices are located in Texas, Exxon operates and markets products throughout "the United States and most other countries of the world," and its common stock is traded on the New York Stock Exchange. *See* Am. Cmpl. Ex. HH (ECF No. 101-7) at cover page, 1.

Defendant Eric T. Schneiderman is sued in his official capacity as Attorney General of the State of New York. N.Y. App. 9 (Am. Cmpl. ¶ 16). In his role as New York State's chief legal officer, Attorney General Schneiderman protects the people and interests of New York by enforcing state securities fraud, business fraud, and consumer fraud laws—a responsibility that includes "investigating and intervening at the first indication of possible securities fraud on the public." *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 18 N.Y.3d 341, 352 (2011) (quotation marks omitted). New York's nearly century-old securities law—the Martin Act—gives the Attorney General broad law-enforcement powers to investigate suspected fraud in the offer, sale, or purchase of securities. *See generally* N.Y. Gen. Bus. Law ("GBL") art. 23-A. New York's consumer fraud law authorizes the Attorney General to investigate suspected fraud against New York consumers, *see, e.g.,* N.Y. GBL § 349. And New York's business fraud law gives the Attorney General authority to investigate suspected persistent fraud or illegality in the conduct of business in New York, *see* N.Y. Executive Law § 63(12).

**B.     The NYOAG's Subpoena to Exxon and the Ongoing New York State Court Proceeding to Supervise Exxon's Subpoena Compliance**

Central to this case is an investigative Subpoena that the NYOAG issued to Exxon in November 2015 pursuant to New York's securities, consumer, and business fraud laws. N.Y. App. 52-69. The Subpoena seeks, among other things, documents concerning Exxon's disclosures about the impact of climate change on its business operations and financial reporting, and the basis for such disclosures. N.Y. App. 59-60. These documents will allow the NYOAG to determine whether Exxon has made false or misleading representations to New York consumers and investors about the impacts of climate change, including the impact of climate change on Exxon's business operations and financial reporting.

Exxon has neither objected to the Subpoena nor moved to quash or modify it. To the contrary, as of the time the Amended Complaint was filed, Exxon had provided the NYOAG with more than one million pages of documents. N.Y. App. 31-32 (Am. Cmpl. ¶ 74). As of the filing of this memorandum, Exxon's document production exceeds two-and-a-half million pages.

On October 14, 2016, the NYOAG commenced a proceeding in New York State Supreme Court (Honorable Barry R. Ostrager) under article 4 of New York's Civil Procedure Law and Rules (C.P.L.R.), seeking to compel compliance with a subpoena that the NYOAG had served on Exxon's external auditor, PricewaterhouseCoopers LLP ("PwC") in connection with the NYOAG's investigation of Exxon. N.Y. App. 125-27. Exxon asserted no federal constitutional challenge to the NYOAG's investigation or to the subpoena to PwC, raising only a claim of accountant-client privilege under Texas law. N.Y. App. 129-30, 132-59. At oral argument, Justice Ostrager noted that Exxon had not disputed that the subpoena to PwC was "reasonable and appropriate," or that the NYOAG was acting in "good faith." N.Y. App. 164, 176. Exxon even

4

confirmed that the NYOAG "ha[s] the right to conduct the investigation" into the accuracy of Exxon's public statements. N.Y. App. 169.

On November 14, 2016, after Exxon's undue delay in turning over certain categories of documents, the NYOAG moved the New York court to compel production of such documents and to establish a schedule for the prompt production of all remaining documents responsive to the Subpoena. N.Y. App. 192-94. Exxon again raised no federal constitutional challenge. N.Y. App. 196-220. Exxon has reported to the New York court that it is "fully complying with its obligations with regard to the Subpoena." N.Y. App. 230. As Exxon informed Justice Ostrager on December 9, 2016, the "big picture" is that Exxon does not dispute the good faith of the NYOAG's investigation or the constitutionality of the Subpoena, and it will produce all responsive materials. N.Y. App. 612-13. Exxon recently informed the NYOAG that it will complete its production by February 15, 2017, two weeks from today.

### C.    Exxon's Current Suit Against the NYOAG in Texas

In June 2016, Exxon filed this lawsuit, seeking to enjoin enforcement of an investigative subpoena issued to it by Massachusetts Attorney General Maura Healey. *See* Cmpl. ¶¶ 13-14 (ECF No. 1). Exxon did not at that time name the NYOAG as a defendant and did not seek any relief from the NYOAG's Subpoena, under which Exxon had then been producing documents for multiple months, and under which it continues to produce documents to this day.

It was not until October 2016 that Exxon sought leave to amend its complaint to add the New York Attorney General as a defendant. *See* Mot. for Leave to File a First Am. Cmpl. (ECF No. 74). Exxon's motion to amend was filed on October 17, 2016: immediately after the NYOAG initiated proceedings in New York State Supreme Court to compel compliance with the subpoena

to PwC, N.Y. App. 125-26. By the time that Exxon moved to add the NYOAG to this lawsuit, Exxon had been complying with the NYOAG's Subpoena without objection for some eleven months.

