IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-469-K |
| | § | |
| ERIC TRADD SCHNEIDERMAN, | § | |
| Attorney General of New York, in his | § | |
| official capacity, MAURA TRACY | § | |
| HEALEY, Attorney General of | § | |
| Massachusetts, in her official capacity, | § | |
| | § | |
| Defendants. | § | |

# ORDER

After careful consideration of the parties' briefs regarding whether the Court has personal jurisdiction over Defendants Eric Tradd Schneiderman, Attorney General of New York, and Maura Tracy Healey, Attorney General of Massachusetts, the Court **TRANSFERS** this action, in the interest of justice, to the United States District Court for the Southern District of New York, Manhattan Division, pursuant to 28 U.S.C. § 1406(a) for all future proceedings.

Exxon Mobil Corporation ("Exxon") filed its First Amended Complaint for Declaratory and Injunctive Relief (Doc. No. 100) against Attorney General Schneiderman and Attorney General Healey because of their issuance of a subpoena

1

and civil investigative demand ("CID") to investigate whether Exxon committed consumer and securities fraud. After initially cooperating with the subpoena, Exxon stopped producing documents to the Office of the New York Attorney General when Exxon began to believe Attorney General Schneiderman's investigation was biased and in bad faith. Exxon also believes that Attorney General Healey's investigation is pretextual in nature and has unconstitutional objectives. The CID issued by Attorney General Healey demands production of communications and documents relating to climate change that Exxon has produced or received over the last 40 years.

Exxon asserts that the attorneys general are conducting their investigations in an effort to get Exxon to change its policy position relating to climate change. Exxon brings several causes of action against Attorney General Schneiderman and Attorney General Healey which include: (1) Conspiracy; (2) Violation of Exxon's first and fourteenth amendment rights; (3) Violation of Exxon's fourth and fourteenth amendment rights; (4) Violation of Exxon's fourteenth amendment rights; (5) Violation of Exxon's rights under the Dormant Commerce Clause; (6) Federal preemption; and (7) Abuse of process.

The merits of each of Exxon's claims involve important issues that should be determined by a court, however, this Court is not the proper venue to rule on the merits of Exxon's claims. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of

2

justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The United States District Court for the Southern District of New York is the proper venue for this case because "a substantial part of the events or omissions giving rise to the claim occurred" in New York City, New York at the AGs United for Clean Power press conference on March 29, 2016. *See* 28 U.S.C. § 1391.

Exxon claims that the ultimate goal of the attorneys general is to silence everyone in the oil and gas industry from debating the climate change issue at any level. Exxon believes that the CID and the subpoena are being used as tools to cultivate the political goals of Attorney General Healey and Attorney General Schneiderman. One of the central reasons that Exxon believes that the subpoena and CID were issued to push a political agenda is because of events that occurred on the day of the AGs United for Clean Power press conference hosted by Attorney General Schneiderman, in New York City, New York. Exxon says that the actions of the attorneys general at, and before, the press conference indicate their investigations are politically motivated and that they are using the document production requests as a means to pressure Exxon to change its position in the policy debate about climate change.

According to emails presented to the Court regarding the planning of the AGs United for Clean Power press conference, the morning before the press conference the

3

attorneys general attended a closed door meeting in New York City which included a presentation by a global warming activist, Dr. Peter Frumhoff, and a presentation by a prominent global warming litigation attorney, Mr. Matthew Pawa. After the closed door meeting, Attorney General Healey, Attorney General Schneiderman, several other states' attorneys general, and former Vice President Al Gore spoke at the AGs United for Clean Power press conference. At that press conference the attorneys general spoke about the negative effects of climate change and the importance of taking action in the fight against climate change. Attorney General Schneiderman reminded everyone of his ongoing investigation of Exxon and Attorney General Healey reiterated that companies in the fossil fuel industry, such as Exxon, must be held accountable for deceiving investors and the public. Attorney General Healey stated that there was a troubling disconnect between what Exxon knew about climate change and what Exxon told investors and the public regarding climate change. Exxon says that "[t]he statements of Attorney General Schneiderman, Attorney General Healey, Mr. Gore and others made clear that the press conference was a purely political event." A few weeks after the press conference, on April 19, 2016, Attorney General Healey issued her own CID to Exxon's registered agent in Massachusetts.