Through this federal action, Exxon seeks an order permanently enjoining the New York Attorney General from enforcing the Subpoena that Exxon claims it will have complied with by February 15, 2017. Exxon alleges that the Subpoena was issued in violation of Exxon's rights under, *inter alia*, the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, as well as the Dormant Commerce Clause. N.Y. App. 2-3, 43-46 (Am. Cmpl. at 1-2, ¶¶ 109-121). According to Exxon's October 2016 Amended Complaint, a March 2016 press conference held at the NYOAG's New York City offices changed the "playing field," showing the NYOAG's presumptively legitimate investigation to be "improper[ly] and politically motivated."[2] N.Y. App. 12-13, 41 (Am. Cmpl. ¶¶ 27, 99). Although Exxon now alleges that the Subpoena was secretly issued "to deter" unspecified corporate speech on the general topic of climate change, N.Y. App. 8 (Am. Cmpl. ¶ 13), neither the March 2016 press conference nor any other development since then has deterred Exxon from continuing voluntarily to produce responsive documents to the NYOAG, *see* N.Y. App. 230, 612, or from making public statements on the topic of climate change.[3]

In an effort to justify haling the New York Attorney General into a federal court nearly two thousand miles from New York, the Amended Complaint notes that the NYOAG served the

---

[2] Exxon offers no explanation for why it took the company approximately seven months to notice and respond to this changed "playing field," N.Y. App. 12-13 (Am. Cmpl. ¶¶ 27).

[3] http://corporate.exxonmobil.com/en/current-issues/climate-policy/climate-perspectives/our-position; *see also* http://corporate.exxonmobil.com/en/energy/energy-outlook.

Subpoena by email on Exxon's Texas-based General Counsel. N.Y. App. 10 (Am. Cmpl. ¶ 19). The Amended Complaint further alleges that the Subpoena has required Exxon "to collect and review" records that Exxon has chosen for its own corporate purposes to store in Texas. *See id.* Exxon has told the New York court supervising its Subpoena compliance that this federal case was filed in Texas, as opposed to New York, because Exxon would rather not have to "fight" multiple State Attorneys General "separately" in those officials' respective States. N.Y. App. 173.

The NYOAG has moved to dismiss Exxon's Amended Complaint on a number of grounds, including for this Court's lack of personal jurisdiction over the New York Attorney General. Following the filing of that motion to dismiss, this Court directed the parties to file additional briefs further addressing the question whether the Court has personal jurisdiction over the Attorneys General of New York and Massachusetts.

## ARGUMENT

### I.  THE DUE PROCESS CLAUSE PROHIBITS THE EXERCISE OF PERSONAL JURISDICTION OVER THE NEW YORK STATE ATTORNEY GENERAL IN THIS CASE

The Fifth Circuit has squarely held that the Due Process Clause does not permit a federal court to exercise personal jurisdiction over the government official of another State who is being sued in his official capacity for acts undertaken to enforce that State's laws. *Stroman Realty, Inc. v. Wercinski,* 513 F.3d 476, 483-89 (5th Cir. 2008) ("*Stroman I*"). Under such circumstances, due process is not satisfied because (1) the state officer lacks "minimum contacts" with the forum state, and (2) asserting personal jurisdiction would be unreasonable. *See id.* That controlling precedent compels dismissal of Exxon's claims here.

### A.   The NYOAG Lacks the Requisite Minimum Contacts With Texas.

Exxon seeks to hale the NYOAG into this Court under the doctrine of "case-linked" personal jurisdiction (also known as "specific" jurisdiction), which applies where a suit arises from "an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."[4] *Walden v. Fiore*, 134 S. Ct. 1115, 1222 n.6 (2014) (quotation marks omitted). But for "minimum contacts" to exist for purposes of that doctrine, the defendant must have committed "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of [the forum State's] laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *accord Stroman I*, 513 F.3d at 484. Moreover, the relevant "act" by the defendant must be "*suit-related* conduct." *Walden*, 134 S. Ct. at 1121.

Here, as the Fifth Circuit's *Stroman* decisions establish, the NYOAG's suit-related conduct—all of which took place in New York—does not invoke the benefits and protections of Texas's laws. *See Stroman I*, 513 F.3d at 485-86; *see also Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 386-87 (5th Cir. 2008) ("*Stroman II*"). In *Stroman I*, the Fifth Circuit held that the Texas federal courts lacked personal jurisdiction over an Arizona state official who sent a cease-and-desist letter seeking to enforce Arizona's real-estate licensing regulations against a Texas-based real-estate broker that "chose to deal in Arizona timeshares and with Arizona residents." 513 F.3d at 486. The court reasoned that the Arizona regulator had not availed herself "of the privilege of conducting activities" in Texas by fulfilling her state law duty to "uphold and enforce the laws of"

---

[4] Exxon correctly does not contend that the NYOAG is subject to "general," or "all-purpose" jurisdiction, which "permits a court to assert jurisdiction over a defendant based on a forum connection *unrelated* to the underlying suit (*e.g.*, domicile)." *Walden*, 134 S. Ct. at 1222 n.6 (emphasis added).

8

Arizona. *Id*. at 484, 486.