Exxon says the press conference and the meetings before the press conference show the actual reason why the attorneys general issued the CID and subpoena.

4

They want to pursue their respective political agendas, silence Exxon, and violate other constitutional rights of Exxon. Exxon asserts that it is being investigated improperly by the attorneys general. The remarks made at the press conference by Attorney General Healey that singled out Exxon and that signaled what her investigation would uncover before she even issued the CID; Exxon says show the political nature of the investigation. Was the action by the attorneys general attempting to squelch public discourse by a private company that may not toe the same line as these two attorneys general? Are the two attorneys general trying to further their personal agendas by using the vast power of the government to silence the voices of all those who disagree with them?

The attorneys general say now that they are investigating Exxon because of two different periodicals published in the fall of 2015 (arguably trying to pursue the same climate change policy agendas as the attorneys general are). The periodicals state that starting in the late 1970s Exxon knew about and started researching the possibility of climate change. The Court is uncertain if it is common practice for attorneys general to begin to investigate a company after reading an article that accuses a company of possibly committing wrongdoing decades ago. What the Court does know is that Exxon has publicly acknowledged since 2006 the possible significant risks to society and ecosystems from rising greenhouse gas emissions, yet the attorneys general have only recently felt compelled to look further into Exxon's documents from the last 40

years to see if Exxon knew more than it shared with the public and investors about climate change.

Exxon offers evidence that the reason the attorneys general have chosen to act now is to achieve the goals at this time of an "Exxon campaign" to coincide with the 2016 national election. In January 2016, according to emails discussing the planning of the meeting, attorneys and activists met at the offices of the Rockefeller Family Fund in New York City, New York to discuss goals of an "Exxon campaign," which sought "to delegitimize [Exxon] as a political actor" and "to force officials to disassociate themselves from Exxon." According to emails from the planning process of the meeting at the Rockefeller Family Fund, Mr. Pawa, a prominent global warming litigation attorney who presented to the attorneys general before the AGs United for Clean Power press conference, and a group of climate change activists discussed goals of an "Exxon campaign" at the meeting in January 2016. In the emails discussing the planning of the meeting at the Rockefeller Family Fund provided to the Court (the existence of these remarks is not disputed by either Attorney General Healey or Attorney General Schneiderman), the goals of the "Exxon campaign" are:

- To establish in the public's mind that Exxon is a corrupt institution that has pushed humanity (and all creation) towards climate chaos and grave harm.

6

- To delegitimize Exxon as a political actor.

- To force officials to disassociate themselves from Exxon, their money, and their historic opposition to climate progress, for example, by refusing campaign donations, refusing to take meetings, calling for a price on carbon, etc.

- To call into question climate advantages of fracking, compared to coal.

- To drive divestment from Exxon.

- To drive Exxon and climate change into the center of the 2016 election cycle.

Mr. Pawa, an attorney and climate change activist, and Mr. Frumhoff, a climate change activist and director of science and policy at the Union of Concerned Scientists, presented to the attorneys general two months later in the closed door meeting before the March 29, 2016 AGs United for Clean Power press conference in New York City. Mr. Pawa and Mr. Frumhoff have worked together in the past to seek change in climate change policy. In 2012, Mr. Pawa presented at a workshop organized by Mr. Frumhoff which discussed, among other things related to climate change, "the viability of diverse strategies, including the legal merits of targeting carbon producers (as opposed to carbon emitters) for U.S.-focused climate mitigation" and "strategies to win access to internal documents" of fossil fuel companies. While this Court is not aware of what exactly happened during the

7

closed door meeting before the AGs United for Clean Power press conference in March 2016, the draft agenda located in emails discussing the planning of the meeting provided to the Court stated that the meeting would include presentations on the "imperative of taking action now on climate change," presented by Mr. Frumhoff, and "climate change litigation," presented by Mr. Pawa.

The day after the closed door meeting, on March 30, 2016, Mr. Pawa emailed the Office of the New York Attorney General to ask how he should respond if asked by a reporter from *The Wall Street Journal* whether he attended the closed door meeting with the attorneys general. The Office of the New York Attorney General responded by instructing Mr. Pawa "to not confirm that you attended or otherwise discuss the event." Does this reluctance to be open suggest that the attorneys general are trying to hide something from the public?