In this case, as in *Stroman I,* the suit-related conduct at issue consists solely of an out-of-state law-enforcement official's investigation into whether a company with a presence in Texas has potentially violated the laws of the out-of-state official's home state. The NYOAG has not "avail[ed] itself of any of Texas's protections" through its investigation—undertaken in New York—into the truthfulness of representations made to New York investors and consumers by Exxon: a company that does business in New York, has stock traded on the New York Stock Exchange, is incorporated in New Jersey, and happens to have headquarters and document storage-space in Texas. *See Stroman II*, 528 F.3d at 386. Indeed, concluding that minimum contacts with Texas exist in a case such as this would turn the due-process analysis upside down. The NYOAG did not avail itself of Texas's protections; by contrast, Exxon purposefully initiated a connection with New York in order to enjoy the privilege of conducting business there, under the protections of New York's laws. New York's investigation is simply an attempt to ensure Exxon's compliance with New York laws protecting New York investors and consumers. *See Stroman I*, 513 F.3d at 486.

The NYOAG thus has not formed the requisite minimum contacts with Texas by investigating, in New York, whether business conduct that Exxon has directed at New York has violated New York law. *See id.*; *accord United States v. Ferrara*, 54 F.3d 825, 830–31 (D.C. Cir. 1995). Holding otherwise would mean that every state official investigating a potential violation of her State's laws "could potentially be subjected to suit in any state" where the person or entity under investigation happened to operate, or happened to store subpoenaed information. *See Stroman I*, 513 F.3d at 486. As commerce frequently crosses state lines, to protect their citizens, State Attorneys General often need to enforce their laws against businesses that are headquartered

9

in other jurisdictions.[5] But under Exxon's theory of jurisdiction, the Texas Attorney General, for example, would be subject to the personal jurisdiction of the federal courts of another State whenever he issues a subpoena to a corporation headquartered outside Texas to investigate whether that company defrauded Texas consumers or investors in violation of Texas's consumer-protection statutes. *See, e.g.*, Civil Investigative Demand to Wells Fargo Financial Inc. (Oct. 1, 2004) (investigatory demand sent from Texas Attorney General to New Jersey-based company); *see generally* Tex. Att'y Gen., Consumer Protection – NorVergence.

As the Fifth Circuit has recognized, considerable disruption to state law-enforcement efforts would result if state officials could be haled into any one of many federal courts located in different States based solely on their investigation of potential violations of their own State's laws. *See Stroman I*, 513 F.3d at 486. And the Fifth Circuit, whose rulings are controlling here, has thus declared itself "unwilling to establish such a broad principle" of minimum contacts, *id.* at 487.

Contrary to Exxon's contentions, N.Y. App. 9-10 (Am. Cmpl. ¶¶ 18-19); Opp. at 5, 7-11, the NYOAG did not purposefully invoke the benefits and protections of Texas law by emailing to Exxon's General Counsel—a Texas-based employee—a subpoena issued under New York law to

---

[5] For example, in recent years, State Attorneys General have investigated and taken enforcement action to protect State citizens from being victimized by scam charities, *see* Md. Att'y Gen., Press Release, Secretary of State Wobensmith, Attorney General Frosh Announce Dissolution of Scam Cancer Charities (Mar. 30, 2016), and by mortgage loan servicers, *see* Nat'l Ass'n of Att'ys Gen., Press Release, 50 States Sign Mortgage Foreclosure Joint Statement (Oct. 13, 2010). Other examples include the enforcement actions that State Attorneys General have undertaken against foreign vehicle manufacturers and their U.S. subsidiaries for selling defective and noncompliant vehicles to State residents. *See, e.g.*, Miss. Att'y Gen., Press Release, AG Jim Hood Announces Settlement with Volkswagen Over Emissions Fraud (June 28, 2016); Cal. Att'y Gen., Press Release, Attorney General Kamala D. Harris Announces That Volkswagen Will Pay Additional $86 Million to California over Emissions "Defeat Devices" (July 6, 2016); Wash. Att'y Gen., Press Release, Multistate Settlement Puts the Brakes on Toyota (Feb. 14, 2013); Mich. Att'y Gen., Press Release, Cox Demands Vehicle Data from Toyota (Mar. 24, 2010).

investigate potential violations of New York law.[6] As the Fifth Circuit has observed in several cases, an out-of-state law-enforcement officer does not avail himself "of any Texas protections" simply by sending enforcement-related documents into Texas. *See, e.g., Stroman I*, 513 F.3d at 480-81, 484, 487 (cease-and-desist letter and inquiries to Texas-based witnesses); *Stroman II*, 582 F.3d at 384, 386 (cease-and-desist order and letter to Texas Real Estate Commission regarding cease-and-desist order); *see also Allred v. Moore & Peterson*, 117 F.3d 278, 286-87 (5th Cir. 1997) (civil summons and complaint and interrogatories). Indeed, the place where a company under investigation chooses to receive its mail is precisely the type of "fortuitous" or "random" circumstance that does not suffice to establish the minimum contacts required by due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985) (quotation marks omitted).[7]

In arguing that minimum contacts nonetheless exist between the NYOAG and Texas, Exxon relies on cases in which out-of-state defendants allegedly transmitted *multiple* communications into Texas that were purportedly tortious in *themselves*, thereby giving rise to the plaintiffs' claims.[8] Opp. at 7, 9. Those holdings do not govern this case because there can be no

---

[6] As the NYOAG has previously explained, the Subpoena is not self-executing and can be enforced only through judicial proceedings in which NYOAG establishes to the satisfaction of a New York court "that the subpoena was authorized," N.Y. C.P.L.R. 2308(b); *Matter of Am. Dental Coop., Inc. v. Att'y-Gen.*, 127 A.D.2d 274, 280 (1st Dep't 1987) (NYOAG must establish its "[legal] authority, the relevance of the items sought, and some factual basis for [the] investigation"); see also NYOAG Mem. at 12.

[7] *See also Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 74-75 (Tex. 2016) (holding that personal jurisdiction in Texas was lacking where defendant would have engaged with Texas-based corporate representatives via email and telephone in the same manner wherever they might have been located and derived no benefit from their Texas location).

[8] *See, e.g., Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (defendant allegedly engaged in fraud during phone call into Texas, then sent loan documents and stock certificates containing misrepresentations into Texas); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (defendants made false representations "to the plaintiffs and other residents in

argument here that "the actual content of" New York's Subpoena to Exxon "gives rise to intentional tort causes of action," *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). As a rule, "[o]nly those contacts out of which the claim arises count in specific jurisdiction analysis." *Stroman II*, 528 F.3d at 387. And here, New York's Subpoena truthfully recites the New York laws under which the Subpoena was issued and itemizes several document requests. N.Y. App. 52-69. Indeed, Exxon acknowledges that its various (and meritless) claims arise not from the Subpoena but from the alleged "ulterior motive" behind the NYOAG's broader investigation. N.Y. App. 43, 47-48 (Am. Cmpl. ¶¶ 107, 128).

Exxon has also argued in this litigation that its federal claims are based partly on the NYOAG's filing of a New York state court action to enforce the Subpoena. *See* Opp. at 13. But filing suit against a Texas resident in the courts of another State, even "for purportedly improper motives," is an "insufficient contact" with Texas to permit a Texas court to adjudicate claims arising from the filing of the out-of-state lawsuit. *See Allred*, 117 F.3d at 285-87; *see also Wallace v. Herron*, 778 F.2d 391, 395, 397 (7th Cir. 1985) (California attorneys' filing of claims and motions against Indiana resident in a California court created only "attenuated" connection to Indiana).

---

Louisiana"); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (defendant allegedly directed "letters, faxes, and phone calls into Texas" containing material misrepresentations and omissions); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-MD-2244-K, 2014 WL 3557392, at *2 (N.D. Tex. July 18, 2014) (defendants widely circulated misleading advertising to forum residents) (citing *Guidry*, 188 F.3d at 628); *Bear Stearns Cos. v. Lavalle,* No. cv. A. 300-cv-1900-D, 2001 WL 406217, at *3 (N.D. Tex. Apr. 18, 2001) (defendant damaged plaintiff's property and made "numerous harassing telephone calls and sent harassing e-mails to plaintiffs' employees").

Finally, the requisite minimum contacts between the NYOAG and Texas cannot be established by Exxon's allegation, N.Y. App. 9-10 (Am. Cmpl. ¶¶ 18-19); Opp. at 5, 7-11, that the NYOAG intentionally directed conduct at Exxon with the knowledge that this conduct would have "the effect of causing" Exxon an injury in Texas. As both the United States Supreme Court and the Fifth Circuit have explained, case-specific personal jurisdiction cannot be created based solely on a "mere injury to a forum resident,"[9] even where that injury is alleged to have been caused by intentionally tortious conduct.[10] *See Walden*, 134 S. Ct. at 1125; *see also Stroman I*, 513 F.3d at 486. In *Walden*, for example, the Supreme Court held that a Nevada court lacked personal jurisdiction over a Georgia police officer who unlawfully searched a Nevada resident at a Georgia airport—even though the resident claimed that he suffered the effects of the search in his Nevada home. *See* 134 S. Ct. at 1125-26.

Similarly, in *Stroman I*, the Fifth Circuit held that a Texas court could not exercise personal jurisdiction over an out-of-state law-enforcement officer based on claims that the official's allegedly unconstitutional enforcement actions adversely affected the Texas-based company

---

[9] To be sure, injury to a forum resident may be "jurisdictionally relevant," but "only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 134 S. Ct. at 1125. Thus, for example, in *Calder v. Jones*, 465 U.S. 783 (1984), a California court was held to have "effects" jurisdiction over a libel claim against out-of-state journalists because the fact that the false article at issue was published to and read by Californians "connected the defendant's conduct to *California*, not just to a plaintiff who lived there." *Walden*, 134 S. Ct. at 1124.

[10] The United States Courts of Appeals for the Second, Ninth, and Tenth Circuits have likewise recognized and applied the principle that personal jurisdiction cannot be exercised where—as here—the defendant's suit-related connection with the forum state is limited to interactions with or alleged harm to a forum-resident plaintiff. *See, e.g.*, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337-38 (2d Cir. 2016) (terror attacks overseas targeting forum residents); *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1281-82 (10th Cir. 2016) (business dealings with a forum resident); *Picot v. Weston*, 780 F.3d 1206, 1213-15 (9th Cir. 2015) (same).

13

subject to the regulatory action.[11] 513 F.3d at 485-86; *see also Stroman II,* 528 F.3d at 386-87. So too here: the mere "effects" that Exxon claims to have felt in Texas—for example, the purported chilling of its speech and "seizure" of its papers, *see* Opp. at 8-9—cannot as a matter of law suffice to establish the requisite minimum contacts between the New York Attorney General and Texas.[12]

### B.   It Would Be Unreasonable for a Texas-Based Court to Exercise Personal Jurisdiction Over the NYOAG in This Lawsuit.

Due process also bars the exercise of personal jurisdiction over the NYOAG here for the independent reason that doing so would be unfair and unreasonable. *See Burger King*, 471 U.S. at 476-78; *Stroman I*, 513 F.3d at 487. The "reasonableness" prong of the due-process analysis considers (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the States' shared interests in furthering important social policies. *Burger King*, 471 U.S. at 477; *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 382 (5th Cir. 2002). As *Stroman I* makes clear, the foregoing factors counsel strongly against haling the New York Attorney General into a Texas federal court to defend a subpoena issued

---

[11]  Exxon mistakenly attempts to distinguish the *Stroman* cases on the ground that the law-enforcement activities at issue there "did not purport to affect conduct in Texas." Opp. at 10. In fact, as the Fifth Circuit's decisions make clear, Stroman's "only office" was in Texas, *Stroman II*, 528 F.3d at 383, and the regulatory actions were thus "based upon conduct which occurred entirely in Texas," *Stroman I*, 513 F.3d at 485.

[12] Exxon misplaces its reliance on *Kalman v. Cortes,* 646 F. Supp. 2d 738 (E.D. Pa. 2009). *See* Opp. at 8. That decision held that *venue* was not improper in the plaintiff's judicial district because the alleged suppression of the plaintiff's speech was more significant than the government's decision to suppress the speech in that case. *See* 646 F. Supp. 2d at 741-42. Here, Exxon has identified the NYOAG's alleged decision in New York to suppress Exxon's speech as the central basis for Exxon's legal claims. *See, e.g.,* N.Y. App. 9, 43, 47-48 (Am. Cmpl. ¶¶ 18, 107, 128).

under New York law to investigate potential violations of New York's securities fraud, business fraud, and consumer protection laws.

>    **1.    Core Principles of Federalism and Comity Preclude the Exercise of Personal Jurisdiction Over the NYOAG.**

"Federalism and state sovereignty are an essential part of the constraints that due process imposes upon personal jurisdiction." *Stroman I*, 513 F.3d at 488*; see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292-94 (1980) (due process serves as an "instrument of interstate federalism"). These "shared interest[s] of the several states" in providing comity and respect to each coequal sovereign in our federal system preclude a federal district court in one State from exercising personal jurisdiction over another State's law-enforcement official for claims arising out of that official's enforcement of his own State's laws. *Stroman I*, 513 F.3d at 488; *see Burstein v. State Bar of Cal.*, 693 F.2d 511, 522-23 (5th Cir. 1982) (due process prevents federal court's exercise of personal jurisdiction over a different State's regulatory agency).

Requiring the NYOAG to litigate the propriety of a New York investigative subpoena in Texas's federal courts would "constitute[] an extreme impingement on [New York's] state sovereignty.*" PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1189 n.8 (C.D. Cal. 2000). Such an exercise of jurisdiction would impair New York's sovereign integrity by allowing the federal courts of a different State to oversee and review a New York law-enforcement officer's state-law investigation. *See Stroman I*, 513 F.3d at 486-87. In addition, New York would lose "the benefit of having" its own investigations examined by its own "local state or federal courts," which possess "special expertise" in such matters. *Id.* Indeed, these federalism concerns are particularly heightened here, where Exxon challenges the state-law investigations of two different State Attorneys General in a non-local forum and raises distinct questions of *both* New York and

15

Massachusetts law in trying to do so. N.Y. App. 25, 28-29 (Am. Cmpl. ¶¶ 61, 69).

Exxon attempts to dismiss these federalism and comity concerns as "alarmism" by arguing that its lawsuit is uniquely based on the "intentional direction" of a subpoena into Texas that "resulted in constitutional torts." Opp. at 12. But there is no principled distinction between Exxon's constitutional claims here and the constitutional claims asserted by the plaintiffs in the *Stroman* cases. Indeed, under Exxon's expansive theory of personal jurisdiction, *every* recipient of a state-law subpoena—or, for that matter, every target of a state-law investigation—could drag a non-resident investigating official into the federal court of another State simply by alleging that the subpoena or other investigatory act violates the recipient's federal constitutional rights. As the Fifth Circuit and other federal courts have already held, the "principles of interstate federalism embodied in the Constitution" do not permit such a broad and disruptive result.[13] *Stroman I*, 513 F.3d at 487 (quotation marks omitted); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 801-02 (7th Cir. 2014) ("*de facto* universal jurisdiction" inconsistent with due process). And as the Texas Supreme Court has emphasized, such an invocation of "directed-a-tort jurisdiction confuses the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005).

---

[13]   Contrary to Exxon's contention, *see* Opp. at 11, federal courts have often dismissed lawsuits when it would be unreasonable to exercise jurisdiction over an out-of-state defendant. *See, e.g., Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373, 377 (5th Cir. 1987) (Delaware-incorporated, Kansas-headquartered defendant)*; Burstein,* 693 F.2d at 522-23 (California-based defendant); *Metro. Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 564, 569 (2d Cir. 1996) (Delaware-incorporated, Pennsylvania-headquartered defendant). Exxon is mistaken in seeking to rely on *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009), which addressed a federal court's jurisdiction over private, nonresident defendants—circumstances that do not trigger the federalism and comity concerns raised by a lawsuit against a nonresident state official investigating state-law violations. *See id.* at 756-58.

**2.** **The Inefficiencies and Burdens of Exxon's Lawsuit Further Weigh Against This Court's Exercising Personal Jurisdiction.**

The inefficiencies and burdens that would be imposed on the interstate judicial system and the NYOAG by this Court's exercise of personal jurisdiction also weigh heavily in favor of dismissal.

Permitting Exxon to pursue this lawsuit would create duplicative, inefficient, and unwarranted litigation in light of the ongoing proceeding in New York state court to supervise Exxon's compliance with the Subpoena. Exxon has appeared before the New York court on multiple occasions since October 2016 without reserving any objections to that court's jurisdiction. N.Y. App. 164, 169, 176, 196-220. Moreover, Exxon has represented to the New York court that it is continuing to comply with the Subpoena and plans to complete production by January 31, 2017, N.Y. App. 227-228, 236, a deadline since extended to February 15, 2017. Exxon has never raised to the New York court any constitutional objections to the validity of the Subpoena—despite having a full and fair opportunity to do so. *See, e.g., Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 718-19 (5th Cir. 2012) (state courts presumptively competent to adjudicate federal constitutional claims); *see also Google, Inc. v. Hood,* 822 F.3d 212, 225 & n.10 (5th Cir. 2016) (explaining that recipient of subpoena issued by Mississippi Attorney General "could raise" First Amendment objections to the subpoena in the Mississippi courts). Instead, Exxon's counsel has repeatedly stated to the New York court that it intends to fully comply with the Subpoena. See *supra* at 4-5.

Under these circumstances, it would be a waste of judicial resources to permit Exxon to pursue the present claims in a Texas court rather than raise those claims before the New York court already overseeing its Subpoena compliance. In addition, a ruling to that effect would promote unfair forum shopping. The unreasonableness of such a result counsels strongly against

jurisdiction. *See Stroman I*, 513 F.3d at 487-88; *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 617 (5th Cir. 2008) (declining jurisdiction so that all issues between the parties could be addressed in a single forum).

Exercising jurisdiction here would also impose unfair burdens on the NYOAG. The NYOAG is already expending time and resources in the New York court—the proper forum for adjudicating challenges to the Subpoena—to ensure Exxon's full compliance. The NYOAG should not simultaneously be haled into a faraway forum, required to hire private local counsel, and forced to address claims that could be resolved through the ongoing New York proceeding.

### 3. Dismissal for Lack of Personal Jurisdiction Would Not Harm Any Interests of Exxon or Texas.

Contrary to Exxon's assertions, *see* Opp. at 11-12, the remaining reasonableness factors further confirm the unreasonableness of this Court's exercising personal jurisdiction over the New York Attorney General here. Exxon does not possess any "distinct interest" in seeking relief from a Texas federal court because Exxon is free to raise all of its constitutional claims to the New York court overseeing its Subpoena compliance. *See Bearry*, 818 F.2d at 377; N.Y. C.P.L.R. 404(a). Indeed, Exxon's contention that "it should not be forced to litigate in New York," Opp. at 12, is belied by the fact that it is already litigating in New York without objecting to that forum's jurisdiction, and the fact that Exxon itself chose to establish a connection to New York by selling stock and doing business there.

Finally, Texas has no substantial interest in this lawsuit. A forum State has "little interest" in opining on another State's laws or on the propriety of a state-law investigation that is already

being supervised by another State's courts.[14] *See Stroman I*, 513 F.3d at 487 (quotation marks omitted). And any interest that Texas might have in providing relief to a forum resident is diminished when that resident is a corporation that has chosen to incorporate itself in another State and operate in other States. *See Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995). Exxon is incorporated in New Jersey and does business nationwide. See *supra* at 3.

## II.   TEXAS' LONG-ARM STATUTE DOES NOT EXTEND TO THIS § 1983 OFFICIAL-CAPACITY LAWSUIT AGAINST THE NEW YORK ATTORNEY GENERAL

If this Court were to conclude that due process allows this § 1983 official-capacity suit to be brought against the New York Attorney General in Texas (and it should not), the Court would still need to resolve whether the exercise of personal jurisdiction complies with Texas' long-arm statute. Tex. Civ. Prac. & Rem. Code §§ 17.041–17.045;[15] *see also* Fed. R. Civ. P. 4(k)(1)(A) (providing for personal jurisdiction over defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). "[T]he long-arm statute is coextensive with the limits of procedural due process" only "for those people and entities and activities that it describes." *Stroman I*, 513 F.3d at 482; *accord, e.g.*, *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010) (recognizing that the federal due process and Texas statutory analyses are separate and distinct). And for the reasons discussed by the Fifth Circuit in *Stroman I*, the long-arm statute simply does not encompass this challenge "to an out-of-state regulator's enforcement of [his] state's [laws]," 513 F.3d at 482.

---

[14] Exxon's Texas law claims are plainly barred by sovereign immunity (NYOAG Mem. at 24; NYOAG Reply at 10) and thus irrelevant to the personal-jurisdiction analysis.

[15] The long-arm statute is reproduced in the appendix to this brief. *See* Second Suppl. App'x in Supp. of Def. Eric T. Schneiderman's Mot. to Dismiss Exxon Mobil's First Am. Cmpl. (N.Y. App.) 623-29.

The Texas long-arm statute, Tex. Civ. Prac. & Rem. Code §§ 17.041-17.045, authorizes the exercise of jurisdiction over a "*nonresident* who *engages in business*" in Texas "in any proceeding that arises out of the business done in [Texas] and to which the nonresident is a party." *Id.* § 17.044(c) (emphasis added).

To begin with, the New York Attorney General sued in his official capacity does not satisfy the definition of "nonresident" in the long-arm provision, which defines that term to include (1) "an individual who is not a resident of [Texas]," or (2) "a foreign corporation, joint-stock company, association, or partnership." *See id.* § 17.041. Official-capacity suits against state officials under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), rest on a legal fiction designed to permit "suits for prospective relief that avoid the Eleventh Amendment bar," *Stroman I*, 513 F.3d at 482. In such a suit, the State, as a sovereign entity, thus remains the real party in interest. *See, e.g.*, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997).

Accordingly, the long-arm statute's reference to "an *individual* who is not a resident [of Texas]," *see* Tex. Civ. Prac. & Rem. Code § 17.041(1) (emphasis added), does not cover the New York Attorney General sued in his *official* capacity. *See also, e.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). As the Fifth Circuit has observed, "the Texas statute offers no obvious rationale" for construing this reference to include a nonresident sister-state official who is being "sued solely in [his] official capacity under *Ex Parte Young*" as a representative of the State itself—the type of suit that Exxon has brought here. *Stroman I*, 513 F.3d at 482–83 (emphasis added); *see* Opp. at 7 (acknowledging that action is brought under *Ex Parte Young*); *see also Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009) (statute is to be interpreted according to the "plain and common meaning of the statute's words" (quotation marks omitted)).

20

"Moreover, the only other class of nonresident defined by the statute" covers "business entities," as opposed to "fellow states." *Stroman I*, 513 F.3d at 483.

No language in § 17.041 supports Exxon's argument that the long-arm statute extends to official-capacity suits against other States' officials. In opposing the NYOAG's motion to dismiss for lack of personal jurisdiction, Exxon primarily relied on two inapposite contractual cases, both of which long predate the *Stroman* cases, *see* Opp. at 6. *See 21 Turtle Creek Square, Ltd. v. N.Y. State Teachers' Ret. Sys.*, 425 F.2d 1366, 1367 (5th Cir. 1970) (suit against New York corporate pension fund that financed project in Dallas); *Bd. of County Comm'rs v. Amarillo Hosp. Dist.*, 835 S.W.2d 115, 118-19 (Tex. App. 1992) (suit against Oklahoma municipal subdivision for payment of medical expenses).[16] Those holdings do not supply the missing "rationale" for concluding that Texas' long-arm statute "subsumes the *Ex Parte Young* fiction." *Stroman I*, 513 F.3d at 482-83. Indeed, the lack of any supporting precedent for Exxon's claims "exposes the novelty" of Exxon's "maneuver in this case." *Id.* at 488.

To the extent Exxon is seeking a judicial expansion of the long-arm statute's definition of "nonresident," that provision's use of the word "include" does not permit a court to read in additional non-enumerated categories. As the legislative history of the long-arm statute shows, such an expansion of the statute would be contrary to the drafters' and enactors' intent.[17] The prior

---

[16] The remaining cases cited by Exxon address the sufficiency of the defendant's contacts under the Due Process Clause, rather than the language of the Texas long-arm statute. *See, e.g.*, *Gulf Coast Int'l, L.L.C. v. Research Corp. of Univ. of Hawaii*, 490 S.W.3d 577, 583 (Tex. App. 2016); *Perez Bustillo v. Louisiana*, 718 S.W.2d 844, 846-47 (Tex. App. 1986).

[17] *See Harris County*, 283 S.W.3d at 842 (chief task of court when construing a Texas statute "is to give effect to the intent of the makers and adopters of the provision in question"); Tex. Gov't Code § 312.005 (directing courts to consider predecessor law in determining legislative intent).

version of the long-arm statute's definitional provision permitted long-arm jurisdiction to be exercised *only* over a "foreign corporation, association, joint stock company, partnership, or non-resident natural person." Tex. Rev. Civ. Stat. art. 2031b, § 3 (West 1974); Tex. Rev. Civ. Stat. art. 2031b, § 4 (West Supp. 1981).[18] And the current version was enacted as part of a 1985 recodification that revised and modernized the statute "without substantive change." Tex. Civ. Prac. & Rem. Code § 1.001(a); *see also* Bill Analysis, S.B. 797, 69th Regular Session (1985) (describing recodification as a "nonsubstantive revision" not intended to alter "the sense, meaning, or effect" of the prior statute).[19] Thus, the mere presence of the word "includes" does not provide any warrant for a court to expand long-arm jurisdiction to potential defendants beyond those expressly listed, which do not fairly include a State Attorney General sued in his official capacity.

Exxon has likewise identified no legal authority supporting its position that the NYOAG's contacts with Exxon amount to "doing business" in Texas within the meaning of the long-arm statute's provision for suit-related personal jurisdiction, *see* Opp. at 6; Tex. Civ. Prac. & Rem. Code § 17.042. As the Fifth Circuit observed in *Stroman I*, "only by twisting the ordinary meaning of the terms covered by the long-arm statute" can a sister State's "regulatory activity" be understood "to be encompassed and adjudicated in Texas courts." 513 F.3d at 483.

That observation holds notwithstanding the long-arm statute's definition of "doing business" as "commit[ting] a tort in whole or part in [Texas]." Tex. Civ. Prac. & Rem. Code § 17.042(2). Exxon fails to show how the only alleged communication of the NYOAG into

---

[18] The prior version of the long-arm statute is reproduced in the appendix to this brief. See N.Y. App. 633, 637. The two subsections appear in different volumes because § 4 was amended in 1979 to authorize long-arm jurisdiction over defendants who recruit Texas residents for employment. *See* Tex. Rev. Civ. Stat. art. 2031b, § 4 (West Supp. 1981).

[19] http://www.lrl.state.tx.us/LASDOCS/69R/SB797/SB797_69R.pdf#page=1 (p. 221).

Texas—the email service of the NYOAG's administrative Subpoena on Exxon's General Counsel—could possibly amount to a tort under the long-arm statute. *See, e.g.*, *Kelly*, 301 S.W.3d at 660 (holding commission of allegedly wrongful acts *outside* Texas not to suffice as commission of tort *in* Texas). Indeed, the mere issuance of a non-self-executing administrative subpoena caused Exxon no actionable injury as a matter of law, no matter where that subpoena was served or received. *See Google*, *Inc.*, 822 F.3d at 225-26; *Allred*, 117 F.3d at 283-86.

The lack of any tortious injury to Exxon in Texas is all the more apparent given Exxon's conduct in the New York state court proceedings to enforce the Subpoena. Although those proceedings—which have been ongoing since October 2016—have afforded Exxon every opportunity to raise its federal constitutional claims and to seek preliminary injunctive relief against alleged harms from the NYOAG's investigation, Exxon has done neither. *See, e.g.*, N.Y. App. 230. Instead, Exxon has represented to the New York Supreme Court Justice supervising the proceedings (the Honorable Barry R. Ostrager) that it does not dispute the good faith of the NYOAG's investigation or the constitutionality of the Subpoena, and will within two weeks complete the production of all responsive material. *See, e.g.*, N.Y. App. 230, 612-13. Indeed, Exxon has explicitly told Justice Ostrager that, far from engaging in any tortious misconduct, the New York Attorney General "ha[s] the right to conduct th[is] investigation" (N.Y. App. 169), and that the "big picture" is that Exxon will fully comply with the Subpoena (N.Y. App. 612-13).

23

## CONCLUSION

For the foregoing reasons, the NYOAG respectfully requests that this Court dismiss the First Amended Complaint and all claims asserted therein, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of New York

By his attorneys:

_____/s/ Pete Marketos_____

| | |
|---|---|
| Jason Brown* | Peter D. Marketos |
| *Chief Deputy Attorney General* | Lead Attorney |
| Roderick L. Arz (pro hac vice) | Texas State Bar No. 24013101 |
| *Assistant Attorney General* | pete.marketos@rgmfirm.com |
| Andrew Rhys Davies# | Tyler J. Bexley |
| *Assistant Solicitor General* | Texas State Bar No. 24073923 |
| NEW YORK STATE OFFICE OF THE | tyler.bexley@rgmfirm.com |
| ATTORNEY GENERAL | REESE GORDON MARKETOS LLP |
| 120 Broadway, 25th Floor | 750 N. Saint Paul St. Suite 610 |
| New York, NY 10271 | Dallas, Texas 75201 |
| 212-416-8085 | (214) 382-9810 |
| | Fax (214) 501-0731 |
| *pro hac vice application pending | |
| # pro hac vice application forthcoming | Jeffrey M. Tillotson |
| | Texas Bar No. 20039200 |
| | TILLOTSON LAW FIRM |
| | 750 N. Saint Paul St. Suite 610 |
| | Dallas, Texas 75201 |
| | Tel.: (214) 382-3041 |
| | Fax (214) 501-0731 |

Dated: February 1, 2017

24