The "Climate Change Coalition Common Interest Agreement" entered into by the Office of the New York Attorney General and the Massachusetts Attorney General's Office causes the Court to further question if the attorneys general are trying to hide something. Attorney General Healey and Attorney General Schneiderman entered into the Climate Change Coalition Common Interest Agreement with other attorneys general, where they memorialized the twin goals of the coalition to (1) limit climate change and (2) ensure dissemination of accurate information about climate change—these two goals seem laudable, but that is not the

8

end of the story. The aspect of the Climate Change Coalition Common Interest Agreement that raises a question with this Court is that the Agreement states that the Parties to the Agreement, which includes the Office of the New York Attorney General and the Massachusetts Attorney General's Office, "*shall. . . refuse to disclose any Shared Information unless required by law*" which includes "(1) information shared *in organizing a meeting of the Parties on March 29, 2016*, (2) information shared *at and after the March 29 meeting* . . . and (3) information shared after the execution of this Agreement." (emphasis added). Discovery regarding this refusal would seem in order.

      The Court recognizes the authority of the attorneys general to conduct their respective investigations, however, the Court also recognizes how the attorneys general have conveniently cherry picked what they share with the media about their investigations. Since the investigations began, Attorney General Healey and Attorney General Schneiderman have not shied away from sharing with the media that they are investigating Exxon for fraud. Attorney General Healey did not hesitate to announce to the media at the AGs United for Clean Power press conference, before she issued the CID to Exxon, her plan to investigate Exxon and how Exxon has been deceiving investors and the public. Within a week of issuing the subpoena to Exxon, in November 2015, Attorney General Schneiderman appeared on a *PBS NewHour* segment titled "Has Exxon Mobil misled the public about its climate change research?" to discuss the purpose and focus of his investigation. In August 2016,

Attorney General Schneiderman shared with *The New York Times* his theory of investigating Exxon for overstating Exxon's oil and gas reserves and assets. In September 2016, a spokesman from Attorney General Schneiderman's office also shared with *The Wall Street Journal* information regarding the Exxon investigation.

Attorney General Schneiderman and Attorney General Healey, despite these media appearances by both, are not willing to share the information related to the events at the March 29, 2016 meeting at the AGs United for Clean Power press conference. Should not the attorneys general want to share all information related to the AGs United for Clean Power press conference to ensure the public that the events surrounding the press conference lacked political motivation and were in fact about the pursuit of justice? The attorneys general should want to remove any suspicion of the event being politically charged since it was attended by (1) former Vice President Al Gore, a known climate change policy advocate in the political arena, (2) Mr. Peter Frumhoff, a well-known climate change activist, and (3) Mr. Matthew Pawa, a prominent global warming litigation attorney who attended a meeting two months prior to the press conference at the Rockefeller Family Fund to discuss an "Exxon campaign" seeking to delegitimize Exxon as a political actor. Any request for information about the events surrounding the AGs United for Clean Power press conference should be welcomed by the attorneys general.

Exxon also asserts that Attorney General Schneiderman's shift in focus in investigating Exxon is a sign of his political motives. Originally Attorney General Schneiderman stated that his office was focused on investigating Exxon's historic climate change research. Exxon says that Attorney General Schneiderman's recent shift in investigative theory, which is now focused on ferreting out whether Exxon committed securities fraud relating to its oil and gas reserves and assets, is a sign that Attorney General Schneiderman is searching for a way to have leverage over Exxon in the public policy debate about climate change.

If Attorney General Schneiderman is genuinely concerned about seeking protection for New York's citizens for Exxon's possible securities fraud regarding its oil and gas reserves and assets, then he can seek protection for the New York state investment groups that he may represent in a securities class action filed against Exxon relating to that very issue currently before this Court, *Ramirez v. Exxon Mobil Corp., et. al.*, 16-cv-3111-K.

The merits of Exxon's claims, which involve important issues, should be considered in the proper venue. Accordingly, this case is **TRANSFERRED** to the United States District Court for the Southern District of New York, Manhattan Division. 28 U.S.C. § 1406.

**SO ORDERED.**

Signed March 29th, 2017.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE